Max Folkenflik, Esq.
FOLKLENFLIK & McGERITY
1500 Broadway, 21st Floor
New York, NY  10036
Telephone: (212) 757-0400
Facsimile:  (212) 757-2010

H. Tim Hoffman, Esq.
Arthur W. Lazear, Esq.
HOFFMAN & LAZEAR
180 Grand Avenue, Suite #1550
Oakland, CA  94612
Telephone:    (510) 763-5700
Facsimile:    (510) 835-1311

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| IN RE APPLE & AT&TM ANTITRUST LITIGATION | Case No. c 07-05152-JW<br><br>Hearing Date/Time: April 7, 2008<br>9:00 a.m.<br>Hearing Judge:  Hon. James Ware<br><br>**MOTION TO APPOINT MAX FOLKENFLIK AS LEAD COUNSEL FOR PLAINTIFFS AND THE PUTATIVE CLASS; MEMORANDUM OF POINTS AND AUTHORITIES** |

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

# **Table of Contents**

NOTICE OF MOTION AND MOTION……………………………………5

MEMORANDUM OF POINTS AND AUTHORITIES…………………...…6

I.  INTRODUCTION AND SUMMARY OF ARGUMENT……………...6

II. STATEMENT OF THE CASE……………………………………6

III.THE COURT POSSESSES THE AUTHORITY
    TO APPOINT LEAD COUNSEL…………………………………7

IV.  MAX FOLKENFLIK SHOULD BE
     APPOINTED LEAD COUNSEL…………………………………..10

  *A.* Max Folkenflik Has Extensive Knowledge And Experience In The
       Relevant Issues Herein ……………………………………10
              1.     Technological Expertise………………………………10
              2.     Legal Expertise………………………………………..13
              3.     Complex Litigation Experience……………………….14

  *B.* Counsel In Support of This Motion Have Valuable Experience
       and Have Been Actively Prosecuting This Action…………………18
  V.      CONCLUSION……………….…………………………………19

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

# Table of Authorities

**Cases**

Cullen v. New York State Civil Service Commission
435 F.Supp. 546, 563-64 (E.D.N.Y.) ....................................................................... 9

In re Aircrash Disaster at Florida Everglades
549 F.2d 1006, 1014 (5th Cir. 1977) ...................................................................... 9

In re Cardinal Health, Inc.
ERISA Litigation 225 F.R.D. 552, 554 (S.D.Ohio, 2005.) ..................................... 9

In re Terzaosin Hydrochloride
220 F.R.D. 672, 702 (S.D. Fla. 2004)..................................................................... 10

In re Williams Cos. ERISA Litig.
No. 02-CV-153, 2002 U.S. Dist. LEXIS 27691, *8 (N.D. Ok. Oct. 28, 2002).... 10

Landis v. North American Co.
299 U.S. 248, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936)........................................ 7

MacAlistor v. Guterman
263 F.2d 65 (2d Cir. 1958)................................................................................... 7,8

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

Vincent v. Hughes Air West, Inc.

557 F. 2d 759 (9th Cir. 1977) ............................................................ 7,8


**Statutes**

Fed. R. Civ. P. 23(g) ..................................................................... 6,9,10


**Other Authorities**

J. Moore's Federal Practice, ¶ 42.02[2], p. 42-7 (1985)......................... 7

Manual for Complex Litigation (4th ed. 2004)..................................... 8,9

Newberg on Class Actions at § 9.35, at 9-9710..................................... 9

4

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

**NOTICE OF MOTION AND MOTION**

## TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 7, 2008 at 9:00 a.m., or as soon thereafter as the matter may be heard in the San Jose Division of the United States District Court, Northern District of California, before the Honorable James Ware, Plaintiffs Paul Holman and Lucy Rivello will and hereby do move the Court for an order appointing Max Folkenflik, Esq. as Lead Counsel.

