Max Folkenflik, Esq.
Margaret McGerity, Esq.
**FOLKENFLIK & MCGERITY**
1500 Broadway, 21st Floor
New York, NY 10036
Telephone:   (212) 757-0400
Facsimile:    (212) 757-2010

H. Tim Hoffman (049141)
Arthur W. Lazear (083603)
Morgan M. Mack (212659)
**HOFFMAN & LAZEAR**
180 Grand Avenue, Suite 1550
Oakland, California 94612
Telephone:   (510) 763-5700
Facsimile:    (510) 835-1311

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE & AT&T ANTITTRUST LITIGATION | Case No: C:07-05152 JW<br><br>**DECLARATION OF**<br>**MAX FOLKENFLIK** |

I, **Max Folkenflik**, hereby declare:

1. I am a member of Folkenflik & McGerity, counsel for plaintiffs Paul Holman and Lucy Rivello, in *Holman and Rivello, et al. v. Apple, Inc., AT&T Mobility LLC,.* (No. 07-CV-05152-JW), one of the two related cases consolidated in this action. A third case, *Herbert H. Kliegerman, et al. v. Apple, inc. and AT&T Mobility, LLC,* Index No. 07-cv-08404-PKC, is subject to transfer under 28 U.S.C. §1404(a), and may be consolidated shortly. I make this declaration for appointment as interim lead counsel because I believe that my experience, expertise in critical legal and computer related issues at the heart of the case, and demonstrated judgment in this action and others, all make it appropriate to appoint me as interim lead counsel in accordance with Federal Rule of Civil Procedure 23(g). I also believe that I am the "most adequate" within the meaning of the rule, of the

counsel who are seeking appointment. However, in accordance with the Court's briefing schedule, this declaration and motion will address only my qualifications. The comparisons to other counsel will await the "opposition" papers on March 17, 2008.

**The Nature of this Action**

2. As the Court is aware, *Holman* was commenced by original action in this Court on October 5, 2007, by my firm acting together with Hoffman & Lazear, a California firm with deep class action experience with whom I am working on a number of class actions. The focus of the case is the iPhone, a cellular smart-phone, which is jointly marketed to consumers by Defendants Apple, Inc. ("Apple") and AT&T Mobility LLC. ("AT&T"). It is alleged that Apple and AT&T violated state and federal anti-trust laws, as well as common law trespass by establishing, and intruding into purchased iPhones to enforce certain anti-competitive exclusive dealing restrictions. The iPhone users can only use AT&T as their voice and data carrier (the "Sim Lock"). iPhone users can only use Apple-supplied "applications," or programs (the "Application Lock"). After the case began, Apple announced that in February it would release a Software Development Kit ("SDK") which would allow some third parties to develop applications for the iPhone which Apple would approve under as yet unannounced standards and terms. The claims on the Application Lock are likely to be effected, perhaps substantially, by the release of the SDK.

3. While the exclusive dealing arrangements raise many issues that are standard anti-trust fare, the key issue that makes this case different is defendants' intrusion into purchased iPhones to enforce those exclusive dealing arrangements. Plaintiffs allege that when iPhone customers took advantage of contractually provided free upgrades to their telephones, the Apple upgrade program was designed intentionally to determine if the iPhone software or hardware had been modified to defeat the Sim Lock or the Application Lock. If it had been modified, the program disabled the iPhone. That practice is referred to as "bricking," that is making the iPhone as useful as a brick. Defendants deny that any damage to iPhones was intentional, but was an unintended consequence of the interaction between the customer's modification and the upgrade program. We intend to prove that

those denials are untrue.

4. It is my opinion that while the legal anti-trust issues are important, the technological issues will be paramount. That is true both because of their centrality to the proof of wrongful conduct aimed at enforcing the anti-competitive restrictions, and because they will be central to identifying and proving a "relevant market," which as the Court well knows is the field on which the anti-trust battles primarily will be fought.

