FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
ALEXANDER H. SCHMIDT (*pro hac vice*)
schmidt@whafh.com
MARTIN E. RESTITUYO (*pro hac vice*)
restituyo@whafh.com
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile: 212/545-4677

Attorneys for Plaintiff Herbert H. Kliegerman

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE & AT&TM ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Master File No. C 07-5152 JW

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF KLIEGERMAN'S CROSS-MOTION FOR APPOINTMENT OF INTERIM LEAD CLASS COUNSEL**

DATE:       April 7, 2008
TIME:       9:00 a.m.
CRTRM:    8
JUDGE:     Hon. James Ware

I.    **INTRODUCTION**

Plaintiff Herbert H. Kliegerman respectfully submits this reply memorandum in further support of his cross-motion to appoint Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein" or "the Firm") interim lead class counsel in these consolidated actions.  Plaintiff files this reply to correct factual inaccuracies and other misstatements made by Messrs. Fernandez and Folkenflik in their firms' papers opposing his cross-motion.[1]

II.   **ARGUMENT**

A.    **The *Kliegerman* Action is not a "Copycat" Lawsuit**

Co-plaintiffs' counsel are in error when they suggest that Wolf Haldenstein has spent "limited" time investigating this case (Folkenflik Decl. Opp. at ¶12) and has brought a "copycat" lawsuit that does not "bring anything new to the case" (Fernandez Mem. Opp. at 2, ¶5).  Even a cursory comparison of the three operative complaints in these consolidated actions reveals their extensive dissimilarities, both as to substance and style.  *Compare* Folkenflik Decl. Opp., Exhs. C, E and G.

For example, Mr. Fernandez's complaint (*Id.,* Exh. C at ¶¶117-206) contains 14 causes of action, including two California Cartwright Act antitrust claims and two federal Sherman Act claims, but also including claims based on alleged violations of the California Penal Code, the federal civil RICO statute and several California warranty, consumer protection and unfair competition statutes.  Mr. Folkenflik's complaint (*Id.*, Exh. G at ¶¶76-105) contains six causes of action, including California and federal antitrust claims, a California consumer protection statute claim similar to claims filed by Mr. Fernandez, as well as claims for Trespass to Chattels and for an Accounting that are not included among Mr. Fernandez's claims.  The complaint drafted by Wolf Haldenstein on behalf of plaintiff Kliegerman (*Id.*, Exh. E at ¶¶97-144), asserts eight causes of action.  Unlike the complaints drafted by Messrs. Fernandez and Folkenflik, which assert only California-based consumer protection claims, the complaint drafted by Wolf Haldenstein asserts

---

[1]    On March 17, 2008, Mr. Fernandez's firm filed a Memorandum of Law in Opposition to the Motions for Appointment of Interim Lead Counsel Filed by Counsel for Kliegerman and Holman ("Fernandez Mem. Opp."), and Mr. Folkenflik's firm filed a Memorandum of Law in Opposition to the Motion to Disqualify Counsel and Motions to Appoint Fernandez or Wolf Haldenstein as Interim Lead Counsel ("Folkenflik Mem. Opp.") and a supporting Declaration ("Folkenflik Decl. Opp.").

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF KLIEGERMAN'S CROSS-MOTION FOR APPOINTMENT OF INTERIM LEAD CLASS COUNSEL - Master File No. C 07-05152 JW

1  consumer protection claims on behalf of aggrieved iPhone customers in 43 jurisdictions, in

2  addition to California, in which the consumer protection statutes at the time of filing authorized

3  private class actions as an available remedy.

4      The most notable substantive differences between the complaint drafted by Wolf

5  Haldenstein and those prepared by Messrs. Fernandez and Folkenflik pertain to the nature of the

6  antitrust claims asserted, which of course lie at the crux of these cases.  Mr. Folkenflik's complaint

7  asserts four antitrust counts, which appear to conjoin six or more different types of antitrust

8  claims.  Initially, it asserts, in the First Count, what appears to be a tying claim merged with

9  claims for "unlawful monopolistic activity" and "unreasonable restraint of trade."  *Id.*, Exh. G at

10  ¶¶79-80.  Without providing any of the reasonably detailed market identification and market

11  power allegations customary for tying or monopoly claims, Mr. Folkenflik's complaint states

12  baldly that Apple has "monopoly power" in the "iPhone market" and that the "iPhone is a unique

13  product" as to which there are no reasonable substitutes.  Mr. Folkenflik's First Count then alleges

14  that Apple has unlawfully tied the sale of iPhones to the sale of other products, such as Apple's

15  ringtones and AT&TM's voice and data services, and that these practices and unlawful agreements

16  create an "unreasonable restraint of trade" and "threaten to extend Apple's monopoly power" in

17  the "iPhone market" into the tied product markets.  *Id.* at ¶80.

