M. Van Smith (CA Bar No. 32007)
Damian R. Fernandez (CA Bar No. 206662)
LAW OFFICE OF DAMIAN R. FERNANDEZ
14510 Big Basin Way, Suite A, PMB 285
Saratoga, California 95070-6091
Telephone: (408) 355-3021
Facsimile: (408) 904-7391
Email:   mvsmith@sbcglobal.net
             damianfernandez@gmail.com

Attorneys for Plaintiffs Vincent Scotti,
Dennis V. Macasaddu, Mark G. Morikawa,
Timothy P. Smith, and Michael G. Lee

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

| | |
|---|---|
| In Re Apple & AT&TM Anti-Trust Litigation | NO. C 07-05152 JW<br><br>**REPLY MEMORANDUM IN SUPPORT OF THE SMITH PLAINTIFFS MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL**<br><br>Date:   April 7, 2008<br>Time:  9:00 AM<br>Judge: Honorable James Ware |

Plaintiffs Vincent Scotti, Dennis V. Macasaddu, Mark G. Morikawa, Timothy P. Smith, and Michael G. Lee ("Smith Plaintiffs") submit this reply memorandum of law in support of their Motions For Appointment Of Interim Lead Counsel.

**ARGUMENT**.

**1.   Because Wolf Haldenstein's analysis of the antitrust issues in this case is facially unsustainable based on basic antitrust precedent, they have demonstrated that they cannot effectively represent the classes as sole-lead counsel.**

With all due respect to Wolf Haldenstein and their economists, their analysis of the antitrust issues in this case is wrong. To impress and persuade this Court that Wolf Haldenstein has the

experience and expertise for the antitrust issues in this case, Wolf Haldenstein, to their detriment boasts the following:

1. "Only Wolf Haldenstein has investigated these [antitrust] claims properly by consulting with an economist to test the economic viability of its theories," (Wolf's Reply Memorandum, 3:19-21.);

2. "… Wolf Haldenstein took the prudent and reasonable step of obtaining the opinion of a leading antitrust economist with considerable communications industry experience to test the economic viability of its antitrust theories and to obtain assurance that its plaintiff's antitrust claims are sustainable. Accordingly, Wolf Haldenstein knows that its antitrust theories are imminently provable in this case." (Id, 6:3-7)

3. Wolf Haldenstein and its co-counsel have spent over 320 hours on this matter, including analyzing the merits of the various potential antitrust claims in this action …" (Id., 6:12-13)

4. "… Wolf Haldenstein's economic's firm spent 40 more hours assessing the relevant market and economic issues." (Id., 6:16-17.)

5. "Wolf Haldenstein has brought … what [other counsel] cannot bring: the antitrust and class action expertise necessary to prevail in this lawsuit …" (6:17-20.)

6. " … only Wolf Haldenstein has the antitrust expertise to *responsibly* separate the wheat from the chaff of competing antitrust theories when preparing a consolidated amended complaint" (6:12-23.) (Emphasis added.)

Fatal to its alleged expertise in *this* case is Wolf's statement that it "has asserted a specific type of Section 2 claim – known as a "Kodak" claim – in which the extent of market competition faced by the iPhone itself is legally irrelevant, and the *only pertinent economic inquiry* is whether the aftermarket for products that can be used only in connection with an iPhone – like iPhone compatible voice and data services, ringtones, email and multimedia applications – is economically distinct. (Wolf's Reply, 6:23-27, 7:1-2 citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.* 504 US 451, 481-81 (1992). (Emphasis Added.)

A complaint may be dismissed under Rule 12(b)(6) if the complaint's "relevant market"

definition is facially unsustainable. *See Queens City Pizza, Inc. v. Domino's Pizza, Inc.* 124 F.3d 430, 436-37 (3d Cir. 1997.) The 9th Circuit has held that the law prohibits an antitrust claimant from resting on market power that arises solely from contractual rights that consumers knowingly and voluntarily gave to the defendants as was the case in *Queens City Pizza, Inc. v. Domino's Pizza, Inc.* 124 F.3d 430 (3d Cir. 1997) and *Forsyth v. Humana, Inc.,* 114 F.3d 1467 (9th Cir 1997). *Newcal Indus. v. IKON Office Solution,* 2008 WL 185520 (9th Cir. 2008).) *Newcal* stated that the "critical distinction between *Eastman Kodak* and [*Queens City Pizza* and *Forsyth*] was that the Kodak customers did not knowingly enter a contract that gave Kodak the exclusive right to provide parts and services for the life of the equipment." (*Eastman Kodak*, Slip Opn. p. 980.) Here, the first amended complaint in *Kliegerman* alleges that "[Kliegerman] also executed a two-year contract with AT&T for provision of wireless voice and data services". Unlike Eastman Kodak, Kliegerman knowingly entered into a contract that gave AT&T the exclusive right to provide wireless voice and data services. The Kliegerman antitrust claims are therefore exactly like *Queens City Pizza* and *Forsyth* and not at all like *Kodak*.

Despite Wolf Haldenstein's alleged antitrust expertise, their alliance with several other outside firms, their 320 hours of antitrust analysis and consultation with antitrust economists, they are arguing antitrust theories that are facially unsustainable. For this reason, they should not be designated as sole-lead counsel because their judgment needs to be balanced by other counsel.

**2.    Wolf Haldenstein (Wolf) does not have a representative client.**

In the First Amended Complaint. Wolf brings causes of action for:

1.    Antitrust

2.    Breach of warranty action under the federal Magnuson-Moss Warranty Act; and

3.    Trespass to Chattels.

///

///

///

///

///

**a.     As to the causes of action, Kliegerman is not representative of the class.**

On the first cause of action for antitrust, Kliegerman will be locked into binding arbitration under New York law.[1] If he litigates the anti-trust issue in California against Apple, there is a risk of inconsistent results from the arbitration. Further, Wolf would have a conflict of interest because it would have "the appearance of divided loyalties".[2] It may be inclined to settle with AT&T in the less favorable forum of arbitration than if it had the clients that could prosecute a nationwide class action in federal court.

