FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
ALEXANDER H. SCHMIDT (*pro hac vice*)
schmidt@whafh.com
MARTIN E. RESTITUYO (*pro hac vice*)
restituyo@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile: 212/545-4677

Plaintiffs' Interim Lead Counsel

[Additional Counsel Appear On Signature Page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE & AT&TM ANTITRUST LITIGATION | Master File No. C 07-05152 JW<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>DATE:   June 23, 2008<br>TIME:   10:00 a.m.<br>CRTRM:  8<br>JUDGE:  Hon. James Ware |

JOINT CASE MANAGEMENT STATEMENT - Master File No. C 07-05152 JW

Pursuant to the Court's June 4, 2008 Order, the parties[1] to the above-entitled action hereby submit this Joint Case Management Statement.

## JURISDICTION AND SERVICE

This Court has federal question jurisdiction pursuant to the Sherman Antitrust Act, 15 U.S.C. §2, the Clayton Act, 15 U.S.C. §§15 and 26, and 28 U.S.C. §§1331 and 1337, and has supplemental jurisdiction over the state law and Magnuson-Moss Warranty Act claims pursuant to 28 U.S.C. §1367.

This Court also appears to have jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because, as per the allegations in plaintiffs' Revised Consolidated Amended Class Action Complaint ("RCAC"), sufficient diversity of citizenship exists between parties in this action, the aggregate amount in controversy exceeds $5,000,000, and there are 100 or more members of each of the two proposed Plaintiff Classes.

There are no disputes regarding personal jurisdiction. All defendants have been served. As noted below, AT&TM is moving to compel arbitration and, to that extent, disputes that subject matter jurisdiction is proper in this Court.

## FACTS

Plaintiffs state as follows:

Defendant Apple, Inc. ("Apple") launched its iPhone on or about June 29, 2007. Prior to the launch, Apple entered into a secret five-year agreement with defendant AT&TM that establishes AT&TM as the exclusive provider of cell phone voice and data services for iPhone customers through 2012. As part of the contract, Apple shares in AT&TM's revenues and profits. Though plaintiffs and class members who purchased iPhones agreed to enter into two-year voice and/or data service plans with AT&TM, they did not agree to use AT&TM for five years and were

---

[1] As a threshold matter and as stated in defendant AT&T Mobility LLC's (AT&TM) recent motion to stay all discovery, AT&TM asserts that, consistent with the purposes of the Federal Arbitration Act, 9 U.S.C. §§ 1-16, the Court should stay all pre-trial obligations pending resolution of AT&TM's Motion to Compel Arbitration. At the Court's direction, AT&TM has met and conferred with the parties and joins this CMS, but expressly reserves all rights to compel arbitration and has not otherwise availed itself of the Court's pre-trial or discovery procedures.

JOINT CASE MANAGEMENT STATEMENT - Master File No. C 07-05152 JW

- 1 -

unaware of the five-year agreement between Apple and AT&TM. Apple's undisclosed five-year exclusivity arrangement with AT&TM, however, effectively binds iPhone users into using AT&TM for five years, contrary to those users' wishes and contractual expectations.

To enforce AT&TM's exclusivity, Apple, among other things, programmed and installed software locks on each iPhone it sold that prevented the purchaser from switching to another carrier that competes with AT&TM to provide cell phone voice and data services. Under an exemption to the Digital Millennium Copyright Act of 1998, cell phone consumers have an absolute legal right to modify their phones to use the network of their carrier of choice. Defendants have unlawfully prevented iPhone customers from exercising that legal right by locking the iPhones and refusing to give customers the software codes needed to unlock them. Among other injurious effects, iPhone consumers have been unable to switch to local carriers while traveling abroad and have consequently been forced to pay exorbitant roaming charges – amounting to thousands of dollars per trip – to defendants.[2] Through their refusal to unlock the iPhones, Defendants have unlawfully stifled competition, reduced output and consumer choice, and artificially increased prices in the aftermarket for iPhone voice and data services.

