1  Daniel A. Sasse, Esq. (CA Bar No. 236234)
   CROWELL & MORING LLP
2  3 Park Plaza, 20th Floor
   Irvine, CA 92614-8505
3  Telephone:    (949) 263-8400
   Facsimile:    (949) 263-8414
4  Email:        dsasse@crowell.com
5
   Donald M. Falk (CA Bar No. 150256)
6  MAYER BROWN LLP
   Two Palo Alto Square, Suite 300
7  3000 El Camino Real
   Palo Alto, CA  94306-2112
8  Telephone: (650) 331-2000
   Facsimile:  (650) 331-2060
9  Email:     dfalk@mayerbrown.com

10 Attorneys for Defendant
   AT&T Mobility LLC

11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                    SAN JOSE DIVISION

15                                    Case No. 07-05152-JW

16                                    **MEMORANDUM OF POINTS AND
                                      AUTHORITIES IN SUPPORT OF**
17                                    **MOTION OF DEFENDANT AT&T
                                      MOBILITY LLC TO COMPEL**
18 IN RE APPLE & AT&TM ANTI-TRUST     **ARBITRATION AND TO DISMISS**
   LITIGATION                         **CLAIMS PURSUANT TO THE**
19                                    **FEDERAL ARBITRATION ACT**

20                                    Date: September 12, 2008
21                                    Time: 9:00 a.m.

22                                         Honorable James Ware

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    STATEMENT OF ISSUE TO BE DECIDED.................................................................. 1

3    INTRODUCTION ......................................................................................................... 1

4    BACKGROUND ........................................................................................................... 1

5    ARGUMENT ................................................................................................................. 4

6    I.    THE FAA MANDATES ENFORCING THE ARBITRATION AGREEMENTS ........... 4

7    II.   PLAINTIFFS CANNOT AVOID THEIR OBLIGATION TO ARBITRATE ON
          AN INDIVIDUAL BASIS BY INVOKING STATE UNCONSCIONABILITY
8         LAW .................................................................................................................... 5

9         A.    Plaintiffs' Arbitration Agreements Are Not Unconscionable Under New
                York, Washington, Or California Law ....................................................... 5
10
                1.    Kliegerman's Arbitration Agreement Is Enforceable Under New
11                    York Law ....................................................................................... 5

12              2.    The Arbitration Agreements Are Enforceable Under California
                      Law ................................................................................................ 7

13                    a.    The California Plaintiffs Can Establish At Most Only A
                            Modest Degree Of Procedural Unconscionability ...................... 8
14
                      b.    Under California Law, ATTM's Arbitration Provision Is
15                          Not Substantively Unconscionable At All, Much Less
                            Greatly So .................................................................................. 10
16
                3.    Holman's Arbitration Agreement Is Enforceable Under
17                    Washington Law ............................................................................ 14

18                    a.    ATTM's Arbitration Provision Is Not Substantively
                            Unconscionable Under Washington Law .................................... 15
19
                      b.    Holman's Arbitration Agreement Is Not Procedurally
                            Unconscionable Under Washington Law .................................... 17
20
          B.    The FAA Would Preempt Any State-Law Rule Under Which ATTM's
21              Arbitration Provision Could Be Deemed Unenforceable ........................... 18

22              1.    The FAA Expressly Preempts Any Distortion Of
                      Unconscionability Doctrine That Would Invalidate The Arbitration
23                    Clause Here ................................................................................... 18

24              2.    A State-Law Rule That Precludes An Individual Arbitration
                      Requirement Under The Circumstances Here Would Conflict With
                      The Purposes of the FAA And Therefore Would Be Preempted .......... 20
25
     III.  PLAINTIFFS' MMWA CLAIM IS ARBITRABLE ........................................................ 23

26   IV.   CONCLUSION ............................................................................................................ 25

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abela v. Gen. Motors Corp.,* 677 N.W.2d 325 (Mich. 2004) ..................................................... 24

*Adler v. Fred Lind Manor*, 103 P.3d 773 (Wash. 2004) ...................................................... 14, 15

*Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265 (1995) ..................................................... 22

*Am. Software, Inc. v. Ali*, 54 Cal. Rptr. 2d 477 (Ct. App. 1996) .............................................. 19

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669 (Cal. 2000) ........................ 7, 8

*Aron v. U-Haul Co.*, 49 Cal. Rptr. 3d 555 (Ct. App. 2006) ...................................................... 8, 9

*Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631 (Ct. App. 2007) ............... 8, 9, 10

*Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002) ........................................... 10

*Blitz v. AT&T Wireless Servs., Inc.,* No. 054-00281 (Mo. Cir. Ct. Nov. 28, 2005) .................... 23

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141 (1989) ...................................... 20

*Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir. 2002) .............................................................. 13

*Borowiec v. Gateway 2000, Inc.,* 808 N.E.2d 957 (Ill. 2004) .................................................... 24

*Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569 (App. Div. 1998) ........................................ 6, 7

*Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903 (7th Cir. 2004) .................................. 19

*Cal. Grocers Ass'n, Inc. v. Bank of Am.,* 27 Cal. Rptr. 2d 396 (Ct. App. 1994) .......................... 8

*Carideo v. Dell, Inc.*, 520 F. Supp. 2d 1241 (W.D. Wash. 2007) ......................................... 16, 17

*Childs v. Levitt*, 543 N.Y.S.2d 51 (App. Div. 1989) .................................................................. 19

*Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002) ......................................... 23, 24

*Dean Witter Reynolds, Inc. v. Super. Ct.*, 259 Cal. Rptr. 789 (Ct. App. 1989) ............................ 9

*Discover Bank v. Super. Ct.*, 113 P.3d 1100 (Cal. 2005) ...................................................*passim*

*Dombrowski v. Gen. Motors Corp.,* 318 F. Supp. 2d 850 (D. Ariz. 2004) ................................. 23

*Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269
   (10th Cir. 2005) ................................................................................................................. 22

*Douglas v. U.S. Dist. Ct.*, 495 F.3d 1062 (9th Cir. 2007) ........................................................... 6

*Edgar v. MITE Corp.,* 457 U.S. 624 (1982) ............................................................................... 20

*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) ...................................................................... 4

*Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262
 (E.D. Ark. Mar. 25, 2008) ................................................................. 14

*Engalla v. Permanente Med. Group, Inc.*, 938 P.2d 903 (Cal. 1997) .............. 14

*Foley v. Interactive Data Corp.*, 765 P.2d 373 (Cal. 1988) .......................... 14

*Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344 (Ct. App. 2007) .............. 9, 10, 13

*Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007) .................................... 23

*Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824 (N.Y. 1988) ............. 5, 6

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ...................... 23

*Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) ............................... 22

*Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79 (2000) ...................... 23

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396 (2008) ................... 22

*Harris v. Shearson Hayden Stone, Inc.*, 441 N.Y.S.2d 70 (App. Div. 1981) ........ 6

*Harrison v. Nissan Motor Corp.*, 111 F.3d 343 (3d Cir. 1997) ...................... 24

*Hayes v. County Bank*, 811 N.Y.S.2d 741 (App. Div. 2006) ......................... 6

*Herbert v. Lankershim*, 71 P.2d 220 (Cal. 1937) ..................................... 8

*Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997) .......................... 10

*Howell v. Cappaert Manufactured Housing, Inc.*, 819 So. 2d 461
 (La. Ct. App. 2002) ........................................................................ 24

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159
 (5th Cir. 2004) ............................................................................. 18

*In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480 (Tex. 2001) ............... 24, 25

*Kaltwasser v. Cingular Wireless LLC*, 543 F. Supp. 2d 1124 (N.D. Cal. 2008) .... 13, 14

*Koehl v. Verio, Inc.*, 48 Cal. Rptr. 3d 749 (Ct. App. 2006) .......................... 19

*Koons Ford of Baltimore, Inc. v. Lobach*,  919 A.2d 722 (Md. 2007) .............. 24

*La Salle Nat'l  Bank Ass'n v. Kosarovich*, 820 N.Y.S.2d 144 (App. Div. 2006) .... 6

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) ........................................... 22

*Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008) .................... *passim*

*Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166 (W.D. Wash. 2002) ...... 17

*Mandel v. Liebman*, 100 N.E.2d 149 (N.Y. 1951) ................................... 6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 107 Cal.
  Rptr. 2d 645 (Ct. App. 2001) ................................................................. 8

*McDaniel v. Gateway Computer Corp.*, 2004 WL 2260497 (Ohio Ct. App. Sept.
  24, 2004) ........................................................................................... 24

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) ......................................... 21

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ............... 21, 23

*Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention*, 556 P.2d 552
  (Wash. Ct. App. 1976) ........................................................................ 20

*Moody v. Sears, Roebuck & Co.*, 2007 WL 2582193
  (N.C. Super. Ct. May 7, 2007) .............................................................. 12

*Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797 (Ct. App. 2005) ............... 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ............... 20

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
  514 U.S. 645 (1995) ........................................................................... 20

*Odell v. Moss*, 62 P. 555 (Cal. 1900) ........................................................ 8

*Olson v. The Bon, Inc.*, 183 P.3d 359 (Wash. Ct. App. 2008) .................... 16, 17

*Omstead v. Dell, Inc.*, 533 F. Supp. 2d 1012 (N.D. Cal. 2008) ...................... 9

*Palamara v. Kings Family Rests.*, 2008 WL 1818453 (W.D. Pa. Apr. 22, 2008) ............ 12

*Parkerson v. Smith*, 817 So. 2d 529 (Miss. 2002) ..................................... 24

*Patriot Mfg., Inc. v. Jackson*, 929 So. 2d 997 (Ala. 2005) ......................... 24

*Perry v. Thomas*, 482 U.S. 483 (1987) ............................................... 9, 18

*Preston v. Ferrer*, 128 S. Ct. 978 (2008) ............................... 14, 18, 21, 23

*Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196 (C.D. Cal. 2006) .................. 9

*Pyburn v. Bill Heard Chevvrolet*, 63 S.W.3d 351 (Tenn. Ct. App. 2001) .................. 23

*Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448 (App. Div. 2003) ..................... 6

*Results Oriented, Inc. v. Crawford*, 538 S.E.2d 73 (Ga. Ct. App. 2000) .................. 24

