1  Laura L. Kohut, Esq. (SBN 139143)
   Sarah K. Kohut, Esq. (SBN 197655)
2  KOHUT & KOHUT LLP
   650 Town Center Drive, Suite 800
3  Costa Mesa, California 92626
   Telephone: (714) 384-4130
4  Facsimile: (714) 384-4131

5  Attorneys for Defendant
   AT&T WIRELESS SERVICES, INC.
6

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JAN 27 2005

ALAN SLATER, Clerk of the Court

BY: ENRIQUE VELOZ, DEPUTY

7
8           SUPERIOR COURT OF THE STATE OF CALIFORNIA
9           COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10 SUSANNE BALL, On Behalf of the General Public,   )   Case No. 04CC06385
                                                    )   Assigned for All Purposes to
11                Plaintiff,                        )   Honorable Steven L. Perk
                                                    )   Department C27
12         v.                                       )
                                                    )   **DECLARATION OF NEXTEL**
13 AT&T WIRELESS SERVICES, INC. a Corporation,      )   **COMMUNICATIONS, INC. IN**
                                                    )   **SUPPORT OF MOTION OF**
14                Defendant.                        )   **CINGULAR WIRELESS LLC**
                                                    )   **TO COMPEL ARBITRATION**
15                                                  )   **OF PLAINTIFF'S CLAIMS AND**
                                                    )   **MOTION FOR STAY PENDING**
16                                                  )   **ARBITRATION**
                                                    )
17                                                  )   [Notice of Motion and Motion;
                                                    )   Memorandum of Points and
18                                                  )   Authorities; Request for Judicial
                                                    )   Notice; Non-California Authorities;
19                                                  )   Declarations of James C. Grant and
                                                    )   Sarah K. Kohut filed concurrently]
20                                                  )
21                                                  )
                                                    )   Date: February 18, 2005
22                                                  )   Time: 11:00 a.m.
                                                    )   Dept.: C27
23                                                  )
24                                                  )   Trial Date: May 23, 2005
                                                    )   Complaint Filed: May 27, 2004
25                                                  )

26
27
28

                                    1
          DECLARATION OF NEXTEL COMMUNICATIONS, INC.

Case 5:07-cv-05152-JW    Document 118-4    Filed 06/27/2008    Page 2 of 5

I, Susan Z. Haller, declare as follows:

1. I am the Deputy General Counsel of Nextel Communications, Inc. ("Nextel"), a Delaware corporation, and have been duly authorized by Nextel to make this declaration on its behalf. I am over the age of 18 years old. I have personal knowledge of each of the following facts and, if called and sworn as a witness, I would competently testify to those facts.

2. Nextel, through its wholly owned subsidiaries, is a provider of fully integrated wireless communications services. Nextel, through its operating subsidiary, has been offering digital wireless service in California since 1993.

3. I am familiar with the manner in which Nextel maintains its business records. I have reviewed Nextel's business records and located the subscriber agreement applicable to consumers who signed up for Nextel wireless service in California in July 2001 (the "Subscriber Agreement"). The terms and conditions contained in the Subscriber Agreement did not contain an arbitration provision. Attached hereto as Exhibit A is a true and correct copy of Nextel's Subscriber Agreement that was in effect in California in July 2001. The Subscriber Agreement was prepared by Nextel personnel in the ordinary course of business at or near the date appearing on that Subscriber Agreement.

4. None of the subscriber agreements applicable to consumers who signed up for Nextel wireless service, through any Nextel operating subsidiary, contained an arbitration provision prior to November 2003.

I declare, under the penalty of perjury under the laws of the State of California that these facts are true and correct and that this Declaration is executed this 26th day of January 2005, at Reston, Virginia.

_____
Susan Z. Haller

1

DECLARATION OF NEXTEL COMMUNICATIONS, INC.

# EXHIBIT A



# NEXTEL Subscriber Agreement

| Order | Customer | Billing |
|---|---|---|
| ☐ New | ☐ Major Accts | Equip Serv |
| ☐ Add-On | ☐ Government | ☐ ☐ Single Account |
| ☐ Equipment | ☐ Multi-Market | ☐ ☐ One Comp. Bill |
| ☐ Service | ☐ Individual | ☐ ☐ Corp Bill / Ind. Copies |
| ☐ Replacement | | ☐ ☐ No Corp. / Ind. Bills |

**Delivery Method** _____ **Service Area/Service Location** _____ **Customer Category** _____

Page ___ of ___ Acct # _____ Fleet # _____ Office # _____ SIC Code _____

Sales Source _____ Agent Code _____ PTN/IDEN # _____

Sales Associate _____

## ACCOUNT INFORMATION

### PAYMENT INFORMATION

☐ Business ☐ Individual (Check the box that is legally responsible for the payment of this account. The credit check will be performed on this entity.)

☐ Check No. _____ ☐ FedEx COD ☐ PO (attach)
☐ Credit Application # _____ Credit Score _____
☐ Deposit Amt Rec'd $ _____ Balance Due $ _____
☐ Credit Card: ☐ AMEX ☐ VISA ☐ MC

First Customer Name _____

Credit Card No. _____
Name Printed on Credit Card _____
Cardholder Billing Address _____

Legal Address _____ Billing Address _____

City _____ State _____ Zip _____ ☐ Incorporated / ☐ Unincorporated

City _____ State _____ Zip _____

County _____ County _____

Exp. Date _____ Authorization No. _____
Signature _____

Tax ID or Social Security # _____ DOB _____

Billing Contact _____ Phone ( ) _____ Fax ( ) _____

### DIRECT PROTECT

Valid ID or Driver's License # _____

E-Mail _____

☐ Tax Exempt (attach certificate) _____ State _____ Shipping Address _____ City _____ State _____ Zip _____

## NETWORK SERVICES

| No. of Units | Rate Plan | Promo Code | Discount | Private ID Alias (11 Characters) | Monthly Access Per Unit | Monthly Total | MEM ID | Phone No. with Area Code and Prefix | Rate Plan Name | No. of Units Purchased | Product Description (indicate phone color # applicable) | Discount | Install Price | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | $ | $ | | PTN | | | | | $ | $ | $ |
| | | | | | $ | $ | | PTN | | | | | $ | $ | $ |
| | | | | | $ | $ | | PTN | | | | | $ | $ | $ |
| | | | | | TOTAL ▶ $ | | | | | | | | | | |

One-time Activation Fee (if applicable) _____

### PRODUCT DATA SHEET (for additional items, attach POS #102)

### EQUIPMENT/ACCESSORIES

| | Network Services | | | | | | | | | | Restrictions | | Insurance | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MEM/NDC | C | DC | M | V | ID | ESN/AL | NOL | ZW/MI | DU | | IB | OB | Int'l | DP | DP Acc |

Third Party Application Notes

Subtotal _____
Tax In _____ %
Program/ Install Fee _____
Shipping _____
Tax In _____ N/ applicable

Talk Group _____ Agent Code _____

Accept Listing _____ Decline Listing _____ (customer initials) (customer initials)

**Nextel Business Network (NBN)**
Periodically Nextel and its vendor may publish and distribute an NBN directory. The directory will contain the "billing information" of the customer account as listed in the "billing address" and the "main telephone number" of the customer account. By signing this form, Customer authorizes (and instructs) Nextel to disclose information of the above named customer in the NBN directory. This information may also be presented in similar versions of the NBN directory. Customer acknowledges that the Company will contact such information with its employees and representatives that may have a need to know the accuracy of the information provided by the customer.

TOTAL _____ Tax ID ▶ _____

Talkgroup Aliases $ _____

Comments _____

SERVICE AUTHORIZATION: The person or entity described above (the "Customer") hereby subscribes for wireless telephone service and, if selected by Customer, certain data, information and email services (collectively, "Service" or "Services") provided by Nextel Communications or its affiliated entity (the "Company") subject to the terms and conditions stated on the reverse of this form. Customer understands that Company will rely upon the information provided herein and perform its application/credit/history check and may also obtain information from the Customer's bank references (and authorizes the disclosure of information of the above named Customer in the NBN directory and accessories and represents to Company that all information is true and correct. Customer understands that Company may require a monthly credit review for verifying the accuracy of the information provided by the customer. Nextel determines no credit worthiness. Customer understands that a security deposit or an initial charge limit may be required pending credit review. The undersigned hereby acknowledges and represents that he/she has the authority to execute the Service Subscriber Agreement on behalf of the Customer.

Customer Signature _____ Date _____ Time _____ Sales Rep Signature _____

Customer Print Name _____ E-mail Address _____ Phone # ( ) _____ Manager's Signature _____
(Decision Maker)

# 101 (523.001)    White - Order Entry    Yellow - File Copy    Pink - Customer Copy

## AGREEMENT - TERMS AND CONDITIONS

In consideration of the terms and the mutual covenants and conditions hereinafter set forth, the parties agree as follows:

1. USE OF SERVICE - By executing this Agreement, Customer acknowledges that it complies with all FCC rules and regulations. Customer will not use the Service for any unlawful purpose. Customer will not use the Service in aircraft. Customer acknowledges and agrees that all future purchases of Company Services and Equipment by Customer shall be governed by the terms and conditions contained herein unless Customer and Company enter into a subsequent Service/Subscriber Agreement. Company may change this Agreement at any time. Any changes are effective when Company provides Customer with written notice stating the effective date of the change(s). If Customer elects to use the Services or make any payment to Company on or after the effective date of the changes, Customer is deemed to have accepted the change(s). If Customer does not accept the changes, Customer (except Georgia and Alabama Customers, see Section 2 below) may terminate Services as of the effective date of the change(s) by submitting written notification to Company prior to such effective date at the address shown on Customer's bill. If Services are terminated before the end of the current billing cycle, (i) no credit or refund will be provided for unused airtime, and (ii) any monthly recurring charge will not be prorated to the date of termination.

SECTION 2. APPLIES TO GEORGIA AND ALABAMA CUSTOMERS ONLY

2. TERM - The initial term of this Agreement shall be one (1) year from the date hereof. Thereafter, unless Customer or Company terminates this Agreement as provided for herein, this Agreement shall automatically renew on a month-to-month basis. Notice of termination by customer shall be made only in writing to company at the address shown on Customer's bill. Company reserves the right not to renew this Agreement at any time prior to the conclusion of the initial term or any renewal term. A $200 cancellation fee per unit will be charged to Customer for cancellation within the initial (1) year term from the date of this Agreement.

3. CREDIT APPLICATION - This Agreement shall be contingent upon Company's approval of Customer's credit application. Company may require Customer to update its credit application or information from time to time. Customer warrants and represents that all information furnished on the credit application is current, complete, accurate, and true. If Company subsequently determines that any statements made on the credit application are false, incomplete and inaccurate, Company may declare Customer to be in default under this Agreement and may exercise any remedies it has under this Agreement at law or in equity. Customer understands that Company will rely upon the credit information provided by Customer, including but not limited to Customer's social security number or tax identification number, and other confidential and personal financial and credit information requested by Company and supplied by Customer, in making a decision to provide Services. Customer understands that Company may request and verify Customer's bank references and perform a credit history check utilizing standard commercial credit reference services in connection with Company's review of the Customer's credit worthiness. Customer acknowledges that Company may provide payment history and other billing/charge information to a credit reporting agency for inclusion in Customer's records maintained by such credit reporting agency. Customer understands that a security deposit or airtime usage limit may be required.

4. EQUIPMENT AND INSTALLATION - If the sale is for cash only, title to the Equipment shall be transferred to Customer upon receipt by Company of a cashier's or certified check or other equally secure form of payment in the amount set forth on the front of this Agreement. If this Agreement provides for payments in installments or on credit, Customer hereby (i) grants Company a security interest in the Equipment and any proceeds thereof to secure Customer's obligation to repay the Company the extension of credit in the amount of the sales price and other charges or fees (including any interest or penalties attached thereon), (ii) agrees that this Agreement shall constitute a security agreement under the Uniform Commercial Code, and (iii) appoints the Company as Customer agent to execute a UCC-1 Financing Statement to be filed with the Secretary of State, and take such other steps to perfect or confirm such security interest, as may be deemed necessary or appropriate by the Company. Company shall not be liable to Customer for delays in delivery or unavailability of Equipment or any part thereof or for the cancellation of any orders of Equipment by the manufacturer. Customer, at its option, may have the Equipment installed by Company at the rate specified on the front of this Agreement. If Customer purchases the Equipment on credit or an installment basis, installations, repairs, and removal of Equipment must be performed by a party authorized by Company. Company shall not be liable for any damage to Customer's vehicle(s) or Equipment which may result from installation of Equipment by any person who is not employed by Company.

5. CUSTOMER RADIO EQUIPMENT - Company is not responsible for the installation, operation, quality of transmission, or maintenance of the Equipment. Any change in Service or Equipment may require additional programming or Equipment or changes to assigned codes or numbers which may require programming fees. Company reserves the right to change or remove assigned codes and/or numbers when such change is reasonably necessary in the conduct of its business. Customer does not have any proprietary interest in such codes or numbers. Although Federal and state laws may make it illegal for third parties to listen in on service, complete privacy cannot be guaranteed. Company shall not be liable to Customer or to any third party for any eavesdropping on or interception of communications from Company's System.

6. NEXTEL ONLINE SERVICES - Nextel Online Services, consisting of certain applications such as email, data, information and other wireless internet services (the "Applications") are part of the Services that can be obtained through Company. Certain Applications offered by Company or authorized third parties may be compatible with the Equipment and/or the Services offered by Company. Customer acknowledges and agrees that there is no guarantee or assurance that the Applications are compatible, or will continue to be compatible, with Company's System or any of its Equipment or Service offerings. Such compatibility or approval from Company of compatibility shall not be construed as an endorsement of a particular Application or a commitment on the part of Company that Application(s) will continue to be compatible with the System, Equipment or Service for any period of time. Company reserves the right, in its sole discretion, to disable or discontinue any Application for any reason. Use of Nextel Online Services requires a wireless internet compatible phone, and is subject to any storage, memory or other Equipment limitation. Only certain internet sites may be accessed, and certain Nextel Online Services may not be available in all Company Service areas.

7. APPLICATION CUSTOMER CARE AND SUPPORT - Customer acknowledges and agrees that in most cases, the developer of an Application is responsible for providing customer care and Application support to all Customers using the Application. In the event Customer contacts Company customer care with a problem concerning the use of an Application, Customer may be referred to the Application developer's customer care, and Company shall have no obligation to support such Application.

8. CONTENT, INTELLECTUAL PROPERTY RIGHTS - Company is not a publisher of third party content that Customer may from time to time access through Nextel Online Services; therefore Company is not responsible for the content provided by such third parties, including but not limited to statements, opinions, graphics, photos, music, services and other information ("Content"), and accessed by Customer through Nextel Online Services. Company gives no guarantee or assurance as to the currency, accuracy, completeness or utility of Content obtained through Nextel Online Services. Company, Content providers and others have proprietary interests in certain Content. Customer shall not, nor permit others, to reproduce, broadcast, distribute, sell, publish, commercially exploit or otherwise disseminate such Content in any manner without the prior written consent of Company, Content providers, or others with proprietary interests in such Content, as applicable.

9. DEPOSITS - Customer shall provide Company with a deposit towards the purchase of the Equipment in the amount set forth on the front of this agreement. Company also has the right, exercisable in its sole discretion at any time or from time to time, to require Customer to make a deposit to guarantee payment of sums due hereunder, including Service charges. Customer hereby grants Company, as applicable, a security interest in such deposits, to secure the payment of all sums due hereunder as well as the performance of all other payment obligations Customer may have to the Company whether now existing or hereafter rising. Upon termination of Service, Company may apply the deposit against any outstanding Service charges of Customer or any other amount owed to Company. Company reserves the right to interrupt Services if Service appears to have excessive charges, payments are delinquent, or any unusual calling patterns are observed on Customer's account. Such interruption may be done to protect Customer or Company as the Company determines in its sole discretion, but in no event shall the Company be liable to the Customer or to any third party by reason of interrupting or failing to cause an interruption of Service.

10. RATES, CHARGES, AND PAYMENT - Company shall issue invoices for Service. Monthly Access charges shall be invoiced in advance. Airtime and long distance charges shall be invoiced in arrears. Customer is responsible to pay Company, on a timely basis, for charges for Service as set forth on the front of this Agreement, and any modifications thereto. Customer acknowledges that chargeable time for telephone calls and Nextel Direct Connect call transmissions originated by a unit begin when a connection is established with Company facilities. A new Nextel Direct Connect call is initiated by a call participant if that participant responds more than six (6) seconds after the other party finishes its Nextel Direct Connect transmission. Customer accepts responsibility for Airtime charges from incoming telephone calls to its mobile unit from the time that Customer responds to the call. If Customer disputes any Service charges, Customer must pay the entire amount set forth in the invoice by the due date and submit a written explanation within forty five (45) days from the date on the invoice. If Company determines that an error was made on Customer's invoice, Company shall credit Customer's account in the amount of the error. If Customer does not pay the amount in dispute, Company may exercise any remedies it may have under this Agreement for non-payment of Service charges. Company reserves the right to modify any and all elements of the Service charges at any time and each such modification shall be effective immediately upon the Company's communication thereof to Customer, unless the Company's communication indicates a later effective date with respect to such modification. Payments which are not received within thirty (30) days from the date of the invoice, shall be subject to late payment charges as set forth in this Agreement. If the parties have agreed that payments are to be made in installments, or on credit, as indicated on the front of this Agreement, Customer shall be responsible for paying amounts due as agreed to in this Agreement. If Customer does not make all payments when they are due, such failure shall be a default under this Agreement and Company shall be entitled to exercise any remedies it may have under this Agreement or at law or in equity. If the sale of the Equipment is on a credit or installment basis and the Customer accepts delivery of the Equipment, the Customer may not return the Equipment or receive a refund or any amounts paid and agrees to continue making payments as required under this agreement until the Equipment sale price is paid in full.

11. NONPAYMENT/BREACH - A late payment charge of 1.5% (or the maximum interest rate permitted by law) per month may be applied to Customer's account if monthly invoices are not paid by the due date. The late payment charge is applied to the total unpaid balance due and outstanding. The late payment charge is for costs related to the non-timely payment and shall not be deemed an interest payment. A charge of $25.00 will be made by Company for any check or negotiable instrument tendered by Customer and returned unpaid by a financial institution for any reason. Company may demand payment by money order, cashier's check, or similarly secure form of payment, at Company's discretion at any time or from time to time. If Company obtains the services of a collection or repossession agency or an attorney to assist Company in remedying Customer's breach of this Agreement, including but not limited to the nonpayment for charges hereunder, Customer shall be liable for this expense. Customer understands that in the event of nonpayment of charges or any other breach of the terms and conditions of this Agreement, in addition to any other remedies Company may have, Company may temporarily or permanently terminate Service to Customer. If Service is terminated and not reconnected within 30 days, all outstanding payments to be made in installments are accelerated and immediately due in full. If Company disconnects the Service, Customer shall be liable to satisfy and discharge all outstanding amounts due and pay a reconnect charge of $25.00 per unit, in addition to any advance payment of Service charges that may be requested by the Company at its discretion, before the Company will reactivate Service. Company reserves the right to modify the terms of Service as a precondition to reactivating Service. If the Equipment is purchased on an installment basis, or credit, the Company may take possession of the Equipment, at any time wherever the same may be without legal process and without being responsible for loss and damage.

12. RISK OF LOSS; INSURANCE - Upon Customer's acceptance of delivery of the Equipment, all risk of loss, damage, theft, or destruction to the Equipment shall be borne by the Customer. No such loss, damage, theft, or destruction of the Equipment, in whole or part, shall impair the obligations of Customer hereunder, including, without limitation, responsibility for the payment of Service Charges due hereunder. If the Equipment is purchased on an installment basis, or on credit, Customer agrees to maintain, for the term of this Agreement, at its own expense, comprehensive public liability and property damage insurance with respect to its use of the Equipment in an amount not less than the replacement value of the Equipment, naming Company as co-insured, with all losses payable to Company. Certificates, evidencing proof of such policy and payment of premiums, shall be delivered to Company prior to delivery or installment of the Equipment. Customer shall prepay such premiums as required and shall furnish Company with proof of such payment at the beginning of the Payment Term and upon the expiration of any Certificate. Any and all amounts received by the Company under any such policy shall be applied by Company against the amount of the Equipment Sales Price and any related charges or fees secured hereby. Failure to provide or maintain the insurance required above is a breach of the Agreement for which the Company shall be entitled to exercise any remedies it may have under this Agreement.

13. PROPERTY DAMAGE INSURANCE - If Customer selects Direct Protect insurance protection, Company will remit the monthly charge for the insurance which appears on Customer's bill to The Signal Telecommunications Insurance Services ("Signal") on Customer's behalf. Customer acknowledges that insurance protection is offered by the Signal, not Company, and that any requests for information or claims regarding the insurance shall be directed to Signal. Customer acknowledges having received a summary of coverage, including deductible information, which is also available by calling Signal at 1-888-352-9182.

14. TAXES, FEES, SURCHARGES & ASSESSMENTS - Customer is responsible for all federal, state, and local taxes, fees, surcharges, and other assessments (collectively, "charges") that are imposed on telecommunications services, other services, and equipment or that are measured by gross receipts from the sale of telecommunications services and/or equipment. Such charges shall include, but are not limited to: excise taxes; sales and transaction taxes; utility taxes; regulatory fees and assessments, universal service assessments, telephone relay service (TRS) assessments, etc. Customer shall be responsible for such charges regardless of whether the char[illegible] imposed upon the sale of equipment or services, upon Customer, or upon Company. If any such charge is determined to be applicable and has not been paid by C[illegible] before Customer accepts delivery of equipment, Customer shall pay Company the full amount of any such charge no later than ten (10) days after receipt of the inv[illegible] [illegible]

15. COVERAGE AREA - Local Dispatch (Direct Connect), cellular calling, Nextel Online Services, and respective coverage areas for these Services are subject to change at any time at the sole discretion of Company.

16. LIMITATION AND CONDITION OF LIABILITY; INDEMNITY - Company does not assume and shall have no liability under the Agreement for (i) failure to deliver the Equipment within a specified time period, (ii) availability and delays in delivery of the Equipment, or (iii) damage caused to the Equipment due directly or indirectly to causes beyond the control of Company, including, but not limited to acts of God, acts of the public enemy, acts of the government, acts or failure to act of the Customer, its agents, employees or subcontractors, fires, floods, epidemics, quarantine restrictions, corrosive substances in the air or other hazardous environmental conditions, strikes, freight embargoes, inability to obtain materials or services, commotion, war, unusually severe weather conditions or default of Company's subcontractors whether or not due to any such causes, and (iv) the use of Nextel Online Services, including but not limited to the accuracy or utility of any information acquired from the Internet through Nextel Online Services, or Internet Services, Content or Applications whether or not supported by Company. Without limiting the foregoing, the Company's sole liability for Service disruption, whether caused by the negligence of the Company or otherwise, is limited to a credit allowance not exceeding an amount equal to the proportionate charge to the Customer for the period of Service disruption. EXCEPT AS OTHERWISE SET FORTH IN THE PRECEDING SENTENCE, IN NO EVENT IS THE COMPANY LIABLE FOR ACTUAL, CONSEQUENTIAL, INCIDENTAL, SPECIAL OR OTHER INDIRECT DAMAGES CAUSED BY ITS NEGLIGENCE OR OTHERWISE, NOR FOR ECONOMIC LOSS, PERSONAL INJURIES OR PROPERTY DAMAGES SUSTAINED BY THE CUSTOMER OR ANY THIRD PARTIES. Customer agrees to indemnify, defend, and hold Company harmless from any Customer violations of FCC rules and regulations or Customer violation of any statutes, ordinances or laws of any local, state, or federal public authority.

17. COMPLETE AGREEMENT/SEVERABILITY/WAIVER - This Agreement sets forth all of the agreements between the parties concerning the Service and purchase of the Equipment, and there are no oral or written agreements between them other than as set forth in this Agreement. No amendment or addition to this Agreement shall be binding upon this Company unless it is in writing and signed by both parties (and, in the case of the Company, by an officer of the Company). Company shall not be bound by the terms and conditions in Customer's purchase order or elsewhere, unless expressly agreed to in writing by an officer of the Company. This Agreement becomes effective when accepted by the Company. Should any provision of this Agreement be illegal or in contravention of the law, such provision shall be considered null and void but the remainder of this Agreement shall not be affected thereby. The failure of Company, at any time to require the performance by Customer of the provisions of this Agreement shall not affect in any way the right to require such performances at any later time nor shall the waiver by Company of a breach of any provision hereof be taken or held to be a waiver of compliance with or breach of any other provision or a continuing waiver of such provision.

18. ASSIGNMENT/RESALE/GOVERNING LAW - This Agreement may be freely assigned by Company to any successor of it or any other firm or entity capable of performing its obligations hereunder, and upon any such assignment, Company shall be released from all obligations to Customer. Customer may not assign this Agreement, or resell the services which are subject to this Agreement without prior written consent of Company. Subject to the restrictions contained herein, this Agreement shall bind and inure to the benefit of the successors and permitted assigns of the parties hereto. This Agreement shall be governed by the laws of the State or Commonwealth in which this Agreement is executed by the Company.

19. NOTICE REGARDING USE OF SERVICE FOR 911 OR OTHER EMERGENCY CALLS - The Service provided hereunder does not interact with 9[illegible] emergency services in the same manner as landline telephone service. Depending on the circumstances of a particular call, the Service provided hereunder may [illegible] to identify your location to emergency services and you may not always be connected to the appropriate emergency services provider. Additionally, the provision of 911 or other emergency services may be conditioned on payment of amounts to the governmental authorities who implement or coordinate access to such services, and Customer agrees that Company may apportion and pass through such amounts to Customer, which shall be paid by Customer when due, in connection with Customer's access to such 911 or other emergency services, where available. CUSTOMER AGREES TO HOLD COMPANY HARMLESS AGAINST ANY AND ALL CLAIMS, DEMANDS, ACTIONS, OR CAUSES OF ACTION (INCLUDING ALL ACTIONS BY THIRD PARTIES) ARISING OUT OF THE USE OR ATTEMPTED USE OF THE COMPANY'S SERVICE TO ACCESS 911 OR OTHER EMERGENCY SERVICES.

20. NO WARRANTY (SERVICE) - COMPANY MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE TO CUSTOMER IN CONNECTION WITH ITS USE OF THE SERVICE. IN NO EVENT SHALL COMPANY BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR OTHER INDIRECT DAMAGES TO THE FULL EXTENT THE SAME MAY BE DISCLAIMED BY LAW. CUSTOMER ACKNOWLEDGES THAT SERVICE INTERRUPTIONS WILL OCCUR FROM TIME TO TIME, AND AGREES TO HOLD COMPANY HARMLESS FOR ALL SUCH INTERRUPTIONS.

NO WARRANTY (EQUIPMENT) - COMPANY MAKES NO WARRANTIES OR REPRESENTATIONS OF ANY KIND, STATUTORY, EXPRESS OR IMPLIED, TO CUSTOMER OR TO ANY OTHER PURCHASER OF THIS EQUIPMENT. WITHOUT LIMITING THE FOREGOING, COMPANY SPECIFICALLY MAKES NO EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CUSTOMER HEREBY WAIVES, AS AGAINST COMPANY, ALL OTHER WARRANTIES, GUARANTEES, CONDITIONS, OR LIABILITIES, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE. IN NO EVENT SHALL COMPANY BE LIABLE FOR CONSEQUENTIAL, SPECIAL, OR INCIDENTAL DAMAGES, WHETHER OR NOT OCCASIONED BY COMPANY NEGLIGENCE AND INCLUDING, WITHOUT LIMITATION, LIABILITY FOR ANY LOSS OR DAMAGE RESULTING FROM THE INTERRUPTION OR FAILURE IN THE OPERATION OF ANY EQUIPMENT SOLD OR OTHERWISE PROVIDED HEREUNDER. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION CONTAINED HEREIN. CUSTOMER ASSUMES THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE EQUIPMENT. UNLESS OTHERWISE AGREED BY COMPANY, IF THE EQUIPMENT PROVES DEFECTIVE, THE COSTS OF ALL NECESSARY SERVICING AND REPAIR WILL BE BORNE BY CUSTOMER.

21. CERTAIN TERMS AND CONDITIONS REGARDING NEXTEL BUSINESS NETWORKS - There is no Group Call available on the Nextel Business Networks. There is no pooling of Nextel Direct Connect minutes between companies on the Nextel Business Networks. It is possible that participants on the Nextel Business Network could determine the private identification numbers of Customer's units and be able to Private Call those units. It is also possible that users of Customer's units could determine the private identification numbers of other Nextel Business Network participants and Private Call them.

#101A (05/23/00)