1    Daniel A. Sasse, Esq. (CA Bar No. 236234)
     CROWELL & MORING LLP
2    3 Park Plaza, 20th Floor
     Irvine, CA 92614-8505
3    Telephone:    (949) 263-8400
     Facsimile:    (949) 263-8414
4    Email:        dsasse@crowell.com

5
     Donald M. Falk (CA Bar No. 150256)
6    MAYER BROWN LLP
     Two Palo Alto Square, Suite 300
7    3000 El Camino Real
     Palo Alto, CA 94306-2112
8    Telephone: (650) 331-2000
     Facsimile: (650) 331-2060
9    Email:        dfalk@mayerbrown.com

10   Attorneys for Defendant
     AT&T Mobility LLC

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                        SAN JOSE DIVISION

15
                                    │   Case No. 07-05152-JW
16                                  │
                                    │   **DECLARATION OF RICHARD A.**
17                                  │   **NAGAREDA IN SUPPORT OF**
                                    │   **MOTION OF DEFENDANT AT&T**
18   IN RE APPLE & AT&TM ANTI-TRUST │   **MOBILITY LLC TO COMPEL**
     LITIGATION                     │   **ARBITRATION AND TO DISMISS**
19                                  │   **CLAIMS PURSUANT TO THE**
                                    │   **FEDERAL ARBITRATION ACT**
20                                  │
                                    │   Date:  September 12, 2008
21                                  │   Time: 9:00 a.m.
                                    │
22                                  │   Honorable James Ware

23

24

25

26

27

28
     ─────────────────────────────────────────────────────────
     DECLARATION OF RICHARD A. NAGAREDA IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
     COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

I, Richard A. Nagareda, hereby declare as follows:

1.     I am a tenured Professor of Law at Vanderbilt University Law School with thirteen years of experience as a teacher and scholar in the area of complex civil litigation—particularly, class actions and other forms of aggregate litigation.  In 2005, I was appointed Director of the Law School's Cecil D. Branstetter Litigation and Dispute Resolution Program.  In 2006, I was appointed to the Tarkington Chair in Teaching Excellence, a three-year rotating chair.  My teaching in recent years has included courses on Complex Litigation, Evidence, Administrative Law, and a year-long Civil Litigation Capstone Seminar for third-year law students interested in advanced study of the civil justice system.

2.     Prior to joining the legal academy in 1994, I served as a law clerk for Judge Douglas H. Ginsburg of the United States Court of Appeals for the District of Columbia Circuit.  I subsequently practiced law as an Attorney-Advisor in the Office of Legal Counsel of the United States Department of Justice and, thereafter, as a litigation associate with the law firm of Shea & Gardner in Washington, D.C. (now, part of the Goodwin Procter firm).  I hold an A.B. degree in political science from Stanford University (1985) and a J.D. degree from The University of Chicago Law School (1988).

3.     A copy of my curriculum vitae is attached to this declaration.

4.     My articles on class action litigation have appeared in the Columbia Law Review, the Georgetown Law Journal, the Harvard Law Review, the Michigan Law Review, the Texas Law Review, and the UCLA Law Review, among other scholarly journals.  In 2003, the American Law Institute appointed me as Associate Reporter for its project on the Principles of the Law of Aggregate Litigation.  In 2007, the University of Chicago Press published my scholarly book *Mass Torts in a World of Settlements*.

5.     As part of my ongoing scholarly research, I have written an article entitled *Aggregation and its Discontents:  Class Settlement Pressure, Class-Wide Arbitration, and CAFA*, which was published in the November 2006 issue of the Columbia Law Review (at 106 COLUM. L. REV. 1872).  The issue includes several scholarly articles that, like mine, were prepared for a May 2006 conference sponsored by the Institute for Law & Economic Policy.  In

July 2006, I posted a preliminary draft of the article on the Social Science Research Network

(http://papers.ssrn.com/sol3/papers.cfm?abstract_id=920833). The final version, as it appears in

print, differs in only minor respects from the preliminary draft, in keeping with the usual

editorial process of law reviews. Apart from a summer research grant from Vanderbilt

University Law School, I received no other financial support for the preparation of the article.

No individual or organization exercised editorial review over the views expressed in the article.

6.    In *Aggregation and its Discontents*, I unite the discussion of three significant

debates in the law of aggregate litigation. Two of those debates bear upon matters that I

understand to be involved in the present case. The first and most directly pertinent debate

concerns challenges to provisions in consumer contracts with providers of goods or services that

not only call for arbitration of disputes but also waive the opportunity to conduct the arbitration

proceeding on an aggregate basis (or, for that matter, to bring suit by way of a conventional class

action or consolidated litigation). Existing commentary and judicial decisions have split over the

permissibility of these waivers of class-wide arbitration—in particular, over whether such

waivers should be deemed unconscionable as a matter of contract law.

7.    In my article, I describe the inquiry that should govern the permissibility of such

waivers. I suggest that courts should ground the unconscionability inquiry in the underlying

principle—repeatedly stated by the Supreme Court of the United States in its decisions under the

Federal Arbitration Act—that, by agreeing to arbitrate disputes, consumers do not forgo the

rights of action afforded to them by substantive law. Rather, consumers merely agree to dispute

resolution in a more streamlined and informal process, as compared to conventional civil

litigation. In short, the key question in a given instance is whether consumers may effectively

vindicate their private rights of action in the arbitration process. In keeping with this principle, I

argue that waivers of class-wide arbitration are impermissible when they amount, in practical

terms, to the effective elimination of consumers' private rights of action—something that

legislation might do but that arbitration clauses in private contracts lack authority to do. I go on

to discuss the considerations that should bear upon the determination whether a waiver of class-

1    wide arbitration effectively eliminates a private right of action in a given instance, with particular

2    attention to small-stakes consumer claims.  I contend that courts should make an informed

3    prediction of the market for legal representation of consumers in the absence of the opportunity

4    to aggregate claims—specifically, that courts should ask whether there are substantial grounds

5    on which to believe that such a market for representation would exist.  Relevant considerations

6    for such a prediction include not only the costs associated with the bringing of claims (*e.g.*, filing

7    fees and the costs of the arbitration proceeding) but also the potential financial upside for both

8    consumer and attorney and the applicable regime for attorneys' fees (*e.g.*, whether fee shifting is

9    available and whether the fee would be calculated by the lodestar method).

10       8.      My article places me between two extreme positions in the scholarly literature on

11   waivers of class-wide arbitration.  I neither accept that all class waivers are categorically

12   unenforceable when claims are small, nor endorse the view that class waivers are categorically

13   enforceable so long as the arbitration provision does not restrict the menu of remedies available

14   to the consumer.  Under the approach set forth in my article, many arbitration provisions with

15   which I am familiar would likely be unenforceable when claims are small, because they do not

16   otherwise provide a sufficient incentive for consumers and attorneys to pursue such claims.

17       9.      Another part of the article analyzes the contention that class certification can exert

18   an undue, illegitimate pressure on defendants to settle litigation.  Among the points I make in this

19   part of the article is that class certification is inappropriate where the legislature has included in

20   substantive law other measures by which to facilitate the bringing of claims on an individual

21   basis: *e.g.*, statutory damages not keyed to the actual losses suffered by consumers.  The adding

22   up of statutory damages by way of class certification would amount, I contend, to an

23   inappropriate form of double counting that would disrupt, rather than advance, the remedial

24   scheme of underlying substantive law.

25       10.      After I had completed the last round of changes in the Columbia Law Review

26   editorial process, I was asked by counsel for AT&T Mobility LLC ("ATTM") (formerly

27   Cingular Wireless LLC) to review a revised version of the arbitration clause used in ATTM's

28

DECLARATION OF RICHARD A. NAGAREDA IN SUPPORT OF DEFENDANT ATTM'S MOTION
TO COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

1  consumer contracts ("the 2006 Clause") and to provide my opinion on the permissibility of the
2  2006 Clause in light of the analysis in my article. I agreed to do so under the standard terms that
3  I use for outside consulting work: a rate of $500 per hour, with a $5000 retainer (against which I
4  have applied my initial hours of work).

5      11.    In my opinion, the 2006 Clause should not be deemed unconscionable. The 2006
6  Clause represents an innovative measure likely to facilitate the fair and efficient resolution of
7  disputes between individual consumers and ATTM. Indeed, I have never seen an arbitration
8  provision that has gone as far as this one to provide incentives for consumers and their
9  prospective attorneys to bring claims. Applying the analysis in my article, I conclude that the
10 2006 Clause reduces dramatically the cost barriers to the bringing of individual consumer claims,
11 is likely to facilitate the development of a market for fair settlements of such claims, and
12 provides financial incentives for consumers (and their attorneys, if any) to pursue arbitration in
13 the event that they are dissatisfied with whatever offer ATTM has made to settle their dispute.

14     12.    As to costs, Paragraph 3 of the 2006 Clause commits ATTM to pay all filing,
15 administration, and arbitrator fees for arbitration. The same Paragraph provides for the
16 possibility of using a streamlined, low-cost hearing process for claims of $10,000 or less, the
17 usual dollar range for the kinds of consumer claims of greatest concern in the debate over
18 waivers of class-wide arbitration.

19     13.    Paragraph 4 of the 2006 Clause provides for a "premium" to both consumers and
20 their attorneys, if any, in the event that the arbitrator finds in favor of the consumer on the merits
21 of the claim and issues an award greater than the value of ATTM's last written settlement offer
22 made before the arbitrator was selected. The premium for the consumer would be at least
23 $5000—the median of the various states' jurisdictional limits for small claims court. My further
24 understanding is that, in setting the premium for the attorney at twice the fees that he or she
25 "reasonably accrues for investigating, preparing, and pursuing [the consumer's] claim in
26 arbitration," Paragraph 4 calls for the use (with doubling) of the lodestar method of fee
27 calculation. The lodestar method decouples the premium for the attorney from the magnitude of

28

DECLARATION OF RICHARD A. NAGAREDA IN SUPPORT OF DEFENDANT ATTM'S MOTION
TO COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

1    the award to the consumer. The lodestar method would calculate the premium, instead, by

2    multiplying the number of hours reasonably spent on the specified activities times a reasonable

3    hourly rate (with further multiplication by two). This approach is in keeping with the

4    longstanding use of the lodestar method in such settings as civil rights litigation, where the law

5    seeks to facilitate the bringing of claims that do not necessarily result in financial awards to

6    individual claimants of a magnitude that otherwise would be likely to induce legal

7    representation.

8        14.    My informed prediction is that the availability of the foregoing premium will

9    drive settlement offers toward levels comparable to those that legislatures have understood to be

10   sufficient to facilitate individual claims in settings involving statutory damages. In economic

11   terms, settlement offers in ATTM arbitrations will need to account not only for the expected

12   value of the consumer's claim (in the manner of conventional settlement offers in the civil justice

13   process) but also the expected value of the premium (*i.e.*, the premium discounted by the

14   likelihood that it will be triggered). In providing for statutory damages to facilitate individual

15   claims under a variety of statutes, legislatures routinely have selected dollar amounts

16   considerably less—sometimes, by an order of magnitude—than those described in Paragraph 4

17   of the 2006 Clause. *See, e.g.*, 47 U.S.C. § 227(b)(3)(B) (2000) ($500 in statutory damages per

18   junk fax transmitted in violation of the Telephone Consumer Protection Act of 1991); 47 U.S.C.

19   § 551(f)(2)(A) ($1000 in statutory damages per violation of consumer privacy under the Cable

20   Communications Policy Act of 1984). Paragraph 5 of the 2006 Clause goes on to underscore

21   that the premium described in Paragraph 4 supplements any right to attorney's fees and expenses

22   that consumers already have under applicable law.

23       15.    As I discussed in my article, courts properly, in my view, have exercised their

24   discretion to deny class certification outside the arbitration context where the legislature already

25   has provided for statutory damages to facilitate claiming on an individual basis. The waiver of

26   class-wide arbitration by contract in this case is no more unconscionable than the judicial

27

28

DECLARATION OF RICHARD A. NAGAREDA IN SUPPORT OF DEFENDANT ATTM'S MOTION
TO COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

1    decisions denying class certification outside the arbitration setting in the presence of statutory

2    damage provisions.

3         I declare under penalty of perjury that the foregoing is true and correct.  Executed on

4    June 24, 2008.

5                                                        Richard A. Nagareda

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF RICHARD A. NAGAREDA IN SUPPORT OF DEFENDANT ATTM'S MOTION
TO COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW