1   LATHAM & WATKINS LLP
       Daniel M. Wall (Bar No. 102580)
2       Alfred C. Pfeiffer, Jr. (Bar No. 120965)
       Christopher S. Yates (Bar No. 161273 )
3       Sadik Huseny (Bar No. 224659)
       Sarah M. Ray (Bar No. 229670)
4   505 Montgomery Street, Suite 2000
    San Francisco, California  94111-6538
5   Telephone:  (415) 391-0600
    Facsimile:  (415) 395-8095
6   Email:    Dan.Wall@lw.com
    Email:    Al.Pfeiffer@lw.com
7   Email:    Chris.Yates@lw.com
    Email:    Sadik.Huseny@lw.com
8   Email:    Sarah.Ray@lw.com

9   Attorneys for Defendant
    APPLE INC.

10

11                  UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14  IN RE APPLE & AT&TM ANTITRUST          CASE NO. C 07-5152 JW
    LITIGATION
15                                          **DEFENDANT APPLE'S
                                            REQUEST FOR JUDICIAL NOTICE**
16
                                            Date:       September 12, 2008
17                                          Time:       1:00 p.m.
                                            Place:      Courtroom 8, 4th Floor
18                                          Judge:      Honorable James Ware
19

20

21

22

23

24

25

26

27

28

1     Defendant Apple Inc. ("Apple") hereby respectfully requests that the Court take

2  judicial notice of the materials set forth below in its determination of Apple's Motion to Dismiss

3  Plaintiffs' Revised Consolidated Amended Class Action Complaint ("RCAC").

4  **I.     INTRODUCTION**

5     Judicial notice is proper in connection with Apple's motion to dismiss plaintiffs'

6  RCAC, because plaintiffs refer to and/or rely on a large volume of material that they do not attach

7  to the RCAC.  Judicial notice of this material completes the picture.

8     Plaintiffs' central premise in this putative class action is that Apple's entry into the

9  highly competitive cell phone market with the innovative iPhone was unlawful because Apple (1)

10  did not make the iPhone available to all cellular carriers, but only in exclusive arrangement with

11  AT&T Mobility, LLC ("ATTM"); (2) tried to protect the reliability and security of its new and

12  still-developing iPhone operating system by initially limiting the availability of add-on

13  applications; and (3) failed to make its first operating system update, Version 1.1.1, compatible

14  with all unauthorized third-party hacks.  Plaintiffs allege many causes of action based on this

15  behavior, but consistently press one bedrock theory: that Apple's alleged unlawful omissions and

16  failure to disclose relevant information is at the root of Apple's supposed wrongdoing.  The first

17  paragraph in the RCAC's "Summary of Claims" provides a useful illustration.  In it, plaintiffs

18  allege that Apple's behavior was unlawful because Apple:

19     (a) failed to disclose to consumers that Apple and AT&TM had entered into
        a five-year exclusivity contract, the effect of which was to lock consumers
20     into using AT&TM as their voice and data service provider even after the
        consumers' two-year service plan contracts with AT&TM expired; (b)
21     failed to disclose to consumers that the iPhone's operating software
        contained codes that "locked" the iPhones to only accept AT&TM
22     Subscriber Identity Modules ("SIM cards"), thereby preventing iPhone
        purchasers from using any cell phone voice and data service provider other
23     than AT&TM (with which Apple shares revenues); (c) failed to disclose to
        consumers that the "unlock code" that would enable consumers to use a
24     service other than AT&TM would not be provided to iPhone owners, even
        though AT&TM routinely provides such unlock codes for other types of
25     cell phones; (d) failed to disclose to consumers that Apple would seek to
        prohibit iPhone owners from downloading programs or applications other
26     than those "approved" by, and which generated revenue for, Apple
        (collectively, "Third Party Apps"); and (e) failed to disclose to consumers
27     that iPhone owners would incur excessive and unconscionable roaming fees
        – often several thousands of dollars – simply for carrying the iPhone with

28

1  them while traveling internationally, even if they did not actively use the
2  iPhone's data features during their trip.

3  RCAC ¶ 7; *see also* RCAC ¶¶ 112, 153.

4        As Plaintiffs' RCAC states, the introduction and release of the iPhone was
5  accompanied by a "massive" amount of advertising and created a significant and widespread buzz,
6  such that consumers "waited in line to get their hands on" an iPhone "despite its hefty [initial]
7  $499 or $599 price tag." RCAC ¶¶ 27-28. Plaintiffs take advantage of the widespread public
8  discourse and information about the iPhone, liberally sprinkling the RCAC with references to
9  many iPhone-related documents and articles, including Apple's "repeated" announcements, the
10 iPhone agreements, materials and press releases, and press coverage.[1] *See, e.g.,* RCAC ¶¶ 27, 62,
11 77-78, 86, 94-95, 97-102. This unusually large volume of publicly-available materials discussed
12 throughout the RCAC contradicts plaintiffs' claims that Apple "failed to disclose" relevant
13 information regarding the iPhone. The Court may properly consider these materials – as well as
14 prior complaints in this consolidated action discussing them – in assessing plaintiffs' allegations
15 under the "incorporation by reference" and judicial notice doctrines.

16 **II.     LEGAL STANDARD**

17       In analyzing motions to dismiss under Federal Rule of Civil Procedure 12, a court
18 is not bound by or limited to only the allegations of a complaint, but may take into consideration
19 documents referenced or relied on in the complaint under the "incorporation by reference"
20 doctrine, as well as facts contained in materials that can be judicially noticed under Federal Rule
21 of Evidence 201.[2] As this Court has held:

22       As a general rule, a district court may not consider any material
23       beyond the pleadings in ruling on a 12(b)(6) motion. Two notable

---

24  [1] In addition to explicitly quoting press articles regarding the iPhone (RCAC ¶¶ 62, 86), the
    RCAC admits that details about the iPhone's exclusivity had "leaked out in the press" (RCAC
25  ¶ 78); and discusses the reaction of the "computer community" to Apple announcements
    regarding the iPhone warranty and consumers unlocking the iPhone or downloading third-
26  party add-on applications (RCAC ¶ 95).

27  [2] Rule 201 provides that courts "shall take judicial notice if requested by a party and supplied
    with the necessary information" indicating that facts are "capable of accurate and ready
    determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.
28  Evid. 201(b),(d).

1  exceptions are that (1) the court may take judicial notice of matters of
2  public record, Fed. R. Evid. 201(b)(2); and (2) the court may consider
   a document not attached to the complaint if the complaint specifically
3  refers to it and its authenticity is not questioned. Fed. R. Evid. 201(f).

4  *Busey v. P.W. Supermarkets, Inc.,* 368 F. Supp. 2d 1045, 1049 (N.D. Cal. 2005, J. Ware) (citations

5  omitted); *see also Yang v. Dar Al-Handash Consultants*, 250 Fed. Appx. 771, 772 (9th Cir. 2007)

6  (holding that a court need not "blindly accept the allegations in the pleadings as true if these

7  allegations are contradicted by uncontested facts set forth in (1) exhibits to the non-moving party's

8  pleading, (2) documents that are referred to in the non-moving party's pleading, or (3) facts that are

9  included in materials that can be judicially noticed.") (citations omitted).  The "incorporation by

10 reference" doctrine extends to documents necessarily relied on in the complaint, even if the

11 contents of such are not explicitly alleged or referenced in the complaint.  *See, e.g., Knievel v.*

12 *ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine permits the court

13 to "take into account documents whose contents are alleged in a complaint and whose authenticity

14 no party questions, but which are not physically attached to the pleading," and extends to

15 "situations in which the plaintiff's claim depends on the contents of a document, the defendant

16 attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the

17 document, even though the plaintiff does not explicitly allege the contents of that document in the

18 complaint"); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998).

19      Courts need not accept as true any allegations in a complaint that are contradicted

20 by matters subject to judicial notice or incorporated by reference.  *See, e.g., Sprewell v. Golden*

21 *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not … accept as true

22 allegations that contradict matters properly subject to judicial notice or by exhibit."); *Steckman v.*

23 *Hart Brewing*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (court "not required to accept as true

24 conclusory allegations which are contradicted by documents referred to in the complaint.").  The

25 policy underlying these rules is to prevent plaintiffs from insulating complaints against motions to

26 dismiss by artful pleading.  *See, e.g., Parrino,* 146 F.3d at 705-06 (policy concern aimed at

27 "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references

28 to documents upon which their claims are based");  *Kramer v. Time Warner, Inc.*, 937 F.2d 767,

1  774 (2d Cir. 1991) ("Were courts to refrain from considering such documents, complaints that

2  quoted only selected and misleading portions of such documents could not be dismissed under

3  Rule 12(b)(6) even though they would be doomed to failure."). "Although on a 12(b)(6) motion

4  the facts alleged in the complaint are presumed to be true, plaintiffs cannot make a broad assertion

5  of the absence of information which is contrary to known facts in order to resist a motion to

6  dismiss and plunge the parties into lengthy and costly discovery." *Padnes v. Scios Nova Inc.*,

7  1996 WL 539711 at *9 (N.D. Cal. 1996).

8  **III.   BASIS FOR REQUEST**

9          Under these principles, and as discussed in detail below, the Court may properly

10  consider (i) iPhone agreements, materials and press releases specifically referred to or relied on in

11  plaintiffs' RCAC; (ii) information contained on Apple's website; (iii) prior complaints in this

12  consolidated action; and (iv) iPhone-related press articles[3] in deciding the instant motion to

13  dismiss, without converting it into a motion for summary judgment.

14          **A.   DOCUMENTS REFERENCED OR RELIED ON IN COMPLAINT**

15          Each of the named plaintiffs claims to have purchased one or more iPhones and

16  "executed a two-year contract with AT&TM for provision of iPhone wireless voice and data

17  services" sometime between June 29, 2007 (iPhone release date) and August 22, 2007 (the latest

18  specific purchase date alleged). RCAC ¶¶ 13-21, 31. As part of their alleged purchase and

19  activation of iPhone(s), plaintiffs received the accompanying packaging and documentation of the

20  iPhone, and executed various agreements. These items include, among other things, the iPhone

21  box label (RCAC ¶¶ 13-21, 31 (paragraphs generally referencing plaintiffs' purchase of iPhones))

22  and the ATTM Wireless Service Agreement (RCAC ¶ 2, 7, 30, 31-32, 36, 44, 79, 112). The

23  RCAC also explicitly references Apple's January 9, 2007 announcements introducing the iPhone

24  (RCAC ¶ 77; quoted without attribution at ¶ 27) and quotes from *USA Today* and *Wall Street*

25  *Journal* press articles (RCAC ¶¶ 62, 86).

26          These materials – all directly or indirectly referenced in the RCAC – lay out the

27

28  _____
   [3]   Many of these articles, discussed below, are directly referenced and quoted in the RCAC.

1  various terms and conditions governing plaintiffs' purchase and use of the iPhone and related

2  ATTM service, and speak to Apple/ATTM's direct "disclosures" to iPhone purchasers.  The Court

3  may properly consider them under the "incorporation by reference" doctrine in assessing the

4  adequacy of plaintiffs' claims.  *See, e.g., Knievel*, 393 F.3d at 1076-77 (considering nine web pages

5  "surrounding" alleged defamatory photograph under "incorporation by reference" doctrine); *Fecht*

6  *v. The Price Co*., 70 F.3d 1078, 1080, n.1 (9th Cir. 1995) (where plaintiffs alleged misleading

7  statements or omissions, affirming grant of judicial notice and consideration of full text of

8  defendants' statements in corporate disclosure documents); *Curry v. CTB McGraw-Hill, LLC*, No.

9  C 05-04003 JW, 2006 U.S. Dist. LEXIS 5920, *10, n.1  (N.D. Cal. 2006) (J. Ware) (granting

10  judicial notice as to ERISA pension and welfare benefit plans referenced in complaint); *Wietschner*

11  *v. Monterey Pasta Co*., 294 F. Supp. 2d 1102, 1113 (N.D. Cal. 2003) (J. Jenkins) (where plaintiffs

12  "referred explicitly and implicitly to many press releases and SEC filings in the Complaint," taking

13  judicial notice of such documents in analyzing "contentions of misrepresentation or omission of

14  material facts…"); *Aligo v. Time-Life Books, Inc.*, No. C 94-20707 JW, 1994 U.S. Dist. LEXIS

15  21559, *4-5 (N.D. Cal. 1994) (J. Ware) (in misappropriation of likeness case, taking judicial notice

16  of Rolling Stone magazine and videotape of infomercial referenced in complaint).[4]

17  **B.    INFORMATION CONTAINED ON APPLE'S WEBSITE**

18  Information contained on a party's website is subject to judicial notice because it

19  satisfies Rule 201's requirement of not being "subject to reasonable dispute in that it is … capable

20  of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

21  questioned."  Fed. R. Evid. 201(b); *see O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th

22  Cir. 2007) (judicial notice proper as to information on defendants' website regarding earnings

23  history of fund);  *Doron Precision Sys., Inc. v. FAAC, Inc.,* 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y.

24

---

25  [4]    *See also* In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1405 n. 4 (9th Cir. 1996) (affirming
district court's consideration of full text of prospectus, in assessing motion to dismiss); *Heath*
26  *v. AT&T Corp.*, 2005 U.S. Dist. LEXIS 34334, *4-5 (N.D. Cal. 2005) (considering various
employment dispute documents relied on in complaint and attached to motion to dismiss);  *In*
27  *re 3Com Corp. Sec. Litig,* [1999 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,522, p. 92,578
(N.D. 1999, J. Ware)  (taking judicial notice of  SEC filings, historical closing stock prices and
28  accounting principles referenced in complaint in assessing motion to dismiss).

1  2006) (taking judicial notice of press releases on plaintiffs' website in antitrust action: "For

2  purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly

3  announced on a party's website, as long as the website's authenticity is not in dispute and 'it is

4  capable of accurate and ready determination.'"); *Hendrickson v. Ebay, Inc.*, 165 F. Supp. 2d 1082,

5  1084 n.2 (C.D. Cal. 2001) (taking "judicial notice of www.eBay.com and the information contained

6  therein pursuant to Federal Rule of Evidence 201").[5]  Apple's press releases – all of which are

7  available on Apple's website – are properly considered by the Court.

8          **C.**    **PRIOR COMPLAINTS IN THIS CONSOLIDATED CLASS ACTION**

9          A court may take judicial notice of the pleadings in its own files and those of other

10  courts because the existence and content of judicial records fall squarely within the ambit of Rule

11  201.  *See, e.g., Y.C. Yang v. Dar Al-Handash Consultants*, 250 Fed. Appx. 771 (9th Cir. 2007)

12  (affirming judicial notice of orders issued in prior state court actions); *Biagro Western Sales, Inc.*

13  *v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1140 (E.D. Cal. 2001) ("A district court is not

14  entirely limited to considering facts in the complaint. … matters of public record may be

15  considered, including pleadings, orders, and other papers filed with the court or records of

16  administrative bodies.") (*citing Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995);[6] *MGIC*

17  *Indem. Corp. v. Weisman*, 803 F.2d 500, 504-05 (9th Cir. 1986) (taking judicial notice of a motion

18  to dismiss and supporting memorandum filed by plaintiff MGIC in a related litigation, and

19  considering MGIC's position and allegations in that pleading:  "MGIC cannot maintain that the

20  knowledge it and its counsel Rapp had in 1981 was forgotten by 1982 … MGIC is bound by the

21  knowledge admitted by its counsel.").

22          Here, the Court may properly take notice of the allegations contained in the earlier

23  complaints filed in this consolidated proceeding, as they serve to illuminate plaintiffs' positions

24     5   *See also Mazur v. Ebay Inc.*, 2008 U.S. Dist. LEXIS 16561, *2-3 n.1 (N.D. Cal. Mar. 3, 2008)
   (taking judicial notice of eBay webpages in granting motion to dismiss);  *Monsanto Co. v.*
25  *PacifiCorp*, 2006 U.S. Dist. LEXIS 27565, *21-22 n.4 (D. Idaho 2006)  (taking judicial notice
   of website information regarding attorney experience in assessing reasonable billing rate).
26
      6   *See also In re Turnstone Sys. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26709, *108-09 (N.D. Cal.
27  Feb. 4, 2003) ( "Federal courts may take judicial notice of documents in their own files and
   the files of other courts. … The Court clarifies, however, that notice is taken solely for the
28  truth of the documents' existence and not for the truth of the facts alleged therein.").

1    and knowledge regarding iPhone policies.  Specifically, the *Smith* complaint (i) discussed several

2    dozen articles covering various aspects of the iPhone, (ii) alleged the wireless market share of

3    cellphone companies in the United States (~63.7 million ATTM customers out of ~235 million US

4    cellphone consumers), and (ii) included reference to and a screenshot of Apple's warning screen

5    to users contemplating downloading Version 1.1.1, admitting that Version 1.1.1 "itself warns that

6    unlocking programs available on the Internet may cause irreparable damage to the iPhone's

7    software, and that if a user has modified the iPhone's software, applying the software update 'may

8    result in your iPhone becoming permanently inoperable….'"  *Smith* complaint ¶¶ 41, 42, 63.  As

9    in *MGIC*, the Court may consider plaintiffs' stated knowledge in their prior pleadings in

10   determining the merits of the RCAC's current allegations; plaintiffs "cannot maintain that the

11   knowledge it and its counsel" had in 2007 "was forgotten" in 2008, at the time of filing of the

12   RCAC.  *MGIC*, 803 F. 2d at 505.

13          **D.    iPHONE-RELATED PRESS COVERAGE**

14                  Courts routinely grant judicial notice of news articles and reports in a wide array of

15   underlying circumstances, where the fact of the publication and disclosure of information (not

16   necessarily the truth of the matter therein asserted) is itself relevant to the litigation.  *See, e.g.,*

17   *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (affirming

18   "judicial notice that the market was aware of the information contained in news articles submitted

19   by the defendants" in considering motion for judgment on the pleadings in failure to disclose/

20   fraud on the market securities action);  *Ritter v. Hughes Aircraft* Co., 58 F.3d 454, 459 (9th Cir.

21   1995) (affirming judicial notice of widespread layoffs at defendant company based on newspaper

22   article:  "[t]his is a fact which would be generally known in Southern California and which would

23   be capable of sufficiently accurate and ready determination"); *Benak v. Alliance Capital Mgmt.*

24   *L.P.*, 435 F.3d 396, 401 (3d Cir. 2006) (affirming judicial notice of newspaper articles for

25   purposes of analyzing "inquiry notice" under statute of limitations analysis:  "[w]hether appellants

26   read the articles or were aware of them is immaterial. They serve only to indicate what was in the

27   public realm at the time, not whether the contents of those articles were in fact true…");

28   *Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (court "may take judicial notice

1  of the existence of newspaper articles in the Washington, D.C., area that publicized the ongoing

2  criminal investigation …"); *Woodfin Suite Hotels, LLC v. City of Emeryville,* 2007 U.S. Dist.

3  LEXIS 4467, *8-9 (N.D. Cal. Jan. 8, 2007) (in action challenging constitutionality of local

4  ordinance, granting judicial notice of "two articles about hotel industry revenues," held to satisfy

5  Rule 201 by being "articles which appear to be readily accessible via the Internet"); *United States*

6  *ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) (in *qui tam*

7  action brought under False Claims Act, taking notice of publication of newspaper articles: "courts

8  have the power to take judicial notice of the coverage and existence of newspaper and magazine

9  articles. . . .[and] the fact that the market is aware of information contained in news articles").[7]

10      Here, the publication of the many articles and reports on the iPhone/Apple's

11  iPhone policies speaks to the issue of whether Apple "failed to disclose" these policies or not.

12  Some of these articles are directly referenced in the RCAC, and are discussed below.  Although

13  there are dozens more publicly-available press articles that, similar to the RCAC's directly-

14  referenced articles, reiterate and discuss Apple's iPhone policies (and many of which are

15  specifically referred to in the *Smith* consolidated complaint), Apple does not specifically seek

16  judicial notice of these remaining articles at this point.  Apple merely notes that the undeniable

17  existence of these articles (a cursory search on the Internet will pull up hundreds) serves to

18  demonstrate that any leave to amend plaintiffs' RCAC would be futile.

19  **IV.    REQUEST FOR JUDICIAL NOTICE – SPECIFIC DOCUMENTS**

20      In light of the above, Apple requests that the Court take judicial notice of each of

21  the following documents:

22      1.  The iPhone label, attached to the outside of each iPhone box purchased by
        plaintiffs pursuant to allegations in RCAC ¶¶ 13-21, 31.  A true and correct

23      copy of this document is attached hereto as Exhibit A.  For reference
        purposes only, a true and correct copy of the iPhone label attached to each

24

_____

25  [7]  *See also In re Portal Software, Inc. Secs. Litig.*, 2005 U.S. Dist. LEXIS 20214, *13 (N.D. Cal.
    Aug. 10, 2005) ("[T]he court may take judicial notice of information that was publicly

26  available to reasonable investors at the time the defendant made the allegedly false statements.
    This is true of press releases, even if they were not explicitly referenced in the complaint"); *In*

27  *re Turnstone*, 2003 U.S. Dist. LEXIS 26709 at *109-110 (taking judicial notice of extrinsic
    news articles and press releases in "determining when the information contained therein was

28  disclosed to the market.").

iPhone box sold between December 2007 (subsequent to plaintiffs' purchases) and the current date is attached hereto as <u>Exhibit B</u>.

2. <u>ATTM Wireless Service Agreement/iPhone Terms and Conditions</u>, entered into by plaintiffs and governing the terms of plaintiffs' ATTM voice and data services, referenced in RCAC ¶ 2, 7, 30, 31-32, 36, 44, 79, 112 and available via hyperlink at http://www.wireless.att.com/learn/articles-resources/wireless-terms.jsp. A true and correct copy of this document, in its several parts, is attached hereto as <u>Exhibit C</u>.

3. <u>First Amended Complaint for Damages and Permanent Injunctive Relief in consolidated case *Smith et al. v. Apple et al.*</u>, N.D. Cal. Case No. 07-05662 RMW, Docket Item No. 1-3; contained also in the instant *In re Apple & AT&TM Antitrust Litigation* case record at Docket Item No. 81-4. A true and correct copy of this document is attached hereto as <u>Exhibit D</u>.

4. <u>*AT&T Eager to Wield its iWeapon*, L. Cauley, USA Today, May 21, 2007</u>; quoted by plaintiffs at RCAC ¶86, quoted in the consolidated *Smith* complaint at ¶¶ 21, 26, 32 and 47, and available at http://www.usatoday.com/tech/wireless/2007-05-21-at&t-iphone_N.htm. A true and correct copy of this article is attached hereto as <u>Exhibit E</u>.

5. <u>*Free My Phone*, W. Mossberg, Wall Street Journal, October 22, 2007</u>; quoted by plaintiffs at RCAC ¶ 62 and available at http://online.wsj.com/public/article/SB119264941158362317.html. A true and correct copy of this article is attached hereto as <u>Exhibit F</u>.

6. <u>*Apple Reinvents the Phone with iPhone*, January 9, 2007 Apple Press Release</u>, quoted without attribution at RCAC ¶ 27, referenced at RCAC ¶ 77, and available at http://www.apple.com/pr/library/2007/01/09iphone.html. A true and correct of this document is attached hereto as <u>Exhibit G</u>.

7. <u>*Apple Chooses Cingular as Exclusive US Carrier For Its Revolutionary iPhone*, January 9, 2007 Apple Press Release,</u> referenced at RCAC ¶ 77 and available at http://www.apple.com/ pr/library/2007/01/09cingular.html. A true and correct of this document is attached hereto as <u>Exhibit H</u>.

8. <u>Version 1.1.1 Warning Screenshot</u>, quoted and copied in the consolidated *Smith* complaint at ¶ 42 and contained in *Altered iPhones Freeze Up*, Katie Hafner, New York Times, September 29, 2007, referenced at *id.* ¶ 5, n.4 and available at http://www.nytimes.com/2007/09/29/technology/29iphone.html?_r=1&oref=slogin. A true and correct copy of this document is attached hereto as <u>Exhibit I</u>.

## V.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court take judicial notice of the documents and materials referenced above.

Dated: June 27, 2008

Respectfully submitted,

LATHAM & WATKINS LLP

By ___/s/ Daniel M. Wall___
  Daniel M. Wall
  Attorneys for Defendant APPLE INC.

DEFENDANT APPLE'S REQUEST FOR JUDICIAL NOTICE
CASE NUMBER: C 07-05152 JW