FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile:  619/234-4599

MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
ALEXANDER H. SCHMIDT (*pro hac vice*)
schmidt@whafh.com
MARTIN E. RESTITUYO (*pro hac vice*)
restituyo@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile:  212/545-4677

Plaintiffs' Interim Lead Counsel

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE & AT&TM ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  Master File No. C 07-05152 JW |

IN RE APPLE & AT&TM ANTITRUST LITIGATION

Master File No. C 07-05152 JW

**PLAINTIFFS' OPPOSITION TO DEFENDANT AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT**

DATE:           September 12, 2008
TIME:           1:00 p.m.
CRTRM:       8
JUDGE:        Hon. James Ware

# TABLE OF CONTENTS

**PAGE**

I.    ISSUE PRESENTED ....................................................................................................1

II.   INTRODUCTION ......................................................................................................1

III.  STATEMENT OF FACTS ..........................................................................................2

    A.    Summary Of Plaintiffs' Allegations ........................................................2

    B.    The Arbitration Agreement ......................................................................3

IV.   LEGAL ARGUMENT ...............................................................................................4

    A.    ATTM's Arbitration Agreement Is Unconscionable And Unenforceable
        Under California Law ...............................................................................4

        1.    ATTM's Arbitration Agreement Is Procedurally Unconscionable
              Under California Law .................................................................6

        2.    ATTM's Arbitration Agreement Is Also Substantively
              Unconscionable Under California Law........................................9

    B.    Under California's Choice-Of-Law Rules, California Law Applies
        To All The Plaintiffs ...............................................................................13

        1.    ATTM's Arbitration Agreement Is Unconscionable And
              Unenforceable Under Washington Law......................................15

        2.    ATTM's Arbitration Agreement is Unconscionable And
              Unenforceable Under New York Law .......................................18

    C.    State Laws Prohibiting Class Action Waivers Contained In Arbitration
        Agreements Are Not Preempted By The FAA ........................................20

    D.    Plaintiffs' Claims For Injunctive Relief Under The CLRA And UCL
        And Plaintiffs' MMWA Claim Are Not Subject To Arbitration ............22

    E.    The Court Should Deny ATTM's Motion To Avoid Conflicting Rulings .............24

V.    CONCLUSION.........................................................................................................25

PLTFFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- i -

# TABLE OF AUTHORITIES

**PAGE**

### CASES

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,*
  62 F.3d 1454 (D.C. Cir. 1996) ........................................................................... 13

*Am. Online Inc. v. Superior Court,*
  90 Cal. App. 4th 1 (2001) .................................................................................... 14

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................................................ 11

*Aral v. EarthLink, Inc.,*
  134 Cal. App. 4th 544 (2005) ...................................................................... 5, 6, 10

*Armendariz v. Foundation Health Psychare Services,*
  24 Cal. 4th 83 (2000) ............................................................................................ 6

*Belton v. Comcast Cable Holdings, LLC,*
  151 Cal. App. 4th 1224 (2007) ............................................................................. 7

*Broughton v. Cigna Healthplans of California,*
  21 Cal. 4th 1066 (1999) ...................................................................................... 22

*Brower v. Gateway 2000, Inc.,*
  246 A.D.2d 246 (N.Y. App. Div. 1989) .............................................................. 19

*Browne v. Kline Tysons Imports, Inc.,*
  190 F. Supp. 2d 827 (E.D. Va. 2002) ............................................................ 22, 23

*Carideo v. Dell, Inc.,*
  520 F. Supp. 2d 1241 (W.D. Wash. 2007) .......................................................... 15

*Carnegie v. Household Int'l, Inc.,*
  376 F.3d 656 (7th Cir. 2004) ............................................................................... 17

*Cervantes v. Pacific Bell Wireless,*
  No. 05-cv-1469 JM (RBB), 2006 U.S. Dist. LEXIS 89198 (S.D. Cal. Mar. 8, 2006) ................... 8

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984) ............................................................................................ 23

*Circuit City Stores, Inc. v. Adams,*
  279 F.3d 889 (9th Cir. 2002) .......................................................................... 5, 20

*Cohen v. DirecTV, Inc.,*
  142 Cal. App. 4th 1442 (2006) .............................................................................. 5

*Crandon v. United States,*
  494 U.S. 152 (1990) ............................................................................................ 24

PLTFFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- ii -

*Cruz v. PacifiCare Health Systems, Inc.,*
    30 Cal. 4th 303 (2003) ........................................................................................................22

*Cunningham v. Fleetwood Homes of Georgia, Inc.,*
    253 F.3d 611 (11th Cir. 2001) ......................................................................................22, 24

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985)............................................................................................................21

*Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper,*
    445 U.S. 326 (1980) ...........................................................................................................12

*Discover Bank v. Superior Court,*
    36 Cal. 4th 148 (2005) ................................................................................................*passsim*

*Douglas v. U.S. Dist. Ct. for the Cent. Dist. Of California,*
    495 F.3d 1062 (9th Cir. 2007) .........................................................................................9, 14

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974)............................................................................................................12

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 9c38 (1995) ............................................................................................................5

*Fitzhugh, et al. v. Granada Healthcare and Rehabilitation Center, LLC,*
    150 Cal. App. 4th 469 (2007) ............................................................................................25

*Flores v. Transamerica HomeFirst, Inc.,*
    93 Cal. App. 4th 846 (2001) ................................................................................................6

*Ford v. VeriSign, Inc.,*
    No. 05-cv-0819 JM (RBB), 2006 U.S. Dist. LEXIS 88856 (S.D. Cal. Mar. 8, 2006) ..................8

*Good Samaritan Hosp. v. Shalala,*
    508 U.S. 402 (1993)............................................................................................................24

*Gravillis v. Coldwell Banker Residential Brokerage Co.,*
    143 Cal. App. 4th 761 (2006) ............................................................................................25

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
    105 Wash. 2d 778 (1986)....................................................................................................17

*Harnden v. Ford Motor Co.,*
    408 F. Supp. 2d 300 (E.D. Mich. 2004)...............................................................................24

*Hayes v. County Bank,*
    26 A.D.3d 465 (N.Y. App. Div. 2006)..................................................................................18

*Henry v. Alcove Investment, Inc.,*
    233 Cal. App. 3d 94 (1991)................................................................................................25

*Higgs v. Warranty Group,*
    No. C2-02-1092, 2007 WL 2034376 (S.D. Ohio Jul 11, 2007)...........................................23

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- iii -

*Hoffman v. Cingular Wireless, LLC,*
   No. 06-cv-1021 W (BLM), 2006 U.S. Dist. LEXIS 79067 (S.D. Cal. Oct. 26, 2006)................8

*Ibok v. Advanced Micro Devices, Inc.,*
   Slip Copy, No. 5:02-cv-01485 JW, 2003 WL 25686529 (N.D. Cal. July 2, 2003)....................10

*In re Merritt Dredging Co.,*
   839 F.2d 203 (4th Cir. 1988), *cert. denied*, 487 U.S. 1236,
   108 S. Ct. 2904, 101 L. Ed. 2d 936...........................................................................13

*Ingle v. Circuit City Stores, Inc.,*
   328 F.3d 1165 (9th Cir. 2003) ...................................................................................20

*Kaltwasser v. Cingular Wireless LLC,*
   543 F. Supp. 2d 1124 (N.D. Cal. 2008) ...........................................................1, 9, 10, 13

*Klussman v. Cross Country Bank,*
   134 Cal. App. 4th 1283 (2005) ......................................................................5, 14, 22

*Koons Ford of Baltimore, Inc. v. Lobach,*
   398 Md.38 (2007) ....................................................................................................23

*Linder v. Thrifty Oil Co.,*
   23 Cal. 4th 429 (2000) ..............................................................................................10

*Lowden v. T-Mobile USA, Inc.,*
   512 F.3d 1213 (9th Cir. 2008)....................................................................2, 9, 17, 20

*Miller v. Gammie,*
   335 F.3d 889 (9th Cir. 2003) ....................................................................................21

*Nagrampa v. MailCoups, Inc.,*
   469 F.3d 1257 (9th Cir. 2006) ....................................................................................5

*Olson v. The Bon, Inc.,*
   183 P.3d 359 (Wash. 2008)........................................................................................17

*Omstead v. Dell, Inc.,*
   533 F. Supp. 2d 1012 (N.D. Cal. 2008) ........................................................................8

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,*
   96 F.3d 1151 (9th Cir. 1996) ....................................................................................13

*Parkerson v. Smith,*
   817 So. 2d 529 (Miss. 2002)......................................................................................23

*Pescatore v. Pan Am. World Airways, Inc.,*
   97 F.3d 1 (2d Cir. 1996)............................................................................................13

*Pitchford v. Oakwood Mobile Homes, Inc.,*
   124 F. Supp. 2d 958 (W.D. Va. 2000) ........................................................................23

*Powertel, Inc. v. Bexley,*
   743 So.2d 570 (Fla. 1999)..................................................................................18, 19

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

*Preston v. Ferrer,*
128 S. Ct. 978 (2008) ..................................................................................................20, 21

*Provencher v. Dell, Inc.,*
409 F. Supp. 2d 1196 (C.D. Cal. 2006) ...............................................................................7

*Ranieri v. Bell Atlantic Mobile, et al.,*
304 A.D.2d 353 (N.Y. App. Div. 2003) ...............................................................................18

*Rhode v. E & T Invs., Inc.,*
6 F. Supp. 2d 1322 (M.D. Ala. 1998) .................................................................................23

*Rickard v. Teynor's Homes, Inc.,*
279 F. Supp. 2d 910 (N.D. Ohio 2003) ..........................................................................23, 24

*Riensche v. Cingular Wireless LLC,*
Slip op., No. C06-1325Z, 2007 WL 3407137 (W.D. Wash. Nov. 09, 2007) ...............................7

*Riensche v. Cingular Wireless, LLC,*
Slip Copy, No. C06-1325Z, 2006 WL 3827477 (W.D. Wash. Dec. 27, 2006) ...........................8

*Rodriguez v. American Techs., Inc.,*
136 Cal. App. 4th 1110 (2006) ..........................................................................................25

*Rosenfeld v. Port Authority of New York and New Jersey,*
108 F. Supp. 2d 156 (E.D.N.Y. 2000) .................................................................................18

*Scott v. Cingular Wireless,*
160 Wash. 2d 843 (2007) ...............................................................................15, 16, 17, 18

*Shroyer v. New Cingular Wireless Servs., Inc.,*
498 F.3d 976 (9th Cir. 2007) ......................................................................................*passim*

*State v. Avco Fin. Serv. of New York Inc.,*
50 N.Y.2d 383 (N.Y. App. Ct. 1980) ..................................................................................19

*Steiner v. Apple Computer, Inc.,*
No. 07-04486-SBA, 2008 WL 691720 (N.D. Cal. Mar. 12, 2008) ......................................*passim*

*Szetela v. Discover Bank,*
97 Cal. App. 4th 1094 (2002) .............................................................................................9

*Ting v. AT&T,*
319 F.3d 1126 (9th Cir. 2003) ....................................................................................2, 6, 20

*Tsadilas v. Providian Nat. Bank,*
13 A.D.3d 190 (N.Y. App. Div. 2004) .................................................................................18

*Ward v. Westland Plastics, Inc.,*
651 F.2d 1266 (9th Cir. 1980) ...........................................................................................10

*Winig v. Cingular Wireless, LLC,*
No. C06-4297 MMC, Slip Copy, 2006 WL 2766007 (N.D. Cal. Sept. 27, 2006) .........................8

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- v -

# STATUTES

9 U.S.C.
   §2 .................................................................................................................... 2, 5

15 U.S.C.
   §2 ....................................................................................................................... 2
   §2301-12 ........................................................................................................... 2
   §2302(a) ........................................................................................................... 22
   §2310(a) ........................................................................................................... 23
   §2310(a)(I) ....................................................................................................... 24
   §2310(a)(2) ....................................................................................................... 23
   §2310(d) ........................................................................................................... 23

16 C.F.R.
   §703.5(j) ........................................................................................................... 23

40 Fed. Reg.
   60,168 ......................................................................................................... 23, 24
   60,175 ............................................................................................................... 24
   60, 211 ............................................................................................................. 23

Cal. Civ. Code
   §1668 .................................................................................................................. 5
   §1670.5(a) ................................................................................................... 10, 13

Cal. Code Civ. Proc.
   §1281.2(c) ........................................................................................................ 24

Washington Consumer Protection Act ............................................... 15, 16, 17
RCWA
   §19.86.020 ........................................................................................................ 15
   §19.86.920 ........................................................................................................ 15

# OTHER AUTHORITIES

Arbitration Fairness Act of 2007 ............................................................................ 6

Civil Local Rule for the Northern District of California
   7-4(b) ................................................................................................................ 10

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- vi -

Plaintiffs Herbert H. Kliegerman, Paul Holman, Lucy Rivello, Timothy P. Smith, Michael G. Lee, Dennis V. Macasaddu, Mark G. Morikawa, Vincent Scotti, and Scott Sesso ("Plaintiffs") hereby oppose the motion of defendant AT&T Mobility LLC ("ATTM") to compel arbitration of Plaintiffs' claims.

## I.    ISSUE PRESENTED

Whether the arbitration provision contained in the ATTM service agreement applicable to Apple iPhone purchasers is unconscionable and unenforceable under applicable state law.

## II.    INTRODUCTION

The Ninth Circuit Court of Appeals and other state and federal courts in California have consistently found the arbitration clauses contained in both former and current versions of ATTM's wireless services agreements to be unconscionable and unenforceable. *See, e.g., Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976 (9th Cir. 2007). This is because ATTM's arbitration clauses have consistently banned class-wide relief, ***including class arbitration***. Given the nature of the services ATTM provides to its customers, disputes between ATTM and its customers predictably involve relatively small amounts of damages. Therefore, this ban on class-wide relief effectively acts as an exculpatory clause and, if enforced, would permit ATTM to violate the law and illegally extract individually small amounts from each of the millions of its customers, reaping a handsome profit.

The true purpose behind each version of ATTM's arbitration agreements is to avoid having to answer to ***all*** affected customers on a ***class-wide basis*** for its violations of law. The revisions ATTM has made to its arbitration clause since the Ninth Circuit's decision in *Shroyer* have done nothing to alter this conclusion. ATTM's claim that its "revised" arbitration agreement no longer acts as an exculpatory clause lacks merit because the provision still requires consumers to individually arbitrate their claims – claims which will predictably involve small amounts of money. Two district courts in California have already so held. *Steiner v. Apple Computer, Inc.*, No. 07-04486-SBA, 2008 WL 691720 (N.D. Cal. Mar. 12, 2008); *Kaltwasser v. Cingular Wireless LLC*, 543 F. Supp. 2d 1124 (N.D. Cal. 2008).

Moreover, there is no basis here for rejecting the conclusion of the Ninth Circuit that the application of state unconscionability law to invalidate arbitration clauses containing class action

PLTFFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

waivers is not preempted by the Federal Arbitration Act, 9 U.S.C. §2 ("FAA"). *Shroyer*, 498 F.3d at 990; *Ting v. AT&T*, 319 F.3d 1126, 1152 (9th Cir. 2003); *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1221 (9th Cir. 2008). Attempting to sidestep the binding effect of these cases on this Court, ATTM attempts a circular argument that those preemption holdings "are not binding on this Court," because, in short, its arbitration clause is not unconscionable. Def. Br. at 18.[1] As demonstrated, *infra*, however, the clause is unconscionable and unenforceable, rendering ATTM's preemption argument moot.

Finally, even if the Court were to find that ATTM's arbitration clause is enforceable as to any of the Plaintiffs (and it should not), Plaintiffs' claims for injunctive relief under the CLRA and UCL and Plaintiffs' MMWA claim are not subject to arbitration. Moreover, since Apple is not a party to ATTM's arbitration agreement and litigation against Apple will proceed in this Court in any event, the Court should deny ATTM's motion to avoid inconsistent rulings on the same issues of fact and law.

## III.  STATEMENT OF FACTS

### A.  Summary Of Plaintiffs' Allegations

On June 4, 2008, Plaintiffs filed a Revised Consolidated Amended Class Action Complaint (the "Complaint") alleging violations by defendants ATTM and Apple, Inc. ("Apple") of section 2 of the Sherman Antitrust Act of 1890, 15 U.S.C. §2 (2004), violation of the consumer protection laws of 42 states and the District of Columbia, and breach the federal Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §2301-12 (2008). Plaintiffs bring this class action on their own behalves and on behalf of classes of persons similarly situated, *i.e.*, persons who purchased an Apple iPhone from either ATTM or Apple between June 29, 2007 (or the actual date that the iPhone became available) through the date of trial of this action. ¶1.[2]

When Apple launched its iPhone it touted it as a "revolutionary mobile phone," and a "breakthrough Internet communications device" because it "introduces an entirely new user

---

[1]      Memorandum of Points and Authorities in Support of Motion of Defendant AT&T Mobility LLC to Compel Arbitration and to Dismiss Claims Pursuant to the Federal Arbitration Act ("Def. Br.").

[2]      Unless otherwise specified, all paragraph references ("¶") are to the Complaint.

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 2 -

interface based on a revolutionary multi-touch display and pioneering new software that allows users to control iPhone with just a tap, flick or pinch of their fingers," and "combines three products into one small and lightweight handheld device." *See* Declaration of Rachele R. Rickert In Support Of Plaintiffs' Opposition To AT&T Mobility LLC's Motion To Compel Arbitration ("Rickert Decl."), Exhibit ("Ex.") A.; ¶2.  Consumers could purchase a 4 Gigabyte ("GB") model for $499.00 and an 8 GB model for $599.  Rickert Decl., Ex. A.

Prior to launch, Apple entered into a secret five-year contract with ATTM that establishes ATTM as the exclusive provider of cell phone voice and data services for iPhone customers.  ¶2.  Though Plaintiffs and class members who purchased iPhones agreed to enter into a two-year service plan with ATTM, Apple's undisclosed five-year exclusivity arrangement with ATTM effectively locks iPhone users into using ATTM for five years.  *Id.*

To enforce ATTM's exclusivity, Apple, among other things, unlawfully programmed and installed software locks on each iPhone it sold that prevented the purchaser from switching to another wireless carrier that competes with ATTM.  ¶3.  Apple has also unlawfully discouraged iPhone customers from downloading competing third-party applications software by telling them that it will void and refuse to honor the iPhone warranty of any customer who has downloaded competing applications.  ¶4.

In response to consumers exercising their legal right to unlock their iPhones or to install software applications that competed with Apple's, on September 27, 2007, under the guise of issuing an "upgraded" version of the iPhone operating software, Apple knowingly issued a purported update to the iPhone operating software, known as Version 1.1.1, which rendered completely inoperable or otherwise damaged some iPhones that were unlocked or had downloaded competing software applications.  ¶5.  When iPhone owners took their damaged phones to Apple or ATTM for repair or replacement, they were unlawfully told that they had breached their warranty agreements by unlocking their phone or downloading unapproved software and that their only remedy was to buy a new iPhone.  ¶6

**B.     The Arbitration Agreement**

ATTM seeks to compel arbitration of Plaintiffs' claims pursuant an arbitration agreement,

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 3 -

"revised" in December 2006, contained in its Terms of Service.  In general, ATTM's arbitration clause provides for the following:

- Consumers agree to resolve their disputes through "binding arbitration or small claims court instead of courts of general jurisdiction," waiving their right to a trial by jury;

- Class and/or representative actions are categorically precluded;

- If the class action waiver provision is found to be unenforceable, then the entirety of the arbitration provision "shall be null and void;" and

- Recovery of double attorney fees and expenses (the "Attorney Premium") and a payment to the plaintiff of the greater of $5,000 or the maximum claim that may be brought in small claims court (the "Premium") are *only* available if: (a) the arbitrator finds in the plaintiff's favor; and (b) the award is less than the Premium and greater than the value of ATTM's *last written settlement offer*.

Declaration of Neal S. Berinhout in Support of Motion of Defendant AT&T Mobility LLC to Compel Arbitration ("Berinhout Decl."), Ex. 9 at 4-6.  Customers who purchase an iPhone at a retail store are given only "a document summarizing the activation process, available rate plans, and the return policy." *Id.* at ¶31.  However, that document contains no information concerning either an arbitration agreement and/or a class action waiver. *See id.*, Ex. 13.  Indeed, it is not until after the customer has purchased his or her iPhone, taken it home, unpacked and connected it to their computer that they are presented with the Terms of Service. *See id.*, Ex. 10.

In order to begin using their new iPhone, customers must log on to iTunes to activate their iPhone with ATTM.  During that process customers are presented with a "text box" which includes the ATTM service agreement. *Id.* at ¶28, Ex. 10.  However, the arbitration provision is located far down in the service agreement "text box" requiring a user to scroll down the page to locate the provision. *Compare id.*, Ex. 9, *with id.*, Ex. 10.  In order to complete the activation process, the user must check a box agreeing to the Terms of Service, including the arbitration clause. *Id.* at ¶28. Failure to accept the terms of the service prohibits activation of the iPhone. *Id.*  In the event a customer decides to decline ATTM's Terms of Service and instead return their new iPhone, they are charged a 10% restocking fee. *Id.*, Ex. 13 at 1.

## IV.     LEGAL ARGUMENT

### A.     ATTM'S Arbitration Agreement Is Unconscionable And Unenforceable Under California Law

Arbitration agreements are invalid and unenforceable when grounds exist at law for the

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 4 -

invalidation of any contract. Federal Arbitration Act, 9 U.S.C. §2. In determining the validity of an agreement to arbitrate, "federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) ("*Adams*") (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) and applying California law to arbitration clause). "'It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable.'" *Shroyer*, 498 F.3d at 981 (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006)) (internal citation omitted).

It is well settled under California law that arbitration clauses containing class action waivers, such as ATTM's here, are unconscionable and unenforceable. In *Discover Bank*, the California Supreme Court held:

> [W]hen the [class action] waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, … the waiver becomes in practice the exemption of the party "from responsibility for [its] own fraud, or willful injury to the person or property of another." (Civ. Code §1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162-163 (2005).

The Ninth Circuit in *Shroyer*, analyzing a prior version of ATTM's arbitration agreement, recognized that the "California Courts of Appeal have construed *Discover Bank* as providing for a three-part inquiry in order to determine whether a class action waiver in a consumer contract is unconscionable." *Shroyer*, 498 F.3d at 983 (citing *Cohen v. DirecTV, Inc.*, 142 Cal. App. 4th 1442, 1451-53 (2006); *Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283, 1297 (2005); and *Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544, 556-57 (2005)). The three-part inquiry asks:

> (1) whether the agreement is a consumer contract of adhesion drafted by a party that has superior bargaining power;
>
> (2) whether the agreement occurs in a setting in which disputes between the contracting parties predictably involve small amounts of damages; and
>
> (3) whether it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.

1    *Shroyer*, 498 F.3d at 983 (internal quotations and citations omitted).[3]  Because in this case the

2    answer to each of these questions is "yes," ATTM's arbitration agreement is unconscionable and

3    unenforceable.  *Discover Bank* and *Shroyer* are directly applicable to and dispositive of this case.

4         The unconscionability doctrine "has both a 'procedural' and a 'substantive' element,' the

5    former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on

6    'overly harsh' or 'one-sided' results."  *Discover Bank*, 36 Cal. 4th at 160 (internal quotations and

7    citations omitted).  *See also, Shroyer*, 498 F.3d at 982.

8              1.    **ATTM'S Arbitration Agreement Is Procedurally Unconscionable Under California Law**

9         The Ninth Circuit has interpreted California law to find that a contract is procedurally

10   unconscionable "if it is a contract of adhesion, *i.e.*, a standardized contract, drafted by the party of

11   superior bargaining strength that relegates to the subscribing party only the opportunity to adhere to

12   the contract or reject it."  *Ting*, 319 F.3d at 1148 (citing *Armendariz v. Foundation Health

13   Psychare Services*, 24 Cal. 4th 83 (2000)); *see also, Shroyer*, 498 F.3d at 983 (where the first part

14   of the three-part unconscionability analysis is "whether the agreement is a consumer contract of

15   adhesion drafted by a party that has superior bargaining power"); *Aral*, 134 Cal. App. 4th at 557

16   ("[T]he terms of the agreement were presented on a 'take it or leave it' basis … with no

17   opportunity to opt out.  This is quintessential procedural unconscionability."); and *Flores v.

18   Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001) ("A finding of a contract of

19   adhesion is essentially a finding of procedural unconscionability.")  It is undisputed that Plaintiffs

20   had no opportunity to negotiate the terms of ATTM's wireless service agreements when they

21   purchased their iPhones.  Therefore, both they and the arbitration clauses contained in them are

22   consumer contracts of adhesion and are procedurally unconscionable.

23        ATTM concedes that its arbitration provision involves at least "a modest degree of

24   procedural unconscionability," but argues that "[P]laintiffs cannot establish any greater measure of

25

---

26   [3]     Representative Hank Johnson of Georgia recently introduced a bill in the House of Representatives
     to enact the "Arbitration Fairness Act of 2007," which declares that the FAA "was intended to apply to

27   disputes between ***commercial*** entities of generally similar sophistication and bargaining power" (emphasis
     added), and would amend the FAA to invalidate agreements that require arbitration of ***consumer*** disputes.

28   Rickert Decl., Ex. B.

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 6 -

1    oppression or surprise" because a cell phone is not a necessity. Def. Br. at 9.  In *Steiner*, 2008 WL

2    691720, at *9, the Honorable Saundra Brown Armstrong recently rejected the very same argument.

3    Judge Armstrong found ATTM's argument to be moot, because "the breakthrough iPhone's

4    uniqueness already suffices to show oppression beyond the minimal established by [ATTM]'s

5    adhesive contract." *Id.*  Judge Armstrong also found that the three cases relied upon by ATTM, ***the***

6    ***same three cases it relies upon here***, "do not appear to hold a showing of necessity is critical to a

7    showing of additional oppression, in cases involving adhesive contracts." *Id.*[4]

8        Moreover, Plaintiffs are not required to make a showing of "surprise" for a finding of

9    procedural unconscionability.  *Shroyer*, 498 F.3d at 983; *Discover Bank*, 36 Cal. 4th at 160, 162.

10   Even if such a showing were required, however, a consumer who purchases an iPhone in an ATTM

11   retail store receives only "a document summarizing the activation process, available rate plans, and

12   the return policy." Berinhout Decl., ¶31.  The document does not contain any information

13   regarding the arbitration agreement.  *Id.*, Ex. 13.  While ATTM claims the applicable Terms of

14   Service booklet is available in the store (*Id.* at ¶31), it does not claim to provide consumers with a

15   copy at purchase or explain the failure to provide one.  It is not until the customer has already spent

16   up to $599.00 plus tax on their iPhones, taken them home, "then presumably out of their

17   containers, and connected them to their computer, not to review a lengthy legal document, but

18   merely to activate them," that the customer is presented with the Terms of Service.  *Steiner*, 2008

19   WL 691720, at *10; Berinhout Decl., ¶¶26-30.  These same facts caused Judge Armstrong to

20   conclude that iPhone purchasers are "surprised" by the arbitration agreement.  *Steiner*, 2008 WL

21

22   ───────────────
     [4]      As noted by Judge Armstrong, the court's unconscionability analysis in *Belton v. Comcast Cable*
23   *Holdings, LLC*, 151 Cal. App. 4th 1224 (2007), "did not turn so much on 'necessity,' as it did on market
     alternatives" and was decided prior to *Shroyer*. *Steiner*, 2008 WL 691720 at *9. Similarly, *Provencher v.*
24   *Dell, Inc.*, 409 F. Supp. 2d 1196 (C.D. Cal. 2006), was issued well before the Ninth Circuit's decision in
     *Shroyer*, and the plaintiff in *Provencher* admitted "he was fully aware of the arbitration provision at issue,
25   before he even made his purchase." The *Provencher* court also erroneously "determined whether there was
     'a small amount of damages' not by considering the plaintiff's lone claim of about $1,850, but by
26   multiplying this amount by a possible class of 500,000 members." *Steiner*, 2008 WL 691720 at *10.
     Finally, "*Riensche v. Cingular Wireless LLC*, Slip. Op., No. C06-1325Z, 2007 WL 3407137 (W.D. Wash.
27   Nov. 09, 2007), issued by a court inferior to the Ninth Circuit, only held phone service was not a necessity
     for purposes of analyzing whether the plaintiff had purchased it under compulsion or duress.  It did not
28   consider unconscionability." *Steiner*, 2008 WL 691720 at *10.

     PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
     PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

691720, at *10.

Moreover, ATTM's attempt to "ameliorate the lack of notice to [Plaintiffs] by noting they could have returned their iPhones for a 90% refund" does not address "surprise," nor does it explain "why consumers who decline to activate to preserve their legal right to a jury trial should pay a 10% fee." *Steiner*, 2008 WL 691720 at *10, n.10. This penalty imposed by ATTM for exercising a fundamental right distinguishes this case from *Omstead v. Dell, Inc.*, 533 F. Supp. 2d 1012, 1014 (N.D. Cal. 2008), where "the purchaser could return the computer within 30 days if he/she was unsatisfied with either the computer or the agreement."[5]

Finally, ATTM claims certain of the California plaintiffs could not have been surprised by the arbitration agreement contained in the Terms of Service because they either: (1) previously agreed to arbitration with ATTM **under a prior wireless services agreement**; (2) received the "revised 2006 arbitration provision" in the mail in December 2006, **prior to purchasing their iPhone**; or (3) agreed to the "revised 2006 arbitration provision" by activating or renewing ATTM service **for other cell phone devices**. ATTM's prior versions of its agreement, however, have also **been found by numerous courts to be unconscionable and unenforceable**.[6] Moreover, ATTM does not cite to any case in support of its argument that it can rely on sending its customers **other, inapplicable and unconscionable** arbitration agreements to avoid a finding that the agreement

---

[5]    *Omstead* is also distinguishable because "the determinative finding was that the alleged 'scheme' to manufacture and sell defective laptop computers costing approximately $1500 did not arise 'in a setting in which disputes between the contracting parties predictably involve small amounts of damages' and that "Dell ('the party with the superior bargaining power') did not therefore 'carr[y] out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.'" *Omstead*, 533 F. Supp. 2d at 1038 (quoting *Discover Bank*, 36 Cal. 4th at 162-63). As discussed, *infra.*, and as recognized by Judge Hamilton, cases such as this one, involving relationships between consumers and mobile phone service providers, do typically meet the *Discover Bank* criteria for unconscionability. *Omstead*, 533 F. Supp. 2d at 1037 ("In *Discover Bank* and the cases applying *Discover Bank*, the 'scheme' generally involves a … mobile phone service provider....")

[6]    *See, e.g.*, *Shroyer*, 498 F.3d 976; *Winig v. Cingular Wireless*, LLC, Slip Copy, No. C06-4297 MMC, 2006 WL 2766007, at *2 (N.D. Cal. Sept. 27, 2006); *Hoffman v. Cingular Wireless, LLC*, No. 06-cv-1021 W (BLM), 2006 U.S. Dist. LEXIS 79067 (S.D. Cal. Oct. 26, 2006); *Ford v. VeriSign, Inc.*, No. 05-cv-0819 JM (RBB), 2006 U.S. Dist. LEXIS 88856 (S.D. Cal. Mar. 8, 2006) (discussing December 19, 2005 order denying Cingular's motion to compel arbitration); *Cervantes v. Pacific Bell Wireless*, No. 05-cv-1469 JM (RBB), 2006 U.S. Dist. LEXIS 89198 (S.D. Cal. Mar. 8, 2006) (discussing January 10, 2006 order denying Cingular's motion to compel arbitration); *Riensche v. Cingular Wireless, LLC*, Slip Copy, No. C06-1325Z, 2006 WL 3827477 (W.D. Wash. Dec. 27, 2006).

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

applicable here to iPhone purchasers is also unconscionable.[7]

Even were ATTM's arbitration agreement only "minimally" procedurally unconscionable, as ATTM urges, the agreement is substantively unconscionable to such a degree as to render it unenforceable in any event.

## 2. ATTM'S Arbitration Agreement Is Also Substantively Unconscionable Under California Law

ATTM's arbitration provision is substantively unconscionable because: (1) the agreement occurs in a setting in which disputes between the contracting parties predictably involve small amounts of damages; and (2) Plaintiffs allege that ATTM, the party with the superior bargaining power, has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money. *Shroyer*, 498 F.3d at 983; *Discover Bank*, 36 Cal. 4th at 162-163.

Due to the nature of the services ATTM provides to its customers and given the price of the iPhone, damages in this case will likely be small on an individual basis, *i.e.*, up to approximately $599.00 plus tax. *See, e.g.*, *Lowden*, 512 F.3d at 1221 ("T-Mobile's class action waiver lies within a contract of adhesion governing claims likely to concern only small sums of money"); *Shroyer*, 498 F.3d at 984 ("the [ATTM] Agreements occurred in a setting in which disputes between the contracting parties predictably involve small amounts of damages") (internal quotations and citation omitted).[8] If ATTM is permitted to wrongfully exact such small amounts from each of the

---

[7]    To the extent ATTM is arguing that certain plaintiffs are bound by the "revised arbitration agreement" simply by virtue of the fact that they received it in the mail in December 2006 (before purchasing an iPhone), the prior versions of the WSA provide that customers may accept or reject any amendments and hold ATTM to the terms of the original contract (Berinhout Decl., Ex. 12 at 15, Ex. 16 at 12, Ex. 21 at 12, and Ex. 24), and the amendment specifies no means of rejecting the modified terms, other than by cancelling service. *Id.*, Ex. 1. "California courts have held that such an offer is procedurally unconscionable." *Kaltwasser v. Cingular Wireless LLC*, 543 F. Supp. 2d 1124, 1130, n.5 (N.D. Cal. April, 11, 2008) (citing *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094 (2002)). The Ninth Circuit has also recently held that "a party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so. This is because a revised contract is merely an offer and does not bind the parties until it is accepted." *Douglas v. U.S. Dist. Ct. for the Cent. Dist. Of California*, 495 F.3d 1062, 1066 (9th Cir. 2007) (citation omitted).

[8]    *See* ¶12 (seeking declaratory and injunctive relief and damages, including "requiring Defendants to repair or replace, at no cost to the consumer, all iPhones rendered inoperable upon downloading Apple's Version 1.1.1 operating system).

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 9 -

millions of its customers, it will reap a handsome profit.   "'[T]he class action is the only effective way to halt and redress such exploitation.'"  *See Discover Bank*, 36 Cal. 4th at 161 (quoting *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 446 (2000)).

Moreover, Plaintiffs have alleged ATTM has carried out a scheme, in concert with defendant Apple, to cheat its customers out of such individually small sums of money. *See, e.g.*, ¶9 (defendants breached their warranties and engaged in deceptive acts or practices by refusing to repair or replace iPhones that had been destroyed when their owners downloaded Apple's "upgraded" operating system); ¶156 ("as a result of the Defendants' deceptive and misleading acts, Plaintiffs and class members have been injured.").  *See Aral*, 134 Cal. App. 4th at 557 (where gravamen of complaint was that "numerous consumers were cheated out of small sums of money through deliberate behavior," class action waiver was "deemed unconscionable under California law.")

Acknowledging that the Ninth Circuit in *Shroyer* found the prior version of its arbitration agreement to be unconscionable, ATTM argues its "revised" arbitration agreement does not serve to exempt ATTM from responsibility for its illegal behavior because it adds a new element, the potential for "individual gain," curing any concern expressed by the Ninth Circuit in *Shroyer*.[9] Def. Br. at 11-12.  ATTM made the ***same*** meritless argument before Judge Armstrong in *Steiner*. *Steiner*, 2008 WL 691720, at *12.  Judge Armstrong examined the "Premium" and the "Attorney Premium" and compared how AT&T's arbitration agreement and a class action would allow iPhone users to dispute the individually small charges at issue in that case, and concluded that ATTM's class arbitration waiver still operates as an exculpatory clause, in violation of *Shroyer* because it "greatly reduces the aggregate liability it otherwise would face due to exacting 'small sums from millions of consumers.'"  *Steiner*, 2008 WL 691720, at *11-*12.

---

[9]    The Declaration of Richard A. Nagareda, submitted by ATTM in support of its motion, should be stricken as improper legal argument. "Deciding whether or not a contract is unconscionable ultimately is a question of law for the court." *Kaltwasser*, 543 F. Supp. 2d at 1130 (citing Cal. Civ. Code §1670.5(a)). *See Ibok v. Advanced Micro Devices, Inc.*, Slip Copy, No. 5:02-cv-01485 JW, 2003 WL 25686529, at *4 (N.D. Cal. July 2, 2003) (where this Court held an expert's testimony improper because it "render[ed] an expert opinion on the ultimate legal issue in the case") (citing *Ward v. Westland Plastics, Inc.*, 651 F.2d 1266, 1271 (9th Cir. 1980)).  The Nagareda Declaration also impermissibly extends ATTM's legal arguments beyond the 25 page limit. Civil L.R. 7-4(b).

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

1    Moreover, the supposed "incentive" of the "Premium" is entirely illusory, because it

2   completely evaporates if ATTM offers the customer a settlement payment equal to his or her loss,

3   which ATTM admits it is motivated to do by the premium provisions (Def. Br. at 12), and the

4   customer accepts the offer. "Where the amount in dispute is predictably small, … the incentives no

5   longer apply." *Id.* at *12. As the plaintiff in *Steiner* "persuasively" argued:

> [ATTM] need not settle in full with all or most plaintiffs, but need only do so with a
> *certain percentage* of plaintiffs, denying them the Premium. At some percentage
> point, other [ATTM] customers, who have not yet sought arbitration, would believe
> the only likely *potential* recovery available through arbitration would be the
> $114.95, but not the Premium. *Without the Premium as an inducement to arbitrate,
> these consumers would only make the allegedly minimal effort to arbitrate, if they
> had the time, resources, or inclination to seek the $114.95, by itself.*

10   *Id.*, at *13 (italics in original).

11    The problem is a question of **time and trouble**:

> '[S]mall recoveries do not provide the incentive for any individual to bring a solo
> action prosecuting his or her rights. A class action solves this problem by
> aggregating the relatively paltry potential recoveries into something worth
> someone's (usually an attorney's) labor.'

14   *Discover Bank*, 36 Cal. 4th at 157 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591

15   (1997)). Judge Armstrong recognized that ATTM could not prove "that hundreds of thousands, if

16   not millions, of [ATTM] consumers across the country have the time, resources, or inclination to

17   individually dispute the $114.95 in annual charges" at issue in that case. *Steiner*, 2008 WL

18   691720, at *12.

19    ATTM's further argument, that because the "Premium" exceeds the level of statutory

20   damages provided in various statutes, it must be sufficient to encourage individuals and their

21   counsel to pursue their claims (Def. Br. at 11), was also rejected by Judge Armstrong in *Steiner*.

22   These statutes do not restrict plaintiffs to bringing claims on an ***individual basis as opposed to a***

23   ***class-wide basis***, which is ATTM's goal here, nor do they demonstrate how ATTM's arbitration

24   agreement "may effectively obviate the need for a class action." *Steiner*, 2008 WL 691720, at *13.

25    Another refrain of ATTM's, again rejected by the court in *Steiner*, is that the Premium

26   provides a higher recovery than "the typical incentive payments awarded to class representatives as

27   part of court-approved class settlement agreements." *Steiner*, 2008 WL 691720, at *13; Def. Br. at

28   11. Again, the issue is ***whether the arbitration clause effectively acts as an exculpatory clause***.

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

Even assuming *some* affected consumers, who have the time, resources, or inclination, will ultimately recover the amount of their demand (or even more), the amount paid out by ATTM to this fraction of its customers pales in comparison to the amount of damages ATTM faces if *all* class members are permitted to seek recovery on their claims for ATTM's illegal conduct.  As Judge Armstrong put it,

> [T]he operative comparison here is between how the Arbitration Agreement and a class action might resolve a dispute between all iPhone consumers and [ATTM].  In this regard, [ATTM] has not presented any evidence that *all* iPhone consumers would recover more, on average, if the Court let the Arbitration Agreement stand rather than allowing the Steiners' class action to proceed.

*Steiner*, 2008 WL 691720 at *13.[10]

Because the entire premium structure is illusory, as discussed above, the Attorney Premium is "also likely to do little or nothing to induce any attorney to get involved." *Steiner*, 2008 WL 691720, at *14.  ATTM's arbitration provision invites consumers to risk potentially thousands of dollars in attorneys' fees to recover amounts as small as $599.00, and attorneys who work on a contingency basis "would more likely focus their efforts on cases with a higher potential recovery." *Id*.  Therefore, the "Attorneys Premium" would not significantly increase the amount of attorney participation in tiny claims arbitrated against ATTM.  *Id*.  "As a result, the agreement is not an effective substitute for a class action." *Id.*

The significant benefit of the class action device is the reduction in costs of litigation, "particularly attorney's fees, by allocating such costs among all members of the class." *Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338 n.9 (1980);  *see also*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("A critical fact … is that petitioner's individual stake … is only $70.  No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount.  Economic reality dictates that petitioner's suit proceed as a class action or not at all.")  ATTM's "revised" agreement does not change this.  No party will *risk* the loss of thousands or possibly tens of thousands of dollars in attorneys' fees for a potential

---

[10]    ATTM contends Judge Armstrong erred in *Steiner* by reversing the burden of proof. Def. Br. at 14:14-16.  However, Plaintiffs here, and in *Steiner*, have met their burden by demonstrating that ATTM's arbitration clause acts as an exculpatory clause and is therefore unconscionable. ATTM's arguments to the contrary simply did not, and still do not, hold water.

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 12 -

1    recovery of even $7,500.[11]

2    While normally the Court has discretion to sever the unconscionable provision and enforce

3    the remainder of the contract or limit the application of any unconscionable clause so as to avoid an

4    unconscionable result (Cal. Civ. Code §1670.5(a)), the arbitration provision here precludes

5    severance of the ban on class-wide relief.  Berinhout Decl., Ex. 9 at 6 ("If this specific provision is

6    found to be unenforceable, then the entirety of this arbitration provision shall be null and void.")

7    Because the specific provision banning class action is unenforceable, the entire arbitration clause is

8    void.

9    **B.    Under California's Choice-Of-Law Rules, California Law Applies To All The Plaintiffs**

10    Regardless of where Plaintiffs resided when they activated their iPhones,[12] California law

11    governs the procedural issues regarding Plaintiffs' claims, such as whether to enforce a choice-of-

12    law clause.  *See, e.g., Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12-15 (2d Cir. 1996)

13    (applying forum state's choice-of-law rules in federal question proceeding); *A.I. Trade Fin., Inc. v.*

14    *Petra Int'l Banking Corp.*, 62 F.3d 1454, 1465 (D.C. Cir. 1996) (same); *In re Merritt Dredging*

15    *Co.*, 839 F.2d 203, 206 (4th Cir. 1988), *cert. denied*, 487 U.S. 1236, 108 S. Ct. 2904, 101 L. Ed. 2d

16    936 (same).  This includes claims over which the Court has exercised supplemental jurisdiction.

17    *See, e.g., Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996).

18    As demonstrated *infra*, ATTM's arbitration agreements would be unconscionable and

19    unenforceable even if Washington or New York law applied.  Even if, however this was not the

21    _____

22    [11]    For this reason, the *Discover Bank* court soundly rejected the "rationale stated by some courts that the potential availability of attorney fees to the prevailing party in arbitration or litigation ameliorates the problem posed by such class action waivers."  *Discover Bank*, 36 Cal. 4th at 162.  *See also id.*, at 168, n.6 ("there is no reason to believe that attorney fee ... remedies, in cases in which the amount of individual damages are slight, are adequate substitutes for class actions in vindicating consumer rights and deterring misconduct."); *Shroyer*, 498 F.3d at 986.

25    [12]    While ATTM attempts to argue that New York law may apply to Plaintiff Lee because he currently resides in New York (¶17; Def. Br. at 5), it is the law of the state where Lee maintained a billing address when he entered into the service agreement that is determinative, and not his state of residence at the time of the filing of the Complaint.  *See Kaltwasser*, 543 F. Supp. 2d at 1130, n.4 ("[T]he most logical inference, which also is indicative of the parties' expectations at the time of contract formation, is that the choice-of-law clause refers to Kaltwasser's billing address at the time he entered into the contract and listed on the 2006 Wireless Service Agreement.").

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

1    case, in California a choice-of-law clause is *per se* unenforceable where the result would be to

2    render operable an arbitration clause which bans class actions. *See Am. Online Inc. v. Superior*

3    *Court*, 90 Cal. App. 4th 1, 18 (2001) ("*AOL*"); *Klussman*, 134 Cal. App. 4th at 1292-93. As the

4    court explained in *AOL*, "The unavailability of class action relief in this context is sufficient in and

5    by itself to preclude enforcement of the TOS forum selection [and choice-of-law] clause." *AOL*,

6    90 Cal. App. 4th at 18. Accordingly, ATTM's choice-of-law clause, when it operates to apply the

7    law of a state which would enforce ATTM's class action waiver, is unenforceable. In those

8    situations, California law applies.

9         Traditional choice of law principles also warrant the application of California Law.

10   California courts look to section 187 of the Restatement (Second) of Contracts law, pursuant to

11   which, when a conflict exists between California law and the law of the state designated in the

12   choice-of-law clause, the pertinent question is whether California has a "materially greater" interest

13   in having its law applied as opposed to the designated state. *See Klussman*, 134 Cal. App. 4th at

14   1292.[13]

15        In this case, California has a materially greater interest in having its law applied over that of

16   either Washington or New York. *See Klussman*, 134 Cal. App. 4th at 1292; *Douglas*, 495 F.3d at

17   1067 (holding New York choice-of-law clause and class action waiver were inconsistent with

18   California law and therefore unenforceable.) For instance, California is home to both a substantial

19   percentage of the putative class and defendant Apple. ¶¶13-23. In addition, California is the

20   Plaintiffs' chosen forum, and a number of the claims in the suit are brought pursuant to California

21   law. ¶¶151-57, 163-67, 171-73. Most importantly, California has a strong public policy interest in

22   "protecting consumers from unscrupulous practices," including, *inter alia*, "the statutory policies

23   against exculpatory waivers, prohibiting enforcement of unconscionable contract provisions and

24   against waivers of laws established for a public purpose." *Klussman*, 134 Cal. App. 4th at 1300;

25   *see also AOL*, 90 Cal. App. 4th at 18. In contrast, the only interest Washington and New York

26

27   [13]    *See also Douglas*, 495 F.3d at 1067 n.2 (refusing to apply New York law where defendant was
     incorporated and had its principal place of business in Pennsylvania, and California's interest in protecting
28   its citizens from unconscionable contracts was found to be materially greater than New York's).

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 14 -

have in the outcome of this litigation is the coincidental fact that a customer had a billing address in that state when they activated their iPhone. Therefore, California law applies to the determination of whether the iPhone arbitration clause is unconscionable and unenforceable *as to each of the Plaintiffs*. As demonstrated above, under California law, ATTM's arbitration clause is unconscionable and unenforceable.

Even if, however, the Court were to apply Washington and New York law to those plaintiffs who maintained billing addresses in those states when they activated their iPhones, the arbitration clause is still unconscionable and unenforceable.

### 1. ATTM'S Arbitration Agreement Is Unconscionable And Unenforceable Under Washington Law

While ATTM seeks to compel arbitration of plaintiff Holman's claims pursuant to Washington law, it is well-established that arbitration clauses which prohibit class actions violate Washington State public policy and are therefore unconscionable. *Scott v. Cingular Wireless*, 160 Wash. 2d 843, 851-59 (2007). The very cases ATTM cites bear this out. Def. Br. at 15-17. Indeed, ATTM fails to cite, and Plaintiffs are unaware of, any Washington decision enforcing an arbitration clause containing a class action waiver. [14]

In *Scott v. Cingular*, the Washington Supreme Court, en banc, invalidated a previous version of ATTM's arbitration clause. The court held the clause unconscionable because it: (1) was contrary to the public policy of Washington's Consumer Protection Act ("CPA"), RCW 19.86.020[15]; and (2) operated as an exculpatory clause. *Scott*, 160 Wash. 2d at 851-859.

---

[14] ATTM does cite a district court decision which found an arbitration clause containing a class action waiver enforceable. *Carideo v. Dell, Inc.*, 520 F. Supp. 2d 1241, 1245-49 (W.D. Wash. 2007). However, *Carideo* is distinguishable because there the plaintiffs "purchased high-end consumer electronics under warranties with a 21-day recession option that were rendered inoperable by an allegedly apparent defect." *Id.* Accordingly, the court concluded that, unlike *Scott*, the amount in controversy was "not so small or the injury so insignificant that similarly situated individuals might not realize they have a claim at all." *Id.* (citing *Scott*, 160 Wash. 2d at 855-857). Unlike *Carideo*, this is not a case where thousands of dollars are at stake for each consumer or the injury was so apparent as to be obvious. On the high-side, each consumer most likely has approximately $599 in actual damages. ¶12; Rickert Decl., Ex. A. In addition, the actions taken by Defendants, as alleged in the Complaint, were specifically intended to obfuscate the injury caused and dissuade consumers from seeking to vindicate their rights in the first instance. *See, e.g.*, ¶6.

[15] Plaintiffs have alleged claims under the Washington CPA, RCWA §§19.86.020, 19.86.920. *See* ¶¶151-57.

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 15 -

1    The intent of the Washington CPA is to allow "[p]rivate citizens to act as private attorneys

2    general in protecting the public's interest against unfair and deceptive acts and practices in trade

3    and commerce." *Scott*, 160 Wash. 2d at 853. "[W]hen consumer claims are small but numerous, a

4    class-based remedy is the only effective method to vindicate the public's rights." *Id.* at 852. The

5    function of class claims is not only to resolve the issues concerning individual class members, but

6    also to "strongly deter future similar wrongful conduct, which benefits the community as a whole."

7    *Id.* The *Scott* court concluded that "class actions are a critical piece of the enforcement of

8    consumer protection law," and therefore "the class arbitration waiver undermines the legislature's

9    intent that individual consumers act as 'private attorneys general'." *Id.* at 854. As such, the court

10   held that a class-action waiver in the ATTM's arbitration clause violated Washington's public

11   policy to "protect the public and foster fair and honest competition," and was therefore

12   "substantively unconscionable." *Id.*

13   In addition, the *Scott* court found ATTM's arbitration clause unconscionable because its

14   class action waiver provision effectively:

15       exculpates [ATTM] from legal liability for any wrong where the cost of pursuit
         outweighs the potential amount of recovery. ... [T]he ability to proceed as a class
16       transforms a merely theoretically possible remedy into a real one. ... It is often the
         only meaningful type of redress available for small but widespread injuries.
17
*Id.* at 855-57. Moreover, the court concluded that neither ATTM's agreement to bear the costs of
18
the arbitration nor to pay attorney fees under certain circumstances was sufficient to change the
19
unconscionable pallor of the clause. *See id.* ("Shifting the cost of arbitration to Cingular does not
20
seem likely to make it worth the time, energy, and stress to pursue such individually small
21
claims.")
22
ATTM's purportedly new and "improved" arbitration clause works the same injustice as the
23
prior version, which the *Scott* court emphatically declared unconscionable. First and foremost, the
24
current provision also categorically forbids class actions, including class arbitration.[16]    This
25

26   ---
     [16]    Moreover, one important remedy under the Washington CPA is injunctive relief, "even when the
27   injunction would not directly affect their own private interests." *Scott*, 160 Wash. 2d at 853. However, the
     ATTM arbitration clause specifically prohibits a customer from seeking or obtaining this relief on a
28   representative or class basis as well. Berinhout Decl., Ex. 9 at 4-6.

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

provision, in and of itself, renders the clause unconscionable and unenforceable, due to the fact that it violates the CPA's policy to "protect the public and foster fair and honest competition." *See Scott*, 160 Wash. 2d at 861; *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 784 (1986).

In addition, the clause acts as an impermissible and unconscionable exculpatory clause. Through its arbitration clause ATTM seeks to insulate and exculpate itself from any consequences of systematic and widespread wrongdoing, including claims under the Washington CPA. Because it bans class actions, ATTM's arbitration clause fails to "make it worth the time, energy, and stress to pursue such individually small claims." *Lowden*, 512 F.3d at 1218 (quoting *Scott*, 160 Wash. 2d at 853-55); *see also Scott*, 160 Wash. 2d at 855-57 (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)) ("the realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or fanatic sues for $30"); *Olson v. The Bon, Inc.*, 183 P.3d 359 (Wash. App. Ct. 2008) (where individual consumer complaints "involve[d] less than a couple of hundred of dollars, the prohibition against class action effectively precludes individual claimants from ever challenging practices applicable to all potential class members.")

For the same reasons discussed in section IV.A.2., *supra*, the supposed "premiums" added to the "revised" agreement do not rescue ATTM's arbitration clause from a finding of unconscionability because they are merely illusory, given they require the rejection by the customer of a settlement offer by ATTM. This condition is significant; the practical effect is that no rational ATTM customer will ever chose to arbitrate and no sensible attorney will accept a case against ATTM. *See, e.g., Steiner*, 2008 WL 691720, at *13. ATTM need only offer to refund the full amount of a customer's demand in each instance of wrongdoing, and a reasonable customer will simply accept the refund.[17] *See Scott*, 160 Wash. 2d at 856 ("While technically the plaintiffs are not prevented from hiring an attorney, practically, attorneys are generally unwilling to take on individual arbitrations to recover trivial amounts of money."). The "premiums" are only attainable

---

[17]    Moreover, without the class action remedy available, other ATTM customers who have been the victim of nefarious and wrongful acts "may not even realize that they have a claim." *Scott*, 160 Wash. 2d at 855. "The class action provides a mechanism to alert them to this fact." *Id.*

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

1    if the arbitrator's award is "greater than the value of [ATTM]'s last written settlement offer." *See*

2    *id.* (finding it significant that "if the consumer loses or achieves an award of one dollar less than

3    sought, there is no award of fees"). In other words, if ATTM offers a full refund, say $599, and the

4    arbitrator awards a full refund, again $599, no attorney fees are recoverable and the "premiums"

5    vanish. *See id.* (noting that "[ATTM]'s attorney's are undoubtedly paid regardless of the result").[18]

6    ### 2.    ATTM's Arbitration Agreement is Unconscionable And Unenforceable Under New York Law

7    ATTM seeks to compel arbitration of plaintiff Kliegerman's claims pursuant to New York

8    law. However, as the cases cited by ATTM acknowledge, while New York law does not invalidate

9    arbitration clauses simply due to inequality of bargaining power, arbitration provisions which are

10    contracts of adhesion are unconscionable where the purchase could not have been made elsewhere.

11    *Ranieri v. Bell Atlantic Mobile, et al.*, 304 A.D.2d 353, 354 (N.Y. App. Div. 2003) ("It does not

12    avail plaintiff to argue that the arbitration provision is unconscionable without offering evidence

13    that he could not have chosen another service provider.") (citation omitted); *Tsadilas v. Providian*

14    *Nat. Bank*, 13 A.D.3d 190, 191 (N.Y. App. Div. 2004) (where arbitration provision was not

15    unconscionable "because plaintiff had the opportunity to opt out without any adverse

16    consequences."); *Rosenfeld v. Port Authority of New York and New Jersey*, 108 F. Supp. 2d 156,

17    164 (E.D.N.Y. 2000); *Hayes v. County Bank*, 26 A.D.3d 465, 467 (N.Y. App. Div. 2006).

18    The *Ranieri* court cited to a Florida appellate decision, *Powertel, Inc. v. Bexley*, 743 So.2d

19    570 (Fla. App. Ct. 1999), where the plaintiff did demonstrate a lack of "any meaningful choice on

20    the part of the consumer," and the arbitration clause was held unconscionable. *Id.* at 575. In

21    refusing to enforce the clause, the *Powertel* court rejected the defendants' arguments that

22    customers could simply "avoid the effect of the arbitration clause by cancelling their phone service

23    and signing an agreement with another provider" because "switching providers would result in a

24

---

25    [18]    ATTM seizes on dicta from a footnote at the tail-end of the *Scott* decision as the basis for its unsupportable proposition that its "revised" arbitration clause is enforceable. Def. Br. at 15 (citing *Scott*,

26    160 Wash. 2d at 860, n.7). In footnote seven, an extremely brief response to the dissent, the majority suggests only that they could "conceive of situations where a class action waiver would not prevent a

27    consumer from vindicating his or substantive rights under the CPA and would thus be enforceable." *Scott*, 160 Wash. 2d at 860, n.7. As explained *supra*, ATTM's "revised" agreement is not one of those

28    "situations."

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 18 -

1  loss of investment the customers have in the agreements they made with Powertel." *Id.*

2  Like the customers in *Powertel*, Plaintiffs here "had no economically feasible alternative."

3  *Powertel*, 743 So.2d at 575.   ATTM consumers did not have any "meaningful choice" as to

4  whether to accept or decline the ATTM arbitration agreement.  *See State v. Avco Fin. Serv. of New*

5  *York Inc.*, 50 N.Y.2d 383, 389 (N.Y. App. Ct. 1980) ("*Avco*").   One of the primary assertions in

6  Plaintiffs' Complaint is that there was no meaningful choice in the voice and data service market

7  for iPhones, and that consumers were not free to choose another service provider or make their

8  purchase elsewhere.  ATTM and Apple went to great lengths to discourage customers from having

9  any choice in service provider, actively seeking to disable the phones of those who attempted to

10  exercise their legal right to use a different service provider.   ¶¶77-86.   As Judge Armstrong

11  recognized, the iPhone is a unique product, and therefore it is not sufficient to argue that Plaintiff

12  could have simply switched to another cell phone offered from another service provider.  *Steiner*,

13  2008 WL 691720, at *9.  Also, like the plaintiff in *Powertel*, if Plaintiffs had chosen not to accept

14  the arbitration agreement – as ATTM suggests they should have done – they would have lost all

15  cell phone, email and internet use of their iPhone, and thus their investment in that device, or

16  suffered a 10% penalty when they returned their iPhone.  *Powertel*, 743 So.2d 570, 575; Def. Br. at

17  7, n.10.[19]  Accordingly, because the ATTM arbitration clause constitutes a contract of adhesion,

18  where a device comparable to the iPhone was unavailable elsewhere and plaintiff Kliegerman was

19  prevented from using another service provider, the clause is unconscionable and unenforceable

20  under New York law.  *See, e.g., Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 252 (N.Y. App.

21  Div. 1989); *accord Avco*, 50 N.Y.2d at 389 ("[A]s a general proposition, unconscionability, a

22  flexible doctrine ... requires some showing of an absence of meaningful choice on the part of one of

23  the parties together with contract terms which are unreasonably favorable to the other party");

24  *Avco*, 406 N.E.2d at 1078.

---

25  [19]   Indeed, ATTM concedes in its papers that Kliegerman was an existing ATTM customer.  Def. Br. at
26  7, fn.9.  Therefore, the burden on Kliegerman would have been even more onerous, in that if he were to
   decline the arbitration clause and switch service providers, not only would he have had to forego the utility
27  of his iPhone, he would have had to break his contract with ATTM, exposing him to an early termination
   fee.  This is precisely the lack of "meaningful choice" that the court was referring to in *Avco*, 406 N.E.2d at
28  1078.

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

1

**C.**    **State Laws Prohibiting Class Action Waivers Contained In Arbitration Agreements Are Not Preempted By The FAA**

2    Because ATTM's arbitration clause is unconscionable and unenforceable under California,

3    Washington and New York law, and because unconscionability is a generally applicable contract

4    defense, those laws are not preempted by the Federal Arbitration Act ("FAA"). *Shroyer*, 498 F.3d

5    at 988 (quoting *Ting*, 319 F.3d at 1150 n.15); *Lowden*, 512 F.3d at 1221. The Ninth Circuit

6    recognized in *Shroyer* that "'the FAA preempts state laws of limited applicability'" but followed

7    "'well settled Supreme Court precedent in rejecting the proposition that unconscionability is one of

8    those laws.'" *Shroyer*, 498 F.3d at 988 (holding that "generally applicable contract defenses, such

9    as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without

10    contravening" the FAA). *See also Discover Bank*, 36 Cal. 4th at 165 ("under section 2 of the FAA,

11    a state court may refuse to enforce an arbitration agreement based on generally applicable contract

12    defenses, such … [as] unconscionability") (citations and internal quotations omitted); *Ingle v.*

13    *Circuit City Stores, Inc.*, 328 F.3d 1165, 1176 n.15 (9th Cir. 2003); *Adams*, 279 F.3d at 895.

14    ATTM acknowledges that the Ninth Circuit rejected its arguments that California law is

15    either expressly or impliedly preempted by the FAA in *Shroyer*, 498 F.3d at 987-93, and that the

16    Ninth Circuit rejected T-Mobile's similar arguments that Washington law is preempted in *Lowden*,

17    512 F.3d at 1219-22. Nevertheless, ATTM attempts a circular argument that those preemption

18    holdings "are not binding on this Court," because, in short, its arbitration clause is not

19    unconscionable. Def. Br. at 18. ATTM contends that in order for this Court to find its arbitration

20    clause unconscionable, it would have to distort unconscionability law, and would only be doing so

21    because its arbitration provision contains a class action waiver. Def. Br. at 18-19. As

22    demonstrated *supra*, however, ATTM's arbitration clause *is* unconscionable under generally

23    applicable unconscionability law and, therefore, its preemption argument is moot. Judge

24    Armstrong came to the same conclusion in *Steiner*, 2008 WL 691720, at *16-*17.

25    ATTM strains to justify its repetition of the other, identical preemption arguments already

26    rejected by the Ninth Circuit in *Shroyer* (*see Shroyer*, 498 F.3d at 989) by arguing that *Preston v.*

27    *Ferrer*, 128 S. Ct. 978 (2008) somehow abrogated *Shroyer*. The issue in *Preston*, however, was

28    whether the FAA overrides "state statutes that refer certain disputes initially to an administrative

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 20 -

agency." *Id.* at 981. The Court held: "When parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative." *Preston **did not*** concern defenses to the enforceability of contracts under state law, such as unconscionability, nor did it even discuss whether the FAA preempts state laws that ban class action waivers which appear in arbitration agreements. It is difficult to imagine how these two cases could be "irreconcilable" when *Preston* and *Shroyer* address two entirely different issues. *Preston* clearly does not "'undercut the theory or reasoning underlying'" *Shroyer*, as ATTM argues. Def. Br. at 21, fn. 22 (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)).

Moreover, ATTM's entire argument hinges on the presumption that requiring class arbitration would hinder the alleged primary purposes of arbitration, *i.e.*, "streamlined procedures and expeditious results." Def. Br. at 22 (citations omitted). Contrary to ATTM's contention that the Ninth Circuit has not addressed this issue (Def. Br. at 23, fn. 26), the Ninth Circuit rejected this same argument in *Shroyer*. While ***one*** of the purposes of the FAA is "'the efficient and expeditious resolution of claims'" (citation omitted), "the Supreme Court has "'reject[ed] the suggestion that [such was] the *overriding* goal of the [FAA].'" *Shroyer*, 498 F.3d at 989 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985)) (italics in original).[20] The *Shroyer* court rejected ATTM's contention that class proceedings will reduce the efficiency and expeditiousness of arbitration in general. *Shroyer*, 498 F.3d at 990-91. *Preston* does not address this issue, let alone abrogate this holding.

Finally, any trend toward businesses abandoning arbitration will be the result of a retreat from the idea that arbitration clauses are an effective tool to exempt them from class action liability and not a result of courts applying unconscionability law to find arbitration clauses containing class action waivers to be unconscionable. It would be against public policy to allow companies to use arbitration clauses to insulate themselves entirely from class action liability. As *Discover Bank* so

---

[20]    Also, as in *Shroyer*, ATTM "offers no authority or support for the main premise of its argument that the purposes and objectives of the [FAA] encourage individual arbitration and disfavor class arbitration." *Shroyer*, 498 F.3d at 990.

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 21 -

aptly stated: "[T]he fact that a court's refusal to enforce an unconscionable term of an arbitration agreement makes that agreement less desirable to the party imposing the term does not argue in favor of its enforcement." *Discover Bank*, 36 Cal. 4th at 173.

### D. Plaintiffs' Claims For Injunctive Relief Under The CLRA And UCL And Plaintiffs' MMWA Claim Are Not Subject To Arbitration

Even if the Court were to find that ATTM's arbitration clause is enforceable (and it should not), Plaintiffs' claims for injunctive relief under the CLRA and UCL and Plaintiffs' MMWA claim are not subject to arbitration.

In *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066 (1999), and *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303 (2003), the California Supreme Court held that claims for injunctive relief under the CLRA (*Broughton*) and UCL (*Cruz*) are intended to remedy public wrongs and further the public interest and are not subject to arbitration. In both cases, the court rejected the claim that federal law was inconsistent with the decisions. *Broughton*, 21 Cal. 4th at 1077-1078, 1080; *Cruz*, 30 Cal. 4th at 311-315; *see also*, *Klussman*, 134 Cal. App. 4th at 1290.

Moreover, arbitration of Plaintiff's MMWA claims is precluded on two separate grounds. *First*, the MMWA statute evinces a clear intention by Congress not to deprive an aggrieved party of their day in court. *See, e.g.*, *Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611, 613, 621-22 (11th Cir. 2001); *Browne v. Kline Tysons Imports, Inc.*, 190 F. Supp. 2d 827, 831 (E.D. Va. 2002). On its face, the MMWA is a consumer-friendly statute. *See* 15 U.S.C. §2302(a). It would be a perverse result indeed if ATTM, or any large corporation, were permitted to systematically evade Congress' intent by leveraging superior bargaining power to keep a consumer out of court on an MMWA claim. Strikingly, the MMWA declares that Congress' intent in enacting the MMWA was "to *improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products* . . . ." *Id.* (emphasis added). In addition, Congress specifically provided for a private right of action under the MMWA: "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract *may bring suit for damages and other equitable relief . . . in an*

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 22 -

1  ***appropriate district court***." 15 U.S.C. §2310(d) (emphasis added).  Accordingly, "[a] clear reading

2  of the statute evinces Congress' intent to encourage informal dispute settlement mechanisms, yet

3  not deprive any party of their right to have their written warranty dispute adjudicated in a judicial

4  forum." *Browne*, 190 F. Supp. 2d at 831.

5         While it is true that the MMWA provides for an "informal dispute settlement procedure"

6  prior to a court lawsuit being initiated in district court (§2310(a)), and while Congress did not

7  elaborate on the "informal" procedures to be conducted, the legislature did grant the Federal Trade

8  Commission ("FTC") the authority to promulgate regulations in furtherance of the goals of the

9  MMWA.  *See, e.g.*, §2310(a)(2).[21]  According to this grant, the FTC has adopted a regulatory

10  scheme which precludes the "informal" dispute procedures prescribed by Congress from being

11  legally binding.  *See* 16 C.F.R. §703.5(j).  In other words "the FTC – the agency to which Congress

12  entrusted the task of implementing and elaborating the provisions of the MMWA – interprets the

13  MMWA to preclude the enforcement of binding arbitration clauses in written warranties." *Rickard*

14  *v. Teynor's Homes, Inc.*, 279 F. Supp. 2d 910, 919-920 (N.D. Ohio 2003) (citing 40 Fed. Reg.

15  60,168, 60, 211 (Dec. 31, 1975) (to be codified at 16 C.F.R. pts. 701 and 702)).  Indeed, the FTC

16  has categorically ruled that: "***[R]eference within the written warranty to any binding, non-judicial***

17  ***remedy is prohibited by the Rule and the Act***." *Id.* (quoting 40 Fed. Reg. at 60,211) (emphasis

18  added).[22]

19         The FTC's interpretation of the MMWA – a statute to which the agency was entrusted for

20  interpretation – is entitled to deference.  *Accord Chevron U.S.A. Inc. v. Natural Resources Defense*

21  *Council, Inc.*, 467 U.S. 837, 842 (1984).  As the Ninth Circuit has consistently held; "where the

22

---

23  [21]  As §2310(a)(2) provides: "The Commission shall prescribe rules setting forth minimum
requirements for any informal dispute settlement procedure which is incorporated into the terms of a written

24  warranty to which any provision of this chapter applies.  Such rules shall provide for participation in such
procedure by independent or governmental entities."

25  [22]  A number of other state and state courts have relied, at least in part, on the FTC's promulgated

26  regulations in concluding that the MMWA prohibits binding arbitration. *See Browne*, 190 F. Supp. 2d at
920; *Pitchford v. Oakwood Mobile Homes, Inc.*, 124 F. Supp. 2d 958 (W.D. Va. 2000); *Rhode v. E & T*

27  *Invs., Inc.*, 6 F. Supp. 2d 1322 (M.D. Ala. 1998); *Parkerson v. Smith*, 817 So.2d 529 (Miss. 2002); *Higgs v.
Warranty Group*, Slip Copy, No. C2-02-1092, 2007 WL 2034376, *6 (S.D. Ohio Jul 11, 2007); *Koons Ford*

28  *of Baltimore, Inc. v. Lobach*, 398 Md. 38 (App. Ct. 2007).

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 23 -

1    agency's interpretation of a statute is at least as plausible as competing ones, there is little, if any,

2    reason not to defer to its construction." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417

3    (1993).   What's more, the Supreme Court has instructed that the courts should be "especially

4    reluctant" to reject an agency's view where the view "so closely fits 'the design of the statute as a

5    whole and ... its object and policy.'" *Id.* at 418 (quoting *Crandon v. United States*, 494 U.S. 152,

6    158 (1990)).  In this case, the FTC has furthered Congress' pro-consumer intentions in passing the

7    MMWA by concluding that the legislature's reference to "informal" dispute resolution aimed at

8    allowing consumers to "***fairly and expeditiously***" settle their clams does not include binding

9    arbitration. 15 U.S.C. §2310(a)(1) (emphasis added); *see Rickard*, 279 F. Supp. at 920.

10           *Second*, even if the court were to assume, *arguendo*, that binding arbitration is available for

11    MMWA claims, the fact that the arbitration agreement is contained in a separate document apart

12    from the warranty agreement violates the "one document" rule pertaining to MMWA agreements.

13    *See* Rickert Decl., Ex. C; *Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 300, 308 (E.D. Mich.

14    2004).   An important function of the MMWA was to protect consumers and simplify the

15    presentation of warranty terms and conditions. *See* 40 Fed. Reg. 60,168, 60,175 (Dec. 31, 1975)

16    (to be codified at 16 C.F.R. pts. 701 and 702).  Accordingly, the FTC has implemented a "one

17    document" rule, requiring that all terms and conditions of a warranty be included in a single

18    document.  *See id.* at 61,172 (explaining that the "single document" rule requires that "all terms

19    and conditions [of a warranty] be presented in (at least) one location, as a coherent, easily

20    assimilated statement.").   The fact that the arbitration clause at issue in this case is included in a

21    document separate from the warranty renders the clause per se inapplicable to Plaintiffs' MMWA

22    claims.  *See Cunningham*, 253 F.3d at 613, 621-22 (holding that arbitration agreement in document

23    separate from warranty was unenforceable); *Harnden*, 408 F. Supp. 2d at 307 (same).

24           Because Congress intended the MMWA claims be heard only in the courts – as opposed to

25    in arbitration – and because the arbitration clause is in a separate document than the warranty,

26    ATTM's motion to compel arbitration of the MMWA claims must also be denied.

27           **E.    The Court Should Deny ATTM's Motion To Avoid Conflicting Rulings**

28           Pursuant to Cal. Code Civ. Proc. §1281.2(c), it is within the discretion of the trial court to

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 24 -

"stay or deny arbitration if one or more parties to the action is not subject to arbitration, and multiple proceedings might result in conflicting rulings involving the same transaction." *Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761, 783 (2006) (citing *Rodriguez v. American Techs., Inc.*, 136 Cal. App. 4th 1110, 1114-1115 (2006)). ATTM does not, and cannot, argue that Apple is a party to its arbitration agreement; therefore, Plaintiffs' claims against Apple will be litigated in this Court regardless of the outcome of ATTM's motion. Accordingly, even if this Court were to conclude that ATTM's arbitration clause is enforceable as to any of the Plaintiffs (which it should not), the Court should deny ATTM's motion or, alternatively, stay arbitration, given the potential for conflicting rulings which would result from an arbitrator deciding the same federal antitrust claims that will be litigated against Apple in this Court. *See id.*; *see also Fitzhugh, et al. v. Granada Healthcare and Rehabilitation Center, LLC*, 150 Cal. App. 4th 469, 472 (2007) (upholding trial court's denial of a motion to compel arbitration where only a portion of plaintiffs' claims were arbitrable and "proceedings in separate forums could result in inconsistent rulings on common issues of law and fact"); *accord Henry v. Alcove Investment, Inc.*, 233 Cal. App. 3d 94, 101 (1991) ("The existence of this possibility of conflicting rulings on a common issue of fact is sufficient grounds for a stay under section 1281.2.").

## V.    CONCLUSION

ATTM's motion to compel arbitration and stay this litigation should be DENIED.

DATED:  August 6, 2008                    Respectfully Submitted,

                                          WOLF HALDENSTEIN ADLER
                                             FREEMAN & HERZ LLP
                                          FRANCIS M. GREGOREK
                                          BETSY C. MANIFOLD
                                          RACHELE R. RICKERT


                                          _____/s/ Rachele R. Rickert_____
                                               RACHELE R. RICKERT

                                          750 B. Street, Suite 2770
                                          San Diego, California 92101
                                          Telephone:  619/239-4599
                                          Facsimile:   619/234-4599
                                          gregorek@whafh.com
                                          manifold@whafh.com
                                          rickert@whafh.com

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 25 -

WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
MARK C. RIFKIN (*pro hac vice*)
ALEXANDER H. SCHMIDT (*pro hac vice*)
MARTIN E. RESTITUYO (*pro hac vice*)
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:  212/545-4677
rifkin@whafh.com
schmidt@whafh.com
restituyo@whafh.com

RANDALL S. NEWMAN, P.C.
RANDALL S. NEWMAN
The Trump Building
40 Wall Street, 61st Floor
New York, New York 10005
Telephone:  212/797-3737
Facsimile:  212/797-3172
rsn@randallnewman.net

SHABEL & DENITTIS, P.C.
STEPHEN P. DENITTIS (*pro hac vice*)
NORMAN SHABEL (*pro hac vice*)
5 Greentree Centre, Suite 302
Marlton, New Jersey 08053
Telephone:  856/797-9951
Facsimile:  856/797-9978
sdenittis@shabeldenittis.com

Plaintiffs' Interim Lead Counsel

APPLE:16216.OPP

PLTFS' OPP TO DEFT AT&T MOBILITY LLC'S MTN TO COMPEL ARBITRATION & TO DISMISS CLAIMS
PURSUANT TO THE FEDERAL ARBITRATION ACT - MASTER FILE NO. C 07-05152 JW

- 26 -