1  Daniel A. Sasse (CA Bar No. 236234)
   CROWELL & MORING LLP
2  3 Park Plaza, 20th Floor
   Irvine, CA 92614-8505
3  Telephone:  (949) 263-8400
   Facsimile:  (949) 263-8414
4  Email:       dsasse@crowell.com

5
   Donald M. Falk (CA Bar No. 150256)
6  MAYER BROWN LLP
   Two Palo Alto Square, Suite 300
7  3000 El Camino Real
   Palo Alto, CA  94306-2112
8  Telephone: (650) 331-2000
   Facsimile:  (650) 331-2060
9  Email:       dfalk@mayerbrown.com

10 Attorneys for Defendant
   AT&T Mobility LLC

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                   SAN JOSE DIVISION

15
                                    |  Case No. 07-05152-JW
16                                  |
                                    |  **REPLY MEMORANDUM IN SUPPORT**
17                                  |  **OF MOTION OF DEFENDANT AT&T**
                                    |  **MOBILITY LLC TO COMPEL**
18 IN RE APPLE & AT&TM ANTI-TRUST   |  **ARBITRATION AND TO DISMISS**
   LITIGATION                       |  **CLAIMS PURSUANT TO THE**
19                                  |  **FEDERAL ARBITRATION ACT**

20                                  |  Date: September 12, 2008
                                    |  Time: 9:00 a.m.
21                                  |
                                    |        Honorable James Ware
22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

ARGUMENT ................................................................................................................... 1

I.     PLAINTIFFS CANNOT AVOID THEIR OBLIGATION TO
ARBITRATE ON AN INDIVIDUAL BASIS BY INVOKING STATE
UNCONSCIONABILITY LAW .......................................................................... 1

     A.    Plaintiffs' Unconscionability Challenges Are Governed By Their
Local Laws ............................................................................................. 2

     B.    Plaintiffs' Arbitration Agreements Are Not Unconscionable ................. 4

          1.    New York Law ............................................................................ 4

          2.    California Law ............................................................................ 5

               a.    The California plaintiffs can establish at most only a
modest degree of procedural unconscionability. .............. 6

               b.    Under California law, ATTM's arbitration provision
is not substantively unconscionable at all, much less
greatly so. ......................................................................... 8

          3.    Washington Law ...................................................................... 11

     C.    Arbitration Provision Could Be Deemed Unenforceable ...................... 12

II.    PLAINTIFFS' STATUTORY CLAIMS ARE ARBITRABLE. ........................... 13

III.   THE FACT THAT PLAINTIFFS HAVE SUED APPLE DOES NOT
EXCUSE THEIR OBLIGATION TO ARBITRATE THEIR CLAIMS
AGAINST ATTM ............................................................................................. 15

CONCLUSION .............................................................................................................. 15

i

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Allied-Bruce Terminix Cos. v. Dobson,*
    513 U.S. 265 (1995)............................................................................................................13, 14

*Am. Online, Inc. v. Super. Ct.,*
    108 Cal. Rptr. 2d 699 (Ct. App. 2001)..................................................................................3

*Badie v. Bank of Am.,*
    79 Cal. Rptr. 2d 273 (Ct. App. 1998)....................................................................................7

*Belton v. Comcast Cable Holdings, LLC,*
    60 Cal. Rptr. 3d 631 (Ct. App. 2007)....................................................................................6

*Bischoff v. DirecTV, Inc.,*
    180 F. Supp. 2d 1097 (C.D. Cal. 2002) ................................................................................7

*Broughton v. Cigna Healthplans,*
    988 P.2d 67 (Cal. 1999) ......................................................................................................13

*Brower v. Gateway 2000, Inc.,*
    676 N.Y.S.2d 569 (App. Div. 1998) .....................................................................................2

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006)............................................................................................................13

*Carideo v. Dell, Inc.,*
    520 F. Supp. 2d 1241 (W.D. Wash. 2007)...........................................................................11

*Cruz v. PacifiCare Health Sys., Inc.,*
    66 P.3d 1157 (Cal. 2003) ....................................................................................................13

*Cunningham v. Fleetwood Homes of Ga., Inc.,*
    253 F.3d 611 (11th Cir. 2001) ............................................................................................15

*Davis v. S. Energy Homes, Inc.,*
    305 F.3d 1268 (11th Cir. 2002) ..........................................................................................15

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985)............................................................................................................15

*Discover Bank v. Super. Ct.,*
    36 Cal. Rptr. 3d 456 (Ct. App. 2005) ...................................................................................3

*Discover Bank v. Super. Ct.,*
    113 P.3d 1100 (Cal. 2005) ........................................................................................3, 10, 12

*Douglas v. United States District Court*,
    495 F.3d 1062 (9th Cir. 2007) .........................................................................................3, 7

*E.M.M.I. Inc. v. Zurich Am. Ins. Co.*,
    84 P.3d 385 (Cal. 2004) ......................................................................................................4

*Engalla v. Permanente Med. Group., Inc.*,
    938 P.2d 903 (Cal. 1997) .................................................................................................7, 9

*Gen. Dynamics Land Sys., Inc. v. Cline*,
    540 U.S. 581 (2004)..........................................................................................................14

*Gillman v. Chase Manhattan Bank, N.A.*,
    534 N.E.2d 824 (N.Y. 1988)...............................................................................................4

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)......................................................................................................13, 14

*Green Tree Fin. Corp.–Ala. v. Randolph*,
    531 U.S. 79 (2000)............................................................................................................14

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ...............................................................................................2

*Harnden v. Ford Motor Co.*,
    408 F. Supp. 2d 300 (E.D. Mich. 2004)............................................................................15

*Hill v. Gateway 2000, Inc.*,
    105 F.3d 1147 (7th Cir. 1997) .............................................................................................7

*Huddleston v. Herman & MacLean*,
    640 F.2d 534 (5th Cir. Unit A 1981) ...................................................................................2

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
    379 F.3d 159 (5th Cir. 2004) .............................................................................................12

*Kaltwasser v. Cingular Wireless LLC*,
    543 F. Supp. 2d 1124 (N.D. Cal. 2008) ..........................................................................4, 7

*Klussman v. Cross Country Bank*,
    36 Cal. Rptr. 3d 728 (Ct. App. 2005)...............................................................................2, 3

*Laster v. T-Mobile USA, Inc.*,
    No. 05-cv-1167 (S.D. Cal. Aug. 11, 2008) .............................................................. *passim*

*Madden v. Kaiser Found. Hosps.*,
    552 P.2d 1178 (Cal. 1976) ..................................................................................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..........................................................................................................13

iii

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
　460 U.S. 1 (1983)...................................................................................................9, 15

*Olson v. The Bon, Inc.*,
　183 P.3d 359 (Wash. Ct. App. 2008).........................................................................11

*Omstead v. Dell, Inc.*,
　473 F. Supp. 2d 1018 (2007) ......................................................................................3

*Patriot Mfg., Inc. v. Dixon*,
　399 F. Supp. 2d 1298 (S.D. Ala. 2005)......................................................................15

*Patriot Mfg., Inc. v. Jackson*,
　929 So. 2d 997 (Ala. 2005).........................................................................................15

*Perdue v. Crocker Nat'l Bank*,
　702 P.2d 503 (Cal. 1985) ..............................................................................................7

*Perry v. Thomas*,
　482 U.S. 483 (1987).....................................................................................................13

*Powertel, Inc. v. Bexley*,
　743 So. 2d 570 (Fla. Ct. App. 1999) ...........................................................................5

*Preston v. Ferrer*,
　128 S. Ct. 978 (2008).............................................................................................12, 13

*Ranieri v. Bell Atl. Mobile*,
　759 N.Y.S.2d 448 (App. Div. 2003) .............................................................................5

*Rosenfeld v. Port Auth. of N.Y.*,
　108 F. Supp. 2d 156 (E.D.N.Y. 2000) ..........................................................................5

*S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*,
　641 F.2d 746 (9th Cir. 1981) ........................................................................................3

*Scott v. Cingular Wireless*,
　161 P.3d 1000 (Wash. 2007).......................................................................................11

*Shearson/Am. Express, Inc. v. McMahon*,
　482 U.S. 220 (1987).....................................................................................................14

*Shroyer v. New Cingular Wireless Servs., Inc.*,
　498 F.3d 976 (9th Cir. 2007) ...........................................................................8, 9, 10, 12

*Southland Corp. v. Keating Corp.*,
　465 U.S. 1 (1984)...........................................................................................................13

*Stiener v. Apple Computer, Inc.*,
　556 F. Supp. 2d 1016 (N.D. Cal. 2008) ............................................................. *passim*

*Szetela v. Discover Bank*,
 118 Cal. Rptr. 2d 862 (Ct. App. 2002)......................................................................7

*West v. Henderson*,
 278 Cal. Rptr. 2d 570 (Ct. App. 1991)................................................................ 7, 9

**Statutes, Regulations, and Rules:**

9 U.S.C. § 2................................................................................................................12

15 U.S.C. § 1681n(a) .................................................................................................8

15 U.S.C. § 2310(d) .................................................................................................13

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–12 ..................................1, 13, 14, 15

16 C.F.R. § 701.3(a)................................................................................................15

16 C.F.R. § 701.3(a)(6)...........................................................................................15

16 C.F.R. § 703.5 ....................................................................................................14

16 C.F.R. § 703.5(j)................................................................................................14

64 Fed. Reg. 19,700 (Apr. 22, 1999) .....................................................................14

Cal. Code Civ. Proc. 1281.2(c)..............................................................................15


**Other Authorities:**

Petition for Writ of Certioari, *Talk Am., Inc. v. Douglas*,
 128 S. Ct. 1472 (2007) (No. 07-719), *available at* 2007 WL 4231060.....................................3

RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971). ...........................................2, 3

Thomas E. Willging & Shannon R. Wheatmann,
 *Attorney Choice of Forum in Class Action Litigation:*
 *What Difference Does It Make?*, 81 NOTRE DAME L. REV. 591 (2006) ..................................10

v

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

1    In an effort to escape their obligation to arbitrate, plaintiffs first insist that, regardless of

2    where they live, their arbitration agreements may be enforced only if they withstand scrutiny

3    under California law.   But under the choice-of-law provisions in their contracts and the

4    applicable conflict-of-law rules, each plaintiff's challenge to the arbitration provision is governed

5    by his or her local law.  Specifically, Kliegerman's and Lee's challenges are governed by New

6    York law, Holman's by Washington law, and the other plaintiffs' by California law.

7    In any event, ATTM's arbitration provision, which is the most pro-consumer in the

8    country, is fully enforceable under the laws of all of the relevant states.  None of those states has

9    a blanket rule against contracts requiring individual arbitration.  And plaintiffs do not deny that

10   they themselves would fare better in arbitration than as class representatives.  Accordingly, to

11   invalidate an arbitration provision as pro-consumer as ATTM's would amount to distorting state

12   unconscionability law into a per se rule against individual-arbitration agreements.  That result

13   could not be more hostile to the federal policy favoring arbitration.

14   Plaintiffs also argue that their state-law claims for public injunctive relief and their claims

15   under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301–12, are not arbitrable.

16   But under the Supremacy Clause, states may not declare state-law claims to be exempt from the

17   FAA.  And plaintiffs' theory that MMWA claims are non-arbitrable has been rejected by every

18   federal appellate court to consider it.

19   Finally, plaintiffs claim that, because their claims against Apple are not arbitrable, they

20   need not arbitrate their claims against ATTM.  But the Supreme Court has repeatedly held that a

21   plaintiff's decision to sue a third party does not waive a defendant's arbitration rights.

22                                        **ARGUMENT**

23   **I.    PLAINTIFFS CANNOT AVOID THEIR OBLIGATION TO ARBITRATE ON AN**

24   **      INDIVIDUAL BASIS BY INVOKING STATE UNCONSCIONABILITY LAW.**

25   Plaintiffs seek to evade their arbitration agreements by arguing that those agreements are

26   unconscionable.  They are mistaken.[1]

27   ────────────────
     [1]    Plaintiffs also urge the Court to strike the declaration of Professor Richard Nagareda as
     "improper legal argument."  Opp. 10 n.9.  But Professor Nagareda is testifying as a fact witness
28   about his role in reviewing a draft version of ATTM's arbitration provision and as an expert on
     the market for legal services for small-dollar consumer claims and in the field of aggregate

1    **A.      Plaintiffs' Unconscionability Challenges Are Governed By Their Local Laws.**

2    As an initial matter, plaintiffs' assertion that their unconscionability arguments must be

3    assessed under California law without regard to where each of them actually resides is mistaken.

4    Under the choice-of-law provisions in plaintiffs' contracts—which are enforceable under

5    California's conflict-of-law principles—plaintiffs' challenges to their arbitration agreements are

6    governed by the law of the state of their billing addresses.  Therefore, Kliegerman's and Lee's

7    challenges are governed by New York law, and Holman's is governed by Washington law.  *See*

8    Mem. in Support of Mot. to Compel Arb. ("Mem.") (Dkt. No. 116) at 5; Opp. 13 n.12

9    (acknowledging that Lee had a New York billing address when he filed his lawsuit).

10   Plaintiffs nonetheless argue that enforcing the choice-of-law provisions would violate a

11   fundamental California policy against class waivers.  Opp. 14–15.  They are incorrect.  To begin

12   with, California's policies are irrelevant to the conflicts-of-law analysis as to Kliegerman and

13   Holman; even in the absence of a choice-of-law provision, California law would not apply to

14   them.  The case on which plaintiffs chiefly rely—*Klussman v. Cross Country Bank*, 36 Cal. Rptr.

15   3d 728 (Ct. App. 2005)—is clear on this point.  *Klussman* explains that California follows

16   "section 187 of the Restatement Second of Conflict of Laws."  *Id.* at 734.  Under Section 187, a

17   choice-of-law clause is unenforceable if it conflicts with "'a fundamental policy of a state which

18   has a materially greater interest than the chosen state in the determination of the particular issue

19   *and* which, under the rule of *§ 188, would be the state of the applicable law in the absence of*

20   *an effective choice of law by the parties*.'"  *Id.* at 734 n.8 (quoting Restatement § 187(2)(b))

21   (emphasis added).  Under section 188, "[i]f the place of negotiating the contract and the place of

22   performance are in the same state, the local law of this state will usually be applied."

23   dispute resolution generally and class-action litigation in particular.  His references to
     unconscionability merely provide context for his testimony, and thus are permissible.  *See, e.g.*,
24   *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("a witness
     may refer to the law in expressing an opinion without that reference rendering the testimony
25   inadmissible") (internal quotation marks omitted); *Huddleston v. Herman & MacLean*, 640 F.2d
     534, 552 (5th Cir. Unit A 1981) (lawyer may testify as to "customary" interpretation of
26   "boilerplate language" in prospectus to explain why it was included), *aff'd in part*, *rev'd in part
     on other grounds*, 549 U.S. 375 (1983).  Moreover, the policy underlying the rule against expert
27   testimony on legal conclusions—to prevent jury confusion (*see Hangarter*, 373 F.3d at 1017)—
     is not implicated here because the Court is the relevant decisionmaker.  *See also* Order at 2 n.1,
28   *Laster v. T-Mobile USA, Inc.*, No. 05-cv-1167 (S.D. Cal. Aug. 11, 2008) (rejecting motion to
     strike declaration by Professor Nagareda), *appeal pending*, No 08-56394 (9th Cir.).

1    Restatement § 188(3). Because Kliegerman and Holman entered into their service agreements in

2    New York and Washington, respectively, and receive wireless service and pay their bills from

3    there, those states' laws would govern their contracts even without choice-of-law provisions.

4        New York law also applies to Lee. Even assuming that—if there were no choice-of-law

5    provision—his contract would be governed by California law because he happened to activate

6    his iPhone in that state, no California policy would be offended by applying New York law to

7    him because he now lives in New York. *Klussman* itself confirms that "California's fundamental

8    public policy interest [is] in protecting *its residents*" (36 Cal. Rptr. 3d at 741 (emphasis added)),

9    not in imposing its views of consumer protection on other states.[2] California does not have a

10   materially greater interest than New York in determining the arbitrability of a New York

11   resident's dispute. As the California Court of Appeal has explained, "California has no greater

12   interest in protecting other states' consumers than other states have in protecting California's.

13   *Discover Bank v. Super. Ct.*, 36 Cal. Rptr. 3d 456, 462 (Ct. App. 2005) ("*Discover Bank II*").[3]

14       Even if California did have a materially greater interest in protecting nonresidents than

15   those individuals' home states, ATTM's arbitration provision does not run afoul of California's

16   "*limited* policy against class action waivers" (*Omstead v. Dell, Inc.*, 473 F. Supp. 2d 1018, 1024

17   (2007) (emphasis added), *reconsideration denied*, 553 F. Supp. 2d 1012, 1036 (N.D. Cal. 2008))

18   because that policy applies only when such waivers "operate effectively as exculpatory contract

19   clauses" (*Discover Bank v. Super. Ct.*, 113 P.3d 1100, 1108 (Cal. 2005)). As we have explained,

20

21   [2]    Plaintiffs also rely on *America Online, Inc. v. Superior Court*, 108 Cal. Rptr. 2d 699 (Ct.
     App. 2001), and *Douglas v. United States District Court*, 495 F.3d 1062 (9th Cir. 2007), *cert.
22   denied sub nom. Talk America, Inc. v. Douglas*, 128 S. Ct. 1472 (2008). But those decisions are
     inapposite because they involved Californians, and thus implicated California's interest in
23   protecting its residents. *See Am. Online*, 108 Cal. Rptr. 2d at 708, 713; *Douglas*, 495 F.3d at
     1067 n.2; *see also* Petition for Writ of Certiorari, *Talk Am., Inc. v. Douglas* at *9, 128 S. Ct. 1472
24   (2007) (No. 07-719), *available at* 2007 WL 4231060. Moreover, *America Online* also involved
     a forum-selection clause (108 Cal. Rptr. 2d at 703), and thus raised different legal principles than
25   the ones at issue here (*see id.* at 707–08).
     [3]    That Lee purports to sue on behalf of a putative class of Californians is immaterial. If
26   that untested allegation sufficed to ensure that California law would be applied to invalidate a
     non-resident's contract, then "no party to a contract in any of the 50 states could be certain that
27   his bargain would be enforceable," because that party "could be made to answer a [putative class
     action] filed in California" in which "every allocation of risk between the contracting parties
28   would have to withstand scrutiny under the public policy dictates of California." *S.A. Empresa
     De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 752 (9th Cir. 1981).

1    ATTM's provision does not operate as an exculpatory clause. Mem. 11–13.

2    Last, plaintiffs argue that the reference in the choice-of-law provision to Lee's "billing

3    address" is to his original billing address (California) rather than his billing address when this

4    lawsuit was filed (New York). Opp. 13 n.12. It is true that one court has adopted that

5    interpretation, believing that it would be unreasonable for a customer to be able to change the

6    applicable law "at will * * * simply by changing his or her address." *Kaltwasser v. Cingular*

7    *Wireless LLC*, 543 F. Supp. 2d 1124, 1130 n.4 (N.D. Cal. 2008) (Fogel, J.), *appeal pending*, No.

8    08-15962 (9th Cir.). But few customers would rearrange their lives merely to alter the law that

9    governs their dispute with ATTM. And ATTM elected to bear that risk to ensure that the same

10    law would govern all customers with billing addresses in a given state. Moreover, the phrase

11    "your billing address" in the choice-of-law clause should be given the same meaning that the

12    phrase has in the arbitration provision, which provides that arbitration will occur in the county of

13    "your billing address." Berinhout Decl. (Dkt. No. 117) Ex. 12 at 13. Because it makes little

14    sense to require customers to return to their original homes to arbitrate their disputes, the phrase

15    "your billing address" must mean "your current billing address"—and must have that meaning

16    throughout Lee's contract. *See E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 84 P.3d 385, 393 (Cal.

17    2004) ("the same word used in an instrument is generally given the same meaning" throughout).

18    **B.    Plaintiffs' Arbitration Agreements Are Not Unconscionable.**

19        **1.    New York Law.**

20    Plaintiffs' sole contention is that Kliegerman's and Lee's arbitration agreements are

21    procedurally unconscionable because wireless service on the iPhone is "unique" and customers

22    who reject arbitration by canceling service and returning an opened iPhone may be assessed a ten

23    percent restocking fee. Opp. 19. Under New York law, however, the proponent of

24    unconscionability must show "that the contract was **both** procedurally and substantively

25    unconscionable when made." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828

26    (N.Y. 1988) (emphasis added). Because plaintiffs tacitly concede that, as we explained (Mem.

27    6), ATTM's arbitration provision is not substantively unconscionable under New York law,

28    Kliegerman's and Lee's unconscionability claims fail at the threshold.

1    In any event, Kliegerman and Lee also cannot establish procedural unconscionability.

2  They failed to "offer[] evidence that [they] could not have chosen another service provider"

3  without agreeing to individual arbitration. *Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449

4  (App. Div. 2003). Their claim that wireless service for the iPhone is "unique" (Opp. 19) is

5  insufficient because New York does not deem form contracts for services with "unique" features

6  to be procedurally unconscionable. A New York federal district court has held that the terms of

7  service of E-ZPass (an automated toll-payment system) are not procedurally unconscionable

8  because customers "remain[ed] free" to forgo E-ZPass and "continue to use traditional cash toll

9  lanes." *Rosenfeld v. Port Auth. of N.Y.*, 108 F. Supp. 2d 156, 165 (E.D.N.Y. 2000). If

10  "traditional cash toll lanes" are a meaningful alternative to the convenience of E-ZPass, then so

11  are competing wireless providers and devices for ATTM service and the iPhone.

12    Plaintiffs' objection to the ten percent restocking fee also rings hollow. Not only do they

13  present no evidence that it actually deterred Kliegerman or Lee from rejecting ATTM's terms of

14  service and returning their iPhones, plaintiffs offer no response to our showing that it is not

15  procedurally unconscionable under New York law to require customers to pay the cost of

16  returning a product in order to reject an arbitration provision among its terms. Mem. 7 n.10

17  (citing *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 573 (App. Div. 1998)). Plaintiffs

18  instead rely upon a Florida decision that the *Ranieri* court cited in passing. Opp. 18–19. But that

19  tangential reference to an out-of-state case that did not even involve a restocking fee cannot

20  overrule *Brower*'s direct holding on the issue. In any event, that Florida decision involved a

21  phone company's imposition of arbitration long after its customers had become reliant upon

22  service. *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574–75 (Fla. Ct. App. 1999). By contrast,

23  Kliegerman and Lee agreed to arbitration when they first initiated service with ATTM.[4]

24    **2.    California Law.**

25    In arguing that ATTM's arbitration provision is unconscionable under California law,

26  plaintiffs rely entirely on Judge Armstrong's opinion in *Stiener v. Apple Computer, Inc.*, 556 F.

---

[4]    In addition, Kliegerman agreed to the same ATTM arbitration provision months before he bought an iPhone. Mem. 7 n.9. That service agreement gave him 30 days to cancel without penalty had he wished to reject arbitration. Berinhout Dec. Ex. 12 at 2. Thus, the alleged uniqueness of the iPhone and the prospect of paying a restocking fee is irrelevant as to him.

1    Supp. 2d 1016 (N.D. Cal. 2008), *appeal pending*, No. 08-15612 (9th Cir.).  But that decision was

2    recently rejected in several key respects by another California federal court.  *See* Order, *Laster v.*

3    *T-Mobile USA, Inc.*, No. 05-cv-1167 (S.D. Cal. Aug. 11, 2008) ("*Laster* Order") (attached),

4    *appeal pending*, No 08-56394 (9th Cir.).  In *Laster*, Judge Sabraw correctly explained that

5    ATTM's provision encourages individual customers to pursue their claims.  Although he

6    nevertheless held that California's pro-class-action policy required him to invalidate the

7    provision, that aspect of his holding is (like *Stiener*) inconsistent with California law and

8    preempted by the FAA.

9        **a.    The California plaintiffs can establish at most only a modest degree of**

10   **procedural unconscionability.**  Mem. 8–10.  Plaintiffs trumpet the *Stiener* court's finding of a

11   high degree of procedural unconscionability (Opp. 6–9), but that holding rests on two flawed

12   premises:  (1) that the iPhone lacks substitutes; and (2) that it is grossly unfair to provide the full

13   legal terms to a customer after the point of sale.

14       The first premise defies common sense:  No one must buy an iPhone.  *See* Mem. 9 (citing

15   cases).  And market alternatives need not be identical.  For example, in *Belton v. Comcast Cable*

16   *Holdings, LLC*, 60 Cal. Rptr. 3d 631 (Ct. App. 2007), the court rejected the argument that the

17   non-negotiable terms of Comcast's cable television music service involved "oppression" because

18   "FM radio," internet radio broadcasts, "compact disc player[s]," and satellite music services

19   were all acceptable alternatives, even though "the satellite service was expensive" and "the

20   quality of sound when listening to FM radio over the Internet was inferior."  *Id.* at 650.[5]  The

21   California plaintiffs do not deny that they could have obtained other wireless phones with

22   Internet and music capabilities and used them with other wireless carriers.[6]

23       *Stiener*'s second premise—that all terms must be presented at the point of sale (556 F.

---

24   [5]    Similarly, the California Supreme Court has held that an employee's ability to select
25   another health plan that did not require arbitration prevented the arbitration provision in the one
     he chose from being "oppressive."  *Madden v. Kaiser Found. Hosps.*, 552 P.2d 1178, 1186 (Cal.
26   1976).  Although the opinion does not disclose how the health plans compared, they almost
     certainly were not perfect substitutes because the point of offering multiple health plans is to
     provide an array of choices as to price, coverage, and other terms.
27   [6]    One popular Internet review web site posted 55 reviews of cell phones with digital music
28   players before the release of the iPhone.  *See* http://reviews.cnet.com/4566-6454_7-0-
     10.html?filter=501994_9116115 (listing reviews by date).

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

1    Supp. 2d at 1027–28)—also is mistaken. As another federal court in California has explained,

2    "the economic and practical considerations involved in selling services to mass consumers * * *

3    make it acceptable for terms and conditions to follow the initial transaction." *Bischoff v.*

4    *DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1105 (C.D. Cal. 2002); *accord Hill v. Gateway 2000, Inc.*,

5    105 F.3d 1147, 1149 (7th Cir. 1997). Indeed, by activating their service online, the California

6    plaintiffs could read ATTM's terms of service at their own pace. If they had wished to reject

7    those terms, they could have declined the agreement and returned their iPhones for a 90 percent

8    refund. Although the California plaintiffs also object to the ten percent restocking fee, they too

9    have never alleged that, but for the prospect of having to pay that fee, they would have returned

10   their iPhones. *See Engalla v. Permanente Med. Group., Inc.*, 938 P.2d 903, 915–16 (Cal. 1997)

11   (proponent of unconscionability bears the burden of proving facts underlying that defense). The

12   "hypothetical" possibility that some other customer might have been dissuaded is "irrelevant" to

13   whether the California plaintiffs (who made no such factual assertion) can void their agreements

14   on unconscionability grounds. *West v. Henderson*, 278 Cal. Rptr. 2d 570, 576 (Ct. App. 1991).[7]

15       In any event, *Stiener*'s holding that iPhone customers are "oppressed" or "surprised" by

16   ATTM's arbitration provision is irrelevant to all of the California plaintiffs but Smith. Rivello,

17   Macasaddu, Morikawa, and Scotti were preexisting ATTM customers who had previously

18   received the same arbitration provision with their December 2006 bills.[8]  *See* Mem. 9–10 n.14.

---

19   [7]    Moreover, consumers routinely must pay the cost of shipping or restocking returned

20   goods. *See, e.g.*, Amazon, http://www.amazon.com/gp/help/customer/display.html?nodeId=
     15015711; Best Buy, http://www.bestbuy.com/site//olspage.jsp?type=page&contentId=

21   1117177044087&id=cat12098; Circuit City, http://www.circuitcity.com/rpsm/cat/-13414/edOid/
     105452/rpem/ccd/lookLearn.do; Target, http://www.target.com/b/602-2734622-7205415?ie=

22   UTF8&node=10665391. If accepted, plaintiffs' argument would unsettle millions of contracts.

     [8]    Citing *Kaltwasser*, which in turn relied upon *Douglas* and *Szetela v. Discover Bank*, 118

23   Cal. Rptr. 2d 862 (Ct. App. 2002), plaintiffs argue that the December 2006 revision to their
     arbitration agreements was a procedurally unconscionable offer that is not binding because they

24   did not accept it. Opp. 9 n.7. But those decisions are inapplicable here. Unlike the offer to
     amend the arbitration provision in *Douglas*, the December 2006 revision at issue here was an

25   exercise of ATTM's right under the change-in-terms clauses in the California plaintiffs'
     contracts. *See* Berinhout Dec. Ex. 16 at 6, Ex. 21 at 5–6; Hennessy Dec. (Dkt. No. 119) Ex. 2 at

26   7–8. Modifications pursuant to such clauses are enforceable so long as they "clearly relate[] to a
     matter addressed in the original contract" and are "reasonable." *Badie v. Bank of Am.*, 79 Cal.

27   Rptr. 2d 273, 281, 285 (Ct. App. 1998); *see also Perdue v. Crocker Nat'l Bank*, 702 P.2d 503,
     510 (Cal. 1985). Those requirements are met here because the December 2006 revisions "clearly

28   related to" the California plaintiffs' original arbitration provisions and are "reasonable" because
     they were to the plaintiffs' benefit. By contrast, in *Szetela* the bank had added an arbitration

---

1    Scotti, Sesso, and Rivello each renewed ATTM service for cell phone devices other than the

2    iPhone (in March and October 2007 and May 2008, respectively), and in so doing again agreed

3    to the same provision. *Id.* Plaintiffs do not contend that those arbitration agreements suffered

4    from a heightened degree of procedural unconscionability. Indeed, in *Laster* Judge Sabraw held

5    that the manner in which non-iPhone customers agree to "ATTM's arbitration agreement * * * is

6    on the low end of the spectrum of procedural unconscionability." *Laster* Order at 14.

7        **b.   Under California law, ATTM's arbitration provision is not substantively**

8    **unconscionable at all, much less greatly so.**  Given the modest degree of procedural

9    unconscionability, plaintiffs must show extreme substantive unconscionability. *See* Mem. 8, 10.

10    But under *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007),

11    ATTM's arbitration clause is not substantively unconscionable at all.  It makes individual

12    arbitration simple and costless for customers and, by providing premiums of $7,500 and double

13    attorneys' fees, ensures that "the potential for individual *gain*" in arbitration is not "small." *Id.* at

14    986 (emphasis in original).  Indeed, these premiums far exceed the levels of statutory damages

15    authorized by legislatures. Mem. 11 & n.16.[9]

16        Plaintiffs respond by citing *Stiener*'s holding that ATTM's arbitration provision is

17    substantively unconscionable.  But that holding rested on the court's conclusion that ATTM had

18    "failed to establish [that] its Arbitration Agreement is as efficient a dispute resolution system as

19    class actions are" (556 F. Supp. 2d at 1033) and that "*all* iPhone consumers would recover more,

20    on average," in individual arbitration than they would receive if the class action were to proceed

21    (*id.* at 1031 (emphasis in original)).  The *Stiener* court erred in focusing its analysis on ATTM's

22    other customers rather than on the plaintiffs themselves.  Under California law, a contractual

23    _____

24    provision for the first time to the contracts of its cardholders via a bill insert.  118 Cal. Rptr. 2d at
     864.  *See also Laster* Order at 9 ("Federal and California law support ATTM's argument that the
     2006 revision applies"); *id.* at 8–10.

25    [9]    Plaintiffs observe that these statutes "do not restrict plaintiffs to bringing claims on an

26    ***individual basis***."  Opp. 11.  That is true, but it misses the point.  Congress authorizes statutory
     damages chiefly to encourage plaintiffs to bring claims that may not be amenable to class

27    treatment—*e.g.*, most credit reporting disputes.  *See* 15 U.S.C. § 1681n(a).  These statutes reveal
     Congress's judgment about the amount needed to encourage the pursuit of individual claims—a

28    much smaller amount than ATTM customers' potential recoveries in arbitration.  *See* Nagareda
     Decl. (Dkt. No. 120) ¶ 14.

term is unconscionable only if enforcing it under the specific circumstances of the case would shock the conscience—not simply that applying the term to other, imagined persons under other, "hypothetical situation[s]" might be "unconscionable." *West*, 278 Cal. Rptr. 2d at 576. The California plaintiffs never deny that they ***themselves*** would be likely to obtain greater relief in individual arbitration than in litigation. *See also Laster* Order at 20 n.10 ("[plaintiffs] arguably would be better off to individually pursue their claim in arbitration (as their net recovery may be larger and more quickly paid through ATTM's informal claims and arbitration process").

Moreover, because the standard announced in *Stiener* requires speculation about hypothetical proceedings, it is virtually impossible to satisfy.[10] As a result, it effectively imposed a categorical ban on agreements that require individual arbitration. That outcome is directly contrary to *Shroyer* and California law, which require that unconscionability be determined on a case-by-case basis, with a focus on whether the customer has an adequate incentive to pursue individual arbitration. *See* Mem. 10–11.

Even assuming that the standard announced in *Stiener* were correct, that court's comparison between arbitration and class actions was flawed. As plaintiffs point out (Opp. 11), the *Stiener* court accepted that any ATTM customer who invokes ATTM's dispute resolution process would be highly likely to receive full relief before arbitration proceedings commence. The *Stiener* court's chief concern was that, because other customers would no longer expect to receive a premium recovery—but instead would expect an offer to settle their claims in full— that expectation would discourage other customers from pursuing their disputes. As the *Laster* court explained, the *Stiener* court's analysis was flawed because it "did not address the effect of the Premium as an incentive for individuals to pursue the *informal claims process*." *Laster* Order at 16 n.8 (emphasis in original).[11] Moreover, treating the fact that it is too easy for the

---

[10] To satisfy *Stiener*'s standard, ATTM would have to predict the outcome of class certification and the merits, the value of any settlement or judgment, and the percentage of class members who would benefit from it. Imposing that herculean task violates the Supreme Court's admonition that "Congress' clear intent, in the [FAA], [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). In any event, the burden of proof rests on the proponents of unconscionability, not ATTM. *See Engalla*, 938 P.2d at 915–16.

[11] *See also* Supp. Decl. of Neal Berinhout ¶ 4 (explaining that ATTM generally includes attorneys' fees in settlement offers when customers request them); *Laster* Order at 15 n.7 (same).

consumer to obtain relief as a sign of unfairness bears no resemblance to California's traditional unconscionability standard. *See* Mem. 8. In addition, the *Stiener* court uncritically assumed—as do the plaintiffs here—that the class action would be certified and culminate in make-whole relief for all absent class members. But roughly four-fifths of class actions are not certified. *See* Thomas E. Willging & Shannon R. Wheatmann, *Attorney Choice of Forum in Class Action Litigation: What Difference Does It Make?*, 81 NOTRE DAME L. REV. 591, 635 (2006). Those that are certified almost always result in settlements (*e.g.*, *id.* at 638), under which class members typically receive pennies on the dollar, with the vast majority not bothering to submit a claim (Mem. 12 & n.17). It is telling that plaintiffs do not attempt to respond to the studies regarding how class actions function in practice.

Taking account of these realities, Judge Sabraw recently rejected the *Stiener* court's assessment of ATTM's provision. In *Laster*, Judge Sabraw explained that "nearly all [ATTM customers] who pursue the informal claims process are very likely to be compensated promptly and in full." *Laster* Order at 16. By contrast, he noted, "it appears that consumers who are members of a class do not fare as well." *Id.* He therefore concluded that "a reasonable consumer may well prefer quick informal resolution with likely full payment over class litigation that could take months, if not years, and which may merely yield an opportunity to submit a claim for recovery of a small percentage of a few dollars." *Id.* at 17.[12]

In sum, ATTM's 2006 arbitration provision "exponentially change[s] the amount of potential recovery in arbitration" (*id.* at 14), thereby providing the "potential for individual *gain*" required by *Shroyer* (498 F.3d at 986 (emphasis in original)). It thus is not substantively unconscionable at all, much less so extremely so that it may be invalidated under California law.

---

[12] This should have caused Judge Sabraw to uphold ATTM's arbitration provision because a dispute-resolution process that "a reasonable consumer may well prefer" cannot be shocking to the conscience, much less so severely so as to make up for the minimal level of procedural unconscionability he found. His order also confirms that ATTM's provision satisfies the test announced in *Discover Bank*. There, the California Supreme Court held that a class waiver may be unconscionable if it is (1) "found in a consumer contract of adhesion" (2) "small amounts of damage" are involved; and (3) the defendant allegedly has schemed "to deliberately cheat large numbers of consumers out of individually small sums of money." 113 P.3d at 1110. Judge Sabraw found that ATTM had negated the second prong of this test. *Laster* Order at 14–17. But he did not recognize that the test is conjunctive, not disjunctive, and so he erroneously went on to hold that the class waiver had to be struck down based on the third prong. *Id.* at 18–20.

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

1

### 3.    Washington Law.

2      Plaintiffs tacitly concede that Holman's arbitration agreement is not procedurally

3   unconscionable.  Instead, they assert that it is substantively unconscionable because "arbitration

4   clauses which prohibit class actions violate Washington State public policy."  Opp. 15 (citing

5   *Scott v. Cingular Wireless*, 161 P.3d 1000 (Wash. 2007)).  But in *Scott*, the Washington Supreme

6   Court disavowed such a blanket rule, stating that it "can certainly conceive of situations where a

7   class action waiver would not prevent a consumer from vindicating his or her substantive

8   rights * * * and would thus be enforceable."  161 P.3d at 1009 n.7.

9      Contrary to plaintiffs' argument (*see* Opp. 17–18), this is such a situation.  ATTM's

10  current arbitration provision retains every feature identified as "laudable" by *Scott* and other

11  courts applying Washington law to such agreements, including cost-free arbitration, the right to

12  attorneys' fees, and conveniently located arbitration proceedings.  *See* Mem. 15–16; *Scott*, 161

13  P.3d at 1003; *Olson v. The Bon, Inc.*, 183 P.3d 359, 365 (Wash. Ct. App. 2008).  At the same

14  time, ATTM's provision resolves the concern that *Scott* and *Olson* articulated about the clauses

15  they struck down—specifically, that those provisions did not make it "worth the time, energy,

16  and stress to pursue * * * individually small claims."  *Scott*, 161 P.3d at 1007.  Plaintiffs do not

17  deny that ATTM's arbitration process is quick, simple, and potentially more lucrative than any

18  individual recovery under a class action judgment or settlement.

19     Indeed, as we have explained (Mem. 17), ATTM's arbitration provision is more pro-

20  consumer than the provision upheld in *Carideo v. Dell, Inc.*, 520 F. Supp. 2d 1241 (W.D. Wash.

21  2007).  Plaintiffs seek to distinguish *Carideo* on the ground that "thousands of dollars [were] at

22  stake for each consumer" in that case.  Opp. 15 n.14.  But even discounting ATTM's premiums,

23  the amount in controversy here is about the same as in *Carideo*—from $1,300 to $1,700 (520 F.

24  Supp. 2d at 1248).  Plaintiffs estimate their actual damages at up to "$599" (Opp. 15 n.14);

25  because they seek treble damages (*see* Compl. p. 36), the amount in controversy is about $1,800.

26     Because ATTM's arbitration clause responds to the concerns raised by the Washington

27  courts and is more pro-consumer than the one enforced in *Carideo*, Holman has failed to meet

28  his burden of proving that his arbitration agreement is substantively unconscionable.

**C.     The FAA Would Preempt Any State-Law Rule Under Which ATTM's Arbitration Provision Could Be Deemed Unenforceable.**

Plaintiffs misunderstand our preemption arguments.  We agree that Section 2 of the FAA generally permits courts to invalidate arbitration agreements on the basis of defenses that are applicable to all contracts and that, broadly speaking, unconscionability is such a permissible contract defense.   But plaintiffs fail to recognize that Section 2 forbids courts from circumventing the FAA's bar on state laws that single out arbitration agreements by distorting "general principle[s] of contract law, such as unconscionability," in order to "employ [them] in ways that subject arbitration clauses to special scrutiny." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir. 2004).   Under the law of the relevant states, contractual terms are not substantively unconscionable unless they so shock the conscience that no reasonable person would accept them.  Mem. 6, 8, 15.  That generally applicable standard cannot be met:  It is not irrational to accept ATTM's arbitration provision in order to obtain superior individual dispute resolution and lower priced wireless service.  Indeed, Judge Sabraw concluded that "a reasonable consumer may well prefer" ATTM's provision to class actions. *Laster* Order at 17.  Simply put, ATTM's current provision cannot be deemed conscience-shocking under any reasonable understanding of the term.  To hold otherwise would deviate from the general rule, and would not represent a mere "refinement of the unconscionability analysis applicable to contracts generally" (*Shroyer*, 498 F.3d at 987).

Plaintiffs also misunderstand our argument that *Preston v. Ferrer*, 128 S. Ct. 978 (2008), abrogates *Shroyer*'s rejection of our conflict-preemption argument.[13]  In part, *Shroyer*'s rejection of our preemption arguments rested on the proposition that *Discover Bank* applies to any class waiver, not just ones in arbitration clauses.  *Shroyer*, 498 F.3d at 987–88.  But in *Preston*, the Supreme Court rejected that premise.  Although the respondent argued that California's requirement that the Commissioner of Labor adjudicate disputes as a precursor to both arbitration and litigation was even-handed, the Court held that this exhaustion requirement was

---

[13]     Plaintiffs accuse us of suggesting that the Ninth Circuit had not addressed our conflict-preemption argument.  Opp. 21.  But the footnote they cite refers to another topic entirely—the arbitrability of MMWA claims.  Mem. 23 n.26.  We specifically acknowledged that our conflict-preemption argument had been rejected in *Shroyer*.  Mem. 20.

1    preempted by the FAA because it would "hinder the speedy resolution" of disputes in arbitration.

2    128 S. Ct. at 986. *See also* Mem. 20–21. Moreover, plaintiffs do not deny that mandating the

3    availability of class-wide arbitration would lead to the abandonment of arbitration. That would

4    defeat Congress's goal of promoting the use of arbitration agreements. Mem. 20.[14]

5    **II.    PLAINTIFFS' STATUTORY CLAIMS ARE ARBITRABLE.**

6        **A.**    Relying on California law, plaintiffs contend that their claims for public

7    injunctive relief under the CLRA and UCL are not arbitrable. Opp. 22 (citing *Cruz v. PacifiCare

8    Health Sys., Inc.*, 66 P.3d 1157 (Cal. 2003); *Broughton v. Cigna Healthplans*, 988 P.2d 67 (Cal.

9    1999)). But *Cruz* and *Broughton* are preempted because the FAA "withdrew the power of the

10    States to require a judicial forum for the resolution of claims which the contracting parties agreed

11    to resolve by arbitration." *Southland Corp. v. Keating Corp.*, 465 U.S. 1, 10 (1984).[15]

12    Moreover, the California Supreme Court's assumption that arbitrability turns on the availability

13    of public injunctive relief (*Broughton*, 988 P.2d at 76–78) runs afoul of the Supreme Court's

14    holding that the lack of class-wide injunctive relief does not render an arbitration agreement

15    unenforceable (*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991)).

16        **B.**    Plaintiffs are equally wrong in asserting that their MMWA claims are not

17    arbitrable. Plaintiffs first argue that the MMWA's authorization of lawsuits in "district court"

18    (15 U.S.C. § 2310(d)) precludes arbitration of MMWA claims. Opp. 22–23. But the Supreme

19    Court has repeatedly rejected arguments that federal statutes with materially identical language

---

20    [14]    Plaintiffs contend that it "would be against public policy to allow companies to use
arbitration clauses to insulate themselves entirely from class action liability." Opp. 21. But
21    Congress has already weighed public policy considerations and concluded that arbitration
agreements are favored and should be enforced—not eliminated. Plaintiffs insinuate that there is
22    no federal policy favoring the arbitration of consumer disputes by citing a pending bill in the
House of Representatives that would invalidate arbitration provisions in consumer contracts.
23    Opp. 6 n.3. But the existence of proposed legislation has no relevance except to underscore that
there *is* a federal policy favoring the arbitration of consumer disputes (*see Allied-Bruce Terminix
24    Cos. v. Dobson*, 513 U.S. 265, 280 (1995)); that is what the proponents of the bill seek to change.

25    [15]    *See also Preston*, 128 S. Ct. at 983 (citing *Southland*); *Buckeye Check Cashing, Inc. v.
Cardegna*, 546 U.S. 440, 446 (2006) (*Southland* "rejected the proposition that the enforceability
26    of the arbitration agreement turned on the state legislature's judgment concerning the forum for
enforcement of the state-law cause of action"); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)
27    ("A state-law principle" that applies only to "a contract to arbitrate * * * does not comport with"
the FAA); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 623 n.10
28    (1985) ("any contention that the local antitrust claims [arising under Puerto Rico law] are
nonarbitrable would be foreclosed by this Court's decision in *Southland*").

---

13

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ATTM'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS CLAIMS; CASE NO. 07-05152-JW

1   are non-arbitrable.  *See Gilmer*, 500 U.S. at 29 (Age Discrimination in Employment Act);

2   *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227–29 (1987) (Securities Exchange Act

3   of 1934).  The fact that Congress has provided a right of action under the MMWA in order to

4   benefit consumers does not mean that Congress intended to preclude arbitration.  As the

5   Supreme Court has explained, "even claims arising under a statute designed to further important

6   social policies may be arbitrated because" when, as here, the federal claim may be vindicated in

7   arbitration, "the statute serves its functions."  *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S.

8   79, 90 (2000).  Moreover, "Congress, when enacting the [FAA], had the needs of

9   consumers * * * in mind."  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S 265, 280 (1995).

10      Plaintiffs also urge the Court to follow courts that blindly deferred to the FTC's position

11  that MMWA claims are non-arbitrable.  Opp. 23–24.  But "deference to [an agency's] statutory

12  interpretation is called for only when the devices of judicial construction have been tried and

13  found to yield no clear sense of congressional intent."  *Gen. Dynamics Land Sys., Inc. v. Cline*,

14  540 U.S. 581, 600 (2004).  The FTC's position is based on a misreading of the MMWA that has

15  been rejected by ***every*** federal appellate court and the only district court in this Circuit to

16  consider the issue, as well as many other federal district courts and state supreme courts.  *See*

17  Mem. 23–25 & nn.26, 28 (collecting cases).  Plaintiffs simply ignore these cases.

18      Moreover, even if it were valid, the FTC regulation would not invalidate ATTM's

19  arbitration provision because the regulation applies only to warrantors,[16] and it is Apple—not

20  ATTM—who is the warrantor under plaintiffs' warranties.[17]  For the same reason, plaintiffs are

21  wrong in asserting that the MMWA requires ATTM to include its arbitration provision in the

22  document containing the iPhone warranties—a document authored by Apple.  Opp. 24.  Because

23  ATTM is not a warrantor of the iPhone, the single-document rule is inapplicable.[18]  And even if

---

24  [16]    The regulation "prohibit[s] ***warrantors*** from including binding arbitration clauses in their contracts with consumers that would require consumers to submit warranty disputes to binding arbitration."  64 Fed. Reg. 19,700, 19,708–09 (Apr. 22, 1999) (emphasis added) (citing 16 C.F.R. 703.5(j)); *see also* 16 C.F.R. § 703.5 (describing the rights and obligations of "the warrantor" and "the consumer" with respect to informal dispute settlement procedures).

27  [17]    *See* Rickert Dec. ¶ 4 & Ex. C, at 16–19; Pls.' Req. for Judicial Notice ("Exhibit C * * * was authored by defendant Apple.  The existence, location and terms of Apple's warranty pertaining to the iPhone, therefore, cannot reasonably be questioned.").

28  [18]    The single-document rule provides that "[a]ny ***warrantor*** warranting to a consumer ***by***

ATTM were a warrantor, binding arbitration under ATTM's arbitration clause is not a non-binding "informal dispute settlement mechanism" for purposes of the single-document rule. *See* Mem. 23–24 (collecting cases). Plaintiffs' MMWA claims thus are fully arbitrable.[19]

## III. THE FACT THAT PLAINTIFFS HAVE SUED APPLE DOES NOT EXCUSE THEIR OBLIGATION TO ARBITRATE THEIR CLAIMS AGAINST ATTM.

Finally, plaintiffs argue that, because their claims against Apple are not arbitrable, the Court should deny arbitration altogether under a provision of California's Arbitration Act. Opp. 24–25 (citing Cal. Code Civ. Proc. § 1281.2(c)). But this proceeding is governed by the *FAA* (Mem. 4–5), *not California's* rules governing the conduct of arbitration. "Under the [FAA], an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone*, 460 U.S. at 20. In that situation, the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Id.* (emphasis in original); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (FAA "requires that [courts] rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation").

### CONCLUSION

ATTM's motion to compel arbitration should be granted, and plaintiffs' claims against ATTM should be dismissed.

Dated: August 25, 2008                    MAYER BROWN LLP

                                          By: /s/ Donald M. Falk_____
                                              Donald M. Falk

                                          CROWELL & MORING LLP
                                          Daniel A. Sasse

                                          Attorneys for Defendant AT&T Mobility LLC

_____
*means of a written warranty* a consumer product * * * shall clearly and conspicuously disclose in a single document in simple and readily understood language * * * [i]nformation respecting the availability of any informal dispute settlement mechanism *elected by the warrantor*[.]" 16 C.F.R. § 701.3(a), (a)(6) (emphasis added).

[19] Plaintiffs rely upon *Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611, 622–23 (11th Cir. 2001), and *Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 300, 307–08 (E.D. Mich. 2004), which simply follows *Cunningham*. But *Cunningham* was abrogated by the Eleventh Circuit's subsequent decision in *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002), as a district court within the Eleventh Circuit and the Alabama Supreme Court have recognized. *Patriot Mfg., Inc. v. Dixon*, 399 F. Supp. 2d 1298, 1303–04 (S.D. Ala. 2005); *Patriot Mfg., Inc. v. Jackson*, 929 So. 2d 997, 1006 (Ala. 2005).

1    Of Counsel:

2    Evan M. Tager
     Archis A. Parasharami (admitted *pro hac vice*)
3    Kevin S. Ranlett
     MAYER BROWN LLP
4    1909 K Street, N.W.
     Washington, D.C. 20006-1101
5    Telephone: (202) 263-3000
     Facsimile:  (202) 263-3300

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28