Daniel A. Sasse, Esq. (CA Bar No. 236234)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
Email: dsasse@crowell.com

Wm. Randolph Smith, Esq. (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave. N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
Email: wrsmith@crowell.com

Attorneys for Defendant
AT&T Mobility LLC

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

In Re Apple & AT&TM Antitrust Litigation.

Case No. C 07-05152 JW

**DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

| | |
|---|---|
| Date: | February 2, 2009 |
| Time: | 9:00 a.m. |
| Crtrm.: | 8, 4th Floor |
| Judge: | Honorable James Ware |

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page2 of 19

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ..... 1

RELIEF SOUGHT ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

INTRODUCTION ..... 2

PRELIMINARY STATEMENT ..... 3

ARGUMENT ..... 4

I. The Antitrust Claims Against ATTM Should Be Dismissed. ..... 4

A. Plaintiffs Are Required – As A Matter Of Law – To Allege Plausible, Non-Conclusory Allegations Of The Relevant Market. ..... 5

B. The Complaint Does Not Meet The Ninth Circuit Standard For Alleging A Plausible Relevant Market. ..... 6

C. *Newcal* Is Not To The Contrary. ..... 9

D. Allegations Of An Exclusive Contract Do Not Satisfy The Obligation To Properly Plead The Relevant Market (Or Aftermarket) Definition. ..... 10

II. Plaintiffs' Warranty Claim Against ATTM Should Be Dismissed ..... 12

A. Plaintiffs Fail To Allege That ATTM Made A Written Or Express Warranty ..... 12

B. Plaintiffs Fail To Allege ATTM Breached An Implied Warranty ..... 13

CONCLUSION ..... 13

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

i

Case No. C 07-05152 JW

DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page3 of 19

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*AD/SAT v. Associated Press*, 920 F. Supp. 1287 (S.D.N.Y 1996) ....... 7

*Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519 (1983) ....... 13

*Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227 (1st Cir. 1983) ....... 10

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ....... 2, 6, 7, 13

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096 (9th Cir. 1999) ....... 5, 7

*Brown Shoe v. United States*, 370 U.S. 294 (1962) ....... 5

*Chawla v. Shell Oil Co.*, 75 F. Supp. 2d 626 (S.D. Tex. 1999) ....... 11

*Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) ....... 12

*Collins v. Assoc. Pathologists, Ltd.*, 844 F.2d 473 (7th Cir. 1988) ....... 10

*Discon v. NYNEX Corp.*, 86 F. Supp. 2d 154 (W.D.N.Y. 2000) ....... 11

*Dura Pharms. Inc. v. Broudo*, 544 U.S. 336 (2005) ....... 13

*Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. 451 (1992) ....... 9, 10

*Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189 (11th Cir. 2007) ....... 9

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d. Cir. 1995) ....... 9

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007) ....... 6

*In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d 403 (S.D.N.Y. 2005) ....... 4, 8

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

ii
Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page4 of 19

*Jacobs v. Tempur-Pedic N. Am., Inc.*,
No. 4:07-CV-02-RLV, 2007 U.S. Dist. LEXIS 91241 (N.D. Ga. Dec. 11, 2007)................6

*JM Computer Servs., Inc. v. Schlumberger Techs., Inc.*,
No. C 95-20349 JW, 1996 U.S. Dist. LEXIS 21885 (N.D. Cal. May 3, 1996) ....................5

*JM Computer Servs., Inc. v. Schlumberger Techs., Inc.*,
No. C-95-20349 JW, 1997 U.S. Dist. LEXIS 21807 (N.D. Cal. May 20, 1997)..................6

*Lady Deborah's, Inc. v. VT Griffin Servs., Inc.*,
No. CV207-079, 2007 U.S. Dist. LEXIS 95138 (S.D. Ga. Oct. 26, 2007) ........................11

*Newcal Indus., Inc. v. Ikon Office Solutions*,
513 F.3d 1038 (9th Cir. 2008)..........................................................................................5, 9

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
127 F.3d 1157 (9th Cir. 1997)..........................................................................................10

*Perlman v. Zell*,
938 F. Supp. 1327 (N. D. Ill. 1996)..................................................................................9

*Tanaka v. Univ. of S. Cal.*,
252 F.3d 1059 (9th Cir. 2001)..........................................................................................5, 7

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
127 S. Ct. 2499 (2007)......................................................................................................8

*Thomas v. Farley*,
31 F.3d 557 (7th Cir. 1994)..............................................................................................9

*Todd v. Exxon*,
275 F.3d 191 (2d Cir. 2001)............................................................................................6, 9

*UGG Holdings, Inc. v. Severn*,
No. CV 04-1137-JFW, 2004 U.S. Dist. LEXIS 30646 (C.D. Cal. Oct. 1, 2004).............5, 7

*United States v. AT&T Co.*,
524 F. Supp. 1336 (D.D.C. 1981).....................................................................................11

*United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*,
89 F.3d 233 (5th Cir. 1996)..............................................................................................11

*United States v. Microsoft*,
253 F.3d 34 (D.C. Cir. 2001) ...........................................................................................10

*Van Ness Townhouses v. Mar Indus. Corp.*,
862 F.2d 754 (9th Cir. 1988)............................................................................................2

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
382 U.S. 172 (1965)..........................................................................................................5

*Westerfield v. Quizno's Franchise Co.*,
427 F. Supp. 2d 840 (E.D. Wisc. 2007)............................................................................6

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

iii
Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page5 of 19

*Zabit v. Ferretti Group, USA*, No. C 06-01252 JSW, 2006 WL 3020855 (N.D. Cal. Oct. 23, 2006) ... 12

**State Cases**

*Cochran v. McDonald*, 161 P.2d 305 (Wash. 1945) ... 12

*Copeland v. Weyerhaeuser Co.*, 509 N.Y.S.2d 227 (N.Y. App. Div. 1986) ... 12

*Ice Bowl v. Spalding Sales Corp.*, 56 Cal. App. 2d 918 (1943) ... 13

*Tardella v. RJR Nabisco, Inc.*, 576 N.Y.S.2d 965 (N.Y. App. Div. 1991) ... 13

**Statutes**

15 U.S.C. § 2310(d) (2006) ... 12

15 U.S.C. § 2310(d)(1) (2006) ... 12

15 U.S.C. § 2310(f) (2006) ... 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ... 1

**Other**

FCC, 12th Annual Report And Analysis Of Competitive Market Conditions With Respect To Commercial Mobile Services (Feb. 4, 2008) ... 8

5B Wright & Miller § 1357 ... 8

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

iv

Case No. C 07-05152 JW

DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page6 of 19

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on February 2, 2009, at 9:00 a.m. or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, San Jose Division, located in San Jose, California, Courtroom 8, before the Hon. James Ware, Defendant AT&T Mobility LLC ("ATTM") will, and hereby does, move pursuant to Rule 12 to dismiss each claim for relief asserted in Plaintiffs' Revised Consolidated Amended Class Action Complaint ("RCAC") against ATTM on the grounds that they fail to state a claim upon which relief can be granted. This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings on file in this action, and upon such other matters presented to the Court at the time of the hearing.

**RELIEF SOUGHT**

Defendant ATTM seeks dismissal of claims III, IV, V and VII in Plaintiffs' RCAC with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

DATED: October 30, 2008

Respectfully submitted,

**CROWELL & MORING LLP**

By: /s/ Daniel A. Sasse

Daniel A. Sasse
3 Park Plaza, 20th Floor
Irvine, CA 92614
Attorneys for Defendant
AT&T Mobility LLC

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

1
Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page7 of 19

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

This Motion seeks dismissal of all claims against AT&T Mobility LLC ("ATTM"). With regard to the antitrust claims, Plaintiffs have failed to properly define a relevant market. Because a proper relevant market must include all economically substitutable products, Plaintiffs' proposed market definition must be supported by plausible allegations of the absence of interchangeable products. If economically interchangeable products exist but are not included in the proposed market, then it is not a proper market. Not only have Plaintiffs failed to make the allegations necessary to support their proposed market definition, their Complaint itself undermines their proffered market by identifying interchangeable products not included in their market definition. This failure to properly allege a relevant market is fatal to Plaintiffs' antitrust claims. Plaintiffs' warranty claims against ATTM also fail as a matter of law because they do not allege that ATTM is a warrantor of the iPhone.

These two issues were not before the Court in Apple's Motion to Dismiss.[1] ATTM respectfully submits that the interests of judicial economy, as well as the parties, will be served by identifying the fatal defects in the allegations against ATTM now. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966-67 (2007) (courts should "avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence") (internal citations and quotations omitted).

---

[1] ATTM did not file or join Apple's prior motion because, as the Court is no doubt aware, filing a substantive pleading could lead Plaintiffs to argue waiver of arbitration rights. *See, e.g., Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988). Now that the potential risk of waiving arbitration rights has been obviated by the Court's ruling, ATTM is in a position to address the legal deficiencies in the antitrust claims against it, as well as the misplaced warranty claims.

2 Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page8 of 19

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

## PRELIMINARY STATEMENT

ATTM, as the Complaint alleges, is a "cell phone service provider" that provides service for a multitude of wireless phones and devices, including the iPhone. RCAC ¶ 23.[2] It operates a wireless network, consisting of FCC-licensed spectrum, towers, switches and associated equipment. *Id.* ¶ 58. Its network enables subscribers to send and receive calls, text messages, etc. from mobile telephones and devices. *Id.*

"[T]here are a number of cell phone service providers in the United States," including ATTM, Verizon, Sprint and T-Mobile. *Id.* ¶ 61. ATTM's network uses a technology called "GSM," which has been around since 1987. *Id.* ¶ 59. T-Mobile also uses GSM, while Verizon and Sprint use a different technology called "CDMA." *Id.* The Complaint alleges that the "dominant" technology in North America is CDMA – the technology used by Verizon and Sprint. *Id.*

After acknowledging that ATTM is neither a monopolist in this wireless service market, nor likely to become one, Plaintiffs' Complaint focuses on the ATTM/Apple agreement. *Id.* ¶¶ 77-86. Plaintiffs' allegations with regard to this agreement distill down to nothing more than Apple made a business decision. Apple approached "Verizon to be the iPhone exclusive service provider," *id.* ¶ 85, but in the end, selected ATTM's network. *Id.* ¶ 77.

Perhaps recognizing that they cannot attack Apple's decision to choose ATTM or the exclusive ATTM/Apple agreement directly, Plaintiffs instead stake their antitrust claim against ATTM on allegations of monopolization of an "aftermarket for iPhone voice and data services." *Id.* ¶¶ 120-121. The Complaint, however, does not allege the requisite facts to support such a narrowly-defined market. For example, Plaintiffs do not allege that the ATTM network that supports the iPhone is different from the network that supports all other mobile phones (because it is not). Nor do they allege that other networks like Verizon's are not "interchangeable economic substitutes" for ATTM's network (indeed Plaintiffs explicitly acknowledge that they are

---

[2] All references are to the Revised Amended Class Action Complaint ("RCAC") dated June 4, 2008.

3 Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page9 of 19

substitutes). In fact, Plaintiffs' primary complaint, that they want to be free to use other carriers' wireless services, demonstrates that the other carriers' services are indeed substitutes and thus, must be included in any proper relevant market or "submarket." This key issue – the absence of legally sufficient allegations explaining why the other wireless networks are not interchangeable economic substitutes for ATTM's network – is fatal to Plaintiffs' antitrust claims.

## ARGUMENT

### I. The Antitrust Claims Against ATTM Should Be Dismissed.

At the outset, the Court should be aware that very similar allegations were rejected by the Southern District of New York in *In re Wireless Telephone Services Antitrust Litigation*, 385 F. Supp. 2d 403 (S.D.N.Y. 2005). In that case, plaintiffs alleged that "locking" handsets so a consumer must utilize a single wireless service provider with a given handset amounted to illegal tying. The court held that the wireless service market was competitive, and therefore, a tying claim could not survive because none of the wireless companies had sufficient market power. *Id*. at 420.[3] The court also rejected the claim that each brand formed its own market in the wireless service industry. *Id*. at 420 ("The enormous amount of churn in this industry eviscerates the suggestion that consumers do not view these brands and the services underlying them as essentially interchangeable."). Finally, the court rejected the allegation that locking handsets is anticompetitive, as there was no evidence that it "injured a company competing in the handset market, created barriers to entry into that market, or otherwise injured competition." *Id.* at 430.

Plaintiffs' transparent attempt here to avoid the same outcome by camouflaging tying and exclusive dealing claims as a monopolization claim should not be countenanced.

---

[3] *Id*. at 417 ("The defendants compete against each other in terms of service and price, and the high churn rate is striking evidence of their respective lack of control over the market and the impediments each of them faces to any effort to control price.").

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

4
Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page10 of 19

**A. Plaintiffs Are Required – As A Matter of Law – To Allege Plausible, Non-Conclusory Allegations Of The Relevant Market.**

The Supreme Court has long recognized that a properly pled market definition is essential for ***all*** monopolization claims, and for good reason: "[w]ithout a definition of [the] market there is no way to measure [a defendant's] ability to lessen or destroy competition." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965). Indeed, the law in this Circuit on a motion to dismiss is that "[m]onopolization claims can only be evaluated with reference to properly defined geographic and product markets." *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104 (9th Cir. 1999). Therefore, "failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001).

The Ninth Circuit has made equally clear that plaintiffs must define the alleged market to include "the pool of goods or services that enjoy reasonable ***interchangeability*** of use and cross-elasticity of demand." *Tanaka*, 252 F. 3d at 1063 (internal citations omitted) (emphasis added). As the *Newcal* opinion re-affirms, "consumers do not define the boundaries of the market . . . the market must encompass . . . ***all economic substitutes*** . . . determined by the ***reasonable interchangeability*** *of use* . . . ." *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1045 (9th Cir. 2008) (citing *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962) (emphasis added)). Where a plaintiff alleges a market "that clearly does not encompass all ***interchangeable substitute products*** . . . , the relevant market is legally insufficient" and the claim should be dismissed. *UGG Holdings, Inc. v. Severn*, No. CV 04-1137-JFW, 2004 U.S. Dist. LEXIS 30646, at *8-9 (C.D. Cal. Oct. 1, 2004) (emphasis added). *See also JM Computer Servs., Inc. v. Schlumberger Techs., Inc.*, No. C 95-20349 JW, 1996 U.S. Dist. LEXIS 21885, at *13-14 (N.D. Cal. May 3, 1996) (Ware, J.) (in dismissing Section 2 claims with "conclusory" and "vague" market allegations, the Court

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

5
Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page11 of 19

noted that "[t]he product market consists of a set of goods and services that enjoy ***reasonable interchangeability*** of use") (emphasis added).[4]

After the Supreme Court's ruling in *Twombly*, courts have focused even more intensely on market definition allegations with this plausibility standard in mind. The Second Circuit recently held:

> To survive a Rule 12(b)(6) Motion to Dismiss, an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes – analysis of the ***interchangeability*** of use or the cross-elasticity of demand, and ***it must be plausible***.

*In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (internal citations omitted) (emphasis added). Similarly, in *Westerfield v. Quizno's Franchise Co.*, an aftermarket case, the court rejected as "patently absurd" the plaintiffs' allegations of a "Quick Service Toasted Sandwich Restaurant Franchise" product market because they did not include "***alternatives available***." 427 F. Supp. 2d 840, 857 (E.D. Wis. 2007) (emphasis added).[5] Indeed, the Second Circuit has held, "dismissal on the pleadings is appropriate" where a plaintiff "fail[s] even to attempt a plausible explanation as to why a market should be limited in a particular way." *Todd v. Exxon*, 275 F.3d 191, 200 (2d Cir. 2001).

**B. The Complaint Does Not Meet The Ninth Circuit Standard For Alleging A Plausible Relevant Market.**

In an attempt to sidestep the proper relevant market definition, Plaintiffs have asserted the existence of an "aftermarket" for "wireless voice and data services for the iPhone." This

---

[4] We respectfully ask the Court to consider as well Your Honor's subsequent decision in the *JM Computer Services* litigation, at No. C-95-20349 JW, 1997 U.S. Dist. LEXIS 21807 (N.D. Cal. May 20, 1997) (unpublished). That decision dismissed the Sherman Act Section 2 case because the plaintiff "fail[ed] to allege facts demonstrating that goods and services outside the defined submarkets are not substitutes or interchangeable for goods and services within the submarkets." *Id.* at *9-10. In so holding, the Court made the important distinction that "conclusory" allegations of a product's "unique characteristics" or "distinct customers" are insufficient to meet market definition pleading requirements. *Id. at* *10.

[5] *See also Jacobs v. Tempur-Pedic N. Am., Inc.*, No. 4:07-CV-02-RLV, 2007 U.S. Dist. LEXIS 91241, at *11-12 (N.D. Ga. Dec. 11, 2007) (dismissing complaint for inadequate market definition pleading, noting that "interchangeability is key" to a properly alleged relevant product market).

6 Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page12 of 19

allegation is contradicted not only by the judicially noticeable reality of the wireless marketplace, but by other allegations in the Complaint itself. Nor does invoking the label "aftermarket" or "submarket" relieve a plaintiff from the legal requirement to properly plead a relevant market.[6]

On the critical issue of interchangeability, Plaintiffs' entire allegation in support of this is contained in three words: "no acceptable substitutes." RCAC ¶ 120. This conclusory assertion is nowhere explained or supported with the kind of specific allegations required by *Twombly* and the Ninth Circuit. Plaintiffs fail to offer any plausible explanation for so limiting the proposed market:

- Plaintiffs do <u>not</u> allege why other wireless networks and providers are not reasonable substitutes;
- Plaintiffs do <u>not</u> allege that ATTM's network was created for the iPhone;
- Plaintiffs do <u>not</u> allege that the wireless voice and data services ATTM provides for the iPhone are in any way different from the wireless voice and data services ATTM provides for other devices.

A complaint that does not address why other products would not be reasonable substitutes for the product in question is legally insufficient. *See, e.g.*, *UGG Holdings*, 2004 U.S. Dist. LEXIS 30646 at *12 (rejecting the plaintiff's "sheepskin, fleece-lined boot market" because the pleadings contained no claims as to why other types of boots could not be reasonably substituted); *Tanaka*, 252 F.3d at 1063-64 (rejecting a "UCLA women's soccer program" market because the program's very existence "is predicated upon the existence of a field of competition composed of other similar programs"); *Big Bear Lodging*, 182 F.3d at 1105 (affirming dismissal because plaintiffs failed to allege "that there are no other goods or services that are reasonably interchangeable with lodging accommodations or ski packages").

The legal insufficiency of Plaintiffs' allegations regarding the relevant market is exacerbated by other allegations in this Complaint that contradict their claim of an ATTM iPhone-

---

[6] *AD/SAT v. Associated Press*, 920 F. Supp. 1287, 1296 n. 6 (S.D.N.Y 1996) ("The required analysis does not change whether a particular product market is deemed a market or a submarket.").

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

7
Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page13 of 19

only "submarket." In fact, the entire basis for Plaintiffs' Complaint – that Plaintiffs would like to use other wireless service providers with their iPhones – is directly counter to Plaintiffs' alleged ATTM-only service "submarket." In addition, Plaintiffs allege that Apple had and considered alternative service providers for the iPhone: "Apple originally approached CDMA carrier Verizon to be the iPhone exclusive service provider." RCAC ¶ 85.

Plaintiffs also incorporate by reference admissions that the actual wireless service relevant market is highly competitive:

- "It's guerrilla warfare . . . They're battling for every customer."
- "Today's market is not about finding new opportunities . . . It's about stealing somebody else's customers."
- "The AT&T and Verizon Wireless rivalry is particularly fierce."
- "Figuring out ways to entice consumers is a constant concern for carriers . . .Given the crush of choices consumers have, 'It becomes increasingly important . . . to give customers a reason to switch to us.'"

RCAC ¶ 86 (incorporating by reference *USA Today* article).[7] *See also* RCAC ¶¶ 58-64.[8] These allegations further contradict Plaintiffs' assertion that ATTM's service has "no acceptable substitutes."

---

[7] *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citing 5B Wright & Miller § 1357).

[8] This picture is confirmed by the judicially noticeable report of the Federal Communications Commission, which concluded that, far from a monopoly, the wireless industry is subject to "effective competition." FCC, 12th Annual Report And Analysis Of Competitive Market Conditions With Respect To Commercial Mobile Services (Feb. 4, 2008) ¶ 1-2 ("there is effective competition . . . no single competitor has a dominant share of the market"). According to the FCC, "[m]ore than 95 percent of the U.S. population lives in areas with at least three mobile telephone operators competing to offer service, and more than half of the population lives in areas with at least five competing operators." *Id.* ¶ 2. *See also supra* note 3 and accompanying text (citing *In re Wireless Tel. Servs. Antitrust Litig.*).

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

8 Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

In such situations, where the Complaint itself undermines a critical element of the case, courts have routinely rejected the conclusory allegations.[9] And courts have unambiguously stated that conclusory market definition allegations as those here – wholly devoid of any "plausible explanation as to why a market should be limited in a particular way" – are insufficient as a matter of law. *Todd,* 275 F.3d at 200.

**C. *Newcal* Is Not To The Contrary.**

Plaintiffs argued previously that their allegations fit within the *Newcal/Kodak*[10] framework, without addressing the issue of interchangeability. Neither *Kodak* nor *Newcal,* however, relieve Plaintiffs of their obligation to plead plausible, non-contradictory allegations regarding the relevant market, supported by specific allegations of fact. *Newcal* itself explicitly cites Supreme Court and Ninth Circuit law holding that "the market must encompass . . . all economic substitutes" and identify "reasonable interchangeability." 513 F.3d at 1045.

Moreover, it was clear in *Kodak* that spare parts and service for Kodak copiers were unique to Kodak copiers, *i.e.,* could not be used in other copiers – unlike the wireless service here. Likewise, in *Newcal* the court relied on allegations that service contracts were specific to the copiers leased by the defendant – again, unlike wireless service. To meet that standard, Plaintiffs here would have to allege with specificity and plausibility that ATTM's voice and data network supporting the iPhone was created for and exists only because of the iPhone, and explain why other networks are not interchangeable with ATTM's network. That they clearly have not done and cannot do.

---

[9] *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-1206 (11th Cir. 2007) ("duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations"); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint."); *Perlman v. Zell*, 938 F. Supp. 1327, 1347 (N.D. Ill. 1996) (citing *Thomas v. Farley*, 31 F.3d 557, 558 (7th Cir. 1994)) ("In the event of a conflict, specific factual allegations control over general allegations that state legal elements, and if a plaintiff pleads particulars that show he has no claim, then he has pleaded himself out of court.").

[10] *Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. 451 (1992).

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page15 of 19

**D. Allegations Of An Exclusive Contract Do Not Satisfy The Obligation To Properly Plead The Relevant Market (Or Aftermarket) Definition.**

Plaintiffs presumably assert that there are no substitutes for ATTM's network because Apple selected ATTM as the only provider of voice and data services for the iPhone. RCAC ¶ 77. But neither invoking the term "aftermarket" nor alleging an exclusive agreement excuses Plaintiffs' pleading failures.

Exclusive contracts occur in markets that already exist; they do not create a market or even a *Kodak*-style aftermarket. The D.C. Circuit held in *Microsoft* that:

> ***[I]t is clear that in all [exclusive dealing] cases the plaintiff must both define the relevant market and prove the degree of foreclosure*** . . . . *See, e.g.*, *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997) ("There are, however, well-recognized economic benefits to exclusive dealing arrangements, including the enhancement of interbrand competition.") . . . Permitting an antitrust action to proceed any time a firm enters into an exclusive deal would both discourage a presumptively legitimate business practice and encourage costly antitrust actions.

*United States v. Microsoft*, 253 F.3d 34, 69 (D.C. Cir. 2001) (emphasis added). As then-Judge Breyer recognized in *Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 236 (1st Cir. 1983), this is so because, "virtually *every* contract to buy 'forecloses' or 'excludes' alternative sellers from *some* portion of the market, namely the portion consisting of what was bought." *See also Collins v. Assoc. Pathologists, Ltd.*, 844 F.2d 473, 478 (7th Cir. 1988) (an exclusive contract can violate the Sherman Act only based on "the effect that contract has upon competition in the relevant market place . . . Thus we must determine the relevant market").

Moreover, in analogous circumstances, courts have rejected attempts to use conduct like the exclusive contract here, as the basis to define the relevant market. In *Discon v. NYNEX Corp.*, the court held that "to define the relevant product market as 'that group of products over which defendants' anticompetitive conduct exercises control, . . . as an analytical matter, reads the market definition step' out of the Sherman Act." 86 F. Supp. 2d 154, 161 (W.D.N.Y. 2000) (quoting *United States v. AT&T Co.*, 524 F. Supp. 1336, 1379 (D.D.C. 1981)). As the court in *United States v. AT&T* explained, this is because "such a showing does not establish the market as a framework within which the consequences of defendants' conduct may be evaluated; rather it

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

10
Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page16 of 19

demonstrates only the consequences of defendants' conduct." 524 F. Supp. at 1378. The court in *Discon* expanded on why the existence of an exclusive agreement cannot define the market:

> The relevant product market must encompass all the sellers of the particular product at issue, as well as reasonable substitutes, regardless of who the sellers of those competing offerings currently have as their customers. This is so because as long as what any particular customer is buying is also being sold to other buyers, such a customer has a competitive choice among all the sellers of that product or service, including the ones selling to other buyers. All of those choices – whether a particular buyer decides to consider them, or instead to ignore all options but one – must be included in the relevant market.

86 F. Supp. 2d at 161. Because by Plaintiffs' own admission here, Apple "had competitive choice" when it decided which voice and data services to select, "[a]ll of those choices . . . must be included in the relevant market." *Id.* If an exclusive agreement were sufficient to define a market, every exclusive agreement would render every seller an instant monopolist, with the exclusive contract foreclosing 100% of the so defined "relevant market." *See United States v. AT&T*, 524 F. Supp. at 1378 ("Under the government's theory, whenever anticompetitive conduct is alleged, that same allegation, if proved, would demonstrate ipso facto the maintenance of monopoly power over the products the monopolist sold as a result of its unlawful conduct."). Such an outcome is not only nonsensical, it is not supported by economics or law.[11]

Because Plaintiffs' allegations regarding the exclusive Apple/ATTM contract cannot define the relevant market, they must be dismissed.

---

[11] Courts have repeatedly held that a contract cannot define the relevant product market. *See, e.g.*, *Chawla v. Shell Oil Co.*, 75 F. Supp. 2d 626, 659 (S.D. Tex. 1999) (rejecting plaintiffs' antitrust claim because the proposed product market definition was "a creation of contractual provisions, not market realities"); *United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*, 89 F.3d 233, 236-37 (5th Cir. 1996) ("Economic power derived from contractual agreements . . . 'has nothing to do with market power, ultimate consumers' welfare, or antitrust.'") (internal citations omitted); *Lady Deborah's, Inc. v. VT Griffin Servs., Inc.*, No. CV207-079, 2007 U.S. Dist. LEXIS 95138, at *27-28 (S.D. Ga. Oct. 26, 2007) (dismissing Section 2 claim, in part, because a defendant's alleged "monopoly" based on a contract "does not establish an antitrust claim. At best, it suggests some sort of contractual dispute.").

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

11 Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page17 of 19

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

## II. Plaintiffs' Warranty Claim Against ATTM Should Be Dismissed.

Plaintiffs do not allege that ATTM made any written warranties or breached an implied warranty, so the Magnuson-Moss Warranty Act ("MMWA") claim against ATTM fails as a matter of law. Under the MMWA, a consumer can recover when a supplier, warrantor, or service contractor (1) fails to comply with any obligation under a written warranty, implied warranty, or service contract arising under state law; or (2) fails to comply with any obligation under the MMWA. 15 U.S.C. § 2310(d) (2006); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008). Neither obtains here.

### A. Plaintiffs Fail To Allege That ATTM Made A Written Or Express Warranty.

Tellingly absent from the Complaint is any allegation that ATTM made an express warranty for the iPhone (because it did not).[12] While the MMWA provides consumers with a cause of action for violations of the statute, recovery is only permitted against the warrantor who made the written warranty. 15 U.S.C. § 2310(d)(1), (f) (2006) ("any rights arising [under the warranty] may be enforced under [the MMWA] only against such warrantor and no other person"). Where, as here, a complaint fails to allege the defendant made or adopted the written warranty, that claim should be dismissed. *See, e.g.*, *Zabit v. Ferretti Group, USA*, No. C 06-01252 JSW, 2006 WL 3020855, at *4-5 (N.D. Cal. Oct. 23, 2006) (granting motion to dismiss MMWA claim for failure to allege sufficient facts to show that defendant issued written warranty); *Copeland v. Weyerhaeuser Co.*, 509 N.Y.S.2d 227, 228 (N.Y. App. Div. 1986) ("proposed cause of action for breach of express warranty is insufficient because of failure to set forth the terms of the warranty upon which plaintiffs rely"); *Cochran v. McDonald*, 161 P.2d 305, 307 (Wash. 1945) ("a vendor of goods is not liable upon the express warranty of the manufacturer unless in manking [sic] a sale he adopts the warranty as his own"). ATTM cannot be held liable for a written warranty that it did not make.

---

[12] For example, in paragraph 160, Plaintiffs allege that ATTM, along with Apple, "violated the iPhone warranty" but never allege that ATTM made or adopted a written warranty.

12
Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

**B. Plaintiffs Fail To Allege ATTM Breached An Implied Warranty.**

Nor are there any allegations to support a theory that ATTM breached an implied warranty. To survive a motion to dismiss claiming breach of an implied warranty under the MMWA, Plaintiffs must allege, among other things, that the iPhones were either not merchantable or not fit for a particular use at the time of sale. *Ice Bowl v. Spalding Sales Corp.*, 56 Cal. App. 2d 918, 922-23 (1943) ("it is essential for a buyer to allege that the goods were unmerchantable"); *Tardella v. RJR Nabisco, Inc.*, 576 N.Y.S.2d 965, 966 (N.Y. App. Div. 1991) ("consumer's burden to show that . . . the defect complained of existed at the time the product left the manufacturer or entity in the line of distribution being sued"). Nowhere do Plaintiffs allege that ATTM sold them iPhones that were either not merchantable or not fit for a particular purpose at the time of sale, so Plaintiffs cannot claim that ATTM violated an implied warranty.

Therefore, Count VII against ATTM should be dismissed.

**CONCLUSION**

As the Supreme Court explained, the "practical significance" of enhanced scrutiny at the pleading stage is to protect against "discovery abuse" by plaintiffs. *Twombly*, 127 S. Ct. at 1966-67. To that end "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)). Thus, it is only when courts require specific sustainable allegations "that we can hope to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence.'" *Id.* (quoting *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). That is precisely the situation here, and thus the Complaint should be dismissed as to ATTM.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

Case5:07-cv-05152-JW Document147 Filed10/30/08 Page19 of 19

DATED: October 30, 2008

Respectfully submitted,

**CROWELL & MORING LLP**

By: /s/ Daniel A. Sasse

Daniel A. Sasse
3 Park Plaza, 20th Floor
Irvine, CA 92614
Attorneys for Defendant
AT&T Mobility LLC

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

14
Case No. C 07-05152 JW
DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, IV, V AND VII PURSUANT TO RULE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES