1  Daniel A. Sasse, Esq. (CA Bar No. 236234)
   CROWELL & MORING LLP
2  3 Park Plaza, 20th Floor
   Irvine, CA 92614-8505
3  Telephone:    (949) 263-8400
   Facsimile:    (949) 263-8414
4  Email:        dsasse@crowell.com

5  Wm. Randolph Smith, Esq. (*pro hac vice*)
   CROWELL & MORING LLP
6  1001 Pennsylvania Ave. N.W.
   Washington, D.C.  20004
7  Telephone:    (202) 624-2500
   Facsimile:    (202) 628-5116
8  Email:        wrsmith@crowell.com

9  Attorneys for Defendant
   AT&T Mobility LLC

10

11                  **UNITED STATES DISTRICT COURT**

12                **NORTHERN DISTRICT OF CALIFORNIA**

13                      **SAN JOSE DIVISION**

14  In Re Apple & AT&TM              Case No. C 07-5152 JW
    Antitrust Litigation.
15                                   **DEFENDANT AT&T MOBILITY LLC'S**
                                     **NOTICE OF MOTION AND MOTION TO**
16                                   **STRIKE OR DISMISS THE CLASS**
                                     **ALLEGATIONS; SUPPORTING**
17                                   **MEMORANDUM OF POINTS AND**
                                     **AUTHORITIES**

18

19                                   Date:        February 2, 2009
                                     Time:        9:00 a.m.
20                                   Crtrm.:      8, 4th Floor
                                     Judge:       Honorable James Ware
21

22

23

24

25

26

27

28
                                               Case No. C 07-5152 JW
    DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
       CLASS ALLEGATIONS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

*Crowell & Moring*
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

1

# <u>TABLE OF CONTENTS</u>

2

**Page**

3

4  NOTICE OF MOTION AND MOTION.................................................................................1

5  RELIEF SOUGHT ...........................................................................................................1

6  MEMORANDUM OF POINTS AND AUTHORITIES...........................................................2

7  INTRODUCTION.............................................................................................................2

8  PLAINTIFFS' ALLEGATIONS ........................................................................................3

9  ARGUMENT ...................................................................................................................6

10      Plaintiffs' Own Allegations Demonstrate That Individual Issues Predominate,
        Justifying The Striking Or Dismissal Of The Class Allegations...........................6

11

12          A.    Proving Plaintiffs' Market Definition/Monopoly Power Allegations
                   Requires An Individual Assessment.............................................................8

13          B.    Proving Impact And Damages Also Requires A Consumer-By-
14                 Consumer Examination.................................................................................11

15          C.    No Amendment Or Discovery Can Cure The Patent Deficiencies Of
                   Plaintiffs' Purported Class. .........................................................................15

16  CONCLUSION ................................................................................................................16

17

18

19

20

21

22

23

24

25

26

27

28

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

crowell moring

Case No. C 07-5152 JW

DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Baum v. Great W. Cities, Inc.*,
703 F.2d 1197 (10th Cir. 1983)................................................................................7

*Bell Atl. Corp. v. AT&T Corp.*,
339 F.3d 294, 307-08 (5th Cir. 2003).............................................................12, 14

*Blades v. Monsanto Co.*,
400 F.3d 562 (8th Cir. 2005)................................................................................11

*Burkhalter Travel Agency v. MacFarms Int'l*,
141 F.R.D. 144 (N.D. Cal. 1991) ..........................................................................11

*Chin v. Chrysler Corp.*,
182 F.R.D. 448 (D.N.J. 1998) .......................................................................10, 14

*Cole v. Gen. Motors Corp.*,
484 F.3d 717 (5th Cir. 2007)................................................................................10

*Freeland v. AT&T Corp.*,
238 F.R.D. 130 (S.D.N.Y. 2006).............................................................................12

*General Tel. Co. v. Falcon*,
457 U.S. 147 (1982)................................................................................................2

*Gonzalez v. Proctor & Gamble Co.*,
247 F.R.D. 616 (S.D. Cal. 2007) ...........................................................................10

*In Re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
174 F.R.D. 332 (D.N.J. 1997) ...............................................................................11

*In Re Ford Motor Co. Vehicle Paint Litig.*,
182 F.R.D. 214 (E.D. La. 1998) ...........................................................................10

*In Re Methionine Antitrust Litig.*,
204 F.R.D. 161 (N.D. Cal. 2001) ....................................................................11, 14

*In Re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
211 F.R.D. 435 (W.D. Wash. 2002) ........................................................................7

*John v. Nat'l Sec. Fire & Cas. Co.*,
501 F.3d 443 (5th Cir. 2007).............................................................................2, 7

*Kamm v. Cal. City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975).................................................................................7

*Little Caesar Enters., Inc. v. Smith*,
895 F. Supp. 884 (E.D. Mich. 1995) .......................................................................8

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

crowell moring

Case No. 07-CV-05152-JW
DEFENDANT AT&T MOBILITY'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

*Mantolete v. Bolger*,
    767 F.2d 1416 (9th Cir. 1985).................................................................................2, 7

*Martin v. Home Depot*,
    225 F.R.D. 198 (W.D. Tex. 2004)...............................................................................8

*MGIC Indem. Corp. v. Weisman*,
    803 F.2d 500 (9th Cir. 1986)......................................................................................6

*Newcal Indus., Inc. v. IKON Office Solution*,
    513 F.3d 1038 (9th Cir. 2008)................................................................................5, 6

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*,
    215 F.R.D. 523, 531 (E.D. Tex. 2003) ......................................................................14

*Poulos v. Caesars World, Inc.*,
    379 F.3d 654 (9th Cir. 2004).....................................................................................9

*Robinson v. Texas Auto. Dealers Ass'n*,
    387 F.3d 416 (5th Cir. 2004)....................................................................................11

*Ross-Randolph v. Allstate Ins.*,
    No. DKC 99-3344, 2001 U.S. Dist. LEXIS 25645 (D. Md. May 11, 2001) ......................7

*Sanneman v. Chrysler Corp.*,
    191 F.R.D. 441 (E.D. Pa. 2000) ...............................................................................14

*Strange v. Norfolk & W. Ry. Co.*,
    No. 85-1929, 1987 WL 36160 (4th Cir. Jan. 12, 1987) .................................................7

*Stubbs v. McDonald's Corp.*,
    224 F.R.D. 668 (D. Kan. 2004) ..................................................................................7

*Thompson v. Merck & Co.*,
    No. 2:01cv1004, 2004 U.S. Dist. LEXIS 540 (E.D. Pa. Jan. 6, 2004) ...........................7

*Thorogood v. Sears, Roebuck and Co.*,
    No. 08-1590, 2008 WL 4709500 (7th Cir. Oct. 28, 2008) .............................................9

**Statutes**

15 U.S.C. § 15 (2006)....................................................................................................11

15 U.S.C. § 2301 (2006)................................................................................................15

**Rules**

Fed. R. Civ. P. 12 ..........................................................................................................1

Fed. R. Civ. P. 23 .......................................................................................................1, 7

Fed. R. Civ. P. 23(b)(3).................................................................................................9

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

crowell moring

DEFENDANT AT&T MOBILITY'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Fed. R. Civ. P. 23(c)..................................................................................................7

Fed. R. Civ. P. 23(d)(1)(D)........................................................................................7

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

Case No. 07-CV-05152-JW

DEFENDANT AT&T MOBILITY'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1

**NOTICE OF MOTION AND MOTION**

2   PLEASE TAKE NOTICE THAT on February 2, 2009, at 9:00 am or as soon thereafter as

3   the matter may be heard, in the United States District Court, Northern District of California, San

4   Jose Division, located in San Jose, California, Courtroom 8, before the Hon. James Ware,

5   Defendant AT&T Mobility LLC ("ATTM") will, and hereby does, move under Rule 12 to strike

6   or dismiss the class allegations in Plaintiffs' Revised Consolidated Amended Class Action

7   Complaint ("RCAC") on the ground that those allegations are facially insufficient to satisfy Rule

8   23 of the Federal Rules of Civil Procedure.  This motion is based on the Notice of Motion and

9   Motion, the accompanying Memorandum of Points and Authorities, the pleadings on file in this

10   action, and upon such other matters presented to the Court at the time of the hearing.

11

**RELIEF SOUGHT**

12   Defendant ATTM seeks the striking or dismissal of Plaintiffs' class allegations.

13

14   DATED:  October 30, 2008            Respectfully submitted,

15                                       **CROWELL & MORING LLP**

16

17                                       By:   /s/ Daniel A. Sasse
                                              Daniel A. Sasse
18                                            3 Park Plaza, 20th Floor
                                              Irvine, CA 92614
19                                            Attorneys for Defendant
                                              AT&T Mobility LLC

20

21

22

23

24

25

26

27

28

DEFENDANT AT&T MOBILITY'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs admit – and in fact trumpet – the fact that their claims against ATTM turn on tests of individual knowledge, reliance, consent, preferences and behavior.  The claims require an understanding of each consumer's state of mind – what he or she knew, when he or she knew it, and how that affected his or her purchasing decision – the very hallmarks of individualized inquiry that have led courts to routinely reject class certification in cases involving theories of fraud and misrepresentation.  "Where it is facially apparent from the pleadings that there is no [viable] class, a district court may dismiss the class allegation on the pleadings."  *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *see also General Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) ("[s]ometimes the issues are plain enough from the pleadings" to show that a class should not be certified); *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (affirming dismissal of class before discovery).  Plaintiffs' allegations, as reaffirmed in their briefing and this Court's Order, demonstrate that this is such a case.

Plaintiffs argued in response to Apple's Motion to Dismiss, and this Court accepted, that "ultimately, the dispositive issue is whether Plaintiffs '**knowingly** placed [Defendants] in a monopoly position.'"  Order at 18 (emphasis added).  That is not only a "factual dispute," *id.*, but one that invokes the very essence of individualized inquiry and therefore precludes class certification.  Predicated on assertions of inadequate disclosure, Plaintiffs' class allegations of supposedly "common issues" underscore that each consumer's personal knowledge and reliance is not only relevant, but essential to prove their claims – and that the issues are anything but common.

The proof of impact and damages is also dependent on facts that are highly individualized: *e.g.*, whether each class member traveled internationally and incurred roaming charges for "downloading emails" (RCAC ¶ 36), or to "surf the Internet" (*id.* ¶ 38), whether he or she tried to unlock their phone by replacing the SIM card (*id.* ¶ 36), whether he or she downloaded Version 1.1.1 and had his or her phone damaged (*id.* ¶ 47), whether he or she wanted to change wireless carriers to T-Mobile (*id.* ¶ 48), whether he or she was forced to buy "a third-party warranty" (*id.*

3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
(949) 263-8400

crowell moring

¶ 50), whether he or she paid a "restocking fee" (*id.* ¶ 57), whether his or her warranty was denied, and so on.  Moreover, individualized proof bordering on speculation would be essential to establish whether each class member would renew the contract with ATTM in the future when the initial two-year term expires.

It is hardly surprising that no class is viable in this case.  In fact, it appears that no consumer class has ever been certified in an aftermarket case alleging a *Kodak*-style lock-in theory, and for good reason.  Claims of actionable lock-in inherently depend on individual knowledge, reliance, and intent – factors that cannot be demonstrated by common proof.

On the face of the allegations here, Plaintiffs' claims will require individualized inquiries that necessarily predominate over any common issues, precluding certification under Rule 23(b). And no amount of re-pleading or discovery will change that.  Thus, the Court should strike or dismiss the class allegations on the pleadings.

## PLAINTIFFS' ALLEGATIONS

Plaintiffs are nine individuals who "purchased one or more iPhones" and "executed a two-year contract with ATTM for provision of iPhone wireless voice and data services."  RCAC ¶¶ 13-21, 31.  They seek to represent a class of what they estimate to be approximately 11.4 million people who purchased an iPhone in the United States.  *Id.* ¶¶ 108, 111.  But the allegations on the face of the Complaint make clear that their claims depend on knowledge and reliance, and that there are significant differences among iPhone purchasers.

As to ATTM, Plaintiffs allege monopolization of a supposed "voice and data services aftermarket," and breach of warranty.  In summarizing their claims, Plaintiffs begin by emphasizing how central the knowledge issue is:

> In pursuit and furtherance of their unlawful anticompetitive activities, Apple and ATTM … (a) **failed to disclose to consumers** that Apple and ATTM had entered into a five-year exclusivity contract …; (b) **failed to disclose to consumers** that the iPhone's operating software contained codes that "locked" the iPhones to only accept ATTM Subscriber Identity Modules ("SIM cards") …; (c) **failed to disclose to consumers** that the "unlock code" that would enable consumers to use a service other than ATTM would not be provided to iPhone owners …; (d) **failed to disclose to consumers** that Apple would seek to prohibit iPhone owners from downloading programs or applications other than those "approved"

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

crowell moring

3

by, or which generated revenue for, Apple …; and (e) **failed to disclose to consumers** that iPhone owners would incur excessive and unconscionable roaming fees ….

*Id* ¶ 7 (emphasis added).

Plaintiffs then define their theory of ATTM's alleged antitrust violation in the same way:

(i) agreeing without Plaintiffs' **knowledge or consent** to make ATTM the exclusive provider of voice and data services for the iPhone for five years, contrary to Plaintiffs' reasonable **expectations** that they (a) would be under contract with ATTM for only two years, and (b) could switch at any time to another carrier after paying the $175 early termination fee; (ii) discouraging iPhone customers from unlocking their SIM cards through **misinformation campaigns**; (iii) programming Version 1.1.1 of the iPhone operating system in a way that disabled all SIM card unlocks and/or destroyed the iPhones of users that unlocked their SIM cards; and (iv) refusing to honor the iPhone warranty for users who unlocked their SIM cards.

*Id* ¶¶ 135, 140, 146 (emphasis added).

The Complaint alleges that the putative class members were "injured in fact" by anticompetitive conduct "because they have (a) been deprived of alternatives for voice and data services domestically, (b) been forced to pay higher prices for roaming charges while traveling internationally, and/or (c) had their iPhones destroyed." *Id*. ¶¶ 131, 137, 143, 149. The individual stories of the named plaintiffs illustrate the variety of experiences involved:

- Plaintiff Holman, while traveling to Finland, "a country not covered by his 'worldwide' data roaming plan," incurred $381 in roaming fees. "Thereafter, [he] employed a SIM card 'unlocking solution'" and "[o]n a later trip to Amsterdam, [he] used a pre-paid T-Mobile SIM card … for a cost of approximately $20." "Holman fears losing the ability to change SIM cards when he travels, or to switch to a competing domestic voice and data service provider, either before or after his two-year ATTM service plan expires." *Id*. ¶ 36.

- Plaintiff Kliegerman was charged "$2000 in international data roaming fees for using his iPhone while in Mexico," $1500 of which ATTM credited back to his account. *Id*. ¶ 38. "[H]e has desired to purchase a SIM card from a foreign wireless carrier" and "would like to have the option of switching to a competing

3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
(949) 263-8400

crowell moring

4

Case No. 07-CV-05152-JW
DEFENDANT AT&T MOBILITY'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

domestic voice and data service provider." *Id.* ¶¶ 39-44.  He "downloaded Apple's Version 1.1.1 operating system on two of his iPhones" and "has declined to download Third Party Apps or to unlock his SIM cards." *Id.* ¶ 45.

- Plaintiff Rivello "would like to use Third Party Apps on her iPhone" and "would also like to have the ability to unlock her SIM card for international travel and to switch to a competing domestic voice and data service provider." *Id.* ¶ 46.

- Plaintiff Smith "wants to transfer to a wireless carrier other than ATTM.  His iPhone was disabled, malfunctioned, and/or his Third Party Apps were erased after downloading iPhone update Version 1.1.1." *Id.* ¶ 47.

- Plaintiff Lee "wanted to use a T-Mobile voice and data plan" and unlocked his iPhone.  *Id.* ¶ 48.

- Plaintiff Macasaddu's iPhone "was disabled, malfunctioned, and/or his Third Party Apps were erased after downloading iPhone update Version 1.1.1." *Id.* ¶ 49. He "incurred extraordinary roaming charges while traveling abroad with his iPhone." *Id.* ¶ 51.

- Plaintiff Morikawa incurred roaming fees on the iPhone that he purchased for his son in Canada.  *Id.* ¶¶ 52-53.

- Plaintiff Scotti "purchased a third-party warranty at extra cost for [his] iPhone because of Apple's announcement that it would not honor warranties of unlocked iPhones." *Id.* ¶ 54.

- Plaintiff Sesso "installed Third Party Apps on his iPhone" and his "iPhone was bricked, that is, disabled, and his Third Party Apps were erased after he downloaded iPhone update Version 1.1.1." *Id.* ¶ 56.

In response to Apple's motion to dismiss, Plaintiffs argued under *Newcal Industries, Inc. v. IKON Office Solution*, 513 F.3d 1038 (9th Cir. 2008), that Defendants could only "refute the proposed Voice and Data Service Aftermarket" with evidence that putative class members "'***knowingly contracted***' to use only ATTM for five years when they bought their iPhones."  Plfs.' Br. at 1.  Plaintiffs argued that Apple could not meet that burden as a matter of law because "(i) it

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

crowell moring

1    never disclosed its five-year deal with ATTM to iPhone customers, and (ii) those customers were

2    only presented with and  signed two-year ATTM service contracts that they were **led to believe**

3    could be terminated at any time." Plfs.' Br. at 1 (emphasis added).  They contended that

4    "Defendants' ***'fraud and deceit' in failing to disclose*** their intent to monopolize the aftermarkets,

5    worked to 'prevent consumers from ***realizing*** that their choice in the initial market will impact

6    their freedom to shop in the aftermarket.'" *Id.* at 14 (emphasis added).

7         The briefing makes clear that Plaintiffs' case turns on the adequacy of disclosure.  While

8    Plaintiffs acknowledged that disclosures were made on the iPhone box, which states:  "Service

9    plan with AT&T required for cellular network capabilities on expiration of initial new two-year

10   agreement," they argued about the font size and other issues regarding adequacy of notice.  *Id.* at

11   4, 15.  Similarly, Plaintiffs acknowledged press reports about a longer-term exclusive deal, but

12   argued that it "was unlikely to have been read or even remembered but by a few iPhone buyers."

13   *Id.* at 15.

14        In denying Apple's motion, the Court recognized the central role of knowledge and intent:

15   "There can be no legally cognizable antitrust claim … where there is a claim of 'market power

16   that arises solely from contractual rights that consumers knowingly and voluntarily give to the

17   defendant.'" Order at 17 (quoting *Newcal*).  Thus, the Court concluded that "[u]ltimately, ***the***

18   ***dispositive issue is whether Plaintiffs 'knowingly placed*** [Defendants] in a monopoly position' in

19   the alleged voice and data services aftermarket." *Id.* at 18 (quoting *Newcal*) (emphasis added).[1]

20                                  **ARGUMENT**

21        **Plaintiffs' Own Allegations Demonstrate That Individual Issues Predominate,**
     **Justifying The Striking Or Dismissal Of The Class Allegations.**
22

23        Plaintiffs' proposed class is flawed from its inception.  The Complaint is grounded in (1) a

24   theory of monopolization that depends on a test of knowledge, consent, and intent, and (2) theories

25

26   _____

27   [1]   In considering this motion, the Court may take judicial notice of Plaintiffs' brief in response
     to, and the Court's Order on, Apple's previous motion to dismiss in this matter.  *MGIC Indem.*
     *Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).
28

3 Park Plaza, 20ᵗʰFloor
Irvine, CA  92614-8505
(949) 263-8400

crowell moring

of impact and damages that necessarily vary from consumer to consumer and similarly rely on knowledge, intent, personal preference, and individual behavior.  Given the inherent – and patent – defects of Plaintiffs' alleged class, it is appropriate, and "practicable," to consider and resolve this critical issue on the pleadings.  Fed. R. Civ. P. 23(c) (directing that class issues be resolved at "an early practicable time").

Time and again, "[f]ederal courts have used motions to strike to test the viability of a class at the earliest pleading stage of the litigation."  *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004).  Where, as here, the pleadings themselves make it apparent that the class will not be viable, courts act well within their discretion to dispense with discovery.  *See, e.g.*, *Mantolete*, 767 F.2d at 1424; *John*, 501 F.3d at 445 (upholding dismissal of class allegations on the pleadings); *Baum v. Great W. Cities, Inc.*, 703 F.2d 1197, 1210 (10th Cir. 1983) (affirming district court's order striking class allegations because there were "substantial doubts as to whether plaintiffs [would] be able to satisfy [Rule 23 requirements] even after extensive discovery on the class action issue"); *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 207-12 (9th Cir. 1975) (affirming district court's order striking class allegations "on the ground that the alleged class action is not the superior method for resolving the controversy"); *Strange v. Norfolk & W. Ry. Co.*, No. 85-1929, 1987 WL 36160 at *3 (4th Cir. Jan. 12, 1987) (affirming dismissal of class allegations on motion acknowledging that "[t]he court was not required to wait until [plaintiffs] sought class certification").[2]  Consistent with this deep body of case law and Rule 23, Plaintiffs' class allegations should be stricken or dismissed.  Fed. R. Civ. P. 23(d)(1)(D).

---

[2]   *See also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 211 F.R.D. 435, 437 (W.D. Wash. 2002) (striking class allegations where claims called for individual proof on causation issues and plaintiffs "failed to demonstrate that discovery would be likely to yield persuasive information substantiating the class allegations"); *Thompson v. Merck & Co.*, No. 2:01cv1004, 2004 U.S. Dist. LEXIS 540, at *8-9 (E.D. Pa. Jan. 6, 2004) (striking class allegations where "[n]o amount of additional class discovery [would] alter" the conclusion that plaintiff's claims could not meet Rule 23 requirements); *Ross-Randolph v. Allstate Ins.*, No. DKC 99-3344, 2001 U.S. Dist. LEXIS 25645, at *14, *32 (D. Md. May 11, 2001) (striking class allegations and refusing to permit class discovery noting that "[i]n determining whether a party complies with Rule 23 court does not have to wait until class certification is sought").

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
(949) 263-8400

7                              Case No. 07-CV-05152-JW

DEFENDANT AT&T MOBILITY'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1    A.    **Proving Plaintiffs' Market Definition/Monopoly Power Allegations Requires An Individual Assessment.**

2

3    As this Court recognized, the "dispositive issue [regarding plaintiffs' monopolization

4    claims] is whether Plaintiffs "'***knowingly*** placed [Defendants] in a monopoly position' in the

5    alleged voice and data services aftermarket." Order at 18 (emphasis added). As Plaintiffs

6    themselves explain,

7
> Under *Newcal*, the relevant inquiry for ascertaining if a proper
8    > antitrust aftermarket has been alleged is (i) "whether a consumer's
> selection of a particular brand in the competitive market is the
9    > functional equivalent of a contractual commitment giving that brand
> an **agreed-upon** right to monopolize its consumers in an
10   > "aftermarket," and (ii) "whether consumers entered into such
> 'contracts' **knowing** that they were agreeing to such a
11   > commitment."

12   Plfs.' Br. at 11 (emphasis added). "Whether consumers 'knowingly contracted' and committed to

13   buy aftermarket services and products only from the branded manufacturer," as Plaintiffs readily

14   concede and the Court acknowledged, "is, of course, an inherently factual inquiry." Plfs.' Br. at

15   11; Order at 18. It is a factual inquiry into what each putative class member actually knew and

16   when, how that knowledge or lack thereof affected his or her purchasing decisions, and what each

17   actually intended when signing the ATTM service agreement.

18   Therefore, the Court would be required to determine what was in each consumer's mind, a

19   factual inquiry that is facially inconsistent with common proof. Establishing knowledge and intent

20   invokes the very essence of individualized factual inquiry – one that precludes class certification.

21   *See, e.g., Martin v. Home Depot*, 225 F.R.D. 198, 202 (W.D. Tex. 2004) ("Claims like these,

22   which turn on a Plaintiff's individual knowledge . . . are not appropriate for class certification.

23   Knowledge is highly individualistic and cannot be determined on a classwide basis."); *Little*

24   *Caesar Enters., Inc. v. Smith*, 895 F. Supp. 884, 904 (E.D. Mich. 1995) ("Thus, the important

25   inquiry centers on the buyer's state of mind and whether the buyer was forced or coerced into

26   making the purchase of the tied product by the seller's conduct. ... [T]he evidence proving the

27   claim would appear on an individual basis and would not be susceptible to class treatment.").

28

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

crowell moring

DEFENDANT AT&T MOBILITY'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs further highlight the point by emphasizing that Defendants' longer exclusive arrangement was contrary to "users' wishes and contractual expectations." Plfs.' Br. at 3-4. It is difficult to imagine a more particularized inquiry. While any particular iPhone purchaser could very well have wished and contractually expected that he would be bound to use ATTM only for the initial two-year contract term and be free to use T-Mobile or another provider thereafter, the purchaser in line behind him could equally have wished and contractually expected that she would always use ATTM to provide voice and data services for her iPhone.

Moreover, as to the duration of the exclusivity period, Plaintiffs concede that the fact that it extended beyond the initial two-year agreement was disclosed in various ways, but argue that not all consumers received or relied upon the information. Plfs.' Br. at 4, 15. For example, the very newspaper article on which Plaintiffs rely in their Complaint, published before the release of the iPhone, states that "AT&T has exclusive U.S. distribution rights for five years" and "for five years [the iPhone] will be tied to AT&T's wireless network." RCAC ¶ 86. And, the iPhone box itself that every purchaser received states: "Service plan with AT&T required for cellular network capabilities on expiration of initial new two-year agreement." Plfs.' Br. at 4. By arguing that such disclosures were not adequate, Plaintiffs have rested their allegations on an inescapably individual inquiry, *i.e.*, what each putative class member read or knew, and whether and the extent to which each relied on that knowledge or lack of it.

Where a cause of action is premised on alleged misrepresentation and reliance, class allegations are consistently rejected. *See, e.g.*, Fed. R. Civ. P. 23(b)(3), Advisory Comm. Notes (a fraud class action should not be certified when individual reliance will be an issue). For example,

- In *Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004), plaintiffs had challenged an alleged "scheme to defraud" under theories of RICO and common law fraud and deceit. Recognizing that "individualized reliance issues related to plaintiffs' knowledge, motivations, and expectations bear heavily on the causation analysis," that members of the putative class did "not share a common universe of knowledge and expectations" and that "one motivation does not 'fit all,'" the court affirmed denial of class certification because those issues would predominate over common questions. *Id.* at 665.

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

- In *Thorogood v. Sears, Roebuck and Co.,* No. 08-1590, 2008 WL 4709500 (7th Cir. Oct. 28, 2008), plaintiff alleged misrepresentations in the form of appliance labeling. The court observed that "evaluation of the class members' claims will require individual hearings [because each] will have to testify to what he understands to be the meaning of a label or advertisement." *Id.* at *5. Accordingly, the court ordered the class to be decertified. *Id.* at *6.

- In *Cole v. Gen. Motors Corp.*, 484 F.3d 717 (5th Cir. 2007), plaintiffs claimed that GM failed to correct a defect. The court affirmed denial of class certification, holding that certain class members (depending on the state) would have to prove individualized reliance to prevail on a breach of warranty claim. This would require the court to "undertake an inquiry that would turn on facts particular to each class member and raised the prospect that the "trial would break down into multiple individual hearings."

- In *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616 (S.D. Cal. 2007), plaintiff alleged that the defendant published misleading statements that led to consumer's choice of the defendant's products over competing products. In denying class certification, the court determined that class members may have relied on different representations, may not have relied on the representations, or may not have been exposed to the representations.

- In *In Re Ford Motor Co. Vehicle Paint Litigation*, 182 F.R.D. 214 (E.D. La. 1998), plaintiffs sought damages for alleged fraudulent concealment of a paint defect in certain vehicles. The court denied the motion for class certification, holding that plaintiffs were in different positions with respect to their actual or constructive knowledge of the paint issue because it had attracted significant media attention, to which some plaintiffs may have been exposed. Consequently, the court held that individualized issues of the state of each plaintiff's knowledge would predominate.

- In *Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998), plaintiffs sought damages from Chrysler alleging common law fraud and breach of express and implied warranties. Noting that plaintiffs had to establish that disclosure of the alleged defect would have

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

crowell moring

DEFENDANT AT&T MOBILITY'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1  affected each purchaser's decision to purchase the vehicle, the court held that such proof

2  involved an individual inquiry and consequently denied class certification.

3  • In *In Re Ford Motor Co. Ignition Switch Products Liability Litigation*, 174 F.R.D. 332

4  (D.N.J. 1997), plaintiffs sought damages alleging that defendant engaged in fraudulent

5  concealment of a defect. Recognizing that the issue of whether disclosure would have

6  affected the purchaser's decision was an intensely individual factual inquiry, the court

7  denied class certification.

8  As these cases demonstrate, reliance on inadequacy of disclosures is fatal to class certification

9  under Rule 23.

10     **B.     Proving Impact And Damages Also Requires A Consumer-By-Consumer**
           **Examination.**

11

12     Further, in addition to the individualized inquiry necessitated by Plaintiffs' market

13  definition/market power allegations, establishing impact and damages here would require an

14  equally individualized inquiry as well as a significant amount of speculation. A precondition of a

15  successful antitrust action is the plaintiff's ability to prove that a violation of the antitrust laws

16  caused it actual injury. 15 U.S.C. § 15 (2006) (providing cause of action for "any person…injured

17  in his business or property"). That each and every plaintiff must demonstrate injury is no less

18  applicable in a class proceeding. *See, e.g., In Re Methionine Antitrust Litig.*, 204 F.R.D. 161, 166

19  (N.D. Cal. 2001).

20     In fact, injury is routinely the basis on which courts deny class certification. Even in

21  horizontal price-fixing cases where courts have generally been more lenient in certifying classes,

22  establishing injury can require complex and individualized proof, sufficient to render the class

23  uncertifiable based on the predominance factor. *See, e.g., Burkhalter Travel Agency v. MacFarms*

24  *Int'l*, 141 F.R.D. 144, 154 (N.D. Cal. 1991) (refusing to certify class in price-fixing suit given

25  many factual circumstances regarding price so impact would not be common); *Blades v. Monsanto*

26  *Co.*, 400 F.3d 562, 571 (8th Cir. 2005) (affirming denial of class certification in part because

27  common proof regarding impact was not possible); *Robinson v. Texas Auto. Dealers Ass'n*, 387

28  F.3d 416, 424 (5th Cir. 2004) (decertifying class where varying purchasing habits necessitated

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

crowell moring

11

1   individualized inquiry on impact).  Individual questions of impact and damages also prevent

2   certification of a class in tying and monopolization cases.  In fact, class certification was denied in

3   a very analogous case in which cell phone purchasers brought antitrust claims against the largest

4   wireless service providers alleging theories of, among others, tying and monopolization.  In that

5   case, the court found that "two elements of plaintiffs' claims [would] require individualized proof:

6   antitrust injury and coercion.  Because these issues are so substantial and individualized proof of

7   each so burdensome, plaintiffs cannot carry their burden of proving that certification of a (b)(3)

8   class is appropriate."  *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 142 (S.D.N.Y. 2006).  *See also*

9   *Bell Atl. Corp. v. AT&T Corp.,* 339 F.3d. 294, 307-08 (5th Cir. 2003) (affirming denial of class

10  certification based on predominance of individual impact and damages issues).

11      Plaintiffs here theorize three different forms of injury from Defendants' alleged conduct –

12  none of which remotely lends itself to proof on a class-wide basis.  They claim that they and

13  putative class members were injured in that they (1) were "deprived of alternatives for voice and

14  data services domestically," (2) were "forced to pay higher prices for roaming charges while

15  traveling internationally," and/or (3) "had their iPhones destroyed when downloading."  RCAC

16  ¶¶ 131, 137, 143, 149.

17      1.      Taking Plaintiffs' first theory, the fact that choices were limited and class members

18  were constrained from switching to a different provider could only cause injury where the

19  consumer actually desired to make a different choice, *i.e.*, whether he or she actually wanted to

20  change carriers and would have absent the restriction.  In other words, unless the restriction

21  actually affected the consumer's conduct, the consumer simply was not injured.  Thus, it would

22  not be enough just to prove the *fact* of the exclusive agreement or the locked phones.  As the Court

23  articulated it, "Plaintiffs are alleging that at the point of purchase and initiation of service,

24  Defendants ***involuntarily*** impose on consumers a contract exclusivity restriction which restricts

25  their freedom from that point forward for at least the next five years and conceivably for the life of

26  the iPhone."  Order at 15 (emphasis added).

27      To determine whether the restriction was in fact involuntary, of course, the Court would

28  need to examine each consumer's knowledge and intent – at the time of purchasing the iPhone and

3 Park Plaza, 20ᵗʰFloor
Irvine, CA 92614-8505
(949) 263-8400

crowell moring

DEFENDANT AT&T MOBILITY'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

1  later when the initial two-year contract expires, to learn whether they in fact had any desire to

2  switch or whether they wanted to commit themselves.  As discussed above, some consumers likely

3  knowingly and voluntarily agreed to an exclusive arrangement beyond two years and therefore

4  consented to the "restriction."  Many consumers, perhaps out of "family plans" or brand

5  preference, would not have chosen to go with another provider, even if the choices would have

6  been many.  These consumers would have suffered no injury.  Moreover, individual preferences

7  change over time, so whether a consumer would decide to change in the future when the initial

8  contract expires is unknowable today.  There is no statistical model or other method that could be

9  employed to even begin to address such inherently individual and indeed speculative issues on a

10  uniform, class-wide basis.

11      2.      Plaintiffs' second theory of injury is no more susceptible to class-wide proof.

12  Quite obviously, not every owner of an iPhone has traveled abroad (or even desires or intends to)

13  and incurred international roaming charges.  Thus, even at the initial level, identifying class

14  members that might have suffered this form of injury depends on an individualized inquiry.  But

15  even once those people are identified, further individual analysis will be required.  The thrust of

16  Plaintiffs' Complaint on this score is that (a) they were not aware of either the fact that the phones

17  were locked so that they could not use an international SIM card or the actual extent of the

18  roaming fees, and (b) they would have actually done something different such as using an

19  international SIM card absent the alleged wrongful conduct.  Each putative class member would

20  have to establish that he or she was not in fact aware of the lock, that he or she would have reacted

21  differently if aware, that he or she was not aware of the roaming fees, that he or she would have

22  reacted differently if aware, that he or she would have in fact used a SIM card or engaged in some

23  other conduct if there were no lock, and so on.  Establishing injury based on international roaming

24  fees is a poster child for individualized inquiry.

25      3.      Plaintiffs' third theory of injury presents more of the same.  Plaintiffs allege that

26  Apple's software upgrade, Version 1.1.1, damaged iPhones that had been modified to circumvent

27  the lock.  But again, it takes no amount of conjecture to recognize that (1) not everyone modified

28  his or her phone to circumvent the lock, (2) not everyone who did modify his or her phone actually

13

1  downloaded Version 1.1.1, and (3) not everyone who circumvented the lock and downloaded the

2  upgrade actually had his or her iPhone damaged.  For example, according to their allegations,

3  Plaintiff Holman apparently never downloaded that upgrade, Plaintiff Kligerman downloaded it on

4  two of his iPhones but they were not damaged, and Plaintiff Sesso downloaded it and his phone

5  was damaged.  RCAC ¶¶ 37, 45, 56.

6        And, of course, there are legions of putative class members who did not suffer any of these

7  alleged harms, and thus did not suffer an injury in fact at all and have no claim.  But the only way

8  to even begin to determine the identity of those customers would be to conduct individual

9  inquiries.  With many millions of potential class members, even the threshold task of identifying

10  the contours of the class would "devolve into an unmanageable morass of divergent legal and

11  factual issues." *Chin*, 182 F.R.D. at 462.  Where an individualized inquiry is necessary to

12  determine whether individuals are members of the proposed class, a class should not be

13  maintained.  *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 446 (E.D. Pa. 2000) ("Determining a

14  membership in the class would essentially require a mini-hearing on the merits of each class

15  member's case, which in itself renders a class action inappropriate for addressing the claims at

16  issue.").  This is such a case as it is readily apparent from Plaintiffs' allegations that "the question

17  of injury in fact is an individual question that would have to be resolved by mini-trials." *In Re*

18  *Methionine Antitrust Litigation*, 204 F.R.D. at 165.  No class can be certified under these

19  circumstances.

20        Correspondingly, the issue of damages is one involving purely individual inquiry, further

21  weighting the scale on the side of individualized inquiries predominating.  It would need to be

22  established on an individual basis how much any particular plaintiff actually paid in international

23  roaming charges, what he or she would have paid in a but-for world, and what credits he or she

24  received (as at least one of the named Plaintiffs did).  RCAC ¶ 38.  Courts routinely refuse to

25  certify a class based on the necessity of calculating damages on an individual basis alone.  *See,*

26  *e.g.*, *Bell Atl. Corp.,* 339 F.3d at 308 (refusing to certify the class because plaintiff "clearly failed

27  to demonstrate that the calculation of individualized actual economic damages, if any, suffered by

28  the class members [could] be performed in accordance with the predominance requirement");

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

crowell moring

DEFENDANT AT&T MOBILITY'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1   *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 215 F.R.D. 523, 531 (E.D. Tex. 2003)

2   ("Where the plaintiffs' damage claims 'focus almost entirely on facts and issues specific to

3   individuals rather than the class as a whole,' [case will] 'degenerate in practice into multiple

4   lawsuits separately tried…[i]n such cases class certification is inappropriate.'").  Where, as here,

5   individual damages issues are compounded by individual merits and injury issues, the invalidity of

6   the class is inevitable.[3]

7       **C.      No Amendment Or Discovery Can Cure The Patent Deficiencies Of Plaintiffs'
                Purported Class.**

8

9       The fact that Plaintiffs' proposed class cannot be certified is not just a matter of some

10  pleading technicality or deficiency.  As discussed above, the Complaint, briefing, and Court Order

11  demonstrate that proving the claims as presented will necessarily entail consumer-by-consumer

12  examinations.  Plaintiffs cannot simply add or subtract groups of purchasers, create subclasses or

13  otherwise modify their class definition to remedy the problem.  Every conceivable variation

14  devolves into the exact same individualized inquiries that defeat the class as currently defined.

15  The very theories of liability and injury drive the individual inquiries – from market definition, to

16  market power, to injury and damages.

17      Nor will any amount of discovery change the result.  Plaintiffs have staked themselves to a

18  theory of the case that depends on individual inquiries to determine what each consumer knew and

19  understood, what he or she consented to, what he or she desired and intended.  And, as highlighted

20  by the variations of the injuries allegedly suffered by the named Plaintiffs themselves, there is no

21  common experience among iPhone purchasers.  No discovery can transform that process into a

22  common inquiry.[4]

23

24  _____

25  [3]   Plaintiffs' class allegations based on the Magnuson Moss Warranty Act, 15 U.S.C. § 2301
      (2006), should similarly be struck because they also fail on the predominance factor.  Among
26  other things, they also rely on the extent of disclosures.  RCAC ¶ 160.

27  [4]   Because of the current procedural posture in which Magistrate Seeborg is concurrently
      considering a discovery schedule, ATTM joined Apple in support of bifurcated discovery which
28  would be obviated by the Court's granting of this Motion.

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

crowell moring

DEFENDANT AT&T MOBILITY'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1

## CONCLUSION

2        As demonstrated above, Plaintiffs' claims turn on individualized inquiries that will

3   predominate over any common ones and preclude class certification under Rule 23(b).

4   Accordingly, this Court should strike or dismiss the class allegations.

5

6   DATED:  October 30, 2008              Respectfully submitted,

7                                        **CROWELL & MORING LLP**

8

9

                                         By:   /s/ Daniel A. Sasse
10                                             Daniel A. Sasse
                                               3 Park Plaza, 20th Floor
11                                             Irvine, CA 92614
                                               Attorneys for Defendant
12                                             AT&T Mobility LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT AT&T MOBILITY'S NOTICE OF MOTION AND MOTION TO STRIKE OR DISMISS THE
CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES