1  LATHAM & WATKINS LLP
    Daniel M. Wall (Bar No. 102580)
2   Alfred C. Pfeiffer, Jr. (Bar No. 120965)
    Christopher S. Yates (Bar No. 161273)
3   Sadik Huseny (Bar No. 224659)
   505 Montgomery Street, Suite 2000
4  San Francisco, California  94111-6538
   Telephone:  (415) 391-0600
5  Facsimile:  (415) 395-8095
   Email:  Dan.Wall@lw.com
6  Email:  Al.Pfeiffer@lw.com
   Email:  Chris.Yates@lw.com
7  Email:  Sadik.Huseny@lw.com

8  Attorneys for Defendant
   APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE & AT&TM ANTITRUST LITIGATION | CASE NO. C 07-5152 JW<br><br>**DEFENDANT APPLE INC.'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF LIMITED PORTIONS OF THE ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO DISMISS**<br><br>Judge:     Honorable James Ware |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT APPLE'S MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
CASE NUMBER: C 07-05152 JW

I.      INTRODUCTION

Pursuant to Civil Local Rule 7-9, Defendant Apple Inc. ("Apple") respectfully requests leave to file a motion for reconsideration of two limited portions of the Court's October 1, 2008 Order Granting in Part and Denying in Part Defendant Apple's Motion to Dismiss ("Order"): (i) the holding that plaintiffs have adequately alleged the specific intent required for their computer fraud claims, and (ii) the implicit but unstated holding that plaintiffs have adequately alleged Apple's market power in the "iPhone Applications Aftermarket."  Apple seeks reconsideration because it respectfully believes that these portions of the Order are contrary to the allegations of the complaint and concessions by plaintiffs.

First, plaintiffs have admitted they do not allege the type of specific intent the law requires and the Court assumed in its ruling on the computer fraud claims.  Plaintiffs' operative complaint, the Revised Consolidated Amended Class Action Complaint ("RCAC"), explicitly removed their earlier allegations that Apple intentionally designed Version 1.1.1 of its operating system to damage unlocked iPhones.  Plaintiffs dropped these allegations after Apple threatened to seek Rule 11 sanctions.  As a result, and as plaintiffs' counsel confirmed at the hearing, plaintiffs now claim only that Apple acted "knowingly" with respect to Version 1.1.1, not "deliberately" or with "specific intention."  The Order's reading of the complaint is thus at odds with plaintiffs' revisions to the RCAC and admissions.

Second, the Order's discussion of the alleged iPhone Applications Aftermarket does not address or resolve plaintiffs' failure to adequately allege Apple's market power.  The Order states in the relevant section only that plaintiffs have "sufficiently alleged market power and monopolization *in the iPhone voice and data services aftermarket*"—a different alleged aftermarket.  Order at 19:12-13 (emphasis added).  This is not an insignificant omission; the RCAC simply fails to allege Apple's market power in plaintiffs' broadly-alleged "applications aftermarket."  Plaintiffs merely state that Apple makes some unspecified amount of one type of application, ring tones, but never claim Apple has any level of market share in any "applications aftermarket," however broadly or narrowly defined.

## II. LEGAL STANDARD

Under Civil Local Rule 7-9, "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." Civ. L.R. 7-9(a). Such motions for leave are proper where the order in question reflects "[a] manifest failure … to consider material facts or dispositive legal arguments which were presented to the Court." Civ. L. R. 7-9(b)(3). Apple respectfully submits that its motion should be granted on this basis.

## III. DISCUSSION

### A. Plaintiffs Have Admitted They Are Not Alleging That Apple Acted With The Specific Intent Required For Their Computer Fraud Claims

As the Court's Order recognizes, plaintiffs' computer fraud causes of action (causes of action based on criminal statutes) require a high level of specific intent. Order at 21, 23. The intent threshold under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* ("CFAA") is extremely high—the "conduct or the causing of the result must have been the person's *conscious objective*." *Butera & Andrews v. Int'l Bus. Machs. Corp.*, 456 F. Supp. 2d 104, 109 (D.D.C. 2006), *quoting* S. Rep. No. 99-541, at 23 (1986) (emphasis added) (alterations omitted). Similarly, the California Penal Code punishes those who utilize "computer instructions *that are designed to* … damage [a computer] … without the intent or permission of the owner." Cal. Pen. Code § 502(b)(10) (emphasis added); Order at 23.

The Order interpreted the RCAC to allege the requisite specific intent. In doing so, the Court paraphrased the RCAC as alleging that:

> Apple specifically intended to disable iPhones that contained unapproved program unlocks. (Complaint ¶ 99.) Apple was aware of the potential ramifications of Version 1.1.1 prior to its release and none of the damaging aspects of Version 1.1.1 were necessary to effectuate Apple's stated intent in releasing that software upgrade. (Id. ¶¶ 98-103).

Order at 21. Apple respectfully submits that this paraphrasing of the RCAC attributes to plaintiffs the allegation of a level of intent that plaintiffs themselves have explicitly disavowed. We know this, without a doubt, because we asked plaintiffs, prior to the filing of the RCAC, and they said so.

A brief overview of plaintiffs' shifting allegations on this issue is illustrative. Plaintiffs'

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT APPLE'S MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
CASE NUMBER: C 07-05152 JW

earlier-filed Consolidated Amended Class Action Complaint ("CAC") *did* contain allegations of specific bad intent on Apple's part in designing and releasing Version 1.1.1. These included allegations, among others, that:

- "Apple issued a software update in which Apple had secretly embedded malicious codes designed to 'brick' (that is, render completely inoperable) or otherwise damage the iPhones . . ." (CAC ¶ 5)
- Apple had "deliberately damaged or destroyed [consumers'] iPhones" (CAC ¶ 6)
- Apple had "embedded malicious codes within the upgrade that would cause to malfunction or 'brick'" unlocked iPhones (CAC ¶ 8)
- Apple's upgraded operating system "was designed to damage or destroy iPhone that had been or might later be unlocked or on which any Third Party App had been or might later be installed." (CAC ¶ 73).

Because those allegations were utterly baseless, Apple asked plaintiffs' counsel to state their good faith basis for making those allegations. *See, e.g.*, *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998). In response, and subsequent to several exchanges between the parties, plaintiffs amended their complaint.

As a redline comparing the RCAC with the earlier CAC demonstrates (submitted as Attachment 1 to this motion), plaintiffs removed their allegations of Apple's specific, conscious intent, including the bulleted allegations. The changes to plaintiffs' lead paragraphs summarizing the computer fraud allegations are particularly noteworthy:

> 5. In ~~an act that can only be described as reprehensible and unconscionable, as well as illegal, Apple retaliated against and punished consumers who had exercised~~ **response to consumers exercising** their legal right to unlock their ~~iPhone or who had installed~~ **iPhones or to install** software applications that competed with Apple's. ~~On~~**, on** September 27, 2007, under the guise of issuing an "upgraded" version of the iPhone operating software, Apple **knowingly** issued ~~a software update in which Apple had secretly embedded malicious codes designed to "brick~~ **and caused transmission of a purported update to the iPhone operating software, known as Version 1.1.1, which "bricked**" (that is, render**ed** completely inoperable) or otherwise damage~~d the~~ **some** iPhones ~~of any consumer~~ that ~~had~~ **were** unlocked ~~the iPhone~~ or **had** downloaded competing **software** applications.
>
> 6. … Because Apple had ~~deliberately damaged or destroyed their~~ **intentionally released and transmitted Version 1.1.1 knowing that it would damage or destroy unlocked** iPhones, Apple and AT&TM were obligated by law to honor their warranties and repair or replace the phones.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT APPLE'S MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
CASE NUMBER: C 07-05152 JW

RCAC ¶¶ 5, 6 (redlined against CAC ¶¶ 5, 6). The redline shows that in the RCAC, plaintiffs limited their use of the conclusory word "intent" to the physical act of Apple's releasing Version 1.1.1 (i.e., Apple "intentionally released and transmitted Version 1.1.1."). *Id.*

Plaintiffs confirmed this point at the hearing:

> The Court: The argument was made that you revised your complaint and in the revision something was taken away from the intention that it was done deliberately.
>
> Mr. Rifkin: Yes, we have—we had a disagreement with Apple about one particular issue and that was did Apple sit down and write the code with the expressed purpose in mind of destroying iPhones? We don't know that to be a fact.
>
> …
>
> The Court: **So although you don't know whether it was done deliberately, it was done knowingly.**
>
> Mr. Rifkin: **That is correct. We don't know whether the programmer has a specific intention in mind.** We don't think it matters. There's no dispute, and we have alleged, and frankly Apple has announced that it **knew** when it released Version 1.1.1 that it was going to destroy iPhones.

9/12/08 Hearing Tr. At 84:17-86:22 (emphasis added) (relevant portions submitted as Attachment 2).[1]

There is a vast practical difference between what plaintiffs actually allege, and what they must in order to plead computer fraud. Plaintiffs have made clear that they merely allege that Apple, without malicious intent, developed updated operating software that it knew—as a side effect—might prove incompatible with and disable some iPhones that had been altered by their owners. That is a far cry from the intent contemplated under the criminal statutes on which plaintiffs rely, which involves a specific intent to cause the harm; in other words, that the defendant's goal and design was to inflict the harm. It is now undisputed that plaintiffs do not (and cannot, in good faith) allege that kind of intent, nor can they allege that "Apple specifically intended to disable iPhones that contained unapproved program unlocks," as the Court's Order takes the RCAC to allege. Order at 21 (paraphrasing RCAC ¶ 99). As a result, these claims

---

[1] If the Court would find it helpful to also review the parties' underlying Rule 11 correspondence, in addition to plaintiffs' admissions and the redlined comparison of the complaints, Apple would be pleased to submit these documents at the Court's direction.

1   cannot survive, given plaintiffs' inability to plead Apple's specific intent, unless the Court
2   determines that plaintiffs need only plead that Apple acted knowingly.

3   But the Order does not hold that mere "knowing" behavior alone would be sufficient, and
4   it does not suffice— plaintiffs must allege that the disabling of unlocked iPhones was Apple's
5   "*conscious objective*" and that Version 1.1.1 was "*designed to … damage*" those unlocked
6   iPhones. Cal. Pen. Code §§ 502(c)(8), (b)(10) (emphasis added); *see also Butera & Andrews*,
7   456 F. Supp. 2d at 109. That is exactly what plaintiffs explicitly agreed they were not alleging—
8   they dropped their earlier allegations that Apple had "designed" Version 1.1.1 to damage
9   iPhones, and thus cannot possibly be alleging this claim adequately. *Compare* CAC ¶ 73 with
10  RCAC ¶ 73 ("Apple ~~viciously~~ retaliated against iPhone purchasers who utilized these unlocking
11  features by **knowingly and intentionally** issuing **and transmitting** an iPhone operating system
12  "upgrade" that ~~was designed to damage or destroy any iPhone~~ **damaged or destroyed many**
13  **iPhones**…").[2]

14  In sum, plaintiffs simply have not alleged the level of intent required to state these
15  computer fraud claims. Absent that allegation, the claims cannot stand and the Court should
16  dismiss them.

   **B.   Plaintiffs Do Not And Cannot Allege That Apple Has Market Power
          In Their Alleged "iPhone Applications Aftermarket"**

19  The Court's Order addressed Apple's argument that plaintiffs had not properly pled an
20  "iPhone Applications Aftermarket" and we do not seek to reargue that point here. But in the
21  section of the Order headed "Market Power in the iPhone Applications Aftermarket" the Court
22  never addressed Apple's showing that plaintiffs had failed to plead Apple's market power in that
23  alleged market. The Court instead merely stated that plaintiffs have "sufficiently alleged market

---

[2] Plaintiffs and the Court cite to one additional subsection of § 502, which permits an action against one who "[k]nowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs." Cal. Pen. Code § 502(c)(4). This subsection is inapposite. The RCAC repeatedly admits that *plaintiffs themselves*, and other iPhone owners, were the ones that decided to and did access and download Apple's Version 1.1.1. *See*, *e.g.*, RCAC ¶¶ 9, 45, 56, 103, 112(n), 153. Apple did not initiate or force "access" of this downloading, knowingly or otherwise.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT APPLE'S MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
CASE NUMBER: C 07-05152 JW

power and monopolization *in the iPhone voice and data services aftermarket*." Order at 19:12-13 (emphasis added).

The RCAC simply does not plead anything close to market power, however one defines the "iPhone Applications Aftermarket." The RCAC itself does not plead that Apple has a predominant, or even any particular, market share. In response to Apple's motion, Plaintiffs only alleged that Apple makes some unspecified amount of one type of application—ring tones. Opp. at 17. This means at best plaintiffs have alleged that Apple is a participant in the "iPhone applications aftermarket," but not that it monopolizes that market. If anything, it concedes the point that Apple in fact does *not* have market power in the broadly-alleged applications aftermarket, which covers thousands of such applications.

It is plaintiffs' burden to allege that Apple has the requisite market power *in the aftermarket that plaintiffs are alleging.* See Order at 12; *Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1044 (9th Cir. 2008) ("In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.' That is, the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market.") Plaintiffs cannot defer their burden of alleging the requisite market power in their own purported aftermarket to a later stage in the litigation, nor move forward with a baseless, overly broad aftermarket claim now in the hopes that they can allege various narrower "submarkets" after discovery.[3] They must presently allege a specific applications aftermarket in which they can claim in good faith that Apple has market power. As the RCAC does not and cannot allege the requisite market power in plaintiffs' purported "iPhone Applications Aftermarket," these claims should appropriately be dismissed.

///

---

[3] In a separate section of the Order, the Court states that "[a] determination of whether the 'applications aftermarket' should appropriately be split into more specific sub-markets is a factual issue more appropriate for determination at a later state in this litigation." Order at 16, n.6. This statement is made in reference to whether the "applications aftermarket" can be a cognizable antitrust market, and not whether plaintiffs have adequately alleged the requisite market power in their purported aftermarket. Under *Ikon* and black-letter law, plaintiffs must be able to adequately allege market power now in order to proceed with their claim.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANT APPLE'S MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
CASE NUMBER: C 07-05152 JW

## IV. CONCLUSION

For the foregoing reasons, Apple respectfully requests leave to file a limited motion for reconsideration of these portions of the Court's Order.

Dated: October 30, 2008

Respectfully submitted,

LATHAM & WATKINS LLP

By    /s/ Alfred C. Pfeiffer, Jr.
      Alfred C. Pfeiffer, Jr.
      Attorneys for Defendant APPLE INC.

SF\676545

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT APPLE'S MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
CASE NUMBER: C 07-05152 JW