1   LATHAM & WATKINS LLP
       Daniel M. Wall (Bar No. 102580)
2      Alfred C. Pfeiffer, Jr. (Bar No. 120965)
       Christopher S. Yates (Bar No. 161273)
3      Sadik Huseny (Bar No. 224659)
    505 Montgomery Street, Suite 2000
4   San Francisco, California  94111-6538
    Telephone:  (415) 391-0600
5   Facsimile:  (415) 395-8095
    Email:   Dan.Wall@lw.com
6   Email:   Al.Pfeiffer@lw.com
    Email:   Chris.Yates@lw.com
7   Email:   Sadik.Huseny@lw.com

8   Attorneys for Defendant
    APPLE INC.
9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

13

14   IN RE APPLE & AT&TM ANTITRUST              CASE NO. C 07-5152 JW
     LITIGATION

15                                              **DEFENDANT APPLE INC.'S NOTICE OF
                                                MOTION AND MOTION FOR
16                                              CERTIFICATION OF INTERLOCUTORY
                                                APPEAL OF LIMITED PORTIONS OF THE
17                                              COURT'S ORDER GRANTING IN PART
                                                AND DENYING IN PART APPLE'S
18                                              MOTION TO DISMISS**

19                                              Date:      February 2, 2009
                                                Time:      9:00 a.m.
20                                              Place:     Courtroom 8, 4th Floor
                                                Judge:     Honorable James Ware
21

22

23

24

25

26

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                        DEFENDANT APPLE'S MOTION FOR
                                   CERTIFICATION OF INTERLOCUTORY APPEAL
                                          CASE NUMBER: C 07-05152 JW

**TABLE OF CONTENTS**

**PAGE**

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY ................................................... 2

III.    INTERLOCUTORY APPEAL OF THREE AFTERMARKET ISSUES
        WILL MATERIALLY ADVANCE THIS LITIGATION ................................. 3

        A.     The Court's Rulings Raise Controlling Questions of Law As to
               Aftermarket Definition and Aftermarket Power ..................................... 4

        B.     A Substantial Basis Exists for Difference of Opinion Regarding
               These Difficult Legal Issues of First Impression .................................. 4

               1.     No Court Has Found That a Company's Initial Entry Strategy Into
                      a Competitive Foremarket Subjects That Company to Immediate
                      Potential Monopolization Liability in A Single-Brand Aftermarket ........ 5

               2.     Whether *Ikon* Requires Only That a Plaintiff Allege They Did Not
                      "Knowingly and Voluntarily" Give Monopoly Power to a
                      Defendant Is a Question of First Impression and Wide Implication ......... 7

               3.     A Product That Existed Before, And Independent of, an Alleged
                      "Foremarket" Product Cannot be "Wholly Derivative From and
                      Dependant On" That Foremarket Product as Required by *Ikon* ............... 8

        C.     Resolution of These Issues Will Materially Advance the   Ultimate
               Termination of This Litigation .......................................................... 9

IV.     CONCLUSION .................................................................................. 10

1

## TABLE OF AUTHORITIES
### CASES

2

3

*Bell Atl. Corp. v. Twombly*,
    127 S.Ct. 1955 (2007)................................................................................................9

4

*Digital Equip. Corp. v. Uniq Digital Techs., Inc.*,
    73 F.3d 756 (7th Cir. 1996) .......................................................................................5

5

*Eastman Kodak v. Image Tech. Servs.*,
    504 U.S. 451 (1992)..............................................................................................1, 7

6

*Forsyth v. Humana, Inc.*,
    114 F.3d 1467 (9th Cir. 1997) ...................................................................................8

7

*In Re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1982) ...........................................................................3, 4, 9

8

*Kotrous v. Goss-Jewett Co. of N. Cal.*,
    No. CIV. S-02-1520 FCD JFM, 2005 U.S. Dist. LEXIS 43010 (E.D. Cal. Oct.
    4, 2005) ......................................................................................................................4

9

10

*Marsall v. City of Portland*,
    No. CV-01-1014-ST, 2004 U.S. Dist. LEXIS 15976 (D. Or. Aug. 9, 2004).................. 4, 6, 9

11

*Newcal Indus., Inc. v. Ikon Office Solutions*,
    513 F.3d 1038 (9th Cir. 2008)...........................................................................*passim*

12

13

*PSI Repair Servs. v. Honeywell, Inc.*,
    104 F.3d 811 (6th Cir. 1997) .....................................................................................7

14

*Queen City Pizza v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997)................................................................................7, 8, 9

15

*Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins. Co.*,
    No. CV F 05-0736 AWI SMS (NEW DJ) 2006 U.S. Dist. LEXIS 55863 (E.D.
    Cal., July 25, 2006) ....................................................................................................4

16

17

*SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*,
    188 F.3d 11 (1st Cir. 1999).........................................................................................5

18

19

### RULES

20

28 U.S.C. § 1292............................................................................................ 1, 3, 4, 6, 10

21

### TREATISES

22

P. Areeda & H. Hovenkamp, Antitrust Law (3d ed. 2006) ......................................... 5, 7

23

H. Hovenkamp, M.D. Janis & M.A. Lemley, IP and Antitrust: An Analysis of
    Antitrust Principles Applied to Intellectual Property Law (2002 and 2006
    Supp.)..........................................................................................................................6

24

25

### OTHER

26

Petition for a Writ of Certiorari, *Ikon Office Solutions, Inc. v. NewCal Indus., Inc.*,
    No. 07-1501, 2008 WL 2305809 (May 28, 2008) ....................................................1

27

S. Rep. No. 85-2434 (1958), *reprinted in* 1958 U.S.C.C.A.N. 5255.......................... 1, 9

28

1

## NOTICE OF MOTION AND MOTION

2       PLEASE TAKE NOTICE THAT on February 2, 2009 at 9:00 a.m., or as soon

3   thereafter as the matter may be heard, in the United States District Court, Northern District of

4   California, San Jose Division, Courtroom 8, before the Hon. James Ware, Defendant Apple Inc.

5   ("Apple"), will and hereby does move for an order certifying for interlocutory appeal certain of

6   the Court's holdings regarding the alleged iPhone Voice and Data Services Aftermarket antitrust

7   claims in the Court's October 1, 2008 Order Granting in Part and Denying In Part Defendant

8   Apple's Motion To Dismiss ("Order").

9       This request is based on this notice and motion, the accompanying memorandum of

10  points and authorities, the Order, the pleadings and documents filed in the action and such other

11  documents as the Court may request or permit to be filed.

12

## RELIEF SOUGHT

13      Pursuant to 28 U.S.C. § 1292(b), Apple seeks certification for interlocutory appeal

14  of certain of the Court's holdings regarding the alleged iPhone Voice and Data Services

15  Aftermarket antitrust claims in the Court's Order.

16

17  Dated: November 5, 2008                    Respectfully submitted,

18

19                                             LATHAM & WATKINS LLP

20                                             By _____/s/ Alfred C. Pfeiffer, Jr._____
                                                  Alfred C. Pfeiffer, Jr.
                                                  Attorneys for Defendant APPLE INC.
21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT APPLE'S MOTION FOR
CERTIFICATION OF NTERLOCUTORY APPEAL
CASE NUMBER: C 07-05152 JW

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.      INTRODUCTION**

3           Plaintiffs' antitrust claims against Apple rely on novel aftermarket theories that

4   merit immediate review by the Ninth Circuit.  Plaintiffs' theories would fundamentally—and,

5   Apple respectfully submits, improperly—alter the landscape of antitrust aftermarket analysis.  As

6   it now stands, plaintiffs, and other litigants who might rely on the Court's Order on Apple's

7   motion to dismiss, can bring a claim that a manufacturer has monopoly power in an aftermarket

8   limited to its own product *the moment the product is introduced* so long as the plaintiff alleges

9   that he or she did not "knowingly and voluntarily" place the manufacturer in an aftermarket

10  monopoly position.  This transforms *Eastman Kodak v. Image Tech. Servs.*, 504 U.S. 451 (1992)

11  ("*Kodak*")—which merely recognized that, in exceptional circumstances, a properly defined

12  single-brand aftermarket can sometimes be a relevant market—into a positive principle that a

13  plaintiff can automatically create a viable aftermarket monopolization claim simply by alleging

14  that the manufacturer's disclosures at the point of sale were inadequate, and thus force the

15  manufacturer into expensive and time-consuming antitrust discovery.

16          Apple appreciates the limited role of interlocutory appeals, but appellate guidance

17  on three issues concerning plaintiffs' aftermarket theories will both streamline further proceedings

18  in this case and provide guidance to other manufacturers of innovative products.  Indeed, Congress

19  has pointed to antitrust cases as particularly appropriate for interlocutory review given the time and

20  expense involved in such proceedings.  S. Rep. No. 85-2434, at 5 (1958), *reprinted in* 1958

21  U.S.C.C.A.N. 5255, 5259.  Apple respectfully submits that, pursuant to 28 U.S.C. §1292(b), the

22  Court should certify for interlocutory appeal the following three issues relating to plaintiffs'

23  aftermarket theories:

24          (1) whether *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038 (9th Cir.

25  2008) ("*Ikon*"), fundamentally altered antitrust law to hold that aftermarket power is adequately

26  alleged, and monopolization claims can thus proceed, simply "where it is alleged that a plaintiff did

27

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT APPLE'S MOTION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL
CASE NUMBER: C 07-05152 JW

1 | not 'knowingly and voluntarily' place the defendant in a monopoly position."  Order at 19:6-7.[1]

2 | (2) whether a product, such as cellular voice and data services, that indisputably

3 | existed long before, and independent of, a foremarket product can be considered "wholly

4 | derivative from and dependant on" that foremarket product, as required under *Ikon*, to support a

5 | cognizable relevant aftermarket; and

6 | (3) whether a company's initial entry strategy into a highly competitive primary

7 | market can give immediate rise to cognizable monopolization claims against that company in an

8 | "aftermarket" limited to that company's newly-launched product.

9 | Appellate guidance now as to these novel and controlling questions will benefit all

10 | parties, will advance the interests of judicial economy and will greatly enhance the expeditious

11 | resolution of this case.

12 | **II.      FACTUAL AND PROCEDURAL HISTORY**

13 | Plaintiffs' central antitrust theory is that, when consumers of Apple's iPhone entered

14 | into two-year cellular service agreements with AT&T Mobility LLC ("ATTM") at the time of their

15 | iPhone purchase, they became "locked-in" to using ATTM service beyond the expiration of the

16 | initial two-year service period because Apple had "secretly" entered into a five-year exclusivity

17 | agreement.  Revised Amended Consolidated Class Action Complaint ("RCAC") ¶¶ 2, 3; Opp. to

18 | Mot. to Dismiss at 1, 3-6.  Plaintiffs claim Apple's alleged failure to adequately disclose to

19 | consumers the length of the ATTM exclusivity at the time they purchased iPhones not only created

20 | cognizable antitrust aftermarkets, but itself instantaneously resulted in numerous antitrust

21 | violations, including:  (1) monopolization of the alleged iPhone voice and data services

22 | aftermarket, (2) attempted monopolization of the alleged iPhone voice and data services

23 | aftermarket, and (3) conspiracy to monopolize the alleged iPhone voice and data services

24 | aftermarket.  RCAC ¶¶ 133-150.

25 | Apple moved to dismiss these claims, and the additional claims alleged in the

26 |

27 | [1]   Ikon's May 28, 2008 petition for a writ of certiorari remains pending before the Supreme Court. Petition for a Writ of Certiorari, *Ikon Office Solutions, Inc. v. NewCal Indus., Inc.*, No. 07-1501, 2008 WL 2305809 (May 28, 2008).

28 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT APPLE'S MOTION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL
CASE NUMBER: C 07-05152 JW

1   complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  On October 1, 2008 this Court

2   issued its Order granting in part and denying in part Apple's motion to dismiss.  The Court's

3   Order allowed plaintiffs' voice and data aftermarket antitrust claims to proceed.  In doing so, the

4   Court made three determinations as to which Apple respectfully requests certification for

5   interlocutory appeal.  First, the Court determined that Apple's entry strategy into the competitive

6   cell phone market (via exclusive arrangement with ATTM, and alleged failure to adequately

7   disclose that arrangement) could itself give rise to cognizable monopolization claims against

8   Apple in an iPhone-only "aftermarket."  Second, the Court interpreted the Ninth Circuit's decision

9   in *Ikon* to hold that antitrust aftermarket analysis "requires only a showing that plaintiffs had not

10  'knowingly contracted' to buy exclusively from the defendant in the aftermarket," (as plaintiffs

11  argued, Opp. to Mot. to Dismiss at 15), and thus held that aftermarket power is in fact adequately

12  alleged under *Ikon* simply "where it is alleged that a plaintiff did not 'knowingly and voluntarily'

13  place the defendant in a monopoly position."  Order at 19:6-7.  Third, the Court found that a

14  cognizable aftermarket could exist with respect to a product (here, ATTM cell service) that

15  indisputably existed long before, and independent of, the foremarket product (iPhones), finding

16  plaintiffs' allegation that the aftermarket was "wholly derivative from and dependant on"

17  sufficient.

18  **III.   INTERLOCUTORY APPEAL OF THREE AFTERMARKET ISSUES
        WILL MATERIALLY ADVANCE THIS LITIGATION**

19          Pursuant to 28 U.S.C. § 1292(b), a party may petition for immediate appeal of a

20  district court's interlocutory order if that court certifies the order for such appeal.  *In Re Cement

21  Antitrust Litig.*, 673 F.2d 1020, 1025-26 (9th Cir. 1982).  Certification is appropriate where:  (i)

22  the matter involves a controlling question of law, (ii) there is substantial ground for difference of

23  opinion, and (iii) resolution of the issue will materially advance the termination of the litigation.

24  *Id.*; *see also* 28 U.S.C. § 1292(b).

25          Each of the three issues described above meets these criteria.  These issues raise

26  controlling and difficult legal questions, whose resolution would greatly further judicial economy

27  and efficiency in this case by materially advancing the termination of the litigation.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT APPLE'S MOTION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL
CASE NUMBER: C 07-05152 JW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A.      The Court's Rulings Raise Controlling Questions of Law as to Aftermarket Definition and Aftermarket Power**

A question of law is "controlling" under 28 U.S.C. § 1292(b) if the "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In Re Cement Antitrust Litig.*, 673 F.2d at 1026. "The issue need not be dispositive of the lawsuit in order to be regarded as controlling but it cannot be collateral to the basic issues of the case." *Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins. Co.*, No. CV F 05-0736 AWI SMS (NEW DJ), 2006 U.S. Dist. LEXIS 55863, at *7 (E.D. Cal., July 25, 2006) (citation and brackets omitted); *see also In Re Cement Antitrust Litig.*, 673 F.2d at 1027 (holding that question of judge's recusal should not have been certified because it was "collateral to the basic issues of [the] lawsuit").

The three issues as to which Apple seeks interlocutory review clearly raise controlling questions of law as to plaintiffs' alleged iPhone voice and data services aftermarket. Each of these questions takes plaintiffs' factual allegations as true and focuses on critical, legal concerns about when aftermarkets and aftermarket power are cognizable; as a result, each issue can be decided by the Court of Appeals "quickly and cleanly without having to study the record[.]" *Marsall v. City of Portland*, No. CV-01-1014-ST, 2004 U.S. Dist. LEXIS 15976, at *9 (D. Or. Aug. 9, 2004) (citation omitted). Further, the questions themselves are hardly collateral to the core issues of the case. They go to the heart of plaintiffs' aftermarket claims—and whether by virtue of them, plaintiffs are entitled, as they argue, to "use the network of their carrier of choice[,]" regardless of their contractual agreements or anything else to the contrary. RCAC ¶ 3. A decision by the Ninth Circuit as to these issues will thus materially affect the course of this litigation, as it would resolve the antitrust questions forming the crux of plaintiffs' case. *See Kotrous v. Goss-Jewett Co. of N. Cal.*, No. CIV. S-02-1520 FCD JFM, 2005 U.S. Dist. LEXIS 43010, at *11-12 (E.D. Cal. Oct. 4, 2005).

**B.      A Substantial Basis Exists for Difference of Opinion Regarding These Difficult Legal Issues of First Impression**

"[I]n determining whether a substantial ground for difference of opinion truly exists, a district court must analyze the strength of the arguments in opposition to the challenged ruling," and whether the question at issue is "difficult and of first impression." *Marsall*, 2004 U.S. Dist. LEXIS 15976, at *20 (citations and internal quotation marks omitted). The three issues

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT APPLE'S MOTION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL
CASE NUMBER: C 07-05152 JW

as to which Apple seeks interlocutory review meet this standard.

### 1.   No Court Has Found That a Company's Initial Entry Strategy Into a Competitive Foremarket Subjects That Company to Immediate Potential Monopolization Liability in A Single-Brand Aftermarket

It is undisputed that Apple's entry strategy with respect to the iPhone—namely, its decision to enter into a long-term exclusive arrangement with ATTM and its alleged nondisclosure of the length of that arrangement—forms the core of plaintiffs' antitrust claims. That clearly poses the question of whether a company's *entry strategies and entry-related decisions* can give immediate rise to antitrust liability based on alleged effects in purported single-brand *after*markets of that company's products.

Apple believes this to be a question of first impression. Apple is aware of no court decision holding that a manufacturer may be found liable for monopolizing an alleged single-brand aftermarket immediately upon entry into a competitive foremarket. The closest decision on point appears to be *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11 (1st Cir. 1999), where aftermarket monopoly power allegations were rejected in connection with a new product introduction by an existing competitor. Certainly plaintiffs were unable to cite to any new entrant cases in their submissions to the Court, nor did they respond at oral argument when challenged to cite such a case. The fact that the Court's decision appears to be the first ever to allow for monopoly power at the time of initial entry counsels heavily for interlocutory appeal.

So, too, does the fact that Apple's arguments against a finding of "entry strategy aftermarket liability" are well-supported by antitrust principles and law. As Apple explained in its motion, monopoly power at the time of initial entry is facially implausible. By definition, a new entrant cannot possibly have the ability to restrict marketwide output that is a precondition for exercising monopoly power. *See* P. Areeda & H. Hovenkamp, ANTITRUST LAW ¶ 501 (3d ed. 2006) ("Market power is the ability to raise price by restricting output."). There is no reasonable basis for supposing that Apple had such power, either in cellular service (which it does not even provide), nor in iPhone aftermarket applications (which with trivial exceptions it does not make).

Antitrust markets are defined by reference to the choices a consumer has at the time of purchase. Everything that happens up front is a "foremarket" transaction that is presumptively disciplined by the competitive options available to consumers in that foremarket,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT APPLE'S MOTION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL
CASE NUMBER: C 07-05152 JW

1   whether the consumers are well-informed or not.  *See, e.g., SMS*, 188 F.3d at 17; *Digital Equip.*

2   *Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 763 (7th Cir. 1996).  The "aftermarket" concept

3   addresses the possibility that consumers of durable goods may at times be deemed "locked-in" to

4   their initial foremarket purchase, such that a transaction that occurs *after* the initial purchase may

5   not be constrained by foremarket competition.  The aftermarket concept serves to protect those

6   consumers from a company's potential *later* exercise of market power—as in, a company who has

7   a certain number of consumers "locked-in" to their product and then—***after that lock-in***—

8   changes its behavior in an allegedly anticompetitive manner (through, for example, unlawful,

9   drastic increases in the price of critical services in that aftermarket).  The "aftermarket" concept

10  simply has nothing to do with those consumers—such as plaintiffs and other iPhone purchasers—

11  who are ***not yet*** locked-in and are making an initial choice of products in a competitive

12  foremarket.  As a leading treatise states, "[i]t should … be clear that *Kodak*-style 'lock-in' occurs

13  only when the primary market decision and the 'aftermarket' decision are made at different

14  times."  H. Hovenkamp, M.D. Janis & M.A. Lemley, IP AND ANTITRUST: AN ANALYSIS OF

15  ANTITRUST PRINCIPLES APPLIED TO INTELLECTUAL PROPERTY LAW, § 21.04 (2002 and 2006

16  Supp.).

17          Under these principles, Apple submits that there cannot be any meaningful "iPhone

18  Voice and Data Services Aftermarket" underlying plaintiffs' claims, because a consumer's iPhone

19  purchase and ATTM service agreement, as well as Apple's alleged nondisclosures, were all part

20  of the *initial foremarket transaction*: the iPhone and the ATTM Service Contract.  There is no

21  "aftermarket" as of yet, nor has there been an exercise of any potential aftermarket power by

22  Apple.  Plaintiffs are simply, indisputably complaining about the terms of the foremarket

23  transaction.  There is nothing else for them to complain about—Apple has not *done* anything even

24  alleged to be anticompetitive in the "aftermarket."

25          Apple respectfully recognizes, of course, that the Court viewed the issue differently

26  when considering Apple's motion to dismiss.  But this is just the sort of difficult legal issue, of

27  first impression, that interlocutory appeals under 28 U.S.C. § 1292(b) are intended to address.  *Cf.*

28  *Marsall*, 2004 U.S. Dist. LEXIS 15976, at *21-22.  The Court of Appeals' decision on this

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT APPLE'S MOTION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL
CASE NUMBER: C 07-05152 JW

1    threshold issue of first impression—whether a company's initial entry strategy into a highly

2    competitive foremarket can give immediate rise to cognizable "aftermarket" monopolization

3    claims—will serve to greatly streamline this case.

4          **2.      Whether *Ikon* Requires Only That a Plaintiff Allege They Did Not
               "Knowingly and Voluntarily" Give Monopoly Power to a
5              Defendant Is a Question of First Impression and Wide Implication**

6          Plaintiffs argued that, under *Ikon,* aftermarket liability may hold whenever

7    consumers do not grant a "knowing contractual waiver" about some business practice.  Opp. to

8    Mot. to Dismiss at 16 (internal quotes omitted).  The Court appears to adopt this reading, holding

9    that aftermarket power is adequately alleged under *Ikon* simply "where it is alleged that a plaintiff

10   did not 'knowingly and voluntarily' place the defendant in a monopoly position."  Order at 19:6-7.

11         Apple respectfully submits that this holding mischaracterizes the role of "imperfect

12   information" in the aftermarket analysis, and represents a misreading of *Ikon* that would improperly

13   and fundamentally alter the landscape of antitrust aftermarket analysis.  Under *Kodak*, imperfect

14   consumer information about long-term costs of ownership has always been a necessary *but not*

15   *sufficient* condition for finding a relevant aftermarket.  Apple is aware of no case holding the

16   converse:  that aftermarket power *will necessarily exist*, or even *can be presumed to exist*, simply

17   because foremarket purchases are tainted by allegedly imperfect information or inadequate

18   disclosures about the future.

19         Apple respectfully submits that *Ikon* did not effect such a fundamental

20   transformation of the standard aftermarket analysis under *Kodak*.  The *Ikon* court itself states that

21   unless "consumers *could not*, at the time of purchase, *reasonably discover*" such information, an

22   aftermarket monopoly claim will fail.  *Ikon*, 513 F.3d at 1048 (emphasis added); *see also PSI*

23   *Repair Servs. v. Honeywell, Inc.*, 104 F.3d 811, 820-21 (6th Cir. 1997); *Queen City Pizza v.*

24   *Domino's Pizza, Inc.*, 124 F.3d 430, 440-41 (3d Cir. 1997).[2]  Indeed, if anything, *Ikon narrowed*

---

25   [2]  *See also* P. Areeda & H. Hovenkamp, ANTITRUST LAW ¶ 564 (3d ed. 2006) ("[I]gnorance
        should be measured by an objective test requiring proof that aftermarket prices were simply not
26      available …; otherwise, we reward customers for not making reasonable inquiries about
        aftermarket costs.").  It is worth noting that this "reasonably discover" standard is met in this
27      case.  The parties agreed in their submissions to the Court and at hearing that the iPhone box
        itself stated that an initial two-year ATTM service contract was required, and that ATTM
28      wireless service was required *after* expiration of the initial two-year agreement.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT APPLE'S MOTION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL
CASE NUMBER: C 07-05152 JW

1  the circumstances in which aftermarkets could be found, creating what amounts to a "safe harbor"

2  for contractual power the manufacturer acquires at the time of the foremarket sale. *Ikon*, 513 F.3d

3  at 1048-1049.

4          Although the Court disagreed with Apple's position, the substance of the

5  arguments—and the fact that the proper interpretation of *Ikon* as to this issue is a question of first

6  impression—counsels heavily in favor of interlocutory appeal.  The Court's interpretation of *Ikon*

7  means that the mere allegation of what is often a contestable issue—the adequacy of disclosures

8  about future events—now serves to create an antitrust aftermarket that is unassailable by pleading

9  motion.  It fundamentally alters antitrust law, converting the narrow *Kodak* aftermarket *exception*

10  into a general, positive principle that permits a plaintiff to plead an aftermarket whenever a

11  defendant does not explicitly include, in foremarket contracts, all terms that the plaintiff alleges

12  may relate to future potential costs and obligations.  Because such a holding would have wide

13  ramifications in antitrust law, far beyond this case, Apple submits that interlocutory appeal is

14  appropriate, so as to afford the Ninth Circuit the opportunity to clarify its holding.

15          **3.      A Product That Existed Before, And Independent of, an Alleged
                        "Foremarket" Product Cannot be "Wholly Derivative From and**

16          **Dependant On" That Foremarket Product as Required by *Ikon***

17          As the Court's Order recognizes, for the "aftermarket" exception to the normal rules

18  of market definition to even apply, the alleged market must actually be an "aftermarket"—

19  involving those "unique" and non-interchangeable products or services that are "wholly derivative

20  from and dependent on the primary market." *Ikon*, 513 F.3d at 1049; Order at 13-14.  The typical

21  aftermarket case, for example, involves a unique "consumable" product or service that is useful

22  *only* with respect to the foremarket "durable-good" product—such as a replacement part that works

23  only in a Kodak copier, and is thus worthless to owners of other copiers.  This is critical, for as the

    Ninth Circuit explained in *Ikon*, "[o]ne of the primary considerations" in *Kodak* was that:

24
25          Kodak held a natural monopoly in the submarket for Kodak-brand
            replacement parts, which gave it a unique position in the wholly
            derivative aftermarket for service contracts.  Kodak was then able to
26          exploit that unique position to gain monopoly power in the derivative
            services market as well, even though its monopoly power in services was
27          neither naturally nor contractually created.

28  *Ikon*, 513 F. 3d at 1049; *see also Queen City Pizza*, 124 F.3d at 439 (aftermarket product "may

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT APPLE'S MOTION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL
CASE NUMBER: C 07-05152 JW

1    constitute a relevant market … where the commodity is unique, and therefore not interchangeable

2    with other products").  The *Ikon* court specifically distinguished cases where the alleged

3    "aftermarket" products "would exist whether or not there was a market" for the primary product.

4    *Ikon*, 513 F.3d at 1049 (distinguishing *Queen City Pizza* and *Forsyth v. Humana, Inc.*, 114 F.3d

5    1467 (9th Cir. 1997)).

6            The Court's Order nevertheless holds that because plaintiffs have alleged that the

7    aftermarket for iPhone voice and data services "would not exist without the primary market for

8    iPhones," they have sufficiently met this requirement.  Order at 14.  Respectfully, Apple submits

9    that there is substantial ground for a difference of opinion on this issue.  It is undisputed that

10   ATTM cellular service—the only cellular provider in this alleged "aftermarket"—existed long

11   before, and is completely independent of, the iPhone; only a small portion of ATTM's many

12   millions of customers are iPhone consumers.  Thus, by definition—and as a matter of law—it

13   *cannot* be "wholly derivative of and dependant on the primary market."  Like the pizza supplies

14   and cups in *Queen City*, the alleged aftermarket product here existed before the "foremarket"

15   product iPhone and would exist without it, is not unique to the iPhone, and is not wholly

16   derivative from and dependant on the iPhone.  *See, e.g.*, *Ikon*, 513 F.3d at 1049.

17           Indeed, Apple is aware of no case which has held that a product which is so clearly

18   a "before" product qualifies, under *Kodak, Ikon* and related authority, to raise a cognizable

19   aftermarket issue.  As this indicates, at the least, a substantial ground for difference of opinion,

20   Apple submits that this issue is appropriate for interlocutory appeal.

21           **C.      Resolution of These Issues Will Materially Advance the
                       Ultimate Termination of This Litigation**

22           A contemplated interlocutory appeal must materially advance the ultimate

23   termination of the litigation by "appreciably shorten[ing] the time, effort, or expense of conducting

24   [the] lawsuit[.]"  *In re Cement Antitrust Litig.*, 673 F.2d at 1027.  Here, the Ninth Circuit's rulings

25   on these threshold antitrust questions will serve to limit and streamline costly and extensive

26   litigation over the issues at the heart of this matter.  *Cf. Marsall*, 2004 U.S. Dist. LEXIS 15976, at

27   *24-26.  Indeed, Congress has explicitly singled-out antitrust cases as hallmark cases for

28   interlocutory review, noting that "[d]isposition of antitrust cases may take considerable time," and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT APPLE'S MOTION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL
CASE NUMBER: C 07-05152 JW

1   involve "protracted and expensive litigation" which could be avoided by a single appellate ruling.

2   S. Rep. No. 85-2434, at 2-5 (1958), *reprinted in* 1958 U.S.C.C.A.N. 5255, 5256-59.  This is echoed

3   by the Supreme Court's recent admonition that courts should carefully assess the adequacy of

4   pleadings "before allowing a potentially massive factual controversy to proceed," particularly in the

5   antitrust context.  *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1967 (2007) (citation omitted).

6          This case exemplifies the point.  The questions for which Apple seeks interlocutory

7   review are threshold questions aimed at the heart of when allegations of aftermarkets and

8   aftermarket power are sufficient, and when they are not.  Proceeding toward resolution on the

9   merits of plaintiffs' purported class action claims will involve significant time and expense,

10  substantial discovery, extensive summary judgment motions and, should summary judgment

11  motions not resolve the case, a potentially lengthy and complex trial.  All of this time, effort, and

12  cost would ultimately have been for naught if the Ninth Circuit were to later decide that, as Apple

13  argues, plaintiffs' aftermarket theories in this case simply do not suffice as a matter of long-

14  established antitrust principle and law.  Thus, the instant interlocutory appeal would conserve this

15  Court's, and the parties', limited resources by obtaining definitive guidance on the reach of

16  aftermarkets—particularly in light of the Ninth Circuit's recent *Ikon* decision.  And judicial

17  efficiency and economy would be greatly furthered not only with respect to the instant case but

18  also in regards to other antitrust litigation that may raise identical or similar issues.

19  **IV.     CONCLUSION**

20         For the foregoing reasons, Apple respectfully requests that this Court issue an order

21  certifying the above three iPhone voice and data services aftermarket questions for immediate

22  appeal pursuant to 28 U.S.C. § 1292(b).

23
    Dated:  November 5, 2008                    Respectfully submitted,
24

25                                              LATHAM & WATKINS LLP

26                                              By _____/s/ Alfred C. Pfeiffer, Jr._____
                                                   Alfred C. Pfeiffer, Jr.
27                                                 Attorneys for Defendant APPLE INC.

    SF\676621
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT APPLE'S MOTION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL
CASE NUMBER: C 07-05152 JW