```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                        SAN JOSE DIVISION

 4

 5                                )  C-07-5152
                                  )
 6       IN RE:  APPLE & AT & TM  )  FEBRUARY 9, 2009
         ANTI-TRUST LITIGATION.   )
 7                                )
                                  )
 8                                )  PAGES 1 - 35
         _____  )
 9

10

11

12            THE PROCEEDINGS WERE HELD BEFORE

13         THE HONORABLE UNITED STATES DISTRICT

14                   JUDGE JAMES WARE

15     A P P E A R A N C E S:

16     FOR THE PLAINTIFFS: WOLF, HALDENSTEIN, ADLER,
                           FREEMAN & HERZ
17                         BY:  MARK C. RIFKIN
                           270 MADISON AVENUE
18                         NEW YORK, NEW YORK 90016

19

20     FOR THE DEFENDANTS: LATHAM & WATKINS
                           BY:  ALFRED C. PFEIFFER, JR.
21                              SADIK H. HUSENY
                           505 MONTGOMERY STREET
                           SUITE 2000
22                         SAN FRANCISCO, CALIFORNIA 94111

23
              (APPEARANCES CONTINUED ON THE NEXT PAGE.)
24

25     OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                                CERTIFICATE NUMBER 8074
```

1

1

A P P E A R A N C E S: (CONT'D)

2


3

FOR THE DEFENDANTS:        CROWELL & MORING

4                          BY:  DANIEL A. SASSE
                           3 PARK PLAZA

5                          20TH FLOOR
                           IRVINE, CALIFORNIA 92614

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2

```
1      SAN JOSE, CALIFORNIA                 FEBRUARY 9, 2009

2                   P R O C E E D I N G S

3               (WHEREUPON, COURT CONVENED AND THE

4      FOLLOWING PROCEEDINGS WERE HELD:)

5               THE CLERK:  CALLING CASE NUMBER 07-05152,

6      IN RE APPLE AND AT & TM ANTITRUST LITIGATION.

7               ON FOR APPLE'S MOTION FOR CERTIFICATE OF

8      APPEALABILITY OF LIMITED PORTIONS.

9               TEN MINUTES EACH SIDE.

10              COUNSEL, COME FORWARD AND STATE YOUR

11     APPEARANCES.

12              MR. PFEIFFER:  GOOD MORNING, YOUR HONOR.

13     AL PFEIFFER AND SADIK HUSENY OF LATHAM & WATKINS ON

14     BEHALF OF APPLE.

15              MR. RIFKIN:  AND GOOD MORNING, YOUR

16     HONOR.  MARK RIFKIN ON BEHALF OF WOLF, HALDENSTEIN,

17     ADLER, FREEMAN & HERZ ON BEHALF OF PLAINTIFFS.

18              THE COURT:  THERE WERE MULTIPLE MATTERS

19     BEFORE THE COURT, BUT I HAD MY STAFF NOTIFY YOU,

20     AND I HOPE YOU GOT THE WORD, THAT WHAT I WANTED TO

21     HEAR IS THE MOTION HAVING TO DO WITH THE REQUEST

22     FOR CERTIFICATION OF A PORTION OF THE ORDER FOR

23     INTERLOCUTORY APPEAL.

24              AND THERE ARE TWO ASPECTS TO THAT THAT I

25     WOULD HAVE YOU ADDRESS IN ORAL ARGUMENT.
```

3

1                FIRST OF ALL, IT DID NOT OCCUR TO ME TO

2        FRAME THE ISSUES FOR APPEAL.  RATHER, IT WOULD HAVE

3        BEEN MY UNDERSTANDING THAT THE ISSUE FOR APPEAL IS

4        PURELY THE ORDER DENYING THE MOTION TO DISMISS AND

5        MY ORDER AND THE REASONS FOR MY ORDER WOULD FRAME

6        THE ISSUE, AND THAT I WOULD NOT REFRAME THE ISSUES

7        AS STATED.

8                INDEED AS I READ THE ISSUES AS STATED, IT

9        REMINDS ME OF THE OLD SAYING I MAY NOT HAVE ALL OF

10       THE VOTES AT THE MEETING, BUT IF I GET TO SET THE

11       AGENDA, I CAN INFLUENCE THE OUTCOME.

12               AND SO BY FRAMING THE ISSUE IN A WAY THAT

13       IT IS FRAMED HERE, IT SEEMS AS THOUGH IT SUGGESTS

14       AN OUTCOME AND A BASIS OF THE OUTCOME THAT IN MY

15       VIEW MAY BE DIFFERENT THAN WHAT WAS STATED IN THE

16       ORDER.

17               SO I WOULDN'T INTEND TO -- I WOULDN'T

18       INTEND TO, IF I GRANT THE MOTION, INDICATE THAT I

19       AGREE THAT THESE ARE THE APPROPRIATE ISSUES FOR

20       INTERLOCUTORY APPEAL?

21               AND THEN THE SECOND ISSUE THAT I WOULD

22       WISH THE PARTIES TO ADDRESS IS WHAT WOULD BECOME OF

23       THE UNDERLYING CASE IF I WERE TO ALLOW THIS

24       INTERLOCUTORY APPEAL.

25               DO YOU WANT TO SPEAK TO THOSE?

                                                              4

1    MR. PFEIFFER:  YES, YOUR HONOR, THANK

2    YOU.

3        LET ME START WITH THE FIRST POINT, WHICH

4    IS I GUESS THOSE WHO WRITE THE HISTORY BOOKS

5    CONTROL.

6        WE OBVIOUSLY HAD NO INTENT OTHER THAN TO

7    SPECIFY THAT WE WERE LOOKING AT LIMITED ISSUES

8    WITHIN THE COURT'S ORDER.

9        WE HAVE NO OBJECTION TO, IF YOUR HONOR

10   DECIDES THAT THESE ARE APPEALABLE ISSUES THAT

11   SHOULD BE CERTIFIED FOR APPEAL NOW, HOWEVER YOUR

12   HONOR WANTS TO FRAME IT FOR THE COURT IS OBVIOUSLY

13   YOUR HONOR'S DISCRETION.  AND WE HAVE NO PROBLEM

14   WITH WHAT YOU'RE PROPOSING OBVIOUSLY.

15       THE COURT:  I GUESS THE QUESTION IS DO I

16   NEED TO REFRAME THE ISSUES?

17       I DENIED A MOTION AND IN DENYING THE

18   MOTION I ISSUED AN ORDER.

19       IS IT YOUR UNDERSTANDING THAT UNDER THE

20   CERTIFICATION PROCESS, I NEED TO DO ANYTHING MORE

21   THAN SAY, "I CERTIFY THAT THERE IS A DISPUTE THAT

22   COULD AFFECT THE CASE, THAT LANGUAGE THAT IS IN THE

23   STATUTE AND THE RULE," AND THEN ALLOW THE PARTIES

24   TO ARGUE WHY AND WHAT -- HOW THEY FRAME THE ISSUES

25   WILL BE UP TO THEM.

1          MR. PFEIFFER:  I THINK THAT'S RIGHT, YOUR

2    HONOR.  ULTIMATELY WE, THE PARTIES, WOULD HAVE TO

3    FOCUS THE NINTH CIRCUIT IF YOU DID CERTIFY AND SEND

4    IT UP TO THEM, WE WOULD HAVE OUR NEXT ROUND OF

5    BRIEFING OF WHETHER THEY DECIDED TO TAKE THE APPEAL

6    OR NOT.

7          WE WOULD STILL FOCUS ON THE SPECIFIC

8    ISSUES THAT WE THINK ARE IN DISPUTE THAT MERIT

9    INTERLOCUTORY REVIEW.

10         SO THAT'S WHY WE FRAME THEM SPECIFICALLY.

11         OUR INTERPRETATION OF 1292(B) WHEN IT

12   DOES TALK ABOUT CONTROLLING QUESTIONS OF LAW WAS

13   THAT IT WOULD BE SUBSIDIARY ISSUES AND NOT THE

14   ULTIMATE RULING THAT THE APPEAL IS TAKEN FROM.

15         BUT I DON'T THINK IT CHANGES.  IF THE

16   ORDER ITSELF WAS CERTIFIED FOR INTERLOCUTORY

17   APPEAL, THE PARTIES WOULD STILL THEN BE ABLE TO

18   BRIEF THE INDIVIDUAL ISSUES THAT WE THINK FRAME

19   THIS DISPUTE.

20         THE COURT:  WELL, HERE'S WHAT IS

21   TROUBLING:  IF THIS IS HOW YOU FRAME THE ISSUES, IT

22   SEEMS TO ME THAT IT SUGGESTS TO ME THAT THIS IS HOW

23   YOU WOULD SUPPORT YOUR RIGHT TO TAKE THIS

24   INTERLOCUTORY APPEAL.

25         SO IF I DISAGREED WITH THE WAY YOU FRAME

6

1    THE ISSUE, PERHAPS I SHOULD DISAGREE WITH THE NEED

2    FOR AN INTERLOCUTORY APPEAL.

3              IT DOESN'T SEEM TO ME THAT THE LANGUAGE,

4    WHETHER NEWCAL FUNDAMENTALLY ALTERED ANTITRUST LAW

5    TO HOLD THAT IT AFTERMARKET POWERS ADEQUATELY

6    ALLEGED AND MONOPOLIZATIONS CLAIM CAN THUS PROCEED

7    SIMPLY WHERE IT IS ALLEGED THAT A PLAINTIFF DID NOT

8    KNOWINGLY AND INTENTIONALLY PLACE THE DEFENDANT IN

9    A MONOPOLY POSITION.

10             THAT TENDS TO TRY AND PUT DOWN ON A

11   PINPOINT SOMETHING THAT IS PERHAPS FAR MORE COMPLEX

12   THAN THAT AND WHICH LED THE COURT TO ITS DECISION.

13             WHETHER A PRODUCT SUCH AS A CELLULAR

14   VOICE AND DATA SERVICES THAT INDISPUTABLY EXISTED

15   LONG BEFORE AN INDEPENDENT OF A FOREMARKET PRODUCT

16   CAN BE CONSIDERED WHOLLY DERIVATIVE FROM AND

17   DEPENDENT ON THAT FOREMARKET PRODUCT AS REQUIRED

18   UNDER ICON TO SUPPORT COGNIZABLE RELEVANT MARKET.

19             WHETHER A COMPANY'S INITIAL ENTRY

20   STRATEGY INTO A HIGHLY COMPETITIVE PRIMARY MARKET

21   CAN GIVE IMMEDIATE RISE TO COGNIZABLE MONOPOLY

22   CLAIMS AGAINST THAT COMPANY IN AN AFTERMARKET

23   LIMITED TO THAT COMPANY'S NEWLY LAUNCHED PRODUCT.

24             I CAN TELL YOU THAT IF YOU WERE TO GO TO

25   THE COURT OF APPEALS WITH THESE AS YOUR ISSUES AND

7

1    IN MY VIEW MEASURE THOSE UP AGAINST THE ANALYSIS

2    DONE BY THE COURT, IT WOULD SEEM TO BE THAT THERE'S

3    A DISCONNECT.

4         SO WHAT I NEED TO BE CONVINCED IS THAT

5    YOU'RE WILLING TO ACCEPT MY RULING AND MY LANGUAGE

6    AND MY ORDER AND FIND THAT AS THE BASIS OF APPEAL

7    AS OPPOSED TO REFRAMING THE ISSUE IN ANY PARTICULAR

8    WAY.

9         MR. PFEIFFER:  YOUR HONOR, LET ME BE

10   CLEAR, I THINK WE ARE.  WE HAVE NO DESIRE TO DO

11   ANYTHING OTHER THAN TO ACCURATELY REPRESENT WHAT

12   THE RULING SAYS AND WHAT WE BELIEVE TO BE THE

13   RAMIFICATIONS OF THE RULING.

14        AND THE PARTICULAR PHRASING OF THAT IS,

15   FRANKLY, A LOT LESS IMPORTANT TO US THAN GETTING

16   THOSE ISSUES CERTIFIED FOR APPEAL.

17        AGAIN, I APOLOGIZE IF YOUR HONOR FEELS

18   THAT WE HAVE MISCHARACTERIZED YOUR HOLDING.  THAT

19   IS NOT OUR INTENT, AND IT WOULD NOT BE OUR INTENT

20   TO DO AT ANY POINT.

21        AND WE HAVE ATTEMPTED TO QUOTE AND

22   OBVIOUSLY WOULD BE PROVIDING THE COURT OF APPEALS

23   WITH YOUR OPINION AND QUOTING TO IT THROUGHOUT.

24        THAT'S REALLY OUR ISSUE, YOUR HONOR.

25        AND IF WE HAVE CHARACTERIZED THINGS IN A

8

1    PARTICULAR WAY, AGAIN, IT'S NOT OUR INTENT AT ALL

2    TO MISCHARACTERIZE THE COURT'S RULING AND IT IS THE

3    ULTIMATE -- THE COURT'S ULTIMATE RULING OF DECIDING

4    THAT THESE ARE AFTERMARKET CLAIMS THAT CAN AT THIS

5    POINT SURVIVE THAT WE WANT THE NINTH CIRCUIT TO

6    REVIEW.

7              SO WE'RE OBVIOUSLY FULLY PREPARED TO

8    TREAT THE LANGUAGE, THE FRAMING OF THIS AS

9    APPROPRIATE TO GET THE ISSUE REVIEWED AND GET THE

10   GUIDANCE OF THE NINTH CIRCUIT.

11             THE COURT:  WELL, NEWCAL IS A NINTH

12   CIRCUIT OPINION SO DO I UNDERSTAND THAT YOU BELIEVE

13   THAT THE CIRCUIT HAS NOT -- DID NOT SPEAK CLEARLY

14   IN NEWCAL?

15             MR. PFEIFFER:  WELL, YOUR HONOR, AGAIN,

16   AND LET ME BE CLEAR BECAUSE I THINK THERE IS SOME

17   SUGGESTION FROM THE PLAINTIFFS HERE THAT WHAT WE'RE

18   ASKING THIS COURT TO DO OR WHAT WE'RE ASKING THE

19   NINTH CIRCUIT TO DO IS TO REVISIT ICON.

20             AND THIS MOTION, APPLE'S MOTION, IS NOT A

21   MOTION FOR RECONSIDERATION.  WE'RE NOT ASKING YOU

22   TO RECONSIDER YOUR ORDER.  WE'RE NOT ASKING YOU TO

23   OBVIOUSLY RECONSIDER ICON.

24             WHAT WE'RE SAYING IS THAT -- AND

25   OBVIOUSLY IT WOULD NOT BE OUR BURDEN EITHER UNDER

                                                        9

1    1292(B) TO TELL THE COURT YOU MUST DECIDE YOU'RE

2    WRONG OR YOU MUST DECIDE THAT ICON IS WRONG.

3              WHAT WE'RE SAYING IS THAT THE APPLICATION

4    OF ICON TO THESE CIRCUMSTANCES IS A VERY UNSETTLED

5    PROSPECT, AND WE BELIEVE THAT THE NINTH CIRCUIT IF

6    IT HAD A CHANCE TO LOOK AT IT WOULD NOT WANT ICON

7    APPLIED AS EXPANSIVELY AS IT HAS BEEN IN THIS CASE.

8              AS JUST ONE PARTICULAR EXAMPLE OF THAT,

9    YOUR HONOR, I THINK WHAT HAS BEEN SET UP BY THE

10   PLAINTIFFS AND CERTAINLY THE WAY THAT I THINK

11   THEY'RE URGING INTERPRETATION OF ICON AND OUR

12   INTERPRETATION OF WHAT THE COURT DID IN YOUR ORDER

13   IS YOU HAVE SET UP EFFECTIVELY A SUBJECTIVE TEST

14   FOR CONSUMER AWARENESS.

15             WE BELIEVE THAT ICON DID DEAL WITH THAT

16   ISSUE.  IT -- ALTHOUGH ICON USED THE LANGUAGE OF

17   KNOWINGLY AND VOLUNTARILY PLACING THE DEFENDANT IN

18   A MONOPOLY POSITION, IT DIDN'T LIMIT ITSELF TO THAT

19   AS A SUBJECTIVE TEST.

20             IT VERY SPECIFICALLY SAID AFTERMARKET

21   CLAIMS WOULD FAIL IF A REASONABLE PERSON COULD HAVE

22   DISCOVERED THE INFORMATION, AN OBJECTIVE REASONABLE

23   PERSON TEST.  THAT'S WHAT WE FEEL HAS BEEN LOST IN

24   THE ORDER AND THAT'S THE ISSUE THAT WE THINK

25   CLARITY FROM THE COURT OF APPEALS WOULD HELP.

10

1          AGAIN, WE DON'T THINK THAT'S A CHANGE IN

2     ICON.  WE DON'T THINK THAT'S SOMETHING MISSING FROM

3     ICON, BUT WE BELIEVE IT IS AN UNSETTLED ISSUE AND

4     IT HASN'T BEEN EXPRESSLY DEALT WITH IN ANY OTHER

5     CASE THAT WE'RE AWARE OF TREATMENT AS A PURELY

6     SUBJECTIVE TEST.

7          GUIDANCE ON THAT WOULD NOT JUST HELP THIS

8     CASE, BUT IT WOULD APPLY MUCH MORE BROADLY.  THERE

9     ARE -- THERE IS OBVIOUSLY A REBIRTH OF AFTERMARKET

10    LITIGATION IN THE COUNTRY, YOUR HONOR.

11         I BROUGHT JUST AS AN EXEMPLAR THE

12    MATERIALS FROM THE ABA ANTITRUST SECTION SPRING

13    MEETING COMING UP IN MARCH WHICH HAS A PANEL

14    DEVOTED SOLELY TO WHAT IT CALLS THE LEGACY OF

15    KODAK, AFTERMARKETS AND TYING.

16         THIS IS VERY MUCH A LIVE ISSUE, AND THE

17    NOTION THAT AFTERMARKETS COULD BE FRAMED BY A

18    SUBJECTIVE TEST OF WHAT THE PLAINTIFFS, THE

19    CUSTOMERS' INTENT WAS, REGARDLESS OF WHAT

20    DISCLOSURES WERE MADE TO THEM, WHAT A REASONABLE

21    PERSON WOULD HAVE DONE WITH THOSE DISCLOSURES OR

22    INFORMATION THAT WAS AVAILABLE TO THEM, WE BELIEVE

23    THAT THAT IS IMPORTANT INFORMATION FOR THE WHOLE

24    INDUSTRY AND OBVIOUSLY WOULD BE OUTCOME

25    DETERMINATIVE IN THIS CASE.

                                                    11

1          THE COURT:  WELL, I GUESS I'LL THINK

2     ABOUT THIS SUBJECTIVE-OBJECTIVE DISTINCTION THAT

3     YOU'RE MAKING.

4          YOU READ MY ORDER AS SAYING IT'S PURELY A

5     SUBJECTIVE DECISION?

6          MR. PFEIFFER:  THAT A PURELY SUBJECTIVE

7     STATE WOULD SUFFICE, YOUR HONOR, I GUESS WOULD BE A

8     MORE ACCURATE CHARACTERIZATION, YES.

9          AND WE BELIEVE THAT --

10         THE COURT:  BUT YOU WOULD BE FORCED UNDER

11    THESE CIRCUMSTANCES TO ACCEPT THE ALLEGATIONS OF

12    THE COMPLAINT AS PROVABLE, AND YOU HAVE CARRIED

13    THAT, YOU CARRY THAT WITH YOU TO THE CIRCUIT IF I

14    ALLOW THE CASE TO GO UP ON APPEAL?

15         MR. PFEIFFER:  NO QUESTION WE HAVE TO

16    TAKE THE ALLEGATIONS OF THE COMPLAINT AS TRUE,

17    TOGETHER WITH JUDICIALLY NOTICEABLE MATERIALS.

18         BUT, YES, YOUR HONOR.

19         THE COURT:  WELL, IS IT OBJECTIVE OR

20    SUBJECTIVE TO AGREE TO A LONGER THAN A TWO YEAR --

21    TO AGREE TO A TWO YEAR, NOT KNOWING AT THAT POINT

22    THAT YOU'RE SUBJECT TO FIVE YEARS?

23         DOES THAT REQUIRE A SUBJECTIVE JUDGMENT

24    OR IS THAT -- THAT'S NO JUDGMENT AT ALL BECAUSE

25    YOU'RE BEING DEPRIVED OF JUDGMENT?

                                                    12

1          MR. PFEIFFER:  WELL, YOUR HONOR, I

2     UNDERSTAND.  I THINK THE DISTINCTION THAT I'M

3     TRYING TO DRAW OCCURS AT A DIFFERENT POINT.

4          THE ISSUE IS WAS THERE ENOUGH INFORMATION

5     OUT THERE THAT A REASONABLE PERSON COULD NOT HAVE

6     DISCOVERED THAT THE TERM WAS NOT TWO YEARS BUT WAS,

7     IN FACT, FIVE YEARS?

8          THAT'S THE ISSUE, AND THAT'S THE WAY THAT

9     ICON FRAMES IT.

10          THE COURT:  "OUT THERE" MEANING TO COME

11     FROM SOMEPLACE ELSE?

12          MR. PFEIFFER:  EXACTLY RIGHT.  THAT THERE

13     IS NO REQUIREMENT OF APPLE HAVING IN ITS STORES A

14     GREAT BIG SIGN THAT SAYS, HEY, IT'S FIVE YEARS,

15     GUYS.

16          IF THE INFORMATION IS OUT THERE IN THE

17     PUBLIC, THAT FITS THE ICON OBJECTIVE TEST OF COULD

18     A REASONABLE PERSON HAVE DISCOVERED IT?

19          THE COURT:  HOW KNOWN DOES IT HAVE TO BE

20     TO BE "OUT THERE" IN YOUR ARGUMENT?

21          MR. PFEIFFER:  WELL, YOUR HONOR, THAT'S

22     NOT AN ISSUE WE HAVE GOTTEN A CHANCE TO BRIEF.

23          MY TAKE ON IT, YOUR HONOR, IS THAT IT

24     WOULD BE SIMILAR TO A STATUTE OF LIMITATIONS THAT

25     IF IT'S AN INQUIRY NOTICE, I THINK A REASONABLE

13

1 PERSON IS ON INQUIRY NOTICE WHEN THE INFORMATION IS

2 AVAILABLE IN THE PUBLIC.

3     I THINK THIS IS A PARTICULARLY

4 INTERESTING SITUATION, YOUR HONOR, BECAUSE THIS IS

5 NOT LIKE A KODAK COPIER, WHICH IS SORT OF NOT OF A

6 PARTICULAR INTEREST TO ANYONE OTHER THAN PERHAPS

7 PURCHASING PEOPLE.

8     THE I-PHONE -- I DON'T WANT TO SAY --

9     THE COURT: DO YOU THINK IF IT WAS

10 EQUALLY OUT THERE IN THE PUBLIC DOMAIN THAT IF YOU

11 BOUGHT A CELL PHONE AT SOME POINT WHEN YOUR SERVICE

12 CONTRACT EXPIRED YOU COULD SWITCH TO A DIFFERENT

13 PROVIDER?

14     AND YOU THINK IT WAS OUT THERE THAT YOU

15 COULD PUT DIFFERENT SIMM CARDS IN THEM TO USE THEM

16 IN DIFFERENT WAYS IN DIFFERENT COUNTRIES AS MUCH AS

17 IT WAS OUT THERE THAT PERHAPS THEY WERE LOCKED INTO

18 AN APPLE AT & T CIRCUMSTANCE?

19     MR. PFEIFFER: NO, YOUR HONOR. AND TWO

20 REASONS WHY THAT IS SO.

21     ONE IS THAT OBVIOUSLY THE RULE OF THE

22 GENERAL DOES NOT TRUMP THE SPECIFIC WOULD APPLY

23 HERE.

24     THERE WAS APPLE SPECIFIC INFORMATION

25 ABOUT WHAT APPLE'S POLICIES WERE. IF THAT RULE

14

1    THAT YOU ANNOUNCED WERE THE CASE, THEN PARTIES

2    COULD NEVER COME INTO A MARKET, THIS TIES TO THE

3    INITIAL ENTRY STRATEGY, YOUR HONOR.  PARTIES COULD

4    NEVER COME INTO THE MARKET WITH A DIFFERENT

5    STRATEGY THAN COMPETITORS DID.

6         WE CAME INTO A VERY COMPETITIVE

7    MARKETPLACE.  PARTIES HAD DIFFERENT PRACTICES

8    WITHIN THAT MARKETPLACE.  APPLE ADOPTED ITS OWN

9    STRATEGY.  THAT STRATEGY BECAME KNOWN PRIOR TO THE

10   FIRST I-PHONE BEING SOLD AND THAT'S THE POINT.

11        THIS INFORMATION WAS RABIDLY DISCUSSED.

12   THIS, AGAIN, IS NOT PEOPLE BUYING PRINTERS.  THERE

13   WAS FORUMS AND THIS WAS IN THE MAINSTREAM PRESS AND

14   THIS WAS NOT HIDDEN INFORMATION, NOT INFORMATION WE

15   COULD HAVE HIDDEN IF WE WANTED TO.

16        THE COURT:  WHAT ABOUT THE REST OF THE

17   LAWSUIT WHILE I ALLOW THIS?  AS I UNDERSTAND THE

18   PROCESS, THE CIRCUIT WOULD HAVE TO AGREE TO ACCEPT

19   THIS.

20        MR. PFEIFFER:  YES, YOUR HONOR.

21        THE COURT:  AND IF THEY DON'T ACCEPT IT

22   THEN WE'RE BACK HERE.

23        IF THEY DO ACCEPT IT, WHILE DURING THE

24   PERIOD OF TIME THAT THEY'RE CONSIDERING IT, I

25   SUPPOSE I COULD GO AHEAD WITH THE CASE, BECAUSE THE

15

1    RULE DOES SPEAK TO NO STAY AUTOMATICALLY BEING

2    GRANTED, I WOULD HAVE THE DISCRETION TO KEEP GOING.

3    BUT WHAT IF THEY ACCEPT THE QUESTION, WOULD THE

4    REST OF THE CASE HAVE TO BE STAYED?

5         MR. PFEIFFER:  YOUR HONOR, I THINK "HAVE

6    TO" IS PROBABLY A BIT STRONG.

7         I THINK OUR VIEW, WE HAVE NOT DISCUSSED

8    THIS IN DETAIL, BUT OUR VIEW I THINK WOULD BE THAT

9    IT WOULD MAKE SENSE, THAT IT WOULD BE THE MOST

10   EFFICIENT COURSE TO STAY THE CASE, BUT, NO, IT

11   WOULDN'T HAVE TO BE.

12        I THINK IF THE ANTITRUST CLAIMS WERE

13   BEING REVIEWED, SUBJECT AGAIN TO IF YOUR ORDER WERE

14   CERTIFIED FOR APPEAL, IT IS CERTAINLY CONCEIVABLE

15   THAT THE PARTIES COULD PROCEED TO THINGS LIKE THE

16   BRICKING CLAIMS, THE COMPUTER --

17        THE COURT:  BUT NOT THE ANTITRUST?

18        MR. PFEIFFER:  NO, YOUR HONOR.

19   ESPECIALLY THE WAY YOU'RE TALKING ABOUT IT, I THINK

20   THE ISSUES WOULD BE WRAPPED UP IN ANY APPEAL,

21   HOWEVER FRAMED, IT WOULD BE BROAD ENOUGH, THAT IT

22   WOULDN'T MAKE SENSE TO GO FORWARD WITH THE

23   ANTITRUST CLAIMS.

24        THE COURT:  VERY WELL.  LET'S HEAR FROM

25   YOUR OPPONENT.

16

1          MR. PFEIFFER:  THANK YOU, YOUR HONOR.

2          MR. RIFKIN:  GOOD MORNING, MAY IT PLEASE

3     THE COURT, MARK RIFKIN ON BEHALF OF THE PLAINTIFFS.

4          WE DO CERTAINLY AGREE WITH THE COURT THAT

5     THE WAY THAT APPLE HAS PHRASED THESE QUESTIONS THAT

6     IT INTENDS TO ADVANCE ON APPEAL SUGGESTS AN OUTCOME

7     THAT WE THINK IS BOTH INCONSISTENT WITH THE COURT'S

8     DECISION AND UNSUPPORTED BY THE LAW.

9          SO WE DON'T THINK THE COURT -- NUMBER

10    ONE, WE CERTAINLY DON'T THINK THE COURT IS REQUIRED

11    TO, NOR DO WE THINK THAT THE COURT SHOULD CERTIFY

12    THESE SPECIFIC QUESTIONS FOR APPEAL.

13         BUT MORE IMPORTANTLY, WE THINK THAT THE

14    QUESTIONS DEMONSTRATE APPLE'S INTERPRETATION OF

15    BOTH THE COURT'S ORDER AND ITS INTERPRETATION OF

16    THE LAW WHICH WE THINK IN THE CIRCUMSTANCES THAT WE

17    HAVE ADDRESSED IN THE BRIEF MAKE IT PRETTY CLEAR

18    THAT AN INTERLOCUTORY APPEAL IS NOT WARRANTED HERE.

19         AND I WILL BRIEFLY TRY TO EXPLAIN THIS

20    ISSUE.  AND I'LL NOTE THAT THE DISCUSSION THAT

21    ENSUED WITH COUNSEL FOR APPLE ABOUT THIS

22    DISTINCTION BETWEEN SUBJECTIVE AND OBJECTIVE IS AN

23    INTERESTING ONE BECAUSE APPLE SEEMS NOW TO BE

24    INSISTING THAT THE DETERMINATION HAS TO BE AN

25    OBJECTIVE ONE BUT THE PLAINTIFFS ARE MAKING IT A

                                                      17

1    SUBJECTIVE ONE.

2             I SAY IT'S INTERESTING BECAUSE IT ARISES

3    IN THE CONTEXT OF THE OTHER MOTIONS THAT ARE

4    PENDING, WHICH THE COURT HAS DECIDED TO HEAR ON

5    SUBMISSION AND THAT'S AT & T'S MOTIONS, THEY HAVE

6    MOVED TO DISMISS AND THEY'VE ALSO MOVED TO STRIKE

7    THE CLASS ALLEGATIONS.

8             AND IN SUPPORT OF THEIR MOTIONS TO STRIKE

9    THE CLASS ALLEGATIONS, AT & T SAYS THAT THE

10   PLAINTIFFS INSIST UPON A SUBJECTIVE DETERMINATION

11   OF WHAT THE PLAINTIFFS AND THE CLASS MEMBERS KNEW

12   SO THAT THE DEFENDANTS WOULD NEED TO DEPOSE EACH

13   AND EVERY CLASS MEMBER ON THIS QUESTION OF WHAT

14   THEY KNEW.

15            AND SO INTERESTINGLY NOW WE HAVE A

16   POSITION WHERE APPLE IS SAYING ONE THING AND AT & T

17   IS SAYING THE OTHER.

18            I, FRANKLY, THINK NEITHER ONE OF THOSE

19   ARGUMENTS IS RIGHT, AND LET ME VERY BRIEFLY EXPLAIN

20   WHY.

21            IN NEWCAL WHICH, YOUR HONOR, I SUBMIT IS

22   CLEAR, IT'S PRECISE, IT IS REASONABLY ARTICULATED

23   AND IT HAS PROVIDED AN ADEQUATE GUIDELINE FOR THE

24   COURT'S DECISION.

25            IN NEWCAL THE COURT DECIDED THAT THE WAY

                                                        18

1     TO RECONCILE THE KODAK CASE, THE SUPREME COURT

2     DECISION IN KODAK WITH THE TWO CIRCUIT COURT

3     DECISIONS, THE THIRD CIRCUIT'S DECISION IN THE

4     PIZZA CASE, IN THE DOMINOS PIZZA CASE AND THE NINTH

5     CIRCUIT'S PRIOR CASE IN THE HUMANA HOSPITAL CASE

6     WAS TO SAY THAT THE TWO CASES BY THE CIRCUIT

7     COURTS, WHERE AFTERMARKET CLAIMS WERE NOT ALLOWED,

8     THE PLAINTIFFS IN THOSE CASES, IN FACT, AGREED TO

9     THE LIMITATIONS THAT WERE ATTACKED IN THE CASES.

10          AND SO THE COURT SAID -- AND I'M NOW

11    GOING TO READ DIRECTLY FROM THE NINTH CIRCUIT'S

12    DECISION IN NEWCAL, "THREE RELEVANT PRINCIPLES

13    EMERGE.  FIRST THE LAW PERMITS AN ANTITRUST

14    CLAIMANT TO RESTRICT THE RELEVANT MARKET TO A

15    SINGLE BRAND OF THE PRODUCT AT ISSUE AS IN EASTMAN

16    KODAK."

17          WE HAVE DONE EXACTLY THAT.  WE HAVE

18    RESTRICTED THE MARKET, THE AFTERMARKET FOR SERVICE

19    VOICE AND DATA SERVICE TO THE I-PHONE VOICE AND

20    DATA SERVICE.

21          "SECOND, THE LAW PROHIBITS AN ANTITRUST

22    CLAIMANT FROM RESTING ON MARKET POWER THAT ARISES

23    SOLELY FROM CONTRACTUAL RIGHTS THAT CONSUMERS

24    KNOWINGLY AND VOLUNTARILY GAVE TO THE DEFENDANT, AS

25    IN QUEEN CITY PIZZA AND FORESITE."

                                              19

1          NOW, IN THE QUEEN CITY PIZZA AND

2     FORESIGHT THE COURT HAD IN FRONT OF IT A WRITTEN

3     CONTRACT.  THE COURT HERE HAS IN FRONT OF IT HAS A

4     WRITTEN CONTRACT.

5          IN THE ONE INSTANCE APPLE WANTS TO SAY

6     THAT THE WRITTEN CONTRACT DOESN'T MATTER BECAUSE

7     THERE WAS -- THERE WERE BLOGS, THERE WERE MESSAGE

8     BOARDS AND THERE WAS MAINSTREAM PRESS THAT TOLD THE

9     PLAINTIFFS THAT WHAT THE WRITTEN CONTRACT SAYS

10    WASN'T ACTUALLY WHAT THE PARTIES AGREED TO.

11         WELL, WE SAY THAT'S RIDICULOUS.  AND WE

12    SAY IT'S RIDICULOUS FOR A NUMBER OF REASONS, NOT

13    THE LEAST OF WHICH IS THE WRITTEN CONTRACT ITSELF.

14         AND WE BROUGHT THIS TO THE ATTENTION OF

15    THE COURT IN RESPONDING TO AT & T'S MOTION BUT LET

16    ME SIMPLY READ WHAT THAT CONTRACT SAYS.

17         "THE TWO-YEAR SERVICE AGREEMENT THAT

18    EVERY MEMBER OF THE CLASS SIGNED PROVIDES THAT THE

19    TERM OF THE AGREEMENT IS TWO YEARS AND IT PROVIDES

20    THAT IT CAN BE TERMINATED AT ANY TIME."

21         IT ALSO SAYS, "THAT THIS AGREEMENT AND

22    THE ACCOMPANYING DOCUMENTS MAKE UP THE COMPLETE

23    AGREEMENT BETWEEN YOU AND AT & T AND SUPERSEDE ANY

24    AND ALL PRIOR AGREEMENTS AND UNDERSTANDINGS BETWEEN

25    THE PARTIES."

20

1           IT IS FOLLY FOR APPLE AND AT & T TO

2    SUGGEST THAT SOME CONSUMER SOMEWHERE SHOULD HAVE

3    KNOWN SOMETHING THAT WAS PUBLISHED BEFORE THEY

4    ENTERED INTO THAT CONTRACT THAT WAS INCONSISTENT

5    WITH THE TWO-YEAR TERM OF THE CONTRACT BUT

6    NONETHELESS THEY AGREE TO BE BOUND, THE CONSUMERS

7    AGREE TO BE BOUND BY THOSE PRIOR INCONSISTENT

8    STATEMENTS.

9           THE COURT:  WELL, IS IT THAT THEY AGREED

10   TO BE BOUND OR AS A MATTER OF PRACTICALITY THEY

11   WOULD BE BOUND?

12          PART OF WHAT I CAME TO AS I WAS THINKING

13   ABOUT WHETHER TO CERTIFY THIS IS THE COMBINATION OF

14   THE CONTRACTUAL LANGUAGE, WHICH I AGREE WITH YOU ON

15   ITS FACE IS TWO YEARS.  AT THE END OF THAT TWO

16   YEARS, THERE'S A DETERMINATION.

17          THERE'S NOTHING THAT WOULD REQUIRE --

18   THERE'S NO CONTRACTUAL REQUIREMENT THAT THE

19   PURCHASER OF THE PHONE NOW CONTINUED TO SUBSCRIBE

20   BEYOND THAT TWO YEARS.  THEY HAVE NOT GIVEN UP

21   THAT.

22          I GUESS THEIR ALTERNATIVE WOULD BE TO

23   SIMPLY BUY ANOTHER PHONE OR TO TOSS THE I-PHONE AND

24   GO OUT AND DO SOMETHING ELSE.

25          IT'S ONLY THE PRACTICAL PROBLEM THAT THE

21

1    THE PHONE IS AN INSTRUMENT THAT LASTS NORMALLY

2    LONGER THAN TWO YEARS --

3              MR. RIFKIN:  RIGHT.

4              THE COURT:  -- THAT CREATES THE

5    AFTERMARKET.

6              AND WHAT I NEED TO DO IS TO DECIDE IF

7    THERE'S ANY BENEFIT TO ALLOWING THE CIRCUIT COURT

8    IN THE MIDDLE OF THIS CASE TO REVIEW THE QUESTION

9    OF WHETHER OR NOT THERE'S A COGNIZABLE ANTITRUST

10   CLAIM THAT CAN BE STATED UNDER THOSE CIRCUMSTANCES

11   BECAUSE THERE IS NO SECRET CONTRACT.  IT'S JUST A

12   TECHNOLOGY THAT KICKS IN AT THE POINT WHERE THE

13   CONTRACT IS OVER, WHICH AS A PRACTICAL MATTER BINDS

14   THE CONSUMER IF THEY WANT TO GET FURTHER BENEFIT

15   OUT OF THEIR PHONE TO SIGN UP AGAIN.

16             MR. RIFKIN:  RESPECTFULLY, YOUR HONOR,

17   THAT IS EXACTLY THE QUESTION AND IT IS EXACTLY THE

18   QUESTION THAT WAS IN FRONT OF THE NINTH CIRCUIT IN

19   NEWCAL, AND IT'S EXACTLY THE QUESTION THAT THE

20   COURT SAID NO TO IN NEWCAL.

21             AND LET ME EXPLAIN.

22             THERE WERE CONTRACTUAL RELATIONSHIPS

23   BETWEEN THE PLAINTIFFS IN NEWCAL AND THE DEFENDANT.

24             AND AT SOME POINT IN TIME ICON DECIDED TO

25   AMEND THOSE CONTRACTS.  AND THE PLAINTIFF ALLEGED

                                                      22

1    THAT ICON DID SO WITHOUT DISCLOSING THAT THE

2    AMENDMENTS WOULD LENGTHEN THE TERM OF THEIR

3    ORIGINAL AGREEMENT.

4           THAT'S NO DIFFERENT THAN THE SITUATION WE

5    HAVE HERE.  THERE WAS AN ORIGINAL AGREEMENT BETWEEN

6    EVERY PLAINTIFF, EVERY CLASS MEMBER, AND AT & T.

7    TWO YEARS.  NO QUESTION ABOUT IT.

8           APPLE AND AT & T HAD THEIR OWN AGREEMENT

9    THAT WAS DIFFERENT THAN THE AGREEMENT BETWEEN THE

10   PLAINTIFFS AND CLASS MEMBERS AND AT & T.

11         AND AT SOME POINT IN TIME AT & T WAS

12   GOING TO HAVE TO AMEND THOSE AGREEMENTS TO ENFORCE

13   THE FIVE-YEAR DEAL IT HAS WITH APPLE.  IT'S EXACTLY

14   THE SAME.

15         THE COURT:  I UNDERSTAND YOUR POSITION.

16         ISN'T THIS THE LAWSUIT -- ISN'T THIS

17   LEGAL ISSUE WHAT IS THE ISSUE THAT WILL DECIDE THIS

18   CASE ONE WAY OR THE OTHER?

19         WOULDN'T WE ALL BENEFIT FROM SAYING LET'S

20   JUST CERTIFY THIS ISSUE?  IF THE PLAINTIFF IS

21   SUCCESSFUL IN STATING A CLAIM, THIS BECOMES A

22   DAMAGES CASE AND LET'S MOVE TO DAMAGES.

23         IF THE PLAINTIFF IS UNSUCCESSFUL IN

24   STATING A CLAIM, THE CASE IS GOING TO GO AWAY.  WHY

25   NOT LOOK AT THE REALITIES OF LITIGATION.

23

1          MOST CASES SETTLE.  THIS CASE, LIKE MOST,

2     CAN BE RESOLVED, BUT THE THING THAT IS GOING TO

3     DIVIDE US FOR THE LIFE OF THE CASE WILL BE THAT

4     ULTIMATE LEGAL ISSUE.

5          WHY NOT GET IT OVER WITH RIGHT NOW IF THE

6     CIRCUIT WILL ANSWER?

7          NOW, IF THE CIRCUIT WON'T ANSWER, THEY

8     CAN CERTAINLY REJECT THIS REQUEST, THEN WE TAKE THE

9     NORMAL COURSE.

10          BUT IF THE CIRCUIT ACCEPTS IT, THAT COULD

11     BE A BENEFIT FOR ALL OF US.

12          NOW, I DO HAVE THE QUESTION OF WHAT

13     HAPPENS WITH THE REST OF THE CASE, BUT IT SEEMS TO

14     ME THAT THE REST OF THE CASE WILL ALSO BE AFFECTED

15     BY THAT DECISION.  AT & T WILL BE PULLED INTO THE

16     SAME WHIRLPOOL OF SYNERGY THAT BECOMES THE LAW OF

17     THE CASE.

18          MR. RIFKIN:  WELL, IT DOESN'T RESOLVE ALL

19     OF THE CASE, AND WE EXPLAINED IN OUR RESPONSE TO

20     APPLE'S MOTION THAT IT LEAVES COMPLETELY

21     UNRESOLVED.

22          IT LEAVES THE I-PHONE APPLICATIONS

23     AFTERMARKET CLAIM COMPLETELY UNRESOLVED.

24          THERE'S NEVER BEEN ANY ARGUMENT ADVANCED

25     THAT ANY ONE AT ANY POINT IN TIME KNEW WHAT APPLE

                                                        24

1    PRACTICES WERE GOING TO BE WITH RESPECT TO THE

2    APPLICATIONS.

3            SO IF APPLE SAYS THAT CONSUMERS MUST HAVE

4    KNOWN AND SHOULD BE CHARGED WITH KNOWING ABOUT ITS

5    INTENT TO MONOPOLIZE THE SERVICE MARKET FOR FIVE

6    YEARS, THAT HAS NOTHING TO DO WITH THEIR INSISTENCE

7    THAT APPLICATIONS BE RESTRICTED ONLY TO PEOPLE WHO

8    DID BUSINESS WITH APPLE.  THAT'S NUMBER ONE.

9            NUMBER TWO, IT DOES NOTHING WITH RESPECT

10   TO THE MAGNUSON-MOSS WARRANTY ACT CLAIM.

11           IT DOES ABSOLUTELY NOTHING WITH RESPECT

12   TO THE CONSUMER TRESPASS CLAIM.

13           IT DOES ABSOLUTELY NOTHING WITH RESPECT

14   TO THE CONSUMER FRAUD CLAIM.

15           THERE ARE LARGE PARTS OF THIS CASE,

16   INCLUDING AN ANTITRUST CLAIM THAT ARE COMPLETELY

17   UNRESOLVED BY THIS APPEAL.

18           AND WHEN WE SAID THAT, APPLE REPLIED THAT

19   IT DOESN'T HAVE TO RESOLVE ALL OF THE ISSUES IN THE

20   CASE FOR IT TO BE A CONTROLLING QUESTION.

21           WELL, APPLE MISSED THE POINT.

22           THE POINT IS THAT THIS CASE IS GOING TO

23   PROCEED, LIKE IT OR NOT, NO MATTER WHAT THE COURT

24   DOES WITH THIS MOTION, NO MATTER WHAT THE NINTH

25   CIRCUIT DOES WITH THIS MOTION.

25

1                    NOW, I SUBMIT THAT APPLE HAS NOT MET THE

2         STANDARDS FOR AN INTERLOCUTORY APPEAL.

3                    WE HAVE EXPLAINED THAT IN OUR BRIEFS, AND

4         I DON'T WANT TO BELABOR THAT POINT.

5                    BUT THERE'S NO FUNDAMENTAL DIFFERENCE OF

6         OPINION HERE.

7                    WHAT APPLE REALLY WANTS TO DO IS THAT

8         THEY WANT TO RESHAPE THE LAW THAT THE NINTH CIRCUIT

9         JUST LAID OUT IN NEWCAL IN 2008.  THE INK IS BARELY

10        DRY ON THAT OPINION AND APPLE WANTS TO GO BACK AND

11        THEY WANT TO RELITIGATE THAT ISSUE IN THE NINTH

12        CIRCUIT.

13                   THE NINTH CIRCUIT DECIDED THESE ISSUES

14        EXACTLY.

15                   YOU CAN SUBSTITUTE THE NAMES OF THE

16        PARTIES IN THAT CASE FOR THE NAMES OF THE PARTIES

17        IN THIS CASE, AND THE RESULT IS ABSOLUTELY

18        IDENTICALLY THE SAME.

19                   THE COURT:  WELL, IT'S DIFFERENT IN ONE

20        RESPECT.  IN NEWCAL THERE WAS AN AMENDMENT TO THE

21        CONTRACT, AND SO IT DID DERIVE FROM A CONTRACTUAL

22        CHANGE.

23                   HERE THE ANTICOMPETITIVE BEHAVIOR DERIVES

24        FROM SOMETHING THAT APPLE AND AT & T AGREED TO, BUT

25        IT WASN'T FOLDED INTO THE CONTRACTUAL RELATIONSHIP

                                                          26

1    WITH THE CONSUMER.

2            ULTIMATELY A CONSUMER WOULD BE AFFECTED

3    BY IT, AND THAT'S WHAT I THINK IS A FAIR EXTENSION

4    AS I SAID IN MY ORDER.  BUT IT WAS AN EXTENSION.

5            I DON'T THINK THAT IT'S -- WELL, I'LL

6    THINK ABOUT THIS.

7            MR. RIFKIN:  YOUR HONOR, THE PRINCIPLE IN

8    NEWCAL THAT REALLY MATTERS IS THIS:  AN ANTITRUST

9    PLAINTIFF CANNOT COMPLAIN ABOUT BEING LOCKED INTO

10   AFTERMARKET FOR A PRODUCT WHICH HAS ANTICOMPETITIVE

11   IMPACT.

12           A CONSUMER CANNOT COMPLAIN ABOUT BEING

13   LOCKED INTO AN AFTERMARKET FOR PRODUCT IF THE

14   CONSUMER DELIBERATELY AND KNOWINGLY CHOOSES TO BE

15   LOCKED IN.  THAT'S THE REASON THAT NEWCAL WAS

16   DECIDED THE WAY IT WAS DECIDED.

17           IN NEWCAL THE COURT SAID THE PLAINTIFF

18   DID NOT AGREE TO THAT.

19           IN KODAK THE SUPREME COURT SAID THE

20   PLAINTIFF DID NOT AGREE TO THAT.

21           IN THE HUMANA HOSPITAL CASE AND IN THE

22   DOMINOS PIZZA CASE THE NINTH CIRCUIT AND THE THIRD

23   CIRCUIT SAID THE PLAINTIFFS HAD AGREED TO BE BOUND

24   IN THE AFTERMARKET.  A PLAINTIFF WHO AGREES TO BE

25   BOUND IN THE AFTERMARKET CAN'T COMPLAIN ABOUT BEING

                                                    27

1    BOUND IN THE AFTERMARKET.

2          THERE IS NONE OF THAT HERE.  THE --

3          THE COURT:  LET ME ASK IT THIS WAY, AND I

4    HAVE ASKED IT IN A DIFFERENT WAY, BUT LET ME ASK IT

5    THIS WAY:  I PRESUME THAT THERE WILL BE A HEARING

6    BEFORE THE CIRCUIT OR BRIEFING.  I HAVE NEVER DONE

7    THIS, QUITE FRANKLY, OR IF I HAVE, I HAVEN'T DONE

8    IT FREQUENTLY ENOUGH TO REMEMBER.

9          I OFTEN THINK THAT THE CIRCUIT JUDGES

10   WOULD PREFER TO HAVE CASES ON A FULL RECORD, BUT

11   THIS RULE EXISTS IN THOSE INSTANCES WHERE THERE IS

12   SOME LEGAL ISSUE WHICH CAN -- IT'S PIVOTAL IN A

13   CASE.

14         NOW, YOU'RE GOING TO MAKE AN ARGUMENT

15   BEFORE THE CIRCUIT THAT THEY SHOULD NOT CERTIFY THE

16   APPEAL FOR THE SAME REASONS THAT YOU'RE MAKING

17   HERE.

18         SO IF YOU'RE SUCCESSFUL, I'LL GET THE

19   CASE BACK.  IF YOU LOSE, IT MEANS THAT THE CIRCUIT

20   SEES SOMETHING WHICH IT WANTS TO TAKE A LOOK AT.

21         THE REASON THAT I'M -- THE REASON I ASK

22   THE QUESTION WOULDN'T WE ALL BENEFIT, BECAUSE IT

23   REDOUNDS TO YOUR BENEFIT AS WELL AS TO APPLE'S TO

24   HAVE THIS QUESTION ANSWERED.

25         I'VE GIVEN YOU MY VIEW ON IT, AND SO I'LL

28

1    LOOK AGAIN AND DECIDE WHETHER OR NOT THERE IS A

2    BASIS FOR ASKING THE NINTH CIRCUIT TO AT LEAST

3    CONSIDER IT.

4         THEY MIGHT REJECT IT BECAUSE UNDER YOUR

5    ARGUMENT THEY SHOULD REJECT IT BECAUSE THERE IS NO

6    REASON TO TAKE IT.

7         AND IF THAT REJECTION COMES, IT WOULD

8    SIGNAL THAT THIS IS A CASE THAT IS WITHIN THE

9    CONFINES OF ICON AND NEWCAL, AND, THEREFORE, IT

10   WOULD SET US ON A DIFFERENT PATH THAN IF THEY

11   ACCEPTED THE CASE.

12        MR. RIFKIN:  I DON'T WANT THE COURT TO

13   LOSE SIGHT OF THE PRACTICAL CONCERNS THAT ARE

14   IMPLICIT IN THE RULES.  THE RULE CONTEMPLATES THAT

15   THE DISTRICT COURT MAKES THE DETERMINATION IN THE

16   FIRST INSTANCE BECAUSE --

17        THE COURT:  OH, YES, I KNOW.  I'M NOT

18   PASSING THE TOTAL DECISION OVER TO THEM BUT THEY

19   GET A VETO.

20        MR. RIFKIN:  AND THIS IS THE PRACTICAL

21   CONSIDERATION THAT IS REFLECTED IN THE RULE, IT MAY

22   TAKE THE NINTH CIRCUIT 9 MONTHS, A YEAR, 15 MONTHS,

23   A YEAR, 18 MONTHS TO GET AROUND TO DECIDING THIS

24   ISSUE.

25        THE COURT:  BUT I CAN KEEP THE CASE GOING

29

 1    DURING THAT PERIOD OF TIME.

 2              MR. RIFKIN:  OF COURSE.

 3              THE COURT:  I WOULDN'T STAY THE CASE

 4    WHILE THE NINTH CIRCUIT IS CONSIDERING IT BECAUSE

 5    INDEED THAT WOULD BENEFIT US ALL BECAUSE YOUR

 6    BRIEFING AT A POINT WHERE THE DECISION WILL HAVE

 7    BEEN MADE WILL FLUSH OUT MORE ABOUT THE FACTS AND

 8    CIRCUMSTANCES, THE SO-CALLED "IT WAS OUT THERE"

 9    WILL BE BETTER FLUSHED OUT BY THAT POINT IN TIME.

10              MR. RIFKIN:  WELL, LET'S NOT LOSE SIGHT

11    OF THE FACT THAT THIS WAS A RULING ON A MOTION TO

12    DISMISS.

13              THE COURT:  YES.

14              MR. RIFKIN:  AND HOW MUCH OF THE RECORD

15    THE NINTH CIRCUIT WILL WANT TO CONSIDER IN DECIDING

16    THE CORRECTNESS OF YOUR HONOR'S DECISION ON A

17    MOTION TO DISMISS.

18              THE COURT:  THAT'S A GOOD REMINDER.  IT

19    WILL ALWAYS COME BACK TO YOUR COMPLAINT, WOULDN'T

20    IT?

21              MR. RIFKIN:  RIGHT.  AND I THINK THE

22    COMPLAINT IS ABSOLUTELY CRYSTAL CLEAR.  IT MEETS

23    NEWCAL WHICH ITSELF WAS ABSOLUTELY CRYSTAL CLEAR.

24              AND I THINK APPLE JUST DOESN'T MEET THE

25    THRESHOLD.  IT MIGHT BE BETTER IN SOME COSMIC SENSE

                                                        30

1    OF THE WORD TO HAVE FINALITY AND CERTAINTY,

2    ALTHOUGH I SUSPECT GIVEN THE WAY THIS CASE HAS

3    PROCEEDED THAT EVEN THEN WE WON'T HAVE FINALITY AND

4    CERTAINTY.

5            BUT I JUST DON'T THINK THAT APPLE MEETS

6    ITS BURDEN UNDER THE RULE FOR THE COURT TO CERTIFY

7    THIS TO THE NINTH CIRCUIT TO DECIDE IF THEY WANT TO

8    HEAR IT.

9            ANYTHING FURTHER, YOUR HONOR?

10           THE COURT:  NO THANK YOU.

11           MR. PFEIFFER:  YOUR HONOR, MAY I BRIEFLY

12   RESPOND?

13           THE COURT:  CERTAINLY.  BRIEFLY.

14           MR. PFEIFFER:  THANK YOU, YOUR HONOR.

15           FIRST OF ALL, YOUR HONOR, JUST BECAUSE

16   COUNSEL RAISED IT, THERE IS NO INCONSISTENCY

17   BETWEEN THE POSITION THAT APPLE WAS TAKING IN ITS

18   MOTION TO STRIKE AND OUR MOTION HERE.

19           BOTH TOOK YOUR ORDER AS SAYING THAT THERE

20   WAS A SUBJECTIVE TEST.  THAT'S WHY APPLE SAID THAT

21   THEY NEEDED DISCOVERY OF THE SUBJECTIVE STATE OF

22   MIND OF THE INDIVIDUAL PLAINTIFFS AND IT'S WHY WE

23   WERE SAYING THIS ISSUE SHOULD BE RESOLVED TO SEE

24   WHETHER IT IS, IN FACT, SUBJECTIVE OR OBJECTIVE.

25           THEY'RE ACTUALLY PERFECTLY CONSISTENT

31

1    POSITIONS.

2              ON THE DISTINCTION THAT COUNSEL WAS

3    RAISING BETWEEN WHAT HAPPENED IN QUEEN CITY PIZZA

4    AND KODAK, WHAT -- THE PROBLEM, AND I THINK YOUR

5    HONOR ACTUALLY HIT ON IT, THERE IS A CONTRACT FOR A

6    TWO-YEAR SERVICE AGREEMENT WITH AT & T.

7              AND WHAT THE PLAINTIFFS ARE TRYING TO SAY

8    HERE, THOUGH, IS THAT THERE HAD TO BE A FURTHER

9    CONTRACT TERM THAT SAID, AND BY THE WAY, YOU'LL

10   HAVE TO RENEW AND USE YOUR PHONE WITH AT & T AFTER

11   THAT.

12             IN FACT, THE CONTRACT IS COMPLETE.  AT

13   THE END OF TWO YEARS PEOPLE CAN STOP PAYING AT & T

14   AND STOP TAKING THEIR SERVICE AND THE CONTRACT WILL

15   END IF THEY DO NOTHING ELSE.

16             WHAT THE PLAINTIFFS ARE SAYING WAS NOT

17   DISCLOSED IS THAT THE PHONE WILL ONLY WORK WITH

18   AT & T SERVICE BEYOND PRESUMABLY, AT THIS POINT IT

19   HASN'T HAPPENED YET, BUT BEYOND THAT TWO-YEAR

20   PERIOD.

21             THAT'S THE ISSUE THAT IS SUPPOSED -- THAT

22   THEY SAY NOBODY COULD HAVE --

23             THE COURT:  WHAT DO YOU MEAN IT HASN'T

24   HAPPENED YET?  THERE IS AN AGREEMENT ALREADY IN

25   PLACE WITH RESPECT TO THE POST TWO-YEAR PERIOD.

                                                      32

1           AND PART OF THE FACTS THAT YOU DON'T

2     STATE IS THAT THE PHONE WON'T WORK AFTER TWO YEARS

3     UNLESS THERE IS SERVICE.

4           MR. PFEIFFER:  AND, AGAIN, YOUR HONOR,

5     THAT'S THE QUESTION, COULD IT -- THAT'S THE ICON

6     TEST WE BELIEVE IS WOULD A REASONABLE PERSON NOT

7     HAVE BEEN ABLE TO DISCOVER THAT?  WOULD IT HAVE NOT

8     HAVE BEEN REASONABLY POSSIBLE TO DISCOVER THAT

9     FACT?

10          BUT IT DOESN'T MEAN THAT THERE WAS A

11    CONTRACT TERM THAT APPLIED AND WOULD HAVE TOLD

12    PEOPLE OTHERWISE.  THE CONTRACT SAID AFTER TWO

13    YEARS YOU CAN STOP BUYING AT & T SERVICE.

14          THE COMPLAINT THE PLAINTIFFS HAVE IS THAT

15    THE CONTRACT SIMPLY DIDN'T SPEAK TO THIS ISSUE.

16          THE COURT:  WELL, IMPLICIT AFTER TWO

17    YEARS "YOU CAN STOP BUYING AT & T SERVICE" IS AND

18    "USE YOUR PHONE WITH SOME OTHER SERVICE."

19          MR. PFEIFFER:  WELL, YOUR HONOR, I DON'T

20    AGREE WITH THAT.

21          THE COURT:  AH.  HOW WOULD THE PHONE BE

22    USEFUL AFTER TWO YEARS?

23          MR. PFEIFFER:  AND IT MIGHT NOT BE.  BUT

24    THE POINT IS THAT --

25          THE COURT:  EVERY TIME YOU STAND UP I GO

                                                      33

1    THE OTHER WAY.  EVERY TIME HE STANDS UP I GO THE

2    OTHER WAY.  SO THIS IS A PERFECT SITUATION FOR ME

3    TO THINK MORE ABOUT IT.  THANK YOU VERY MUCH.

4              MR. SASSE:  DAN SASSE FOR AT & T

5    MOBILITY.

6              JUST TO MAKE IT EASIER FOR YOUR HONOR, WE

7    DO AGREE WITH YOUR HONOR THAT IT WOULD BE FAR MORE

8    EFFICIENT TO HAVE THE CIRCUIT TO CONSIDER THE

9    QUESTION AT THIS POINT, AND WE WOULD ASK IF THE

10   COURT IS INCLINED TO GO THAT WAY THAT YOU SEND US

11   WITH APPLE.

12             THE COURT:  YOU JOINED IN THIS?

13             MR. SASSE:  WE DID NOT JOIN, YOUR HONOR,

14   BECAUSE OUR MOTION TO DISMISS IS PENDING

15   SEPARATELY.

16             THE COURT:  SO I DON'T KNOW IF I SHOULD

17   RECOGNIZE YOU ALTHOUGH YOU HAVE A VERY HANDSOME

18   TIE.

19             MR. SASSE:  THANK YOU, YOUR HONOR.  BUT I

20   THINK IT WOULD BE IMPORTANT FOR THE COURT TO

21   RECOGNIZE THAT.

22             (WHEREUPON, THE PROCEEDINGS IN THIS MATTER

23   WERE CONCLUDED.)

24

25

                                                    34