1  LATHAM & WATKINS LLP
       Daniel M. Wall (Bar No. 102580)
2      Alfred C. Pfeiffer, Jr. (Bar No. 120965)
       Christopher S. Yates (Bar No. 161273)
3      Sadik Huseny (Bar No. 224659)
   505 Montgomery Street, Suite 2000
4  San Francisco, California  94111-6538
   Telephone:  (415) 391-0600
5  Facsimile:  (415) 395-8095
   Email:   Dan.Wall@lw.com
6  Email:   Al.Pfeiffer@lw.com
   Email:   Chris.Yates@lw.com
7  Email:   Sadik.Huseny@lw.com

8  Attorneys for Defendant
   APPLE INC.

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13

14  IN RE APPLE & AT&TM ANTITRUST          CASE NO. C 07-5152 JW
    LITIGATION
15                                          **APPLE INC.'S OPPOSITION TO
                                            PLAINTIFFS' MOTION FOR AN ORDER
16                                          COMPELLING APPLE TO PRODUCE
                                            DOCUMENTS, INCLUDING IPHONE
                                            SOURCE CODE**
17
                                            Date:      December 14, 2009
18                                          Time:      4:00 p.m.
                                            Place:     Courtroom 4, 5th Floor
19                                          Judge:     Hon. Richard Seeborg

20

21

22                       **PUBLIC REDACTED VERSION**

23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

**PAGE**

I.    INTRODUCTION ......................................................................................................... 1

II.    BACKGROUND ........................................................................................................... 2

    A.    Plaintiffs' 1.1.1-Related Allegations............................................................... 2

    B.    Procedural History Of The Instant Dispute .................................................... 4

III.    LEGAL STANDARD.................................................................................................... 5

IV.    ARGUMENT ................................................................................................................. 7

    A.    Plaintiffs' Failure To Appropriately Meet And Confer Is Itself A Sufficient Ground To Deny The Motion To Compel ........................................ 7

    B.    Apple Does Not Object to An Appropriately-Tailored Production of Code, Subject To Protections......................................................................... 8

    C.    Plaintiffs Have Not and Cannot Satisfy Their Burden of Showing That the Disputed Categories of OS 1.1.1 Source Code Are Relevant and Necessary ................................................................................ 9

        1.    Apple's OS 1.1.1 Source Code Is A Highly Confidential and Enormously Valuable Trade Secret and Business Asset ....................... 9

        2.    Plaintiffs' Fail to Meet Their Burden of Establishing That The Source Code Requests Are Relevant and Necessary for Plaintiffs' Claims on Class Certification ................................................. 10

        3.    The Only Competent Evidence Before The Court Establishes That Plaintiffs' Requests Are Overly Broad And Seek Information Neither Relevant Nor Necessary for Plaintiffs' Claims..................... 13

    D.    Even If The Court Were To Find The Disputed Portions of OS 1.1.1 Relevant and Necessary, Plaintiffs' Motion Should Be Denied Because Any Limited Potential Relevance Does Not Outweigh The Harm Of Disclosure To Apple ......................................................................... 14

V.    CONCLUSION............................................................................................................ 15

# TABLE OF AUTHORITIES

## CASES

*Advante Int'l Corp. v. Mintel Learning Tech.*,
   No. 05-01022 (RS), 2006 U.S. Dist. LEXIS 45859 (N. D. Cal. June 29, 2006) ................... 8

*Beam Sys. v. Checkpoint Sys.*,
   No. CV95-4068, 1997 U.S. Dist. LEXIS 8812  (C.D. Cal. Feb. 10, 1997) ............... 6, 14, 15

*Crossbow Tech., Inc. v. YH Tech.*,
   No. 03-04360, 2007 U.S. Dist. LEXIS 25926 (N.D. Cal. March 26, 2007) .......................... 8

*Forterra Sys., Inc. v. Avator Factory*,
   No. 05-04472, 2006 WL 2458804 (N.D.Cal. Aug. 22, 2006) ............................................. 12

*Franklin v. Allstate Corp.*,
   2008 U.S. Dist. LEXIS 28214 (N.D. Cal. Feb. 29, 2008) ..................................................... 7

*Hartley Pen Co. v. United States District Court*,
   287 F.2d 324 (9th Cir. 1961) ...................................................................................... 5, 6, 10

*In re Chronotek Systems, Inc.*,
   2007 U.S. Dist. LEXIS 54661 (S.D. Tex. July 27, 2007) ................................................ 5, 12

*Microsoft Corp. v. Multi-Tech Sys.*,
   No. 00-1412, 2001 U.S. Dist. LEXIS 23155 (Dist. Min. Dec. 14, 2001) ............. 6, 11, 12, 15

*Synopsys v. Nassda Corp.*,
   No. 01-2519, 2002 U.S. Dist. LEXIS 27668 (N.D. Cal. Sep. 16, 2002) ........................... 6, 9

*Thomas v. Evans*,
   No. 06-3581, 2008 U.S. Dist. LEXIS 6439 (N.D. Cal. Jan. 14, 2008) ................................. 8

*United States v. United Fruit Co.*,
   410 F.2d 553 (5th Cir.) .................................................................................................. 5, 14

*Viacom Int'l Inc. v. YouTube Inc.*,
   253 F.R.D. 256 (S.D.N.Y. 2008) ............................................................................... *passim*

*Zamani v. Carnes*,
   No. 03-00852, 2008 U.S. Dist. LEXIS 111153 (N.D. Cal. Aug. 15, 2008) ......................... 8

## OTHER AUTHORITIES

2 R. Milgrim, *Trade Secrets* § 7.06 ........................................................................................ 15

4 J. Moore's *Federal Practice* para. 26.60[4], at 26-211 (2d ed. 1984) ....................................... 5

8 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2043 at 559 (2d
   ed. 1995) .................................................................................................................................. 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# RULES

Federal Rule of Civil Procedure 37(a)(1) ................................................................. 7

N.D. California Civil Local Rule 37-1.................................................................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS
CASE NUMBER: C 07-05152 JW

## I.    INTRODUCTION

Plaintiffs' motion to compel production of broad swaths of Apple Inc.'s ("Apple") iPhone Operating System ("OS") version 1.1.1 source code is baseless, and should be denied.

First, plaintiffs come nowhere close to satisfying their burden of establishing both the relevance of the source code and the need for its production at this class certification stage of the proceedings.  A party seeking production of trade secret information such as source code has a far higher burden than a party seeking production of ordinary documents in litigation.  Parties seeking production of source code invariably submit a declaration from an expert that attempts to establish the relevance of such information and the ways in which the information will be secured by the requesting party.  Plaintiffs did not do so.  Their motion is supported by nothing but an attorney's declaration which contains unsupported assertions that it is "likely" that the source code contains information relevant to plaintiffs' class certification motion, citations to Wikipedia, and quotes from a book called *iPhone Hacks*.  That falls far short of what is required to obtain access to confidential and proprietary trade secret information such as source code.

Second, plaintiffs failed to conduct the meet and confer required by the Federal Rules of Civil Procedure and the Local Rules.  Despite repeated requests from Apple to tailor any requests for source code, plaintiffs insisted on demanding the "entirety" of iPhone OS version 1.1.1 source code.  Only on the day before filing their motion to compel, did plaintiffs finally identify—for the first time—a tailored list of the six categories of 1.1.1 source code their counsel asserts are relevant to plaintiffs' claims.   And, plaintiffs then rejected Apple's offer of a discussion between a consultant for plaintiffs and an Apple engineer that could have narrowed the issues in dispute or eliminated them entirely.

Plaintiffs have not in any way satisfied their burden of establishing that the iPhone OS version 1.1.1 source code they seek is either relevant or necessary.  Apple "should not be made to place this vital asset in hazard merely to allay speculation" on the part of plaintiffs as to its relevance. *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 260 (S.D.N.Y. 2008).  Notwithstanding plaintiffs' failure to meet their burden or conduct an appropriate meet and confer, Apple remains willing to provide portions of certain of the categories of source code sought by

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS
CASE NUMBER: C 07-05152 JW

1   plaintiffs, *subject to*: (1) security protocols described below and previously agreed-to by the parties

2   that would strictly limit the review of the source code and prohibit any copying of it; and (2)

3   modification of the Protective Order to require that any consultant for plaintiffs not conduct any

4   work for a competitor of Apple for at least one year following review of the source code.  Finally,

5   the baseband firmware that plaintiffs seek is not Apple's code, it is a third party's: Infineon

6   Technologies A.G. ("Infineon").  Apple has been in discussions with Infineon about producing

7   certain modules or portions of that code, and plaintiffs have in fact subpoenaed Infineon directly.

8   Since the baseband firmware is Infineon's source code, it should be dealt with separately.

9   **II.   BACKGROUND**

10      **A.    Plaintiffs' 1.1.1-Related Allegations**

11          Plaintiffs' allegations regarding iPhone OS 1.1.1 are focused on the claim that

12   Apple unlawfully sought to destroy the iPhones of consumers who had unlocked their iPhones by

13   altering the baseband of their phones.  A central driver of this claim is that Apple had warned

14   consumers, prior to the release of iPhone OS version 1.1.1, of the dangers of unlocking programs,

15   which plaintiffs take as proof that Apple knew and intended version 1.1.1 to "brick" iPhones.

16   Specifically, plaintiffs allege as follows:

17          97.    Apple acted deliberately and intentionally to destroy the
             iPhones of consumers who had lawfully unlocked their iPhones.
18          Apple's willful destruction is revealed by a press release Apple
             issued on September 24, 2007 (the "September 24 Press Release"),
19          three days before it released Version 1.1.1.

20          98.    The September 24 Press Release stated (emphases added):

21          Apple has discovered that many of the unauthorized iPhone
             unlocking programs available on the Internet cause irreparable
22          damage to the iPhone's software, *which will likely result in the*
             *modified iPhone becoming permanently inoperable when a future*
23          *Apple-supplied iPhone software update is installed*. ... Apple
             strongly discourages users from installing unauthorized unlocking
24          programs on their iPhones.   Users who make unauthorized
             modifications to the software on their iPhone violate their iPhone
25          software licensing agreement and void their warranty.   *The*
             *permanent inability to use an iPhone due to installing unlocking*
26          *software is not covered under the iPhone's warranty.*

27          99.    Before September 24, 2007, few if any iPhone users reported
             any problems resulting from unlocking their iPhones, much less the
28          handsets "bricking" or otherwise becoming "permanently
             inoperable." Yet Apple was able to predict in its September 24 Press

Release that such problems would begin to occur after Version 1.1.1 was released. Apple's statement that the existence of unlock codes would *"likely result in the modified iPhone becoming permanently inoperable when a future Apple-supplied iPhone software update is installed"* unambiguously evidences that Apple *knew* Version 1.1.1 would brick unlocked iPhones and *intended* such results.

Revised Consolidated Amended Class Action Complaint ("RCAC") ¶¶ 97-99 (emphasis in original).

In their motion to compel, plaintiffs highlight the fact that, in two other "catch-all" paragraphs in the complaint, they also allege that iPhone OS version 1.1.1 affected iPhones where the users had not only unlocked the phone but "had downloaded competing software applications" (and, thereby acted to "jailbreak" their phones).[1] Mot. at 4. In doing so, plaintiffs seek to support their position that not only should they be given access to the baseband portions of the iPhone OS version 1.1.1 source code, they should also be given access to additional portions of code, outside the baseband, that they assert might have something to do with "jailbreaking" iPhones. But, plaintiffs make no showing whatsoever that the portions of *code* they seek are relevant or necessary to any such claims. Plaintiffs' 1.1.1-related claims, and allegations of Apple's intent to damage iPhones, rest in large part on Apple's "warning" to users regarding the dangers of certain *unlocking* programs, set forth above. Plaintiffs have no such arguments or "evidence" with respect to the downloading of third party applications or "jailbreaking" iPhones, because as set forth in the declaration of Apple senior engineer John Wright, there is simply no basis for this. Wright Decl. ¶ 16. This failure is particularly glaring at this point in the litigation. Apple produced a significant volume of documents and materials related to 1.1.1 two months ago; the fact that plaintiffs have no support for their apparent claim that jailbreaking iPhones also caused "bricking," and certainly no support for why any particular portions of additional source code are necessary and relevant, is telling.

---

[1] For example, plaintiffs allege that "[i]n response to consumers exercising their legal right to unlock their iPhones or to install software applications that competed with Apple's, on September 27, 2007, under the guise of issuing an 'upgraded' version of the iPhone operating software, Apple knowingly issued and caused transmission of a purported update to the iPhone operating software, known as Version 1.1.1, which 'bricked' (that is, rendered completely inoperable) or otherwise damaged some iPhones that were unlocked or had downloaded competing software applications." RCAC ¶ 5.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS
CASE NUMBER: C 07-05152 JW

**B.    Procedural History Of The Instant Dispute**

On December 12, 2008, the Court issued its order bifurcating class and merits discovery and setting a class certification discovery and briefing schedule.  Since then, the parties have been engaged in class certification discovery, geared toward a current class certification hearing date of April 26, 2010.

Between January and March, 2009, the parties exchanged discovery requests and corresponding responses.  Huseny Dec. ¶ 2.  As part of this process, Apple requested that plaintiffs produce their iPhones for forensic examination, and plaintiffs requested that Apple produce various materials related to their 1.1.1 claims.   Apple agreed and produced thousands of pages of materials to plaintiffs related to OS 1.1.1, but as plaintiffs state in their motion, Apple objected to the production of any source code.  Plaintiffs did not ever raise any issue with Apple's objection to producing source code until June—approximately four months after Apple made such objections—and only after plaintiffs apparently discovered Apple's objection in the context of *Apple* pressing plaintiffs to produce their iPhones for forensic examination.  Huseny Decl. ¶ 7.

Around that time, the parties began discussing a proposed compromise whereby Apple would produce 1.1.1 source code in exchange for production for forensic examination of the iPhones that are the subject of plaintiffs' complaint (including those iPhones allegedly "bricked" by OS 1.1.1.).  Huseny Decl. ¶ 3.  Plaintiffs' oft-repeated claim in their motion to compel papers, that Apple "agreed to make the entire source code of Version 1.1.1 available for inspection" but later backtracked, mischaracterizes and misrepresents the actual record, because it fails to mention at all, let alone describe, the parties' negotiations and discussions on this proposed exchange.  To read plaintiffs' papers, one would never know of the proposed compromise and exchange, and certainly not know that the parties never reached final agreement or stipulation on the exact parameters of the exchange in large part because plaintiffs reneged entirely on their end of the proposed bargain.  Specifically, plaintiffs claimed a few days before plaintiffs' depositions were to begin that they had "discovered" that all of the iPhones to be forensically examined had somehow gone missing:  the plaintiffs had either had their allegedly "bricked" iPhones replaced under warranty (in direct contradiction to allegations in the complaint, which allegations plaintiffs admitted in deposition

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

4

APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS
CASE NUMBER: C 07-05152 JW

1    were false), had "lost" the allegedly bricked iPhones, or had given the allegedly "bricked" iPhones

2    to friends out of the country.  Huseny Decl. ¶ 4.

3          Despite this development, Apple notified plaintiffs that it would not object to the

4    production of the portions of iPhone OS version 1.1.1 source code related to the baseband

5    (baseband firmware and BBUpdater), subject to consent from Infineon, the owner of the baseband

6    firmware.  Huseny Decl. ¶ 5.  Thus, plaintiffs have known about the central dispute raised in their

7    motion to compel—what portions of Apple's confidential and proprietary 1.1.1 source code are

8    discoverable—for at least a month.  *Id.*  Yet, plaintiffs steadfastly failed to engage in discussions

9    with Apple aimed at actually resolving that dispute, and instead sought the production of the

10   entire version 1.1.1 source code.  Huseny Decl. ¶ 9.  Despite repeated requests, plaintiffs simply

11   refused to discuss with Apple what specific portions of the 1.1.1 source code they believed were

12   necessary for their class certification motion, and only identified the specific portions of the

13   source code they believed ought be produced *the day before* they filed the instant motion.  Huseny

14   Decl. ¶¶ 10, 11.

15   **III.    LEGAL STANDARD**

16         As a general rule, trade secrets and other confidential information are afforded

17   significant protection under the Federal Rules of Civil Procedure.  Unlike the case with typical,

18   non-confidential discovery, a party moving to compel the production of confidential information

19   has "the burden . . . to establish that the information is sufficiently relevant and necessary to his

20   case to outweigh the harm disclosure would cause to the person from whom he is seeking

21   information."  8 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2043 at 559 (2d

22   ed. 1995); 4 J. *Moore's Federal Practice* para. 26.60[4], at 26-211 (2d ed. 1984).  As the Ninth

23   Circuit has held, "the burden rests upon the party seeking disclosure to establish that the trade

24   secret sought is relevant and necessary to the prosecution or defense of the case."  *Hartley Pen*

25   *Co. v. United States District Court*, 287 F.2d 324, 331 (9th Cir. 1961); *see also In re Chronotek*

26   *Systems, Inc.*, No. 07-0279, 2007 U.S. Dist. LEXIS 54661, at *2 (S.D. Tex. July 27, 2007)

27   ("There is no dispute in this case that the subpoenaed source code qualifies as a confidential trade

28   secret . . . [thus, the movant] must demonstrate that it has a substantial need for the material.")

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS
CASE NUMBER: C 07-05152 JW

1 (citation omitted).

2         Courts are particularly careful when it comes to extremely sensitive and valuable

3 confidential information such as source code. These materials are often the crown jewels of

4 technology companies such as Apple. As such, courts understand well that even where disclosure

5 of such material would be pursuant to stringent security protocols and protective orders with strict

6 protections against nondisclosure (as is, essentially, universally the case), disclosing source code

7 even under such protection is simply not as safe as nondisclosure itself. In other words, even

8 where "the protections set forth in [a] stipulated confidentiality order are careful and extensive,"

9 they are "nevertheless not as safe as nondisclosure [and] [t]here is no occasion to rely on them,

10 *without a preliminary proper showing justifying production of the search code." Viacom Int'l Inc.*,

11 253 F.R.D. at 260 (emphasis added); *see also See Microsoft Corp. v. Multi-Tech Sys.*, No. 00-

12 1412, 2001 U.S. Dist. LEXIS 23155, at *19-21 (Dist. Min. Dec. 14, 2001). Accordingly, a party

13 seeking discovery of such materials must meet their burden of establishing relevance and need.

14 *See Hartley Pen Co.*, 287 F.2d. at 331-32 (setting aside those portions of order requiring

15 disclosure of confidential information where moving party failed to establish relevance and

16 necessity); *Viacom Int'l Inc.*, 253 F.R.D. at 260 (same); *Synopsys v. Nassda Corp.*, No. 01-2519,

17 2002 U.S. Dist. LEXIS 27668, at *3 (N.D. Cal. Sep. 16, 2002) (same); 8 C. Wright & A. Miller,

18 *supra*, § 2043 at 559.[2] And even should the moving party establish relevance and necessity, the

19 Court must balance the need for the confidential information against the injury that would ensue if

20 disclosure were ordered, which "should include consideration of all pertinent circumstances,

21 including dangers of abuse, good faith, and availability of other means of proof." *Id.*; *Beam Sys.*

22 *v. Checkpoint Sys.*, No. CV95-4068, 1997 U.S. Dist. LEXIS 8812, at * 8 (C.D. Cal. Feb. 10, 1997)

23 (recognizing that the disclosure of trade secrets in litigation, even with the use of an appropriate

24 protective order, "could become by indirection the means of ruining an honest and profitable

25 enterprise") (citations omitted).

26

27   [2]  The level of necessity that must be shown is that the information must be necessary for the
movant to prepare its case for trial, which includes proving its theories and rebutting its

28 opponent's theories. *See Hartley Pen Co.*, 287 F.2d at 328.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS
CASE NUMBER: C 07-05152 JW

IV.   **ARGUMENT**

    A.   **Plaintiffs' Failure To Appropriately Meet And Confer Is Itself A Sufficient Ground To Deny The Motion To Compel**

          Despite repeated requests to do so, plaintiffs never provided Apple with a tailored list outlining which particular portions of version 1.1.1 source code were reasonably relevant to and necessary for their claims. Instead, plaintiffs demanded that Apple provide them with "the entire source code for Version 1.1.1 of the iPhone operating system"—including portions indisputably not relevant to plaintiffs' claims, such as the source code for iPhone applications such as the iTunes music player, the Safari web browser, and so on. Huseny Decl. ¶ 9; Wright Decl. ¶ 8.   Only on the eve of filing their motion to compel did plaintiffs finally identify a more tailored list of portions of 1.1.1 source code allegedly relevant to their claims, albeit one still egregiously overbroad. Huseny Decl. ¶ 9; Wright Decl. ¶ 17, Mot. at 6 ("Rather than requesting the Court to compel Apple to produce all of the code for the entire operating system, plaintiffs have identified the layers of the operating system that are likely to contain relevant code."). Similarly, plaintiffs even sought the production of all source code for Apple's earlier iPhone OS, Version 1.0.2, until the eve of filing their motion—where they finally clarified that they sought only "the source code for the bootrooms associated with Versions 1.0.2 . . ." Mot. at 3.[3]

          Plaintiffs' conduct violates the good faith meet and confer requirements under the Federal and Civil Local Rules, and is in and of itself a sufficient ground to deny plaintiffs' motion. Fed. R. Civ. P. 37(a)(1); N.D. Cal. Civ. L. R. 37-1(a) ("The Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to FRCivP 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues."). Indeed, courts in this district have made clear that a moving party has an obligation to meet and confer in good faith—including providing relevant details of their positions on a dispute—prior to bringing a motion to compel. *See, e.g., Franklin v. Allstate Corp.*, 2008 U.S. Dist. LEXIS 28214, at *3-6 (N.D. Cal. Feb. 29, 2008) (holding that movant failed to satisfy Rule 37(a)(2)(A) and Local Rule

---

[3] Specifically, it was not until October 12, 2009 that Plaintiffs served Apple with a Second Set of Document Requests where for the first time they sought the production of 1.0.2 code. Huseny Decl. ¶ 10.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS
CASE NUMBER: C 07-05152 JW

1   37-1(a)'s meet and confer requirements where movant did not disclose details of discovery request

2   until filing of motion to compel).[4]  Had plaintiffs done so here, the issues raised in plaintiffs'

3   motion could have been substantially narrowed, or at least clarified, prior to motion practice.

4          **B.     Apple Does Not Object to An Appropriately-Tailored Production of Code,**
               **Subject To Protections**
5
6          Plaintiffs state that they are seeking to compel production of the following six

7   categories of source code:

8          (1) the source code for the kernel, Core OS layer and Core Services
           layer of Operating System 1.1.1;

9          (2) the source code for the Media and Cocoa Touch layers of
           Operating System 1.1.1, excluding however source code which deals
10         exclusively with the following iPhone components: Calculator,
           Calendar, Camera, Clock, Compass, Mail, Maps, Message, Notes,
11         Photos, Stocks, Text Messaging, Voice Memos, Weather, YouTube,
           iPod, iTunes, and Bluetooth;
12
13         (3) the source code for the baseband firmware that interacted with
           Operating System 1.1.1;
14
           (4) the source code for Purple Restore, the engine that interacts with
15         Operating System 1.1.1 to update the operating system;

16         (5) the source code for the iPhone baseband updater called BBUpdater,
           which is a command line tool used for flashing the iPhone's baseband
17         chip during installation of Operating System 1.1.1; and

18         (6) the source code for the bootroms associated with Operating System
           1.0.2 and Operating System 1.1.1, including baseband bootrom, ARM
19         bootrom, ARM Low-Level Bootloader, and ARM iBoot.

    Mot. at 1.
20
21         As plaintiffs well know, Apple does not object to an appropriately-tailored

22   production of code with respect to certain of these categories.   Since plaintiffs' claims of 1.1.1-

23   related "bricking" involve users who made changes to the baseband to unlock their phones, Apple

24   has already indicated to plaintiffs that it has no objection to a production of baseband-related

25   code, subject of course to (i) Apple's strict security protocols for such review, which plaintiffs

26   ────────────────
    [4]   *See also Advante Int'l Corp. v. Mintel Learning Tech.*, No. 05-01022 (RS), 2006 U.S. Dist.
        LEXIS 45859, at *6 (N. D. Cal. June 29, 2006); *Thomas v. Evans*, No. 06-3581, 2008 U.S.
27      Dist. LEXIS 6439, at *6 (N.D. Cal. Jan. 14, 2008); *Zamani v. Carnes*, No. 03-00852, 2008
        U.S. Dist. LEXIS 111153, at *2-4 (N.D. Cal. Aug. 15, 2008); *Crossbow Tech., Inc. v. YH*
28      *Tech.*, No. 03-04360, 2007 U.S. Dist. LEXIS 25926, at *2-3 (N.D. Cal. March 26, 2007).

1  have already agreed to, (ii) the consent of and production from Infineon, which owns the

2  proprietary baseband firmware and baseband bootrom code in question, as to the appropriate

3  modules or portion of such code to be provided, and (iii) appropriate restrictions and

4  confidentiality measures being followed with respect to the consultant plaintiffs intend to have

5  examine the code.  Apple takes this position as a measure of its good faith, despite the fact that, as

6  discussed below, there are serious questions as to whether plaintiffs are entitled to *any* source

7  code at this class certification stage of the proceeding and plaintiffs certainly have not met their

8  burden on this motion.  What this means specifically is that Apple has no dispute in principle as to

9  the following categories of code: (i) appropriate modules or portions of the baseband firmware

10 sought by Category (3) and the "baseband bootrom" sought in Category (6), although again this is

11 Infineon's code and subject to Infineon's view and production, and (ii) the BBUpdater code

12 sought by Category (5) (which, as Apple's code, Apple is willing to provide as soon as possible,

13 should plaintiffs desire to examine it prior to the additional categories of source code being

14 resolved).[5]

15     **C.**    **Plaintiffs Have Not and Cannot Satisfy Their Burden of Showing That the**
16             **Disputed Categories of OS 1.1.1 Source Code Are Relevant and Necessary**

17         **1.**    **Apple's OS 1.1.1 Source Code Is A Highly Confidential and**
18                **Enormously Valuable Trade Secret and Business Asset**

        It is undisputed that Apple's iPhone OS 1.1.1 source code is a highly confidential,

19 proprietary, and trade secret business asset, of enormous commercial value.  Wright Decl. ¶ 9;

20 *Synopsys*, 2002 U.S. Dist. LEXIS 27668, at *2 (recognizing that source code is a trade secret).

21 The iPhone OS is the key operational component of the iPhone, and offers a number of functions

22

23 [5]  As plaintiffs note, Mot. at 7, Apple and plaintiffs reached agreement that any review of source
24 code would be made pursuant to the standard protocol Apple uses in all litigation calling for
   the examination of such code, which protocol requires examination via a secure computer, in a
25 secure conference room, and with stringent protections in place against copying, cut-and-
   pasting, saving, storing or transferring the code in any capacity apart from carefully controlled
26 printing protocols.  Huseny Decl. ¶ 6.  As any source code Apple produces will be pursuant to
   such agreed-upon mechanisms, Apple asks that the Court include such direction in its Order
27 should the Court find it appropriate to order the production of any code.  Moreover, as noted,
   the Protective Order will also need to be modified to restrict the ability of a consultant for
28 plaintiff from conducting any work for a competitor of Apple for at least one year following
   review of the code.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS
CASE NUMBER: C 07-05152 JW

1  or services to application programs and users.  Wright ¶ 7.  It was designed not just to enable the

2  making of phone calls, but specifically to provide a rich and unparalleled mobile computing

3  platform so that Apple, applications developers and iPhone users could all benefit from a very

4  wide range of functionality.  Wright Decl. ¶ 9.  The significance of the iPhone OS to Apple's

5  entry into the cell phone industry, and to it long-term product strategy, cannot be overstated:  the

6  iPhone, and the ecosystem that has developed around it, has transformed and revolutionized the

7  cellular telephone industry, with the Phone OS instrumental in this.  Wright Decl. ¶ 9.   If Apple

8  were to disclose its source code, it could suffer great competitive harm.  Accordingly, Apple has

9  taken great security measures to protect the confidentiality of its code, even inside the company.

10  Wright Decl. ¶ 10.

11
        **2.    Plaintiffs' Fail to Meet Their Burden of Establishing That The Source
               Code Requests Are Relevant and Necessary for Plaintiffs' Claims on
12             Class Certification**

13           Plaintiffs must establish that the disputed portions of the 1.1.1 code are relevant

14  and necessary to the prosecution of their case "before disclosure of so valuable and vulnerable an

15  asset is compelled."  *Viacom Int'l Inc.*, 2008 U.S. Dist. LEXIS 50614, at * 11; *Hartley Pen Co.*,

16  287 F.2d at 330-331.  As the litigation has been bifurcated into class certification and merits

17  stages—and is currently in the class certification period—plaintiffs must therefore demonstrate

18  that the source code being sought is relevant and necessary to their demonstrating that

19  certification of the proposed class is appropriate under Rule 23 of the Federal Rules of Civil

20  Procedure.

21           Plaintiffs have failed to make, and cannot make, this showing.  Remarkably, in

22  attempting to explain their alleged need for the disputed portions of Apple's iPhone Operating

23  System 1.1.1 source code, plaintiffs contend only that:

24
           [T]he kernel, Core OS layer and Core Services layers of the
25         Version 1.1.1. operating system are *likely* to contain or lead to
           the discovery of relevant code, and the Media and Cocoa
26         Touch layers of the operating system are also *likely* to contain
           or lead to the discovery of relevant code, excluding however,
27         source code which deals exclusively with the following iPhone
           components: Calculator, Calendar, Camera, Clock, Compass,
28         Mail, Maps, Message, Notes, Photos, Stocks, Text Messaging,
           Voice Memos, Weather, YouTube, iPod, iTunes, and
           Bluetooth.

1   Mot. at 6 (emphasis added).  Plaintiffs add that the source code for the Purple Restore program is

2   also relevant because it was "implicated in the process of updating the iPhone software to Version

3   1.1.1." *Id.*

4          This is not competent evidence, or any proper showing at all.  Plaintiffs appear to

5   believe that all one must do to get access to the most confidential, sensitive information a

6   technology company has—its source code—is to proclaim the potential relevance of such code, and

7   that it is somehow "implicated" in plaintiffs' claims.  Not so.  Alleging the "likely" chance that

8   confidential and proprietary information will contain relevant source code, or its mere

9   "implication," falls far short of making the requisite particular showing of relevance.  *See Microsoft*

10  *Corp.*, 2001 U.S. Dist. LEXIS 23155, at *19-21 ("[Movant] Microsoft has pointed to nothing other

11  than the *potential* for relevance.  While we understand that it is difficult for Microsoft to

12  specifically identify how the [confidential information is] relevant, it has not even attempted to

13  make a showing of something other than the potential that all 'related' [confidential information]

14  may be relevant because they contain admissions . . . they cite no authority for such a proposition,

15  and we have been unable to find any.") (emphasis added); *see also Viacom Int'l. Inc.*, 253 F.R.D. at

16  260 (denying motion to compel the production of source code on the ground that the respondent

17  "should not be made to place [a] vital asset in hazard merely to allay [movant's] speculation").[6]

18          In fact, plaintiffs fail to offer any competent evidence or authority from which one

19  can determine the specific relevance or necessity of any portions of version 1.1.1.  Apple is

20  unaware of any cases where a court has ordered the production of source code without the

21  supporting declaration of an expert establishing that the information sought is relevant.  Yet,

22

23  [6]  Plaintiffs' reliance on *Forterra Sys., Inc. v. Avator Factory*, No. 05-04472, 2006 WL 2458804
24  (N.D.Cal. Aug. 22, 2006), Mot. at 8, is misplaced.  First, the case was governed by the Local
    Patent Rules, which mandate among other things, an accused infringer to "produce or make
25  available for inspection and copying . . . [s]ource code, specifications, schematics, flow charts,
    artwork, formulas, or other documentation sufficient to show the operation of any aspects or
26  elements of an Accused Instrumentality . . ." *Id.* at * 1 (citing Patent L.R. 3-4(a)).  Indeed, the
    Court explicitly noted that "[t]he holding of this court is limited to the facts and the particular
27  circumstances underlying the present motion." *Id.* at *1 n.1.  Even if the Court were inclined
    to consider *Forterra Sys., Inc.* instructive, the case is nevertheless inapplicable because unlike
28  plaintiffs, the  movant in *Forterra Sys., Inc.* established that the source code at issue was
    relevant. *Id.* at *1.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS
CASE NUMBER: C 07-05152 JW

1   although they have retained a consultant—one who intends to *review* Apple's highly sensitive

2   source code—plaintiffs fail to provide the Court with *anything* from the expert as to the relevance

3   of the code. To be sure, plaintiffs claim the following:

> The following factual issues are of critical importance to the motion for class certification: (1) whether Version 1.1.1 was identical on all iPhones (including iPhones that were upgraded from an earlier operating system as well as those shipped with Version 1.1.1 installed), (2) whether Version 1.1.1 worked the same on all iPhones, (3) whether Version 1.1.1 caused any jailbroken or unlocked iPhone to brick when its owner attempted to download Version 1.1.1, (4) whether Version 1.1.1 caused jailbroken or unlocked iPhones to "brick" by a common means or by means that affected only some of the iPhones, and (5) which categories of iPhones were bricked by Version 1.1.1. Unless Plaintiffs are given access to Version 1.1.1 source code, their ability to prove the size and scope of the Class affected by Version 1.1.1 will be severely compromised and unfairly prejudiced.

11   Mot. at 9. But even assuming these are all important factual issues for class certification, as

12   plaintiffs claim, plaintiffs offer nothing to support *why* the particular categories of code they are

13   seeking relate at all to these issues. The only declaration before the court is from counsel, who is

14   not, and does not claim to be for purposes of the motion, a computer expert – and who can only

15   claim that the code in question is "likely" to lead to relevant evidence. This is insufficient. Even

16   the sole case that plaintiffs cite in support of their motion, *Forterra*, included a declaration from

17   the movant's expert. *Forterra Sys. Inc.*, 2006 WL 2458804, at *2; *see also Viacom Int'l. Inc.*,

18   2008 U.S. Dist. LEXIS 50614, at * 8 (relying on declaration of an engineer in evaluating

19   relevance of source code); *In re Chronotek Systems, Inc.*, 2007 U.S. Dist. LEXIS 54661, at * 1-2

20   (appointing a Special Master for purposes of "providing a report and recommendation regarding

21   the relevance and necessity of the highly technical information"); *Microsoft Corp.*, 2001 U.S.

22   Dist. LEXIS 23155, at *20-21 (denying motion to compel where movant failed to point to any

23   evidence supporting their claim of relevance).

24        Were all this not enough, plaintiffs also make no showing whatsoever, as they

25   must, that any of this code is *necessary* to their claims or class certification arguments. Plaintiffs

26   have received nearly 300,000 pages in document production from Apple. Huseny Decl. ¶ 10.

27   There is nothing before this Court to indicate why this or any other evidence is insufficient, or

28   why plaintiffs need access to broad, irrelevant categories of source code.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS
CASE NUMBER: C 07-05152 JW

1          Absent a plausible and affirmative showing by plaintiffs that the disputed portions

2  of the version 1.1.1 source code are sufficiently relevant and necessary, plaintiffs are not entitled

3  to the code. *See Viacom Int'l Inc.*, 253 F.R.D. at 260; *see also See Microsoft Corp.*, 2001 U.S.

4  Dist. LEXIS 23155, at *19-21.

5        **3.**      **The Only Competent Evidence Before The Court Establishes That**

6                     **Plaintiffs' Requests Are Overly Broad And Seek Information Neither**
                   **Relevant Nor Necessary for Plaintiffs' Claims**

7          The only competent evidence regarding the relevance—or lack thereof—of

8  plaintiffs' source-code requests is from John Wright, Director, Platform Technologies at Apple.

9  This evidence conclusively establishes that there is no reason why the disputed portions of the

10  iPhone Operating System 1.1.1 source code would have any relevance, let alone be necessary, to

11  plaintiffs' claims. *See* Wright Decl. ¶¶ 20-26.   Specifically, as Mr. Wright explains in greater

12  detail in his declaration:

13

14

15

16

17

18

19

20                                  **REDACTED**

21

22

23

24

25

26

27

28

1

2

**REDACTED**

3

4

5

6

> **D.    Even If The Court Were To Find The Disputed Portions of OS 1.1.1  Relevant**
> **and Necessary, Plaintiffs' Motion Should Be Denied Because Any Limited**
> **Potential Relevance Does Not Outweigh The Harm Of Disclosure To Apple**

7

8

9           Even if the Court were to conclude that the disputed code is relevant and necessary,

10   plaintiffs cannot establish that any need they may have for the source code—particularly here at

11   the class certification stage—outweighs the harm of disclosure to Apple.  The disputed portions of

12   the source code disclose in great detail, critical, non-public, proprietary processes and techniques

13   developed through investment of substantial Apple resources, and disclosing the details of the

14   disputed portions of version 1.1.1 source code could expose Apple to a variety of competitive

15   threats.  *Id.* at ¶¶ 11,16.  It is for these reasons, among others, that the details of the proprietary

16   code, are not known to the public, Apple's competitors, or even more generally within Apple

17   itself; indeed Apple has gone to great lengths to not only preserve the confidentiality, but also

18   maintain the secrecy of its source code.  *Id.* at ¶ 10.

19           Such information, if disclosed—even within the boundaries of a protective order—

20   would harm Apple's competitive standing.  As has been recognized in analyzing the special

21   protections afforded to source code, "the protections set forth in [a] stipulated confidentiality order

22   are careful and extensive, but nevertheless not as safe as nondisclosure."  *Viacom Int'l Inc.*, 253

23   F.R.D. at 260; *see generally Beam Sys.*, 1997 U.S. Dist. LEXIS 8812, at * 8.  The harm to Apple is

24   especially concerning here because plaintiffs appear to have retained as their computer science

25   expert, Dr. John Michael Strawn, who has consulted for Microsoft, a direct competitor of Apple's

26   in, among other things, computer operating systems and mobile device operating systems—the very

27   operating systems whose source code plaintiffs now seek.  Huseny Decl. ¶ 12; *see also United*

28   *States v. United Fruit Co.*, 410 F.2d 553, 556 (5th Cir.), *cert. denied*, 396 U.S. 820 (1969)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS
CASE NUMBER: C 07-05152 JW

1  (presuming that disclosure to a party who is a competitor of the holder of the trade secret is more

2  harmful than disclosure to a non-competitor); 2 R. Milgrim, *Trade Secrets* § 7.06[1][b] (1984).

3  Because of the potential for risk in a situation such as this—including information about source

4  code, or more generally proprietary concepts, falling into the hands of or being used for the benefit

5  of a competitor—even relying on a protective order is "not as safe as nondisclosure." *See, e.g.,*

6  *Beam Sys.*, 1997 U.S. Dist. LEXIS 8812, at * 6 -12 (disqualifying software expert with direct ties to

7  a competitor where party failed to comply with a protective order); *Viacom Int'l Inc.*, 253 F.R.D. at

8  260.  Thus, even assuming a showing of some nominal relevance and necessity for the disputed

9  portions of the version 1.1.1 source code, the risk to Apple's competitive standing greatly

10  outweighs whatever *marginal* benefit there could be to plaintiffs from such discovery.  *See id.*  This

11  is particularly true when considered in light of the documents Apple has already produced

12  regarding the development of version 1.1.1 and the failure of plaintiffs to explain with any

13  specificity *why* the disputed source code has any legitimate value that cannot be gathered through

14  less burdensome means.  Huseny Decl. ¶ 3; 8 C. Wright & A. Miller, *supra*, § 2043 at 559

15  (explaining that "consideration of all pertinent circumstances, including dangers of abuse, good

16  faith, and *availability of other means of proof*" is required when balancing the need for confidential

17  information against the injury that would ensue if disclosure were ordered) (emphasis added).

18  **V.    CONCLUSION**

19      For the foregoing reasons, Apple respectfully requests that the Court deny

20  plaintiffs' motion to compel.  To the extent the Court is inclined to order the production of source

21  code, Apple respectfully requests that the Court impose: (1) the limitations on review and copying

22  discussed at page 9, above, and (2) the modification to the Protective Order discussed at page 9,

23  above.

24  Dated:  December 1, 2009               Respectfully submitted,

25

26  LATHAM & WATKINS LLP

27  By _____/s/ Sadik Huseny_____
    Sadik Huseny
28  Attorneys for Defendant APPLE INC.

SF\730427.1

APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS
CASE NUMBER: C 07-05152 JW