FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile:  619/234-4599

MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
ALEXANDER H. SCHMIDT (*pro hac vice*)
schmidt@whafh.com
ZACHARY W. BIESANZ (*pro hac vice)*
biesanz@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile:  212/545-4677

Plaintiffs' Interim Lead Counsel

[Additional Counsel Appear On Signature Page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE & AT&TM ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Master File No. C 07-05152 JW <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> DATE:  May 10, 2010 <br> TIME:  9:00 a.m. <br> CRTRM:  8 <br> JUDGE:  Hon. James Ware |

**DOCUMENT SUBMITTED UNDER SEAL PURSUANT TO L.R. 79-5(b)**

# TABLE OF CONTENTS

PAGE

I.      ISSUES TO BE DECIDED ........................................................................... 1

II.     INTRODUCTION ........................................................................................ 1

III.    FACTUAL BACKGROUND ......................................................................... 3

IV.     LEGAL ARGUMENT .................................................................................. 8

        A.      The Four Prerequisites of Rule 23(a) Are Satisfied ............................. 10

                1.      Numerosity ............................................................................ 10

                2.      Commonality .......................................................................... 11

                3.      Typicality .............................................................................. 16

                4.      Adequacy ............................................................................... 18

        B.      The Requirements of Rule 23(b)(2) Are Satisfied ............................... 20

        C.      The Requirements of Rule 23(b)(3) Are Satisfied ............................... 21

                1.      Predominance ......................................................................... 22

                2.      Superiority ............................................................................. 32

        D.      A Readily Definable Class of iPhone Customers Exists ...................... 33

        E.      Appointment of Class Counsel .......................................................... 34

V.      CONCLUSION ........................................................................................... 34

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- i -

TAKE NOTICE THAT on May 10, 2010, at 9:00 a.m., in Courtroom 8, 4th Floor of the above-entitled Court, located at 280 South 1st Street, San Jose, California, Plaintiffs Herbert H. Kliegerman, Paul Holman, Lucy Rivello, Timothy P. Smith, Michael G. Lee, Dennis V. Macasaddu, Mark G. Morikawa, and Scott Sesso ("Plaintiffs") will, and hereby do, respectfully move the Court for an order certifying the class, appointing Plaintiffs as class representatives and appointing Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Lead Class Counsel.

## I.      ISSUES TO BE DECIDED

(1)     Whether the Class should be certified pursuant to Federal Rule of Civil Procedure 23(a) & (b);

(2)     Whether Plaintiffs should be appointed Class Representatives; and

(3)     Whether Wolf Haldenstein should be appointed Lead Class Counsel.

## II.     INTRODUCTION

Plaintiffs seek class certification of their claims against Defendants Apple, Inc. ("Apple") and AT&T Mobility, LLC ("ATTM") arising out of an undisclosed and unprecedented exclusive five-year revenue-sharing agreement under which Defendants secretly agreed to force Plaintiffs and other iPhone consumers to use ATTM's voice and data service for five years and buy iPhone software applications – or "apps" – only from Apple.  Defendants have pursued their scheme so zealously that Apple even destroyed the iPhones of many customers who dared to exercise their statutory right under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201, *et seq.*, to switch cellular carriers.  Defendants' scheme and their acts in furtherance of it violated the antitrust laws, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.* and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301-12.

Plaintiffs seek class certification, under Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (3), of the following Class:

> All persons who purchased or acquired an iPhone in the United States and entered into a two-year agreement with ATTM for iPhone voice and data service any time from June 29, 2007, to the present (the "Class Period").  Defendants and their employees and agents are excluded from the Class.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 1 -

Plaintiffs allege that Defendants violated the antitrust laws by agreeing and conspiring to eliminate competition for aftermarket voice and data service and applications for the iPhone, Apple's revolutionary cellular phone first sold to the public on June 29, 2007. At its core, this case challenges Defendants' business model on the basis that their secret, five-year revenue-sharing agreement that binds all iPhone consumers to ATTM for voice and data services beyond the agreed-upon two-year term constitutes an unlawful monopolization of the iPhone voice and data aftermarket. As the Court summarized in denying Defendants' motion to dismiss:

> Plaintiffs allege that consumers were offered iPhones only if they signed a two-year service agreement with AT&T Mobility. Plaintiffs allege, however, that unknown to consumers, the companies had agreed to technologically restrict voice and data service in the aftermarket for continued voice and data services, *i.e.*, after the initial two-year service period expired. The question before the Court is whether if these allegations are true, the Complaint states a claim for a violation of the federal antitrust laws and other consumer protection laws. The Court finds that it does.

*In re Apple and AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1294 (N.D. Cal. 2008) ("*iPhones*"). Plaintiffs seek to end Defendants' unlawful monopolization of the aftermarkets for iPhone voice and data services and for iPhone apps and an injunction compelling Defendants to provide unlock codes to iPhone customers so they may use carriers – in the United States and abroad – of their own choice. Plaintiffs also seek money damages to compensate iPhone customers for the economic harm that Defendants' unlawful monopolization already has caused.

The predominant – indeed, overwhelming – common questions in this case are, therefore, (1) whether Plaintiffs and all other Class members executed two-year agreements with ATTM for iPhone voice and data service; (2) whether Defendants agreed that ATTM would be the exclusive cellular service provider for the iPhone for a period beyond the two-year term of the service agreements; (3) whether Plaintiffs or any other Class members were told that they were bound to ATTM for iPhone voice and data service beyond their two-year contract term or could use only Apple-approved iPhone applications; (4) whether Defendants' undisclosed Agreement unlawfully monopolized the aftermarket for iPhone voice and data services; (5) whether Defendants' Agreement caused common economic impact to Plaintiffs and all other members of the Class; and (6) whether Plaintiffs and all other members of the Class were harmed by Defendants' unlawful conduct and, if so, what measure of damages is proper. All of these questions are capable of

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 2 -

1   common proof.  As discussed below, with the limited discovery permitted to date, Plaintiffs have

2   established that these common questions can and will be proven for themselves and all other

3   members of the Class as well.

4   **III.    FACTUAL BACKGROUND**

5          The pertinent facts are largely undisputed.  Defendant Apple launched the iPhone on June

6   29, 2007.[1]

13                                                        *See* Ex. A to the Declaration of Rachele R. Rickert in

14  Support of Plaintiffs' Motion for Class Certification ("Rickert Decl.") filed with this motion.  As

15  set forth in the Expert Declaration of Simon J. Wilkie, Ph.D. ("Wilkie Decl."),[3] filed herewith,

16                                                                                     *See* Wilkie

17  Decl., ¶ 27.

---

[1]      Although ATTM had a third generation (3G) broadband network, the first iPhones were
designed to work on its older second-generation (2G) network.  As a result, they were known as
"2G iPhones."

[2]

[3]      Prof. Wilkie is the distinguished Chairman of the Department of Economics at the
University of Southern California and former Chief Economist at the Federal Communications
Commission.  Wilkie Decl., ¶¶ 1-2.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 3 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



Each Plaintiff and every other member of the Class has entered into a *two-year* iPhone voice and data service plan with ATTM.[4]

22
23
24
25
26
27
28

---

[4] The 2G iPhones could not be used for any purpose whatsoever unless customers entered into the two-year agreements. The 3G and 3GS iPhones are activated in-store at the time of purchase, at which time customers must enter into a two-year service agreement with ATTM.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 4 -

In fact, the identical *two-year* service contracts that Plaintiffs and all other Class members signed expressly permitted them to terminate their service agreements with ATTM before the end of the two-year period. In light of the prevailing practice in the cell phone industry, which permits customers to terminate existing service agreements and re-activate their cell phones with different carriers, the termination provision implied that iPhone customers could – like all other cell phone users – terminate their two-year service contracts with ATTM and switch to another carrier.

When Defendants began selling iPhones to the public, they charged *all* customers the same price for 2G iPhones ($499 for the 4 gigabyte model or $599 for the 8 gigabyte model). Although all iPhone customers were required to enter into a two-year service contract with ATTM, the cost of the iPhone was not subsidized.[5]

Likewise, the 3G iPhone was sold to *all* customers at the same price ($199 for the 8 gigabyte model/$299 for the 16 gigabyte model), as is the 3GS iPhone ($199 for the 16 gigabyte model/$299 for the 32 gigabyte model).[6]

---

[5]

[6]   Although 2G iPhones were sold only by Defendants, 3G and 3GS iPhones are also sold by BestBuy and Walmart. Rickert. Decl., Ex. I (Tr. Lisa Chung (Nov. 3, 2009)), 158:16-160:2.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 5 -



To enforce ATTM's exclusivity, Apple has programmed and installed software locks on each iPhone that prevent consumers from switching to any other carrier's voice and data service. By locking the iPhones and refusing to give consumers the software codes needed to unlock them, Defendants have unlawfully prevented iPhone customers from exercising their legal right under the DMCA to switch carriers. Among other injuries, iPhone consumers are unable to switch to a less expensive carrier in the U.S. and unable to use local carriers while traveling abroad, thus

---

[7]

[8] The 3G and 3GS iPhones are designed to operate on ATTM's third-generation (3G) network.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

1    incurring exorbitant roaming charges – amounting to thousands of dollars per trip – to ATTM,

2    ███████████████████.[9]   By refusing to unlock the iPhones, Defendants have unlawfully

3    stifled competition, reduced output and consumer choice, and artificially increased prices in the

4    aftermarket for iPhone voice and data services.

5    ████████████████████████████████████████████████████████████████████

6    ██████████████████████████████████████████████     To enhance its iPhone related

7    revenues, Apple has created a number of software programs, called "applications" or "apps," such

8    as ring tones, instant messaging, Internet access, and video and photography enabling software,

9    which can be downloaded and used by iPhone owners.  Apple also entered into agreements with

10   other software developers under which Apple "approves" their iPhone apps in exchange for a

11   share of the developers' resulting revenues.  For the first year, at least, Apple refused to "approve"

12   any application in which it had no financial interest.   Apple unlawfully discouraged iPhone

13   customers from downloading unapproved "third party applications" by telling customers that

14   Apple will void and refuse to honor the iPhone warranty of any customer who has downloaded

15   them.[10]  Thus, Apple has unlawfully stifled competition, reduced output and consumer choice, and

16   artificially increased prices in the aftermarket for iPhone apps.

17       In response to consumers exercising their legal right to unlock their iPhones or install

18   applications that competed with Apple's, on September 27, 2007, under the guise of issuing an

19   "upgraded" version of the iPhone operating software, Apple knowingly issued and caused the

20   transmission of the purported software upgrade, Version 1.1.1, which "bricked" (that, is, rendered

21   _____

22   [9]   █████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████████

24   █████████████████████████████████

25   ████████████████████████████████████████████████████████████████████

26   █████████████████████████████████   In July 2008, Apple released an updated version of the iPhone
     operating software, called Version 2.0, that to a limited extent appeared to permit iPhone owners

27   to safely download authorized third-party applications. *See Apple, Inc. iPhone 3G on Sale*
     *Tomorrow*, at http://www.apple.com/pr/library/2008/07/10iphone.html.

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 7 -

completely inoperable) or otherwise damaged some iPhones that were unlocked or had downloaded competing applications.[11]

Many customers who took their damaged iPhones to Apple or ATTM for repair or replacement were told they had breached their warranty by unlocking their iPhone or downloading unapproved software and their only remedy was to buy a new iPhone. Because Apple intentionally released and transmitted Version 1.1.1 knowing it would damage or destroy unlocked iPhones, Apple and ATTM were required to honor their warranties and repair or replace the iPhones.

## IV.   LEGAL ARGUMENT

The decision to certify a class action falls within the Court's discretion. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977). As movants, Plaintiffs bear the burden of establishing that each of the four prerequisites of Rule 23(a) and at least one requirement of Rule 23(b) has been met. *In re Infineon Technologies AG Sec. Litig.*, No. C 04-04156 JW, 2009 WL 3647892, at *2 (N.D. Cal. Mar. 6, 2009) (citation omitted). The Court may certify a class action if, after "rigorous analysis," it determines that Plaintiffs have met their burden. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158-61, 102 S. Ct. 2364 (1982). "Class actions play an important role in the private enforcement of antitrust actions. For this reason courts resolve doubts in these actions in favor of certifying the class." *In re Static Random Access (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *2 (N.D. Cal. Sept. 29, 2008) ("*SRAM*") (quoting *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005)); *see also In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 648 (N.D. Cal. 2007); *In re Rubber Chems.*, 232 F.R.D. at 350.[12]

---

[11] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ They seek to represent a sub-class (the "Sub-Class") of iPhone customers whose iPhones were also "bricked" by Defendant Apple.

[12] In reviewing the class certification motion, the Court should "consider evidence which goes to the requirements of Rule 23." *In re Apple iPod iTunes Antitrust Litig.*, No. C-05-00037 JW, 2008 WL 5574487, at *2 (N.D. Cal. Dec. 22, 2008), order amended by 2009 WL 249234

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 8 -

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140 (1974) (internal quotes omitted).  Arguments evaluating the weight of evidence or the merits of a case are improper at the class certification stage. *Smith v. Cardinal Logistics Management Corp.*, No. 07-2104 SG 2008 WL 4156364, at *4 (N.D. Cal. Sept. 5, 2008) ("[A]t this early stage of the litigation, the court must only determine if the plaintiffs have proffered enough evidence to meet the requirements of [Federal Rule of Civil Procedure] 23, not weigh competing evidence.") (internal quotations and citation omitted); *Dukes v. Wal-Mart Inc.*, 222 F.R.D. 189, 191 (N.D. Cal. 2004) ("[A]rguments on the merits are improper at this stage of the proceedings.").   Nor may a court weigh the merits of conflicting expert evidence. *See Dukes*, 222 F.R.D. at 191.  And the Court is, of course, "bound to take the substantive allegations of the complaint as true." *Tableware*, 241 F.R.D. at 648 (quoting *Blackie*, 524 F.2d at 901 n.17).

Few cases are better candidates for class-wide resolution than antitrust actions.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231 (1997) ("Predominance is a test readily met in certain cases alleging … violations of the antitrust laws."); *In re Playmobil Antitrust Litig.*, 35 F. Supp 2d 231, 238 (E.D.N.Y. 1998) ("Antitrust claims are well suited for class actions.")   In turn, class actions "play a particularly vital role in the private enforcement of antitrust [laws]." *Tableware.*, 241 F.R.D. at 648; *accord In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("*DRAM*") (same); *see generally* 6 A. Conte & H. Newberg, Newberg on Class Actions, § 18:1, at 3-6 (4th ed. 2002) ("Newberg").  As the Supreme Court has held:

---

(N.D. Cal. Jan. 15, 2009) ("*iTunes*") (internal quotation omitted).  However, "the court may not consider the merits of plaintiffs' claims." *SRAM*, 2008 WL 4447592, at *2 (citing *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 152 (N.D. Cal. 1991)).  "Rather, the court must take the substantive allegations of the complaint as true." *SRAM*, 2008 WL 4447592, at *2 (citing *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).  However, "the court may consider supplemental evidentiary submissions of the parties."  *SRAM*, at *2 (citing *In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 163 (N.D. Cal. 2001) (citations omitted)).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

> Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress. This system depends on strong competition for its health and vigor, and strong competition depends, in turn, on compliance with antitrust legislation. In enacting these laws, Congress . . . chose to permit all persons to sue to recover three times their actual damages every time they were injured in their business or property by an antitrust violation. By offering potential litigants the prospect of a recovery in three times the amount of their damages, Congress encouraged these persons to serve as "private attorneys general."
>
> * * *
>
> Rule 23 of the Federal Rules of Civil Procedure provides for class actions that may enhance the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture.

*Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262, 266, 92 S. Ct. 885 (1972) (citations omitted).

Like other antitrust claims, Plaintiffs' claims against Apple and ATTM are ideally suited for class action treatment because, as shown below, every element of those claims can and will be established by evidence and economic analysis common to all iPhone customers.[13]  Liability in this case will be proven on a class-wide basis, primarily by showing that the Agreement between Apple and ATTM and Defendants' conduct thereunder unlawfully monopolized the iPhone voice and data aftermarket.  In addition, as set forth in the Wilkie Decl., based on his expertise, preliminary research, and data provided by Apple and ATTM in class certification discovery, there are established and reliable econometric methodologies available to prove antitrust impact and damages caused by Apple's and ATTM's alleged anticompetitive conduct on a class-wide basis.

### A.    The Four Prerequisites of Rule 23(a) Are Satisfied

#### 1.    Numerosity

The numerosity requirement of Rule 23(a) is met if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "A finding of numerosity may be supported by common sense assumptions, and it is especially appropriate in antitrust actions brought under Rule 23(b)(3)."  *Tableware*, 241 F.R.D. at 648 (quoting *Playmobil*, 35 F. Supp. 2d

---

[13]    *Kodak*-type antitrust claims are no less susceptible to or deserving of class treatment than other antitrust claims.  While an aftermarket antitrust claimant cannot rest on market power that arises from **contractual rights** that consumers knowingly and voluntarily give to the defendants, "whether a consumer's selection of a particular brand in the competitive market is the functional equivalent of a contractual commitment" does **not** invite the kind of individual inquiry that precludes class certification.  *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1049 (9th Cir. 2008).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 10 -

at 239); *accord Rubber Chems.*, 232 F.R.D. at 350. "A potential class of 1,700 members is, a fortiori, sufficiently numerous to preclude joinder." *Krehl v. Baskin-Robbins Ice Cream Co.*, 78 F.R.D. 108, 114 (C.D. Cal. 1978). That a class is geographically dispersed also supports class certification. *DRAM*, 2006 WL 1530166, at *3.

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████ Because millions of customers bought iPhones throughout the United States, numerosity is easily satisfied. *See iTunes*, 2008 WL 5574487, at *3, order amended by 2009 WL 249234 (N.D. Cal. Jan. 15, 2009).

### 2.   Commonality

Commonality is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is "construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In the antitrust context, "[a]n allegation of … tying [or] monopolization … will establish a common question." NEWBERG, § 18:5, at 16-20.

Here, Plaintiffs have alleged a competitive "primary" product (the iPhone), and two aftermarkets in which Plaintiffs want to shop for secondary products – voice and data service plans and third-party applications for the iPhone.[14] Plaintiffs' Revised Consolidated Class Action Complaint ("RCAC"), ¶¶ 120-21. To prove their antitrust claim that Apple and ATTM conspired to monopolize the iPhone voice and data service and applications aftermarkets, Plaintiffs must establish the relevant aftermarkets alleged in the Complaint and then must prove that Apple and

---

[14]   As the Court recognized in denying the motions to dismiss, both of these aftermarkets are derivative of, and would not exist but for, the primary market for iPhones – which gave Defendants a "natural monopoly" in the aftermarkets. *iPhones*, 596 F. Supp. 2d at 1302-04 (citations omitted).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

ATTM possessed sufficient market power to do so. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481, 112 S. Ct. 2072 (1992).[15] These threshold issues do not depend in any way upon individualized proof. For example, as this Court held in *iTunes*, whether a relevant market exists and whether a defendant has monopoly power in it "are ***broad questions that exist independently of each individual Plaintiff***. If each Plaintiff were forced to proceed individually on their antitrust claims, each would have to prove market and market power as the foundational elements of their cases. As such, questions of market definition, market share, and market power are common to all members of the proposed class." *iTunes*, 2008 WL 5574487 at *4 (emphasis added), order amended by 2009 WL 249234 (N.D. Cal. Jan. 15, 2009).[16]

On remand in *Kodak*, this Court certified classes asserting both a Section 2 aftermarket claim and a Section 1 tying claim. In doing so, the Court rejected Kodak's argument that the "coercion" element of plaintiffs' tying claim was not susceptible to common proof and required an individualized inquiry into whether each class member ***believed*** they were "coerced into purchasing the tied service." *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, Nos. C 87-1686 BAC, C 94-0524 BAC and C 94-1070 BAC, 1994 U.S. Dist. LEXIS 12652, at *7 (N.D. Cal. Sept.

---

[15] Section 2 of the Sherman Act prohibits monopolization, attempted monopolization, and conspiracy to monopolize interstate trade or commerce. 15 U.S.C. § 2. To prove their monopolization claims against Apple and ATTM, Plaintiffs must establish that (1) Defendants have market power in a "relevant market," (2) Defendants willfully acquired or maintained that market power, and (3) Defendants' conduct has caused injury. *Slattery v. Apple Comp., Inc.*, No. C 05-00037 JW, 2005 WL 2204981, at *4 (N.D. Cal. Sept. 9, 2005); *Tucker v. Apple Comp., Inc.*, 493 F. Supp. 2d 1090, 1099 (N.D. Cal. 2006); *see generally Eastman Kodak*, 504 U.S. at 481; *Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co.*, 99 F.3d 937, 949 (9th Cir. 1996); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1218 (9th Cir. 1977). To prove their attempted monopolization claim, Plaintiffs must show (1) a specific intent by Defendants to monopolize the relevant market, (2) predatory or anticompetitive conduct by Defendants designed to control prices or destroy competition, (3) a "dangerous probability of success," and (4) resulting antitrust injury. *Slattery*, 2005 WL 2204981, at *4 (citation omitted); *Tucker*, 493 F. Supp. 2d at 1102; *see generally Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995); *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993).

[16] *See also Tableware*, 241 F.R.D. at 649 (commonality satisfied based on alleged common practice by defendant); *Bafus v. Aspen Realty, Inc.*, 236 F.R.D. 652, 656 (D. Idaho 2006) (same); *Little Caesar Enters. v. Smith*, 172 F.R.D. 236, 242 (E.D. Mich. 1997) (same); *Collins v. Int'l Dairy Queen*, 168 F.R.D. 668, 673-74 (M.D. Ga. 1996) (same).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 12 -

2, 1994). The Court held, "coercion could be implied from proof that 'an appreciable number of buyers have accepted burdensome terms, such as a tie-in,' . . . [which] is what plaintiffs propose to prove." *Id.* (quoting *Moore*, 550 F.2d at 1217).

Thus, individual consumers' subjective state of mind does ***not*** preclude class certification. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449-50 (3d Cir. 1977) ("The issue is whether the seller acted in a certain way, not what the buyer's state of mind would have been absent the seller's action.") Indeed, the issue of class-wide coercion is presumptively capable of common proof where, as here, the defendant's anticompetitive policy is uniformly or unremittingly applied. *See id.* at 450; *Hardy v. City Optical, Inc.*, 39 F.3d 765, 770-71 (7th Cir. 1994) (coercion can be proved class-wide if defendants pursued a "blanket policy"); *Hill v. A-T-O, Inc.*, 80 F.R.D. 68, 69 (E.D.N.Y. 1978) (in case of "unremitting policy of tie-in," further evidence of coercion is unnecessary). *See also George Lussier Enters. v. Subaru of New Eng., Inc.*, No. 99-109-B, 2001 U.S. Dist. LEXIS 12054, at *27 (D.N.H. Aug. 3, 2001) ("class certification of a tying claim is appropriate where conditioning can be proved by establishing that all class members were subject to the same express contractual tying agreement") (citing cases).

This Court has held that consumers can allege coercion at "the market level" and need not show individual coercion in a tying case. *Tucker*, 493 F. Supp. 2d at 1097; *see also Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 64521, at *48-50 (N.D. Cal. July 3, 2008) (finding two subclasses "sufficiently cohesive" because liability issues were "essentially the same based on the same factual predicate – *i.e.*, that … [Defendant] implemented a new policy pursuant to which 'service on Cartier watches would only be available to consumers through Cartier Retail Boutiques, authorized Cartier watch dealers, and directly with Cartier After Sales Service Department'") (internal quotation omitted).

The issue of "coercion" or "conditioning" in tying cases is directly analogous to the *Newcal* issue that requires inquiry into whether iPhone consumers "knowingly contracted" to give Defendants monopoly power in the iPhone voice and data services or apps aftermarkets. Both the "coercion" inquiry and the *Newcal* "knowingly contracted" inquiry are, facially, subjective issues going to state of mind. However, the law is clear that "coercion" can be proved on a class-wide

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

basis if there is a "blanket policy" or proof that "an appreciable number" of consumers were coerced. The same holds true for the similar *Newcal* inquiry; there is no principled basis to differentiate between the two otherwise identical types of factual inquiries. Thus, Plaintiffs here will be able to prove **on a class-wide basis** that they did not "knowingly contract" to give Defendants monopoly power if they can show either (i) Defendants had a "blanket policy" of not disclosing their five-year deal to iPhone customers at the time of sale, or (ii) Defendants did not disclose their deal to an appreciable number of iPhone consumers.[17] Plaintiffs will prove both.

In addition to common factual issues, Class members also share the following legal issues:

(a)   whether Defendants violated section 2 of the Sherman Act, 15 U.S.C. § 2, by monopolizing, attempting to monopolize, or conspiring to monopolize the aftermarket for iPhone wireless voice and data services;

(b)   whether Apple violated section 2 of the Sherman Act, 15 U.S.C. § 2, by monopolizing or attempting to monopolize the aftermarket for iPhone applications;

(c)   whether Apple violated the CFAA and California Penal Code Section 502 and is liable for trespass to chattels by damaging or destroying iPhones when it issued Version 1.1.1;

(d)   whether Apple's destruction of iPhones through issuance of Version 1.1.1 breached express and implied warranties of fitness and violated the MMWA; and

(e)   whether Defendants breached express and implied warranties of fitness and violated the MMWA by refusing to repair or replace iPhones that were destroyed when iPhone owners downloaded Version 1.1.1.

Plaintiffs' claims under the CFAA, 18 U.S.C. § 1030, and Cal. Penal Code § 502 also raise common legal issues. To prove their claim under the CFAA, Plaintiffs must prove that Apple "knowingly cause[d] the transmission of a program, information, code, or command, and as a

---

[17]   Outside the antitrust context, where plaintiffs allege that consumers were misled by a single, commonly made misrepresentation or are entitled to a presumption of reliance because the defendants' fraud was on the entire market, such individual inquiries do not preclude class certification. *See, e.g., Shaffer v. Cont'l Casualty Co.*, No. 06-2235 RGK (PWJx) 2007 U.S. Dist. LEXIS 96189, at *12-14 (C.D. Cal. Jan. 26, 2007) (citing cases); *Occidental Land, Inc. v. Super. Ct. of Orange County*, 18 Cal. 3d 355, 362 (1976) (affirming grant of class certification where "at least some of the alleged misrepresentations relied upon in the complaint were made to all members of the class"); *Osborne v. Subaru of Am.*, 198 Cal. App. 3d 646, 661 (1988) (denying certification because there "was no basis to draw an inference of classwide reliance without a showing that representations were made uniformly to all members of the class").

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 14 -

result of such conduct, intentionally cause[d] damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A). Likewise, to prove their claim under Cal. Penal Code § 502(c)(4), Plaintiffs must prove that Apple "[k]nowingly accesse[d] and without permission add[ed], alter[ed], damage[d], delete[d], or destroy[ed] any data, computer software, or computer programs . . . a computer, computer system, or computer network." Both claims will rest upon common proof that (i) the iPhones were "computers" within the meaning of the statutes, (ii) Apple acted "knowingly" to transmit a program or code (*i.e.*, Version 1.1.1 of the operating system); (iii) Apple caused damage to the iPhones or their software; and (iv) Apple was not authorized to do so.[18] These claims challenge whether Apple had a right to (i) prevent iPhone customers from "jailbreaking" or "unlocking" their iPhones; and (ii) destroy iPhones that were "jailbroken" or "unlocked." ███████████████████████████████████████████████████████

███████████████████████████████████████ *See* Expert Report of John M. Strawn, Ph.D. ("Strawn Decl."), filed herewith, pp. 5, 10-27.[19]

Defendants may try to argue that the claims of the Sub-Class members do not share common facts because their iPhones were "bricked" as a result of third-party applications, including "jailbreaking" or "unlocking" software they installed on them rather than anything in Version 1.1.1 or any later iPhone operating system. However, Plaintiffs will prove that lines of code in Version 1.1.1 (and subsequent iPhone operating systems) caused iPhones to "brick." ███

---

[18]   Plaintiffs' trespass to chattel claim similarly requires common proof of Apple's intent to interfere with customers' use of their iPhones. "Under California law, trespass to chattels 'lies where an intentional interference with the possession of personal property has proximately caused injury.'" *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350-51 (2003) (quoting *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1566 (1996)). "Injury" is defined broadly, and includes being "'deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor.'" *Id.* at 1351 (quoting RESTATEMENT (SECOND) OF TORTS § 218 (1964)). A "substantial time" can be as little as an hour. *See* RESTATEMENT (SECOND) OF TORTS § 218 cmt. i & illus. 4 (1964).

[19]   Dr. Strawn is an experienced computer programmer, researcher, research and development manager, consultant, and expert witness. Among other things, Dr. Strawn worked for NeXT, Inc. ("NeXT"), of Silicon Valley, California, founded in 1985 by Apple's co-founder, Steve Jobs. At NeXT, Dr. Strawn developed, debugged, and documented more than 50 routines for the Motorola DSP 56000 processing chip used in the NeXT computer.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW



Whether Defendants violated the antitrust laws, the CFAA, laws against computer trespass, and the MMWA raise common legal issues that predominate over any individual issues. *See Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005); *In re Live Concert*, 247 F.R.D. at 113.

Accordingly, Plaintiffs and all Class members share common questions of fact and law.

### 3.    Typicality

The third requirement under Rule 23(a), typicality, is met where "the claims … of the representative parties are typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). Under Rule 23(a)(3), "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *accord Eastman Kodak*, U.S. Dist. LEXIS 12652, at *3. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *SRAM*, 2008 WL 4447592, at *2. In antitrust cases like this, typicality "will be established by plaintiffs and all class members alleging the same antitrust violation by the defendants." *Estate of Garrison v. Warner Bros., Inc.*, No. CV 95-8328 RMT, 1996 WL 407849, at *2 (C.D. Cal. June 25, 1996); *accord*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 16 -

1  NEWBERG, §18:8, at 29. The typicality requirement is "liberally construed." *Thomas & Thomas*

2  *Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002).

3  In this case, Plaintiffs allege the exact same antitrust claims as all other members of the

4  Class. Each Plaintiff and all other Class members purchased iPhones and entered into

5  substantially identical two-year service agreements with ATTM as required by the agreement

6  between Apple and ATTM. None of the Plaintiffs, and no other member of the Class, was told by

7  Apple or ATTM that they were bound to use ATTM as the exclusive iPhone voice and data

8  service provider ***beyond the two-year term*** of the service agreements, no Plaintiff agreed to be

9  bound to ATTM for a longer period, no Plaintiff knew they would be bound for more than two

10 years, and there is no evidence in the record that any other Class members knew so either.

11 Moreover, although every one of the two-year service agreements permitted Plaintiffs and all other

12 Class members to terminate their service agreements with ATTM before the expiration of the

13 two-year period – presumably so they could exercise their statutory rights under the DMCA to

14 switch to a different carrier – none of the Plaintiffs knew that they could not do so, nor is there any

15 evidence in the record that any other Class members knew so.

16 Defendants may try to argue that some named Plaintiffs are not typical because they

17 bought newer 3G or 3GS iPhones before their original two-year service contracts with ATTM

18 ended. Such an argument would be inconsistent with Plaintiffs' claims. As the Court recognized

19 in denying the motions to dismiss, "Plaintiffs are alleging that ***at the point of purchase and***

20 ***initiation of service***, Defendants involuntarily impose[d] on consumers a contract exclusivity

21 restriction which restricts their freedom ***from that point forward*** for at least the next five years

22 and conceivably for the life of the iPhone." *iPhones*, 596 F. Supp. 2d at 1304 (emphasis added).

23 Defendants' "natural monopoly" in the aftermarkets does not depend upon whether any Plaintiff

24 or Class member continued service with ATTM after the initial two year period expired.

25 Defendants may also try to argue that Plaintiffs are not typical because most Class

26 members did not seek to switch from ATTM to another cellular service provider. However, as the

27 Court already held, "The fact that some consumers might not have sought to switch service and

28 thus do not realize the restriction which the Apple/ATTM Agreement has imposed on them ***does***

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 17 -

1   *not alter the effect of Plaintiffs' allegations that their freedom in the aftermarket has already*
2   *been taken from them.*" *iPhones*, 596 F. Supp. 2d at 1304 (emphasis added).

3      Defendants may also argue that Plaintiffs have not suffered the same injury as other
4   Sub-Class members under their CFAA, computer trespass, California Penal Code and MMWA
5   claims.  Such an argument would be equally without merit.

12                                                        Thus, they have suffered the same injury, from the
13   same conduct, as all other Sub-Class members.

14      These common facts give rise to identical claims by Plaintiffs and all other Class members
15   for the same antitrust violations by Defendants – conspiring to monopolize the aftermarket for
16   iPhone voice and data service and applications – that are at the heart of this litigation.  Likewise,
17   they give rise to identical claims by Plaintiffs and all other Sub-Class members that Defendants
18   violated the CFAA, laws against computer trespass, and the MMWA.

19                    **4.    Adequacy**

20      The fourth requirement of Rule 23(a) is that "the representative parties will fairly and
21   adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Adequacy under Rule
22   23(a)(4) turns on two basic questions: "(1) do the named plaintiffs and their counsel have any
23   conflicts of interest with other class members and (2) will the named plaintiffs and their counsel
24   prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.  To disqualify
25   class representatives or class counsel, perceived conflicts of interest "must go to the heart of the

26   ─────────────────
   [20]

litigation, relating to the subject matter of the suit." NEWBERG, §18:14, at 40-41; *see also Blackie*, 524 F.2d at 909.

To defeat class certification, the conflict of interest must be actual, not hypothetical. Mere potential conflicts are not sufficient to defeat class certification. *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) ("this circuit does not favor denial of class certification on the basis of speculative conflicts"); *Soc. Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979) ("speculation as to conflicts that may develop at the remedy stage is insufficient" to deny certification); *Blackie*, 524 F.2d at 909 ("potential conflicts" not a valid reason for refusing to certify class); *SRAM*, 2008 WL 4447592, at *4 (potential conflict between plaintiff's direct and indirect purchases not sufficient to deny certification).

Here, the interests of the Plaintiffs and the rest of the Class are entirely aligned. As direct consumers of iPhones and as cellular voice and data service customers of ATTM, they all share the exact same interest in determining whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as well as Defendants' efforts to lock iPhones so that they could not be used on any other cellular network, unlawfully monopolized the aftermarket for iPhone voice and data service, whether competition was stifled by Defendants' Agreement and conduct, whether Plaintiffs and Class members were unlawfully "locked in" to ATTM as the cellular provider for iPhones beyond the term they agreed to, and whether they paid supra-competitive prices for iPhone voice and data service as a result. *DRAM*, 2006 WL 1530166, at *6 (adequacy of representation met because "the named plaintiffs allege that all members of the proposed class paid artificially inflated prices as a result of defendants' [antitrust violation] during the relevant class period, that all suffered similar injury as a consequence of the conspiracy, and that all seek the same relief"). Under these circumstances, there are simply no conflicts precluding class certification. *Tableware*, 241 F.R.D. at 649 (no conflict precluding certification of antitrust claims); *Bafus*, 236 F.R.D. at 657 (same); *Little Caesar*, 172 F.R.D. at 244 (same); *Collins*, 168 F.R.D. at 674-5 (same).

Nor is there any basis to doubt that Plaintiffs are motivated advocates for the Class. They

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

have retained legal counsel with considerable experience in the prosecution of major class and antitrust litigation. *See* Rickert Decl., Ex. R (Firm Resume of Wolf Haldenstein); *see also* Order Appointing Interim Lead Counsel; Administratively Closing Cases, dated April 15, 2008. [Docket No. 100.]   Plaintiffs have produced documents, answered multiple sets of interrogatories and requests for admissions, and given lengthy depositions.   Rickert Decl., ¶ 25.   Plaintiffs are assuredly and undoubtedly committed to the prosecution of this action on behalf of the Class.

## B.   The Requirements of Rule 23(b)(2) Are Satisfied

Class certification under Rule 23(b)(2) requires that "the party opposing the class has acted … on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2).   "Class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive relief or declaratory relief, but may include cases that also seek monetary damages." *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 n.3 (9th Cir. 1986).   However, for certification to be proper under Rule 23(b)(2), the claim for injunctive and declaratory relief, rather than for monetary relief, must be predominant.   *Molski v. Gleich*, 318 F.3d 937, 949-50 (9th Cir. 2003).   This case meets the requirements for certification under Rule 23(b)(2).

There is no dispute that Plaintiffs seek declaratory and injunctive relief by challenging the lawfulness of Defendants' conspiracy to monopolize the aftermarkets for iPhone voice and data services and iPhone apps. RCAC, ¶ 12. Nor is there any dispute that Plaintiffs challenge conduct that applies generally to all members of the Class. As discussed above, the Agreement between Apple and ATTM and Defendants' conduct in furtherance of their exclusive arrangement to monopolize the iPhone voice and data service and apps aftermarkets undoubtedly affected all iPhone owners regardless of how or where they used their iPhones or what apps they installed on them. *All* iPhone customers paid supra-competitive fees for ATTM's voice and data service because they were unlawfully bound to ATTM and given no choice among competing service providers. This is true because, as the Court has recognized, Plaintiffs allege that Defendants have monopolized the aftermarket for voice and data service from "***the point of purchase and initiation of service … forward. …***" *iPhones*, 596 F. Supp. 2d at 1304 (emphasis added).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

Likewise, **all** iPhone customers were harmed by Defendants' monopolization of the aftermarket for iPhone apps █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████.

Here, as in *iTunes*, Plaintiffs seek primarily "to bring an end to [Defendants'] restrictive technology practices." *iTunes*, 2008 WL 5574487, at *7, order amended by 2009 WL 249234 (N.D. Cal. Jan. 15, 2009). *See* RCAC, ¶ 12. For that reason, Plaintiffs seek remedies that, among other things, prohibit Defendants from monopolizing the aftermarkets for iPhone voice and data services and applications and from selling "locked" iPhones, compelling them to provide "unlock" codes to iPhone consumers, and prohibiting them from damaging "unlocked" iPhones or otherwise retaliating against iPhone consumers who seek to use their iPhones on other cellular networks or install third party apps.

## C. The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) is satisfied when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When, as here, "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022; *iTunes*, 2008 WL 5574487, at *8, order amended by 2009 WL 249234 (N.D. Cal. Jan. 15, 2009); *SRAM*, 2008 WL 4447592, at *4.

To determine whether a class action is superior to individual action, "courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *iTunes*, 2008 WL 5574487 at *8, order amended by 2009 WL 249234 (N.D. Cal. Jan. 15, 2009) (citing *Amchem*, 521 U.S. at 615, and *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

1    (N.D. Cal. 2007)).

2        Under Rule 23(b)(3), the Court may certify a class if it determines: (1) that the questions of

3    law or fact common to the members of the class predominate over any questions affecting only

4    individual members; and (2) that a class action is superior to other available methods for the fair

5    and efficient adjudication of the controversy. The "predominance" and "superiority" factors are

6    closely related: when common issues predominate, class actions achieve Rule 23's objectives of

7    economy and efficiency by minimizing costs and avoiding the confusion that would result from

8    inconsistent outcomes. *Tableware*, 241 F.R.D. at 651.

9        **1.    Predominance**

10       "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

11   cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. To predominate,

12   common questions "need not be dispositive of the litigation." *Tableware*, 241 F.R.D. at 651. In

13   antitrust cases, issues of monopolization and attempted monopolization have been viewed as

14   central issues which satisfy the predominance requirement. NEWBERG, § 18:26, at 86-89.  As

15   shown below and confirmed by Professor Wilkie, each element of Plaintiffs' monopolization

16   claims can and will be proved in this case with evidence common to all member of the Class, so as

17   to warrant class certification. *Live Concert*, 247 F.R.D. at 149.

18       ***Market Power***.  In this case, the two predominant issues will be the definition of the

19   relevant markets (*i.e.*, the voice and data and applications aftermarkets) and whether Defendants

20   possess(ed) monopoly power in those markets. *See Live Concert*, 247 F.R.D. at 147 (regardless of

21   merits of parties' positions, market definition and market power were predominant common issues

22   supporting class certification).   Plaintiffs will rely upon common evidence – ▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – to prove the

24   relevant markets and Defendants' market power in support of the monopolization and attempted

25   monopolization claims. *See, e.g., In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68,

26   88 (E.D.N.Y. 2000) (each element of attempt to monopolize claim focuses on conduct of

27   defendants and its effects in the relevant markets, factors that will not vary from plaintiff to

28   plaintiff).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

1     Defendants' market power in the iPhone voice and data aftermarket, for example, depends

2   upon whether Plaintiffs "knowingly placed [Defendants] in a monopoly position" in the

3   aftermarket when they bought their iPhones. *iPhones*, 596 F. Supp. 2d at 1305 (quoting *Newcal*,

4   513 F.3d at 1049). Defendants may argue that this invites individual inquiries about each iPhone

5   customer –

6                             – that will overwhelm the common questions. Here, however, there is no

7   dispute that the substantially identical two-year service agreements *all* Class members signed with

8   ATTM did not bind any of them to ATTM beyond the two-year period. Indeed, the service

9   agreements permitted all Class members to terminate their contracts with ATTM and presumably

10  permitted them to switch to another carrier for iPhone voice and data service. Thus, the only

11  relevant question is whether any other information provided to iPhone customers before their

12  purchases –                                                            – would permit the

13  conclusion that they "knowingly placed [Defendants] in a monopoly position."

14                                                          , that question itself will be answered with

15  common proof at trial.

16     Defendants may argue that individual iPhone customers knew that ATTM would be the

17  exclusive iPhone voice and data service provider for five years, which might raise purportedly

18  individual questions about what any individual iPhone owners knew.[21]

19

20

21

22

23

---

[21]     Defendants may cite some media reports about their exclusive arrangement. For example,

. In addition, a cryptic statement appeared on the outside of the iPhone box that said, "Service plan with AT&T required for cellular network capabilities on expiration of initial two-year agreement." Rickert Decl., Ex. T (P00568). Neither statement is sufficient to prove that any Plaintiff or absent Class member knowingly and voluntarily gave Apple or ATTM monopoly power over the iPhone voice and data or applications aftermarkets for five years.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW



[22]

None of those so-called "disclosures" were sufficient to inform Plaintiffs or the other Class members that (1) they would be bound to ATTM beyond the term of their two-year service agreements, (2) they purportedly waived their early termination rights, or (3) they purportedly waived their right under the DMCA to switch carriers at any time.  Certainly, in light of the express terms of ATTM's integrated two-year service agreement, as well as the prevailing custom and practice in the cell phone industry, none of those "disclosures" could be deemed the "functional equivalent of a contractual commitment" by any Plaintiffs or other Class members.[23] In any event, the effect, if any, of the "disclosures" is, itself, a common question because the "disclosures" were, themselves, uniform, standardized, and identical to all Class members. Therefore, the "disclosures" do not affect the predominance of common issues.[24]

---

[22]

[23]     In *Newcal*, the Ninth Circuit distinguished the Supreme Court's decision in *Kodak* from *Queen City Pizza v. Domino's Pizza*, 129 F.3d 724 (3d Cir. 1997), and *Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997), where similar claims were disallowed.  In *Queen City Pizza*, there was an ***enforceable*** franchise agreement between the parties, and in *Humana*, the parties had entered into an ***enforceable*** insurance policy.  Surely, ATTM could ***not*** enforce either the newspaper article or the iPhone box panel as a binding contract for five years on any Plaintiff or any other Class member, whether they knew about them or not.

[24]     It is well-settled that "extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract."  *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 777 (9th Cir. 2003) (quoting *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39 (1968)).  This is especially true in the case of an integrated agreement, such as ATTM's two-year service agreement here.  *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 213 (1981) ("A binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them.")  "Ordinarily, a merger clause provision indicates that the subject agreement is completely integrated."  *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2d Cir. 1997).  "The

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 24 -

1    Nor may Defendants defeat class certification by arguing that some iPhone customers were

2    satisfied with ATTM or did not wish to use a different carrier. As this Court held, "The fact that

3    some consumers might not have sought to switch service and thus do not realize the restriction

4    which the Apple/ATTM Agreement has imposed on them ***does not alter the effect of Plaintiffs'***

5    ***allegations that their freedom in the aftermarket has already been taken from them***." *iPhones*,

6    596 F. Supp. 2d at 1304 (emphasis added). Any Class member's preference for ATTM will not be

7    an issue in the litigation, much less one that threatens the predominance of the common issues.

8    At most, such arguments raise an affirmative defense, which is insufficient to defeat a

9    motion for class certification. *See Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008)

10   (affirmative defense "must be proven, and is not an appropriate basis to deny class certification.");

11   *Shaffer*, 2007 U.S. Dist. LEXIS 96189, at *15 ("Court is not convinced that issues of damages or

12   affirmative defenses preclude class certification"); *Romero v. Producers Dairy Foods, Inc.*, 235

13   F.R.D. 474, 487 (E.D. Cal. 2006) (defendant bears burden to prove affirmative defense; requiring

14   plaintiff to demonstrate class members are not subject to affirmative defense "would effectively

15   reverse that burden").

16   ***Anticompetitive Conduct***. Similarly, the evidence used to prove that Apple and ATTTM

17   obtained, maintained, or attempted to monopolize the relevant markets will focus primarily on the

18   business arrangement between Apple and ATTM, not on individual Class members.

19   "Anticompetitive conduct is behavior that tends to impair the opportunities of rivals and either

20   does not further competition on the merits or does so in an unnecessarily restrictive way."

21   *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 1998) (citing *Aspen Skiing*

22   *Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 n.32, 105 S. Ct. 2847 (1985)).

23

24

25

26   _____

27   presence of an integration clause strongly supports a conclusion that the parties' agreement was
fully integrated." *M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn. 2d 568, 579-80

28   (2000).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 25 -

[REDACTED]

***Specific Intent to Monopolize***.  This element of the attempted monopolization claim can be inferred from "either specific intent coupled with monopoly power or from 'proof of specific intent to … exclude competition … accompanied by predatory conduct directed to accomplishing the unlawful purpose.'"  *Moore*, 550 F.2d at 1219 (quoting *Pac. Coast Agr. Export Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1205 (9th Cir. 1975)).  There is no doubt that Apple and ATTM intended to exclude competition in the iPhone voice and data and apps aftermarkets: [REDACTED]

[REDACTED] .  Nor is there any doubt that their intent was accompanied by predatory conduct.  *First*, Apple programmed iPhones with software "locks" that prevented consumers from using the cell phones with any carrier other than ATTM. [REDACTED]

[REDACTED]

Defendants may attempt to demonstrate "valid business reasons" for their actions.  *See Eastman Kodak*, 504 U.S. at 483.  The declaration by the Librarian of Congress that the DMCA permits cell phone users to "unlock" their cell phones for use on any carrier[25] makes it unlikely that Defendants will be able to meet that burden.  All such proof, however, will focus on the conduct of Apple and ATTM, not on the circumstances of any individual Class member.

***Dangerous Probability of Success***.  In the Ninth Circuit a dangerous probability of success may be inferred from the existence of predatory or anticompetitive conduct.  *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 548 (9th Cir. 1983), cert. denied, 465 U.S. 1038, 79 L.

---

[25]     On November 27, 2006, pursuant to its statutory authority, the Librarian of Congress, adopted a recommendation by the Register of Copyrights and declared that the DMCA expressly permits cell phone users to "unlock" their cell phones for use on any carrier because:

> the access controls [on cell phones] do not appear to actually be deployed in order to protect the interests of the copyright owner or the value or integrity of the copyrighted work; rather, ***they are used by wireless carriers to limit the ability of subscribers to switch to other carriers, a business decision that has nothing whatsoever to do with the interests protected by copyright.***

71 Fed. Reg. 68472, 68476 (Nov. 27, 2006) (codified at 37 C.F.R. pt. 201) (emphasis added).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 26 -

1   Ed. 2d 712, 104 S. Ct. 1315 (1984), overruled sub silentio on other grounds by *Hasbrouck v.*

2   *Texaco, Inc.*, 842 F.2d 1034, 1041 (9th Cir. 1987), aff'd, 496 U.S. 543, 110 L. Ed. 2d 492, 110 S.

3   Ct. 2535 (1990) as stated in *Chroma Lighting v. GTE Prods. Corp.*, 111 F.3d 653, 657 (9th Cir.

4   Cal. 1997). ████████████████████████████████████████████████

5   the evidence presented will be of Defendants' own actions in furtherance of their agreement to

6   monopolize the iPhone aftermarkets, not the actions of any individual iPhone customer.

7   **Antitrust Impact**. One tactic in opposing class certification in antitrust cases is to isolate

8   and focus on the question of antitrust impact, hoping to convince the court that such impact can

9   only be proven on an individual basis. To demonstrate antitrust impact at trial, though, Plaintiffs

10  will need only show some injury suffered as a consequence of the alleged anticompetitive

11  behavior. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9, 89 S. Ct.

12  1562 (1969) ("burden of proving the fact of damage . . . is satisfied by . . . proof of some damage

13  flowing from the unlawful [conduct]; inquiry beyond this minimum point goes only to the amount

14  and not the fact of damage" (emphasis in original)). At the class certification stage, therefore,

15  Plaintiffs "need only advance a plausible methodology to demonstrate that antitrust injury can be

16  proven on a class-wide basis." *DRAM*, 2006 WL 1530166, at *9.

17  Antitrust impact is typically established for class certification purposes through expert

18  testimony that generally accepted economic methodologies are available to demonstrate such

19  impact and to reasonably calculate such damages on a class-wide basis. *Live Concert*, 247 F.R.D.

20  at 144; *DRAM*, 2006 WL 1530166, at *8; *Estate of Garrison*, 1996 WL 407849, at *4; *See, e.g.*,

21  *Bafus*, 236 F.R.D. at 658 (expert declaration described what appeared to the court to be a viable

22  method for determining economic effect on a class basis).

23  Plaintiffs have done just that here. Plaintiffs have submitted the Declaration of Professor

24  Simon Wilkie in support of their motion for class certification.[26] Using standards and widely

25  _____

26  [26]   Prof. Wilkie is Chairman of the Department of Economics at USC and Executive Director

of the USC Center for Communications Law and Policy. He received his Ph.D. (in 1990) and

27  M.A. (in 1987) in Economics from the University of Rochester. He received a Bachelor of

Commerce with Honors in Economics from the University of New South Wales in 1984. Prof.

28  Wilkie has focused his research on the application of game theory to business strategy, economic

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 27 -

accepted methods in his area of expertise, Prof. Wilkie has analyzed the iPhone voice and data and applications aftermarkets and has determined that:

In fact, Prof. Wilkie has performed many of these analyses on a preliminary basis using public information as well as the limited discovery already provided by Defendants.[27]

_____

and regulatory policy design, and the economics of the communications industries. He has been widely published in leading scholarly journals including *Economic Theory*, *The Journal of Economic Theory*, *Journal of Economics and Management Strategy*, *Games and Economic Behavior*, *Journal of Regulatory Economics*, *The Review of Economic Studies*, and *Social Choice and Welfare*. He currently serves on the editorial boards of *The Journal of Public Economic Theory* and *The International Journal of Communications*. Most important to his qualifications as an expert witness in this case, Prof. Wilkie served as Chief Economist at the Federal Communications Commission ("FCC") from July 2002 to December 2003, and was responsible for advising the FCC Chairman and Commissioners, overseeing FCC staff economic analysis, and managing interdisciplinary teams of economists, lawyers, and engineers on a variety of topics in the telecommunications industry.

[27]   "Courts have declined to engage in a *Daubert* analysis at the class certification stage of an action on the ground that an inquiry into the admissibility of the proposed expert testimony under *Daubert* would be an inappropriate consideration of the merits of the plaintiff's claims." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 162 (citation omitted). Thus, an expert's opinion supporting (or opposing) class certification is not subjected to a full reliability analysis under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *Dukes*, 222 F.R.D. at 191. At the class certification stage, an expert opinion need only be relevant and useful in evaluating whether class certification requirements have been met. *In re First Am. Corp. ERISA Litig.*, Nos. SACV 07-01357-JVS (RNBx), CV 07-07602; CV 07-07585, SACV 08-00110, 2009 WL 928294, at *1 (C.D. Cal. April 2, 2009) (citing *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 604-05 (S.D. Cal. 2007), and *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 162 (C.D. Cal. 2002)). The Court should consider expert testimony at the class certification stage unless it is "so flawed that it would be inadmissible as a matter of law." *Id.*

At the class certification stage of the litigation, the Court "must avoid engaging in a battle of the expert testimony." *SRAM*, 2008 WL 4447592 (quoting *DRAM*, 2006 WL 1530166, at *9). At this stage, "the Court's inquiry is limited to whether or not the proposed methods are so insubstantial as to amount to no method at all." *Id.* at *6 (quoting *In re Potash Antitrust Litig.*,

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

*Antitrust and Other Damages*.  Once antitrust injury is established, the overall burden of proving damages is eased significantly under Section 2 of the Sherman Act.  *Moore*, 682 F.2d at 836; *DRAM*, 2006 WL 1530166, at *10.  Individual damages issues are thus generally no bar to certification of antitrust claims. *Live Concert*, 2007 WL 4291967, at *37-39, *51; *In re Rubber Chems.*, 232 F.R.D. at 354, *A-T-O*, 80 F.R.D. at 70; *see generally* NEWBERG, §18:27.

Here again, the quantification of damages only reinforces predominance because Plaintiffs will calculate damages on a class-wide basis, based upon one or more of three well-established and reliable damages methodologies. *See Little Caesar*, 172 F.R.D. at 267; *DRAM*, 2006 WL 1530166, at *10; *In re Sugar Indus. Antitrust Litig.*, No. MDL 201, 1976 WL 1374, at *27 (N.D. Cal. May 21, 1976).  In this case, damages will be established for all iPhone customers pursuant to a common methodology.  But for the technological impediments that Apple built into the iPhones to enforce ATTM's exclusivity, iPhone customers could have terminated their two-year agreements with ATTM and switched to another carrier for voice and data service.  Prof. Wilkie has determined that T-Mobile's voice and data service was a reasonable alternative to ATTM's own voice and data service.  In addition, Prof. Wilkie has calculated damages for all Class members by comparing the total cost paid to Apple and ATTM (including acquisition costs and voice and data service fees) for the entire period of ATTM's exclusivity against the costs that would have been paid by iPhone customers if they terminated their ATTM contracts, paid the ETF (for both the full $175 as well as the pro-rated amounts), switched to T-Mobile, and paid T-Mobile's voice and data service fees for the duration of that same period of time.  While Prof. Wilkie's calculation is subject to refinement after Plaintiffs receive merits discovery, the difference between those amounts is economic harm that each member of the Class has suffered because of Defendants' unlawful monopolization of the iPhone voice and data after-market.

Courts have repeatedly acknowledged this methodology as an accepted means of calculating class-wide damages in antitrust cases.  *See*, *e.g.*, *In re NASDAQ Market Makers Antitrust Litig.*, 169 F.R.D 493, 521 (S.D.N.Y. 1996) (holding the "'yardstick'" method for

---

159 F.R.D. 682, 697 (D. Minn. 1995)).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 29 -

1    calculating damages, which "compares profits earned or prices paid by the plaintiff with the

2    corresponding data for a … market unaffected by the violation … is an accepted means of

3    measuring damages in an antitrust action."); *In re Indus. Silicon Antitrust Litig.*, No. 95-1131,

4    1998 WL 1031507, at *3 (W.D. Pa. Oct. 13, 1998) (finding expert's before-and-after comparison

5    proper model for showing antitrust damages); *In re Corrugated Container Antitrust Litig.*, MDL

6    No. 310, 1979 WL 1751, at *2 (S.D. Tex. Dec. 21, 1979) (approving, over objection, damages

7    amount in antitrust settlement because expert's damages "estimate was based on a before-and-after

8    model, using the four years within the statute of limitations as 'before' and the years 1977 and

9    1978, after the grand jury investigation was underway, as 'after'"); *see also Live Concert*, 247

10   F.R.D. at 144 ("Plaintiffs have demonstrated that several generally accepted methodologies can be

11   used to prove class-wide impact through the use of common evidence.")

12          Defendant may try to attack Prof. Wilkie's application of these accepted models for

13   calculating class-wide damages, but this is not the time or place to resolve any battle of experts.

14   "It is not necessary that plaintiffs show that their expert's methods will work with certainty at this

15   time. Rather, plaintiffs' burden is to present the court with a likely method for determining class

16   damages." *Tableware*, 241 F.R.D. at 652 (quoting *In re Domestic Air Transp.*, 137 F.R.D. 677,

17   693 (N.D. Ga. 1991)); *Live Concert*, 247 F.R.D. at 110 ("district court is not permitted to discount

18   the testimony of a plaintiff expert merely because the defendant has challenged some aspect of the

19   expert's opinion"); *In re Rubber Chems.*, 232 F.R.D. at 353 (same).

20          Nonetheless, Prof. Wilkie has not simply opined on a theoretical methodology for

21   calculating antitrust damages. Using data produced by Defendants in discovery as well as publicly

22   available market data, Prof. Wilkie has calculated a preliminary estimate of damages for the Class.

23   Using two widely accepted methodologies for computing economic impact, Prof. Wilkie has

24   preliminarily determined the harm to all iPhone customers from Defendants' monopolization of

25   the voice and data aftermarket.

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 30 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  28

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

1

2

3   ### 2.   Superiority

4        Superiority under Rule 23(b)(3) is demonstrated where "classwide litigation of common

5   issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace,*

6   *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Defendants cannot seriously question the superiority of

7   the class mechanism in resolving the antitrust claims asserted against it here. *See, e.g., Bafus*, 236

8   F.R.D. at 658 (tying claim satisfied superiority requirement); *George Lussier*, 2001 U.S. Dist.

9   LEXIS 12054, at *17-22 (same); *Little Caesar*, 172 F.R.D. at 267 (same); *Collins*, 168 F.R.D. at

10  677 (same); *Eastman Kodak*, 1994 U.S. Dist. LEXIS 12652, at *10. Litigating the monopolization

11  claims of each iPhone customer on an individual basis, even if it were practically feasible, is

12  plainly not the preferable alternative. *Live Concert*, 247 F.R.D. at 148 (class mechanism clearly

13  superior way to resolve antitrust claims, even if individualized damages analysis assumed to be

14  required); *DRAM*, 2006 WL 1530166, at *11 ("it would be unnecessarily duplicative, and

15  judicially inefficient, for the court to mandate individual trials as to each class member"); *see*

16  NEWBERG, §4:32 at 269 ("only when such difficulties make a class action less fair and efficient

17  than some other method, such as individual interventions or consolidation of individual lawsuits,

18  that a class action is improper").

19        Indeed, class certification is nothing less than essential if the private antitrust enforcement

20  mechanism is to function at all. As the court held in *Tableware*: "The modest amount at stake for

21  individual plaintiffs … renders individual prosecution impractical; class treatment not only

22  promotes judicial economy, it represents plaintiffs' only chance for adjudication." *Tableware*, 241

23  F.R.D. at 652 (citing *Amchem*, 521 U.S. at 616). A class action is the superior means of resolving

24  cases such as this, where individual claims are too small to be litigated individually but which

25  involve large damages in the aggregate. *Amchem*, 521 U.S. at 617. "In antitrust cases such as

26  this, the damages of individual direct purchasers are likely to be too small to justify litigation, but

27  a class action would offer those with small claims the opportunity for meaningful redress. A class

28  action is the superior method of resolving this controversy." *SRAM*, 2008 WL 4447592, at *7.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 32 -

In *iTunes*, this Court certified an antitrust class action that "involves potentially millions of class members," where individual recoveries "would likely be no more than several hundred dollars," finding that "there would be little incentive for an individual iPod purchaser to take on a factually complex antitrust case such as this one." 2008 WL 5574487, at *8, order amended by 2009 WL 249234 (N.D. Cal. Jan. 15, 2009). The Court's analysis applies with identical force to this case as well.

**D.    A Readily Definable Class of iPhone Customers Exists**

A class must be defined with reasonable specificity. *O'Connor v. Boeing North Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). However, a class definition is "definite enough" to satisfy Rule 23 if it "is administratively feasible for the court to ascertain whether an individual is a member." *Tableware*, 241 F.R.D. at 650 (quoting *O'Connor*).[29] The Class definition proposed by Plaintiffs here – all persons who owned iPhones and entered into two-year service agreements with ATTM during a specified time period – unquestionably constitutes an "ascertainable class" within the meaning of Rule 23. *See, e.g.*, *Live Concert*, 247 F.R.D. at 155 (certifying class of "All persons who purchased tickets to any live rock concert in the Chicago Region directly from any of the Defendants or their affiliates or predecessors or agents during the period from June 19, 1998 to the present.") This Court recently certified a nearly identically defined class of iPod purchasers. *See iTunes*, 2008 WL 5574487, at *8-9, order amended by 2009 WL 249234 (N.D. Cal. Jan. 15, 2009). The Court has certified far less precisely defined classes. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 650-51 (C.D. Cal. 2000) (certifying class defined as persons who have suffered or will suffer economic damage as a result of an oil spill or the ensuing clean-up effort).

The Sub-Class is also defined and ascertainable.

---

[29]    Plaintiffs do not expect Defendants to dispute that Class members can be easily identified from Defendants' own detailed electronic records.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 33 -

**E.     Appointment of Class Counsel**

Rule 23 requires the Court to appoint counsel to represent the interests of the Class.  Fed. R. Civ. P. 23(g)(1).  *In re Rubber Chems.*, 232 F.R.D. at 355.  For the reasons stated above in connection with the adequacy requirements of Rule 23(a)(4), and as the law firm has demonstrated thus far in its role as Interim Class Counsel in this litigation, Wolf Haldenstein is "well equipped" to vigorously represent the proposed classes.  *See* Rickert Decl., Exhibit R (Wolf Haldenstein's Firm Resume).  The Court should accordingly appoint Wolf Haldenstein as Lead Counsel for the Class.

**V.     CONCLUSION**

For the foregoing reasons, this case easily meets all the requirements of Rules 23(a) and 23(b)(2) and (3) for class certification.  Plaintiffs therefore request that the Court grant their

---

30

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 34 -

1    motion to certify the class action, to appoint Plaintiffs as representatives of the Class, and to

2    appoint Wolf Haldenstein as Lead Class Counsel.

3    Dated: January 21, 2010                      WOLF HALDENSTEIN ADLER
                                                  FREEMAN & HERZ LLP
4                                                 FRANCIS M. GREGOREK
                                                  RACHELE R. RICKERT
5

6                                                     /s/ Rachele R. Rickert
7                                                     RACHELE R. RICKERT

8                                                 750 B. Street, Suite 2770
                                                  San Diego, California 92101
9                                                 Telephone:  619/239-4599
                                                  Facsimile:  619/234-4599
10                                                gregorek@whafh.com
                                                  manifold@whafh.com
11                                                rickert@whafh.com

12                                                WOLF HALDENSTEIN ADLER
                                                  FREEMAN & HERZ LLP
13                                                MARK C. RIFKIN (*pro hac vice*)
                                                  ALEXANDER H. SCHMIDT (*pro hac vice*)
14                                                ZACHARY W. BIESANZ (*pro hac vice*)

15                                                    /s/ Mark C. Rifkin
16                                                    MARK C. RIFKIN

17                                                270 Madison Avenue
                                                  New York, New York 10016
18                                                Telephone:  212/545-4600
                                                  Facsimile:  212/545-4677
19                                                rifkin@whafh.com
                                                  schmidt@whafh.com
20                                                biesanz@whafh.com

21                                                *Plaintiffs' Interim Lead Counsel*

22                                                RANDALL S. NEWMAN, P.C.
                                                  RANDALL S. NEWMAN
23                                                The Trump Building
                                                  40 Wall Street, 61st Floor
24                                                New York, New York 10005
                                                  Telephone:  212/797-3737
25                                                Facsimile:  212/797-3172
                                                  rsn@randallnewman.net
26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 35 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SHABEL & DENITTIS, P.C.
NORMAN SHABEL (*pro hac vice*)
STEPHEN P. DENITTIS (*pro hac vice*)
5 Greentree Centre, Suite 302
Marlton, New Jersey 08053
Telephone: 856/797-9951
Facsimile:  856/797-9978
sdenittis@shabeldenittis.com

*Additional Counsel for Plaintiffs*

APPLE:567093.MTN

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

1

## DECLARATION REGARDING CONCURRENCE

2    I, Rachele R. Rickert , am the ECF User whose identification and password are being used

3   to file this PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS

4   CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES.  In compliance with

5   General Order 45.X.B, I hereby attest that Mark C. Rifkin has concurred in this filing.

6   DATED:  January 21, 2010              WOLF HALDENSTEIN ADLER FREEMAN
                                         & HERZ LLP
7

8                                        By: _____ /s/ Rachele R. Rickert_____
9                                                      RACHELE R. RICKERT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES – Master File No. C 07-05152 JW

- 37 -