1    LATHAM & WATKINS LLP
     Daniel M. Wall (Bar No. 102580)
2      Alfred C. Pfeiffer, Jr. (Bar No. 120965)
     Christopher S. Yates (Bar No. 161273)
3      Sadik Huseny (Bar No. 224659)
   505 Montgomery Street, Suite 2000
4    San Francisco, California  94111-6538
   Telephone:  (415) 391-0600
5    Facsimile:  (415) 395-8095
   Email:    Dan.Wall@lw.com
6    Email:    Al.Pfeiffer@lw.com
   Email:    Chris.Yates@lw.com
7    Email:    Sadik.Huseny@lw.com

8    Attorneys for Defendant
   APPLE INC.

9

10               UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                SAN JOSE DIVISION

13

| | |
|---|---|
| IN RE APPLE & AT&TM ANTITRUST LITIGATION | CASE NO. C 07-5152 JW (PVT) |
| | **APPLE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:       April 26, 2010 |
| | Time:      9:00 AM |
| | Place:     Courtroom 8, 4th Floor |
| | Judge:    The Honorable James Ware |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

# TABLE OF CONTENTS

**PAGE**

I.    STATEMENT OF ISSUES TO BE DECIDED ................................................ 1

II.    INTRODUCTION .................................................................................... 1

III.    BACKGROUND ....................................................................................... 2

     A.    iPhone Operating System Software and Software Update 1.1.1 ............ 2

     B.    Plaintiffs' Version 1.1.1 Allegations ................................................ 3

     C.    Plaintiffs' Motion for Class Certification Continues to Highlight the Claim that Apple Intentionally Destroyed and Did Not Replace iPhones............ 5

     D.    The RCAC Allegations Are Revealed As False ................................... 6

         1.    Plaintiff Michael Lee ................................................................ 6

         2.    Plaintiff Scott Sesso ................................................................ 7

         3.    Plaintiff Timothy Smith ........................................................... 8

         4.    Plaintiff Dennis Macasaddu ...................................................... 9

         5.    Other Named Plaintiffs ........................................................... 13

IV.    LEGAL STANDARD ............................................................................... 14

     A.    Summary Judgment ...................................................................... 14

     B.    Article III Standing ....................................................................... 15

V.    APPLE IS ENTITLED TO SUMMARY JUDGMENT ON THE 1.1.1 CLAIMS ........ 16

     A.    Plaintiffs Have Not Been Injured By Version 1.1.1 ........................... 16

         1.    Seven of the Eight Named Plaintiffs Now Admit to No Injury.............. 16

         2.    There Is No Genuine Issue of Material Fact As to the Replacement of Macasaddu's iPhone ...................................... 16

     B.    Because Plaintiffs Suffered No Legally Cognizable Injury Due to Downloading Version 1.1.1, They Lack Standing to Pursue Their Version 1.1.1-Related Claims ........................................................ 20

         1.    Plaintiffs Lack Standing To Bring A MMWA Claim Against Apple Because No Plaintiff Has Been Denied Warranty Coverage.................. 21

         2.    Plaintiffs Lack Standing To Bring Trespass To Chattels, Computer Fraud Or California Penal Code Section 502 Claims Against Apple Because No Plaintiff Has Suffered An Injury in Fact............................. 23

VI.    CONCLUSION....................................................................................... 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Allen v. Wright,*
   468 U.S. 737 (1984) ........................................................................................... 15

*Birdsong v. Apple, Inc.,*
   590 F.3d 955 (9th Cir. 2009) ...................................................................... 16, 23

*Bishop v. Saab Automobile A.B.,*
   No. CV 95-0721 JGD (JRx), 1996 U.S. Dist. LEXIS 22888 (C.D. Cal. Apr. 18, 1996) ..... 20

*Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,*
   818 F.2d 1466 (9th Cir. 1987) ........................................................................... 14

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ........................................................................................... 14

*Cenveo Corp. v. CelumSolutions Software GMBH & Co. KG,*
   504 F.Supp.2d 574 (D. Minn. 2007) .................................................................. 24

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006) ........................................................................................... 15

*Erlandson v. Ford Motor Co.,*
   No. 08-CV-1137-BR, 2009 U.S. Dist. LEXIS 101316  (D. Or. Oct. 30, 2009) .................. 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.,*
   528 U.S. 167 (2000) ..................................................................................... 15, 25

*Garelli Wong & Assocs. v. Nichols,*
   551 F. Supp. 2d 704 (N.D. Ill. 2008) ................................................................. 24

*Gerlinger v. Amazon.com, Inc.,*
   526 F.3d 1253 (9th Cir. 2008) ........................................................................... 15

*In re Apple and AT&TM Antitrust Litig.,*
   596 F.Supp.2d 1288 (N.D. Cal. 2008) ............................................................... 22

*Intel Corp. v. Hamidi,*
   30 Cal. 4th 1342 (Cal. 2003) ............................................................................. 24

*Johnson v. Washington Metro. Area Transit Authority,*
   883 F.2d 125 (D.C. Cir. 1989) ........................................................... 14, 15, 17, 18

*Kennedy v. Applause, Inc.,*
   90 F.3d 1477 (9th Cir. 1996) ....................................................................... 14, 18

*Lee v. Capital One Bank,*
   No. C 07-4599 MHP, 2008 U.S. Dist. LEXIS 17113 (N.D. Cal. March 4, 2008) .............. 23

*Leon v. IDX Sys. Corp.,*
   464 F.3d 951 (9th Cir. 2006) ............................................................................. 20

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

*Lewis v. Casey*,
    518 U.S. 343 (1996)..................................................................................... 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................... 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..................................................................................... 14

*Milicevic v. Fletcher Jones Imps., Ltd.*,
    402 F. 3d 912 (9th Cir. 2005) ...................................................................... 21

*Moose Lodge No. 107 v. Irvis*,
    407 U.S. 163 (1972)..................................................................................... 23

*People v. Tillotson*,
    157 Cal. App. 4th 517 (2007) ...................................................................... 24

*Sanchez v. Client Servs. Inc.*,
    520 F. Supp. 2d 1149 (N.D. Cal. 2007) ................................................. 14, 16

*Scott v. Harris*,
    550 U.S. 372 (2007)..................................................................... 2, 14, 18, 19

*Sennett v. Fleetwood Motor Homes of Cal., Inc.*,
    No.04-161-PHX-ROS, 2006 U.S. Dist. LEXIS 36969 (D. Ariz. June 2, 2006).................. 22

*Sigliano v. Mendoza*,
    642 F.2d 309 (9th Cir. 1981) ......................................................................... 5

*Silvestri v. General Motors Corp.*,
    271 F.3d 583 (4th Cir. 2001) ....................................................................... 20

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)....................................................................................... 15

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
    506 F.3d 832 (9th Cir. 2007) ................................................................. 15, 25

*Stanford v. Home Depot USA, Inc.*,
    No. 07cv2193-LAB (WMc), 2008 WL 7348181 (S.D. Cal. May 27, 2008)..................... 25

*State Farm Fire and Casualty Co. v. Broan Manuf. Co., Inc.*,
    523 F. Supp. 2d 992 (D. Ariz. 2007) ........................................................... 20

*Temple v. Fleetwood Enters.*,
    133 Fed. Appx. 254 (6th Cir. 2005)......................................................... 21, 22

*Unigard Security Ins. Co. v. Lakewood Eng'g & Manuf. Corp.*,
    982 F.2d 363 (9th Cir. 1992) ....................................................................... 20

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................... 23

*Whitson v. Bumbo*,
    No. C 07-05597 MHP, 2009 U.S. Dist. LEXIS 32282 (N.D. Cal. April 16,
    2009) ..................................................................................................... 23, 25

*Wren v. RGIS Inventory Specialists,*
    No. C-06-05778 JCS, 2009 U.S. Dist. LEXIS 52040 (N.D. Cal. June 19, 2009) .................. 5

## STATUTES

15 U.S.C. § 2310(e) ..................................................................................................... 22

California Penal Code § 502(e)..................................................................................... 24

Federal Rules of Civil Procedures 56(c) ...................................................................... 14

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS**

NOTICE IS HEREBY GIVEN that on April 26, 2010, at 9:00 a.m., or as soon thereafter as counsel can be heard, in Courtroom 8, Fourth Floor, of the United States District Court for the Northern District of California, San Jose Division, 280 South First Street, San Jose California, before The Honorable James Ware, Defendant Apple Inc. ("Apple") will, and hereby does, move this Court for summary judgment as to Plaintiffs' iPhone Operating System Version 1.1.1. Claims.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Sadik Huseny and attached exhibits, the Declaration of Caroline Mahone-Gonzalez and attached exhibits, the pleadings in this action, and such other matters and argument as the Court may consider at the time of the hearing.

Pursuant to the Civil Local Rules of this Court and the San Jose Division Standing Order Regarding Case Management in Civil Cases, the parties have met and conferred as to the hearing date and briefing schedule regarding this motion, and have agreed to the following schedule:  (i) motion filed by February 15, 2010; (ii) opposition filed by March 15, 2010; (iii) reply filed by April 5, 2010; and (iv) hearing on April 26, 2010.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.      STATEMENT OF ISSUES TO BE DECIDED**

3              1.  Whether the named plaintiffs in this purported class action lack standing to

4    bring their claim for violation of the Magnuson-Moss Warranty Act, such that the Court should

5    grant judgment in Apple's favor on this claim.

6              2.   Whether the named plaintiffs in this purported class action lack standing to

7    bring their Trespass to Chattels, Computer Fraud and Abuse Act and California Penal Code

8    Section 502 claims, such that the Court should grant judgment in Apple's favor on these claims.

9    **II.     INTRODUCTION**

10             Since the outset of this litigation in 2007, plaintiffs have accused Apple of

11   intentionally and maliciously "bricking" (rendering inoperable) their iPhones, and then refusing to

12   replace the destroyed iPhones.  Specifically, plaintiffs claim that Apple's iPhone software update

13   version 1.1.1 ("version 1.1.1") destroyed the iPhones of consumers who had modified the iPhone

14   operating system software "to unlock their iPhones or to install software applications that competed

15   with Apple's," and that Apple refused to repair or replace those iPhones, such that plaintiffs' "only

16   remedy was to buy a new iPhone."  *See* Declaration of Sadik Huseny ISO Motion for Summary

17   Judgment ("Huseny Decl."), Ex. B (Revised Consolidated Amended Complaint, Docket No. 109;

18   hereinafter "RCAC") ¶¶ 5-6.  However, in deposition, plaintiff after plaintiff admitted that their

19   allegations of injury from "bricking" were false:  version 1.1.1 did no damage to their iPhones, or

20   Apple replaced any allegedly "bricked" iPhones before this case was filed.  The testimony of

21   plaintiff Michael Lee is illustrative:

22             Q.  What allegation or assertion in this complaint is inaccurate?

23             A.  The – the last – second to last sentence on Page 9,
              Paragraph 48, "Lee contacted Apple to repair his iPhone, but
24            Apple refused to honor its warranty because Lee had, one,
              unlocked his phone, and, two, installed third-party apps."

25            Q.  So is that allegation false?

26            A.  That allegation is not true.

27            Q.  So it's false?

28            A.  Yes.

             Q.  What is not true about it, what is false about it?

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

1

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

A.  I – I – I haven't had an iPhone claim not honored by Apple because of – of updating the software on it.

Huseny Decl. Ex. E, Lee Dep. 63:11-64:2.  Only one of the plaintiffs, Dennis Macasaddu, continued to claim at deposition that Apple refused to replace his allegedly bricked iPhone.  But his self-serving testimony does not create a genuine issue for trial.  No rational trier of fact could find for Macasaddu on this claim, given the incontrovertible evidence showing that Apple in fact gave him a replacement iPhone free of charge, as well as automated AT&T Mobile ("AT&TM") records showing that this replacement iPhone (identified through a unique "fingerprint," its International Mobile Equipment Identity ("IMEI") number) was activated on Macasaddu's AT&TM line and remained active through at least November 2008.  *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007).  And, if there were any doubt that Macasaddu's 1.1.1 claims should be dismissed, even under his version of events, he spoliated the key piece of evidence supporting his claim—the "bricked" iPhone itself.

The bottom line is that plaintiffs' real-world experiences have no relation to the injury they alleged in their complaint:  whatever may or may not have happened to some of the plaintiffs' iPhones as a result of their altering or hacking their devices and then installing version 1.1.1, any such plaintiffs got free replacement iPhones from Apple.  As a result, none of them suffered injury by reason of version 1.1.1 allegedly "bricking" their iPhones, and they lack standing to bring any claims based on the purported conduct.  The Court should grant judgment in Apple's favor on all of plaintiffs' claims concerning the alleged bricking of their iPhones:  namely, Count VII (Magnuson-Moss Warranty Act); Count VIII (Trespass to Chattels); Count IX (Computer Fraud and Abuse Act) and Count X (Section 502 of the California Penal Code).  RCAC ¶¶ 158-174.

## III.    BACKGROUND

### A.    iPhone Operating System Software and Software Update 1.1.1

Apple's iPhone includes operating system ("OS") software.  Apple, like other software developers, regularly releases OS software updates that users can download and install.  These OS software updates contain bug fixes, new features, and improvements to the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1  functionality and usability of devices such as the iPhone.

2       When Apple launched the iPhone in June 2007, the operating system was iPhone

3  OS 1.0. There have been well over a dozen updates to the iPhone's OS since, with the latest

4  update—iPhone OS 3.1.3—having been released on February 2, 2010. In this litigation,

5  plaintiffs focus on one of the earliest of Apple's many iPhone OS software updates, software

6  update 1.1.1—released in September 2007, a few months after the iPhone's initial launch.

7  Plaintiffs allege that software update 1.1.1 "bricked" the iPhones of some named plaintiffs.[1]

8  RCAC ¶¶ 5, 6.

9      **B.**    **Plaintiffs' Version 1.1.1 Allegations**

10       Plaintiffs' representations regarding version 1.1.1 and its alleged effects have

11  shifted over the course of this litigation, but have always been a critical and prominent

12  component of their claims against Apple. In their first consolidated complaint, filed in May

13  2008, plaintiffs alleged that:

14      In an act that can only be described as *reprehensible* and
15  *unconscionable . . .* Apple *retaliated against and punished*
   consumers who had exercised their legal right to unlock their
   iPhone or who had installed software applications that competed
16  with Apple's . . . [by] issu[ing] a software update in which Apple
   had *secretly embedded malicious codes designed to 'brick'* (that is,
17  render completely inoperable) or otherwise damage the iPhones of
   *any consumer* that had unlocked the iPhone or downloaded
18  competing applications.

19  Huseny Decl., Ex. A (Consolidated Amended Complaint, Docket No. 102 ("CAC")) ¶ 5

20  (emphasis added); *see also id.* at ¶¶ 73, 96, 99. In other words, the original allegation was that

21  version 1.1.1 bricked *all iPhones* that had been unlocked or "jailbroken."

22       Apple challenged plaintiffs to show that these allegations had a sufficient basis to

23  meet the requirements of Rule 11 of the Federal Rules of Civil Procedure. After a detailed Rule

24
---
[1]  The only plaintiffs who claimed to have suffered "bricking" as a result of software update 1.1.1.
25  admitted that they had hacked (or had others hack) the operating system on their iPhone, so as to
   "unlock" (alter the iPhone or iPhone OS to allow the iPhone to connect to a network other than
26  AT&TM's) or "jailbreak" (alter the iPhone OS to allow the installation of third-party applications)
   their iPhones. *See, e.g.*, Huseny Decl. Ex. N (Macasaddu Dep. 50:14-19, 77:17-78:2); Ex. M (Sesso
27  Dep. 69:3-72:21); Ex. F (Smith Dep. 77:23-78:5). Stated differently, these plaintiffs had altered the
   iPhone's hardware or made unauthorized modifications to the copyrighted iPhone software, in
28  violation of the iPhone software license agreement.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1  11 meet-and-confer process, plaintiffs amended their complaint, filing a Revised Consolidated

2  Amended Class Action Complaint on June 4, 2008.  Huseny Decl. ¶ 2.  The RCAC softened the

3  allegations about Apple's intentions and asserted that bricking occurred only to "some iPhones."

4  *Compare* RCAC ¶ 5 *with* CAC ¶ 5.  However, the allegations of injury—both generally and as to

5  specific plaintiffs—were fundamentally unchanged.  The key allegations from the RCAC's

6  "Summary of Material Facts" read in their entirety as follows:

> 5.   In response to consumers exercising their legal right to unlock
> their iPhones or to install software applications that competed with
> Apple's, on September 27, 2007, under the guise of issuing an
> "upgraded" version of the iPhone operating software, Apple
> knowingly issued and caused transmission of a purported update to
> the iPhone operating software, known as Version 1.1.1, which
> "bricked" (that is, rendered completely inoperable) or otherwise
> damaged some iPhones that were unlocked or had downloaded
> competing software applications.
>
> 6.   When iPhone owners took their damaged phones to Apple or
> AT&TM for repair or replacement, they were unlawfully told that
> they had breached their warranty agreements by unlocking their
> phone or downloading unapproved software and that their only
> remedy was to buy a new iPhone.  Because Apple had intentionally
> released and transmitted Version 1.1.1 knowing that it would
> damage or destroy unlocked iPhones, Apple and AT&TM were
> obligated by law to honor their warranties and repair or replace the
> phones.

17  RCAC ¶¶ 5-6.

18           Collectively, the named plaintiffs—Herbert H. Kliegerman, Paul Holman, Lucy

19  Rivello, Vincent Scotti, Timothy P. Smith, Michael G. Lee, Mark G. Morikawa, Scott Sesso, and

20  Dennis V. Macasaddu—assert that this conduct entitles them as well as all "persons . . . who

21  purchased an iPhone from Apple or AT&TM" to damages and injunctive relief, under four causes

22  of action denominated Trespass to Chattels, Magnuson-Moss Warranty Act ("MMWA"),

23  Computer Fraud Act, and California Penal Code Section 502.  RCAC ¶¶ 108-109.[2]  They

---

[2]   Plaintiff Vincent Scotti was among the plaintiffs named in the operative complaint.  RCAC ¶ 20.
However, after Apple served discovery requests and Scotti failed to respond, plaintiffs' counsel
represented that Scotti could not be contacted and that counsel would seek to drop him from the
underlying litigation and not move to certify him as a class representative.  Huseny Decl. ¶ 9.  As
Scotti has failed to respond to discovery—and is not moving to be appointed a class representative, *id.*,
*see also* Mot. for Class Certification, Proposed Order—the Court should enter judgment in favor of
defendants as to all of Scotti's claims.  *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981)
("Dismissal is a proper sanction . . . for a serious or total failure to respond to discovery"); *Wren v.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1  maintain these claims despite acknowledging that iPhone users had to affirmatively choose to

2  install version 1.1.1 after being warned by Apple that irreparable damage to iPhones could occur

3  if the user installed version 1.1.1 after modifying the iPhone OS.  *See* RCAC ¶¶ 37, 98-103.[3]  And

4  only four of the named plaintiffs—Lee, Macasaddu, Sesso and Smith—alleged in the RCAC that

5  they were injured by downloading version 1.1.1, and that they then "contacted Apple to repair

6  [their] iPhone[s], but Apple refused to honor its warranty . . . ."  RCAC ¶¶ 47-49, 56.  The

7  remaining named plaintiffs (Holman, Kliegerman, Morikawa and Rivello) alleged no such

8  injuries.  RCAC ¶¶ 37, 45-46, 52-53.

9         **C.**     **Plaintiffs' Motion for Class Certification Continues to Highlight the Claim that Apple Intentionally Destroyed and Did Not Replace iPhones**

10          Plaintiffs' recently-filed class certification papers confirm how much they rely on

11 the named plaintiffs' "bricking" allegations in their overall litigation strategy.  In the second

12 sentence of their introduction, plaintiffs again aim squarely at the "bricking" issue, stating

13 unequivocally that "Defendants have pursued their scheme so zealously that Apple even destroyed

14 the iPhones of many customers who dared to exercise their statutory right under the Digital

15 Millennium Copyright Act . . . to switch cellular carriers."  Mot. for Class Certification at 1:18-21

16 (Docket No. 240).  And they repeat, essentially verbatim, the core allegations made in the RCAC

17 quoted above:  that Apple knowingly and intentionally destroyed the iPhones of its consumers,

18 refused to replace them, and unlawfully told these consumers that "their only remedy was to buy a

19 new iPhone."  *Compare* RCAC ¶¶ 5-6 *with* Mot. for Class Certification at 7:17-8:7.  Based on

20

21      *RGIS Inventory Specialists*, No. C-06-05778 JCS, 2009 U.S. Dist. LEXIS 52040, at *16 (N.D. Cal.

22 June 19, 2009) (dismissing claims of class action plaintiffs who failed to respond to discovery).  In any event, Scotti didn't make any specific allegations concerning the release of version 1.1.1 injuring him

23 (or even in general), and therefore, by definition he does not have standing to bring the version 1.1.1 claims.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992).  For these reasons, this motion

24 focuses on the remaining eight named plaintiffs.

25 [3]  Plaintiffs' RCAC acknowledges that Apple issued a September 24, 2007 press release discussing the dangers of hacking.  *See* RCAC ¶ 98.  In addition, one of plaintiffs' earlier, pre-consolidated

26 complaints acknowledged that prior to installing version 1.1.1, iPhone owners had to view a bold, capitalized warning stating: **"IF YOU HAVE MODIFIED YOUR IPHONE'S SOFTWARE,**

27 **APPLYING THIS SOFTWARE UPDATE MAY RESULT IN YOUR IPHONE BECOMING PERMANENTLY INOPERABLE."**  Huseny Decl Ex. C (*Smith et al. v. Apple Inc. et al.,* First

28 Amended Complaint for Damages and Permanent Injunctive Relief, Santa Clara County Superior Court, ¶ 42 (attached as Exhibit C to Docket No. 81 in this case).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   these allegations, plaintiffs state in their motion that they seek to represent a "sub-class . . . of

2   iPhone customers whose iPhones were also 'bricked' by Defendant Apple." *Id.* at 8, n.11.

3        **D.**    **The RCAC Allegations Are Revealed As False**

4         Plaintiffs' "bricking" claims are based on allegations that have now been revealed

5   to be false.  Discovery proved that the four named plaintiffs who alleged that Apple "bricked" and

6   refused to repair their iPhones—Lee, Sesso, Smith, and Macasaddu—cannot demonstrate that they

7   were indeed injured by Apple's release of version 1.1.1.  In reality, and directly contrary to their

8   false assertions in the RCAC, those plaintiffs either downloaded version 1.1.1 without incident, or

9   Apple replaced their iPhones.  The remaining plaintiffs—Rivello, Morikawa, Holman and

10  Kliegerman—either (1) made no claims about version 1.1.1 or admitted to having downloaded it

11  without any ill effect (Rivello, Morikawa and Kliegerman), or (2) claimed to have avoided

12  downloading version 1.1.1 (Holman).[4]

13        This is not a matter of a single errant or accidental allegation that might be

14  explained away.  Rather, Apple discovered a string of false allegations that affected nearly every

15  plaintiff, and had at its heart the simple truth that *none* of the named plaintiffs was injured by

16  version 1.1.1 as they had claimed in the RCAC.  What is more, plaintiffs had an opportunity to

17  reexamine their 1.1.1-related allegations, pursuant to the Rule 11 meet-and-confer initiated by

18  Apple, after they first filed their consolidated complaint.  And they still chose to re-allege all of

19  these specific claims of injury in the RCAC.  *Compare* CAC ¶¶ 36 – 57 *with* RCAC ¶¶ 36 – 57.

20  Apple will address each in turn.

21       **1.**    **Plaintiff Michael Lee**

22        In the RCAC, plaintiff Michael Lee alleged as follows:

23        Lee contacted Apple to repair his iPhone, but Apple refused to honor its
      warranty because Lee had (1) unlocked his iPhone, and (2) installed

24        Third Party Apps.

25  RCAC ¶ 48.  As noted, during his deposition, plaintiff Michael Lee admitted that this allegation

26  was simply false:

27  _____

[4]   Holman admitted in deposition that he did in fact download 1.1.1; Holman also admitted that he

28      downloaded 1.1.1 without any ill effect.  Huseny Decl. Ex. M (Holman Dep. 149:6 - 152:21).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

Q.  What allegation or assertion in this complaint is inaccurate?

A.  The – the last – second to last sentence on Page 9, Paragraph 48, "Lee contacted Apple to repair his iPhone, but Apple refused to honor its warranty because Lee had, one, unlocked his phone, and, two, installed third-party apps.

Q.  So is that allegation false?

A.  That allegation is not true.

Q.  So it's false?

A.  Yes.

Q.  What is not true about it, what is false about it?

A.  I – I – I haven't had an iPhone claim not honored by Apple because of – of updating the software on it.

Huseny Decl. Ex. E (Lee Dep. 63:11-64:2).  If any question remained as to his alleged injury having been false, Lee further testified point blank as follows:  "I wasn't harmed by the – the 1.1.1 update."  *Id.* at Lee Dep. 56:1-2.

### 2.      Plaintiff Scott Sesso

In the RCAC, plaintiff Scott Sesso alleged as follows:

His iPhone was bricked, that is, disabled, and his Third Party Apps were erased after he downloaded iPhone update Version 1.1.1  Sesso contacted Apple to repair his iPhone, but Apple refused to honor its warranty because he had (1) unlocked his iPhone, and (2) installed Third Party Apps.

RCAC ¶ 56.  At deposition, Sesso admitted otherwise.  He testified that he had paid a stranger in a shopping mall $70 to alter his iPhone and, when his iPhone started "acting up" after these unknown alterations, Sesso brought it to an Apple retail store for repair.  Huseny Decl. Ex. O (Sesso Dep. 66:12-72:14, 74:14-75:25).  As part of the repair, an Apple employee working at the store obtained Sesso's approval to update the iPhone software to version 1.1.1, and then did so. *Id.* at Sesso Dep. 74:14-75:25, 77:22-78:4.  When "there was a problem with [the] phone" after the software update, Sesso admitted that Apple told him "it was covered under warranty and that they were going to give me another phone, which they did."  *Id.* at Sesso Dep. 78:6-13.  In other words, whatever this stranger did to Sesso's iPhone that caused it to start "acting up," and whatever may have been the issue with his iPhone during the repair process, Sesso immediately got a new iPhone from Apple:

Q.  So you got a new phone free of charge, right?

1

> A.  Yes.

2

> Q.  So you got a replacement iPhone free of charge after 1.1.1 was
> installed at the Apple retail store at The Grove, correct?

3

> A.  Correct.

4

Huseny Decl. Ex. O (Sesso Dep. 78:25-79:6).

5

### 3.      Plaintiff Timothy Smith

6

In the RCAC, plaintiff Timothy Smith alleged as follows:

7

> His iPhone was disabled, malfunctioned, and/or his Third Party Apps
> were erased after downloading iPhone update Version 1.1.1  Smith
> contacted Apple to repair his iPhone, but Apple refused to honor its
> warranty because he had (1) unlocked his iPhone, and (2) installed
> Third Party Apps.

8

9

10

RCAC ¶ 47.  At his deposition, Smith—like his fellow plaintiffs Lee and Sesso—affirmed that

11

these allegations in the complaint were false.  He testified that Apple *had* replaced his allegedly

12

"bricked" iPhone, "no questions."  Huseny Decl. Ex. F (Smith Dep. 88:7-22, 92:9-18).  Indeed,

13

although he testified to a pattern of consistently and regularly hacking his iPhone, Smith admitted

14

that Apple never refused to replace an iPhone, and in fact replaced his various iPhones with *at least*

15

*seven successive iPhones on at least seven occasions.  Id.* at Smith Dep. 113:21-114:13, 121:19-

16

122:2, 128:7-129:9, 137:14-141:1.  Smith further boasted in online blog posts, and admitted at

17

deposition, that he had "surely over hacked" some of his iPhones, that he had "tricked" Apple into

18

replacing an iPhone, and that Apple had even replaced an iPhone "that [he] had frozen [him]self

19

from jailbreaking."  *Id.* at Smith Dep. 10:21-24, 107:4-17, 108:16-109:17, 139:10-140:18; *see also*

20

Huseny Decl. Exs. G, H, I, J (Smith Dep. Exs. 7, 9, 12-13).  Apple replaced each iPhone, every

21

time:

22

> Q.  Have you ever had any warranty claims denied by Apple?

23

> A.  Not that I can recall.

24

> Q.  So you've never had any issues with Apple's warranty
> coverage for your particular phones; is that correct?

25

> A.  Yeah, I think that's correct.
> . . .

26

> Q.  You also testified earlier that Apple never denied you
> replacement of a phone under the warranty; do you recall testifying
> to that?

27

> A.  I did.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   *Id.* at Smith Dep. 72:3-9;  *see also id.* at Smith Dep. 138:16-138:19 ("Apple doesn't tend to ask a

2   lot of questions if you bring in a dysfunctional phone they'll replace it.  It was my intent they'd do

3   the same.").

4              **4.      Plaintiff Dennis Macasaddu**

5              That leaves plaintiff Macasaddu as the only plaintiff who continued to claim, at

6   deposition, that version 1.1.1 "bricked" his iPhone and that Apple refused to replace it, leaving

7   him with no working iPhone thereafter.  This assertion is false, and does not raise a genuine issue

8   of material fact as to Macasaddu's purported injury because incontrovertible and overwhelming

9   evidence establishes that Macasaddu's allegedly "bricked" iPhone was in fact returned to an

10  Apple retail store, and replaced free of charge with a working iPhone.

11             In the RCAC, Macasaddu  alleged as follows:

12             Plaintiff Macasaddu's iPhone was disabled, malfunctioned, and/or his
               Third Party Apps were erased after downloading iPhone update Version
13             1.1.1.  Macasaddu contacted Apple to repair his iPhone, but Apple
               refused to honor its warranty because he had (1) unlocked his iPhone, or
14             (2) installed a Third Party App.

15  RCAC ¶ 49.  At his deposition, Macasaddu elaborated that he had altered his iPhone by

16  "jailbreaking" it.[5]  He further testified that he installed version 1.1.1 on his altered iPhone on

17  September 27, 2007, the first day the update was available, and that afterward, his iPhone became

18  inoperable.  *See* Huseny Decl. Ex. P (Macasaddu Dep. 49:13-50:3, 83:8-10, 86:5-19); Ex. FF

19  (Response to AT&TM's Interrogatories, Set 1, No. 5).  Macasaddu also testified that Apple

20  refused to provide a replacement for his bricked iPhone, and that that he never again had any

21  working iPhone after September 27, 2007.  Huseny Decl. Ex. P (Macasaddu Dep. 81:21-23, 92:2-

22  11, 118:8-11, 120:8-18).  When pressed about what cellular phone he was allegedly using in lieu

23  of the iPhone, he testified that he took the SIM card from his iPhone "as soon as it bricked" and

24  put it into a data-capable Sony Ericsson phone, which he used with AT&TM service until his line

25

26  [5]   Macasaddu's account of how he hacked his iPhone has changed over time.  He first admitted, in his
          verified response to Apple's Requests for Admission, that he "unlocked" his phone.  Huseny Decl.
27        Ex. DD (Macasaddu Responses to Apple's First Set of RFAs, No. 48).  Later, Macasaddu tried to
          backtrack, claiming he had "jailbroken" his iPhone.  Huseny Decl. Ex. P (Macasaddu Dep. 50:14-19,
28        77:17-78:2).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   was terminated in March 2009.  *Id.* at 106:21-107:5, 141:8-142:4.[6]

2              Macasaddu could not point to anything to support his claim.  The overwhelming

3   and undeniable evidence shows that he did in fact receive a free, replacement iPhone from

4   Apple—and used it for quite some time.

5              ***Apple's Sales and Service Records***.  Apple's business records document the

6   following chain of events:  Macasaddu purchased two iPhones on June 30, 2007, one of which

7   (kept and used by Macasaddu) bore the unique serial number 7R726GR2WH8.  *See* Huseny Decl.

8   Ex. P (Macasaddu Dep. 20:17-21:24); Ex. Q (Macasaddu Dep. Ex. 1).[7]  Apple replaced this

9   iPhone with successive iPhones no fewer than three times under warranty, as Macasaddu

10  affirmed, the last time on August 2, 2007.  Huseny Decl. Ex. P (Macasaddu Dep. 96:11-101:6);

11  Exs. St, T, U (Macasaddu Dep. Exs. 11-13).  The last of these three replacement iPhones bore the

12  unique serial number 7S7302DBWH8, and the unique IMEI number 011300002737220.  Huseny

13  Decl. Ex. W (Macasaddu Dep. Ex. 15);[8] Ex. Z (Gust Dep. Ex. 2); Ex. Y (Gust Dep. 78:8-81:8).[9]

14  Thus, as of September 26, 2007, it is undisputed that the iPhone Macasaddu was using: (i) had the

15  serial number 7S7302DBWH8; and (ii) had the IMEI number 011300002737220.

16             Apple released version 1.1.1 on September 27, 2007.  On September 28, 2007, a

17  call was placed to AppleCare (Apple's customer care group) regarding Macasaddu's iPhone with

---

18  [6]   Macasaddu claimed to have done this so that he could continue using his AT&TM plan on a different
19        device, as transferring his SIM card would allow him to continue accessing his  particular AT&TM
        phone line on a different cellular phone).  Huseny Decl. Ex. P (Macasaddu Dep. at 120:19-121:18).

20  [7]   The second iPhone was purchased for a friend.  *See id.*

21  [8]   Macasaddu's iPhone was registered on an AT&TM account with "AlkaLifeSource" as the primary
        account holder, and with both Jose Pascasio and Dennis Macasaddu (business partners in
22      AlkaLifeSource) as authorized users on the AT&TM and Apple accounts (each with their specific
        phone numbers).  Huseny Decl Ex. GG (Macasaddu Response to AT&TM's First Set of
23      Interrogatories, No. 2); Ex. P (Macasaddu Dep. 101:10-102:19; 118:15-24); Ex. V (Macasaddu Dep.
        Ex. 14); Ex. X (Macasaddu Dep. Ex. 16 (Pascasio/Macasaddu AT&TM phone bill)).

24  [9]   Each iPhone bears two unique identifying numbers, that are fixed to the iPhone itself and are
        nontransferable.  For Apple's tracking and manufacturing purposes, each iPhone bears a unique and
25      fixed serial number, that is a unique identifier for that particular piece of hardware.  The second
        identifying number, the "International Mobile Equipment Identity" or "IMEI" number, is an
26      identifying number that is unique and fixed for every GSM-type phone, including the iPhone.  *See*
        Declaration of Caroline Mahone-Gonzalez ("Mahone-Gonzalez Dec."), ¶ 2. The IMEI number is
27      transmitted to the network when a device attempts to connect to that network (essentially acting as a
        "fingerprint" for each device), so that the GSM network can identify and register devices seeking to
28      connect to it.  *Id.;* Huseny Decl. Ex. Y (Gust Dep. 19:20-24).

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1    serial number 7S7302DBWH8 describing a SIM card error that Macasaddu claimed had appeared

2    after installation of version 1.1.1.  Huseny Decl. Ex. V (Macasaddu Dep. Ex. 14); Ex. AA (Gust

3    Dep. Ex. 4);  Ex. Y (Gust Dep. 47:12-49:5).  Apple then sent a box to Macasaddu's business

4    address so that he could send in his iPhone to Apple's screening center.  Huseny Decl. Ex. BB

5    (Gust Dep. Ex. 5); Ex. Y (Gust Dep. 64:8-64:22); Ex. P (Macasaddu Dep. 34:9-12, 95:3-7).  On

6    October 2, 2007, Apple's screening center received the iPhone, determined that there was "No

7    Trouble Found" with it, and overnighted it back to Macasaddu that same day.  *Id.* Ex. BB (Gust

8    Dep. Ex. 5); Ex. Y (Gust Dep. 66:8-21).[10]  Apparently dissatisfied, Macasaddu then decided to try

9    to get a new iPhone at an Apple retail store.  Apple retail store and Apple customer records

10   confirm a store visit and "Repair Swap" on October 3, 2007, at which the Glendale Galleria Apple

11   retail store took Macasaddu's old iPhone—Serial No. 7S7302DBWH8 and IMEI No.

12   011300002737220—and replaced it with an iPhone bearing Serial No. 3273439QWH8 and IMEI

13   No. 011245009312578.  Huseny Decl. Exs. W (Macasaddu Dep. Ex. 15); Ex. DD (Gust Dep. Ex.

14   11); Ex. Y (Gust Dep. 18:5-19:24, 68:9-69:11, 79:18-84:24); Ex. CC (Gust Dep. Ex. 6).  Apple's

15   "Installed Product ID" business record indicates that the replacement iPhone, Serial No.

16   3273439QWH8 and IMEI No. 011245009312578, was activated on Macasaddu's phone line

17   (customer telephone line or "CTN" as referenced therein) the next day, October 4, 2007.  Huseny

18   Dec. Ex. DD (Gust Dep. Ex. 11);  Ex. Y (Gust Dep. 81:19-84:24).  In short, the iPhone

19   Macasaddu claims was bricked by downloading 1.1.1 was exchanged for a replacement iPhone—

20   free of charge—at an Apple retail store on October 3, 2007.

21          ***AT&TM's Service Records***.  Automated AT&TM documents further confirm the

22   fact that Apple replaced Macasaddu's allegedly bricked iPhone in early October 2007.  The

23   AT&TM bill for Macasaddu's iPhone for the billing period September 9, 2007 to October 8, 2007

24   indicates that data transmission for the line ceased on September 27, 2007:  the date version 1.1.1

25   was released and Macasaddu claims he downloaded it.  Huseny Decl. Ex. X (Macasaddu Dep. Ex.

26   16).  Indeed, plaintiffs themselves cite to this bill to support their claim that Macasaddu's iPhone

27   _____

28   [10]   Apple's screening center's standard process is to ship iPhones back by overnight Federal Express.  Huseny Decl. Ex. Y (Gust Dep. 79:10-17).

1    was "bricked" around the time of version 1.1.1.  *See* Mot. for Class Certification at 34, n.32.  But

2    the record also shows that data transmission did not start the next day, September 28, 2007,

3    contrary to Macasaddu's claim that he started using a Sony Ericsson for voice and data services on

4    his AT&TM account immediately after the iPhone "bricked."  Huseny Decl. Ex. P (Macasaddu

5    Dep. 106:21-107:5; 120:1-121:18).  Instead, the very bill plaintiffs cite shows that there was no

6    data usage until October 4, 2007—a full week later, and the very day Apple's business records

7    show it activated Macasaddu's new, replacement iPhone.  *See* Huseny Decl. Ex. X (Macasaddu

8    Dep. Ex. 16).[11]  Indeed, AT&TM's records show data transmissions occurred in that billing period

9    *every single day* prior to September 27, and *every single day* from October 4, 2007 to the end of the

10   billing period.  The only gap in data transmissions was the one-week period from September 27 to

11   October 4.

12          Moreover, AT&TM's internal account records for Macasaddu's phone number

13   indicate that on the morning of October 4, 2007, the IMEI number associated with the phone line

14   changed from the IMEI number for Macasaddu's old "bricked" iPhone— 011300002737220—to

15   the IMEI number of the new, replacement iPhone—011245009312578.  *See* Mahone-Gonzalez

16   Decl. ¶ 7; Ex. A.  Because each cellular phone has a unique IMEI number—in essence the

17   fingerprint of the phone—AT&TM's records constitute irrefutable proof that the replacement

18   iPhone Macasaddu received was activated on Macasaddu's phone line on October 4, 2007.  *See*

19   Mahone-Gonzalez Decl. ¶¶ 2,7; Huseny Decl. Ex. Y (Gust Dep. 19:20-24).

20          AT&TM's records also show that the replacement iPhone was active on

21   Macasaddu's line for a long period of time—as late as November, 2008.  The IMEI history and

22   records for Macasaddu's telephone from March 29, 2006 through October 1, 2009 show that the

23   iPhone with IMEI number 011245009312578—the IMEI number for Macasaddu's replacement

24   iPhone—was active on October 4, 2007 and was the only cellular device registered on

25   Macasaddu's line from October 4, 2007 through January 3, 2008.  *See* Mahone-Gonzalez Decl. ¶

26   10; Ex. B.  On January 3, 2008, a different device (IMEI 359593001441105) registered, but on

27

28

---

[11]   In deposition, Macasaddu could offer no explanation as to why data transmission ceased September
       27, 2007, but resumed October 4, 2007.  *See* Huseny Decl. Ex. P (Macasaddu Dep. 121:6-9).

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

12

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   the next day, January 4, 2008, Macasaddu's replacement iPhone (IMEI 011245009312578)

2   *again* registered on the network, and from January 4, 2008 through November 7, 2008, no other

3   device registered on Macasaddu's phone line except for the replacement iPhone. *Id.* ¶¶ 10-11;

4   Ex. B.  This evidence—automated, and of DNA-like precision—is incontrovertible proof that the

5   replacement iPhone was in fact issued, and used on Macasaddu's phone line—until at least late

6   2008.

### 5.   Other Named Plaintiffs

8          As noted, the remaining four plaintiffs—Rivello, Morikawa, Holman and

9   Kliegerman—either made no claims of being injured by version 1.1.1 or claimed to have avoided

10  downloading version 1.1.1.

11         Rivello and Morikawa made no allegations regarding version 1.1.1 at all, and

12  affirmed at deposition that they (i) had never been harmed by Apple's iPhone OS software updates,

13  and (ii) never had occasion to present any warranty claims to Apple.  RCAC ¶¶ 46, 52-53;  Huseny

14  Decl. Ex. K (Rivello Dep. 41:10-42:4); Huseny Decl. Ex. L (Morikawa Dep. 80:8-81:3).  Plaintiff

15  Kliegerman alleged that he had downloaded version 1.1.1 on his iPhones, and affirmed similarly at

16  deposition that his iPhones had not been damaged or destroyed by 1.1.1 and that Apple had never

17  had occasion to deny related warranty service on his iPhones.  RCAC ¶ 45; Huseny Decl. Ex. N

18  (Kliegerman Dep. 103:21-104:2, 106:19-107:9).

19         As for plaintiff Paul Holman, discovery revealed that his specific allegations

20  regarding version 1.1.1 were also false.  Holman alleged, in the June 2008 RCAC, that he "is faced

21  with the choice of foregoing an upgrade to iPhone operating software [v]ersion 1.1.1, which

22  contains improvements he has paid for and is entitled to, or losing the Third Party Apps he

23  currently uses."  RCAC ¶ 37.  But at deposition, Holman testified that he *had* in fact downloaded

24  version 1.1.1 long before—in or about October 2007.  Huseny Decl. Ex. M (Holman Dep. 135:2-

25  136:8).  He further testified that he downloaded version 1.1.1 on multiple iPhones, including those

26  which he had jailbroken and unlocked, without incident.  *Id.* at Holman Dep. 45:5-12, 150:152:4).

27         The remarkable truth is that the RCAC contains allegation after allegation of

28  plaintiff-specific "injuries" from version 1.1.1 that are false.  This is inexcusable, particularly since

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1  Apple questioned plaintiffs' Rule 11 foundation to make these claims and plaintiffs thereafter

2  purported to amend so as to comply with Rule 11.  Huseny Decl. ¶ 2; *compare* CAC ¶¶ 5, 6 *with*

3  RCAC ¶¶ 5, 6.  There never was any basis for these plaintiffs to make these claims.

4  **IV.    LEGAL STANDARD**

5        **A.    Summary Judgment**

6        This Court may grant summary judgment if it finds "that there is no genuine issue

7  as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

8  Civ. Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  "[I]f the non-moving

9  party will bear the burden of proof at trial as to an essential element to its case, and that party fails

10  to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of

11  that element, then summary judgment is appropriate."  *Cal. Architectural Bldg. Prods., Inc. v.*

12  *Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).   Moreover, "if the factual

13  context makes the non-moving party's claim *implausible*, that party must come forward with more

14  persuasive evidence than would otherwise be necessary to show that there is a genuine issue for

15  trial."  *Id.* (emphasis in original); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

16  U.S. 574, 587 (1986) ("[If] the record taken as a whole could not lead a rational trier of fact to

17  find for the nonmoving party, there is no genuine issue for trial" and summary judgment should be

18  granted.) (citations and internal quotations omitted).

19        Self-serving testimony that is discredited by the record as a whole cannot create a

20  triable issue.  *Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *see also Kennedy v. Applause, Inc.*, 90

21  F.3d 1477, 1481 (9th Cir. 1996); *Johnson v. Washington Metro. Area Transit Authority*, 883 F.2d

22  125, 128 (D.C. Cir. 1989) (judges may "lawfully put aside testimony that is so undermined as to be

23  incredible" under certain circumstances, which are "most likely when a plaintiff's claim is

24  supported solely by plaintiff's own self-serving testimony, unsupported by corroborating evidence,

25  and undermined … by other credible evidence… ."); *Sanchez v. Client Servs. Inc.*, 520 F. Supp. 2d

26  1149, 1164 (N.D. Cal. 2007) (Trumbull, J.) ("Where a declaration is contradicted by other credible

27  evidence, the court may reject the evidence if it is so 'undermined as to be incredible.'") (quoting

28  *Johnson*, 883 F.2d at 128).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1       **B.      Article III Standing**

2               At an "irreducible constitutional minimum," a plaintiff seeking relief in federal

3   court must establish Article III standing "separately for each form of relief sought."  *Lujan v.*

4   *Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332,

5   352 (2006) (citations omitted).  To satisfy Article III's standing requirements, a plaintiff must

6   have suffered "an injury in fact—an invasion of a legally protected interest which is (a) concrete

7   and particularized … and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504

8   U.S. at 560 (citations and internal quotations omitted).  A plaintiff must also establish "a causal

9   connection between the injury and the conduct complained of."  *Id.*  Finally, it must be likely that

10  the injury "will be redressed by a favorable decision."  *Id.* (quoting *Simon v. E. Ky. Welfare Rights*

11  *Org.*, 426 U.S. 26, 38 (1976)).  Because these elements "are not mere pleading requirements but

12  rather an indispensable part of the plaintiff's case, each element must be supported in the same

13  way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and

14  degree of evidence required at the successive stages of the litigation."  *Lujan*, 504 U.S. at 561

15  (citations omitted).  Thus, in response to a summary judgment motion, a plaintiff asserting that he

16  is a proper party to invoke judicial resolution of the dispute and the exercise of the court's

17  remedial powers cannot rest on "general factual allegations of injury resulting from the

18  defendant's conduct" but "must set forth by affidavit or other evidence *specific facts*" as to the

19  existence of standing.  *Id.* (emphasis added) (citation and internal quotation marks omitted); *see*

20  *also Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253, 1255-56 (9th Cir. 2008).  The requisite injury

21  "must exist from the commencement of litigation."  *Friends of the Earth, Inc. v. Laidlaw Envtl.*

22  *Services (TOC), Inc.*, 528 U.S. 167, 189 (2000); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506

23  F.3d 832, 838 (9th Cir. 2007) ("The existence of standing turns on the facts as they existed at the

24  time the plaintiff filed the complaint.") (citing *Lujan*, 504 U.S. at 569 n.4).

25              "[T]he standing inquiry requires careful judicial examination of a complaint's

26  allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the

27  *particular claims* asserted."  *Allen v. Wright*, 468 U.S. 737, 752 (1984) (emphases added).  The

28  same standing requirements apply in putative class actions:  "even named plaintiffs who represent

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1    a class must allege and show that they personally have been injured, not that injury has been

2    suffered by other, unidentified members of the class to which they belong and which they purport

3    to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citations and internal quotations

4    omitted); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (affirming dismissal of

5    plaintiffs' California unfair competition claim for lack of standing; "At most, the plaintiffs plead a

6    potential risk of hearing loss not to themselves, but to other unidentified iPod users who might

7    *choose* to use their iPods in an unsafe manner.  The risk of injury the plaintiffs allege is not

8    concrete and particularized *as to themselves*.") (emphasis in original) (citations omitted).

9    **V.    APPLE IS ENTITLED TO SUMMARY JUDGMENT ON THE 1.1.1 CLAIMS**

10        **A.    Plaintiffs Have Not Been Injured By Version 1.1.1**

11           **1.    Seven of the Eight Named Plaintiffs Now Admit to No Injury**

12           As described in detail above, seven of the eight named plaintiffs have admitted

13    that iPhone software update version 1.1.1 caused them no injury.  Plaintiffs Kliegerman,

14    Holman, Morikawa and Rivello downloaded version 1.1.1, and it did not damage their iPhones

15    (some of which were jailbroken and unlocked, some of which were not).  Huseny Decl. Ex. N

16    (Kliegerman Dep. 103:21-104:2, 106:19-107:9); Ex. M (Holman Dep. 45:5-12, 135:2-136:8,

17    150:1-152:21); Ex. L (Morikawa Dep. 80:8-81:3); Ex. K (Rivello Dep. 41:10-42:4).  Plaintiff

18    Lee admitted at deposition that, despite his direct allegation to the contrary, Apple never denied a

19    warranty claim from him, and in fact version 1.1.1 never did his iPhones any harm.  Huseny

20    Decl. Ex. E (Lee Dep. 56:1-2, 63:11-64:2).  And plaintiffs Sesso and Smith admitted that their

21    allegations of being denied warranty service for their allegedly "bricked" iPhones were false:

22    Apple replaced those iPhones.  Huseny Decl. Ex. O (Sesso Dep. 78:25-79:6); Ex. F (Smith Dep.

23    72:3-9, 88:7-22, 92:9-18, 187:3-6.  This leaves only one named plaintiff, Macasaddu, claiming

24    that his iPhone was damaged by 1.1.1 and not replaced.

25           **2.    There Is No Genuine Issue of Material Fact As to the Replacement of Macasaddu's iPhone**

26

27           If ever a party's self-serving and uncorroborated testimony is "so undermined as to

   be incredible," this is surely the case.  *Sanchez*, 520 F. Supp. 2d at 1164 (N.D. Cal. 2007)

28    (Trumbull, J.) (quoting *Johnson*, 883 F.2d at 128).  No rational trier of fact could find that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   Macasaddu did not receive and use his replacement iPhone.  Apple and AT&TM business records

2   establish, in tandem and with uncontestable precision, that when Macasaddu presented his

3   damaged iPhone to Apple, he got a new iPhone which he activated on AT&TM's network and

4   then used for more than one year:  Apple's records show the request for a repair and that Apple

5   gave him a replacement iPhone free of charge; AT&TM's records show that the replacement

6   iPhone was activated on Macasaddu's telephone line.  Moreover, as plaintiffs themselves

7   acknowledge, Macasaddu's AT&TM bill shows that data usage on his iPhone data plan stopped

8   the day he claims his iPhone was "bricked."  Mot. for Class Certification at 34, n.32.  This same

9   bill, of course, shows that the data usage started up again *the day after his iPhone was replaced*,

10  one week later—entirely inconsistent with his claim that he started using a Sony Ericsson device

11  for voice and data immediately upon his iPhone "bricking," and yet perfectly consistent with his

12  receiving and activating his replacement iPhone (which re-started the flow of data usage).  And

13  AT&TM's automated network registration logs show the replacement iPhone as registered on

14  Macasaddu's AT&TM line through 2008—a year after Macasaddu claimed he stopped using an

15  iPhone because it supposedly had been "bricked" and not replaced.

16          This is not a case of "he said, she said" differences in recollection.  The AT&TM

17  logs, for instance, are records that track a customer's IMEI history, and show that the

18  replacement iPhone (identified by its unique IMEI number) registered repeatedly on

19  Macasaddu's phone line, and remained activated until late 2008.  And all of these records—

20  Apple's repair records, AT&TM's call logs, AT&TM's network registration logs, Macasaddu's

21  phone bill—match. Macasaddu offered no corroborating documentation—and indeed no support

22  whatsoever—for his assertion that his "bricked" iPhone was not replaced by Apple, despite being

23  afforded multiple opportunities to do so. [12]  His claim is "supported solely by [his] own self-

24  serving testimony, unsupported by corroborating evidence, and undermined … by other credible

25  _____

[12]  Despite multiple demands, Macasaddu produced a total of 13 documents to defendants:  one partially
26       obscured copy of the original purchase receipt for two iPhones, and twelve T-Mobile bills covering
         the period of November 17, 2008 through November 7, 2009.  Huseny Dec. ¶ 8.  Notably, Macasaddu
27       failed to produce a single e-mail (from Apple, AT&TM or anyone else) discussing or mentioning the
         iPhone, and did not produce a single document related to the Sony Ericsson phone he claims to have
28       used from October 2007 until March of 2009.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   evidence," thus empowering the Court to simply set it aside.   *Johnson*, 883 F.2d at 128; *see also*

2   *Kennedy*, 90 F.3d at 1481.

3           The Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007), holds that

4   self-serving testimony cannot create a triable issue when it conflicts with objective and definitive

5   proof.  *Id.* at 380-81.  The case involved a conflict between a plaintiff's testimony that he was

6   driving carefully when injured in an accident and videotape evidence showing him fleeing from

7   the police in a reckless and dangerous manner.  The Court of Appeals held it was bound to

8   accept the plaintiff's version of events under the rule that a court must view the evidence in the

9   light most favorable to the party opposing summary judgment.  The Supreme Court reversed,

10  making clear that a court should not accept the "visible fiction" of self-serving assertions when

11  those assertions are discredited by the record as a whole:

12          At the summary judgment stage, facts must be viewed in the light most
            favorable to the nonmoving party only if there is a 'genuine' dispute as
13          to those facts.  As we have emphasized, "[w]hen the moving party has
            carried its burden under *Rule 56(c)*, its opponent must do more than
14          simply show that there is some metaphysical doubt as to the material
            facts. . . .  Where the record taken as a whole could not lead a rational
15          trier of fact to find for the nonmoving party, there is no 'genuine issue
            for trial.'"  "[T]he mere existence of *some* alleged factual dispute
16          between the parties will not defeat an otherwise properly supported
            motion for summary judgment; the requirement is that there be no
17          *genuine* issue of *material* fact."

18          When opposing parties tell two different stories, one of which is
            blatantly contradicted by the record, so that no reasonable jury could
19          believe it, a court should not adopt that version of the facts for
            purposes of ruling on a motion for summary judgment.  That was the
20          case here with regard to the factual issue whether respondent was
            driving in such fashion as to endanger human life.  Respondent's
21          version of events is so utterly discredited by the record that no
            reasonable jury could have believed him.  The Court of Appeals
22          should not have relied on such visible fiction; it should have viewed
            the facts in the light depicted by the videotape.
23

24  *Id.* (emphasis in original; internal citations omitted).

25          Apple's billing and customer service records and AT&TM's service records are

26  like the videotape in *Scott*, effectively recording the moment-by-moment life of Macasaddu's

27  iPhones.  The one Macasaddu had hacked and then updated with version 1.1.1 became inoperable,

28  but then was exchanged for a new iPhone that Macasaddu immediately activated on the AT&TM

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1    network.  Macasaddu's words cannot lead a reasonable jury to find otherwise.

2              Moreover, if despite the mountainous evidence to the contrary, Macasaddu were

3    telling the truth, there would be one easy way to corroborate his story.  He could have produced

4    his allegedly "bricked" and unreplaced iPhone, in response to Apple's inspection demand.  When

5    discovery commenced in February 2009, Apple sought production of plaintiffs' allegedly bricked

6    iPhones for forensic inspection.  *See* Huseny Decl. Ex. D (Apple's First Set of Requests for

7    Production, No. 1).  The allegedly bricked iPhones are indisputably critical evidence.  Indeed, the

8    website of Macasaddu's attorney Damian Fernandez, www.appleiphonelawsuit.com, explicitly

9    instructs potential class representatives that "The class representative must preserve their iPhone,

10   documents, and any other evidence that could be relevant to the case."  Huseny Decl. Ex. HH.

11   However, plaintiffs never produced Macasaddu's (or any other plaintiffs') iPhones.  Instead, eight

12   months after Apple issued its request for production—but only about a week before Macasaddu's

13   deposition—plaintiffs' counsel informed Apple that Macasaddu had given the iPhone away to

14   someone in the Philippines and that it was irretrievable.  Huseny Decl. ¶ 7; *see also id.* at Ex. P

15   (Macasaddu Dep. 24:11-25:3).

16             In other words, if the Court were to credit Macasaddu's tale that he never received

17   a replacement iPhone in exchange for his supposedly "bricked" iPhone, then that necessarily

18   means the most critical piece of evidence regarding Macasaddu's claims is gone, because

19   Macasaddu got rid of it.  And, he did so (1) after he first started seeking counsel and exploring

20   litigation against Apple in late August 2007 (Huseny Decl. Ex. R (Macasaddu Dep. Ex. 8)); *id.* at

21   Ex. P (Macasaddu Dep. 69:8-71:5)); (2) despite meeting with his now-counsel in this case, who

22   properly advised plaintiffs of the need to "preserve their iPhone," by no later than October 4, 2007

23   (Huseny Decl. Ex. P (Macasaddu Dep. 45:14-46:7); Ex. HH); and (3) well after he knew or should

24   have known of the importance of the iPhone to his claims against Apple.[13]  Macasaddu cannot be

---

25   [13]  Macasaddu testified both that he had his iPhone "for a while" after the alleged bricking and that, in
26        fact, he had it until March 2008; he testified that he ultimately gave the "bricked" iPhone to a friend
          from the Philippines. Huseny Decl. Ex. P (Macasaddu Dep. 8:22–9:17; 24:11-25:3).  He also testified
27        that he brought his "bricked" iPhone into three Apple retail stores for service for a week after the
          iPhone was supposedly bricked. *Id.* at Macasaddu Dep. 89:21-90:9.  This would mean that
28        Macasaddu still had his allegedly bricked iPhone when he met with his counsel, Mr. Fernandez, on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   allowed to get away with that.  Spoliating evidence at the heart of a dispute results in the most

2   severe sanctions, including dismissal of claims.  *See, e.g.*, *Leon v. IDX Sys. Corp.*, 464 F.3d 951,

3   960-61 (9th Cir. 2006); *Unigard Security Ins. Co. v. Lakewood Eng'g & Manuf. Corp.*, 982 F.2d

4   363 (9th Cir. 1992).  In addition, district courts in the Ninth Circuit have granted summary

5   judgment in favor of defendants where the plaintiff spoliated critical evidence.  *Erlandson v. Ford*

6   *Motor Co.*, No. 08-CV-1137-BR, 2009 U.S. Dist. LEXIS 101316, *15-18 (D. Or. Oct. 30, 2009)

7   (summary judgment granted because plaintiff spoliated minivan that was the subject of product

8   liability claim, "[e]ven though Plaintiffs' motives were apparently innocent," [because] the

9   prejudice to Defendant is significant"); *Bishop v. Saab Automobile A.B.*, No. CV 95-0721 JGD

10  (JRx), 1996 U.S. Dist. LEXIS 22888 at *8-15 (C.D. Cal. Apr. 18, 1996) (granting summary

11  judgment to defendant because plaintiffs failed to preserve evidence critical to their claim, namely

12  the allegedly defective car).[14]  That is the proper course here.  There is no *genuine* issue for trial

13  on Macasaddu's alleged "injury," given the evidence confirming that he received a replacement

14  iPhone and used it for more than one-year after the alleged bricking.  Macasaddu's testimony

15  about a mystery iPhone is a "visible fiction" that he tries to sell with a story that admits to

16  spoliation of evidence.  The only right and reasonable outcome is summary judgment.

17      **B.**   **Because Plaintiffs Suffered no Legally Cognizable Injury Due to**
            **Downloading Version 1.1.1, They Lack Standing to Pursue Their Version**
18          **1.1.1-Related Claims**

19          Plaintiffs started this consolidated case by making the claim that Apple destroyed

20  and did not replace the iPhones of *all* of its customers that had unlocked or jailbroken their

21  iPhones.  CAC ¶ 5.  After Apple initiated a Rule 11 meet and confer process, plaintiffs amended

---

22      approximately October 4, 2007.  Mr. Fernandez filed the *Smith* purported class action lawsuit, which
        included allegations regarding alleged bricking on October 5, 2007; Macasaddu himself became a
23      named plaintiff in  the amended *Smith* complaint filed November 2, 2007.  Huseny Decl. Ex. C.

24  [14]  *And see State Farm Fire and Casualty Co. v. Broan Manuf. Co., Inc.*, 523 F. Supp. 2d 992, 996-97
        (D. Ariz. 2007) (failure to preserve vehicle containing alleged defects, and forcing defendant to rely
25      upon evidence collected by plaintiff's experts rather than its own, would result in "irreparable
        prejudice" to defendant warranting dismissal as sanction); *Silvestri v. General Motors Corp.*, 271
26      F.3d 583, 594 (4th Cir. 2001) (failure to preserve vehicle containing alleged defects, and forcing
        defendant to rely upon evidence collected by plaintiff's experts rather than its own, would result in
27      "irreparable prejudice" to defendant warranting dismissal).  Apple has not yet filed a separate motion
        seeking terminating sanctions and costs; Apple could file such a motion in short order if the Court
28      were to prefer to address Macasaddu's spoliation in response to such a motion.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

20

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   their complaint to state that Apple destroyed and did not replace the iPhones of *some* of its

2   customers that had unlocked or jailbroken their iPhones, and re-alleged their specific claims of

3   injury that four of the named plaintiffs had their iPhones "bricked" and not replaced by Apple.

4   RCAC ¶ 5.  Now, discovery has revealed that not a single one of these named plaintiffs was so

5   injured.  Simply put, there is not a single named plaintiff who has suffered the injury in fact

6   required for standing as to these claims.  That the Court and Apple should discover this now, over

7   two years into this litigation and after plaintiffs imposed enormous discovery burdens on Apple

8   related to the false 1.1.1 allegations, is inexcusable.  But whatever the cause, and blame, the

9   conclusion is clear:  plaintiffs do not have standing to bring their 1.1.1-related claims, and

10  judgment must be entered in Apple's favor on those claims.

11          **1.      Plaintiffs Lack Standing To Bring A MMWA Claim Against Apple
                       Because No Plaintiff Has Been Denied Warranty Coverage**

12              Plaintiffs lack standing to assert their MMWA claim against Apple because they

13  cannot establish that any of them was injured by being denied warranty coverage.

14               "In order to state an actionable claim of breach of warranty and/or
                violation of the Magnuson-Moss Act, a plaintiff must demonstrate that
15              (i) the item at issue was subject to a warranty; (ii) the item did not
                conform to the warranty; (iii) the seller was given reasonable
16              opportunity to cure any defects; and (iv) the seller failed to cure the
                defects within a reasonable time or a reasonable number of attempts.
17
                The Magnuson-Moss Act is the federal statute that sets forth guidelines,
18              procedures and requirements for warranties, written or implied, on
                consumer products.  Ultimately, the applicability of the Magnuson-
19              Moss Act is directly dependant upon a sustainable claim for breach of
                warranty. Thus, if there exists no actionable warranty claim, there can
20              be no violation of the Magnuson-Moss Act."

21  *Temple v. Fleetwood Enters*., 133 Fed. Appx. 254, 268 (6th Cir. 2005) (internal citations and

22  quotations omitted); *see also Milicevic v. Fletcher Jones Imps., Ltd*., 402 F. 3d 912, 917 (9th Cir.

23  2005) ("[The MMWA] creates a federal private cause of action for a warrantor's failure to comply

24  with the terms of a written warranty"); *Sennett v. Fleetwood Motor Homes of Cal., Inc*., No.04-161-

25  PHX-ROS, 2006 U.S. Dist. LEXIS 36969, at *10-11 (D. Ariz. June 2, 2006) (citing and quoting

26  *Temple*); 15 U.S.C. § 2310(e) (No claim allowed for failure to comply with any written or implied

27  warranty "unless the person obligated under the warranty . . . is afforded a reasonable opportunity

28  to cure such failure to comply.")

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

The RCAC asserts that plaintiffs were harmed when Apple refused to honor warranty claims of those individuals whose iPhones were allegedly bricked after they installed version 1.1.1, RCAC ¶¶ 6, 47, 48, 49, 56,[15] and this Court found, in denying Apple's motion to dismiss over one year ago, that plaintiffs had properly alleged that "Apple refused to honor the warranties of customers who used iPhone applications and cellular service not approved by Apple." *In re Apple and AT&TM Antitrust Litig.*, 596 F.Supp.2d 1288, 1313 (N.D. Cal. 2008).   As discussed above, these allegations were false.  The truth is now clear that there was no such denial of coverage, for any named plaintiff.

Plaintiffs have thus not suffered any injury in fact—namely, an invasion of the legal interest protected by the MMWA that is actual, concrete and particularized as to any individual plaintiff.  As described above, five of the named plaintiffs (Lee, Rivello, Morikawa, Holman and Kliegerman) never even had occasion to present a version 1.1.1 warranty demand to Apple regarding version 1.1.1, and certainly never had any such claim rejected.  Huseny Decl. Ex. E (Lee Dep.  63:11-64:2); Ex. K (Rivello Dep. 42:2-8); Ex. L (Morikawa Dep. 80:18-81:3); Ex. M (Holman Dep. 45:5-12, 152:10-21); Ex. N (Kliegerman Dep. 106:19-107:9).[16]  This leaves three named plaintiffs: Sesso, Smith and Macasaddu.  While each of these plaintiffs allege in the RCAC that they had presented warranty demands to Apple which had been denied, the deposition testimony and evidence has revealed such claims to be false.

In short, there is not a single plaintiff who has suffered the requisite, personal injury in fact as to their warranty claims.  Plaintiffs cannot simply rely on allegations that Apple

---

[15] Plaintiffs' RCAC also baldly alleges that plaintiffs had "provided Defendants with reasonable notice and an opportunity to cure their breaches of warranty and MMWA violations."  RCAC ¶ 161.  The truth, of course, is that those plaintiffs who downloaded version 1.1.1 without incident (most of them) had no breach of warranty to complain of, and so Apple of course had nothing to "cure" as to those plaintiffs.  As to others, setting aside the question of whether plaintiffs' admitted alterations of their iPhones were something covered by warranty—Apple submits that the admitted alteration of the iPhone's operating system breaches the software license agreement and the iPhone's terms of use and resulting damage is not covered by warranty—Apple *replaced* every one of those iPhones when presented with the respective claims, prior to commencement of litigation.

[16] Holman also admitted that as a hacker, he "want[s] to discover what's the future of the iPhone, what can we make this do?  And so, you know, *I'm expecting to violate my warranty; I'm not expecting Apple to honor it.*  I'm expecting when I break my iPhone I'm going to buy a series of new iPhones to keep on playing."  Huseny Decl. Ex. M (Holman Dep. 60:15-20) (emphasis added).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   may have denied some other, unidentified consumers' warranty claims in order to establish their

2   *own* particularized injury.  *Birdsong*, 590 F.3d at 959-61 (affirming dismissal of California unfair

3   competition claim for lack of standing); *see also Moose Lodge No. 107 v. Irvis*, 407 U.S. 163,

4   167 (1972) (plaintiff lacked standing to challenge club's discriminatory membership policies

5   where plaintiff never sought membership and thus was not injured by the challenged policies).

6   Nor can plaintiffs establish the requisite injury-in-fact simply by pointing to Apple's purported

7   misconduct and raising no more than generalized allegations of wrongdoing on the part of Apple.

8   *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("Even when the plaintiff has alleged injury

9   sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff

10   generally must assert *his own* legal rights and interests, and cannot rest his claim to relief on the

11   legal rights or interests of third parties.") (emphasis added); *Whitson v. Bumbo*, No. C 07-05597

12   MHP, 2009 U.S. Dist. LEXIS 32282, at *12, 18-19 (N.D. Cal. April 16, 2009) (dismissing

13   claims for lack of standing where class action plaintiff failed to allege injury to herself resulting

14   from unsafe baby seat and instead alleged "[s]ome children somewhere in the country were

15   harmed while using the [baby] seat").  These plaintiffs have simply not suffered any injuries as a

16   result of Apple's warranty policies, and thus cannot establish Article III standing.  *See Birdsong*,

17   590 F.3d at 960-61; *Lee v. Capital One Bank*, No. C 07-4599 MHP, 2008 U.S. Dist. LEXIS

18   17113, at *6-8 (N.D. Cal. March 4, 2008) (plaintiff lacked standing to challenge contract

19   provisions because they had not in fact been applied to him, making his purported injury "merely

20   conjectural").

21                    **2.      Plaintiffs Lack Standing To Bring Trespass To Chattels, Computer**
                              **Fraud Or California Penal Code Section 502 Claims Against Apple**
22                            **Because No Plaintiff Has Suffered An Injury in Fact**

23                    The same basic problem dooms plaintiffs' Trespass to Chattels, Computer Fraud,

24   and California Penal Code Section 502 claims (Counts VIII, IX, and X).  These causes of action

25   all require, among other things, that plaintiffs suffered harm or injury as a result of their property

26   being damaged or interfered with.  A claim for violation of the Computer Fraud and Abuse Act

27   requires a plaintiff to show both damage to a "protected computer" and loss or harm to the

28   plaintiff of at least $5,000.  *Cenveo Corp. v. CelumSolutions Software GMBH & Co. KG*, 504

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   F.Supp.2d 574, 581 (D. Minn. 2007) ("To establish a claim under the CFAA, [plaintiff] must

2   show that [defendant] intentionally accessed a protected computer without authorization and, as a

3   result, caused an annual loss of at least $5,000."; *Garelli Wong & Assocs. v. Nichols*, 551 F. Supp.

4   2d 704, 708 (N.D. Ill. 2008) ("[I]t is necessary for a plaintiff to plead both damage and loss in

5   order to properly allege a civil CFAA violation.")  Similarly, California Penal Code Section 502

6   makes it unlawful for a defendant to knowingly access a computer system and without permission

7   wrongfully alter, damage, delete, destroy, or otherwise use the data obtained from such access,

8   and authorizes a civil cause of action for any owner or lessee of such system who suffers damage

9   or loss by reason thereof.  *See People v. Tillotson*, 157 Cal. App. 4th 517, 538 (2007); Cal. Penal

10  Code § 502(e).  Finally, under  California law, trespass to chattels "lies where an intentional

11  interference with the possession of personal property has proximately caused injury."  *Intel Corp.*

12  *v. Hamidi*, 30 Cal. 4th 1342, 1350-51 (2003) (internal quotations, citation omitted).  The

13  California Supreme Court made clear that, unlike the case with real property trespass, there must

14  be actual injury or harm to a plaintiff for a cause of action for trespass to chattels to lie. *Id.* at 1351

15  ("[W]hile a harmless use or touching of personal property may be a technical trespass, an

16  interference (not amounting to dispossession) is not actionable, under modern California and

17  broader American law, without a showing of harm". . . "The interest of a possessor of a chattel in

18  its inviolability, unlike the similar interest of a possessor of land, is not given legal protection by

19  an action for nominal damages for harmless intermeddlings with the chattel.")

20          Plaintiffs *alleged* in the RCAC, of course, that such injury existed for a few of

21  them—but these allegations have been proven false.  No plaintiff suffered "an annual loss of at

22  least $5,000," actual "damage and loss," or "actual injury or harm."  As with their warranty

23  claims, there has been no invasion of the legal interest protected by these causes of action that is

24  actual, concrete and particularized as to any individual plaintiff.  Simply put, Apple's putatively

25  illegal conduct had no adverse effect on them.  *See Whitson*, 2009 U.S. Dist. LEXIS 32282, at

26  *18-19 (holding plaintiff lacked injury and Article III standing where product she purchased did

27  not "manifest[ ] the purported defect").  Even those plaintiffs whose iPhones were allegedly

28  "bricked" suffered no cognizable injury, because they immediately or promptly received

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1  replacement iPhones free of charge, prior to the commencement of litigation.  Contrary to

2  plaintiffs' repeated claims that they were refused replacement phones and told "their only remedy

3  was to buy a new iPhone," these plaintiffs each received replacement iPhones, immediately upon

4  making their claims at Apple retail stores.  These plaintiffs were in the same position at the

5  commencement of the litigation—with a fully functional and operational iPhone—as they would

6  have been absent Apple's allegedly unlawful transmission of version 1.1.1.  *See Skaff*, 506 F.3d at

7  838-40 ("The existence of standing turns on the facts as they existed at the time the plaintiff filed

8  the complaint;" plaintiff "suffered no cognizable injury . . . [where defendant] promptly corrected

9  its errors" because any injury from a remedied problem "is too trifling . . . to support

10  constitutional standing"); *Friends of the Earth,* 528 U.S. at 189 (2000) (plaintiff's injury "must

11  exist from the commencement of litigation"); *Stanford v. Home Depot USA, Inc.*, No. 07cv2193-

12  LAB (WMc), 2008 WL 7348181, at *13 (S.D. Cal. May 27, 2008), *aff'd* 2009 U.S. App. LEXIS

13  25758 (9th Cir. 2009) (no standing where putative class representative failed to establish any

14  injury resulting from defendant's overcharging of fees and delay in procuring requisite permit, as

15  fees were refunded prior to plaintiff filing suit and permit was ultimately obtained).  Thus, at the

16  time they filed their lawsuit, they were without the requisite injury to support standing.  Of course,

17  Apple and the Court did not know this—because each of these plaintiffs falsely alleged that their

18  iPhones had been bricked and not replaced by Apple.

19  **VI.    CONCLUSION**

20       For the foregoing reasons, Apple respectfully requests that the Court dismiss with

21  prejudice plaintiffs' MMWA (Count VII), Trespass to Chattels (Count VIII), Computer Fraud

22  (Count IX), and California Penal Code Section 502 (Count X) claims for want of standing.

23  Dated:  February 12, 2010                    Respectfully submitted,

24                                              LATHAM & WATKINS LLP

25

26                              By _____/s/ Sadik Huseny_____
                                        Sadik Huseny
27                                      Attorneys for Defendant APPLE INC.

28  SF\739372

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)