1  FRANCIS M. GREGOREK (144785)
   gregorek@whafh.com
2  RACHELE R. RICKERT (190634)
   rickert@whafh.com
3  WOLF HALDENSTEIN ADLER
     FREEMAN & HERZ LLP
4  750 B Street, Suite 2770
   San Diego, CA 92101
5  Telephone: 619/239-4599
   Facsimile: 619/234-4599
6
7  MARK C. RIFKIN (*pro hac vice*)
   rifkin@whafh.com
8  ALEXANDER H. SCHMIDT (*pro hac vice*)
   schmidt@whafh.com
9  ZACHARY W. BIESANZ (*pro hac vice*)
   biesanz@whafh.com
10 WOLF HALDENSTEIN ADLER
     FREEMAN & HERZ LLP
11 270 Madison Avenue
   New York, NY 10016
12 Telephone: 212/545-4600
   Facsimile: 212/545-4677
13
   Plaintiffs' Interim Lead Counsel
14

15

16            UNITED STATES DISTRICT COURT

17        FOR THE NORTHERN DISTRICT OF CALIFORNIA

18                   SAN JOSE DIVISION

19

20 IN RE APPLE & ATTM ANTITRUST    )  Master File No. C 07-05152 JW
   LITIGATION                       )
21                                  )  **PLAINTIFFS' OPPOSITION TO**
                                    )  **DEFENDANT APPLE, INC.'S MOTION**
22                                  )  **FOR SUMMARY JUDGMENT ON**
                                    )  **PLAINTIFFS' IPHONE OPERATING**
23                                  )  **SYSTEM VERSION 1.1.1 CLAIMS**
                                    )
24                                  )
                                    )
25                                  )  DATE:     April 26, 2010
                                    )  TIME:     9:00 a.m.
26                                  )  CRTRM:    8, 4th Floor
                                    )  JUDGE:    Hon. James Ware
27 _____ )

28     **DOCUMENT SUBMITTED UNDER SEAL PURSUANT TO L.R. 79-5(d)**

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 2

    A.    Plaintiffs' Allegations ................................................................................ 2

    B.    Procedural Posture .................................................................................... 4

    C.    The Evidence ............................................................................................. 5

           1.    Plaintiff Sesso ................................................................................ 7

           2.    Plaintiff Smith .............................................................................. 7

           3.    Plaintiff Macasaddu ...................................................................... 7

III. LEGAL ARGUMENT ........................................................................................... 9

    A.    Legal Standard .......................................................................................... 9

    B.    Plaintiffs Sesso, Smith, And Macasaddu Have Standing To Represent A Sub-Class Of Consumers Whose iPhones Were "Bricked" By Version 1.1.1 ........................................................................ 9

           1.    Plaintiffs Sesso And Macasaddu Suffered Damage And Loss As Defined By The Computer Fraud And Abuse Act ........................ 11

           2.    Plaintiffs Smith And Macasaddu Have Standing To Bring The Trespass To Chattels Claim .................................................. 13

           3.    Plaintiffs Sesso, Smith And Macasaddu Have Standing To Bring The California Penal Code Section 502 Claim .................. 14

           4.    Plaintiff Macasaddu Was Damaged by Apple's Violation Of The Magnuson-Moss Warranty Act. ...................................... 15

           5.    Apple Is Not Entitled To Summary Judgment Against Plaintiff Macasaddu Because He Cannot Produce His Bricked iPhone .............................................................................. 20

IV. CONCLUSION ...................................................................................................... 22

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS – MASTER FILE NO. C 07-05152 JW

- i -

1

TABLE OF AUTHORITIES

2

Page

3

**CASES**

*Adriana Intl. Corp. v. Thoeren,*
4    913 F.2d 1406 (9th Cir. 1990) .................................................................................20

5
*Alabama-Tombigbee Rivers Coalition v. Norton,*
6    338 F.3d 1244 (11th Cir. 2003) ...............................................................................9

7   *Anheuser-Busch, Inc. v. Natural Beverage Distribs.,*
     69 F.3d 337 (9th Cir. 1995) ....................................................................................20
8

9   *Beckermeyer v. AT&T Wireless,*
     No. 00469, Control No. 022091, 2004 Phila. Ct. Com. Pl. LEXIS 116 (Oct. 22, 2004)............15
10

11  *Bishop v. Saab Automobile A.B.,*
     No. CV 95-0721 JGD (JRx), 1996 U.S. Dist. LEXIS 22888 (C.D. Cal. Apr. 18, 1996) ............21
12
*Cadle Co. v. Neubauer,*
13    562 F.3d 369 (5th Cir. 2009) ...................................................................................9

14  *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,*
15    818 F.2d 1466 (9th Cir. 1987) ................................................................................17

16  *Cerros v. N. Las Vegas Police Dep't,*
17    No. 06-cv-00647-LRH-PAL, 2008 U.S. Dist. LEXIS 22636 (D. Nev. Feb. 28, 2008)...............13

18  *Cunningham v. Fleetwood Homes of Ga., Inc.,*
     253 F.3d 611 (11th Cir. 2001) ................................................................................15
19

20  *Erlandson v. Ford Motor Co.,*
     No. 08-cv-1137-BR, 2009 U.S. Dist. LEXIS 101316 (D. Or. Oct. 30, 2009).......................20, 21
21

22  *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC) Inc.,*
     528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)..........................................9
23

24  *In re Apple & AT & TM Antitrust Litigation,*
     596 F. Supp. 2d 1288 (N.D. Cal. 2008) ..............................................................2, 12, 16
25

26  *In re Toys R Us, Inc., Privacy Litig.,*
     No. 00-cv-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ..................................12

27  *Intel Corp. v. Hamidi,*
28    30 Cal. 4th 1342 (2003) .........................................................................................13

*Johnson v. Washington Metro. Area Transit Authority*,
  883 F.2d 125 (D.C. Cir. 1989) ................................................................................... 18

*Jones v. Tozzi*,
  No. 1:05-CV-0148 OWW DLB, 2007 WL 433116 (E.D. Cal. 2007) ................................... 17, 18

*Kelley v. Microsoft Corp.*,
  251 F.R.D. 544 (W.D. Wash. 2008) ............................................................................ 22

*Kennedy v. Applause, Inc.*,
  90 F.3d 1477 (9th Cir. 1996) ................................................................................... 17

*Laub v. U.S. Dep't. of Interior*,
  342 F.3d 1080 (9th Cir. 2003) ................................................................................ 9, 11

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) ................................................................................ 20, 21

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ............................................ 9, 16

*Malone v. United States Postal Service*,
  833 F.2d 128 (9th Cir. 1987) ................................................................................... 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................................... 17

*Sanchez v. Client Services, Inc.*,
  520 F. Supp. 2d 1149 (N.D. Cal. 2007) ..................................................................... 18

*Scott v. Harris*,
  550 U.S. 372 (2008) ............................................................................................ 17, 19

*Silvestri v. GMC*,
  271 F.3d 583 (4th Cir. 2001) ................................................................................... 20

*Stanford v. Home Depot USA, Inc.*,
  No. 07cv2193-LAB (WMc), 2008 WL 7348181 (S.D. Cal. May 27, 2008) .......................... 10

*Thrifty-Tel, Inc. v. Bezenek*,
  46 Cal. App. 4th 1559 (1996) ................................................................................... 13

*Unigard Security Ins. Co. v. Lakewood Eng'g & Manuf. Corp.*,
  982 F.2d 363 (9th Cir. 1992) ................................................................................... 21

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS– MASTER FILE NO. C 07-05152 JW

- iii -

*United States for the use and benefit of Wiltec Guam, Inc. v. Kahaluu Constr. Co.,*
857 F.2d 600 (9th Cir. 1988) ............................................................................................20

*Wong v. Swier,*
267 F.2d 749 (9th Cir. 1959) ............................................................................................20

**STATUTES**

16 C.F.R.
§ 701.3.................................................................................................................................15

California Penal Code,
§ 502...........................................................................................................................2, 10, 14
§ 502(c)...............................................................................................................................14
§ 502(e)(1)..........................................................................................................................14

Computer Fraud and Abuse Act,
18 U.S.C.
§ 1030 *et seq.* .......................................................................................................................2
§ 1030(a)(5)(A)...................................................................................................................11
§ 1030(c)(4)(A)(i)(I)...........................................................................................................11
§ 1030(e)(8).........................................................................................................................11
§ 1030(e)(11).......................................................................................................................11
§ 1030(g).............................................................................................................................11

Digital Millennium Copyright Act of 1998,
17 U.S.C.
§ 1201 *et seq.* .......................................................................................................................3

Fed. Rule Civ. Proc.
56(e)..............................................................................................................................9, 16

Magnuson-Moss Warranty Act,
15 U.S.C.
§ 2302(a).............................................................................................................................15
§ 2302(c).............................................................................................................................15
§ 2310 *et seq.* .......................................................................................................................2
§ 2310(d)(1).........................................................................................................................15

**OTHER AUTHORITIES**

RESTATEMENT (SECOND) OF TORTS
§ 218 (1965)........................................................................................................................13
§ 218 cmt. i illus. 4 (1965)..................................................................................................13
§ 218(c) (1965)....................................................................................................................13

1   Plaintiffs Herbert H. Kliegerman, Paul Holman, Lucy Rivello, Timothy P. Smith, Michael

2   G. Lee, Dennis V. Macasaddu, Mark G. Morikawa, Vincent Scotti and Scott Sesso ("Plaintiffs")

3   hereby oppose Defendant Apple Inc. ("Apple")'s Notice of Motion and Motion For Summary

4   Judgment on Plaintiffs' iPhone Operating System Version 1.1.1 Claims (the "Motion").

5   **I.      INTRODUCTION**

6   The timing of Apple's Motion is telling.  Apple has been in possession of the evidence it

7   now relies upon in support of its Motion since late October, and yet it chose to file its Motion in

8   the midst of the parties' efforts to brief Plaintiffs' Motion for Class Certification.  Apple's

9   behavior, which smacks of gamesmanship, reveals its true intention in filing its Motion: to distract

10  Plaintiffs from their efforts to have this action certified as a class action.

11  This is because Apple desperately does not want the Court to certify Plaintiffs' claims

12  relating to version 1.1.1 of its iPhone operating system ("Version 1.1.1"), an update which caused

13  iPhones to brick that had been previously unlocked to work with wireless services providers other

14  than Defendant AT&T Mobility, LLC ("ATTM") or jailbroken to allow downloading of

15  applications developed and sold by third parties ("Third Party Apps").  However, Apple's Motion

16  lacks any basis in fact or law.

17  It would be sufficient to defeat Apple's Motion if any one of the named Plaintiffs had

18  standing to bring the Version 1.1.1 claims.  However, Plaintiffs do even better:  Plaintiffs Sesso,

19  Smith and Macasaddu *all* have standing to bring these claims because each of them (a) jailbroke or

20  unlocked (or both) their iPhones, (b) installed Third Party Apps, (c) paid for those Third Party

21  Apps, and (d) downloaded Version 1.1.1, which "bricked" their iPhones, meaning they became as

22  useless as bricks.  Indeed, these facts establishing the three Plaintiffs' injuries – and thus, their

23  standing – are undisputed.

24  Apple's argument, that because it eventually replaced the Plaintiffs' iPhones (a factual

25  contention that Plaintiff Macasaddu disputes), they lack standing to represent the Sub-Class,

26  would not entitle Apple to judgment as a matter of law in any event.  What Apple ignores, and

27  makes no attempt to dispute or explain in any way, is the uncontroverted fact that Third Party

28  Apps that Plaintiffs Sesso and Macasaddu paid for were wiped from their iPhones when they were

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS– MASTER FILE NO. C 07-05152 JW

bricked, and they were never compensated for those losses. Nor were Plaintiffs Smith and Macasaddu compensated for the loss of use of their iPhones during the time they were bricked, and Apple repeatedly refused to replace them. These injuries, indisputably suffered by each of the three Plaintiffs, confer standing upon them to represent the Sub-Class for Apple's violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* ("CFAA"), and California Penal Code section 502, and for Plaintiffs' trespass to chattels claim. Moreover, there is at least a triable issue of material fact whether Apple replaced Plaintiff Macasaddu's bricked iPhone which prevents the Court from granting Apple's Motion on Macasaddu's claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 *et seq.* ("MMWA").

Amazingly, Apple argues that the CFAA claim should be dismissed because none of the Plaintiffs suffered more than $5,000 in damages, completely ignoring not only the plain language of the CFAA itself, which explicitly permits aggregation of damages in class actions, but also the Court's Order denying Apple's motion to dismiss the CFAA claim on this very basis. *In re Apple & AT & TM Antitrust Litigation*, 596 F. Supp. 2d 1288, 1308 (N.D. Cal. 2008) ("legislative history of the CFAA revealed that Congress intended to permit aggregation of damages").

Apple's Motion should be denied.

## II.   STATEMENT OF FACTS

### A.   Plaintiffs' Allegations

Plaintiffs' Revised Consolidated Amended Complaint ("Complaint") [Docket No. 109] alleges that Apple and ATTM entered into a secret five-year contract whereby ATTM would be the exclusive provider of cell phone voice and data services for the iPhone. ¶ 2.[1] As part of the contract, Apple shares in ATTM's revenues. *Id.* Though Plaintiffs and Class members who purchased iPhones agreed to enter into a standardized two-year voice and data service plan with ATTM, they did not agree to use ATTM for five years. Apple's undisclosed five-year exclusivity arrangement with ATTM, however, effectively binds iPhone users to ATTM for five years, contrary to their contractual commitments and reasonable expectations. *Id.*

To enforce ATTM's exclusivity, Apple, among other things, programmed and installed

---

[1]   All paragraph references ("¶") are to the Complaint, unless otherwise specified.

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS– MASTER FILE NO. C 07-05152 JW

- 2 -

software locks on each iPhone that prevented the purchaser from switching to another carrier that competes with ATTM to provide cell phone voice and data services.  ¶ 3.  Under an exemption to the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 1201 *et seq*., cell phone consumers have an absolute legal right to modify their phones to use the network of their carrier of choice. Defendants unlawfully prevent iPhone customers from exercising that legal right by locking the iPhones and refusing to give customers the software codes needed to unlock them.  *Id.*

To enhance its iPhone related revenues, Apple has created a number of software programs called "applications," such as ring tones, instant messaging, Internet access, and video and photography software that can be downloaded and used by iPhone owners.  Apple has also entered into agreements with other software manufacturers by which Apple "approves" their software applications for iPhone use in exchange for a share of the manufacturer's resulting revenues.  ¶ 4. Apple has also unlawfully discouraged iPhone customers from downloading competing Third Party Apps by telling customers that Apple will void and refuse to honor the iPhone warranty of any customer who has downloaded competing applications.  *Id.*  Through these actions, Apple has unlawfully stifled competition, reduced output and consumer choice, and artificially increased prices in the aftermarket for iPhone software applications.  *Id.*

In response to consumers exercising their legal right to unlock their iPhones or install Third Party Apps, on September 27, 2007, under the guise of issuing an "upgraded" version of the iPhone operating software, Apple knowingly issued and caused the transmission of the purported software upgrade, Version 1.1.1, which "bricked" (that is, rendered completely inoperable) or otherwise damaged some iPhones that were unlocked or had downloaded Third Party Apps.  ¶¶ 5, 96.  Many customers who took their damaged iPhones to Apple or ATTM for repair or replacement were told they had breached their warranty by unlocking their iPhone or downloading Third Party Apps and that their only remedy was to buy a new iPhone.  ¶¶ 6, 9, 104, 105, 153. Because Apple intentionally released and transmitted Version 1.1.1 knowing it would damage or destroy unlocked iPhones or iPhones with Third Party Apps on them, Apple was required to honor its warranty and repair or replace the iPhones.

**B.    Procedural Posture**

On August 29, 2008, Defendants asked the Court to bifurcate class and merits discovery. [Docket No. 141]. The Court entered an order bifurcating discovery on December 12, 2008. [Docket No. 164]. As a result, Plaintiffs have conducted only discovery limited to class certification thus far, and they have had no opportunity for merits discovery. *See* Declaration of Rachele R. Rickert in Support of Plaintiffs' Opposition to Apple Inc.'s Motion for Summary Judgment on Plaintiffs' iPhone Operating System Version 1.1.1 Claims ("Rickert Decl."), ¶ 2, submitted herewith.

Plaintiffs filed their Motion for Class Certification on January 22, 2010, Defendants' Oppositions are due March 16, 2010, and the hearing on Plaintiffs' motion is scheduled for May 10, 2010. Plaintiffs' Motion for Class Certification asks the Court to certify a Sub-Class of iPhone owners whose iPhones were "bricked" by Apple when it released Version 1.1.1, and for Plaintiffs Sesso, Smith and Macasaddu to represent the Sub-Class. *See* Docket No. 240 at 8 n.11.[2]

Plaintiffs' depositions were all taken between October 14 and October 22, 2009. Rickert Decl., ¶ 3. Despite this fact, Apple waited until February 12, 2010 to file its Motion, which relies on Plaintiffs' testimony and testimony by Defendants' own employees. Apple's timing in filing its Motion reveals Apple's true motivation: to distract Plaintiffs and this Court from Plaintiffs' efforts to have this action certified as a class action.

On November 18, 2009, after a lengthy meet-and-confer process, Plaintiffs moved to compel Apple to produce Version 1.1.1 source code for Plaintiffs' expert, John M. Strawn, Ph.D., to inspect. Rickert Decl., ¶¶ 4-11. While the motion to compel was pending, on December 11, 2009, Apple agreed to produce certain portions of the code. *Id.*, ¶ 14. Apple expressly agreed to produce enough of the Version 1.1.1 code to enable Plaintiffs to determine how the code functions in terms of bricking iPhones and which iPhones were bricked. *Id.* In reliance upon Apple's agreement, Plaintiffs withdrew their motion to compel. *Id.*

---

[2]    Apple makes much ado about the fact that Plaintiff Lee suffered no injury as a result of downloading Version 1.1.1. However, Plaintiffs have ***not*** requested appointment of Plaintiff Lee as a Sub-Class representative.

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS– MASTER FILE NO. C 07-05152 JW

- 4 -

1    Thereafter, Apple delayed producing portions of the code until shortly before Plaintiffs'

2    class certification motion was due, failed to produce other parts of the source code, including the

3    ████████████ code, and failed to produce any relevant documentation.  Rickert Decl., ¶¶ 15-24.

4    Because Apple breached its agreement to produce enough of Version 1.1.1 to permit Dr. Strawn to

5    determine how the code bricked iPhones, on February 16, 2010, Plaintiffs renewed their motion to

6    compel Apple to produce the code and related documents. *Id.*, ¶ 25.  That motion is scheduled to

7    be heard on March 23, 2010.  *Id.*

8    Until Plaintiffs' motion to compel is decided and Apple produces the code, Plaintiffs and

9    their computer expert, Dr. Strawn, cannot determine *the* critical factual issue on the claims that are

10   the subject of Apple's Motion:  how Version 1.1.1 bricked iPhones.

11   **C.    The Evidence**

12   Apple does not deny that, even if it did not deliberately write lines of code with the

13   specific intent to brick iPhones – a fact about which Plaintiffs have not had sufficient discovery to

14   know one way or the other – it certainly did know before it released Version 1.1.1 that the update

15   would brick iPhones.[3]  Apple's statement to the public that the upgrade to Version 1.1.1 would

16   "likely result in the modified iPhone becoming permanently inoperable when a future Apple-

17   supplied iPhone software update is installed" unambiguously evidences that Apple knew Version

18   1.1.1 contained lines of code that would brick unlocked and jailbroken iPhones.  ¶¶ 98-99.

19   Plainly, Apple cannot deny it knew that the installation of its Version 1.1.1 operating software

20   would render some iPhones permanently inoperable if anyone had previously unlocked or

21   jailbroken the device.

22   In addition, as quoted in the September 18, 2007 issue of PC World, as well as many other

23   news sources, when asked about Apple's efforts to thwart efforts to unlock the iPhone, Steve Jobs,

24

25   [3]    Apple's contention that Plaintiffs originally alleged that "that version 1.1.1 bricked all
26   iPhones that had been unlocked or 'jailbroken'" (Motion at 3:21) is belied by the allegations
     elsewhere in the original complaint.  *See, e.g.*, Consolidated Amended Class Action Complaint,
27   ¶ 103 [Docket No. 102] ("in *many* cases the iPhones of customers who had unlocked their SIM
     cards or downloaded Third Party Apps were "bricked" and rendered useless.") (emphasis added).
28   Plaintiffs agreed to amend Paragraph 5 by changing the words "any consumer" to "many
     consumers" to make it consistent with the allegations in the rest of the complaint.

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS– MASTER FILE NO. C 07-05152 JW

- 5 -

1  Apple's co-founder and Chief Executive Officer, responded, "It's a cat-and-mouse game. We try

2  to stay ahead. People will try to break in, and it's our job to stop them breaking in."  Rickert Decl.,

3  Ex. A.  Mr. Jobs' comment is consistent with Plaintiffs' allegation that it was Apple's Version

4  1.1.1 operating software that "bricked" the iPhones, not the unlocking software.[4]

5  Further corroborating Plaintiffs' allegations

6

7

8

9

10

11

12

13

14

15  *Id.* (emphasis added).

16

17

18  Therefore, Apple's statement, that "Plaintiff's 'bricking' claims are

19  based on allegations that have now been revealed to be false," is just plain wrong.  Motion at 6:4-

20  5.

21  Finally, the deposition testimonies of Plaintiffs Sesso, Smith, and Macasaddu establish that

22  each of them owned iPhones that were "bricked" when they downloaded the Version 1.1.1 update.

23  As a result, they lost valuable Third Party Apps and lost the use of their iPhones while they were

24  bricked.

25

26

---

27  [4]     Plaintiffs' allegations are also consistent with what Glen Lurie, the national distribution president of defendant ATTM (Cingular at the time), told reporters in 2007:  "Apple … [had]

28  agreed to help stop the 'bad guys' who would unofficially unlock the iPhone or its SIM card for use on competing networks."  Rickert Decl., Ex. B.

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS– MASTER FILE NO. C 07-05152 JW

### 1.   Plaintiff Sesso

Mr. Sesso testified that he paid $70 to have Third Party Apps installed on his iPhone, including gaming and radio applications. Rickert Decl., Ex. D (Sesso Dep.), 63:12 to 65:7; 72:16 to 73:13. When he began to experience problems with his iPhone, Mr. Sesso took it to an Apple store. *Id.*, 74:4 to 79:6. An Apple employee suggested that he upgrade to Version 1.1.1 of the operating system, and Sesso permitted the employee to perform the update. *Id.* When Version 1.1.1 was uploaded onto Sesso's iPhone, it "crashed." *Id.*, 74:14 to 75:16. After the Apple employee told Mr. Sesso that Apple would replace his "crashed" iPhone, another Apple employee told him that his iPhone had crashed after the Version 1.1.1 update because he had installed Third Party Apps on the iPhone. *Id.*, 75:6-16. The new iPhone, of course, did not have the Third Party Apps that Mr. Sesso paid $70 to have installed on his old iPhone, and Mr. Sesso later paid $50 to have Third Party Apps installed on his new iPhone. *Id.*, 80:7 to 82:24.

### 2.   Plaintiff Smith

Plaintiff Smith unlocked his iPhone and installed Third Party Apps prior to downloading Version 1.1.1. Rickert Decl., Ex. E (Smith Dep.), 77:14 to 78:10. When he downloaded Version 1.1.1 to his iPhone, it bricked. *Id.*, 88:7-12. When Mr. Smith took his iPhone to the Apple store, he noticed a sign[5] that he had not seen before and "they said, no, we can't work on this phone." *Id.*, 88:13 to 15.[6] Mr. Smith returned home to try and fix his iPhone himself. A few days later, when he could no longer even power on his iPhone, he took it back to an Apple store, and an Apple employee replaced it for him. *Id.*, 88:16-22; 92:25 to 93:3.

### 3.   Plaintiff Macasaddu

Plaintiff Macasaddu testified that he paid $599 for his iPhone in July of 2007. Rickert

---

[5]  Rickert Decl., Ex. F (Green Dep.), 56:14 to 58:16 and Ex. G (Green Dep., Ex. 10).

[6] Apple's assertion that Smith "admitted that Apple never refused to replace an iPhone" is a distortion of his testimony. Motion at 8.

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS– MASTER FILE NO. C 07-05152 JW

Decl., Ex. H (Macasaddu Dep.), 20:17 to 21:19; *Id.*, Ex. I (Macasaddu Ex. 1).  Mr. Macasaddu installed about five Third Party Apps on his iPhone for a dollar or two each, including one called "AppTap," which "jailbroke" his phone and allowed him to install other Third Party Apps, and one that kept track of his contacts and organized them.  *Id.*, Ex. H (Macasaddu Dep.), 50:19 to 55:21.  As soon as Version 1.1.1 became available, Mr. Macasaddu downloaded it onto his iPhone, his iPhone stopped working immediately, and the Third Party Apps he had paid for were erased.  *Id.*, 50:1 to 51:13; 53:7-13; 86:5 to 87:12.  A few days later, he called ATTM and asked for the unlock code, thinking that applying the unlock code might fix his phone.  *Id.*, 87:17 to 88:9.  ATTM refused to give him the code.  *Id.*[7]  During the following week, Mr. Macasaddu took his iPhone to three Apple stores, in Sherman Oaks, Glendale and Thousand Oaks, and at each store an Apple employee looked at his phone and said he didn't know what was wrong with it.  *Id.*, 88:16 to 90:23.

At the Glendale store, the Apple employee also accused Mr. Macasaddu of unlocking his iPhone and told him it was therefore not covered by the warranty.  Rickert Decl., Ex. H (Macasaddu Dep.), 51:25 to 52:24; 90:24 to 91:10.  Mr. Macasaddu responded by saying he had not unlocked the iPhone and didn't even know how to, but that he had installed Third Party Apps.  *Id.*, 52:25 to 53:6; 91:4-10.  Mr. Macasaddu also tried sending the bricked iPhone back to Apple, but Apple returned it to him untouched.[8]  *Id.*, 95:1-7; Motion at 11 (citing Declaration of Sadik Huseny in Support of Defendant Apple Inc.'s Motion for Summary Judgment on Plaintiffs' iPhone Operating System Version 1.1.1 Claims ("Huseny Decl."), Ex. BB (Gust Dep., Ex. 5); Huseny Decl., Ex. Y (Gust Dep.), 66:8-21).  Mr. Macasaddu testified that after going to three different stores and sending the iPhone in to be repaired, there was nothing else he could do but use another phone.  Rickert Decl., Ex. H (Macasaddu Dep.), 39:20 to 40:5; 91:16-20.  He took the

---

[7]     This was not the first time Mr. Macasaddu had requested and been denied the unlock code. Rickert Decl., Ex. H (Macasaddu Dep.), 62:12 to 67:21.

[8]     ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

SIM card out of his bricked iPhone and put it into a Sony Ericsson phone. *Id.*, 39:25 to 40:5. Since he could no longer use his bricked iPhone, Mr. Macasaddu gave it to a friend visiting from the Philippines, who thought he might be able to fix it. *Id.*, 24:11-25.

## III.   LEGAL ARGUMENT

### A.   Legal Standard

Article III standing requires Plaintiffs to show that they suffered an injury in fact, that their injury is fairly traceable to the challenged conduct, and that their injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *see also Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC) Inc.*, 528 U.S. 167, 179, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).

Each of these elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.   Therefore, "in response to a summary judgment motion, … the plaintiff … must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), ***which for purposes of the summary judgment motion will be taken to be true***." *Id.* (emphasis added).  *See also Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009) ("If such evidence is presented, ***whether controverted or not***, it is accepted as true ***and survives summary judgment***.") (emphasis added); *Alabama-Tombigbee Rivers Coalition v. Norton*, 338 F.3d 1244, 1252 (11th Cir. 2003) ("When the attack on standing occurs via a motion for summary judgment, the plaintiffs can no longer rest on their allegations, but must set forth by affidavit or other evidence specific facts which for the purpose of summary judgment will be taken as true.") (internal quotations and citation omitted).  The Court has jurisdiction if at least one named plaintiff has standing to sue, even if another named plaintiff in the suit does not. *See Laub v. U.S. Dep't. of Interior*, 342 F.3d 1080, 1086 (9th Cir. 2003).[9]

### B.   Plaintiffs Sesso, Smith, And Macasaddu Have Standing To Represent A Sub-Class Of Consumers Whose iPhones Were "Bricked" By Version 1.1.1

Apple's Motion does not contest Plaintiffs' allegation that Apple "knowingly and

---

[9]     The cases cited by Apple on page 14 of its Motion were not decided in the context of motions for summary judgment challenging a plaintiffs' Article III standing.

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS– MASTER FILE NO. C 07-05152 JW

- 9 -

intentionally issu[ed] and transmit[ted] … Version 1.1.1 that damaged or destroyed the handsets of iPhone customers who had unlocked a SIM card or installed a Third Party App." ¶ 96.[10]   Nor does Apple contest that the iPhones belonging to Plaintiffs Sesso, Smith and Macasaddu bricked immediately after they downloaded Version 1.1.1.  Indeed, Apple's argument that it replaced Sesso's, Smith's, and Macasaddu's iPhones fairly concedes that the three iPhones were bricked; surely, it is inconsistent with any assertion that their iPhones were not bricked.  *See, e.g.*, Motion at 2 ("[W]hatever may or may not have happened to some of the plaintiffs' iPhones as a result of their altering or hacking their devices and then installing [V]ersion 1.1.1, any such plaintiffs got free replacement iPhones from Apple").  Instead, Apple claims that because it replaced the three named Plaintiffs' iPhones, their Version 1.1.1-related claims against it should be dismissed.

However, it is ***undisputed*** that when the iPhones belonging to Plaintiffs Macasaddu, Sesso, and Smith were bricked when Version 1.1.1 was installed on them: (1) they lost applications they had paid for, (2) they were unable to use their iPhones after they were bricked, and (3) ***Apple has not compensated them for their injuries***.[11]   As a matter of law, this undisputed evidence of injury is sufficient for Plaintiffs' CFAA, trespass to chattels and California Penal Code section 502 claims to survive Apple's Motion.  Moreover, there is at least a triable issue of material fact as to whether Apple actually replaced Plaintiff Macasaddu's bricked iPhone, and, therefore, his MMWA claim survives as well.[12]

---

[10]    Merits discovery has yet to begin.  However, as discussed, *supra*, there is already ample evidence that Apple issued Version 1.1.1 knowing that it would cause damage to iPhones that had been unlocked and/or jailbroken.

[11]    This case is therefore distinguishable from *Stanford v. Home Depot USA, Inc.*, No. 07cv2193-LAB (WMc), 2008 WL 7348181 (S.D. Cal. May 27, 2008), where every alleged injury suffered by the plaintiff had been remedied by the defendant prior to the plaintiff filing his initial complaint.  *Id.*, at *8.

[12]    In its motion for summary judgment, Apple challenges only whether Plaintiffs suffered any injury and therefore have standing to bring the Version 1.1.1-related claims.  Apple does not dispute that Version 1.1.1 caused Sesso's, Smith's, and Macasaddu's iPhones to brick.  Plaintiffs reserve all of their rights, including rights under Federal Rule of Civil Procedure 56(f), to oppose dismissal of their Version 1.1.1 claims on other grounds should Apple later argue that Plaintiffs' iPhones bricked because of anything other than Version 1.1.1.

1

### 1.   Plaintiffs Sesso And Macasaddu Suffered Damage And Loss As Defined By The Computer Fraud And Abuse Act

2   The CFAA is violated when a defendant "knowingly causes the transmission of a program,

3   information, code, or command, and as a result of such conduct, intentionally causes damage

4   without authorization, to a protected computer."  18 U.S.C. § 1030(a)(5)(A).  To bring a civil

5   action against a violator of the CFAA, there must be "loss to 1 or more persons during any 1-year

6   period … *aggregating at least $5,000 in value*."  *Id.*, §§ 1030(c)(4)(A)(i)(I) & 1030(g) (emphasis

7   added).  The term "loss" is defined in the statute as "any reasonable cost to any victim, including

8   the cost of responding to an offense, conducting a damage assessment, and restoring the data,

9   program, system, or information to its condition prior to the offense, and any revenue lost, cost

10   incurred, or other consequential damages incurred because of interruption of service." *Id.*,

11   § 1030(e)(11).  The term "damage" is defined in the statute as "any impairment to the integrity or

12   availability of data, a program, a system, or information."  *Id.*, § 1030(e)(8).

13   Plaintiffs Sesso and Macasaddu have suffered "damage" and "loss" as those terms are

14   defined by the CFAA, and they therefore have standing to bring their CFAA claim on behalf of

15   the Sub-Class of iPhone owners whose iPhones bricked as a result of downloading Version 1.1.1.

16   Plaintiff Sesso installed, among other things, Third Party Apps on his iPhone for games

17   and screensavers.  Rickert Decl., Ex. D (Sesso Dep.), 63:12 to 65:7; 72:16 to 73:13.  He paid $70

18   to have these applications installed on his iPhone.  *Id.*  When his iPhone bricked, Apple gave

19   Sesso a new iPhone, but his Third Party Apps were wiped out and he had to pay $50 to have new

20   Third Party Apps installed.  *Id.*, 80:7 to 82:24.  Plaintiff Sesso, therefore, suffered "damage" to his

21   iPhone and "loss," as those terms are defined by the CFAA, as a result of Apple's release of

22   Version 1.1.1, and nothing more is required for standing.  Because Plaintiff Sesso has established

23   that he has standing to bring the CFAA claim on behalf of the Sub-Class, Defendants' Motion as

24   to the CFAA claim should be denied.  *See Laub*, 342 F.3d at 1086 (the Court has jurisdiction if at

25   least one named plaintiff has standing to sue).

26   Plaintiff Macasaddu also suffered damage and loss as a result of Apple's release of Version

27   1.1.1 and therefore has standing to bring the CFAA claim.  Apple does not dispute that Plaintiff

28

Macasaddu paid for and downloaded approximately five Third Party Apps on his iPhone, including one called "AppTap," which "jailbroke" his phone and allowed him to install other Third Party Apps, and one that kept track of his contacts and organized them. Rickert Decl., Ex. H (Macasaddu Dep.), 50:19 to 55:21. As soon as Version 1.1.1 became available, Mr. Macasaddu downloaded it onto his iPhone, his iPhone immediately bricked, and the Third Party Apps that he had paid for were erased. *Id.*, 50: 1 to 51:13; 53:7-13; 86:5 to 87:12. This injury is sufficient to give Plaintiff Macasaddu standing to represent the Sub-Class for Apple's violation of the CFAA.[13]

Apple does not deny that Plaintiffs Sesso and Macasaddu suffered "loss" or "damage" within the meaning of the CFAA. Rather, Apple's entire argument seems to be that since neither Sesso nor Macasaddu suffered ***individual*** "loss" or "damage" in the amount of $5,000, neither of them has a claim under the statute. Motion at 23-24 ("claim for violation of the Computer Fraud and Abuse Act requires a plaintiff to show both damage to a 'protected computer' and loss or harm ***to the plaintiff*** of at least $5,000"; "***No plaintiff*** suffered 'an annual loss of at least $5,000,' actual 'damage and loss,' or 'actual injury or harm.'") (emphasis added).

Apple's argument attempts to re-write the CFAA to delete the words "in the aggregate." But, Apple already lost on this issue when the Court denied Apple's Motion to Dismiss. *See In re Apple & AT&TM Antitrust Litigation*, 596 F. Supp. 2d at 1308 ("Congress intended to permit aggregation of damages, so long as those damages arose from the same act by a defendant") (citing *In re Toys R Us, Inc., Privacy Litig.*, No. 00-cv-2746, 2001 WL 34517252, at *11 (N.D. Cal. Oct. 9, 2001) (loss or damage to the class from a single act by the defendant aggregated under CFAA)). Apple does not even attempt to explain how the Court's prior ruling permitting aggregation was wrong (it was not) or why the Court should reverse itself (it should not).[14] Nor does Apple argue that the damage caused to the Sub-Class's iPhones was not the result of a ***single act***, and ███████████████████████████████████████████████████████

---

[13]   Moreover, as discussed *infra.*, (§ III.B.4), there is at least a triable issue of material fact as to whether Apple replaced Mr. Macasaddu's bricked iPhone.

[14]   None of the cases cited by Apple were class actions, so they do not discuss – let alone refute – the ability to aggregate the class' damages under the CFAA. *See Motion* at 23-24.

1   ██████████████████████████████████   *See* Docket Nos. 242, 292,

2   330 at 5, 14-28.  Finally, Apple does not deny that the Sub-Class has suffered more than $5,000

3   "loss" or "damage" in the aggregate (which surely they did).

4       Therefore, Apple's argument should be rejected as legally insufficient.

5       **2.    Plaintiffs Smith And Macasaddu Have Standing To Bring The Trespass To Chattels Claim**

6       "Under California law, trespass to chattels 'lies where an intentional interference with the

7   possession of personal property has proximately caused injury.'"  *Intel Corp. v. Hamidi*, 30 Cal.

8   4th 1342, 1350-51 (2003) (quoting *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1566

9   (1996)).  A plaintiff has suffered "injury" when the defendant's "intermeddling" is harmful to the

10  plaintiff's "materially valuable interest in the physical condition, quality, or value of the chattel,"

11  or if the plaintiff "is ***deprived of the use of the chattel for a substantial time*.**"  *Id.* at 1357, 1389

12  (emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS § 218 (1965)).  A "substantial

13  time," can be ***as little as an hour*.**  *See* RESTATEMENT (SECOND) OF TORTS § 218 cmt. i illus. 4

14  (1965) ("A leaves his car parked near the corner. B, desiring to play a joke upon A, pushes the car

15  around the corner where it cannot be easily seen by A.  A comes out for his car, and fails to

16  discover it ***for an hour*.**  B is subject to liability for trespass to A.") (emphasis added).  In *Cerros*

17  *v. N. Las Vegas Police Dep't*, No. 06-cv-00647-LRH-PAL, 2008 U.S. Dist. LEXIS 22636 (D.

18  Nev. Feb. 28, 2008), the plaintiffs were found to have adequately stated a claim for trespass to

19  chattels where, as a result of the defendant's trespass, a plaintiff was unable to sell his goods ***for***

20  ***two hours*.**  *See id.* at *12 ("Plaintiffs adequately allege Cerros was 'deprived of use of the chattel

21  for a substantial time.'") (quoting RESTATEMENT (SECOND) OF TORTS § 218(c) (1965)).

22      Both Plaintiffs Smith and Macasaddu were without use of their iPhones for a period of

23  days when they bricked as a result of Version 1.1.1.  When Plaintiff Smith's iPhone bricked as a

24  result of the Version 1.1.1 update, he took it to the Apple store and noticed a sign that he hadn't

25  seen before, and "they said, no, we can't work on this phone."  Rickert Decl., Ex. E (Smith Dep.),

26  88:13 to 15.[15]  He returned home to try and fix his iPhone himself, and when his iPhone was at the

27

28  ———————————

[15]    Plaintiff Smith couldn't recall whether he specifically asked Apple to replace his bricked iPhone the first time he took it into an Apple store, or whether he was simply deterred from asking

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS– MASTER FILE NO. C 07-05152 JW

- 13 -

point where he could not even power it on, he took it back to Apple, and Apple finally replaced it for him. *Id.*, 88:16-22. Before Apple replaced his iPhone, however, Mr. Smith was without his iPhone for a few days. *Id.*, 92:25 to 93:3 ("Q.   So how long were you without a phone, a few hours? A. … It was more than two or three days.")  This injury is sufficient to give Plaintiff Smith standing to bring the trespass to chattels claim against Apple.

Similarly, even based upon Apple's own account of what happened to Macasaddu's iPhone after it bricked, Plaintiff Macasaddu was deprived of the use of his iPhone for approximately a week. *See* Motion at 10-11 (Version 1.1.1 released on September 27, 2009, Macasaddu reported a problem with his iPhone on September 28, 2009, and "swap repair" allegedly took place on October 3, 2009).  He therefore also has standing to bring the trespass the chattels claim on behalf of the Sub-Class and Apple's Motion should be denied.

### 3.    Plaintiffs Sesso, Smith And Macasaddu Have Standing To Bring The California Penal Code Section 502 Claim

The same evidence which supports these three Plaintiffs' standing to bring the CFAA and trespass to chattels claims on behalf of the Sub-Class also supports their standing to bring a California Penal Code section 502 claim on behalf of the Sub-Class.  A defendant violates Cal. Penal Code section 502 when it:

> (4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.
>
> * * *
>
> (8) Knowingly introduces any computer contaminant into any computer, computer system, or computer network.

Cal. Penal Code, § 502(c).  Moreover, a plaintiff "who suffers damage or loss by reason of a violation of any of the[se] provisions … may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief." *Id.*, § 502(e)(1).

As demonstrated above, Plaintiffs Sesso, Smith and Macasaddu each suffered damage and loss when their iPhones were destroyed as a result of downloading Version 1.1.1 and they lost the

---

because of the sign he saw that indicated Apple would not honor the warranties on iPhones that had been unlocked or had Third Party Apps installed on them.  Rickert Decl., Ex. E (Smith Dep.), 88:7-15; 89:2-14.  In either case, he returned home with his bricked iPhone.

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS– MASTER FILE NO. C 07-05152 JW

- 14 -

use of the Third Party Apps they had paid for.  While Apple replaced Sesso's and Smith's iPhones, it is *undisputed* that Apple did not compensate them for loss of their Third Party Apps, nor did it compensate them for loss of the use of their iPhones.

### 4.    Plaintiff Macasaddu Was Damaged by Apple's Violation Of The Magnuson-Moss Warranty Act

The MMWA creates a federal private cause of action for a warrantor's failure to comply with any part of the MMWA: "[A] consumer who is damaged by the failure of a ... warrantor ... to comply with any obligation under this chapter ... may bring suit for damages and other legal and equitable relief …." 15 U.S.C. § 2310(d)(1).

Apple's forcing iPhone customers to use ATTM as their exclusive voice and data carrier as a condition of the iPhone warranty is prohibited "conditioning" under the MMWA, 15 U.S.C. § 2302(c), which provides:

> No warrantor of a consumer product may condition [its] written or implied warranty of such product on the consumer's using, in connection with such product, any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade or corporate name.

*See also Beckermeyer v. AT&T Wireless*, No. 00469, Control No. 022091, 2004 Phila. Ct. Com. Pl. LEXIS 116, at *7 (Oct. 22, 2004) (AT&T and Panasonic's undisclosed locking of SIM card and refusal to provide unlocking code held impermissible conditioning of cell phone warranty on customers' use of AT&T's own branded service).  Moreover, Apple's "warnings" to users regarding making "unauthorized" modifications to the iPhone were also improper and violated 15 U.S.C. § 2302(a), which requires a warrantor to conform the terms of written warranties to the Federal Trade Commission standards, including its rule requiring plain disclosure in a "single document" of, *inter alia*, all the products, parts, characteristics, components, or properties excluded from the warranty.  16 C.F.R. § 701.3. Apple did not disclose the locked "properties" of the iPhone, so Apple's announcements that owners' warranties would be void if consumers unlocked their phones violated the single document rule.  *See Cunningham v. Fleetwood Homes of Ga., Inc.*, 253 F.3d 611, 621 (11th Cir. 2001).  For these reasons, the Court denied Apple's motion to dismiss Plaintiffs' MMWA claim on October 1, 2008.  [Docket No. 144 at 29-30]; *In re Apple & AT&TM Antitrust Litigation*, 596 F. Supp. 2d at 1313.

1  Apple does not dispute the fact that its company-wide policy was to refuse to honor the

2  warranties for iPhones that bricked as a result of the Version 1.1.1 update.  Even if Apple did

3  dispute the policy,

10  *See* Rickert Decl., Ex. F (Green Dep.), 56:11 to 57-6, Ex. G (Green Dep.,

11  Ex. 10), Ex. K

13  , and Ex. L                     .

14  Instead, Apple argues that the MMWA claim should be dismissed because its sales

15  associates violated Apple's explicit do-not-service policy and eventually, after repeated efforts on

16  Plaintiffs' part, replaced the iPhones of Plaintiffs Sesso and Smith, and allegedly Plaintiff

17  Macasaddu's as well.  Indeed, these Plaintiffs' determination and persistence in pressing Apple to

18  replace their iPhones are just some of the qualities that make them ideal Sub-Class representatives.

19  However, at the summary judgment stage, when a defendant challenges a plaintiff's Article III

20  standing, that plaintiff need only "'set forth' by affidavit or other evidence 'specific facts,' Fed.

21  Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be

22  true." *Lujan*, 504 U.S. at 561.

23  Plaintiff Macasaddu's sworn testimony demonstrates that there is at least a triable issue of

24  material fact as to whether Apple replaced his bricked iPhone.  Mr. Macasaddu testified that

25  during the week following the day his iPhone bricked, he took his iPhone to three different Apple

26  stores.  At each store, Apple employees looked at his iPhone and said they didn't know what was

27  wrong with it.  One Apple employee accused Mr. Macasaddu of unlocking his iPhone – which he

28  denies – and told him it was therefore not covered by the warranty. Rickert Decl. (Macasaddu

Dep.), 51:25 to 52:24; 88:16 to 91:10. Mr. Macasaddu also tried sending the bricked iPhone back to Apple, but Apple returned it to him untouched. *Id.*, 95:1-7; Motion at 11 (citing Huseny Decl., Ex. BB (Gust Dep. Ex. 5); Huseny Decl., Ex. Y (Gust Dep.), 66:8-21).

In response to this sworn testimony, Apple has submitted documents and testimony which purportedly show that Macasaddu received a new iPhone to replace the bricked one. However, unlike the videotape evidence submitted by the defendant in *Scott v. Harris*, 550 U.S. 372 (2008), where there was no "contention that what [the videotape] depict[ed] differ[ed] from what actually happened" (*id.* at 378), Plaintiff Macasaddu ***does*** contend here that Apple's documents differ from what actually happened. Mr. Macasaddu's sworn testimony establishes by first-hand knowledge what actually happened, and flatly contradicts Apple's version of the events.[16]

Nor has Plaintiff Macasaddu ever stated otherwise, distinguishing this case from *Kennedy v. Applause, Inc.* 90 F.3d 1477, 1481 (9th Cir. 1996), where the plaintiff's own deposition testimony that she was not totally disabled was flatly contradicted by her admissions on state disability and Social Security Administration claim forms that she ***was*** completely disabled. *See Jones v. Tozzi*, No. 1:05-CV-0148 OWW DLB, 2007 WL 433116, at *11 (E.D. Cal. 2007) ("*Kennedy* is far from a blanket prohibition against considering all affidavits that are self-serving. *Kennedy* merely permits a court to disregard self-serving affidavits which are contradicted by the Plaintiff's own prior statements and other forms of undisputed evidence.") Here, as in *Jones*,

---

[16]    *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466 (9th Cir. 1987), is also distinguishable. In that case, the court found no genuine issue of fact with respect to whether the defendant had an intent to defraud. *Id.* at 1469. While the plaintiffs alleged that the defendant had actually admitted the intent, the court disagreed because the record revealed that the defendant had never misrepresented its intentions to the plaintiffs. *Id.* at 1469-70. All of the evidence relied upon by the plaintiff was circumstantial and the plaintiffs could not have testified based upon first-hand knowledge as to the *mens rea* of the defendant. In fact, the plaintiffs' depositions revealed they had no factual basis for alleging the fraudulent intent. *Id.* at 1470. Here, Plaintiff Macasaddu was a percipient witness as to the disputed fact: whether Apple replaced his bricked iPhone. Similarly, in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574 (1986), the plaintiffs had only ambiguous evidence and no direct evidence of a predatory pricing conspiracy, and the issue concerned the appropriate standard to apply to competing ***inferences***. *Id.* at 593-95 ("courts should not permit factfinders to infer conspiracies when such inferences are implausible.") Plaintiffs have direct evidence here: Plaintiff Macasaddu's sworn, eyewitness testimony.

1  "summary judgment is inappropriate because the facts are in diametric opposition." *Id.*  And, in

2  *Johnson v. Washington Metro. Area Transit Authority*, 883 F.2d 125, 128 (D.C. Cir. 1989), cited

3  by Apple, the court discussed cases where the self-serving testimony, uncorroborated by other

4  evidence, was not sufficient to avoid summary judgment, but "in each of the cited cases, the

5  self-serving evidence was undermined or contradicted either by ***disinterested*** witness statements

6  or by ***undisputed*** evidence." *Jones,* 2007 WL 433116, at *12 (emphasis added).  "Moreover, the

7  *Johnson* court itself refused to follow this line of cases, reversing the trial court's refusal to

8  consider certain witness statements because they were inconsistent with other evidence." *Id.*

9  "'The judge's function at the summary judgment stage is not to weigh the evidence and determine

10  the truth of the matter but only to determine whether there is a genuine issue for trial.'" *Id.*

11  (quoting *Johnson*, 883 F.2d at 128) (internal citation omitted).[17]

12      Moreover, Apple's evidence is highly suspect.  For example, Apple cannot explain why

13

14                                                   *See* Huseny Decl.,

15  Exs. W, Z; Rickert Decl., Ex. M (Gust Dep.), 11:10 to 15:23.  The custodian who Apple produced

16  for deposition to authenticate Apple's records, Mr. Gust, admitted at deposition

17                                                                                    (Rickert

18  Decl., Ex. M (Gust Dep.), 11:10 to 15:23),

19

20

21

22

23

24                                                                                    *Id.,*

25

---

26  [17]    As Apple notes, in *Sanchez v. Client Services, Inc.*, 520 F. Supp. 2d 1149, 1164 (N.D. Cal.

27  2007), the Court quoted *Johnson*'s statement that under certain circumstances a declaration may
be rejected.  However, the Court did not analyze *Johnson* any further and did not even apply

28  *Johnson* to the *Sanchez* case.

1   17:24 to 21:25.[18] ███████████████████████████

2   ██████████████████████████████████████████

3   ████  Likewise, Apple has not explained why ████████

4   ██████████████████████████████████████████

5   ██████████████████████████████████████████

6   ██████████████████████████████████████████

7   ██████████████████████████████████████████

8   █████████████████████████████  Declaration of Caroline

9   Mahone-Gonzalez in Support of Defendant Apple's Motion for Summary Judgment on Plaintiffs'

10   iPhone Operating System Version 1.1.1., Ex. B at ATTM_23_0000001-2. Nor does Apple explain

11   why ████████████████████████████████████████

12   ████████████████████████████  (*Id.*, Ex. B at

13   ATTM_23_0000001), ████████████████████

14   ████████████████████████████  Rickert Decl., Ex. H

15   (Macasaddu Dep.), 139:13 to 142:22 and Ex. N (Macasaddu Ex. 20) at ATTM_15_0000012.

16       Apple's "evidence" simply is not "of DNA-like precision," as Apple claims it is (Motion at

17   13), or even anything close to it.[19]

18       In short, the conflicting evidence (and the unanswered doubts raised by Apple's own

19   evidence) creates a triable issue of material fact as to whether Mr. Macasaddu received a new

20   iPhone when his old iPhone bricked. Therefore, summary judgment on the MMWA claim is also

21   inappropriate.

22   

23   [18]    Apple has provided no explanation as to why Mr. Pascasio's and Mr. Macasaddu's names

24   would be linked to each other in Apple's (as opposed to ATTM's) records. These two individuals
shared a joint ATTM account for business purposes, but did not share anything jointly with

25   respect to Apple's records.

26   [19]    Apple has not even substantiated its claim that the ATTM records are "automated," as

27   opposed to entered into ATTM's database by fallible human beings. Motion at 13, 17. Unlike the
videotape evidence in *Scott v. Harris*, 550 U.S. 372, human beings created Apple's and ATTM's

28   records and human beings make mistakes. *See* Rickert Decl., Ex. M (Gust Dep.), 73:5-9 ███████

1

### 5.   Apple Is Not Entitled To Summary Judgment Against Plaintiff Macasaddu Because He Cannot Produce His Bricked iPhone

2
3
4
5
6

Apple argues it is entitled to summary judgment against Plaintiff Macasaddu – in effect, a default adjudication – because he cannot produce his *bricked* iPhone, which Apple contends is "indisputably critical evidence."  Motion at 19.  Apple's spoliation argument is internally inconsistent and illogical, and it undermines Apple's contention that there is no genuine dispute of material fact concerning whether it replaced Macasaddu's bricked iPhone.

7

Before imposing the "harsh sanction" of dismissal, the Court must weigh several factors:

8
9
10

(1) the public's interest in expeditious resolution of litigation;
(2) the court's need to manage its dockets;
(3) the risk of prejudice to the party seeking sanctions;
(4) the public policy favoring disposition of cases on their merits; and
(5) the availability of less drastic sanctions.

11
12
13
14
15
16
17
18
19
20

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).  "The prejudice inquiry 'looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case.'"  *Leon v. IDX Systems Corp.*, 464 F.3d 951, 960 (9th Cir. 2006) (quoting *United States for the use and benefit of Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)).  "'[D]ismissal is *severe* and constitutes the *ultimate sanction* for spoliation" and "is usually justified only in circumstances of bad faith or other like action.'"  *Erlandson v. Ford Motor Co.*, No. 08-cv-1137-BR, 2009 U.S. Dist. LEXIS 101316, at *16 (D. Or. Oct. 30, 2009) (emphasis added) (quoting *Silvestri v. GMC*, 271 F.3d 583, 593 (4th Cir. 2001)).  Here, Apple does not make any showing that Plaintiff Macasaddu acted in bad faith or anything like it.[20]

21
22
23

Indeed, the cases Apple has cited make it abundantly clear that dismissal, the most drastic sanction for spoliation, is appropriate only if a party willfully and knowingly destroys *critical*

24
25
26
27
28

---

[20]   To properly consider the adequacy of less drastic sanctions, the Court must: (1) consider the feasibility of less drastic sanctions; (2) implement alternative sanctions before ordering dismissal; and (3) warn the party of the possibility of dismissal before ordering dismissal.  *See Anheuser-Busch*, 69 F.3d at 352 (citing *Adriana Intl. Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).  Many "less drastic sanctions" are available and include fashioning a jury instruction that creates a rebuttable presumption in favor of the party seeking sanctions.  *Wong v. Swier*, 267 F.2d 749, 759-60 (9th Cir. 1959); *see also Malone v. United States Postal Service*, 833 F.2d 128, 132 n.1 (9th Cir. 1987).

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS – MASTER FILE NO. C 07-05152 JW

1    evidence that is at the heart of the case. *See, e.g., Leon*, 464 F.3d at 960-61; *Unigard Security Ins.*

2    *Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992); *Erlandson*, 2009 U.S. Dist.

3    LEXIS 101316, at **15-18; *Bishop v. Saab Automobile A.B.*, No. CV 95-0721 JGD (JRx), 1996

4    U.S. Dist. LEXIS 22888, at **8-15 (C.D. Cal. Apr. 18, 1996).

5         Apple's spoliation argument fails for two related reasons. *First*, Apple does not deny that

6    Macasaddu's iPhone was turned into a useless brick after he installed Version 1.1.1 on it. Indeed,

7    Apple claims that it replaced Macasaddu's iPhone after it was bricked. *See* Motion at 20 ("There

8    is no *genuine* issue for trial on Macasaddu's alleged 'injury,' given the evidence confirming that

9    he received a replacement iPhone and used it for more than one-year after the alleged bricking.")

10   (emphasis in original). Apple would not have replaced Macasaddu's iPhone if Version 1.1.1 had

11   not bricked it. Nor does Apple dispute that Macasaddu was deprived of the use of the bricked

12   iPhone for a legally sufficient amount of time, which is compensable injury. *See supra* § III.B.2.

13   *Second*, Apple cannot establish that the **replacement** iPhone that it contends was in Macasaddu's

14   possession is "*critical*" evidence. Rather, if Apple replaced Macasaddu's bricked iPhone, as it

15   insists it did, the **bricked** iPhone that is "indisputably critical evidence" is **the one that Apple**

16   **claims Macasaddu gave back to it**.

17        Apple argues in its Motion that there is no genuine dispute that it replaced Macasaddu's

18   iPhone. Motion at 20. If the factual predicate for Apple's Motion were correct, then **Apple**, not

19   Macasaddu, was last in possession of the critical, bricked iPhone. The **replacement** iPhone that

20   Apple claims it (indisputably) gave to Macasaddu is no more "critical" to the case than the

21   replacement iPhones it gave to Plaintiffs Sesso and Smith. By arguing that the **bricked** iPhone is

22   "critical," Apple admits there is a genuine dispute of material fact whether it replaced

23   Macasaddu's iPhone, thus undermining its own Motion.

24        Even if Macasaddu were still in possession of the bricked iPhone, Apple does nothing

25   more than assert that Macasaddu's **bricked** iPhone is "indisputably critical evidence." Motion at

26   19. Apple's bare assertion does not withstand close scrutiny. After merits discovery is complete,

27   it may well be, ███████████████████████████████, that individual iPhones

28   (including Macasaddu's **bricked** iPhone) are irrelevant to the litigation. If, for example, Dr.

1  Strawn is able to show that Version 1.1.1 bricked all iPhones that were jailbroken or unlocked by a
2  process that was completely unrelated to (a) how the iPhones were jailbroken or unlocked,
3  (b) what Third Party Apps were installed on individual iPhones, and (c) how particular consumers
4  used their iPhones, then Macasaddu's bricked iPhone will have no relevance to anything.[21]

5        Thus, Apple's argument that Macasaddu's bricked iPhone is "critical" or "at the heart" of
6  the case is, simply, premature. Until Dr. Strawn has been given sufficient opportunity after
7  discovery is complete to reach a conclusion about what caused iPhones to brick, the Court cannot
8  determine whether *any* bricked iPhone is relevant at all, much less "critical" or "at the heart" of
9  the case.

10  **IV.  CONCLUSION**

11        For all of the foregoing reasons, Apple's Motion should be denied in its entirety. Should
12  the Court determine, however, that Plaintiffs lack standing to bring any one or more of their
13  Version 1.1.1-related claims, Plaintiffs respectfully request leave to amend the Complaint to add
14  one or more named plaintiffs to represent the Sub-Class as to that/those claim(s). *See Kelley v.*
15  *Microsoft Corp.*, 251 F.R.D. 544, 556 (W.D. Wash. 2008) (Court granted plaintiffs leave to amend
16  to add a plaintiff with standing to represent the sub-class).

DATED: March 15, 2010

Respectfully Submitted,
WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
RACHELE R. RICKERT

     /s/ Rachele R. Rickert
     Rachele R. Rickert

750 B. Street, I 2770
San Diego, California 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
gregorek@whafh.com
rickert@whafh.com

---

[21] ██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████ Rickert Decl., Ex. O (Strawn Dep.),
65:20-24.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
MARK C. RIFKIN (*pro hac vice*)
ALEXANDER H. SCHMIDT (*pro hac vice*)
ZACHARY W. BIESANZ (*pro hac vice*)
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:   212/545-4677
rifkiin@whafh.com
schmidt@whafh.com
biesanz@whafh.com

Plaintiffs' Interim Lead Counsel

RANDALL S. NEWMAN, P.C.
RANDALL S. NEWMAN
The Trump Building
40 Wall Street, 61st Floor
New York, New York 10005
Telephone:  212/797-3737
Facsimile:   212/797-3172
rsn@randallnewman.net

SHABEL & DENITTIS, P.C.
STEPHEN P. DENITTIS (*pro hac vice*)
NORMAN SHABEL (*pro hac vice*)
5 Greentree Centre, I 302
Marlton, New Jersey 08053
Telephone:  856/797-9951
Facsimile:   856/797-9978
sdenittis@shabeldenittis.com

APPLE:17453V3.OPP

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS– MASTER FILE NO. C 07-05152 JW