LATHAM & WATKINS LLP
    Daniel M. Wall (Bar No. 102580)
    Alfred C. Pfeiffer, Jr. (Bar No. 120965)
    Christopher S. Yates (Bar No. 161273)
    Sadik Huseny (Bar No. 224659)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
Email:    Dan.Wall@lw.com
Email:    Al.Pfeiffer@lw.com
Email:    Chris.Yates@lw.com
Email:    Sadik.Huseny@lw.com

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE & AT&TM ANTITRUST LITIGATION | CASE NO. C 07-5152 JW (PVT) |
| | **APPLE INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' IPHONE OPERATING SYSTEM VERSION 1.1.1 CLAIMS** |
| | Date:       April 26, 2010<br>Time:       9:00 AM<br>Place:      Courtroom 8, 4th Floor<br>Judge:     The Honorable James Ware |

# PUBLIC REDACTED VERSION

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ..................................................................................................... 1

II.  PLAINTIFFS' 1.1.1 CLAIMS HAVE ALWAYS BEEN ABOUT APPLE
DESTROYING PLAINTIFFS' IPHONES AND REFUSING TO REPLACE THEM .... 3

III.  PLAINTIFFS LACK STANDING TO PURSUE THEIR WARRANTY CLAIMS ........ 4

  A.  Macasaddu's Self-Serving Testimony Does Not Create A Triable Issue ............. 5

  B.  If Macasaddu's Claim Is to Be Believed, Then His Admitted
  Spoliation of His iPhone Mandates Judgment on His 1.1.1 Claims ..................... 8

IV.  PLAINTIFFS LACK STANDING TO BRING THEIR TRESPASS TO
CHATTELS AND COMPUTER FRAUD CLAIMS ......................................... 9

  A.  Plaintiffs New Claims of "Injury" Should Not Be Considered And
  Are, In Any Event, Unsupported by the Record ..................................... 9

  B.  There Is No Legal Basis For Plaintiffs' New Injury Theories............................ 11

    1.  Trespass to Chattels ................................................................... 12

    2.  Computer Fraud Claims.............................................................. 14

V.  CONCLUSION........................................................................................ 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1

## <u>TABLE OF AUTHORITIES</u>

2

3

### CASES

4

*Cenveo Corp. v. CelumSolutions Software GMBH & Co. KG*,
504 F.Supp.2d 574 (D. Minn. 2007)...................................................................... 14

5

*D.L. Edmonson Selective Serv. v. LCW Auto. Corp.*,
2010 U.S. Dist. LEXIS 5878 (C.D. Cal. 2010)..................................................... 12

6

7

*Erlandson v. Ford Motor Co.*,
No. 08-CV-1137-BR, 2009 U.S. Dist. LEXIS D. Or. 2009) ............................. 8, 9

8

*Garelli Wong & Assocs. v. Nichols*,
551 F. Supp. 2d 704 (N.D. Ill. 2008) .................................................................... 14

9

*Global Policy Ptnrs, LLC v. Yessin*,
2010 U.S. Dist. LEXIS 14838 (E.D. Va 2010) .................................................... 14

10

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) ................................................................................. 12, 13

11

12

*Johnson v. Wash. Metro. Area Transit Auth.*,
883 F.2d 125 (D.C. Cir. 1989) ................................................................................ 5

13

*Kennedy v. Applause, Inc.*,
90 F.3d 1477 (9th Cir. 1996) .................................................................................. 5

14

15

*Pack v. Damon Corp.*,
434 F.3d 810 (6th Cir. 2006) ................................................................................ 12

16

*Pickern v. Pier 1 Imps. (U.S.), Inc.*,
457 F.3d 963 (9th Cir. 2006) .................................................................................. 2

17

18

*Quality Res. & Servs., Inc. v. Idaho Power Co.*,
2010 U.S. Dist. LEXIS 16036 (D. Idaho 2010)................................................... 10

19

*Scott v. Harris*,
550 U.S. 372 (2007).................................................................................................. 3

20

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
506 F.3d 832 (9th Cir. 2007) ................................................................................ 13

21

22

*Stanford v. Home Depot USA, Inc.*,
2008 WL 7348181 (S.D. Cal. May 27, 2008)....................................................... 14

23

*Ticketmaster v. Tickets.com*,
2003 U.S. Dist. LEXIS 6483 (C.D. Cal. March 7, 2003) ..................................... 12

24

25

### STATUTES

26

California Penal Code § 502(e)............................................................................... 14

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

## I.    INTRODUCTION

For over two years, plaintiffs have advanced "bricking" claims about how Apple supposedly used "malicious code" to destroy iPhones that consumers had unlocked or "jailbroken." According to plaintiffs' complaint, Apple destroyed these iPhones intentionally, to "punish" any consumer who tried to use a cell phone carrier besides ATTM or downloaded third party applications.  RCAC ¶¶ 6, 96-97, 104.  Part and parcel of the theory was that Apple allegedly refused to replace "bricked" iPhones under warranty, leaving these consumers with a worthless device.  Those allegations permitted plaintiffs to survive Apple's motion to dismiss, but as it turns out, they were false.  As described in greater detail in Apple's opposition to plaintiffs' motion for class certification, Apple's iPhone software update version 1.1.1 was a problem only for iPhones that had been modified with a particularly crude hack that altered essential iPhone code.  Docket No. 365 at 10-11, 34.  Version 1.1.1 never caused any harm to the iPhones of five of the eight named plaintiffs, even though some of them had unlocked or jailbroken their iPhones. Furthermore, Apple replaced the iPhones of *all* of the remaining three named plaintiffs who (presumably because they used the bad hacking software) experienced a problem.  In short, not a single plaintiff suffered the injuries alleged in the complaint.

With a single exception, plaintiffs' Opposition disputes none of this.  It offers no explanation or justification for the complaint's many false allegations about version 1.1.1 and the supposedly ensuing "injuries."  Instead, plaintiffs try to change the subject with new and unpleaded theories of "injury."  Fundamentally, plaintiffs urge for the first time that three plaintiffs have standing, notwithstanding Apple's replacement of their iPhones, because:

- Two plaintiffs (Smith and Macasaddu) allegedly had to wait a day or two for Apple to replace their iPhones, and

- A separate set of two plaintiffs (Sesso and Macasaddu) paid a small amount of money (from $10 to $70) for third party applications that the Opposition claims were erased from their iPhones and, apparently, not transferred to their replacement iPhones, while a third (Smith) apparently "lost" a few free applications.

There is a lot to be said about these new injury theories.  First, plaintiffs have surely

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  destroyed any chance that these claims could ever be certified as a class action. We appreciate

2  that relates to another pending motion (calendared for May 10, 2010), but these injury theories

3  are so obviously idiosyncratic that no one could possibly claim they are amenable to classwide

4  adjudication. We will say no more about that now.

5       For present purposes the important points are that these theories (a) were not pleaded in

6  the complaint; (b) are, in fact, flatly inconsistent with the theory of injury that was pleaded; (c)

7  are not supported by the record; and (d) are, in all events, far too trivial to give rise to cognizable

8  injury claims.

9       The complaint never alleged that a plaintiff was injured because Apple delayed in providing

10  a warranty replacement. To the contrary, consistent with the "punishment" theory, the complaint

11  alleged that Apple never provided *any* replacements, leaving consumers with a worthless device.

12  Plaintiffs cannot now reverse course, ignore their complaint and have the Court deny summary

13  judgment because of a supposed brief delay in Apple's provision of replacements. That is far more

14  than a difference in the degree of injury; it is fundamentally different in kind, as it impeaches the

15  notion that the intent and effect of Apple's conduct was to punish customers by permanently

16  destroying and not replacing unlocked and jailbroken iPhones. That becomes clear when one looks

17  at the specifics of the alleged "delays": each of the three plaintiffs who claimed that his iPhone was

18  "bricked" received a replacement *when he requested one at an Apple retail store*. The case,

19  therefore, has transformed from one about destroying iPhones and denying warranty replacements

20  to one alleging essentially nothing. That is procedurally improper, *see, e.g.*, *Pickern v. Pier 1 Imps.*

21  *(U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (plaintiff may not avoid summary judgment by

22  raising unpleaded theories in its opposition), and cannot possibly involve a legally cognizable

23  injury.

24       Likewise no plaintiff alleged in the complaint that he had been injured because third party

25  applications were not transferred to a replacement iPhone. Again, that was because plaintiffs

26  falsely alleged that Apple did not provide replacements. In any event, there is no evidence that any

27  plaintiff suffered a monetary injury because he lost any paid third party applications. The record

28  evidence indicates that one of the three plaintiffs alleging this new "injury" backed his applications

LATHAM&WATKINS<sub>LLP</sub>

ATTORNEYS AT LAW
SAN FRANCISCO

2

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1  up on a computer and thus lost nothing, and the other two submitted no evidence that they suffered

2  the "loss" of any applications, let alone any applications for which they had paid any money. As a

3  result, even if the Court were to permit plaintiffs to reverse course and assert an unpleaded theory,

4  none suffered any cognizable injury.

5      Plaintiffs' opposition contains only one argument consistent with the pleaded theory of

6  injury. Plaintiffs argue that the self-serving testimony of a single plaintiff, Macasaddu, is enough to

7  raise a triable issue as to whether he received a warranty replacement. Not so. Incontrovertible,

8  automated ATTM business records show that Macasaddu's replacement iPhone was activated on

9  Macasaddu's cellular line in October 2007 and remained active through at least November 2008.

10  That evidence, along with Apple's records showing that Apple provided a replacement, establishes

11  beyond any doubt that Macasaddu's claim that he never received a replacement is false. The

12  Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007), makes clear that this Court need

13  not accept Macasaddu's uncorroborated testimony that there was another iPhone he just cannot

14  produce (because he supposedly gave it away).

15      It is very clear that plaintiffs' "bricking" claims are as good as dead. The original

16  grandiose claim about the use of "malicious code" to destroy unlocked and jailbroken iPhones

17  generally is nowhere to be found, and we are now debating only the smallest of purported and

18  unpleaded injuries with respect to three individuals. There is not enough here for any plaintiff—let

19  alone some class—to proceed to trial on these claims. Summary judgment should be granted.

20  **II.**  **PLAINTIFFS' 1.1.1 CLAIMS HAVE ALWAYS BEEN ABOUT APPLE DESTROYING PLAINTIFFS' IPHONES AND REFUSING TO REPLACE THEM**

21      In their Opposition to this motion, plaintiffs assert for the first time that their 1.1.1-related

22  injuries are: (i) "that Third Party Apps that Plaintiffs Sesso and Macasaddu paid for were wiped

23  from their iPhones when they were bricked[;]" and (ii) that "Plaintiffs Smith and Macasaddu [were

24  not] compensated for the loss of use of their iPhones during the time they were bricked, and Apple

25  repeatedly refused to replace them." Opp. at 1-2. They argue, in an affronted tone, that "Apple

26  ignores, and makes no attempt to dispute or explain in any way," these alleged injuries. *Id.* at 1.

27      It would have been hard for Apple to "dispute or explain" these claims of injury since they

28  first appeared in plaintiffs' Opposition. Complaint after complaint in this case alleged that "Apple

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   acted deliberately and intentionally to destroy the iPhones of consumers who had lawfully unlocked

2   their iPhones."  RCAC ¶ 97.  Apple then allegedly refused to provide replacements, supposedly in

3   violation of its warranty obligations:

> When iPhone owners took their dam  aged phones to Apple or AT&TM for repair or replacement, they were unlawfully told that they had breached their warranty agreements by unlocking th eir phone or downloading unapproved software and that their only rem   edy was to buy a new iPhone.  Because Apple had intentionally released and  transmitted Version 1.1.1 knowing that it would dam age or destroy unlock  ed iPhones, Apple and AT&TM were obligated by law to honor their warranties and repair or replace the phones."[1]

8   RCAC ¶ 6; *see also* RCAC ¶¶ 47, 49, 56, 104.  Paragraph 56 of the RCAC is illustrative:  "Sesso

9   contacted Apple to repair his iPhone, but Apple refused to honor its warranty because he had (1)

10  unlocked his iPhone, and (2) installed Third Party Apps."  *Id.*  No plaintiff ever alleged any

11  injury caused by a "delay" in replacement—of course not, since that would have contradicted the

12  pleaded theory of injury.[2]

13      Plaintiffs' recently-filed motion for class certification closes the circle.  Tellingly, plaintiffs

14  never once raised these new claims of injury in their motion for class certification.  Rather, their

15  economist's analysis of supposedly common injury and damages focuses *entirely* on the alleged

16  destruction of and failure to replace iPhones.  *See* Docket No. 243, Wilkie Decl. p. 39.

17  **III.    PLAINTIFFS LACK STANDING TO PURSUE THEIR WARRANTY CLAIMS**

18      We begin with the Magnuson-Moss Warranty Act ("MMWA") claims because they are

19  conceded as to all named plaintiffs but Dennis Macasaddu.  Plaintiffs do not dispute that in order to

20  establish standing to pursue MMWA claims, Apple must have *denied* them warranty coverage.  *See*

21  Mot. at 21.  Since two of the three plaintiffs who claim that their iPhones were bricked admit that

---

[1]   Plaintiffs said exactly or essentially the same thing in nearly *every one* of their submissions to the Court discussing the issue: (i) in their August 2008 Opposition to Apple's Motion to Dismiss (Docket No. 128) at 7; (ii) in three separate Joint CMC Statements (June 2008, November 2008 and January 2009, Docket Nos. 112, 161, 170 at 3); (iii) at the hearing on Apple's Motion to Dismiss (Docket No. 143), and (iv) most recently, in their Motion for Class Certification (Docket No. 240) at 8.

[2]   Some plaintiffs did, of course, allege that third party applications they had installed were erased when the respective iPhone allegedly was destroyed.  However, there were no allegations, let alone the required specific factual allegations, giving Apple notice that plaintiffs' theory of injury was something other than destruction of iPhones and an alleged failure to honor warranties.  *E.g.*, RCAC ¶ 56 (Sesso alleging that his third party applications were erased, but claiming that his injury was that "Apple refused to honor its warranty" by supposedly not providing a replacement).

LATHAM&WATKINS LLP

ATTORNEYS AT LAW
SAN FRANCISCO

4

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1  they received a warranty replacement, they have no claims.[3]  Thus plaintiffs defend the MMWA

2  claims only for Macasaddu, the plaintiff who *says* he was denied a replacement iPhone even though

3  incontrovertible ATTM and Apple records demonstrate otherwise.

### A.  Macasaddu's Self-Serving Testimony Does Not Create A Triable Issue

5  Plaintiffs do not and cannot dispute that Apple's repair records, Macasaddu's phone

6  bills, ATTM's call logs, and ATTM's network registration logs establish that (1) Macasaddu

7  presented his allegedly "bricked" iPhone to Apple, (2) Apple gave him a new iPhone, (3) he

8  activated it on his ATTM phone line, and (4) then used it for more than one year.  Mot. at 10-13.

9  Nor, do plaintiffs dispute that "[e]very time a GSM-enabled mobile phone is turned on, it sends a

10  signal to the wireless network identifying the specific IMEI that is connecting to the network[,]"

11  and that it was Macasaddu's *replacement iPhone that sent in the signal* throughout most of

12  2008—a year after Macasaddu claims his iPhone was "bricked" and that he never again used an

13  iPhone.  Mahone-Gonzalez Decl., ¶¶ 2, 9-11 *and* Ex. B.

14  Instead, plaintiffs claim only that since Macasaddu *says* he never received or used a

15  replacement iPhone, the Court cannot grant summary judgment.  Opp. at 16.

16  Plaintiffs are incorrect.  As plaintiffs acknowledged, uncorroborated, self-serving testimony

17  should be disregarded even for purposes of summary judgment where it is "undermined or

18  contradicted either by disinterested witness statements or by undisputed evidence."  Opp. at 18

19  (citation and emphases omitted); *see also Johnson v. Wash. Metro. Area Transit Auth.*, 883 F.2d

20  125, 128 (D.C. Cir. 1989); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).  The

21  Supreme Court applied this rule in *Scott*, where it made clear that if one party's version of the facts

22  is "blatantly contradicted by the record," the Court need not find a triable issue.  *Scott*, 550 U.S. at

23  380.

24  Here, Macasaddu testified that once his iPhone allegedly "bricked" on September 27, 2007,

25  —————————————————

26  [3]  Plaintiffs Sesso and Smith admitted that their allegations of being denied warranty service for their allegedly "bricked" iPhones were false, in that Apple replaced those iPhones.  The remaining plaintiffs never suffered a bricking problem in the first instance.  Given the number of plaintiffs and

27  the changing theories of injury, attached as **Appendix A** is a chart prepared for the Court's convenience that lays out each plaintiff's initial version 1.1.1 allegations in the complaint and the

28  evidence uncovered by discovery.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   he received no replacement and never again had an iPhone.  Mot. at 9.  But he offered no

2   corroborating documentation—indeed, no support whatsoever—for his assertion, and it is

3   "blatantly contradicted" by both disinterested witness testimony and automated business records.

4   Macasaddu's own friend and business partner Jose Pascasio—the joint user on the ATTM phone

5   account—testified that in fact he *did* see Macasaddu with an iPhone after September 27.

6   Declaration of Sadik Huseny ISO Motion for Summary Judgment, Docket No. 269 (hereinafter

7   "Docket No. 269"), Ex. EE (Pascasio Dep. 128:23-130:14).  Moreover, like the videotape in *Scott*

8   that "captured the events in question," ATTM's records automatically captured the IMEI number of

9   the replacement iPhone as it registered on Macasaddu's phone line of ███████.  *Scott*, 550

10  U.S. at 378; Mahone-Gonzalez Decl. Ex. ¶¶ 7, 9 *and* Ex. B.  This is dispositive evidence.  Plaintiffs

11  *only* argument for why *Scott* does not control is that,  unlike in *Scott*, "Macasaddu ***does*** contend

12  here that Apple's documents differ from what actually happened."  Opp. at 17.  But that does not

13  distinguish *Scott*.  The respondent in *Scott* also vociferously disputed the true story, but the

14  Supreme Court rejected the plaintiffs' testimony because it was "blatantly contradicted by the

15  record."  *Scott*, 550 U.S. at 380.  The point of the decision is that a court cannot be forced to adopt

16  a version of facts simply because the non-movant asserts that story to be true:

17      When opposing parties tell two different    stories, one of which is blatantly
        contradicted by the record, so that no reasonable jury could believe it, a court
18      should not adopt that version of the  facts for purposes of ruling on a m otion
        for summary judgm ent.  That was the ca  se here with regard to the factual
19      issue whether respondent was driving in  such fashion as to endanger hum an
        life.  Respondent's version of events   is so utterly discredited by the record
20      that no reasonable jury could have believed him.

21  *Id.* at 380.

22      Macasaddu obviously "tells quite a different story" from what ATTM's automated records

23  captured, just like the respondent in Scott "[told] quite a different story" from what the videotape

24  captured.  *Id.* at 379.  And Macasaddu's story, like the respondent's in *Scott*, is irreconcilable with

25  objective and incontrovertible evidence of what really happened:  automated recordings capturing

26  every time a particular telephone used the ATTM network in this case and a videotape capturing

27  the events of a car chase in *Scott*.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1      Plaintiffs have nothing to say to this—there is no response to these incontrovertible facts.

2  Instead, they float a few peripheral arguments.

3      First, plaintiffs say that "Apple cannot explain why Jose Pascasio's name rather than Dennis

4  Macasaddu's appears" on some Apple documents.  Opp. at 18; *see also id.* at 19 n.18.  Assuming

5  this matters somehow, plaintiffs themselves acknowledge why:  "Mr. Macasaddu and Mr. Pascasio

6  were business partners and shared a joint wireless services account with ATTM."  *Id.* At 18; *see*

7  *also* Docket No. 353, Ex. D (Macasaddu Dep. 22:3-5, 27:4-29:20); Docket No. 269, Ex. EE

8  (Pascasio Dep. 17:2-14, 24:7-25:21).  In fact, Mr. Macasaddu admitted in deposition that multiple

9  Apple records that had "Jose Pascasio" listed as the customer in fact referred to him.  Docket No.

10  269, Ex. P (Macasaddu Dep. 101:10-102:19).

11      Second, plaintiffs also question why a new SIM card was used on Macasaddu's replacement

12  iPhone rather than the old SIM card from his allegedly bricked iPhone.  Opp. at 19 (citing Mahone-

13  Gonzalez Decl. Ex. B).  Plaintiffs know the answer to this too.  Macasaddu testified that he

14  removed the SIM card from his "bricked" iPhone to use on another phone.  Docket No. 269, Ex. P

15  (Macasaddu Dep. 106:21-107:5).  As a result, Macasaddu's replacement iPhone had a new SIM

16  card.  *Id.*; *see also* Mahone-Gonzalez Decl. Ex. B.

17      Third, plaintiffs try to call ATTM's records into question by asking why they show

18  Macasaddu's phone number registered to other phones after March 2009 when he cancelled his

19  account.  Opp. at 19.  The answer is simple.  Cellular carriers reassign telephone numbers to other

20  customers after an account is canceled.  *See* Supp. Declaration of Mahone-Gonzalez, ¶ 4.  The

21  ATTM network record submitted to the Court tracks *all* of the different devices that have

22  connected to the network on the ▮▮▮▮▮▮▮ phone line.  *Id.*  As is typical, after Macasaddu's

23  account was cancelled, the phone number was assigned to new customers.  *Id.*

24      At bottom, plaintiffs have no response to the records reflecting the key, immutable identifier

25  on the iPhone:  its IMEI number, the phone's electronic fingerprint.  *See* Mahone-Gonzalez Decl. ¶

26  2.  The IMEI number and ATTM's automated records (and, of course, Apple's records) confirm

27  that Apple replaced Macasaddu's old iPhone with a new iPhone and that Macasaddu used the new

28  iPhone for at least a year.  Having received a replacement iPhone for his allegedly bricked iPhone,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   Macasaddu suffered no injury, and thereby has no standing to pursue a MMWA claim.

2   **B.   If Macasaddu's Claim Is to Be Believed, Then His Admitted Spoliation of His iPhone Mandates Judgment on His 1.1.1 Claims**

3   There would be no need to quarrel about Macasaddu's allegedly bricked iPhone if he still

4   had it.  He would be able to prove that Apple did not take it back, and Apple would be able to prove

5   whether it was "bricked" and why, since whether an iPhone was "*bricked"* is ascertainable upon

6   forensic inspection, as is the reason for the failure.  But Macasaddu doesn't have the iPhone

7   because he claims to have given it to a friend out of the country, and says he can't get it back.

8   Macasaddu—not Apple—should bear the consequences of this admitted spoliation.

9   Macasaddu undoubtedly had a duty to preserve that iPhone.  His own lawyer told him so.

10   Docket No. 267, Ex. HH.  Macasaddu's failure to preserve his allegedly bricked iPhone deprived

11   Apple of the opportunity to test the alleged bricking injury that is at the heart of all of Macasaddu's

12   version 1.1.1 claims, including the MMWA claims.  As such, Apple is entitled to dismissal of his

13   claims.  *Erlandson v. Ford Motor Co.*, No. 08-CV-1137-BR, 2009 U.S. Dist. LEXIS 101316, at

14   *9-11, *16-18 (D. Or. 2009).

15   Plaintiffs do not dispute that Macasaddu knew he had a duty to maintain his iPhone.  Nor do

16   they dispute that he spoliated it.  Plaintiffs argue only that (i) if the Court believes that Apple in fact

17   gave him a replacement iPhone, then Apple should have his "bricked" iPhone; and (ii) the iPhone is

18   not a "critical piece of evidence."  Opp. at 21.  Both points are meritless.

19   The first point is both a red-herring and palpably unreasonable.  It is a red herring because if

20   the Court believes that Apple gave Macasaddu a replacement iPhone (as the incontrovertible

21   evidence demonstrates), then Macasaddu does not have standing to pursue his claims as a matter of

22   law, and it does not matter what Macasaddu or Apple did to his old "bricked" iPhone.[4]  The

23   analysis ends there.  But it is also palpably unreasonable because neither Apple nor any company

24   like it keeps returned merchandise indefinitely.  These are broken devices that are recycled,

25   refurbished or scrapped after being returned.  Macasaddu, not Apple, was the one who thought this

26

---

27   [4]   Of course, as discussed in detail above, ATTM and Apple did in fact maintain records that conclusively established the lifecycle and "chain of custody" for Macasaddu's allegedly "bricked"

28   iPhone, as well as the iPhone that was provided to Macasaddu as replacement.

1    particular iPhone was special because it had been maliciously bricked, which led him to file several

2    of causes of action on this very issue (weeks after he received a replacement iPhone in place of his

3    "bricked" device.).  The duty to preserve the evidence at the heart of those claims was his.

4    *Erlandson*, 2009 U.S. Dist. LEXIS 101316, at *11-12.

5            As to the second point, it is illogical for plaintiffs to say that Macasaddu's iPhone is not a

6    "critical piece of evidence."  It is essential evidence.  For all the bricking claims, Apple is entitled

7    to examine *this* iPhone to see exactly what happened to cause it to allegedly malfunction.  Maybe it

8    wasn't bricked at all.  If it was, then maybe—almost certainly, in fact—it was bricked by what

9    Macasaddu did to alter the iPhone's software.  Plaintiffs' own expert relied heavily on a book

10   called *iPhone Hacks* that states that "*bricking* … means rendering your iPhone as useless as a brick

11   because of hacking gone awry."  Docket No. 355, Ex. KK (Strawn Dep. 109:22-110:10 and Ex. 2,

12   p. 6).  Macasaddu's failure to preserve the allegedly bricked iPhone prevents Apple from proving

13   that his iPhone was bricked because of "hacking gone awry"—as opposed to anything Apple did.

14   It would be entirely unfair for Macasaddu's case to persist solely on the basis of his uncorroborated

15   testimony when he spoliated this core piece of evidence.  *See Erlandson* at *16-18 *and* Mot. at 19-

16   20.  Macasaddu's MMWA claim—plaintiffs' only such remaining claim, after the revelations of

17   discovery—as well as all of Macasaddu's bricking claims should be dismissed.[5]

18   **IV.    PLAINTIFFS LACK STANDING TO BRING THEIR TRESPASS TO CHATTELS
19            AND COMPUTER FRAUD CLAIMS**

             **A.    Plaintiffs New Claims of "Injury" Should Not Be Considered And Are, In Any
20                   Event, Unsupported by the Record**

21           Plaintiffs' new claims of "injury"—the alleged loss of the "use of the iPhone" while waiting

22   for their replacement devices, and loss of "the use of the Third Party Apps they had paid for"—are

23   ――――――――――――――――

     [5]   Plaintiffs also try to excuse Macasaddu's admitted spoliation with speculation that "[a]fter merits
24         discovery is complete," plaintiffs' expert, Dr. Strawn, may be "able to show that [v]ersion 1.1.1
           bricked all iPhones that were jailbroken or unlocked by a process that was completely unrelated to . . .
25         how the iPhones were jailbroken or unlocked, [or] what Third Party Apps were installed on individual
           iPhones[.]"  Opp. at 21-22.  Plaintiffs already know that this claim is false.  Dr. Strawn has admitted
26         that version 1.1.1 did *not* brick all unlocked or jailbroken iPhones.  *See* Docket No. 355, Ex. KK
           (Strawn Dep. 63:9-13).  And plaintiffs' own experiences confirm this—plaintiffs Holman, Lee and
27         Kliegerman all installed 1.1.1 on jailbroken or unlocked iPhones, without bricking.  In any event, the
           only MMWA issue before the Court at this time is whether Dennis Macasaddu was denied a warranty
28         claim.  Plaintiffs' speculation about what happened to others is beside the point.

LATHAM&WATKINS^LLP

ATTORNEYS AT LAW
SAN FRANCISCO

9

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   groundless and cannot save their computer fraud and trespass claims.

2         First, plaintiffs failed to include these claims of injury in the complaint—and in every

3   pleading submitted to this Court to date—because plaintiffs were always falsely telling the Court

4   that they had *not* received replacements.  A plaintiff cannot defend against a summary judgment

5   motion on the basis of claims of injury that are not pleaded in the complaint.  *See, e.g.*, *Pickern*,

6   457 F.3d at 969 (declining to consider new allegations of ADA violations because "the complaint

7   gave the [defendants] no notice of the specific factual allegations presented for the first time in

8   Pickern's opposition to summary judgment."); *Quality Res. & Servs., Inc. v. Idaho Power Co.*,

9   2010 U.S. Dist. LEXIS 16036, at *16 (D. Idaho 2010) (same).  And it gets worse because here

10  plaintiffs' new contentions are contrary to the theory of injury pleaded in the complaint.  The

11  complaint framed the issue in this case—falsely, but framed it nonetheless—as whether Apple

12  destroyed and then refused to replace bricked iPhones.  The whole concept was of malicious,

13  strategic behavior intended to punish those who deigned to unlock or jailbreak their iPhones.  The

14  punishment was supposedly the death penalty for their iPhones, a complete forfeiture of its value

15  when it was permanently bricked.  The claims under criminal and intentional tort theories thus

16  don't even make sense if all that happened to plaintiffs who dared unlock or jailbreak iPhones

17  was…that they got a new iPhone, free of charge from Apple.  Yet that is what *every plaintiff* who

18  claims to have been "bricked" experienced.

19        Nor are there specific allegations of injury resulting from the deletion of third-party

20  applications that the plaintiffs had paid for.  There are allegations that third party applications were

21  erased when the iPhone allegedly was destroyed.  But plaintiffs never—in the complaint, the

22  motion to dismiss proceedings, their class certification papers or elsewhere—put Apple on notice

23  that plaintiffs' *theory of injury* was something other than an alleged destruction of iPhones and

24  related refusal to honor warranties.  In particular, no named plaintiff claimed injury from the

25  alleged deletion of third party applications:  there were no allegations that plaintiffs had spent

26  money on those applications, no allegations that those applications were not backed up on their

27  computer(s) and fully restorable no matter what may have been "erased" from a particular iPhone,

28  and no allegations that plaintiffs asked Apple to recover any such applications and were refused.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1    In all events, plaintiffs' claim of a "delay in replacement" is false.  Each of the three

2    plaintiffs who maintained that 1.1.1 bricked their iPhones received a replacement when he

3    presented his iPhone at an Apple retail store.  Sesso was in an Apple retail store when 1.1.1 was

4    installed and then received an immediate replacement.  Docket No. 269, Ex. O (Sesso Dep. 77:22-

5    79:6).  Smith could not find the time to take his iPhone to an Apple retail store because of his own

6    schedule, but when he took the iPhone to an Apple retail store, he received a replacement.  Docket

7    354, Ex. H (Smith Dep. 92:9-93:10.)[6]  And, Macasaddu also received a prompt replacement at an

8    Apple retail store.  Mot. at 11.

9    There is no basis for the new third party applications theory either.  Macasaddu testified that

10   he paid a few dollars for five applications, but he also testified that he backed-up these applications

11   on a computer; so, Macasaddu never lost any applications.  *See* Docket 353, Ex. D (Macasaddu

12   Dep. 51:16-21).  Sesso testified that he deleted many of the apps on his iPhone prior to receiving a

13   replacement (Docket No. 269, Ex. O (Sesso Dep. 72:19-73:20)) and he provides no evidence in

14   opposition to Apple's motion that he lost any apps.  Smith only downloaded free apps, which he

15   could replace for free.  *See* Docket No. 354, Ex. H (Smith Dep. 96:3-16, 103:3-18).

16   Even were the Court to consider plaintiffs' unpleaded claims of injury, plaintiffs have still

17   failed to establish standing as to each of their causes of action.

18   **B.    There Is No Legal Basis For Plaintiffs' New Injury Theories**

19   The "delay in replacement" and "lost applications" theories are pale substitutes for what

20   plaintiffs, knowing what the law required, pleaded as their actual "injuries" in complaint after

21   complaint.  There is no precedent sustaining these sorts of "injuries."  Plaintiffs are unable to cite to

22   a single case under any of their computer fraud or trespass theories for the proposition that one who

23   receives a replacement for a damaged computer has any cause of action for either (1) the time

24   between when the customer presented the product for replacement and when the product was

25

---

26   [6]  Plaintiffs would have this Court believe that Smith was refused warranty service the first time he
       went in an Apple store.  This is false.  In response to his own counsel's question, Smith stated that the
       first time he went in an Apple store, he did *not* make a claim for replacement:  "Q. During that visit,
27     did you ask Apple to replace your phone?  A. … I don't believe I made a claim asking them to
       replace it for me."  Docket No. 269, Ex. F (Smith Dep. 187:13-24).  He only requested a replacement
28     during his second visit and his iPhone was immediately replaced.  *Id.* (Smith Dep. 92:9-11).

1   replaced, or (2) the defendant's failure to transfer over all of the modifications the consumer made

2   to the replaced device.

3      Issues like this are addressed under warranty law. Because it always takes *some* time to

4   replace a product, warranty law recognizes injury for loss of use of a product only where a

5   consumer is deprived from use of the product for an "unreasonable" amount of time due to a

6   warrantor's "unreasonable" delay in repairing a product. *See D.L. Edmonson Selective Serv. v.*

7   *LCW Auto. Corp.*, 2010 U.S. Dist. LEXIS 5878, at *22-24 (C.D. Cal. 2010); *Pack v. Damon Corp.*,

8   434 F.3d 810, 816 (6th Cir. 2006). We note this because plaintiffs implicitly admit they *cannot*

9   meet this test: it is why they pursue their MMWA claims only with respect to Macasaddu, who says

10   he was denied a replacement altogether, and not for the "delay" in getting a warranty allegedly

11   experienced by Sesso and Smith. In essence, plaintiffs are claiming without authority that under

12   computer fraud and trespass theories there is a way to recover injuries that warranty law disallows.

### 1.  Trespass to Chattels

14      Under California law, trespass to chattels only "lies where an intentional interference with

15   the possession of personal property has proximately caused injury." *Intel Corp. v. Hamidi*, 30 Cal.

16   4th 1342, 1350-51 (2003). There must be actual, not merely nominal, harm for a cause of action

17   for trespass to chattels to lie. *Id.* at 1351. Indeed, the key holding of *Intel* is that a complaining

18   party must demonstrate "an injury to its personal property, or to its legal interest in that property."

19   *Id.* at 1360. The Court held that lost productivity by Intel employees and the costs incurred by Intel

20   in attempting to block the plaintiff's e-mail messages did not satisfy the harm element of trespass to

21   chattels, because they did not represent any decrease in the value of Intel's property interests. *Id.;*

22   *see also Ticketmaster v. Tickets.com*, 2003 U.S. Dist. LEXIS 6483, at *13 (C.D. Cal. March 7,

23   2003) (granting summary judgment for failure to establish tort damages); Restatement of the Law

24   of Torts, § 218 (cmt. e).

25      Plaintiffs alleged in the complaint, of course, that such injury existed because four

26   plaintiffs—Lee, Sesso, Smith and Macasaddu—had unlocked or jailbroken their iPhones, the

27   devices had been "bricked" by version 1.1.1; and then Apple declined to replace the devices. These

28   allegations were false. Now plaintiffs are down to claiming "injury" resulting from "delay in

1    replacement" for just two plaintiffs, Smith and Macasaddu.[7]  Under *Intel*, that is just not enough.

2    Clearly, if all the costs incurred on Intel by that plaintiffs' campaign of harassing email are not

3    enough to support a cause of action, the trivial alleged "delays" that Smith and Macasaddu may

4    have suffered are not.

5            Focusing on the details reveals how extreme plaintiffs' theory is.  Plaintiff Smith made

6    repeated blog postings stating that he had "over hacked" iPhones and then "tricked" Apple into

7    replacing iPhones, including an iPhone he "had frozen [him]self from jailbreaking."  Docket No.

8    269, Ex. F (Smith Dep. 107:4-17, 108:16-109:17, 139:10-140:18).  He bragged that Apple never

9    refused him a warranty replacement though he repeatedly violated the iPhone software license

10   agreement, hacking and damaging his iPhones, and that Apple replaced iPhones for him *seven*

11   *times*.  Mot. at 8-9.[8]  The temerity to claim a legally cognizable "injury" because his own schedule

12   cased him to delay obtaining replacements is remarkable.  Plaintiff Macasaddu says (and phone

13   records confirm) that when his iPhone "bricked," he immediately swapped his SIM card to another

14   phone which he used until Apple replaced his iPhone.  Mot. at 11.  Macasaddu nowhere claims in

15   the complaint, nor did he testify at deposition, that he suffered any injury—let alone tort-type

16   damages—from a supposed delay in replacement; that is because he covered himself by using

17   another phone.  This is much less "injury" than was deemed insufficient in *Intel*.

18           Moreover, Smith and Macasaddu were in the same position at the commencement of

19   litigation—with a fully functional iPhone—as they would have been absent Apple's allegedly

20   unlawful transmission of version 1.1.1.  *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d

21   832, 838-40 (9th Cir. 2007) ("The existence of standing turns on the facts as they existed at the

22   time the plaintiff filed the complaint;" plaintiff "suffered no cognizable injury . . . [where

---

23   [7]   Plaintiffs state that "Apple makes much ado about the fact that Plaintiff Lee suffered no injury as a result
24        of downloading Version 1.1.1.  However, Plaintiffs have **not** requested appointment of Plaintiff Lee as a
          Sub-Class representative."  Opp. at 4 n. 2 (emphasis in original).  Of course not—*but only because
25        Apple discovered through deposition that Lee's claims of injury were false*.  It is only through Apple's
          cost and effort that the false allegations—including the claims of injury of plaintiff Lee—were revealed.

26   [8]   Plaintiffs make the claim that "Apple's assertion that Smith 'admitted that Apple never refused to
          replace an iPhone' is a distortion of his testimony."  Opp. at 7 n.6.  The Court can decide.  Here is
27        Smith's answer to his *own counsel's question*:  "Q: You also testified earlier that Apple never denied
          you replacement of a phone under the warranty; do you recall testifying to that?  A:  I did."  Docket No.
28        269, Ex. F (Smith Dep. 187:3-6).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   defendant] promptly corrected its errors" because any injury from a remedied problem "is too

2   trifling . . . to support constitutional standing"); *Stanford v. Home Depot USA, Inc.*, 2008 WL

3   7348181, at \*13 (S.D. Cal. May 27, 2008) (no standing where putative class representative failed to

4   establish any injury resulting from defendant's overcharging of fees and delay in procuring

5   requisite permit, as fees were refunded prior to plaintiff filing suit and permit was ultimately

6   obtained).

7   **2.   Computer Fraud Claims**

8   Plaintiffs' computer fraud claims fare no better.  Plaintiffs claim that Sesso and Macasaddu

9   (but not Smith) have standing to pursue a Computer Fraud and Abuse Act ("CFAA") claim because

10  certain of their "Third Party Apps" were allegedly deleted by version 1.1.1.  Plaintiffs also contend

11  that Sesso, Macasaddu *and* Smith have standing to pursue their computer fraud claim under Section

12  502 of the California Penal Code for the same reason.

13  A claim for violation of the CFAA requires a plaintiff to show both damage to a "protected

14  computer" and loss or harm to the plaintiff of at least $5,000.  *Cenveo Corp. v. CelumSolutions*

15  *Software GMBH & Co. KG*, 504 F.Supp.2d 574, 581 (D. Minn. 2007); *Garelli Wong & Assocs. v.*

16  *Nichols*, 551 F. Supp. 2d 704, 708 (N.D. Ill. 2008).[9]  California Penal Code Section 502 also

17  requires actual injury; only those who have suffered "damage or loss" by reason of a violation may

18  bring a claim.  Cal. Penal Code § 502(e)(1).  Neither Macasaddu nor Sesso meets these standards.

19  <u>Macasaddu.</u>  At deposition, Macasaddu claimed that he had downloaded a free jailbreaking

20  program, AppTapp, and spent a *dollar or two* per application, no more, on five applications.  But he

21  also testified that *he backed up* these programs on his computer.  *See* Docket No. 353, Ex. D

22  (Macasaddu Dep. 51:16-21).  Thus, whether or not he transferred the programs over to his new

23  replacement iPhone, he *never lost them*.  Plaintiffs don't say anything about this—they want the

24  Court to think that he permanently lost them and was injured in the amount of $10.  But that is not

25  [9]   Even if plaintiffs can aggregate claims to meet the $5,000 threshold in a class action, they were
26  required to come forward with *evidence* to establish at least that much in actual damage in order to
     survive summary judgment.  As explained below, at best, plaintiffs have presented evidence of less
     than $100 in supposed damages.  Since they cannot present evidence of at least $5,000 in damages
27  (even aggregated), Apple is entitled to judgment.  *See, e.g.*, *Global Policy Ptnrs, LLC v. Yessin*, 2010
     U.S. Dist. LEXIS 14838, at \*31 (E.D. Va 2010) (granting summary judgment on CFAA claim where
28  plaintiffs could only show $2,283.07 in damages resulting from alleged violation).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
CASE NUMBER: C 07-05152 JW (PVT)

1   the record.

2       Sesso.  Only now do plaintiffs claim that Sesso was damaged because he spent $70 to

3   jailbreak his iPhone and have third party applications installed, and that those programs were

4   deleted when his iPhone was "bricked."  But they again have failed to meet their burden of

5   presenting *evidence* showing that there was ever any cognizable harm.  First, Sesso testified that he

6   deleted many of the apps on his iPhone prior to the replacement.  Docket No. 269, Ex. O (Sesso

7   Dep. 72:19-73:20).  Thus, there is no evidence that any third party applications remained on his

8   iPhone.  Second, there is no evidence before the Court showing that Sesso actually lost whatever

9   unspecified applications he had not already deleted.  He does not say whether he had backed them

10  up, or copied them to another iPhone, or anything else of the sort to show they were "lost."  In

11  short, Sesso failed to meet his burden of proving injury.

12      Smith.  There is no evidence that plaintiff Smith lost any paid applications at all.  Whatever

13  free third party applications he may have had on his hacked iPhone, he apparently put right back

14  on, for free when he jailbroke his "replacement" iPhone.  See Docket No. 354, Ex. H (Smith Dep.

15  103:3-18).  In short, Apple is entitled to judgment on Smith's claims because he did not suffer any

16  injury whatsoever.

17      Plaintiffs' new claims of injury are an afterthought, conjured up to attempt to survive

18  summary judgment. There is no evidence establishing actual injury sufficient to give plaintiffs

19  standing.  Apple is thus entitled to judgment.

20  **V.      CONCLUSION**

21      For the foregoing reasons, Apple respectfully requests that the Court grant judgment in its

22  favor on plaintiffs' MMWA (Count VII), Trespass to Chattels (Count VIII), Computer Fraud

23  (Count IX), and California Penal Code Section 502 (Count X) claims for want of standing.

24  Dated:  April 5, 2010                          Respectfully submitted,

25                                                 LATHAM & WATKINS LLP

26

27                                                 By _____/s/ Sadik Huseny_____
                                                       Sadik Huseny
28                                                     Attorneys for Defendant APPLE INC.
    SF\746246

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15                                    APPLE INC.'S REPLY ISO MOTION FOR SUMMARY
                                      JUDGMENT ON PLAINTIFFS' VERSION 1.1.1 CLAIMS
                                      CASE NUMBER: C 07-05152 JW (PVT)