A copy of this Notice of Motion and Motion is being served on all counsel who have appeared in the above listed cases.

This Motion is made on the grounds that appointment of Mr. Folkenflik as lead counsel will effectively and efficiently manage this litigation for Plaintiffs and that he has extensive experience in complex cases, class actions, antitrust law and the technological issues that will be critical in this matter.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of H. Tim Hoffman, Max Folkenflik, Joseph Caruso and the Honorable Ronald M. Sabraw, the pleadings and other files herein, and such oral argument as may be permitted by the Court.

Dated:  March 3, 2008              **HOFFMAN & LAZEAR**


                                   By: /s/ H. Tim Hoffman
                                       H. Tim Hoffman

5

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Moving plaintiffs Paul Holman and Lucy Rivello respectfully submit that the appointment of Max Folkenflik as lead counsel for the plaintiffs and proposed class in the consolidated action, as set forth herein, will promote the orderly progress of this litigation, and ensure that these cases are prosecuted in an efficient and coordinated fashion.  These plaintiffs, therefore, move the Court, pursuant to Federal Rule of Civil Procedure 23(g) for the appointment of Max Folkenflik as Lead Counsel.

As set forth below, the proposed order is consistent with governing authority and will promote the efficient conduct of this litigation.  Further, as explained more fully below, the proposed lead counsel exceeds the requirements for appointment under Fed.R.Civ.P. 23(g) and, as such, the appointment is in the best interests of the class.  The proposed lead counsel has significant experience and knowledge in complex class action litigation, antitrust litigation and the technological issues that will be critical in the successful resolution of this matter.

## II.    STATEMENT OF THE CASE

Plaintiffs Holman and Rivello  commenced an original action in this Court on October 5, 2007.  The action was filed by the law firms of Folkenflik & McGerity and Hoffman & Lazear.  The focus of the case is the iPhone, a cellular smart-phone, which is jointly marketed to consumers by Defendants Apple, Inc. ("Apple") and AT&T Mobility LLC. ("AT&T").  It is alleged that Apple and AT&T violated state and federal anti-trust laws, as well as common law trespass by establishing a restriction that iPhone users can only use AT&T as their voice and data carrier and by intruding into purchased iPhones to enforce that restriction

6

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

(the "Sim lock").  The complaint also alleges that iPhone users can only use Apple-supplied "applications," or  programs (the "Application Lock").  (See Declaration of Max Folkenflik, ¶2.)

Thereafter, the case was related to two other actions, which had been filed in other courts and transferred to this Court.

## III.    THE COURT POSSESSES THE AUTHORITY TO APPOINT LEAD COUNSEL

This Court possesses broad inherent authority "to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. North American Co.*, 299 U.S. 248, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936).  It is well established that appointment of lead counsel is appropriate in order to insure efficient representation of the class.  Professor Moore has noted:

> It is ... within the court's discretion to appoint general or lead counsel whose function is to supervise and coordinate the conduct of the consolidated cases.

5 *J. Moore's Federal Practice*, ¶ 42.02[2], p. 42-7 (1985), citing *Vincent v. Hughes Air West, Inc.*, 557 F. 2d 759 (9th Cir. 1977).

The Second Circuit, in *MacAlistor v. Guterman*, 263 F.2d 65 (2d Cir. 1958), emphasized the benefits to be gained from the appointment of lead counsel in complex, multi-party litigation:

> The benefits achieved by consolidation and the appointment of general counsel, *i.e.*, elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation. The advantage of this procedure should not be denied litigants in the federal courts because of misapplied notions concerning interference with a party's right to his own counsel.

7

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

*Id.* at 69.

The Ninth Circuit unequivocally reaffirmed the *MacAlister* holding and approved the appointment of lead counsel in cases of this nature:

> Although some courts at an earlier time apparently doubted their power to create the role of lead counsel and oversee its filing, ... by the time section 1.92 was added to the Manual for Complex Litigation [First] the authority of the district courts regarding lead counsel was well-established. [¶] The authority recognized in *MacAlister* has never been seriously disputed. Many courts since *MacAlister* have explicitly reaffirmed their authority to appoint lead counsel and have exercised that authority.

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 774 (9th 1977) (citations omitted); accord *In re Aircrash Disaster at Florida Everglades*, 549 F.2d 1006, 1014 (5th Cir. 1977).

The *Manual for Complex Litigation* recognizes the benefit of appointing an appropriate leadership structure of plaintiffs' counsel in complex litigation. See *Manual*, 4th Ed. § 10.22. As the *Manual* states, "Instituting special procedures for coordination of counsel early in the litigation will help avoid … problems [of unnecessary costs and duplication.]" *Id.* at 35. The *Manual* also provides guidance for the court in appointing counsel. It suggests that the court "conduct an independent review … to ensure that counsel appointed leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." *Id.*[1]

---

[1] The Manual delineates a number of factors the court should assess when appointing lead counsel, including, but not limited to: qualifications, functions, organization, and compensation of designated counsel; would-be designated attorneys' competence for assignments; the attorneys' resources, commitment, and qualifications to accomplish the assigned tasks; and, the attorneys' ability to

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

Indeed, the appointment of appropriate class counsel is one of the court's inherent powers, assuring that the litigation will be conducted with a minimum of confusion and expense.  *See Cullen v. New York State Civil Service Commission,* 435 F. Supp. 546, 563-64 (E.D.N.Y. 1977).  Pursuant to the recommendations of the *Manual* and requirements of Fed.R.Civ.P. 23(g), courts look to ensure that those firms appointed as lead counsel are "qualified and responsible" and that they will "fairly and adequately represent all of the parties on their side . . .", *Manual* § 10.22, through efficiency and economy. *Id.* at §10.221.  If more than one firm moves for appointment as class counsel, the court must appoint the firm(s) "best able to represent the interests of the class." Fed.R.Civ.P. 23(g)(2)(B).

The Court is mandated to consider the four factors detailed in Fed. R. Civ. P. 23(g).  They are:

    (1)    the work counsel has done in identifying or investigating potential claims in the action,

    (2)    counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

    (3)    counsel's knowledge of the applicable law, and

    (4)    the resources counsel will commit to representing the class.

Further, "[c]ourts should consider the following factors when appointing lead counsel: experience; prior success record; the number, size, and extent of involvement of represented litigants; the advanced stage of proceedings in a particular suit; and the nature of the causes of action alleged." *In Re Cardinal Health, supra,* 225 F.R.D. at 554 citing *Newberg* at § 9.35, at 9-97, which outlines

command the respect of their colleagues and work cooperatively with opposing counsel and the court. *Manual* at § 10.224.

9

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

the requirements for class counsel, requires, above all, that the chosen counsel "'fairly and adequately represent the interests of the class.'" *Id*. When measured against these factors, one thing is clear – Mr. Folkenflik meets and exceeds the standards set by Rule 23(g).

## IV.  MAX FOLKENFLIK SHOULD BE APPOINTED LEAD COUNSEL.

A persuasive factor in choosing interim lead class counsel is the experience the proposed counsel has in the relevant issues in the case. See, *e.g., In re Terzaosin Hydrochloride*, 220 F.R.D. 672, 702 (S.D. Fla. 2004); *In re Williams Cos. ERISA Litig.*, No. 02-CV-153, 2002 U.S. Dist. LEXIS 27691, *8 (N.D. Ok. Oct. 28, 2002) (appointing lead counsel based on experience in other ERISA cases). In the instant matter, the proposed Lead Counsel serves the best interests of the class.

### C.  Max Folkenflik Has Extensive Knowledge And Experience In The Relevant Issues Herein

The present litigation is unique in several respects. Although the legal claims that are presented will focus largely on antitrust issues, the factual issues will require advanced understanding of technological concepts involving the computer and communications industries. Mr. Folkenflik has demonstrated specialized knowledge and experience in all of these legal and technical fields.

1.     Technological Expertise

As set forth in the accompanying declaration of Max Folkenflik, while the legal antitrust issues are important in this case, the technological issues will be

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

paramount, both because of their centrality to the proof of wrongful conduct aimed at enforcing the anti-competitive restrictions, and because they will be central to identifying and proving a "relevant market," which is the field on which antitrust battles frequently are fought.  (Folkenflik Dec., ¶ 4.)  Specifically, the key issue that distinguishes this case is the allegation of defendants' intrusion into purchased iPhones to enforce the exclusive dealing arrangements of which Plaintiffs complain.  Plaintiffs allege that when iPhone customers took advantage of contractually provided free upgrades to their telephones, the Apple upgrade program was designed intentionally to determine if the iPhone software or hardware had been modified to allow use of telephone carriers other than AT&T, or applications other than Apple applications, and, if so, to disable the iPhone.  That practice is referred to as "bricking," (that is making it as useful as a brick).  Defendants deny that any damage to iPhones was intentional, and Plaintiffs dispute this denial.  (Folkenflik Dec., ¶ 3.)

  Mr. Folkenflik has unusually extensive experience in handling litigation involving advanced technological issues.  One such case is *Hoffman v. American Express*, on which Mr. Folkenflik has served as lead counsel for a certified nationwide class.  In that action, he was required to understand thoroughly the way

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

in which the American Express computer systems assessed travel insurance premiums, the code employed and the changes to it over time, along with the data that was available and used, or not used. (Folkenflik Dec., ¶ 10.)  In that regard, he took almost every one of the depositions of the computer-related witnesses, including every programmer witness.  He has personally taken the lead on all technology issues, including development of the protocol for the activities of a court-appointed neutral expert and has worked closely with him.  (*Id.*)  Mr. Folkenflik is also the lead attorney working with experts on the recent production of nearly a terabyte (1,000 gigabytes, 1,000,000 megabytes) of data containing nearly a billion transactions spanning more than a decade.  (*Id.*)  He has worked with an expert, Joseph Caruso, in analyzing over 280,000 records previously provided.  (*Id.*; Caruso Dec., ¶16.)  In discussing Mr. Folkenflik's work on that case, Mr. Caruso has said that Mr. Folkenflik was able to grasp complex computer concepts, including storage and encryption issues, as well as the complex evolution of what is arguably one of the most complex financial billing and tracing systems in the world.  (*Id., ¶*17.)  He describes Mr. Folkenflik as "one of the most technically astute attorneys [he has] worked with."  (*Id., ¶*19.)

It should not be assumed that Mr. Folkenflik's technological experience is

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

confined to the *American Express* litigation.  On the contrary, he has had

substantial other experience working with technology issues and large data-sets

from the time he was a mid-level associate working on antitrust cases for IBM, to

more current cases, such as *Nisselson v. Learnout*, where he was responsible for

the collection, restoration and review of four terabytes of e-mails and worked

closely with the vendor establishing a review interface.  (Folkenflik Dec., ¶ 11.)

### 2. Legal Expertise

Although Mr. Folkenflik's unique knowledge and experience in the

technological issues that will be critical in this litigation represent the most

compelling aspects of his expertise, he also possesses skill and experience in the

legal issues upon which this case will focus.

He has direct anti-trust experience dating back to his work as an associate at

Cravath, Swaine and Moore ("Cravath"), one of the nation's pre-eminent antitrust

law firms, which he joined after working elsewhere for a number of years.  While

he was at Cravath he worked on a number of significant antitrust cases, primarily

alleging monopolization under Section 2 of the Sherman Act.  (Folkenflik Dec., ¶

12.)  For example, he had responsibility to prepare expert witnesses in *United

States v. CBS*, and worked directly on preparation with Franklin M. Fisher and

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

William Baumol, two of the most prominent economists in the country.  He was also involved in briefing a variety of issues, including antitrust issues.  In *Greyhound v. I.B.M.* and *United States v. I.B.M.* he worked on issues and witnesses involving market share and market definition, issues that are likely to be prominent in the instant litigation.  (*Id.*)  Since that time, he has worked extensively in securities litigation in cases that often involved developing a fundamental understanding of a company's market and competition.  (*Id.*)

Mr. Folkenflik's relevant legal experience extends beyond the field of antitrust law.  AT&T has announced its intention to move to compel arbitration in this case.  Mr. Folkenflik has lengthy and deep experience working on this critical threshold issue.  (Folkenflik Dec., ¶ 5.)  In fact, he recently litigated substantially the same motion brought by AT&T through the same counsel as is appearing here, in *Zoltan Stiener and Ynez Stiener, et al. v. Apple Computer, Inc., AT&T Mobility, LLC*, et al. (No. C-07-04486 SBA).  (*Id.*)  He also successfully litigated a similar issue at the trial and appellate levels in *Hoffman v. American Express.*

### 3.    Complex Litigation Experience

Particularly noteworthy is Mr. Folkenflik's experience handling large and complex litigation.  He has devoted his practice to complex litigation like the

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

present action.

Mr. Folkenflik has over 31 years experience in the practice of law, and he has spent his entire career handling large complex civil disputes, often involving difficult technology and financial issues.  (Folkenflik Dec., ¶ 6.)  He has conducted and supervised extensive discovery, including large-scale e-discovery.  He has briefed and argued numerous motions and appeals at all levels, including having argued twice before the New York Court of Appeals (the state's highest court), and arguments before the First, Second, and Third Circuits, as well as many arguments in the United States District Courts.  He has tried complex cases before a jury in state and federal court, as well as the similar experience of trying complex securities cases in lengthy arbitrations.  He has over 60 reported opinions in matters which he personally briefed and argued , often dealing with cutting edge issues.   (Folkenflik Dec., ¶ 6, Ex. A.)

The cases handled by Mr. Folkenflik are frequently large and almost always involve complex legal and financial or technological issues.  His adversaries are typically the largest and best law firms in the country.  In some cases, his firm is the only plaintiffs' counsel.  In others, he works with other firms.  In each case, however, he is the primary, and often the only, contact person with the partners at

15

Motion to Appoint Max Folkenflik Lead Counsel;
Memorandum of Points and Authorities
Case no c 07-05152-JW.

these firms.  His relationships with opposing counsel have been excellent.

(Folkenflik Dec., ¶ 7).

Until approximately 2003, Mr. Folkenflik was involved in many actions

where he represented one or a group of plaintiffs in a private action that ran

parallel with class actions asserting substantially the same claims.  For example, in

*In re Crazy Eddie Securities Litigaion*, he represented the effective purchasers of

the Crazy Eddie business, who uncovered massive accounting fraud, which led to

class action securities fraud suits as well.  In a series of litigations on behalf of the

*Collins CMO Fund*, he asserted claims arising out of the meltdown of the CMO

market, similar to claims asserted by trustees, other private parties, and classes.   In

*Nisselson v. Learnout*, he represents the litigation trust trustee asserting claims on

behalf of a merger target acquired as a result of fraud, which was consolidated with

numerous class action claims in the Massachusetts District Court.   (Folkenflik

Dec., ¶  8.)

Mr. Folkenflik has also been involved in a number of class actions in a

leadership capacity including, in particular, *Hoffman v. American Express*, where

he is serving as the lead counsel for a number of law firms from various states.

(Folkenflik Dec., ¶ 9.)  He entered that action representing an objector and

PLAINTIFFS' NOTICE OF MOTION AND MOTION (1) TO CONSOLIDATE, (2) FOR LEAVE TO FILE
AN AMMENDED COMPLAINT, and (3) TO APPOINT CO-LEAD COUNSEL

intervener to a proposed class action settlement.  In the course of that representation, he uncovered the fact that the settlement was based on misrepresentations of the defendants, and he took over control of the case, which is set for trial at the end of June 2008.  (*Id.*)

His work on the *Hoffman* case has been extraordinary.  That fact is demonstrated by the accompanying declaration of the Honorable Ronald M. Sabraw, the former complex litigation judge for Alameda County Superior Court, who presided over the *Hoffman* litigation for several years.  As Judge Sabraw states, Mr. Folkenflik often appeared before him from the fall of 2003 through Judge Sabraw's retirement at the end of 2006.  (Sabraw Dec., ¶3.)  He states, "Without doubt, Mr. Folkenflik is one of the best lawyers that I have had the pleasure of working with in my 20 years on the bench."  (*Id.*)  Judge Sabraw notes that the *Hoffman* litigation was serious and contentious, but that Mr. Folkenflik always kept his focus and his poise, something that is not always easy to accomplish in even less heated disputes.  (*Id.*)  He also notes that Mr. Folkenflik's adversaries were far larger firms, but that Mr. Folkenflik and his firm could always handle any challenge with which they were presented.  (*Id.*)  Mr. Folkenflik's efforts on behalf of the class were successful, to the extent that he persuaded Judge

Sabraw to certify a national class, something he had not previously done in 15 years of presiding over class actions. (*Id.*) Judge Sabraw also notes that Mr. Folkenflik vigorously and tirelessly pursued the interests of the class, while treating his adversaries with professionalism and respect. (*Id.,* ¶¶ 5, 6.)

### B. Counsel In Support of This Motion Have Valuable Experience and Have Been Actively Prosecuting This Action.

Mr. Folkenflik recognizes that, as Lead Counsel, he would not be pursuing this action alone. In the numerous cases where he has demonstrated leadership abilities and experience, he has worked with other counsel and has been able to utilize the talents of the other attorneys and law firms in the case. (See Folkenflik Dec., ¶ 20.)

He has already associated with the law firm of Hoffman & Lazear. That firm also brings extensive experience in class actions and complex litigation. This firm has focused largely on class action litigation for decades and has worked successfully on a number of large cases. (See Declaration of H. Tim Hoffman, ¶7.) It has itself served as lead counsel, co-lead counsel or liaison counsel in a number of class actions. (*Id.,* ¶8.)

Mr. Folkenflik and his co-counsel have been actively prosecuting this action.

They have been vigorously pursuing this action since its inception.  Mr. Folkenflik began to work on this action at the time that Apple implemented its version 1.1.1 upgrade, which apparently caused iPhones to become non-functional or, as it is known in the computer trade, "bricks."  He determined that the "bricking" of the iPhones through the use of the upgrade software seemed to be at the core of the case.  (Folkenflik Dec., ¶ 15.)   He then retained Joseph Caruso, a forensic computer expert, to analyze the software and to determine exactly what was happening when the upgrade program was run, and whether the iPhones were being "bricked" intentionally, as part of an anti-competitive plan, or inadvertently, as Apple maintained.  (*Id., ¶* 16.)  Mr. Caruso's efforts are set forth in his own declaration, submitted herewith.

The complaint filed by Mr. Folkenflik's firm and Hoffman & Lazear in the *Holman* action was the first filed and the only one of these cases to be originally brought in the right court and to originally assert the right claims (both federal and state anti-trust and computer trespass).  (*Id.*, ¶ 17.)

## V.    CONCLUSION

In light of the foregoing, plaintiffs Paul Holman and Lucy Rivello respectfully request that the Court appoint Max Folkenflik Lead Counsel.

Dated:  March 3, 2008

Respectfully Submitted,
**HOFFMAN & LAZEAR**



By: <u>/s/ H. Tim Hoffman</u>
H. Tim Hoffman