5. That is not to say that anti-trust is the only legal area of contention. AT&T has announced its intention to move to compel arbitration, a critical threshold issue on which I have long and deep experience. I recently litigated substantially the same motion brought by AT&T through the same counsel as is appearing here, in *Zoltan Stiener and Ynez Stiener, et al. v. Apple Computer, Inc., AT&T Mobility, LLC*, et al. (No. C-07-04486 SBA) (the "*Stiener Action*").

## My Background and Experience

6. I have over 31 years experience in the practice of law, and from the start I have been involved in large complex civil disputes, often involving difficult technology and financial issues. I have conducted and supervised extensive discovery, including large scale e-discovery, briefed and argued numerous motions and appeals at all levels, including arguing twice at the New York Court of Appeals, and arguments before the First, Second, and Third Circuits, as well as many arguments in the United State District Courts. I have tried complex cases before a jury in state and federal court, as well as the similar experience of trying complex securities cases in lengthy arbitrations. I have over 60 reported opinions in matters which I personally briefed and argued, often dealing with cutting edge issues. A copy of my *curriculum vitae* is attached as Exhibit A.

7. The cases I handle are frequently large and almost always involve complex legal and financial or technological issues. My adversaries are typically the largest and best law firms in the country. Currently, opposing counsel in my other pending cases include, Arnold & Porter, Boies, Schiller and Flexner, Dickstein Shapiro Morin & Oshinsky

LLP, Dechert, LLP, Greenberg Traurig, LLP, Hogan & Hartson LLP, Mayer, Brown LLP, Morrison & Foerster, LLP, Orrick, Herrington & Sutcliffe LLP, Proskauer Rose, LLP. In some of my cases, my firm is the only plaintiffs' counsel. In others, I am working with others, in each case, however, I am the primary, and often the only, contact person with the partners at these firms. My relationships with opposing counsel have been excellent.

8. Until approximately 2003, I was involved in many actions where I represented one or a group of plaintiffs in a private action that ran parallel with class actions asserting substantially the same claims. For example, in *In re Crazy Eddie Securities Litigaion*, I represented in an individual action the effective purchasers of the Crazy Eddie business, who uncovered massive accounting fraud. Our case was consolidated with a parallel class action securities fraud suit. In a series of litigations on behalf of the *Collins CMO Fund*, we asserted claims arising out of the meltdown of the CMO market in 1994, similar to those asserted by trustees, other private parties, and classes in parallel cases. In *Nisselson v. Learnout*, I represent the litigation trust trustee asserting claims on behalf of a merger target acquired as a result of fraud, which was consolidated with numerous class action claims in the Massachusetts District Court. In other cases, I have represented substantial groups of individuals in a "mass" action which paralleled various class actions. My *curriculum vitae* describes a number of these cases

9. I have been, and am currently, involved in a number of class actions in a leadership capacity including in particular *Hoffman v. American Express*, where I am the lead counsel. I entered that action as an objector and intervener to a proposed class action settlement, uncovered the fact that the settlement was based on misrepresentations of the defendants, and took over control of the case which is set for trial at the end of June. In *Morton v. Resources High Equity, Inc.*, I also entered the case as an objector, defeating a settlement we believed was unfair, and made substantial improvement on the then existing settlement. My guiding principle in class action cases is to do what is best for the clients, just as with my individual client representations. My history shows that I have vigorously pursued those cases and have not chosen the easy path or a quick cheap

settlement at the client's expense.

10. Many of my cases involve substantial technology issues. In the *Hoffman* action, which involves claimed improper insurance charges, we had to throughly understand the way in which the American Express computer systems assessed travel insurance premiums, the codes employed and the changes to it over time, and the data that was available and used, or not used. In that case, I took almost every one of the depositions of the computer-related witnesses, including every programer witness. I have personally taken the lead on all technology issues. I developed the protocol for the activities of a court appointed neutral expert and worked closely with him. I worked with experts in analyzing over 280,000 records previously produced and am currently the lead attorney working with our experts on the recent production of nearly a terabyte (1,000 gigabytes, 1,000,000 megabytes) of data containing nearly a billion transactions spanning more than a decade.

11. In *Hoffman*, I have briefed and personally argued virtually every motion in the trial court, including multiple motions related to class certification which were granted, as well as numerous motions to compel arbitration which were denied.

12. I have had substantial other experience working with technology issues and large data-sets from the time I was a mid-level associate working on anti-trust cases for IBM, to more current cases, such as *Nisselson*, where I was responsible for collection, restoration and review of four terabytes of e-mails and worked closely with the vendor establishing a review interface.

13. My initial anti-trust experience was while I was an associate at Cravath, Swaine and Moore ("Cravath") one of the nations pre-eminent anti-trust law firms, which I joined after working elsewhere for a number of years. While I was at Cravath I worked on a number of significant anti-trust cases, primarily alleging monopolization under Section 2 of the Sherman Act. I had responsibility to prepare expert witnesses in *United States v. CBS*, and worked directly on preparation with Franklin M. Fisher and William Baumol, two of the most prominent economists in the country. I was also involved in briefing a variety

of issues including anti-trust issues. In *Greyhound v. I.B.M.* and *United States v. I.B.M.* I also worked on issues and witnesses involving market share/market definition. Since that time, I have worked extensively in securities litigation in cases that often involved developing a fundamental understanding of a company's market and competition.

14. Being in a small firm and dealing with large cases, we have had to develop approaches which allowed us to devote all the time and attention a case deserves and the ability to see it through. We often work with other firms, such as we are with Hoffman & Lazear here, and we are very selective and limited in the number of cases we litigate at any one time. As a result, we are able to field the manpower necessary at any point in time. Though existing relationships with other firms, additional hands can be recruited as necessary. We have the manpower and financial resources necessary to litigation this action.

15. Here, however, there is little likelihood that one would have to field an army to litigate this case. The near term outlook is for extended motion practice, collection and analysis of market data, including data generated by defendants (which will probably be opposed), working with experts to refine arguments about the relevant market, and communications with class members. The communication with class members through e-mail is another significant area where my experience will come in handy. In *Hoffman*, we recently won the right to communicate with 2.7 million class members directly by e-mail and I am personally involved in working with an outside vendor regarding those communications and to set-up web based communications and surveys with those members.

**My Work on this Case**

16. I began to work on this action at the time that Apple implemented its version 1.1.1 upgrade which apparently caused iPhones to become non-functional, or as it is known in the computer trade, "bricks." It was apparent that the exclusive dealing arrangements supported federal and state anti-trust claims. The "bricking" of the iPhones through the use of the upgrade software seemed to me to be at the core of the case.

-6-

17. I retained Joseph Caruso, a forensic computer expert, to analyze the software and to determine exactly what was happening when the upgrade program was run, and whether the iPhones were being "bricked" intentionally, as part of an anti-competitive plan, or inadvertently, as Apple maintained. A copy of his declaration in which he describes his efforts in more detail is submitted on this motion.

18. Our complaint, the first filed and the only one of these cases to be originally brought in the correct court and to originally assert the correct claims (both federal and state anti-trust and computer trespass), also describes the market generally. It was always expected that the market definition would be refined as time passed and more information became available.

19. Currently, it is quite clear that Apple has substantial market power with respect to the iPhone based on looking at its pricing and sales numbers and those of its potential "competitors." There seems to be very low cross-elasticity of demand, which is the hallmark of defining the contours of a relevant market. However, to come to a truly accurate market definition we need to collect and analyze data, presumably through discovery.

20. Initially the Court directed that the firms in the *Holman* case and the *Smith* case would appear as co-lead counsel. Given that direction, I met with counsel in the *Smith* action and worked out an agreement where I would be lead counsel with day-to-day responsibility and one of the *Smith* counsel, Joseph Antonelli, would be co-lead and operate if I was unavailable. When Damian Fernandez, additional counsel in the *Smith* action, decided not to honor the agreement, Mr. Antonelli and the other counsel who agreed to my lead counsel position, Kevin Barnes, withdrew from the case. Mr. Fernandez later decided that he did not want to honor that agreement, but wanted to move instead to disqualify me on several grounds, only one of which, the alleged conflict between this case and *Steiner*, he has chosen to pursue. As we will describe in more detail in our opposition papers, there is no conflict. As the Court is aware, when expressly asked at our last conference, none of the counsel in this case thought that *Steiner* was related.

**Conclusion**

21.    The decision to be made by the Court is not who will work on the case, but who will lead. As the Court observed at the last conference, attorneys can work on a case in different capacities. I have no doubt that I can work, and constructively, with the other counsel in this case, each of whom brings different strengths to the litigation team. But leadership requires experience and judgment–what claims do we pursue, how do we pursue them. When do we fight, when do we settle. These judgments must be made maturely, based on what is best for the class, and not what is easiest for counsel. The judgments and choices I have made in this case, as in others, demonstrate that I am the proper choice for interim lead counsel for the class.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 3, 2003

                                                      MAX FOLKENFLIK

# EXHIBIT A

**MAX FOLKENFLIK**
FOLKENFLIK & McGERITY
1500 Broadway, 21st Floor
New York, New York 10036
Tel: (212) 757-0400
Fax: (212) 757-2010
e-mail: mfolkenflik@fmlaw.net

**FOLKENFLIK & McGERITY, Attorneys at Law:** Specializing in Litigation in all Courts, particularly Class Actions, Securities and Complex Litigation, Corporate and Partnership Disputes, Accountants' Liability, RICO and Securities Arbitration

**Admissions:** New York Bar
U.S. Supreme Court
U.S. Court of Appeals, Second Circuit
U.S. Court of Appeals, Third Circuit
U.S. Court of Appeals, First Circuit
U.S. District Court, Southern & Eastern Districts of New York
U.S. Tax Court
*Pro Hac Vice* in the United States District Courts of Massachusetts, the Central District of California, and the Eastern District of Pennsylvania, Northern District of Illinois, District of Nebraska, and in State Courts in California, Pennsylvania, Massachusetts and New Jersey

**Education:** Cornell University (B.S., 1970)
Georgetown University (J.D., 1975)
Member, 1973-1974, Editor, 1974-1975, Georgetown Law Journal

**Experience:**
1975   KRONISH, LIEB, WIENER & HELLMAN, LLP (Associate)
1979   CRAVATH, SWAINE & MOORE (Associate)
1983   MORRISON COHEN SINGER & WEINSTEIN, LLP
       (formerly Morrison, Paul & Bailey) (Founding Partner)
1985   FOLKENFLIK & McGERITY
       (formerly Wistendahl & Folkenflik) (Founding Partner)

Max Folkenflik started the firm specializing in substantial commercial litigation. Today the firm's strong concentration is in securities fraud and business torts, and matters involving complex business, accounting or financial issues, including accountants' liability and class actions. The firm makes extensive use of new technologies to leverage its manpower and to develop cost-effective approaches to its cases. The firm's practice is active in both federal and state courts, in New York and other states (including California, Massachusetts and Pennsylvania by special admission), and in arbitration.

**Publications in Field of Expertise:**

*Author:*  "No Audit, No Legal Liabilities, The Role of *Iselin v. Mann Judd Landau* in Limiting Liability," No Audits; No Legal Liability? Massachusetts Society of CPA's Quality Review Committee, June 1988

*Author:*  "Accountant's Liability for Compilation and Review Engagements," The Independent Accountant: Surviving in Today's Environment, California Society of CPA's, Nov., 1989

*Co-Author:*  "The Impact of the Mann Judd Landau Case," The CPA Journal, October, 1988. Winner, New York State Society of Certified Public Accountants Max Block Distinguished Article Award.

**Memberships:**

The Association of the Bar of the City of New York
American Bar Association  (Member, Sections on:  Litigation, Corporation, Banking and Business Law)

**Representative Matters Involving Class or Mass Actions**

Currently Chairman of the Steering Committee (lead counsel) in **Hoffman v. American Express Travel Related Services**, where we succeeded in blocking approval of a class action settlement in January 2004, and were appointed lead counsel for objectors. After 7 months of expedited discovery, we uncovered the fact that the prior proposed settlement was based on misrepresentations by American Express, to the Court and Class Counsel, and as a result, the Class Counsel withdrew from the settlement, the Court rejected it, and all counsel have re-constituted into a steering committee to pursue the case. Trial is set for May 2006.

Currently counsel for plaintiff in **Gasman v. Morgan Stanley**, a class action on behalf of Morgan Stanley securities brokers alleging that deductions were made from the brokers' salary and payment for overtime was earned and not paid in violation of state and federal law.

Currently counsel for plaintiff in **Telco v. Ameritrade, Inc.** a class action on behalf of Ameritrade customers who suffered losses because their trades were not executed in compliance with contractual and legal duties of "best execution."

Co-counsel with primary responsibility for financial and accounting issues for a class of investors in **Hopkins v. Branham** (Sunrise Auto Partners, L.P.), in an action brought in the

2

Southern District of New York. The case settled for $16.3 million, equaling a 90% recovery for the Class.

Currently counsel in **Jean Boudreaux, et al. v. The State of Louisiana, Department of Transportation, et al.** seeking New York enforcement of a $280 million class action judgment against the State of Louisiana on appeal to the New York Court of Appeals.

Acted in general counsel role for an accounting firm, a primary defendant, in supervising **In re: Cannon Pictures Securities Litigation**, a class action brought in the United States District Court for the Middle District of California. Personally negotiated $35 million global settlement with class counsel and co-defendants' counsel.

Co-counsel for objectors and proposed intervenors (primary responsibility for financial and accounting issues) in **Morton v. Resources High Equity, Inc.**, objecting to settlement in a large real estate partnership Class Action brought in the California State Court. Objections to settlement were upheld and fees awarded in connection with substantially improved settlement.

Co-counsel for approximately 60 limited partners in an action **Karr v. Emerson Radio Corp.**, brought in the United States District Court for the Southern District of New York against a real estate partnership syndication and general partners arising out of alleged misleading financial statements and misleading statements in offering materials. The case ended in a two-part settlement with clients recovering 100% of loss.

Counsel in **Inrevco Associates, Inc. v. BDO Seidman**, an action brought in the State Court of New Jersey for over 30 partners of an accounting firm sued by a former client (limited partnership) for multi-million dollar professional liability damages. Action settled without liability to clients and part payment by co-defendants of clients' legal fees.

### Additional Representative Matters Involving Securities Issues

Currently counsel for the Dictaphone Litigation Trust in **Nisselson v. Lernout** seeking damages for injury to Dictaphone Corporation resulting from its fraudulently-induced $900 million merger into a subsidiary of Lernout & Hauspie, N.V.

Counsel for owners of acquired corporation in **Brainstorms Internet Marketing, Inc. v. USA Networks, Inc.** seeking over $4 million for breach of an option agreement.

Counsel for investment advisors in **Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Management, Inc.** seeking over $6 million for breach of a covenant not to compete.

Currently counsel for individual plaintiffs in several actions relating to the A.R. Baron stock manipulation, seeking an aggregate of $11.5 million compensatory damages (before trebling) in the United States District Court for the Southern District of New York, including **Baxter v. A.R. Baron** (favorably settled) and **Fezzani v. Bear Stearns**, the largest private action against Bear Stearns & Co. arising out of the A.R. Baron collapse. Represented

clients in five separate related bankruptcy proceedings, one of which resulted in a $27.5 million judgment. Sat on Creditors' Committee in the three proceedings where a committee had been established.

Counsel in **In re Crazy Eddie Securities Litigation** for a public corporation and its chief executive officer, investors who acquired control of Crazy Eddie, Inc. Consolidated class action and private actions, brought in the Eastern District of New York, resulted in a settlement of $7.5 million for clients (the largest private recovery) from the directors, officers and accountants. Personally led settlement negotiations for all private plaintiffs.

Counsel for option trading firm in arbitration over contract with option trader, including multi-million dollar counterclaims. Arbitration award for option trading firm. All counterclaims dismissed.

Counsel for an investment fund, **Kidder Peabody & Co. v. Collins CMO Fund, Inc.**, established by multi-billion dollar institutional investor to invest in Collateralized Mortgage Obligations ("CMOs") in actions against Kidder Peabody, Merrill Lynch, Lehmann Bros. and Askin Capital Management (both asserting and defending claims) arising out of the collapse of the CMO market in March 1994. Client suffered $40 million in losses. All actions were settled on favorable terms.

Counsel for a number of separate clients in disputes over purchases of publicly syndicated real estate and limited partnerships, including one client group with losses of approximately $2 million, which settled with a broker-dealer for 100% of their losses plus interest after 12 days of arbitration. Counsel for another group which settled for $1 million in damages which, together with tax benefits in settlement, and received approximately 100% of their loss.

## Additional Representative Matters Involving Accounting and Corporate Issues

Counsel for the former head of Club-Med in **Trigano v. Bain**, a suit against a consulting firm for a conspiracy with certain shareholders to mislead other shareholders and force client's resignation.

Counsel for accounting firm defendant in **In re Masters Mates and Pilots**, an action brought in the United States District Court for the Southern District of New York, which involved alleged breaches of duty by investment advisors, leading to approximately $35 million in losses to a pension fund. The result was a multi-million dollar settlement with all accounting and legal professionals. Action dismissed as to our client without any settlement payment.

Outside general litigation counsel for a national accounting firm. The firm was ultimately merged into a "Big Six" firm, where we were merger counsel. In that capacity, we provided advice on a wide variety of accountants' liability matters, negotiated the resolution of client disputes, and generally supervised class action litigation, S.E.C. investigations and AICPA internal reviews, as well as served as primary litigation counsel.

Counsel in *First Options of Chicago, Inc. v. Wallenstein* in the United States District Court in Pennsylvania representing an accountant sued for $8 million by the creditor of the accountant's client who alleges fraud by the accountant, resulting in summary judgment for client.

Counsel for the owner of a New York City office building in an arbitration involving accounting issues arising under a large commercial lease, and related court litigation *In re Jack Kent Cooke, Inc.* resulting in dismissal by Court, pre-arbitration, of all fraud claims and other claims covering numerous years.

**Significant Reported Cases**

*Telco Group, Inc. v. Ameritrade, Inc.*, Index No. 05-cv0387 (D. NE 2007) (class action regarding "best execution"); *Jean Boudreaux, et al. v. The State of Louisiana, Department of Transportation, et al.*, Index No. 111287/06) (1st Dep't 2008) (suit to enforce $280 million judgment); *Alan Nisselson, Trustee of the Dictaphone Litigation Trust, successor-in-interest to claims of Dictaphone Corporation v. Jo Lernout, et al.*, U.S. Court of Appeals for the First Circuit, Index No. 05-1774 (2006); *Fundamental Portfolio Advisors, Inc., et al. v. Tocqueville Asset Management, L.P., et al.*, Court of Appeals, State of New York, Index No. 110909/01; *Fezzani v. Bear Stearns & Co.*, 99 Civ. 0793, 2005 U.S. Dist. LEXIS 3266, (S.D.N.Y. March 2, 2005) (representing plaintiff, granting motion for leave to amend in part, denying RICO alternative pleading as futile), 2004 U.S. Dist. LEXIS 15610, (S.D.N.Y. August 10, 2004) (granting reconsideration in part and alleging re-pleading of fraud claims); 2004 U.S. Dist. LEXIS 5825, (S.D.N.Y. April 6, 2004) (denying in part motions to dismiss); *Brainstorms Internet Mktg. V. USA Networks, Inc.*, 6 A.D. 3d 381; 775 N.Y.S.2d 844 (1st Dep't 2004) (representing plaintiff, reversal of grant of motion to dismiss); *Trigano v. Bain & Co.*, No. 03-1319, 380 F.3d 22 (1st Cir. 2004) (affirming directed verdict); *Nisselson v. Lernout*, Civil Action No. 03-10843-PBS, 2004 U.S. Dist. LEXIS 13648 (D. Mass. 2004) (representing plaintiff, action by Trustee dismissed on standing, presently under appeal); *Spiegel v. D.H.Blair & Co., Inc.*, 733 N.Y.S.2d 602 (1st Dep't 2001) (representing plaintiff, denying expansion of pre-arbitration attachment from $2.1 million to $7.5 million); *Thomas v. A.R. Baron & Co.*, 95 Civ. 1615 (JGK), 967 F.Supp. 785 (S.D.N.Y. 1997) (representing plaintiff, defendants' motion to compel arbitration granted); *First Options of Chicago Inc. v. Wallenstein*, 92 Civ. 5770 (HJH), 1997 U.S. Dist LEXIS 2051 (February 28, 1997) (representing accountant defendant, defendant's motion for summary judgment granted); *Baxter v. A.R. Baron & Co.*, 94 Civ. 3913 (JGK), 1996 U.S. Dist. LEXIS 15098, (S.D.N.Y. September 30, 1996) (representing plaintiff, complaint asserting securities fraud, market manipulation and RICO violations upheld); *same case* 1996 U.S. Dist. LEXIS (18242 S.D.N.Y. December 10, 1996) (Katz, Magistrate Judge) (Plaintiff's Motion to Compel Production of SEC Transcripts granted); *In re Jack Kent Cooke Inc.*, 222 A.D.2d. 334, 635 N.Y.S.2d 611 (1st Dep't, 1995) (representing defendant, case dismissed); *In re Crazy Eddie Securities Litigation*, 812 F.Supp. 338 (E.D.N.Y. 1993) (representing certain plaintiffs, securities, RICO, accounting fraud, RICO pleading against accountant upheld); *William Iselin & Co., Inc. v. Mann Judd Landau*, 71 N.Y. 420 (1988) (representing Defendant, accounting negligence and fraud, summary judgment for defendant); *Kidder v. Collins CMO Fund Ltd.*, 94 Civ.

3598 (DAB), 879 F. Supp. 406 (1995) (representing defendant, arbitration ordered); ***Hackensack Cars, Inc. v. Lifestyle Limousine Serv. Corp.***, 87 Civ. 2764 (RWS), 1990 U.S. Dist. LEXIS 6391, May 25, 1990 (representing plaintiff, summary judgment for plaintiff granted); ***Anitora Travel, Inc. v. Lapian***, 87 Civ. 0015 (PKL) 677 F. Supp. 209, S.D.N.Y. (1988) (representing defendant, RICO case dismissed); ***Lester v. Basner***, 676 F.Supp. 481 (S.D.N.Y. 1987) (representing plaintiff in securities fraud suit, defendants' motion to compel arbitration denied); ***Pierson v. United States***, 472 F.Supp. 957 (D. Del. 1979) (representing plaintiff ITT in challenge to revocation of Letter Ruling, summary judgment for plaintiff); ***Reeves v. Commissioner***, 71 T.C. 727 (U.S. Tax Court 1979) (same as *Pierson*).