18      In the Second Count, Mr. Folkenflik's complaint asserts that Apple and AT&TM

19  combined to create "an unlawful trust" and entered into an agreement that "may ... substantially

20  lessen competition and create a monopoly…."  *Id.* at ¶88.  The Third Count of Mr. Folkenflik's

21  complaint, which is styled as being brought under Section 1 of the Sherman Act, 15 U.S.C. §1,

22  does not specifically allege a tying claim, which is normally brought under Section 1, but instead

23  asserts a claim for an "unreasonable restraint of trade" that "threaten[s] to extend Apple's

24  monopoly power" in the "iPhone market" to the "GSM wireless voice services market, GSM

25  wireless data services, ringtone market and other markets for mobile telephone applications."

26  Folkenflik Decl. Opp.. at ¶91.

27      Finally, in the Fourth Count, Mr. Folkenflik's complaint asserts a claim, under Section 2 of

28  the Sherman Act, 15 U.S.C., §2, for "specific intent to monopolize" a "relevant market" and "to

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF KLIEGERMAN'S CROSS-MOTION FOR
APPOINTMENT OF INTERIM LEAD CLASS COUNSEL - Master File No. C 07-05152 JW

1  control prices or destroy competition" in the "United States wireless voice services market, the

2  United States wireless data services [market], the market for ringtones generally or specifically for

3  ringtones sold for use with the iPhone and other markets for mobile telephone applications

4  generally and markets for such applications … for use with the iPhone...." *Id.* at ¶95.  Mr.

5  Folkenflik's Section 2 count does not assert claims for attempted monopolization or conspiracy to

6  monopolize any market or submarket.

7        A common theme underlying each of Mr. Folkenflik's antitrust claims is reliance on the

8  iPhone itself as being an economically distinct product market. While other difficulties with Mr.

9  Folkenflik's pleading potentially abound,[2] his tactical choice to rely entirely on a single product

10  market definition is questionable given that a single product market is one of the most difficult

11  market constructs to prove in antitrust law.   Since he admits that he has not yet retained a

12  reputable antitrust economist against whom to test his market definition theory, Mr. Folkenflik

13  cannot responsibly feel sanguine about whether he has pled sustainable antitrust claims.  Indeed,

14  the fact that Mr. Folkenflik failed to utilize an expert in drafting his complaint is itself indicative

15  of his lack of expertise in antitrust law.  Drafting an antitrust complaint with an expert is common

16  practice and serves to effectively test the economic viability of antitrust theories and to obtain

17  assurance that the claims are sustainable.   Just as in a complicated medical malpractice case a

18  physician is consulted, and in a complicated product defect case an engineer is consulted; here too,

19  consultation with an expert ensures that complex antitrust claims are well-pled.   Only Wolf

20  Haldenstein has investigated these claims properly by consulting with an economist to test the

21  economic viability of its theories.

22        Mr. Fernandez's complaint asserts two California and two federal antitrust claims.   The

23  two state claims assert a "*per se*" tying claim under two different Cartwright Act provisions,

24  sections 16720 and 16727.  Folkenflik Decl. Opp., Exh. C at ¶¶117-127.  Mr. Fernandez's Third

25

26  ──────────────
    [2]       While perhaps consistent with his lack of antitrust experience, Mr. Folkenflik's imprecise mixing
27  of antitrust concepts and theories makes for cumbersome reading, to say the least.  With all due respect for
    his accomplishments in other areas of the law, Mr. Folkenflik simply has not demonstrated sufficient
28  familiarity and facility with antitrust law to be appointed lead counsel entrusted to represent the potentially
    millions of class members in this antitrust litigation.

1    Cause of Action is a Sherman Act Section 1 tying claim nearly identical to his two state claims.

2    Folkenflik Decl. Opp., Exh. C at ¶¶128-131.   Despite recent United States Supreme Court

3    authority that has curtailed application of the *per se* label to tying claims, Mr. Fernandez has not

4    expressly pled an alternative tying claim under the rule of reason.   As such, Mr. Ferenandez's *per*

5    *se* tying claim is inconsistent with recent Supreme Court precedent curtailing use of the *per se*

6    label for tying claims.   *Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 35-37

7    (2006). This is also demonstrative of Mr. Fernandez's lack of experience and expertise in antitrust

8    law.

9         Mr. Fernandez's Fourth Cause of Action is mis-labeled as a Sherman Act Section 2

10   "Monopolization" claim, 15 U.S.C. §2, but it merely reasserts the tying claim combined with the

11   concept of "unlawful trusts," stating that "Apple and AT&T[M] have engaged in a *per se* tying

12   arrangement and unlawful trusts for their Antitrust Conduct and harm discussed above[.]"

13   Folkenflik Decl. Opp., Exh. C at ¶133.   Mr. Fernandez's Section 2 claim does not facially plead

14   the elements of a monopolization claim, an attempted monopolization claim or a conspiracy to

15   monopolize claim. *See id.* at ¶¶132-135.[3]

16        Mr. Fernandez's market definition appears at some places in the complaint to differ

17   materially from Mr. Folkenflik's, but at other places it appears to be the same.   Initially, Mr.

18   Fernandez asserts that the relevant product market, as against Apple, is the "SIM Card-

19   Smartphone Market," of which Mr. Fernandez asserts discovery will show Apple controls 30%.

20   *Id.* at ¶62.   Later, however, Mr. Fernandez asserts a single product market theory by alleging that

21   "Apple has sufficient economic power in the tying market (the iPhone) to coerce the purchase of

22   the tied product (AT&T's cell phone service and iTunes Media) because it has a 100% market

23   share of the iPhone." *Id.* at ¶72.   Mr. Fernandez then later reverts to a "SIM-Smartphones" market

24   definition, the geographic scope of which he alleges is "worldwide." *Id.* at ¶¶106, 108.

25        As against AT&TM, Mr. Fernandez appears to assert that the relevant product market is

26

27   ─────────────
     [3]      Though the extent of his factual research of the underlying events is commendable, Mr.
28   Fernandez's muddling of antitrust concepts and claims, similar to Mr. Folkenflik's, reflects that he likewise
     lacks sufficient grounding in antitrust law and analysis to adequately lead these cases.

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF KLIEGERMAN'S CROSS-MOTION FOR
APPOINTMENT OF INTERIM LEAD CLASS COUNSEL - Master File No. C 07-05152 JW
                                                                                      - 4 -

1   the "Cell Phone Market," which he describes as including voice and data services, email, internet

2   accessing and Multimedia Messaging Service for transmitting photos and videos. *Id.* at ¶63.  Mr.

3   Fernandez asserts that AT&TM has 27.1% of the "United States" Cell Phone Market. *Id.* The

4   relevance of that allegation is unclear given his alleged worldwide geographic market.

5           Mr. Fernandez's "SIM-Smartphone" and "Cell Phone" markets may be more economically

6   viable than Mr. Folkenflik's single product market, but few modern antitrust cases have held that

7   market shares of 30% or less are sufficient to prove market power in Section 1 tying cases or to

8   prove monopoly power under Section 2. *See e.g., Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466

9   U.S. 2, 26-27 (1984).   While the Defendants' low market shares may not be fatal to Mr.

10  Fernandez's antitrust claims, especially if he can prove actual anticompetitive impact from the

11  Defendants' conduct in the form of higher prices, reduced output or otherwise, Mr. Fernandez, like

12  Mr. Folkenflik, has not obtained an expert economist on whose analysis he can base any degree of

13  confidence that his antitrust claims will be sustained.   Again, as with Mr. Folkenflik, Mr.

14  Fernandez's failure to do so demonstrates a lack of expertise and experience in antitrust law that

15  may prove critical in prevailing against these defendants - two large corporations with vast

16  resources and lawyers well-equipped with antitrust experience to defend this case.

17      **B.      The *Kliegerman* Complaint Brings Substantially Different and
                Sustainable Antitrust Claims**

18          The antitrust theories and claims in the Kliegerman complaint drafted by Wolf Haldenstein

19  differ substantially from those drafted by Messrs. Folkenflik and Fernandez.    Wolf Haldenstein

20  has not asserted any tying or other Section 1 claims.  Nor has Wolf Haldenstein asserted any

21  Section 2 claims that require plaintiffs to meet the difficult burden of proving that the iPhone is an

22  economically viable single product market or that Apple has substantial market power in a

23  "SIM-Smartphone" (or similar) market.    Instead, in each of its Counts I through V, Wolf

24  Haldenstein has asserted a specific type of Section 2 claim – known as a "*Kodak*" claim – in which

25  the extent of market competition faced by the iPhone itself is legally irrelevant, and the only

26  pertinent economic inquiry is whether the ***aftermarket*** for products that can be used only in

27  connection with an iPhone – like iPhone compatible voice and data services, ringtones, email and

28

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF KLIEGERMAN'S CROSS-MOTION FOR
APPOINTMENT OF INTERIM LEAD CLASS COUNSEL -  Master File No. C 07-05152 JW

1   multimedia applications – is economically distinct.   *See* Folkenflik Decl. Opp.,   Exh. E at
2   ¶¶97-127; *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 481-82 (1992).

3        Unlike Messrs. Folkenflik and Fernandez, Wolf Haldenstein took the prudent and
4   reasonable step of obtaining the opinion of a leading antitrust economist with considerable
5   communications industry experience to test the economic viability of its antitrust theories and to
6   obtain assurance that its plaintiff's antitrust claims are sustainable.   Accordingly, Wolf
7   Haldenstein knows that its antitrust theories are imminently provable in this case.

8        In sum, while the factual context underlying each of the three related consolidated actions
9   is the same, there is no truth to Mr. Fernandez's contention that Wolf Haldenstein has merely
10  identified "factual and legal issues ... copied from other counsel" and has not demonstrated
11  "vision, initiative, and originality of ideas." Fernandez Mem. Opp., at 2, ¶¶3, 5.  As shown above,
12  the truth is quite the opposite.  Wolf Haldenstein and its co-counsel have spent over 320 hours on
13  this matter, including analyzing the merits of the various potential antitrust claims in this action
14  and preparing the Kliegerman complaint.  *See* Reply Affidavit of Alexander H. Schmidt in Further
15  Support of Plaintiff Kliegerman's Cross-Motion for Appointment of Interim Lead Class Counsel,
16  ¶2, filed herewith.  In addition, Wolf Haldenstein's economics firm spent 40 more hours assessing
17  the relevant market and economic issues.  *Id.*  Far from being a "copycat," Wolf Haldenstein has
18  brought, and as interim lead counsel will continue to bring, to these consolidated cases what
19  Messrs. Fernandez and Folkenflik cannot bring:  the antitrust and class action expertise necessary
20  to prevail in this lawsuit against large and well-represented adversaries.

21       Of the three firms seeking lead counsel appointment, only Wolf Haldenstein has the
22  antitrust expertise to responsibly separate the wheat from the chaff of competing antitrust theories
23  when preparing a consolidated amended complaint; only Wolf Haldenstein has the resources and
24  muscle to compete aggressively against these Defendants through trial if necessary; only Wolf
25  Haldenstein has the substantive knowledge to accurately and fairly evaluate the Plaintiff classes'
26  claims for settlement purposes; and only Wolf Haldenstein has investigated the antitrust claims
27  properly, with the aid of an economist.  The lead counsel position should not be granted to a one
28  or two-person firm that has no demonstrated antitrust acumen or experience.

**C.    AT&TM's Intent to Seek Arbitration Against Kliegerman is Irrelevant**

Mr. Folkenflik is off base in arguing that Wolf Haldenstein should not be named lead counsel because AT&TM will move to arbitrate Kliegerman's claims against AT&TM. These are competing motions under Rule 23(g) to be appointed interim lead class counsel in an antitrust case. They are not motions for appointment of a lead plaintiff, which is not provided for in Rule 23(g).    Fed. R. Civ. P. 23(g).    Thus, any possible defenses AT&TM may assert to plaintiff Kliegerman's claims are irrelevant. Even if AT&TM does move to arbitrate Kliegerman's claims and even if it prevails, and even if plaintiff Kliegerman's claims against Apple are stayed – which is unlikely – Wolf Haldenstein still can and should be appointed lead counsel for the Classes in this case because it is overwhelmingly the firm best suited to carry out the duties of that position.

**III.    CONCLUSION**

Accordingly, for these and all the reasons previously stated, plaintiff Kliegerman respectfully submits that appointment of Wolf Haldenstein as interim lead class counsel is appropriate.

DATED: March 24, 2008

Respectfully Submitted,

WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT


_____/s/ Francis M. Gregorek_____
FRANCIS M. GREGOREK

Symphony Towers
750 B. Street, Suite 2770
San Diego, California 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF KLIEGERMAN'S CROSS-MOTION FOR APPOINTMENT OF INTERIM LEAD CLASS COUNSEL - Master File No. C 07-05152 JW

- 7 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
MARK C. RIFKIN (*pro hac vice*)
ALEXANDER H. SCHMIDT (*pro hac vice*)
MARTIN RESTITUYO (*pro hac vice*)
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:  212/545-4677
rifkin@whafh.com
schmidt@whafh.com

RANDALL S. NEWMAN, P.C.
RANDALL S. NEWMAN
The Trump Building
40 Wall Street, 61st Floor
New York, New York 10005
Telephone:  212/797-3737
Facsimile:  212/797-3172
rsn@randallnewman.net

SHABEL & DENITTIS, P.C.
STEPHEN P. DENITTIS (*pro hac vice*)
NORMAN SHABEL (*pro hac vice*)
5 Greentree Centre, Suite 302
Marlton, New Jersey 08053
Telephone:  856/797-9951
Facsimile:  856/797-9978
sdenittis@shabeldenittis.com

Attorneys for Plaintiff Herbert H. Kliegerman

APPLE: 15939.BRIEF

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF KLIEGERMAN'S CROSS-MOTION FOR
APPOINTMENT OF INTERIM LEAD CLASS COUNSEL -  Master File No. C 07-05152 JW