On the second cause of action for breach of warranty, Kliegerman does not have a warranty claim because his iPhone was not bricked.

On the third cause of action for trespass to chattels, Kliegerman did not have third party applications removed from his phone or otherwise have his phone tampered with by Apple.

**b.     As to damages, Kliegerman is not representative of the class.**

The only monetary damages suffered by their **<u>one client</u>** Kliegerman is that he incurred roaming charges.

As to all damages incurred by the class, Kliegerman does not have the following damages, all of which, the 5 class representatives of Fernandez have as well as the 200+ class members who filled out our online form at www.appleiphonelawsuit.com:

---

[1] See e.g. *Ranieri v. Bell Atl. Mobile* (2003) 304 A.D.3d 353, 354 (Under New York law "a contractual proscription against class actions … is neither unconscionable nor violative of public policy"), accord, *Tsadilas v. Providian Nat'l Bank* (NY App. Div 2004) 13 A.D.3d 190, 191.)

[2] "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (quoting *Sullivan v. Chase Inv. Servs. Of Boston, Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978); *see also Kurczi v. Eli Lilly & Co.* 160 FRD 667, 679 (N.D. Ohio 1995) [counsel's representation of another class in state court against same defendant created conflict, preventing counsel from acting as counsel for class in instant case]). Counsel's simultaneous representation of litigants with similar interests in two different lawsuits against the same defendants creates the appearance of such divided loyalties. *See Sullivan*, 79 F.R.D. at 258.

**Seven Additional Categories of Harm**

1. Consumers whose iPhones were disabled, malfunctioned, or had third-party applications erased after you downloaded iPhone update 1.1.1.

**None of these apply to Kliegerman.**

2. Consumers who contacted Apple to repair their iPhone and Apple refused to honor their warranty because they did any one the following: (a) unlocked their iPhone, or (b) installed a third party application.

**None of these apply to Kliegerman.**

3. Consumers who incurred a cancellation fee from their previous wireless carrier when they transferred to AT&T's wireless service.

**None of these apply to Kliegerman.**

4. Consumers who purchased a third-party warranty at extra cost for their iPhone because of Apple's released statement that it will not honor warranties on unlocked iPhones.

**None of these apply to Kliegerman.**

5. Consumers who purchased a new iPhone because their previous iPhone was bricked.

**None of these apply to Kliegerman.**

6. Consumers who returned their iPhone to Apple or AT&T and (1): They paid a 10% restocking fee; (2) They paid a $29 or other fee for a temporary replacement phone while their iPhone was being repaired. Some reasons for their return may include:

(a) They opened the box and it didn't work,

(b) They were dissatisfied with AT&T's service,

(c) There were declined service with AT&T because consumers did not meet AT&T's credit criteria;

(d) Consumers did not know that they were required to sign with AT&T.

None of these apply to Kliegerman. Kliegerman knew he would be stuck with AT&T, he just did not know of the software locks.

///

///

### 3. Fernandez has an abundance of representative clients.

Wolf does not have a lawsuit-specific website for this class action. On the other hand, Fernandez invested considerable time and effort into creating www.appleiphonelawsuit.com five days before filing the lawsuit on October 5, 2007. The website generated substantial publicity throughout the world. The following statistics for the website are significant:

1   673,196 server requests to date;
2.  200+ consumers who completed the detailed online survey for damages;
3.  Worldwide recognition;
4.  38,070 websites that have links to pages on Fernandez' site.
5.  A Google search for www.appleiphoneclassaction.net generates 315 search results. Whereas a search for Folkenflik's website www.appleclassaction.net generates 9 search results.

### 4. Folkenflik has been regularly engaged in the practice of law in California.

Although this court granted the pro hac vice application of Folkenflik, it was premised on the assumption that Folkenflik was forthright with the court that he was not regularly engaged in the practice of law in California. Although Folkenflik states that the majority of the cases he appeared in California were in federal court, the local rule does not make a distinction between federal and state court. Instead, it applies to the practice of law in California.

Second, since 2003, Folkenflik has been actively engaged in a class action against American Express in the Alameda Superior Court. He is presently the lead counsel and Chairman of the Steering Committee in that case. The distinction between his federal and state court appearances is not persuasive.

### 5. The Steiner case presents a perceived conflict even if not an actual conflict of interest.

Folkenflik relies on *In re BeraringPoint* for the proposition that speculative conflicts of interest do not preclude a finding that class counsel is adequate. Not only is the case not on point and not in the 9th Circuit, it ignores this Court's holding that "The responsibility of class counsel to absent class members whose control over their attorneys is limited **does not permit even the appearance of divided loyalties of counsel**." (*Sullivan v. Chase Inv. Services of Boston, Inc.* (ND

1  CA 1978) 79 FRD 246, 258, citing *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 & n. 9
2  (3 Cir. 1973).) (Emphasis Added.)

3  Dated: March 24, 2008                    Respectfully submitted,

4                                           **LAW OFFICE OF DAMIAN R. FERNANDEZ**

6                                           By:　　　　　/s/ Damian R. Fernandez
                                                Damian R. Fernandez
7                                               M. Van Smith

8                                               Attorneys for Plaintiffs
                                                VINCENT SCOTTI,
9                                               DENNIS V. MACASADDU,
                                                MARK G. MORIKAWA, TIMOTHY P. SMITH,
10                                              and MICHAEL G. LEE

12  ///
13  ///
14  ///
15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///