Under its agreement with AT&TM, Apple retained exclusive control over the design, features and operating software for the iPhone. To enhance its iPhone related revenues, Apple has created a number of software programs, called "applications," such as ring tone, instant messaging, Internet access, video and photography enabling software, which can be downloaded and used by iPhone owners. Apple has also entered into agreements with other software manufacturers by which Apple "approves" their software applications for iPhone use in exchange for a share of the manufacturer's resulting revenues. Through the present date, Apple has refused to "approve" any application in which Apple has no financial interest. Apple has also unlawfully discouraged iPhone customers from downloading competing applications software (called "third

---

[2] In April 2008 – more than six months after the first of these now consolidated actions was filed – Apple released an updated version of its iPhone operating software that enables iPhone users to turn off data roaming while traveling abroad. Even this new update, however, does not enable users traveling abroad to block data usage incurred from delivery of "Visual Voicemail" messages.

JOINT CASE MANAGEMENT STATEMENT - Master File No. C 07-05152 JW

- 2 -

1  party applications") by telling customers that Apple will void and refuse to honor the iPhone
2  warranty of any customer who has downloaded competing applications.[3] Through these actions,
3  Apple has unlawfully stifled competition, reduced output and consumer choice, and artificially
4  increased prices in the aftermarket for iPhone software applications.

5      In response to consumers exercising their legal right to unlock their iPhones or to install
6  software applications that competed with Apple's, on September 27, 2007, under the guise of
7  issuing an "upgraded" version of the iPhone operating software, Apple knowingly issued and
8  caused the transmission of a purported update to the iPhone operating software, known as Version
9  1.1.1, which "bricked" (that, is, rendered completely inoperable) or otherwise damaged some
10 iPhones that were unlocked or had downloaded competing software applications.

11     When iPhone owners took their damaged phones to Apple or AT&TM for repair or
12 replacement, they were unlawfully told that they had breached their warranty agreements by
13 unlocking their phone or downloading unapproved software and that their only remedy was to buy
14 a new iPhone. Because Apple had intentionally released and transmitted Version 1.1.1 knowing
15 that it would damage or destroy unlocked iPhones, Apple and AT&TM were obligated by law to
16 honor their warranties and repair or replace the phones.

17     Defendants state as follows:

18     On January 9, 2007, Apple announced the introduction of its first cellular telephone
19 product, the iPhone, entering what plaintiffs' own allegations show were highly competitive
20 markets for cellular handsets and associated service. As set forth in the RCAC, there was a
21 "massive advertising campaign" associated with the iPhone, and a significant corresponding body
22 of announcements, press coverage and public discourse within and by the press at large and the
23 "computer community" discussed in the RCAC. The massive public focus on the iPhone

---

[3] In March 2008 – more than five months after the first of these actions was filed – Apple released a "software development kit" ("SDK") for the stated purpose of enabling independent software developers to design third party applications for use on the iPhone. Apple has also recently announced that it intends in June 2008 to release an updated version of the iPhone operating software, to be called Version 2.0, that will permit iPhone owners to safely download third party applications.

disclosed the very terms plaintiffs now say were "secret," though defendants had no duty to disclose them.

Each of the named plaintiffs in this action – who live in California, New York or Washington state – purchased one or more iPhones within two months of the iPhone's June 29, 2007 release. Each plaintiff received an iPhone with accompanying documentation and accepted and entered into various agreements relating to the iPhone, among them (i) the iPhone software license agreement and (ii) the two-year contract with exclusive carrier AT&TM for provision of iPhone wireless voice and data services.

The extensive public discourse and critique of the iPhone, as well as the materials all iPhone buyers received and the agreements they entered into, described all the relevant terms and conditions about which plaintiffs now complain. These include, among other things, that: (i) AT&TM was to be the exclusive carrier for the iPhone on an open-ended or extended basis and, as a result, iPhones were locked to only work with AT&TM and would not be unlocked; (ii) anyone who wanted an iPhone was required to enter into a two-year initial contract with exclusive carrier AT&TM for cellular and data service; (iii) that customers would submit all disputes with AT&TM to binding arbitration and agreed to a class action wavier; (iv) the AT&TM contract could be terminated at any time, simply by paying an early termination fee similar to virtually every other industry mobile phone contract; (v) Apple had an initially strict, and then expanding, approach toward "add-on applications" for security and reliability concerns, (vi) modification of the iPhone software and iPhone software updates, or any parts thereof, was a breach and violation of the software license agreement; (vii) it was disclosed to customers that Apple's hardware warranty was limited in instances where the iPhone had been modified to alter functionality or capability without the written permission of Apple, and would not cover users who improperly altered their iPhones' embedded software in violation of the software license agreement by downloading internet "unlock" hacks and the like; (viii) international roaming would give rise to (potentially substantial) charges; (ix) consumers could return the iPhone if they chose not to accept the various terms and conditions; and (x) the voice and data plans provided by AT&TM for the iPhone are not unique to the iPhone, rather customers are well aware that these same plans are available on a

variety of devices.

On September 27, 2007, Apple released Version 1.1.1, its first software update to the iPhone operating system (there have been multiple additional software updates since). As plaintiffs admit, prior to the release of Version 1.1.1 Apple issued broad warnings that installing the software update could cause damage to iPhones if the user had modified the embedded iPhone software. iPhone owners again received this warning when they went to download Version 1.1.1 and, as set forth in the RCAC, had the choice whether or not to download and install Version 1.1.1. Some iPhones – those that had been altered with a particular type of "unlock" hack – were damaged when their owners downloaded Version 1.1.1; many other iPhones unlocked by other means suffered no such damage.

## LEGAL ISSUES

It is plaintiffs' position that the legal issues in dispute are:

    a.    whether Apple violated section 2 of the Sherman Act, 15 U.S.C. §2, by monopolizing or attempting to monopolize the aftermarket for iPhone software applications;

    b.    whether defendants violated section 2 of the Sherman Act, 15 U.S.C. §2, by monopolizing, attempting to monopolize or conspiring to monopolize the aftermarket for iPhone wireless voice and data services;

    c.    whether Defendants' conduct in locking the iPhone to only work with AT&TM SIM cards is a deceptive act and practice that violates the consumer protection statutes;

    d.    whether Defendants' refusal to give consumers the unlock code for the their iPhone is a deceptive act and practice that violates the consumer protection statutes;

    e.    whether Defendants' conduct in failing adequately to disclose to consumers the fact that excessive data roaming charges apply when the iPhone is taken abroad is a deceptive act and practice that violates the consumer protection statutes;

    f.    whether Defendants' conduct in failing adequately to disclose to consumers that Apple would seek to prohibit iPhone owners from downloading Third Party Apps is a deceptive act and practice that violates the consumer protection statutes;

    g.    whether Defendants' failure adequately to disclose to consumers that Apple's Version 1.1.1 would disable any Third Party Apps and SIM card unlocks or would render iPhones that contained such features inoperable is a deceptive act and practice that violates the consumer protection statutes;

    h.    whether Apple's design and issuance of Version 1.1.1 containing undisclosed malicious codes that disabled Third Party Apps and SIM card unlocks and rendered

    iPhones that contained such features inoperable is a deceptive act and practice that violates the consumer protection statutes

  i. whether Apple's destruction of iPhones and disabling of Third Party Apps and SIM card unlocks through issuance of Version 1.1.1 breached express and implied warranties of fitness and violated the Magnuson-Moss Warranty Act;

  j. whether Defendants breached express and implied warranties of fitness and violated the Magnuson-Moss Warranty Act by refusing to repair or replace iPhones that had been destroyed when their owners downloaded Version 1.1.1; and

  k. whether Apple is liable for common law trespass to chattels for damaging or destroying iPhones when it issued Version 1.1.1.

  It is defendants' position that the central legal issues at this time (leaving aside issues related to class certification) are: (i) whether AT&TM may compel arbitration in accordance with its arbitration clause and (ii) whether plaintiffs have failed to adequately plead any of the causes of action alleged in the RCAC. The latter includes:

  1. Whether plaintiffs have pleaded facts upon which it is plausible to conclude that there is a legally cognizable "iPhone Voice and Data Services Aftermarket" and whether Apple has market power in any such alleged market;

  2. Whether plaintiffs have pleaded facts upon which it is plausible to conclude that there is a legally cognizable "iPhone Applications Aftermarket" and whether Apple has market power in any such alleged market;

  3. Whether plaintiffs have stated a cognizable claim under the 43 state consumer protection/unfair business practice statutes alleged in the RCAC;

  4. Whether plaintiffs have pleaded facts plausibly showing that a claim for violation of the Magnuson-Moss Warranty Act lies; and

  5. Whether plaintiffs have pleaded facts plausibly showing that a claim for trespass to chattels, violation of the Computer Fraud and Abuse Act or violation of California Penal Code §502 lies.

  Apple believes that, once the Court has the opportunity to hear and decide Apple's motion to dismiss, currently set for hearing on September 8, 2008, the parties will be in position to best address what matters, if any, remain properly at issue in this litigation.

## MOTIONS

On April 15, 2008, the Court entered an Order appointing Interim Class Counsel. AT&TM's motion to stay discovery in anticipation of its of its soon-to-be-filed motion to compel arbitration is presently before the Court. No other motions are pending before the Court. Apple intends to move to dismiss the complaint for failure to state a claim upon which relief can be granted and AT&TM intends to move to compel arbitration in accordance with plaintiffs' purchase agreements, as per the Court-ordered briefing schedule on these motions. In addition, if the Court denies AT&TM's motion to compel arbitration, AT&TM intends to move to dismiss the complaint for failure to state a claim upon which relief can be granted.

## AMENDMENT OF PLEADINGS

The parties do not foresee amending their pleadings at this time.

## EVIDENCE PRESERVATION

The parties represent that they have taken all necessary steps to ensure that all relevant evidence is preserved. Counsel have provided written instruction to their clients to preserve all relevant or discoverable evidence in their possession, custody, or control.

## DISCLOSURES & DISCOVERY

Plaintiffs have sought to engage in discovery and have offered to exchange initial disclosures pursuant to Federal Rule of Civil Procedure 26(a). Defendants' position, set forth in greater detail below as per the Court's direction in its June 4, 2008 Order, is that initial disclosures and any discovery at this time are premature and inappropriate, given the Court-ordered schedule for filing any motions to compel arbitration and dismiss the RCAC for failure to state a claim.

It is plaintiffs' position that initial disclosures and discovery should proceed in the ordinary course of this litigation. Neither initial disclosures not discovery are automatically stayed pending a motion to dismiss, and defendants cannot make any showing of special circumstances that would compel a blanket stay of disclosures and discovery at this time. In addition, on the basis of controlling California law, as well as binding Ninth Circuit precedent and this Court's own recent decision in *Stiener v. Apple Computer, Inc.*, No. C 07-04486 SBA (N.D. Cal. March 12, 2008) (denying AT&TM's motion to compel arbitration under the exact same customer service

agreement), plaintiffs contend there is virtually no basis for AT&TM's motion to compel arbitration. For that reason, plaintiffs contend there is no reason to stay the parties' obligation to make initial disclosures or to stay discovery. Furthermore, plaintiffs contend that, even if AT&TM's motion to compel arbitration were to be granted, AT&TM would nonetheless have to provide document discovery and identify witnesses in any event. Therefore, there is no reason to relieve the parties of their obligation to exchange Rule 26(a) initial disclosures.

It is defendants' position that discovery should be stayed in this action pending resolution of AT&TM's motion to compel arbitration and Apple's motion to dismiss. As set forth in AT&TM's recent motion to stay all discovery, consistent with the purposes of the Federal Arbitration Act, 9 U.S.C. §§1-16, the Court should stay all pre-trial obligations pending resolution of AT&TM's Motion to Compel Arbitration. This issue has been raised in the *Stiener* litigation and is currently being presented to the Ninth Circuit Court of Appeals. Recognizing the importance of this issue as well as its threshold and dispositive nature, Judge Armstrong has stayed the entire *Stiener* case pending the appeal. Tellingly, Plaintiffs also completely ignore the fact that named plaintiff Kliegerman is from New York, that New York law applies to his claim, and that New York courts have upheld class action waivers in arbitration provisions and rejected plaintiffs' arguments. All of these factors impact whether any discovery is appropriate.

As to Apple's motion to dismiss, this Court has broad discretion under Federal Rule of Civil Procedure 26(c) to stay discovery "for good cause" in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* This includes "wide discretion" to stay discovery during the pendency of a dispositive motion. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (affirming discovery stay pending decision on immunity, which stay "further[ed] the goal of efficiency for the court and litigants"); *see also, e.g., Alaska Cargo Transp., Inc. v. Alaska Railroad Corp.*, 5 F.3d 378, 382 (9th Cir. 1993) (affirming discovery stay pending resolution of motion to dismiss); *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) (same). This discretion is even greater in light of the Supreme Court's recent *Twombly* decision, which reminded courts to "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed," particularly in the context of costly and protracted

antitrust discovery. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1967 (2007) (internal quotes omitted) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984) for the proposition that "[t]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint."). Under scheduling provisions of the Federal Rules of Civil Procedure and this Court's local rules, in normal circumstances initial disclosures are generally set to take place after a party's motion to dismiss is filed and heard. *See* Fed. R. Civ. P. 12(a), 16(b), 26(a),(f); Civ. L. R. 7-2. Here, because Apple's scheduled motion to dismiss will test whether the RCAC adequately states any claim upon which relief may be granted, waiting for the Court's ruling on the motion prior to moving forward with discovery will serve to minimize undue burden and expense and further judicial economy and efficiency, streamlining discovery as to those claims – if any – that survive the motion to dismiss. This comports with *Twombly's* admonition. It is also particularly true given that plaintiffs purport to state an extremely broad class action covering the laws of 43 states, so that the burdens of unfocused, voluminous discovery will be unreasonable. Plaintiffs cannot seriously contend that they would be prejudiced by this Court's briefly postponing discovery to resolve unsettled questions that, if decided in defendants' favor, would preclude the need for such extensive discovery.

In response to defendants' positions, plaintiffs note that AT&TM's motion to stay discovery is directed ***only*** to "AT&TM's obligation to participate in discovery" – ***not*** Apple's discovery obligations. Neither Apple nor AT&TM has moved to stay Apple's obligation to participate in discovery, nor has Apple joined in AT&TM's motion. Moreover, AT&TM's argument in support of that limited stay is directed ***only*** to "the resolution of AT&TM's motion to compel arbitration" – ***not*** to Apple's anticipated motion to dismiss. Therefore, AT&TM's stay motion has no effect upon Apple's discovery obligations at all, and the merit (or lack thereof) of Apple's not-yet-filed motion to dismiss has no relevance to the stay motion. Plaintiffs repeat that no defendant has moved to stay Apple's obligation to participate in discovery, and remind the Court that AT&TM's argument in support of its limited stay motion is ***not*** directed to Apple's anticipated motion to dismiss.

Whatever merit Apple's motion to dismiss might (or might not) have when it is filed, it is irrelevant to the *only* stay motion presently before the Court.

While it is premature to brief the merits of Apple's not-yet-filed motion to dismiss, plaintiffs respond briefly that in *Twombly*, the Supreme Court did not re-write the long-established standards for assessing the sufficiency of a complaint under Federal Rules of Civil Procedure 8 and 12. Indeed, as the Supreme Court reiterated in *Twombly*, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 1964. *See Phillips v. Allegheny Co.*, 2008 WL 305025 (3d Cir. Feb. 5, 2008) (notice pleading standard of Rule 8(a)(2) remains intact under *Twombly*, and courts may generally state and apply the Rule 12(b)(6) standard). As plaintiffs intend to demonstrate in opposition to any motion to dismiss that Apple or AT&TM might file, the RCAC meets this pleading standard.

## CLASS ACTIONS

Plaintiffs have proposed a briefing schedule that would permit the Court to hear a motion for class certification by early January, 2009. Defendants believe that it is premature to propose a class certification briefing schedule at this time, given that the issues to be addressed by the Court in ruling on AT&TM's motion to compel arbitration and Apple's motion to dismiss are potentially case-dispositive, and at the very least may serve to streamline the actual issues for decision in this litigation.

## RELATED CASES

None of the parties is aware of any related case or proceeding.

## RELIEF

Plaintiffs cannot estimate the amount of relief they will seek on behalf of the class without, at a minimum, Rule 26(a) initial disclosures from defendants.

## SETTLEMENT AND ADR

The parties do not request a settlement conference with a magistrate judge and believe that settlement discussions are premature at this time. The parties agree that private mediation might be useful at the appropriate time but believe that it is premature at this point in time.

### CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

All parties have not consented to having a magistrate judge conduct all further proceedings including trial and entry of a judgment.

### OTHER REFERENCES

The parties do not believe the case is suitable for reference to a special master. The parties agree there is no need to refer the case to the Judicial Panel on Multidistrict Litigation.

### NARROWING OF ISSUES

At present, the parties cannot agree upon suggestions to expedite the presentation of evidence at trial. No party has requested bifurcation of issues, claims, or defenses.

### EXPEDITED SCHEDULE

The parties are not prepared, at this time, to move on an expedited basis.

### SCHEDULING

At this time, the parties are not prepared to submit a schedule in this case.

### TRIAL

Plaintiffs have demanded a trial by jury. The parties expect that this case will require three to four weeks for trial.

### DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

All parties have filed the required "Certification of Interested Entities or Persons required by Civil Local Rule 3-16.

Dated: June 10, 2008

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT

/s/ Rachele R. Rickert
RACHELE R. RICKERT

750 B. Street, Suite 2770
San Diego, California 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com

JOINT CASE MANAGEMENT STATEMENT - Master File No. C 07-05152 JW

- 11 -

|     |     |
| --- | --- |
| 1   | WOLF HALDENSTEIN ADLER |
| 2   |   FREEMAN & HERZ LLP |
|     | MARK C. RIFKIN (*pro hac vice*) |
| 3   | ALEXANDER H. SCHMIDT (*pro hac vice*) |
|     | MARTIN E. RESTITYO (*pro hac vice*) |
| 4   | 270 Madison Avenue |
|     | New York, New York 10016 |
| 5   | Telephone: 212/545-4600 |
|     | Facsimile:  212/545-4677 |
| 6   | rifkin@whafh.com |
|     | schmidt@whafh.com |
| 7   | restituyo@whafh.com |
| 8   | Plaintiffs' Interim Lead Counsel |

9  DATED: June 10, 2008

LATHAM & WATKINS LLP
DANIEL M. WALL
ALFRED C. PFEIFFER, JR.
CHRISTOPHER S. YATES
SADIK HUSENY


    /s/ Daniel M. Wall
―――――――――――――――――――――
DANIEL M. WALL

505 Montgomery Street, Suite 1900
San Francisco, CA 94111
Telephone: 415/391-0600
al.pfeiffer@lw.com
dan.wall@lw.com
chris.yates@lw.com

Attorneys for Defendant APPLE INC.

MAYER BROWN LLP
DONALD M. FALK
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: 650/331-2030
Facsimile:  650/331-2060
dfalk@mayerbrown.com

JOINT CASE MANAGEMENT STATEMENT - Master File No. C 07-05152 JW

| | | |
|---|---|---|
| 1 | DATED: June 10, 2008 | CROWELL & MORING LLP<br>DANIEL A. SASSE |
| 2 | | /s/ Daniel A. Sasse |
| 3 | | DANIEL A. SASSE |
| 4 | | CROWELL AND MORING LLP<br>3 Park Plaza, 20th Floor |
| 5 | | Irvine, CA 92614-8505<br>Telephone: 949/263-8400 |
| 6 | | Facsimile: 949/263-8414<br>dsasse@crowell.com |
| 7 | | Attorneys for Defendant AT&T Mobility LLC |

APPLE ANTI:16117.CMC

JOINT CASE MANAGEMENT STATEMENT - Master File No. C 07-05152 JW

- 13 -

## DECLARATION REGARDING CONCURRENCE

I, Rachele R. Rickert, am the ECF User whose identification and password are being used to file this JOINT CASE MANAGEMENT STATEMENT. In compliance with General Order 45.X.B, I hereby attest that Daniel M. Wall and Daniel A. Sasse have concurred in this filing.

DATED: June 10, 2008

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

By: /s/ Rachele R. Rickert
RACHELE R. RICKERT

DECLARATION OF SERVICE

I, Maureen Longdo, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested in the within action; that declarant's business address is 750 B Street, Suite 2770, San Diego, California 92101.

2. That on June 10, 2008, declarant served JOINT CASE MANAGEMENT STATEMENT via the CM/ECF System to the parties who are registered participants of the CM/ECF System.

3. That on June 10, 2008, declarant served the parties who are not registered participants of the CM/ECF System, via United States Mail.

4. That there is regular communication between the parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of June 2008, at San Diego, California.

_____
MAUREEN LONGDO

JOINT CASE MANAGEMENT STATEMENT - Master File No. C 07-05152 JW

- 15 -

APPLE ANTITRUST
Service List – February 13, 2008
Page 1

COUNSEL FOR PLAINTIFFS

Francis M. Gregorek
Betsy C. Manifold
Rachele R. Rickert
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
   619/239-4599
   619/234-4599 (fax)
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com

Mark C. Rifkin
Alexander H. Schmidt
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
270 Madison Ave.
New York, NY 10016
   212/545-4600
   212/545-4653 (fax)
rifkin@whafh.com
schmidt@whafh.com

Randall S. Newman
NEWMAN & ASSOCIATES, P.C.
The Trump Building
40 Wall Street, 61st Floor
New York, NY 10005
   212/797-3737
   212/797-3172 (fax)
rsn@randallnewman.net

  Stephen P. Denittis
\* Norman Shabel
SHABEL & DENITTIS, P.C.
5 Greentree Centre, Suite 302
Marlton, NJ 08053
   856/797-9951
   856/797-9978 (fax)
sdenittis@shabeldenittis.com

Damian R. Fernandez
LAW OFFICE OF DAMIAN R. FERNANDEZ
14510 Big Basin Way
Suite A, PMB 285
Saratoga, CA 95070-6091
   408/355-3021
   408/904-7391 (fax)
Damianfernandez@gmail.com

M. Van Smith
LAW OFFICES OF V. MAN SMITH
14510 Big Basin Way
Suite A, PMB 285
Saratoga, CA 95070-6091
   408/355-3021
   408/904-7391 (fax)
mvsmith@sbcglobal.net

  Max Folkenflik
\* Margaret McGerity
FOLKENFLIK & MCGERITY
1500 Broadway, 21st Floor
New York, NY 10036
   212/757-0400
   212/757-2010 (fax)
max@fmlaw.net

H. Tim Hoffman
Arthur W. Lazear
Morgan M. Mack
HOFFMAN & LAZEAR
180 Grand Avenue, Suite 1550
Oakland, CA 94612
   510/763-5700
hth@hoffmanandlazear
awl@hoffmanandlazear.com
mmm@hoffmanandlazear.com

\*   **Service via U.S. Mail**

APPLE ANTITRUST
Service List – February 13, 2008
Page 2

COUNSEL FOR PLAINTIFFS

Aaron M. Sheanin
Elizabeth C. Pritzker
\* Geoffrey A. Munroe
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94108
    415/981-4800
    415/981-4846 (fax)
ams@girardgibbs.com
ecp@girardgibbs.com

\* Kevin T. Barnes
LAW OFFICES OF KEVIN T. BARNES
5670 Wilshire Boulevard, Suite 1460
Los Angeles, CA 90036-5627
    323/549-9100

COUNSEL FOR DEFENDANTS

Hanno F. Kaiser
LATHAM & WATKINS, LLP
885 Third Avenue, Suite 1000
New York, NY 10022
    212/906-1252
    212/751-4864 (fax)
Hanno.kaiser@lw.com

Adrian F. Davis
Alfred C. Pfeiffer, Jr.
Daniel M. Wall
Christopher S. Yates
LATHAM  WATKINS, LLP
505 Montgomery Street, Suite 1900
San Francisco, CA 94111
    415/391-0600
adrian.davis@lw.com
al.pfeiffer@lw.com
dan.wall@lw.com
chris.yates@lw.com

David E. Crowe
Daniel A. Sasse
CROWELL AND MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
    949/263-8400
    949/263-8414 (fax)
dcrowe@crowell.com
dsasse@crowell.com

Jeffrey W. Howard
Christopher E. Ondeck
William R. Smith
CROWELL AND MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
    202/624-2500
    202/628-5116 (fax)
jhoward@crowell.com
condeck@crowell.com
wrsmith@crowell.com

Donald M. Falk
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
    650/331-2030
    650/331-2060 (fax)
dfalk@mayerbrown.com

Archis A. Parasharami
MAYER BROWN LLP
1909 K Street NW
Washington, DC 20006
    202/263-33287
aparasharami@mayerbrown.com

\*    **Service via U.S. Mail**