*Riensche v. Cingular Wireless LLC*, 2007 WL 3407137
  (W.D. Wash. Nov. 9, 2007) .................................................................. 9

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. at 481 .................. 23, 25

*Rosenfeld v. Port Auth. of New York*, 108 F. Supp. 2d 156 (E.D.N.Y. 2000) .................. 7

*Santisas v. Goodin*, 951 P.2d 399 (Cal. 1998) ......................................... 11

*Schultz v. AT&T Wireless Servs., Inc.,* 376 F. Supp. 2d 685 (N.D. W. Va. 2005) ...................... 23

*Scott v. Cingular Wireless*, 161 P.3d 1000 (Wash. 2007)................................................. 15, 16, 17

*Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987) ........................................... 23, 24

*Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007) ................ *passim*

*Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir. 1988) ................................................. 25

*Stiener v. Apple Computer, Inc.*, 2008 WL 691720 (N.D. Cal. Mar. 12, 2008) ............. 10, 13, 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)....................... 12

*Szetela v. Discover Bank,* 118 Cal. Rptr. 2d 862 (Ct. App. 2002)................................................. 9

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053
    (9th Cir. 2004)........................................................................................................................... 25

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) ........................................................................... 18

*Tjart v. Smith Barney, Inc.*, 28 P.3d 823 (Wash. Ct. App. 2001) ............................................... 17

*Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478 (App. Div. 2004) ...................................... 6

*United States v. Corum*, 362 F.3d 489 (8th Cir. 2004) ................................................................ 5

*United States v. Locke*, 529 U.S. 89 (2000) ............................................................................... 20

*Villa Milano Homeowners Ass'n v. Il Davorge*, 102 Cal. Rptr. 2d 1 (Ct. App.
    2000) ........................................................................................................................................... 9

*Walker v. DaimlerChrysler Corp.,* 856 N.E.2d 90 (Ind. Ct. App.).............................................. 24

*Walton v. Rose Mobile Homes LLC*, 298 F.3d 470 (5th Cir. 2002)................................. 23, 24, 25

*Wayne v. Staples, Inc.*, 37 Cal. Rptr. 3d 544 (Ct. App. 2006) ...................................................... 9

*Yeagley v. Wells Fargo & Co.*, 2008 WL 171083 (N.D. Cal. Jan. 18, 2008)............................... 12

*Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753 (Wash. 2004) ......................................... 15, 17

**Statutes, Regulations, and Rules:**

Cal. Code Civ. Proc. § 116.221 ..................................................................................................... 2

Class Action Fairness Act of 2005, Pᴜʙ. L. Nᴏ. 109-2, 119 Stat. 4, § 2(a)(3) ........................... 12

Disabled Persons Act, Cal. Civ. Code § 54.3(a) ......................................................................... 11

Fair Credit Reporting Act, 15 U.S.C. § 1681n(a) ....................................................................... 11

Federal Arbitration Act, 9 U.S.C. §§ 1–16 ......................................................................... *passim*

   9 U.S.C. § 2................................................................................................................... *passim*

-4-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

9 U.S.C. § 10 ................................................................................................... 22

Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301–12 ........................... 1, 23, 24, 25

    15 U.S.C. § 2310(a)(3)(C) ............................................................................. 24

Sherman Antitrust Act, 15 U.S.C. § 2 ................................................................... 1

64 Fed. Reg. 19,700 (1999) ............................................................................... 24

Fed. R. Civ. P. 11(b) ......................................................................................... 3

**Other Authorities:**

Jonathan R. Bunch, Note, *To Be Announced: Silence from the United States
    Supreme Court and Disagreement Among Lower Courts Suggest an Uncertain
    Future for Class-Wide Arbitration*, 2004 J. DISP. RESOL. 259 ............................ 21

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action
    Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303 (2006) ........................... 11

Gail Hillebrand & Daniel Torrence, *Claims Procedures in Large Consumer Class
    Actions and Equitable Distribution of Benefits*, 28 SANTA CLARA L. REV. 747
    (1988) ................................................................................................... 12

*Joint Hearings on S. 1005 and H.R. 646 Before the Subcomms. of the Comms. on
    the Judiciary*, 68th Cong., 1st Sess. (1924) ........................................... 22

Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in
    Antitrust and Consumer Class Action Litigation*, 49 UCLA L. REV. 991
    (2002) ................................................................................................... 12

S. REP. NO. 91-876 (1970) ............................................................................... 24

1 Joseph Story, COMMENTARIES ON EQUITY JURISPRUDENCE (14th ed. 1918) ............................ 8

James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*,
    18 GEO. J. LEGAL ETHICS 1443 (2005) ................................................................... 12

1      **STATEMENT OF ISSUE TO BE DECIDED**

2          Whether the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, requires plaintiffs to

3      pursue their claims against defendant AT&T Mobility LLC ("ATTM") in accordance with their

4      arbitration agreements.

5      **INTRODUCTION**

6          When plaintiffs obtained wireless service from ATTM, they each agreed to resolve their

7      disputes with ATTM in individual arbitration or small claims court. The FAA requires them to

8      honor their promises.

9          We expect plaintiffs to oppose this motion by arguing that (1) their arbitration

10     agreements are unconscionable because they require that disputes be resolved on an individual

11     basis and (2) their claim under the Magnusson-Moss Warranty Act ("MMWA") is not arbitrable.

12     Those arguments should be rejected. First, the unprecedentedly pro-consumer features of

13     ATTM's arbitration provision more than adequately substitute for the class-action device. Under

14     that provision, customers arbitrate for free and would recover at least ***$5,000*** and ***double***

15     attorneys' fees if the arbitrator awards them an amount greater than ATTM's settlement offer.

16     Accordingly, even if state law did preclude enforcement of ATTM's arbitration provision merely

17     because the provision requires traditional, individual arbitration, that state law would be

18     preempted by the FAA. Second, the Supreme Court has made clear that federal statutory claims

19     are arbitrable unless Congress intends to preclude arbitration under a given statute, and as the

20     weight of authority makes clear, Congress did not intend to do so in enacting the MMWA.

21     **BACKGROUND**

22         The plaintiffs—residents of New York, California, and Washington—each purchased at

23     least one iPhone and activated it for use with ATTM's network. Rev. Consol. Am. Compl. ¶¶

24     13–21, 31. They allege that ATTM and Apple, Inc., which manufactures the iPhone, have

25     violated Section 2 of the Sherman Antitrust Act (15 U.S.C. § 2), the MMWA (15 U.S.C. §§

26     2301–12), and the consumer laws of 42 states and the District of Columbia. Rev. Consol. Am.

27     Compl. ¶ 1.[1]  Plaintiffs request actual, treble, and punitive damages, injunctive relief, and

28     ---

[1]     A number of counts in the complaint are directed at Apple alone. *See* Rev. Consol. Am.

(cont'd)

1   attorneys' fees and costs (*id.* pp. 36–37) on behalf of classes of (i) iPhone purchasers nationwide

2   and (ii) iPhone purchasers in 42 states and the District of Columbia (*id.* ¶¶ 108–09).

3       In filing their lawsuit, however, plaintiffs have ignored that, when they activated their

4   iPhones, they expressly agreed to pursue their disputes against ATTM in individual arbitration or

5   small claims court.  Whether a purchaser of an iPhone is an existing ATTM subscriber or a new

6   customer, he or she must use the iTunes program to activate the iPhone for use with ATTM's

7   network.   Declaration of Neal S. Berinhout ¶¶ 28–29.   During that activation process, the

8   customer must click on a check box next to the statement "I have read and agree to the AT&T

9   Service Agreement"; the text of that Agreement, in turn, is displayed immediately above the

10  check box in a printable text box.  *Id.* ¶ 28 & Ex. 9.  The first sentence in the text box explains

11  that, by clicking on the check box below, the customer agrees to be "bound" to "the Terms of

12  Service, including the binding arbitration clause."  *Id.*

13      The arbitration provision in the Service Agreement states that "[ATTM] and you agree to

14  arbitrate **all disputes and claims between us**" or to pursue such disputes in small claims court.

15  *Id.* Ex. 9 at 4 (emphasis in original).  The provision specifies that arbitration must be conducted

16  on an individual rather than class-wide basis.  *Id.* Ex. 9 at 5–6.

17      To ATTM's knowledge, its revised arbitration provision is the most pro-consumer

18  arbitration provision in the country.  *See* Declaration of Richard A. Nagareda ¶ 11.   The

19  provision includes the following pro-consumer features (Berinhout Dec. Ex. 9 at 4–6):

20
- **Cost-free arbitration:**  "[ATTM] will pay all [American Arbitration Association
21    ("AAA")] filing, administration and arbitrator fees" unless the arbitrator determines that
      the claim "is frivolous or brought for an improper purpose (as measured by the standards
22    set forth in Federal Rule of Civil Procedure 11(b))";[2]

23
- **$5,000 or $7,500 minimum award:**  If the arbitrator awards the customer relief that is
     greater than "[ATTM]'s last written settlement offer made before an arbitrator was
24   selected," ATTM must pay the customer ***the greater of:*** the amount of the award; $5,000;
     or the jurisdictional maximum of the customer's local small claims court—which in
25   California is $7,500 (Cal. Code Civ. Proc. § 116.221);

26  ─────────────────
Compl. ¶¶ 8, 11, 122–32, 163–74.

27  [2]     In the event that an arbitrator concludes that a consumer's claim is frivolous, the AAA's
consumer arbitration rules would cap a consumer's arbitration costs at $125.  *See* Berinhout Dec.
28  Ex. 7 (AAA, *Supplementary Procedures for Consumer-Related Disputes* § C-8).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

- **Double attorneys' fees:** If the arbitrator awards the customer more than ATTM's last written settlement offer, then "[ATTM] will * * * pay [the customer's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses, that [the] attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration";[3]

- **ATTM disclaims right to seek attorneys' fees:** "Although under some laws [ATTM] may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, [ATTM] agrees that it will not seek such an award [from the customer]";

- **Small claims court option:** Either party may bring a claim in small claims court;

- **No confidentiality requirement:** The parties need not keep the arbitration confidential;

- **Full remedies available:** The arbitrator can award the same remedies to individual consumers (including punitive damages and injunctions) that a court could award;

- **Flexible consumer procedures:** Arbitration will be conducted under the AAA's Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer-Related Disputes, which the AAA designed with consumers in mind;

- **Conveniently located hearing:** Arbitration will take place "in the county * * * of [the customer's] billing address"; and

- **Choice of in-person, telephonic, or no hearing**: For claims of $10,000 or less, customers have the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a hearing by telephone, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator."[4]

In addition, ATTM has tailored other aspects of the dispute-resolution process to ensure its effectiveness for consumers. In particular, customers can obtain redress informally without the need for arbitration by contacting ATTM's customer care department by phone or by e-mail. *Id.* ¶ 18. In April 2008, for example, representatives dispensed more than 6.5 million credits worth about $139 million for customer concerns and complaints. *Id.* ¶ 19. From April 2007 to April 2008, representatives dispensed more than $1.3 billion in credits. *Id.*

A customer who is dissatisfied with the resolution offered by the customer care department can take the next step—as required by ATTM's arbitration provision—of providing ATTM with notice of the dispute. *Id.* ¶ 21. That is as simple as sending a letter to ATTM or

---

[3]    This attorney premium "supplements" any right to attorneys' fees and expenses [that the customer] may have under applicable law." Berinhout Dec. Ex. 9 at 5. Thus, even if an arbitrator were to award a customer less than ATTM's last settlement offer, the customer would be entitled to an attorneys' fee award to the same extent as if the claim had been brought in court.

[4]    Under the AAA rules that would otherwise apply, either party may insist on a hearing in cases involving claims of $10,000 or less. *See* Berinhout Dec. Ex. 7 (AAA, *Supplementary Procedures for Consumer-Related Disputes* §§ C-5, C-6). For claims exceeding $10,000, a hearing would be held unless both parties agreed to forgo it. *See id.*

1  filling out and mailing a one-page Notice of Dispute form that ATTM has posted on its web site.

2  *Id.* ¶ 18 & Ex. 8.  ATTM generally responds to a notice of dispute with a written settlement

3  offer.  *Id.* ¶ 23.  If ATTM and the customer cannot resolve the dispute within 30 days, the

4  customer may begin the formal arbitration process.  *Id.* Ex. 2 at 2.  To do so, the customer need

5  only fill out a one-page Demand for Arbitration form and send copies to the AAA and to ATTM.

6  Customers may obtain a copy of the form from the AAA's web site or use a simplified form that

7  ATTM has posted on its website.  *See id.* ¶ 16 & Exs. 4–5.  To further assist its customers,

8  ATTM's website includes a layperson's guide on how to arbitrate a claim.  *Id.* ¶ 15 & Ex. 3.[5]

9  In response to plaintiffs' lawsuit, ATTM sent plaintiffs' counsel a letter advising them of

10  the parties' agreements to arbitrate and requesting that plaintiffs dismiss their complaint and

11  pursue their claims against ATTM in arbitration (or small claims court) in accordance with their

12  agreements.  Plaintiffs failed to respond.[6]

13  **ARGUMENT**

14  **I.    THE FAA MANDATES ENFORCING THE ARBITRATION AGREEMENTS.**

15  The FAA mandates that written agreements to arbitrate disputes "shall be valid,

16  irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

17  revocation of any contract."  9 U.S.C. § 2.  Congress enacted the FAA to "reverse the

18  longstanding judicial hostility to arbitration agreements * * *[,] to place [these] agreements upon

19  the same footing as other contracts[,] * * * [and to] manifest a liberal federal policy favoring

20  arbitration agreements."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (internal

21  quotation marks omitted).

22  An arbitration agreement must meet two basic conditions for the FAA to apply:  (1) the

---

23  [5]    Many ATTM customers have found individual arbitration to be a viable dispute
24  resolution mechanism:  From December 23, 2006 through June 13, 2008, ATTM received more
than 600 notices of disputes or demands for arbitration.  Berinhout Dec. ¶ 22.  In addition, as
25  noted above, ATTM's provision gives customers the option of filing claims in small claims
court.  ATTM responded to more than 1,100 such claims from 2005 through 2007.  *Id.* ¶ 25.

26  [6]    Because ATTM has moved to compel arbitration, the issue before the Court with respect
27  to plaintiffs' claims against ATTM is whether those claims should proceed in an arbitral forum
rather than in this Court.  Nevertheless, ATTM agrees that, on the merits—for the reasons stated
28  in Apple's motion to dismiss—plaintiffs have failed to state a claim upon which relief can be
granted against either defendant.

agreement must be "written"; and (2) it must be in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. These conditions are satisfied here: Plaintiffs' arbitration agreements are in writing (*see* page 2, *supra*), and their service agreements involve commerce, as "telephones, even when used intrastate, are instrumentalities of interstate commerce." *United States v. Corum*, 362 F.3d 489, 493 (8th Cir. 2004) . Because plaintiffs' claims indisputably fall within the all-encompassing scope of their arbitration agreements, the Court should compel arbitration and stay this action. We nonetheless expect plaintiffs to contend that their arbitration agreements are unenforceable, but as we explain below, any such arguments would lack merit.

## II.    PLAINTIFFS CANNOT AVOID THEIR OBLIGATION TO ARBITRATE ON AN INDIVIDUAL BASIS BY INVOKING STATE UNCONSCIONABILITY LAW.

The choice-of-law provision in each plaintiff's service agreement states that "[t]he law of the state of your billing address shall govern this Agreement except to the extent that such law is preempted by or inconsistent with applicable federal law." Berinhout Dec. Ex. 9 at 6. Kliegerman has a New York billing address, Holman has a Washington billing address, Lee has either a New York or California billing address, and the remaining plaintiffs have California billing addresses. *See* Rev. Consol. Am. Compl. ¶¶ 14–21.[7] Accordingly, any unconscionability attack would arise under the laws of those three states. As we explain below, ATTM's arbitration provision is fully enforceable under those states' laws. But if ATTM's arbitration provision were unenforceable under the law of a particular state, that law would be preempted by the FAA.

### A.    Plaintiffs' Arbitration Agreements Are Not Unconscionable Under New York, Washington, Or California Law.

#### 1.    Kliegerman's Arbitration Agreement Is Enforceable Under New York Law.

Under New York law, "[a]n unconscionable contract has been defined as one which 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" *Gillman v. Chase*

---

[7]    ATTM has not been able to identify plaintiff Michael G. Lee. *See* Berinhout Dec. ¶ 49. But based on his allegation that he activated his iPhone in California and now lives in New York (Rev. Consol. Am. Compl. ¶ 17), he likely has either a California or New York billing address.

1    *Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (quoting *Mandel v. Liebman*, 100

2    N.E.2d 149, 152 (N.Y. 1951)); *see also La Salle Nat'l Bank Ass'n v. Kosarovich*, 820 N.Y.S.2d

3    144, 146 (App. Div. 2006) (a contract is unconscionable if "no reasonable and competent person

4    would accept [its] terms, which are so inequitable as to shock the conscience") (internal

5    quotation marks omitted).    Agreeing to arbitrate on an individual basis does not meet that

6    standard.  To the contrary, New York courts have repeatedly held that arbitration agreements that

7    prohibit class-wide adjudication are not unconscionable.  For example, New York's intermediate

8    appellate court has held that "a contractual proscription against class actions" contained in a

9    standardized cellular service agreement "is neither unconscionable nor violative of public

10   policy."  *Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (App. Div. 2003).[8]    ATTM's

11   arbitration provision therefore is not substantively unconscionable under New York law.

12          Moreover, other than in "exceptional cases" in which a contract is "so outrageous as to

13   warrant holding it unenforceable on the ground of substantive unconscionability alone," a party

14   claiming unconscionability must establish procedural unconscionability as well.  *Gillman*, 534

15   N.E.2d at 829.  Under New York law, procedural unconscionability "requires an examination of

16   the contract formation process" for such matters as "whether deceptive or high-pressured tactics

17   were employed, the use of fine print in the contract, the experience and education of the party

18   claiming unconscionability, and whether there was disparity in bargaining power."  *Id.* at 828.

19          Kliegerman cannot claim that he was pressured or deceived into agreeing to arbitration.

20   To activate his iPhone, he clicked on a box stating that he had "read and agree[d] to the AT&T

21   Service Agreement" that was displayed immediately above in a printable text box.  Berinhout

22   Dec. ¶ 28 & Ex. 10 at 7.  And the very first sentence in the text box notified him that the terms of

23   service included a "binding arbitration clause."  *Id.*  Kliegerman was free to decline arbitration

24   _____

[8]      *See also Hayes v. County Bank*, 811 N.Y.S.2d 741, 743 (App. Div. 2006); *Tsadilas v.

25   Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 2004); *Brower v. Gateway 2000, Inc.*,
     676 N.Y.S.2d 569, 573 (App. Div. 1998) (a consumer's preference for a class-action lawsuit

26   "does not alter the binding effect of the valid arbitration clause contained in [his] agreement");
     *Harris v. Shearson Hayden Stone, Inc.*, 441 N.Y.S.2d 70 74–75 (App. Div. 1981), *aff'd*, 435

27   N.E.2d 1097 (N.Y. 1982); *accord, e.g., Douglas v. U.S. Dist. Ct.*, 495 F.3d 1062, 1068 (9th Cir.
     2007) ("[class] waivers aren't substantively unconscionable under New York law"), *cert denied*

28   *sub nom. Talk Am., Inc. v. Douglas*, 128 S. Ct. 1472 (2008).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

1   and to obtain wireless service elsewhere; indeed, at least one wireless carrier does not require

2   arbitration as a condition of service.[9]   *See* Declaration of Kevin Ranlett ¶¶ 8–9; *see also*

3   *Rosenfeld v. Port Auth. of New York*, 108 F. Supp. 2d 156, 164–65 (E.D.N.Y. 2000) (E-ZPass

4   agreement was not procedurally unconscionable because customers "remain[ed] free" to reject

5   their form contracts and "continue to use traditional cash toll lanes").   Moreover, following

6   activation, ATTM mailed Kliegerman a Terms of Service booklet that disclosed the arbitration

7   provision at the top of the very first page.   Berinhout Dec. Ex. 12 at 1 ("**This Agreement**

8   **requires the use of arbitration to resolve disputes * * *.**") (emphasis in original).   And

9   Kliegerman had 14 days to cancel service without having to pay an early-termination fee.   *See id.*

10  Ex. 13.[10]   In addition, Kliegerman claims on his web site to be a sophisticated real estate broker

11  and thus has a great deal of experience with reading contracts.[11]   Accordingly, Kliegerman's

12  arbitration agreement is not procedurally unconscionable.[12]

13  ### 2.    The Arbitration Agreements Are Enforceable Under California Law.

14  The California plaintiffs—Rivello, Smith, Macasaddu, Morikawa, Scotti, and Sesso (and

15  possibly Lee (*see* page 5 n.7, *supra*))—must prove both procedural and substantive

16  unconscionability.   *See*, *e.g.*, *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669,

---

[9]    Before obtaining his iPhones, Mr. Kliegerman had activated ATTM wireless service in March 2007.  *See* Berinhout Dec. ¶ 40.  In doing so, he would have received and agreed to the terms of service in effect at that time, including the agreement to arbitrate "**all disputes and claims between us,**"  *See id.* ¶ 40 & Ex. 12 at 12.  Kliegerman, therefore, was on notice before purchasing his iPhone that ATTM requires arbitration as a condition of service.  Moreover, the March 2007 arbitration agreement independently requires arbitration of Kliegerman's claims, which are within the broad scope of that earlier agreement.

[10]   Customers who return opened iPhones may be assessed a 10 percent restocking fee. Berinhout Dec. Ex. 13.  But the Appellate Division has made clear that it is not procedurally unconscionable to require customers to pay the cost of returning a product in order to reject an arbitration provision in the terms enclosed with that product.  *See Brower*, 676 N.Y.S.2d at 573 ("While returning the goods to avoid the formation of the contract entails affirmative action by the consumer, and even some expense, this may be seen as a trade-off for the convenience and savings for which the consumer presumably opted when he or she chose to make a purchase of such consequence by phone or mail as an alternative to on-site retail shopping.").

[11]   According to his web site, Kliegerman is a licensed real estate broker with "40+ years experience" in sales, leasing, and development of real estate.  Ranlett Dec. ¶¶ 10–11 & Exs. 10–11 (capitalization and emphasis omitted).

[12]   As noted above (at page 5 n.7, *supra*), Lee may have a New York billing address.  If so, then for the reasons we have explained, his arbitration agreement also is not substantively or procedurally unconscionable.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

690 (Cal. 2000).  Procedural unconscionability involves "oppression" or "surprise" in the making of the agreement (*id.*), while substantive unconscionability focuses on whether the contractual term in question is so "overly harsh" or "one-sided" (*id.*) as to "shock the conscience."  *Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631, 649–50 (Ct. App. 2007); *Aron v. U-Haul Co.*, 49 Cal. Rptr. 3d 555, 564 (Ct. App. 2006).  Put another way, the bargain that the term represents must be one that "'no man in his senses, and not under delusion, would make on the one hand, and [that] no honest and fair man would accept on the other.'"  *Herbert v. Lankershim*, 71 P.2d 220, 257 (Cal. 1937) (quoting *Odell v. Moss*, 62 P. 555, 557 (Cal. 1900) (quoting in turn 1 Joseph Story, COMMENTARIES ON EQUITY JURISPRUDENCE § 244 (14th ed. 1918)); *see also Cal. Grocers Ass'n, Inc. v. Bank of Am.*, 27 Cal. Rptr. 2d 396, 402 (Ct. App. 1994).

In performing the unconscionability inquiry, California courts employ a "sliding scale": "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Armendariz*, 6 P.3d at 690 (internal quotation marks omitted).  In other words, if "the procedural unconscionability, although extant, [is] not great," the party attacking the term must prove "a greater degree of substantive unfairness."  *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 107 Cal. Rptr. 2d 645, 656–57 (Ct. App. 2001).  Under California's sliding-scale approach, ATTM's arbitration provision is fully enforceable.

### a.    The California Plaintiffs Can Establish At Most Only A Modest Degree Of Procedural Unconscionability.

We acknowledge that the manner in which iPhone purchasers agree to ATTM's arbitration provision involves a modest degree of procedural unconscionability under California law as interpreted by the Ninth Circuit.  Although the plaintiffs could have obtained wireless service elsewhere without agreeing to arbitration (Ranlett Dec. ¶¶ 2–9), the Ninth Circuit held in *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007), that "a contract may be procedurally unconscionable under California law when the party with substantially greater bargaining power presents a 'take-it-or-leave-it' contract to a customer—even if the customer has a meaningful choice as to service providers."  *Id.* at 985 (internal quotation marks

omitted).[13]    As the California Court of Appeal has made clear, however, the non-negotiable nature of an agreement suffices only to establish "a minimal degree of procedural unconscionability." *Gatton*, 61 Cal. Rptr. 3d at 356.

The California plaintiffs cannot establish any greater measure of oppression or surprise. An iPhone plainly is a "nonessential recreational" good that plaintiffs "always ha[d] the option of simply forgoing." *Belton*, 60 Cal. Rptr. 3d at 650 (cable music service is non-essential); *see also Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196, 1202 (C.D. Cal. 2006) (personal computers are non-essential); *cf. Riensche v. Cingular Wireless LLC*, 2007 WL 3407137, at *8 (W.D. Wash. Nov. 9, 2007) ("telephone service, particularly cellular service, is not a necessity"). Moreover, as explained above, ATTM's arbitration provision is prominently disclosed during and after the activation process, and customers have 14 days to review their contracts and to cancel them without paying an early-termination fee. *See* page 7, *supra*. As Judge Hamilton recently has explained, "providing a consumer with an opportunity to rescind an agreement greatly diminishes any aspect of procedural unconscionability" under California law. *Omstead v. Dell, Inc.*, 533 F. Supp. 2d 1012, 1036–37 (N.D. Cal. 2008).[14]

---

[13]    Although this Court is bound by this aspect of *Shroyer*, we submit that the Ninth Circuit erred in "follow[ing] the [California] courts that reject the notion that the existence of 'marketplace alternatives' bars a finding of procedural unconscionability," and declining to follow the conflicting line of California cases that have held that there can be no procedural unconscionability when the customer has meaningful alternatives to contracting with the defendant. 498 F.3d at 985. The two competing lines of published cases reveal an unmistakable pattern.    The cases that find non-negotiable form contracts to be per se procedurally unconscionable regardless of the availability of market alternatives all involve arbitration provisions. *See Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344, 353–56 (Ct. App. 2007), *cert den.*, 2008 WL 368871 (U.S. May 27, 2008); *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862, 867 (Ct. App. 2002); *Villa Milano Homeowners Ass'n v. Il Davorge*, 102 Cal. Rptr. 2d 1, 5–6 (Ct. App. 2000).    In contrast, the cases that reject the argument that form contracts are procedurally unconscionable when meaningful substitutes are available all involve other types of contractual provisions. *See Belton*, 60 Cal. Rptr. 3d at 650 (requirement that cable music subscribers receive basic cable television); *Wayne v. Staples, Inc.*, 37 Cal. Rptr. 3d 544, 556 (Ct. App. 2006) (declared-value insurance for package shipping); *Aron*, 49 Cal. Rptr. 3d at 564 (rental truck refueling policy); *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 807 (Ct. App. 2005) (termination fee); *Dean Witter Reynolds, Inc. v. Super. Ct.*, 259 Cal. Rptr. 789, 795 (Ct. App. 1989) (termination and annual fee). Because the conflict hinges entirely on whether an arbitration provision is at issue, reliance on the arbitration-specific rule violates the FAA, which forbids states from applying a different standard of procedural unconscionability to arbitration provisions than to other provisions. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (courts cannot "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable").

[14]    Additionally, plaintiffs Scotti, Rivello, Macasaddu, and Morikawa had previously

(cont'd)

In short, the fact that ATTM's arbitration provision is contained in a form contract implicates, at most, only a minimal quantum of procedural unconscionability.[15]   Accordingly, under California's sliding-scale approach, the California plaintiffs would have to "make a ***strong showing*** of substantive unconscionability to render [their] arbitration provision unenforceable." *Gatton*, 61 Cal. Rptr. 3d at 356 (emphasis added).   As we next explain, plaintiffs cannot demonstrate that ATTM's arbitration provision is substantively unconscionable at all, much less make the requisite "strong showing" of substantive unfairness.

> **b.    Under California Law, ATTM's Arbitration Provision Is Not Substantively Unconscionable At All, Much Less Greatly So.**

**(1).**   In *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005), the California Supreme Court held that a class-arbitration prohibition in a credit-card issuer's arbitration provision was substantively unconscionable because it effectively "insulate[d]" the company from liability for the $29 claims at issue in that case. *Id.* at 1109.   But the court made clear that it was not holding "that ***all*** class action waivers are necessarily unconscionable."   *Id.* at 1110 (emphasis added).   Rather, whether such a provision is substantively unconscionable turns on

---

activated service with ATTM or its predecessor AT&T Wireless Services, Inc.. *See* Declaration of Cynthia Hennessy ¶¶ 9–10; Berinhout Dec. ¶¶ 44, 50–53, 56–61, 64.   Each therefore had previously agreed to arbitration with ATTM (*see id.*) and was aware before purchasing his or her iPhone that arbitration is a condition of service with ATTM.   ATTM also sent a copy of the revised 2006 arbitration provision to each of these plaintiffs in December 2006. *See* Berinhout Dec. ¶¶ 11, 45, 54, 62, 65.   The 2006 revision to their existing arbitration agreements separately mandates arbitration of these plaintiffs' claims, which are within its broad scope.   In addition, Scotti, Sesso, and Rivello each activated or renewed ATTM service for cell phone devices other than the iPhone (in March and October 2007 and May 2008, respectively), and in doing so again agreed to ATTM's revised 2006 arbitration provision.   For that reason, too, those plaintiffs are required to arbitrate their claims. *See id.* ¶¶ 46–47, 66, 69 & Exs. 12, 19).

[15]    Judge Armstrong recently has ruled that the manner in which iPhone purchasers agree to ATTM's arbitration provision involves more than minimal procedural unconscionability based on her conclusion that the iPhone is unique and that the plaintiffs in the case before her were not given a copy of ATTM's terms of service at the time of purchase. *See Stiener v. Apple Computer, Inc.*, 2008 WL 691720, at *8–*10 (N.D. Cal. Mar. 12, 2008), *appeal pending*, No. 08-15612 (9th Cir.).   But California law does not require that alternatives be perfect substitutes. *See Belton*, 60 Cal. Rptr. 3d at 650 (FM radio, internet broadcasts, CD players, and satellite music services are acceptable alternatives for cable television music service).   And it is routine to delay the "revelation of full terms" until after the customer has paid for a product. *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997); *see also Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1105 (C.D. Cal. 2002) (applying California law) ("the economic and practical considerations involved in selling services to mass consumers * * * make it acceptable for terms and conditions to follow the initial transaction").

1    whether the plaintiff may feasibly vindicate "small" claims without using the class-action

2    mechanism and, conversely, whether the class waiver threatens to insulate the company from

3    liability for cheating its customers. *Id.*

4        ATTM's revised arbitration provision is fully enforceable under *Discover Bank* as well as

5    *Shroyer*, in which the Ninth Circuit held that the class waiver in an earlier version of ATTM's

6    arbitration provision was substantively unconscionable under *Discover Bank*. *Shroyer*, 498 F.3d

7    at 986–87. The earlier arbitration provision specified that ATTM (then Cingular) would pay the

8    full cost of arbitration and, in addition, would pay the plaintiff's attorneys' fees if the arbitrator

9    awarded the plaintiff the amount of his or her demand or more. *Id.* at 986. The Ninth Circuit

10   held that those features were insufficient to render the class waiver enforceable under *Discover*

11   *Bank* because "when the potential for individual *gain* is small, very few plaintiffs, if any, will

12   pursue individual arbitration or litigation * * *. [*Discover Bank*] did not suggest that a [class

13   action] waiver is unconscionable only when or because a plaintiff in arbitration may experience a

14   net loss (including attorneys' fees and costs)." *Id.* (emphasis in original; citation omitted).

15       ATTM's ***revised*** arbitration provision squarely addresses these concerns. As noted

16   above, ATTM has built the necessary "individual gain" into its arbitration provision by providing

17   that any California customer who obtains an arbitral award in excess of ATTM's last settlement

18   offer will receive at least ***$7,500***, while the customer's counsel (if any) will receive ***double***

19   attorneys' fees. *See* pages 2–3 & n.3, *supra*. These amounts far exceed the level of damages that

20   Congress and the California Legislature have deemed sufficient to encourage individuals and

21   their counsel to pursue statutory claims.[16] The premiums available under ATTM's arbitration

22   procedures also substantially exceed the typical incentive payments awarded to class

23   representatives as part of court-approved class settlement agreements. *See* Theodore Eisenberg

24   _____

[16]    *See* Nagareda Dec. ¶ 14 (citing $500 statutory damages provision in Telephone
25   Consumer Protection Act and $1,000 statutory damages provision in Cable Act); 15 U.S.C.
     § 1681n(a) (statutory damages of between $100 and $1,000 available under Fair Credit
26   Reporting Act); Cal. Civ. Code § 54.3(a) ($1,000 statutory damages under Disabled Persons
     Act). These legislative determinations of the amount needed to encourage vindication of
27   statutory rights are entitled to great (if not dispositive) weight. *See Santisas v. Goodin*, 951 P.2d
     399, 413 (Cal. 1998) (noting court's "reluctan[ce] to declare contractual provisions void or
28   unenforceable on public policy grounds without firm legislative guidance").

1   & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53

2   UCLA L. REV. 1303, 1333 & tbl. 5 (2006) (finding median incentive award for class

3   representatives in consumer and consumer credit cases to be $2,089 and $1,045, respectively).

4        In light of the opportunities for "individual gain" that are built into ATTM's arbitration

5   provision, the concerns that caused the California Supreme Court and the Ninth Circuit to

6   invalidate the class-arbitration prohibitions in *Discover Bank* and *Shroyer* are inapplicable here.

7   ATTM has not immunized itself from liability because ATTM's arbitration provision, and the

8   premiums that are available under it, serve as affirmative inducements for customers to pursue

9   their claims in arbitration and for lawyers to represent such customers. By contrast, studies of

10  consumer class action settlements show that few consumers bother to file a claim when the

11  amount that they would receive is small—as it inevitably would be if this case were certified as a

12  class action and then settled.[17]

13       Moreover, ATTM's revised provision reduces burdens on customers by allowing them to

14  choose to arbitrate by telephone or even by mail. *See* page 3, *supra*. The premium provisions

15  also encourage ATTM to resolve disputes quickly—*i.e.*, before arbitration—by making

16  settlement offers that satisfy its customers. If it fails to resolve a claim, ATTM risks paying

17  large premiums to the customer and counsel, as well as the full costs of arbitration, which can be

18

19  [17]    *See, e.g.*, James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*,
    18 GEO. J. LEGAL ETHICS 1443, 1445–46 (2005) (noting that the redemption rate of class action

20  coupons ranges from one to three percent); Christopher R. Leslie, *A Market-Based Approach to
    Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. REV. 991,

21  1035 (2002) (reporting a study of ten consumer class action settlements in which the redemption
    rates varied from 3 to 13.1 percent); Gail Hillebrand & Daniel Torrence, *Claims Procedures in*

22  *Large Consumer Class Actions and Equitable Distribution of Benefits*, 28 SANTA CLARA L. REV.
    747, 753 (1988) (discussing three settlements in which the claims rates were 3, 10.5, and 18

23  percent); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 649–50 (7th Cir. 2006)
    (noting that only a "paltry three percent" of class members had filed claims under the

24  settlement); *Palamara v. Kings Family Rests.*, 2008 WL 1818453, at *2 (W.D. Pa. Apr. 22,
    2008) ("approximately 165 class members" out of 291,000 "had obtained a voucher" under the

25  settlement, yielding a take rate of under 0.06 percent); *Yeagley v. Wells Fargo & Co.*, 2008 WL
    171083, at *2 (N.D. Cal. Jan. 18, 2008) ("less than one percent of the class chose to participate in

26  the settlement"); *Moody v. Sears, Roebuck & Co.*, 2007 WL 2582193, at *5 (N.C. Super. Ct.
    May 7, 2007) ("only 337 valid claims were filed out of a possible class of 1,500,000," yielding a

27  take rate of just over 0.02 percent); *see also* Class Action Fairness Act of 2005, PUB. L. NO. 109-
    2, 119 Stat. 4, § 2(a)(3) (congressional finding that "[c]lass members often receive little or no

28  benefit from class actions, and are sometimes harmed").

1    substantial.[18]  That is true not only of the small number of disputes that might be susceptible to

2    class-wide adjudication, but also for the vast majority of other disputes that are individualized.[19]

3        In short, ATTM's revised arbitration provision does not operate as an exculpatory clause.

4    As Professor Nagareda explains, although some arbitration provisions containing class-

5    arbitration prohibitions may result in "the effective elimination of consumers' private rights of

6    action" (Nagareda Dec. ¶ 7), **ATTM's** arbitration provision is not of that ilk.  It "reduces

7    dramatically the cost barriers to the bringing of individual consumer claims, is likely to facilitate

8    the development of a market for fair settlements of such claims, and provides financial incentives

9    for consumers (and their attorneys, if any) to pursue arbitration in the event that they are

10   dissatisfied with whatever offer ATTM has made to settle their dispute." *Id.* ¶ 11.  It therefore is

11   not substantively unconscionable at all.  At minimum, taking into account the (at most) modest

12   level of procedural unconscionability, this unprecedentedly pro-consumer arbitration provision

13   does not rise sufficiently high on the spectrum of substantive unconscionability to warrant

14   refusing to enforce it.  *See Gatton*, 61 Cal. Rptr. 3d at 356 (requiring "strong showing" of

15   substantive unconscionability when the only basis for finding procedural unconscionability is the

16   fact that contract is non-negotiable).

17       **(2)**.  Two federal district court judges recently held that ATTM's revised arbitration

18   provision is unconscionable under California law.  *See Kaltwasser v. Cingular Wireless LLC*,

19   543 F. Supp. 2d 1124 (N.D. Cal. 2008), *appeal pending*, No. 08-15962 (9th Cir.); *Stiener*, *supra*,

20   2008 WL 691720.  Those decisions, however, are fundamentally mistaken.

21       First, the *Kaltwasser* court entirely failed to address the special premiums that ATTM's

22   arbitration provision makes available to customers.  Instead, the court treated *Discover Bank* as

23   an across-the-board holding that all class-arbitration prohibitions in consumer form contracts are

24   ───────────────

[18]    If a customer selects an in-person hearing, ATTM must pay at least $1,700 in arbitration
25   costs:  $750 in administrative fees, a $200 case service fee, and $750 in arbitrator fees.  *See*
     Berinhout Dec. Ex. 7 (AAA, *Supplementary Procedures for Consumer-Related Disputes* § C-8).

26   [19]    Moreover, the millions of customers who never have a dispute of any kind benefit from
     ATTM's arbitration provision in the form of lower prices for wireless services.  *See*, *e.g.*,
27   *Boomer v. AT&T Corp.*, 309 F.3d 404, 419 (7th Cir. 2002) ("arbitration offers cost-saving
     benefits * * * and these benefits are reflected in a lower cost of doing business that in
28   competition are passed along to customers") (internal quotation marks omitted).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

1   unconscionable (*see* 543 F. Supp. 2d at 1131), no matter how pro-consumer the arbitration

2   procedures may be.   Yet the California Supreme Court distinctly warned that it was "***not***

3   hold[ing] that ***all*** class action waivers are necessarily unconscionable." *Discover Bank*, 113 P.3d

4   at 1110 (emphasis added).   *Kaltwasser*'s holding also rested on the court's conclusion that the

5   arbitration provision is not mutual because ATTM is unlikely to bring a class action against its

6   customers (543 F. Supp. 2d at 1131).   Because California has no generally applicable

7   requirement that all obligations in a contract be entirely mutual (*see Foley v. Interactive Data*

8   *Corp.*, 765 P.2d 373, 381 n.14 (Cal. 1988)), however, this differential treatment of an arbitration

9   provision violates the FAA.[20]

10      The *Stiener* court likewise erred in treating California law as imposing an across-the-

11  board ban on class-arbitration waivers.   It held that ATTM "needs to show its Arbitration

12  Agreement functions as well as a class action would" (2008 WL 691720, at *12) by proving

13  "that ***all***" putative class members "would recover more, on average," in individual arbitration

14  than in the plaintiff's class action (*id.* at *13 (emphasis in original)).   In so holding, the court

15  erroneously reversed the burden of proof:  It is the party opposing arbitration who must prove

16  unconscionability.   *Engalla v. Permanente Med. Group, Inc.*, 938 P.2d 903, 915–16 (Cal. 1997).

17  Moreover, the court's premise is misguided.   What matters is whether the plaintiffs ***themselves***

18  would  be  effectively  foreclosed  from  pursuing  claims  in  individual  arbitration.    If

19  unconscionability were measured by reference to the total ***potential*** relief for a putative class,

20  then no class waiver could be enforceable, an outcome disavowed in *Discover Bank* itself.

### 3.    Holman's Arbitration Agreement Is Enforceable Under Washington Law.

23      Under Washington law, a contractual term may be invalidated if the party resisting its

24  enforcement proves that it is substantively unconscionable without reference to the manner in

25  which the contract was formed.  *Adler v. Fred Lind Manor*, 103 P.3d 773, 781–82 (Wash. 2004).

---

[20]    *See Preston v. Ferrer*, 128 S. Ct. 978, 985 (2008) (FAA preempts provision of California Labor Code that "imposes prerequisites to enforcement of an arbitration agreement that are not applicable to contracts generally"); *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262, at *10 (E.D. Ark. Mar. 25, 2008) ("Arkansas law requiring mutuality within the arbitration paragraph itself is preempted by the FAA because it places the arbitration clause on unequal footing with other contract terms that do not each have to be mutual.").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

1   By contrast, the Washington Supreme Court has not yet resolved whether procedural

2   unconscionability alone suffices to invalidate a contract.  But as we explain below, Holman's

3   arbitration agreement is fully enforceable under Washington law because it is neither

4   substantively nor procedurally unconscionable.

5                    **a.    ATTM's Arbitration Provision Is Not Substantively**
                           **Unconscionable Under Washington Law.**
6

7           Under Washington law, "[s]ubstantive unconscionability involves those cases where a

8   clause or term in the contract is alleged to be one-sided or overly harsh.  'Shocking to the

9   conscience,' 'monstrously harsh,' and 'extremely calloused' are terms sometimes used to define

10  substantive unconscionability."  *Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 759 (Wash.

11  2004) (citations omitted); *see also Adler*, 103 P.3d at 781 (same).  ATTM's arbitration provision

12  comes nowhere near that high threshold.

13          In *Scott v. Cingular Wireless*, 161 P.3d 1000 (Wash. 2007), the Washington Supreme

14  Court invalidated an earlier arbitration provision used by ATTM's predecessor, Cingular

15  Wireless LLC, in part because it contained a class waiver.  *Id.* at 1003.  But *Scott* did not create a

16  categorical rule that all class waivers contained in arbitration provisions are substantively

17  unconscionable.  Rather, the court held that "only * * * class waivers that *prevent* vindication of

18  rights secured by the [Washington Consumer Protection Act ("CPA"), RCW 19.86] are invalid."

19  *Id.* at 1009 n.7 (emphasis in original).  The court added that it "can ***certainly conceive of***

20  ***situations*** where a class action waiver ***would not prevent*** a consumer from vindicating ***his or her***

21  substantive rights under the CPA and would thus be enforceable."  *Id.* (emphases added).

22          The *Scott* court struck down Cingular's provision because it concluded that, despite the

23  provision's "laudable" features—including cost-free arbitration and the right to recover

24  attorneys' fees in some circumstances—those features were not enough to "ensure that a remedy

25  is practically available" when claims are "small" (such as with respect to the $45 monthly

26  overcharge alleged in that case).  *Id.* at 1003, 1007.  The court held that even cost-free arbitration

27  might not be "worth the time, energy, and stress to pursue such individually small claims."  *Id.* at

28  1007.  The court also deemed the provision relating to attorneys' fees to be inadequate because

-15-

the court interpreted it to permit the arbitrator to discount the award when the "amount in controversy" is small and to provide for an award "only if the plaintiffs recover at least the *full amount* of their demand"—meaning that a claimant recovering "99 percent of a claim" could still "not be awarded any attorney fees." *Id.* (emphasis added).

In *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008), *pet. for cert. pending*, No. 07-1330 (U.S.), the Ninth Circuit applied *Scott* to invalidate T-Mobile's arbitration provision. *Id.* at 1219. T-Mobile's provision was *less* consumer-friendly than the provision invalidated in *Scott*: It required customers to pay $25 in arbitration costs to pursue claims worth between $25 and $1,000 and barred the recovery of punitive damages or statutory attorneys' fees. *Id.* at 1215–17 (quoting T-Mobile's arbitration clause and citing district court's discussion of that clause). The Ninth Circuit concluded that the "unconscionability analysis in *Scott* applies as forcefully to T-Mobile's agreement" as it did to Cingular's provision. *Id.* at 1219.

The arbitration provision that the Washington Court of Appeals recently invalidated in *Olson v. The Bon, Inc.*, 183 P.3d 359 (Wash. Ct. App. 2008), also was less consumer-friendly than the provision invalidated in *Scott* because it too required customers to pay some of the costs of arbitration and did not guarantee that customers could arbitrate at a convenient location. *Id.* at 364. Although the court described the defendant's stipulation to pay all arbitration costs and to permit arbitration to occur wherever the plaintiffs' choose in their home state as "laudable," the court noted that those stipulations alone "do not ensure that a remedy is practically available" and that the "stipulations ignore the other potential class members who have not been offered this remedy * * *." *Id.* at 365.

ATTM's revised provision fully addresses the concerns expressed in *Scott*, *Lowden*, and *Olson*. ATTM's provision includes all of the "laudable" features identified in *Scott* and *Olson*, including cost-free arbitration and the right to arbitrate in a convenient place. But it goes much further than that by making arbitration easier for customers and making unprecedented special premiums available to them to ensure that they and their attorneys have an adequate incentive to pursue claims. In fact, the consumer lawyer who represented the plaintiff in *Scott* indicated that he "will generally turn away individual claims for less than $5,000" (*Carideo v. Dell, Inc.*, 520 F.

1    Supp. 2d 1241, 1248 (W.D. Wash. 2007)), implying that he *will* consider and accept claims that

2    are for $5,000 or more.  Under ATTM's provision, a potential $5,000 premium is available to

3    Washington customers, *and* their attorneys may recover double their fees.  *See* pages 2–3, *supra*.

4         Indeed, ATTM's provision is even more consumer-friendly than Dell's arbitration

5    provision, which Judge Robart of the Western District of Washington recently found to be in

6    compliance with *Scott*.  *Id.* at 1245–49 & n.6.  In *Carideo*, Judge Robart determined that the

7    class waiver in Dell's arbitration provision did not prevent the plaintiffs from vindicating their

8    substantive rights because the damages at issue ($1,300 to $1,700) were not so trivial in relation

9    to potential arbitration costs as to discourage a consumer from seeking relief, given that Dell was

10   required to pay "nearly all" of the plaintiffs' arbitration costs and any statutory fee award.  *Id.* at

11   1248–49.  Because ATTM's provision responds fully to the concerns expressed by the *Scott*,

12   *Lowden*, and *Olson* courts and surpasses Dell's arbitration provision in facilitating the redress of

13   even small claims, it neither shocks the conscience nor is "monstrously harsh."

### b.    Holman's Arbitration Agreement Is Not Procedurally Unconscionable Under Washington Law.

16        Under Washington law, the procedural unconscionability inquiry requires an analysis of

17   the "circumstances surrounding the[] transaction to determine whether [the plaintiffs] lacked

18   meaningful choice."  *Zuver*, 103 P.3d at 760.  Although ATTM's arbitration provision is part of a

19   form contract, "the fact that an agreement is an adhesion contract does not necessarily render it

20   procedurally unconscionable."  *Id.*; *see also Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d

21   1166, 1175 (W.D. Wash. 2002).  Holman could have declined ATTM's arbitration provision and

22   obtained wireless service elsewhere.  *See* page 7, *supra*.  And his arbitration provision was not

23   "hidden in a maze of fine print."  *Zuver*, 103 P.3d at 760 (internal quotation marks omitted).  Far

24   from it:  The arbitration provision is prominently disclosed in ATTM's terms of service.  *See*

25   page 7, *supra*.  In Washington, as elsewhere, "[o]ne who accepts a written contract is

26   conclusively presumed to know its contents and to assent to them * * *."  *Tjart v. Smith Barney,*

27   *Inc.*, 28 P.3d 823, 829 (Wash. Ct. App. 2001).  Accordingly, Holman cannot establish that his

28   agreement is procedurally unconscionable.

1

2

**B.    The FAA Would Preempt Any State-Law Rule Under Which ATTM's Arbitration Provision Could Be Deemed Unenforceable.**

3

4

Even if the Court were to conclude that the class waiver is unconscionable under the laws of one or more states, those laws, as applied here, would be preempted by the FAA.   We

5

acknowledge that the Ninth Circuit rejected ATTM's arguments that California law is preempted

6

under the doctrines of express and conflict preemption in *Shroyer*.   498 F.3d at 987–93.   The

7

Ninth Circuit rejected T-Mobile's similar arguments that Washington law is preempted in

8

*Lowden*.   512 F.3d at 1219–22.   For reasons we discuss below, the preemption holdings in these

9

cases are not binding on this Court.

10

**1.    The FAA Expressly Preempts Any Distortion Of Unconscionability Doctrine That Would Invalidate The Arbitration Clause Here.**

11

Section 2 of the FAA specifies that arbitration provisions "shall be valid, irrevocable, and

12

enforceable, save upon such grounds as exist at law or in equity for the revocation of ***any***

13

contract." 9 U.S.C. § 2 (emphasis added).  As the Supreme Court has recently reiterated, Section

14

2 of the FAA forbids states from "impos[ing] prerequisites to enforcement of an arbitration

15

agreement that are not applicable to contracts generally."   *Preston*, 128 S. Ct. at 985.

16

Accordingly, a court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a

17

state-law holding that enforcement would be unconscionable * * *."  *Perry*, 482 U.S. at 492–93

18

n.9; *see also Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir.

19

2004) (Section 2 preempts even "general principle[s] of contract law, such as unconscionability"

20

if "those general doctrines" are "employ[ed] * * * in ways that subject arbitration clauses to

21

special scrutiny").   The Ninth Circuit itself has recognized that this principle means that a law

22

that applies to only "a limited set of transactions * * * is not a law of 'general applicability'" and

23

therefore is preempted by Section 2. *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003).   That

24

would be precisely the situation if this Court were to hold that the class-arbitration prohibition in

25

ATTM's arbitration provision is unenforceable under state unconscionability law

26

notwithstanding the ample opportunities for "individual gain" (*Shroyer*, 498 F.3d at 986

27

(emphasis omitted)) that ATTM built into the arbitration provision.

28

As discussed above, under applicable state law, contracts generally are not deemed

1   unconscionable unless they are extremely unfair.  It is simply impossible to conclude that such is

2   the case here.  Although customers may give up the right to bring a class action, that right is

3   rarely used.  On the other hand, all customers receive the benefit of lower priced wireless service

4   and a convenient method of resolving disputes that provides special premiums to ensure that they

5   and their attorneys can afford to pursue even small claims.  To deem ATTM's arbitration

6   provision to be unconscionable merely because it incorporates a traditional characteristic of

7   arbitration—the lack of class relief—is to condemn the provision on the impermissible ground

8   that traditional, individual arbitration "should be disparaged as second-class adjudication."

9   *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004).

10      To be sure, the Ninth Circuit held in *Shroyer* and *Lowden* that its holdings that Cingular's

11   and T-Mobile's arbitration provisions were unconscionable under California and Washington

12   law were a mere "refinement" of those states' generally applicable unconscionability standards

13   and hence were not precluded by Section 2 of the FAA.  *Shroyer*, 498 F.3d at 987–88; *see also*

14   *Lowden*, 512 F.3d at 1221.  Even accepting that conclusion for the sake of argument, however, it

15   would take far more than a mere "refinement" of California's, Washington's, and New York's

16   unconscionability standards—which require that a contractual term must "shock the

17   conscience"—to justify invalidating ***ATTM's*** arbitration provision.  To declare this exceptionally

18   pro-consumer provision unconscionable would require a total distortion of what it means to

19   "shock the conscience"—one that would enable courts to justify striking down any contractual

20   provision that they think ends up being unfair to one of the parties.  That is manifestly not New

21   York, Washington, or California law—at least not with respect to any contractual provisions

22   other than agreements to resolve disputes on an individual basis.  As the California Court of

23   Appeal put it, "'with a concept as nebulous as "unconscionability," it is important that courts not

24   be thrust into the paternalistic role of intervening to change contractual terms that the parties

25   have agreed to merely because the court believes the terms are unreasonable.'"  *Koehl v. Verio,*

26   *Inc.*, 48 Cal. Rptr. 3d 749, 769 (Ct. App. 2006) (quoting *Am. Software, Inc. v. Ali*, 54 Cal. Rptr.

27   2d 477, 480 (Ct. App. 1996)); *accord Childs v. Levitt*, 543 N.Y.S.2d 51, 54 (App. Div. 1989)

28   ("Equity will not relieve a party of its obligations under a contract merely because subsequently,

1    with the benefit of hindsight, it appears to have been a bad bargain."); *Montgomery Ward & Co.*

2    *v. Annuity Bd. of S. Baptist Convention*, 556 P.2d 552, 555 (Wash. Ct. App. 1976) ("People

3    should be entitled to contract on their own terms without the indulgence of paternalism by the

4    courts in the alleviation of one side or another from the effects of a bad bargain" or from

5    "contracts that actually may be unreasonable or which may lead to hardships on one side.")

6    (internal quotation marks omitted). *Shroyer* and *Lowden* therefore do not control this case. The

7    Court is free to—and should—hold that Section 2 of the FAA requires rejection of any argument

8    that ATTM's provision is unconscionable.

9
10
        **2.    A State-Law Rule That Precludes An Individual Arbitration
        Requirement Under The Circumstances Here Would Conflict With
        The Purposes of the FAA And Therefore Would Be Preempted.**

11           Any state-law rule that would preclude ATTM from requiring individual arbitration

12   notwithstanding the unprecedented incentives to invoke the arbitration process that ATTM has

13   provided would "stand[] as an obstacle to the accomplishment and execution of the full purposes

14   and objective of Congress" in enacting the FAA and would thus be preempted under the doctrine

15   of conflict preemption. *United States v. Locke*, 529 U.S. 89, 109 (2000) (quotation marks

16   omitted). When federal law encourages private parties to engage in or refrain from a certain

17   activity, as the FAA does in "declaring a liberal federal policy favoring arbitration agreements"

18   (*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), state laws

19   producing contrary incentives must yield.[21]

20           We recognize that the Ninth Circuit rejected a similar argument in *Shroyer* (and again in

21   *Lowden*), concluding that Congress did not intend the FAA to "encourage individual arbitration

22   and disfavor class arbitration." 498 F.3d at 990. The Ninth Circuit's logic, however, cannot be

---

23   [21]    *See, e.g.*, *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989) (state-
24   law protection of unpatentable inventions was preempted because it "could essentially redirect
     inventive efforts away from the careful criteria of patentability developed by Congress over the
25   last 200 years"); *Edgar v. MITE Corp.*, 457 U.S. 624, 635 (1982) (holding that federal securities
     laws preempt state tender offer regulation, which gave "incumbent management * * * a powerful
26   tool to combat tender offers," because "*[t]hese consequences are precisely what Congress
     determined should be avoided*") (emphasis added); *see also New York State Conf. of Blue Cross
27   & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995) (ERISA, which has the
     purpose of promoting regulated plans' flexibility in providing coverage, would preempt a state
     law that "produce[s] such acute, albeit indirect, economic effects, by intent or otherwise, as to
28   force an ERISA plan to adopt a certain scheme of substantive coverage").

reconciled with the Supreme Court's subsequent decision in *Preston*.[22]  In *Preston*, the Supreme Court held that the FAA preempted a provision of the California's Talent Agencies Act that required the Labor Commissioner to decide a dispute before it could be submitted to arbitration. *See* 128 S. Ct. at 981, 984–85.  The Court rejected the argument that the California law is "compatible with the FAA because [the California law] merely postpones arbitration until after the Labor Commissioner has exercised her primary jurisdiction." *Id.* at 985.  The Court explained that "[a] prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" *Id.* at 986 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633 (1985)).  "That objective would be frustrated," however, because even the mere act of "[r]equiring initial reference of the parties' dispute to the Labor Commissioner would, at the least, hinder speedy resolution of the controversy." *Id.*

Here, at the least, there can be no doubt that engrafting class proceedings onto arbitration would "hinder speedy resolution of the controversy" (*id.*) between plaintiffs and ATTM: Superimposing class-action procedures on arbitration "brings the burdens of litigation into the arbitral forum" and "lessens the distinction between the two processes."  Jonathan R. Bunch, Note, *To Be Announced: Silence from the United States Supreme Court and Disagreement Among Lower Courts Suggest an Uncertain Future for Class-Wide Arbitration*, 2004 J. Disp. Resol. 259, 272.  Resolving this case as a class arbitration would take years.[23]

---

[22]    This Court is bound to follow *Preston* rather than *Shroyer*, as a circuit court decision is abrogated whenever a Supreme Court decision "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable," even if "the issues" in the two cases are not "identical." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).

[23]    Class actions invariably begin with a lengthy collateral proceeding to determine the propriety of class certification, which generally entails (i) substantial discovery, including depositions of all class representatives (and often other witnesses) for purposes of determining such statutory prerequisites as typicality and adequacy of the class representatives and commonality of the claims across class members; (ii) plenary briefing of the class certification issue; (iii) an evidentiary hearing; (iv) a written ruling; and (v) the interlocutory appeal that inevitably follows.  If, after all of that, a class is certified, there would have to be full and adequate notice to class members and an opportunity to opt out.  Discovery commensurate with the now-increased stakes of the litigation would then commence and likely continue for months, if not years.  Should the defendant then yield to the hydraulic pressure to settle that class certification creates, due process would necessitate another round of notice followed by a fairness hearing, complete with extensive briefing by both sides, as well as by any objectors.  And if the defendant chooses not to settle, there would need to be a class-wide trial—one in which the plaintiffs are required to establish any individualized elements of their claims and the

(cont'd)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

1    Moreover, conditioning the enforceability of arbitration agreements on the availability of

2    class arbitration would do more than "hinder" arbitration's "speedy resolution":  Such a

3    requirement would force companies to abandon arbitration altogether.  When a business decides

4    whether to include an arbitration provision in its agreements with its customers, it must consider

5    the advantages and disadvantages of doing so.  The advantages of arbitration are that it "saves

6    time, saves trouble, saves money."  *Joint Hearings on S. 1005 and H.R. 646 Before the*

7    *Subcomms. of the Comms. on the Judiciary*, 68th Cong., 1st Sess. 7 (1924) (statement of Charles

8    Bernheimer, N.Y. Chamber of Commerce).[24]  The risk is that the arbitrator will render an

9    erroneous—and unreviewable—decision.  Arbitrators' decisions are largely shielded from

10   judicial review and may be reversed only for fraud, bias, or "manifest disregard" of the law.  *See*

11   9 U.S.C. § 10; *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396, 1403–04 (2008); *see also*

12   *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005)

13   (standard for vacating an arbitral award is "among the narrowest known to law").  Many

14   businesses are willing to take that risk in an individual arbitration because of the cost savings and

15   their desire for a less adversarial method of resolving disputes with customers.

16   That calculus changes dramatically, however, if the arbitration provision must allow for

17   class-wide arbitration.  As noted above, in a class arbitration, the efficiencies of individual

18   arbitration are lost.  More importantly, the stakes of a class arbitration are exponentially higher

19   than those of an individual arbitration.  No business could afford to subject itself to the risk that

20   an arbitrator subject to only very limited judicial review—and thus only loosely bound by

21   substantive rules of law—would render a massive class award.  *See* Tr. of Oral Argument, *Green*

22   *Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (observation of one Justice that "[y]ou might not

23   want to put your company's entire future in the hands of one arbitrator"), *available at* 2003 WL

24   1989562, at *29.  Nothing could more clearly "frustrate the purpose" (*Livadas v. Bradshaw*, 512

25   U.S. 107, 116 (1994)) of the FAA to "achieve 'streamlined procedures and expeditious results.'"

26   ───────────────────────
     defendant is afforded the opportunity to put on any individualized defenses.

27   [24]    As the Supreme Court has observed, these "advantages often would seem helpful to
     individuals, say, complaining about a product, who need a less expensive alternative to
28   litigation." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995).

1   *Preston*, 128 S. Ct. at 986 (quoting *Mitsubishi*, 473 U.S. at 633).  Accordingly, under *Preston*,

2   any state-law rule requiring the availability of class arbitration is preempted by the FAA.  *See*

3   *also Gay v. CreditInform*, 511 F.3d 369, 395 (3d Cir. 2007) (Pennsylvania rule that arbitration

4   provisions that prohibit class arbitration are unconscionable "interfere[s] with the appropriate

5   application of the FAA").[25]

6   **III.    PLAINTIFFS' MMWA CLAIM IS ARBITRABLE.**

7           This Court should also reject any argument by plaintiffs that their claim under the

8   MMWA is not arbitrable.  The Fifth and Eleventh Circuits—the two courts of appeals that have

9   considered the question—have both concluded that MMWA claims must be arbitrated like any

10  other statutory claim.  *See Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1275 (11th Cir. 2002);

11  *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 475 (5th Cir. 2002).[26]

12          This Court should do the same.  The Supreme Court has held that "[t]he burden is on the

13  party opposing arbitration * * * to show that Congress intended to preclude a waiver of judicial

14  remedies for the statutory rights at issue."  *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S.

15  220, 226–27 (1987).  In applying that test, the Supreme Court has ***never*** found a federal statutory

16  claim to be non-arbitrable.[27]  To the contrary, it has explained that "even claims arising under a

17  statute designed to further important social policies may be arbitrated because" when as here, the

18  federal claim may be vindicated in arbitration, "the statute serves its functions."  *Green Tree Fin.*

19  *Corp.–Ala. v. Randolph*, 531 U.S. 79, 90 (2000).  Under the *McMahon* test, MMWA claims must

20  be arbitrated if, as here, they are within the scope of an otherwise binding arbitration agreement.

21          It is true that the Federal Trade Commission has concluded that Congress implicitly

---

22  [25]    *Accord Schultz v. AT&T Wireless Servs., Inc.*, 376 F. Supp. 2d 685, 691 (N.D. W. Va.
23  2005); *Blitz v. AT&T Wireless Servs., Inc.*, No. 054-00281, slip. op. at 6 (Mo. Cir. Ct. Nov. 28,
    2005) (attached as Exhibit 1); *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 365 (Tenn. Ct.
24  App. 2001).

    [26]    Although the Ninth Circuit has not confronted this question, the only district court in this
25  Circuit to do so has agreed with the Fifth and Eleventh Circuits.  *See Dombrowski v. Gen.*
    *Motors Corp.*, 318 F. Supp. 2d 850, 850–51 (D. Ariz. 2004).

26  [27]    *See Gilmer v. Interstate/Johnson Lane Corp*, 500 U.S. 20 (1991) (Age Discrimination in
    Employment Act); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989)
27  (Securities Act of 1933); *McMahon*, *supra*, 482 U.S. 220 (Securities Exchange Act of 1934 and
    Racketeer Influenced and Corrupt Organizations Act); *Mitsubishi Motors*, *supra*, 473 U.S. 614
28  (Sherman Act).

---

1  precluded arbitration of MMWA claims by authorizing warrantors to "establish [an] informal
2  dispute settlement mechanism" that a "consumer must resort to * * * before pursuing [any] legal
3  remedy" under the MMWA.  *See* 64 Fed. Reg. 19,700, 19,701, 19,708–09 (1999) (citing 15
4  U.S.C. § 2310(a)(3)(C)).   But as the Fifth and Eleventh Circuits have explained, the FTC's
5  position rests on an unreasonable interpretation of the MMWA's text:   Because "binding
6  arbitration generally is understood to be a *substitute* for filing a lawsuit, not a prerequisite"
7  (*Walton*, 298 F.3d at 475 (emphasis in original)), regulating "informal dispute settlement
8  procedures does not mean that the [MMWA] precludes a court from enforcing a valid binding
9  arbitration agreement" (*Davis*, 305 F.3d at 1275).   Virtually every state appellate court to
10  consider the question has agreed with the Fifth and Eleventh Circuits.[28]   And the Third Circuit
11  similarly has held that the MMWA's use of the term "informal dispute resolution mechanism
12  * * * does not constitute [a reference to] arbitration within the meaning of the FAA."  *Harrison*
13  *v. Nissan Motor Corp.*, 111 F.3d 343, 351 (3d Cir. 1997).

14      The legislative history of the MMWA further underscores why the FTC's position does
15  not comport with *McMahon*.  As several courts have noted, nothing in the congressional reports
16  or floor debate suggests that Congress intended to preclude binding arbitration of MMWA
17  claims.  *See, e.g.*, *Walton*, 298 F.3d at 476–77; *Davis*, 305 F.3d at 1275–76.  Indeed, Congress
18  never "specifically discuss[ed] the availability of arbitration" at all.  *Walton*, 298 F.3d at 476.  By
19  contrast, a Senate report describing an earlier version of the MMWA stated that Congress
20  intended for "warrantors of consumer products * * * 'to establish informal dispute settlement
21  mechanisms that take care of consumer grievances *without aid of litigation or formal*
22  *arbitration*.'"   *In re Am. Homestar*, 50 S.W.3d at 488 (quoting S. REP. NO. 91-876, at 22–23
23  (1970)) (emphasis by the court).  As the Texas Supreme Court concluded, "[t]his passage

24  —————————
[28]      *See, e.g.*, *Patriot Mfg., Inc. v. Jackson*, 929 So. 2d 997 (Ala. 2005); *Borowiec v. Gateway 2000, Inc.*, 808 N.E.2d 957, 965–66 (Ill. 2004); *Abela v. Gen. Motors Corp.*, 677 N.W.2d 325
25  (Mich. 2004); *In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480 (Tex. 2001); *Howell v. Cappaert Manufactured Housing, Inc.*, 819 So. 2d 461, 464 (La. Ct. App. 2002); *Results*
26  *Oriented, Inc. v. Crawford*, 538 S.E.2d 73 (Ga. Ct. App. 2000), *aff'd*, 548 S.E.2d 342 (Ga. 2001); *Walker v. DaimlerChrysler Corp.*, 856 N.E.2d 90, 93–99 (Ind. Ct. App.), *transfer denied*, 869
27  N.E.2d 455 (Ind. 2007); *McDaniel v. Gateway Computer Corp.*, 2004 WL 2260497, at *1–*4 (Ohio Ct. App. Sept. 24, 2004).  *But see Koons Ford of Baltimore, Inc. v. Lobach*, 919 A.2d 722,
28  734 (Md. 2007); *Parkerson v. Smith*, 817 So. 2d 529, 530–35 (Miss. 2002).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

1  arguably demonstrates that Congress contemplated a consumer's resort to courts *or* binding

2  arbitration if the informal dispute settlement mechanism did not resolve the dispute." *Id.* at 488–

3  89 (emphasis in original).

4      Under the long line of Supreme Court precedent holding that numerous important federal

5  statutory claims are arbitrable, the silence of the MMWA's legislative history on this point is

6  fatal to the FTC's position. *See, e.g.*, *Walton*, 298 F.3d at 477 (observing that the Supreme Court

7  rejected a more persuasive legislative history argument in *McMahon*).   Moreover, the FTC's

8  position reflects the sort of "suspicion of arbitration as a method of weakening" statutory

9  protections that the Supreme Court has explained "has fallen far out of step with [its] current

10  strong endorsement of" arbitration.  *Rodriguez de Quijas*, 490 U.S. at 481.  Accordingly, this

11  Court should join the Fifth and Eleventh Circuits in rejecting the FTC's position and hold that

12  MMWA claims, like other federal statutory claims, are arbitrable.

## CONCLUSION

14      ATTM's motion to compel arbitration should be granted, and plaintiffs' claims against

15  ATTM should be dismissed.[29]

16  Dated: June 27, 2008                    MAYER BROWN LLP

18                                  By: /s/Donald M. Falk_____
                                        Donald M. Falk

19                                  Daniel A. Sasse, Esq. (CA Bar No. 236234)
20                                  CROWELL & MORING LLP
                                    3 Park Plaza, 20th Floor
21                                  Irvine, CA 92614-8505
                                    Telephone:    (949) 263-8400
22                                  Facsimile:    (949) 263-8414
                                    Email:        dsasse@crowell.com

23                                  Attorneys for Defendant
24                                  AT&T Mobility LLC

---

[29]     District courts may dismiss claims that are subject to arbitration. *See Thinket Ink Info.
27  Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004); *Sparling v. Hoffman
Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (Section 3 of the FAA "did not limit the [district]
28  court's authority to grant a dismissal").

1    Of Counsel:

2    Evan M. Tager
     Archis A. Parasharami (admitted *pro hac vice*)
3    Kevin S. Ranlett
     MAYER BROWN LLP
4    1909 K Street, N.W.
     Washington, D.C. 20006-1101
5    Telephone: (202) 263-3000
     Facsimile:  (202) 263-3300

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW