1

2

3

4

5

6

7 IN THE UNITED STATES DISTRICT COURT

8 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9 SAN JOSE DIVISION

10 In Re Apple & ATTM Antitrust Litigation     NO. C 07-05152 JW

11 **ORDER GRANTING DEFENDANT APPLE'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; DENYING FOLKENFLIK & McGERITY'S MOTION FOR APPOINTMENT AS CO-LEAD COUNSEL**

12

13

14

15 _____/

16 **I.  INTRODUCTION**

17 Plaintiffs[1] bring this putative nationwide class action against Apple, Inc. ("Apple") and

18 AT&T Mobility, LLC ("ATTM"), alleging, *inter alia*, monopolization in violation of Section 2 of

19 the Sherman Act, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, and

20 violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Plaintiffs allege that although

21 they were required to purchase a two-year service agreement with ATTM when they purchased their

22 iPhones, Apple and ATTM had secretly agreed to technologically restrict voice and data service in

23 the aftermarket for continued voice and data services for five years, *i.e.*, after Plaintiffs' initial two-

24 year service period expired.  Plaintiffs also allege that Apple monopolized the aftermarket for third

25 party software applications for the iPhone, and that Apple caused the iPhone to become unusable if

26 it detected that a customer had "unlocked" their iPhone for use with other service providers.

27 _____

28 [1]  Plaintiffs are Herbert H. Kliegerman, Paul Holman, Lucy Rivello, Timothy P. Smith, Michael G. Lee, Dennis V. Macasaddu, Mark G. Morikawa, Vincent Scotti, and Scott Sesso.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

Presently before the Court are (1) Apple's Motion for Summary Judgment on Plaintiffs' iPhone Operating System Version 1.1.1 Claims;[2] (2) Plaintiffs' Motion for Class Certification;[3] and (3) Corrected Motion to Appoint Folkenflik & McGerity and Hoffman & Lazear as Lead Counsel for Computer and Unfair Trade Practice Claims.[4]  The Court conducted a hearing on May 24, 2010. Based on the papers submitted to date and oral argument, the Court GRANTS Defendant Apple's Motion for Summary Judgment, GRANTS in part Plaintiffs' Motion for Class Certification, and DENIES Folkenflik's Motion.

## II.  BACKGROUND

A detailed description of the factual allegations of this case can be found in the Court's October 1, 2008 Order Denying Defendant AT&TM's Motion to Compel Arbitration and to Dismiss; Denying Defendant AT&TM's Motion to Stay Discovery; Granting in Part and Denying in Part Defendant Apple's Motion to Dismiss.  (hereafter, "October 1, 2008 Order," Docket Item No. 144.)  The Court reviews the procedural history to the extent it is relevant to the present Motions.

On October 5, 2007, Plaintiffs Paul Holman and Lucy Rivello filed a Class Action Complaint (Holman).  (Docket Item No. 1.)  On November 30, 2007, the Court ordered Holman consolidated with Timothy Smith, et al., v. Apple, Inc., et al., Case No. 07-05662 JW (Smith), appointing counsel in each case as co-lead counsel.  (Docket Item Nos. 34, 35.)  On March 18, 2008, the Court related Kliegerman v. Apple, Inc., Case No. 08-00948 JSW (Kliegerman) to the consolidated action. (Docket Item No. 86.)  On April 15, 2008, the Court consolidated Kliegerman with this case, appointed Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as interim lead counsel and denied motions for appointment by the Law Offices of Damian R. Fernandez and Folkenflik & McGerity.  (See Docket Item No. 100.)  On May 5, 2008, Plaintiffs filed their

---

[2]  (hereafter, "MSJ," Docket Item No. 265, 328, filed under seal.)

[3]  (hereafter, "Class Motion," Docket Item Nos. 240, 289, filed under seal.)

[4]  (hereafter, "Folkenflik Motion," Docket Item Nos. 385, 393.)

2

1    Consolidated Amended Class Action Complaint.  (See Docket Item No. 102.)  On June 4, 2008,

2    Plaintiffs filed a Revised Consolidated Amended Class Action Complaint.[5]

3          On October 1, 2008, the Court denied Defendant ATTM's motion to compel arbitration and

4    to dismiss, denied ATTM's motion to stay discovery, and granted in part and denied in part

5    Defendant Apple's motion to dismiss.  (See Docket Item No. 144.)  The Court dismissed only the

6    unfair and deceptive trade practices claims.  (Id. at 30.)  To date, Plaintiffs have not further amended

7    their Amended Complaint, which is the operative complaint.  On October 30, 2008, Apple filed its

8    Answer.  (Docket Item No. 152.)  On December 12, 2008, the Court bifurcated class and merits

9    discovery.  (See Docket Item No. 164.)  On March 18, 2009, ATTM filed its Answer.  (Docket Item

10   No. 188.)

11         Presently before the Court are (1) Apple's Motion for Summary Judgment, (2) Plaintiffs'

12   Motion for Class Certification, and (3) Folkenflik & McGerity and Hoffman & Lazear's Motion for

13   Appointment as Lead Counsel for Computer and Unfair Trade Practice Claims.

### III.  STANDARDS

14

15   **A.    Summary Judgment**

16         Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

17   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

18   material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

19   56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims

20

21         [5] (hereafter, "Amended Complaint," Docket Item No. 109.)  The Amended Complaint
     alleges the following ten causes of action: (1) Unlawful Monopolization of the Applications
22   Aftermarket in Violation of Sherman Act § 2 (against Apple); (2) Attempted Monopolization of the
     Applications Aftermarket in Violation of the Sherman Act § 2 (against Apple); (3) Unlawful
23   Monopolization of the Voice and Data Services Aftermarket in Violation of Sherman Act § 2
     (against Apple and ATTM); (4) Attempted Unlawful Monopolization of the Voice and Data
24   Services Aftermarket in Violation of Sherman Act § 2 (against Apple and ATTM); (5) Conspiracy to
     Monopolize the Voice and Data Services Aftermarket in Violation of Sherman Act § 2 (against
25   Apple and ATTM); (6) Unfair and Deceptive Acts and Practices (against Apple and ATTM); (7)
     Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. (against Apple and
26   ATTM); (8) Trespass to Chattels (against Apple); (9) Violation of the Computer Fraud and Abuse
     Act, 18 U.S.C. § 1030 (against Apple); and (10) Violation of California Penal Code § 502 (against
27   Apple).

28                                                      3

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    or defenses." <u>Celotex v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The moving party "always bears the

2    initial responsibility of informing the district court of the basis for its motion. . . ." <u>Id.</u> at 323.  "The

3    judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file,

4    and any affidavits show that there is no genuine issue as to any material fact and that the movant is

5    entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The non-moving party "may not

6    reply merely on allegations or denials in its own pleading; rather, its response must—by affidavits or

7    as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  Fed. R.

8    Civ. P. 56(e).

9        When evaluating a motion for summary judgment, the court views the evidence through the

10   prism of the evidentiary standard of proof that would pertain at trial.  <u>Anderson v. Liberty Lobby</u>

11   <u>Inc.</u>, 477 U.S. 242, 255 (1986).  The court draws all reasonable inferences in favor of the nonmoving

12   party, including questions of credibility and of the weight that particular evidence is accorded.  <u>See</u>,

13   <u>e.g.</u>, <u>Masson v. New Yorker Magazine</u>, Inc., 501 U.S. 496, 520 (1992).  The court determines

14   whether the non-moving party's "specific facts," coupled with disputed background or contextual

15   facts, are such that a reasonable jury might return a verdict for the non-moving party.  <u>T.W. Elec.</u>

16   <u>Serv. v. Pac. Elec. Contractors</u>, 809 F.2d 626, 631 (9th Cir. 1987).  In such a case, summary

17   judgment is inappropriate.  <u>Anderson</u>, 477 U.S. at 248.  However, where a rational trier of fact could

18   not find for the non-moving party based on the record as a whole, there is no "genuine issue for

19   trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986).

20   **B.    Class Certification**

21       The decision to certify a class is committed to the discretion of the district court within the

22   guidelines of Federal Rule of Civil Procedure 23.  <u>See</u> Fed. R. Civ. P. 23; <u>Doninger v. Pac. Nw. Bell,</u>

23   <u>Inc.</u>, 564 F.3d 1304, 1309 (9th Cir. 1977).  The party seeking class certification bears the burden of

24   establishing that each of the four requirements of Rule 23(a) and at least one requirement of Rule

25   23(b) have been met.  <u>Dukes v. Wal-Mart, Inc.</u>, 509 F.3d 1168, 1176 (9th Cir. 2007) (citing <u>Zinser v.</u>

26   <u>Accufix Research Institute, Inc.</u>, 253 F.3d 1180, 1186 (9th Cir. 2001), amended, 273 F.3d 1266 (9th

27   Cir. 2001)).  A district court may certify a class only if, after "rigorous analysis," it determines that

28                                                    4

United States District Court

For the Northern District of California

1  the party seeking certification has met its burden.  Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147,

2  158-61 (1982).

3      In reviewing a motion for class certification, the court generally is bound to take the

4  substantive allegations of the complaint as true.  In re Coordinated Pretrial Proceedings in Petroleum

5  Products Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir. 1982) (citing Blackie v. Barrack, 524 F.2d

6  891, 901 (9th Cir. 1975)).  However, the court may look beyond the pleadings to determine whether

7  the requirements of Rule 23 have been met.  Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th

8  Cir. 1992) (citation omitted).  In fact, "courts are not only at liberty to but must consider evidence

9  which goes to the requirements of Rule 23 [at the class certification stage] even [if] the evidence

10 may also relate to the underlying merits of the case."  Dukes, 509 F.3d at 1178 n.2 (internal

11 quotations and citation omitted).

## IV.  DISCUSSION

13     Defendant Apple moves for summary judgment on Plaintiffs' claims for violation of the

14 Magnuson-Moss Warranty Act, trespass to chattels, violation of the Computer Fraud and Abuse Act,

15 and violation of California Penal Code § 502.  Plaintiffs move for class certification on their

16 Sherman Act claims, for certification of a sub-class as to their other claims, and for appointment of

17 Wolf Haldenstein as lead class counsel.  Folkenflik & McGerity and Hoffman & Lazear move for

18 appointment as co-lead class counsel.  The Court addresses each motion in turn.

19     As a preliminary matter, since the parties have filed most of the evidence for these Motions

20 under seal, this Order only summarizes the evidence and provides general citations to the evidence

21 but does not refer to any specific confidential information.

22 **A.   Apple's Motion for Summary Judgment**

23     Defendant Apple moves for summary judgment on Plaintiffs' Seventh, Eight, Ninth, and

24 Tenth Causes of Action[6] on the ground that Plaintiffs lack standing to pursue their claims because

25 the evidence shows that have not suffered any injury from the 1.1.1 Software.  (MSJ at 16-23.)

26 ─────────────────

27     [6] These claims are based on allegations that Apple's iPhone Operating System Software
version 1.1.1 (the "1.1.1 Software") "bricked" (i.e., rendered inoperable) Plaintiffs' iPhones.

28                                    5

**United States District Court**
For the Northern District of California

1

**1.        Seventh Cause of Action for Violation of the Magnuson-Moss Warranty Act**

Apple contends that Plaintiffs did not suffer any injury under the Magnuson-Moss Warranty Act because Apple promptly replaced each bricked iPhone and did not deny warranty coverage to any Plaintiff.  (MSJ at 16-21.)  Plaintiffs contest Apple's Motion on this claim only as to Plaintiff Macasaddu, whom Plaintiffs contend did not receive a replacement phone when his phone was bricked.[7]

The Magnuson-Moss Warranty Act provides a federal cause of action for violation of an "implied warranty arising under state law."  See 15 U.S.C. § 2301(7); Milicevic v. Fletcher Jones Imports, Ltd., 402 F.3d 912, 917 (9th Cir. 2005).  "In order to state an actionable claim of breach of warranty and/or violation of the Magnuson-Moss Act, a plaintiff must demonstrate that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts."  Temple v. Fleetwood Enterprises, Inc., 133 Fed. Appx. 254, 268 (6th Cir. 2005).  "[A] consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation under this chapter . . . may bring suit for damages and other legal and equitable relief . . . ."  15 U.S.C. § 2310(d)(1).

Plaintiffs offer the following testimony to show that Plaintiff Macasaddu was injured by a denial of warranty on his iPhone:

> (1)    Macasaddu purchased his iPhone in July of 2007.[8]
>
> (2)    Macasaddu's iPhone stopped working on September 27, 2007, when he downloaded the 1.1.1 Software on to his phone.  (Id. at 50:1-51:13, 53:7-13.)  During the week that followed, he took his phone to three Apple stores, but they were unable to diagnose the problem.  (Id. at 88:16-90:23.)

---

[7]  (Plaintiffs' Opposition to Defendant Apple's Motion for Summary Judgment on Plaintiffs' iPhone Operating System Version 1.1.1 Claims at 15-18, hereafter, "Opp'n to MSJ," Docket Item No. 346, filed under seal.)  Plaintiffs did not respond to Defendants' contention that the other Plaintiffs were not denied warranty coverage.

[8]  (Declaration of Rachele R. Rickert in Support of Plaintiffs' Opposition to Apple Inc.'s Motion for Summary Judgment on Plaintiffs' iPhone Operating System Version 1.1.1 Claims, hereafter, "Rickert Decl. ISO Opp'n MSJ," Ex. H at 20:17-21:19, "Macasaddu Depo.," Docket Item No. 347, filed under seal.)

United States District Court

For the Northern District of California

(3)    At one store, an Apple employee accused him of unlocking his phone, and told him that it was therefore not covered by the warranty.  (Id. at 51:25-52:24, 90:24-91:10.)  Macasaddu also tried sending the phone back to Apple, but Apple returned it to him untouched.  (Id. at 95:1-7.)

(4)    After failing to get to Apple to fix the phone, he took the SIM card out of his phone and put it into a different phone, which he then used.  (Id. at 39:25-40:5.)  Macasaddu then gave away his bricked iPhone to a friend who was visiting from the Phillipines.  (Id. at 24:11-25.)[9]

Apple contends that Plaintiff Macasaddu's testimony is refuted by the following evidence:

(1)    Macasaddu purchased two iPhones on June 30, 2007, each bearing a unique serial number and IMEI number.[10]

(2)    Prior to downloading the 1.1.1 Software, Macasaddu had installed a third party application on his iPhone.  (Apple's Macasaddu Depo. Excerpts at 50:14-19, 77:17-78:2.)

(3)    On September 28, 2007, a call was placed to Apple's customer care group regarding Macasaddu's phone, describing a SIM card error that Macasaddu claimed had appeared after installation of version 1.1.1.  (Huseny Decl., Ex. V.)  Apple then sent a box to Macasaddu's business address so that he could send in his iPhone to Apple's screening center.  (Huseny Decl., Ex. BB.)  Macasaddu sent the phone to Apple, but Apple determined "No Trouble Found," and overnighted the phone back to Macasaddu.  (Id.)

(4)    Apple's customer records show that the iPhone used by Macasaddu was replaced with a different iPhone in a "repair swap" on October 3, 2007 at an Apple store.  (Huseny Decl., Exs. W, CC.)  Apple's business records show that the replacement iPhone was activated on Macasaddu's telephone number the next day, October 4, 2007.  (Id., Ex. DD.)

---

[9] Plaintiffs also submit evidence that Apple had a sign that it placed in its stores informing customers that Apple would not replace iPhones that had been bricked as a result of installing the 1.1.1 Software, and evidence that Apple denied warranty coverage to numerous iPhone owners who had unlocked their phones or installed third party applications on their phones.  (See "Rickert Decl. ISO Opp'n MSJ, Exs. F at 56:11-57:6, G, K, L.)  However, Plaintiffs have not shown that any of this evidence pertains to Plaintiff Macasaddu.

[10] (Declaration of Sadik Huseny in Support of Defendant Apple Inc.'s Motion for Summary Judgment on Plaintiffs' iPhone Operating System Version 1.1.1 Claims, hereafter, "Huseny Decl. ISO MSJ," Exs. P at 20:17-21:24, Q, "Apple's Macassadu Depo. Excerpts," Docket Item No. 267, filed under seal.)  Each iPhone bears two unique identifying numbers that are fixed to the iPhone and are nontransferable.  First, for Apple's tracking and manufacturing purposes, each iPhone bears a unique and fixed serial number.  Second, each iPhone also bears a unique International Mobile Equipment Identity ("IMEI") number.  (Declaration of Caroline Mahone-Gonzalez in Support of Defendant Apple Inc.'s Motion for Summary Judgment on Plaintiffs' iPhone Operating System Version 1.1.1 Claims ¶ 2, hereafter, "Mahone-Gonzalez Decl.," Docket Item No. 270.)

7

United States District Court
For the Northern District of California

1    Plaintiffs contend that the difference between Macasaddu's deposition testimony and

2  Apple's records creates a triable issue of fact, and that none of Apple's records contain Macasaddu's

3  name, instead showing the name Jose Pascasio, Macasaddu's business partner.  (See Opp'n MSJ at

4  16-19; Huseny Decl. Exs. V, BB.)  Apple does not dispute that the business records contain

5  Pascasio's name, but contends that this fact is irrelevant because the records show that the iPhone

6  bearing the serial number of Macasaddu's phone was replaced.[11]  Apple contends that its position is

7  supported by Macasaddu's admission that even though Apple's record of his call to the customer

8  care department on September 28, 2007 shows Pascasio's name, it was Macasaddu who placed the

9  call to Apple's customer care group.  (Reply ISO MSJ at 7; Apple's Macasaddu Depo. Excerpts at

10  101:10-102:19.)

11    The Court finds that Macasaddu's deposition testimony alone is insufficient to create a

12  triable issue of fact in the face of undisputed evidence to the contrary.[12]  While Apple's business

13  records regarding the replacement of the iPhone contain only Pascasio's name, the record clearly

14  shows that the iPhone bearing the serial number of Macasaddu's phone was replaced.  The fact that

15  Macasaddu made a phone call to Apple under Pascasio's account one week prior to the replacement

16  corroborates Apple's business records.  Thus, the Court finds that no reasonable jury would find that

17  Plaintiff Macasaddu was denied warranty coverage by Apple.[13]

18    Accordingly, the Court GRANTS Defendant Apple's Motion for Summary Judgment as to

19  Plaintiffs' Seventh Cause of Action.

20

21

22

23    [11]  (Apple's Reply in Support of Motion for Summary Judgment on Plaintiffs' iPhone
24  Operating System Version 1.1.1 Claims at 7-8, hereafter, "Reply ISO MSJ," Docket Item No. 388,
    filed under seal.)

25    [12]  See Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996); accord Villiarimo v.
26  Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

27    [13]  Since Plaintiffs failed to address this claim as to the other named Plaintiffs, the Court need
    not address Apple's Motion as to each of them.

28

United States District Court

For the Northern District of California

2.      **Eighth, Ninth, and Tenth Causes of Action for Trespass to Chattels, Computer Fraud and Abuse Act, and California Penal Code § 502**

Apple moves for summary judgment on Plaintiffs' claims for trespass to chattels, violation of the Computer Fraud and Abuse Act, and California Penal Code § 502 on the ground that Plaintiffs lack standing to pursue these claims because no Plaintiff was damaged by the 1.1.1 Software.[14] (MSJ at 23-24.)  Plaintiffs contend that Plaintiffs Sesso, Smith, and Macasaddu have standing to represent a class of iPhone purchasers on these claims because they lost third party applications when the 1.1.1 Software bricked their iPhones and they were unable to use their iPhones for a period of days after their iPhones were bricked.  (See Opp'n MSJ at 10.)  Since the same injury is alleged as to all three claims, the Court analyzes them together.

Trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury."  Intel Corp. v. Hamidi, 30 Cal. 4th 1342, 1350-51 (Cal. 2003); see also eBay, Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058, 1069 (N.D. Cal. 2000).  A claim of trespass to chattel requires "actual harm."  Hamidi, 30 Cal. 4th at 1352.  The doctrine of trespass to chattels has been applied in the context of electronic communications with computing devices.  See Hamidi, 30 Cal. 4th at 1353-54 (collecting cases).

The Computer Fraud and Abuse Act ("CFAA") creates liability for "knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer."  18 U.S.C. § 1030(a)(5)(A)(i).  The term "damage" means "any impairment to the integrity or availability of data, a program, a system, or information."  Id. at § 1030(e)(8).  A plaintiff must also demonstrate that the defendant's action caused over $5,000 in damage over a one-year period.  Id. at § 1030(a)(5)(B)(I). The Court has previously held that Plaintiffs may aggregate individual damages over the putative class to meet the damages threshold.  (See October 1, 2008 Order at 22 (citing In re Toys R Us, Inc. Privacy Litigation, 2001 WL 34517252, *11 (N.D. Cal. 2001)).)

---

[14]  Plaintiffs Lee, Sesso, Smith, and Macasaddu are the only Plaintiffs asserting these claims. (See Amended Complaint ¶¶ 47-49, 56.)

9

United States District Court

For the Northern District of California

1   The California Penal Code ("CPC") permits an action against an individual who

2   "[k]nowingly accesses and without permission adds, alters, damages, deletes, or destroys any data,

3   computer software, or computer programs which reside or exist internal or external to a computer."

4   CPC § 502(c)(4).  Additionally, the CPC allows an action against an individual who "[k]nowingly

5   introduces any computer contaminant into any computer, computer system, or computer network."

6   Id. § 502(c)(8).  Under the CPC, a "computer contaminant" is defined as "computer instructions that

7   are designed to . . . damage [a computer] . . . without the intent or permission of the owner."  Id. §

8   502(b)(10).

9   Here, Plaintiffs offer the following evidence of actual harm:

10   (1)   After their iPhones were bricked by the 1.1.1 Software, Plaintiffs Smith, and
        Macasaddu lost use of their iPhones for several days.  (See Rickert Decl. ISO Opp'n
11       MSJ, Ex. E at 88:13-22; Macasaddu Depo. at 92:25-93:3.)

12   (2)   After their iPhones were bricked by the 1.1.1 Software, Plaintiffs Sesso and
        Macasaddu lost third party applications that they had purchased for a total of between
13       $10 and $70.  (Rickert Decl. ISO Opp'n MSJ, Ex. D at 63:12-65:7, 72:16-73:13,
        80:7-82:24; Macasaddu Depo. at 50:19-55:21, 86:5-87:12.)

14

15   As a preliminary matter, Apple contends that Plaintiffs' theory of injury based on loss of

16   third party applications is not specifically pleaded as a theory of injury in Plaintiffs' Amended

17   Complaint, and should not be considered by the Court.  (Reply ISO MSJ at 9-10.)  However, Apple

     concedes that "[t]here are allegations that third party applications were erased when the iPhone
18
     allegedly was destroyed."  (Id. at 10.)  Indeed, Plaintiffs allege that the 1.1.1 Software "[rendered]
19
     existing Third Party Applications . . . useless."  (Amended Complaint ¶ 103.)  The Court finds these
20
     allegations sufficient to put Apple on notice that destruction of third party applications could provide
21
     a theory of injury.
22
         Turning to the merits of Plaintiffs' claims, the Court finds that Plaintiffs have not produced
23
     sufficient evidence of injury resulting from the 1.1.1 Software.  Plaintiff Lee admitted that he was
24
     not injured by the 1.1.1 Software.  (Huseny Decl. ISO MSJ, Ex. E at 59:3-5.)  Plaintiffs Sesso and
25
     Smith admitted that they each received a free replacement iPhone after they downloaded the 1.1.1
26

27

28                                                    10

United States District Court

For the Northern District of California

Software.[15]  Additionally, as the Court found above, Plaintiff Macasaddu's phone was replaced. Plaintiffs have not produced evidence that they were without use of their phones for more than a few days before receiving a free replacement.  While Hamidi recognized that loss of use of commercial email servers in a large corporation for a "substantial" or "measurable" amount of time could constitute an injury for the purpose of trespass to chattels, that factual circumstance stands in sharp contrast to loss of use of a personal phone for a few days before receiving a free replacement phone. Hamidi, 30 Cal. 4th at 1352-53.  Moreover, Hamidi did not address loss of use in the context of the CFAA or CPC.  Thus, the Court finds that Plaintiffs have not shown actual harm by loss of use of their phones.

Further, Plaintiffs Smith, Macasaddu, and Sesso have not produced sufficient evidence of harm based on loss of third party software applications.  There is no evidence that Plaintiff Smith paid for any third party applications.[16]  Plaintiff Macasaddu only had one third party application, of which he kept a backup copy on his computer.  (Huseny Decl. ISO MSJ, Ex. D at 51:6-24.)  Plaintiff Sesso had deleted many of his third party applications prior to downloading the 1.1.1 Software, and the applications that he kept on his phone apparently caused the phone to frequently crash and freeze *prior to* installing 1.1.1 Software.[17]  Thus, the Court finds that Plaintiffs have not produced sufficient evidence to establish standing to maintain their claims related to "bricking."

However, even if Plaintiffs could establish standing, they have not produced sufficient evidence to show that Defendant Apple acted with an intent to damage Plaintiffs' iPhones with the

---

[15] (Huseny Decl. ISO MSJ, Exs. F at 7-22, O at 78:25-79:6; Declaration of Sadik Huseny in Support of Defendant Apple's Opposition to Plaintiffs' Motion for Class Certification, hereafter, "Huseny Decl. ISO Opp'n to Class Cert.," Ex. H at 95:11-14, Docket Item Nos. 352-355, filed under seal.)

[16] (See Huseny Decl. ISO Opp'n to Class Cert., Ex. H at 65:9-17, 96:3-16, 103:3-18.)

[17] (Rickert Decl. ISO Opp'n MSJ, Ex. D at 72:19-73:20, 74:14-17, 76:11-77:23.)

11

United States District Court

For the Northern District of California

1.1.1 Software.[18]  Plaintiffs have not produced documents or testimony showing that Defendant Apple designed the 1.1.1 Software to "brick" iPhones containing third party applications.  As stated, the CFAA requires that the defendant "intentionally caus[ed] damage without authorization."  18 U.S.C. § 1030(a)(5)(A)(i).  Trespass to chattels requires an "intentional interference."  <u>Hamidi</u>, 30 Cal. 4th at 1350-51.  And the California Penal Code § 502 requires the knowing introduction of "computer instructions that are designed to . . . damage."  CPC § 502(b)(10).  Thus, the Court finds that Plaintiffs have failed to introduce specific evidence to create triable issue that in offering the 1.1.1. Software, Apple acted with intentional conduct to cause Plaintiffs harm.

Significantly, Plaintiffs have not produced any evidence that they were required to download and install the 1.1.1 Software.  Instead, they each voluntarily installed it.[19]  Voluntary installation runs counter to the notion that the alleged act was a trespass and to CFAA's requirement that the alleged act was "without authorization" as well as the CPC's requirement that the act was "without permission."  18 U.S.C. § 1030(a)(5)(A)(I); CPC § 502(c)(4).  Thus, the Court finds that no reasonable jury could find for Plaintiffs on their claims for trespass to chattels, violation of the Computer Fraud and Abuse Act, and California Penal Code § 502.

Accordingly, the Court GRANTS Defendant Apple's Motion for Summary Judgment as to Plaintiffs' Eighth, Ninth, and Tenth Causes of Action.

**B.**     <u>**Plaintiffs' Motion for Class Certification**</u>

Plaintiffs move to certify the following class: "All persons who purchased or acquired an iPhone in the United States and entered into a two-year agreement with Defendant AT&T Mobility,

---

[18]   The CFAA requires that the defendant "intentionally caus[ed] damage without authorization."  18 U.S.C. § 1030(a)(5)(A)(i).  Trespass to chattels requires an "intentional interference."  <u>Hamidi</u>, 30 Cal. 4th at 1350-51.  The California Penal Code § 502 requires the knowing introduction of "computer instructions that are designed to . . . damage."  CPC § 502(b)(10).

[19]   (<u>See</u> Rickert Decl. ISO Opp'n MSJ," Ex. D at 74:18-25; Huseny Decl. ISO Opp'n to Class Cert., Exs. D at 83:13-16, H at 75:19-21.)

United States District Court

For the Northern District of California

LLC for iPhone voice and data service any time from June 29, 2007, to the present."[20]  Plaintiffs also move to certify the following sub-class: "All iPhone customers whose iPhones were 'bricked' by Defendant Apple, Inc. at any time during the Class Period."  (Id.)  Plaintiffs seek appointment of (1) each individual Plaintiff as representatives of the class, (2) Plaintiffs Macasaddu, Sesso, and Smith as representatives of the sub-class, and (3) Wolf Haldenstein as lead class counsel.  (Id.)

In light of the Court's dismissal of Plaintiffs' claims arising out of the "bricking" of their iPhones, the Court proceeds to only consider whether class certification is appropriate as to the remaining anti-trust claims.

### 1.     Rule 23(a) Certification

Rule 23(a) provides four requirements that must be satisfied for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997)).

### a.     Numerosity

Plaintiffs contend that the putative class satisfies the numerosity requirement because millions of people purchased an iPhone in the class period.  (Class Motion at 11.)  Although Defendants do not contest class certification on the basis of numerosity, the Court examines this factor for completeness.[21]

---

[20]  (Proposed Order Granting Plaintiffs' Motion for Class Certification, Docket Item No. 240.)

[21]  Federal Rule of Civil Procedure 23(c) "imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions."  Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003).

United States District Court

For the Northern District of California

1   Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is

2   impracticable."  Impracticable does not mean impossible, only that it would be difficult or

3   inconvenient to join all members of the class.  Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d

4   909, 913-14 (9th Cir. 1964).  A class of one thousand members "clearly satisfies the numerosity

5   requirement."  Sullivan v. Chase Inv. Servs., Inc., 79 F.R.D. 246, 257 (N.D. Cal. 1978).

6   In this case, Defendants do not dispute that, at a minimum, thousands of people purchased an

7   iPhone during the class period.  Thus, the Court finds that Plaintiffs have sufficiently shown a

8   nationwide class that is so numerous that joinder of all members is impracticable.

9   Accordingly, the Court finds that Plaintiffs have met the numerosity requirement of Rule

10   23(a).

11   **b.   Commonality**

12   Plaintiffs contend that the commonality requirement of Rule 23(a) is met because the Court

13   will be required to address a series of legal and factual questions that will affect all members of the

14   putative class.  (Class Motion at 11-15.)  In particular, Plaintiffs contend that there are common

15   questions as to (1) the relevant primary market and aftermarkets, (2) whether Defendants had a

16   uniform policy of not disclosing their five year agreement to iPhone purchasers at the time of sale,

17   and (3) whether Defendants monopolized, or attempted to monopolize, the relevant aftermarkets.

18   (Id. at 14-16.)  Defendants contend that Plaintiffs cannot meet the commonality requirement because

19   (1) each class members' state of mind is critical to an adjudication of the Sherman Act claims, (2)

20   antitrust damages will require a highly individualized inquiry, and (3) Plaintiffs' expert did not

21   perform an analysis adequate to show antitrust impact on the class.[22]

22   **i.   Class Members' State of Mind and Antitrust Damages**

23   Defendants contend that (1) whether each class member "knowingly" gave Defendants

24   market power by entering into a de facto five year commitment to purchase voice and data service

25

26   [22]  (See Defendant Apple's Opposition to Plaintiffs' Motion for Class Certification at 12-31, hereafter, "Apple Opp'n," Docket Item No. 365, filed under seal; Defendant ATTM's Opposition to Plaintiffs' Motion for Class Certification at 9-31, hereafter, "ATTM Opp'n," Docket Item No. 362, filed under seal.)

27

28

United States District Court

For the Northern District of California

1    from ATTM requires an individualized inquiry that destroys commonality, and (2) that even if there

2    are common questions of liability, damages will require an individual inquiry into what each

3    consumer would have done if they had known of the five year commitment.  (ATTM Opp'n at 11-

4    20, 31; Apple Opp'n at 12-16.)  Plaintiffs contend that (1) the question of whether iPhone purchasers

5    "knowingly" gave Defendants market power can be resolved on a class-wide basis by looking to the

6    fact that purchasers signed a two year contract while Defendants maintained a uniform policy of

7    failing to disclose their five year agreement to purchasers at the time of sale, and (2) Plaintiffs can

8    prove damages by analyzing "market level" factors, such as the value of being able to switch service

9    providers.[23]

10        Section 2 of the Sherman Act prohibits monopolization, attempted monopolization and

11   conspiracy to monopolize "any part of the trade or commerce among the several States."  15 U.S.C.

12   § 2.  To state a valid claim under the Sherman Act, a plaintiff "must allege that the defendant has

13   market power within a 'relevant market.'"  <u>Newcal Indus., Inc. v. IKON Office Solution</u>, 513 F.3d

14   1038, 1044 (9th Cir. 2008) (citing <u>Eastman Kodak Co. v. Image Technical Servs., Inc.</u>, 504 U.S.

15   451, 481 (1992)).  There can be no legally cognizable antitrust claim, however, where there is a

16   claim of "market *power* that arises solely from contractual rights that consumers knowingly and

17   voluntarily give to the defendant."  <u>Newcal</u>, 513 F.3d at 1048 (emphasis in original).

18        The Court previously held that Plaintiffs have adequately alleged the existence of two iPhone

19   aftermarkets: (1) the aftermarket for voice and data service, and (2) the aftermarket for

20   applications.[24]  In addressing whether Defendants held power in the relevant aftermarkets, the Court,

21   relying on <u>Newcal</u>, stated that "the dispositive issue is whether Plaintiffs knowingly placed

22   Defendants in a monopoly position in the alleged voice and data services aftermarket."  (<u>Id.</u> at 18.)

_____

23        [23] (Plaintiffs' Reply in Further Support of their Motion for Class Certification at 11-16, 23,
24   hereafter, "Class Reply," Docket Item No. 440, filed under seal; Expert Reply Declaration of Simon
     J. Wilkie, Ph.D. ¶¶ 20-21, hereafter, "Wilkie Reply Decl.," Docket Item No. 442, filed under seal.)
25
         [24] (<u>See</u> October 1, 2008 Order at 14-16.)  Defendants now challenge whether Plaintiffs have
26   adequately alleged a monopolization theory based on the aftermarket for applications.  (<u>See</u> Apple
     Opp'n at 24.)  The Court rejects this contention because the Court found that Plaintiffs had pleaded
27   such a theory in its October 1, 2008 Order.  (<u>See</u> October 1, 2008 Order at 12, 16-19.)

28                                    15

United States District Court

For the Northern District of California

1    Relying on this statement, Defendants contend that determining whether Defendants held market

2    power in the aftermarkets will require an individualized inquiry into whether each class member

3    "knowingly and voluntarily" gave Defendants such market power—*i.e.*, knew about Apple and

4    ATTM's five year deal or Apple's total control over the available iPhone applications at the time

5    they purchased their iPhone with a two year voice and data service plan from ATTM.  (Apple Opp'n

6    at 12-15; ATTM Opp'n at 11-15.)

7         In Newcal, the plaintiff's monopoly claim was based on an aftermarket for copier parts and

8    services.  Newcal, 513 F.3d at 1050.  The defendant's customers entered into leases for defendant's

9    copy machines and service agreements with defendant, under which they would use defendant,

10   rather than another company, for service and equipment.  Id. at 1044.  The plaintiff (a competitor to

11   the defendant) alleged that the defendant engaged in a scheme to monopolize the aftermarket for

12   copier parts and service by amending the customers' lease agreements and service contracts without

13   disclosing that the amendments would lengthen the term of the original contract.  Id.  The Newcal

14   court found the facts of its case analogous to Kodak, where the Supreme Court found that "market

15   imperfections, including information and switching costs, prevented consumers from discovering, as

16   they were shopping for equipment, that the Kodak brand would include a de facto commitment to

17   consume only supracompetitively priced Kodak-brand service contracts."  Id. at 1048.  Thus, the de

18   facto, non-contractual commitment resulting from the initial contract (*e.g.*, for copier leases and

19   copier service in Newcal) was the critical fact that separated a cognizable monopoly claim from a

20   non-cognizable claim.  In other words, a monopoly claim based on power explicitly granted to the

21   defendant in the contract itself would not be cognizable.

22        Thus, Newcal did *not* require that an inquiry into whether consumers "knowingly" entered

23   into de facto commitments to be monopolized must be determined on an individual basis rather than

24   a class-wide basis.  Notably, when discussing the fact that consumers in Kodak "did not knowingly

25   enter a contract that gave Kodak the exclusive right to provide parts and services for the life of the

26   equipment," the Newcal court explained that this conclusion was based on, not an individual inquiry,

27

28
                                                    16

but the fact that "the simple purchase of Kodak-brand equipment . . . did not constitute a binding contractual agreement to consume Kodak parts and services in the aftermarket." Id. at 1048.

The Court finds that under Newcal the issue of whether consumers of iPhones "knowingly" entered into de facto commitments to be monopolized can be analyzed on a class-wide basis. The Court can analyze whether the purchase of an iPhone constitutes a binding contractual agreement to consume Apple-approved applications and ATTM's voice and data services in the aftermarket. Construing Newcal to require an individual analysis on this issue would unduly narrow Newcal and would be at odds with the fact that the Kodak court did not examine individual consumers' knowledge in finding that they "did not knowingly enter a contract that gave Kodak the exclusive right to provide parts and services for the life of the equipment." See Newcal, 513 F.3d at 1048 (citing Kodak). Additionally, Newcal and Kodak support examining "market level" factors, such as switching costs—as Plaintiffs' expert purports to do—and did not restrict such analysis to an individual basis. See id. Defendant ATTM has not sufficiently shown why an analysis of factors such as the switching cost would not be amenable to class treatment. Thus, the Court finds that Plaintiffs have shown the existence of questions of law and fact common to the class as to the Sherman Act claims.

### ii.    Plaintiffs' Expert

Defendants contend that Plaintiffs' expert, Dr. Wilkie, offers a flawed analysis of damages that does not track Plaintiffs' theory of antitrust harm. (ATTM Opp'n at 27-30; Apple Opp'n at 19-24.) In particular, Defendants contend that Dr. Wilkie improperly addresses the effects of the iPhone's exclusivity to ATTM's service, rather than the service of other carriers. (ATTM Opp'n at 28; Apple Opp'n at 19-20.) According to Defendants (and their expert) Dr. Wilkie should have focused only on the effect of Defendants' *nondisclosure* to iPhone customers of the exclusivity with ATTM service. (ATTM Opp'n at 28; Apple Opp'n at 19-20.) ATTM requests that the Court exclude Dr. Wilkie's opinion on this basis. (See ATTM Opp'n at 30.) Plaintiffs contend that Dr. Wilkie correctly measured the effect of the unlawful monopoly, that Defendants focus on the

17

United States District Court

For the Northern District of California

1  nondisclosure aspect alone is too narrow, and that Defendants' expert's opinion rests on a faulty

2  assumption.  (Class Reply at 16-17, 21 n.12.)

> [D]uring the class certification stage, the court must simply determine whether plaintiffs have made a sufficient showing that the evidence they intend to present concerning antitrust impact will be made using generalized proof common to the class and that these common issues will predominate.  The court cannot weigh in on the merits of plaintiffs' substantive arguments, and must avoid engaging in a battle of expert testimony.  Plaintiffs need only advance a plausible methodology to demonstrate that antitrust injury can be proven on a class-wide basis.

7  In re TFT-LCD (Flat Panel) Antitrust Litig., No. M 07-1827 SI, 2010 WL 1286478, at *16 (N.D.

8  Cal. Mar. 28, 2010); see also In re Rubber Chems. Antitrust Litig., 232 F.R.D. 346, 353 (N.D. Cal.

9  2005).  Recently, in the context of class certification of employment discrimination claims, the Ninth

10 Circuit explained that "if one party argued that the other party's statistics were unreliable or based on

11 an unaccepted method, this may be an issue the district court would have to resolve to determine

12 whether the potentially problematic statistics were even capable of raising a common question."

13 Dukes v. Wal-Mart Stores, Inc., Nos. 04-16688, 04-16720, 2010 WL 1644259, at *14 (9th Cir. Apr.

14 26, 2010) (en banc).  Thus, while a court need not resolve a battle of the experts at this stage, the

15 court must at least be satisfied that the plaintiffs' expert's methodology is "capable of raising a

16 common question."

17      Here, both sides agree that Plaintiffs' expert employed the proper general methodology,

18 known as the "but-for" method—i.e., analyzing a world that would have existed "but for"

19 Defendants' alleged conduct.  (See ATTM Opp'n at 28; Apple Opp'n at 20; Class Reply at 17.)  The

20 dispute centers on the precise scope of Dr. Wilkie's "but for" analysis, namely, whether he should

21 have looked only at the effect of Defendants' nondisclosure of the five year agreement or whether he

22 should have, more broadly, analyzed a world without Defendants' monopolization of the

23 aftermarkets at issue.

24      The proper focus of a "but for" analysis is the absence of the "challenged practices."  See

25 Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P., 247 F.R.D. 156, 165 (C.D. Cal.

26 2007).  The challenged practice in this case is Defendants' monopolization of the aftermarkets for

27 voice and data service and third party applications that resulted from Defendants' five year

28

United States District Court

For the Northern District of California

agreement and failure to disclose the agreement to consumers at the time of purchase of the iPhones. Dr. Wilkie measured (1) "what prices consumers would have paid for iPhone voice and data service if they had the right to switch," and (2) "the inherent value of the right to switch itself, a right the consumers bargained for but never received."[25]  Although nondisclosure is an important part of Plaintiffs' antitrust claims in that it allegedly helped Defendants obtain a monopoly in the aftermarkets,[26] the Court cannot say as a matter of law that Dr. Wilkie's analysis of the value of a customer's ability to switch carriers is not a plausible measure of the antitrust impact of the challenged practice.  Dr. Wilkie's approach, although broad, appears to track the overall challenged practice of the monopolization of the voice and data aftermarket.[27]  Thus, the Court finds that Plaintiffs have offered sufficient evidence of the ability to prove antitrust impact on a class-wide basis.

### c.    Typicality

Plaintiffs contend that the typicality requirement is satisfied because they allege the same antitrust claims as all other member of the class, entered into the substantially the same two year

---

[25]  (Class Reply at 18-19 & n.10; Expert Declaration of Simon J. Wilkie, Ph.D. ¶¶ 66-67, hereafter, "Wilkie Decl.," Docket Item No. 290, filed under seal; Wilkie Reply Decl. ¶ 23.)

[26]  (See, e.g., Amended Complaint ¶¶ 32-34, 135.)

[27]  For the same reasons, the Court rejects Apple's contention that Dr. Wilkie's analysis of the antitrust impact of Apple's alleged monopoly in the applications aftermarket precludes class certification because it focuses too broadly on Apple's "closed platform," which it used to control the applications available to iPhone users.  (See Apple Opp'n at 25, 27; Wilkie Decl. ¶¶ 71-72.)
Moreover, the Court rejects Apple's contention that certification of a class as to the applications aftermarket is barred by Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977).  (See Apple Opp'n at 28-29.)  Illinois Brick precludes certification of a class of indirect purchasers for antitrust claims.  See 431 U.S. at 730-31, 734.  "The Supreme Court has defined an indirect purchaser as one who is not the immediate buyer from the alleged antitrust violator or one who does not purchase the monopolized product directly from the antitrust defendant."  Campos v. Ticketmaster Corp., 140 F.3d 1166, 1169 (8th Cir. 1998) (citing Kansas v. UtiliCorp United, Inc., 497 U.S. 199, 207 (1990); California v. ARC America Corp., 490 U.S. 93, 97 (1989)).  Here, Dr. Wilkie's analysis does not rest on an indirect purchaser model.  Rather, his analysis is of "sales of approved apps through [Apple's] App Store."  (Wilkie Decl. ¶ 71.)  Thus, the class members deal directly with the accused monopolist, Apple.  Although Campos found that Illinois Brick applied in a context where class members dealt *directly* with the monopolist (Ticketmaster)—"ticket buyers only buy Ticketmaster's services [at marked up prices] because concert venues have been required to buy those services first"—the Court is not aware of any Ninth Circuit case that applied Illinois Brick in this manner, and the Court declines to do so here.

United States District Court

For the Northern District of California

1   service agreement as all class members, suffered the same harm of having their freedom in the

2   aftermarkets restricted at the time of purchase, and suffered bricking of their iPhones from the 1.1.1

3   Software.  (Class Motion at 17-18.)  ATTM contends that Plaintiffs fail the typicality requirement on

4   a variety of grounds: (1) "the diversity of information and understanding [Plaintiffs] and class

5   members had in purchasing their iPhones, particularly because the information available changed

6   over time," destroys typicality, and (2) Plaintiffs Rivello and Macasaddu did not pay for their

7   iPhones or sign contracts for service with ATTM.  (ATTM Opp'n at 32-33.)

8          Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of

9   the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Like the commonality requirement,

10   the typicality requirement is permissive:  "representative claims are 'typical' if they are reasonably

11   co-extensive with those of absent class members; they need not be substantially identical."  Hanlon,

12   150 F.3d at 1020.  The test is whether "other members have the same or similar injury, whether the

13   action is based on conduct which is not unique to the named plaintiffs, and whether other class

14   members have been injured by the same course of conduct."  Hanon, 976 F.2d at 508.  A court

15   should not find typicality satisfied if "there is a danger that absent class members will suffer if their

16   representative is preoccupied with defenses unique to it."  Id. (internal citation omitted).  "Typicality

17   in the antitrust context [is] established by plaintiffs and all class members alleging the same antitrust

18   violations by the defendants."  Estate of Garrison v. Warner Bros., Inc., Civ. No. CV 95-8328 RMT,

19   1996 WL 407849, at *2 (C.D. Cal. June 25, 1996).

20          Here, the Court finds Plaintiffs' claims are reasonably co-extensive with those of the class.

21   Pursuant to the analysis above, the Court rejects ATTM's contention that the individualized

22   knowledge of each class member precludes certification.  Additionally, although Plaintiff Rivello's

23   husband purchased the iPhone and signed the service contract, he did so from a joint checking

24   account with marital funds.[28]  In any event, the Court does not find this issue to rise to the level of a

25

26          [28]  (Supplemental Declaration of Rachelle R. Rickert in Further Support of Plaintiffs' Motion
     for Class Certification, hereafter, "Rickert Suppl. Decl.," Ex. B ¶¶ 2-3, Docket Item No. 423, filed
27   under seal.)

28                                                      20

United States District Court

For the Northern District of California

1   unique defense that will preoccupy Plaintiff Rivello.  Similarly, although Plaintiff Macasaddu's

2   business partner's name appeared on the iPhone account used by Macasaddu, the service was paid

3   by a business account that Macasaddu and his business partner funded, and Macasaddu was a user

4   on the account.[29]  Thus, the Court finds that Plaintiffs have sufficiently shown that they are typical of

5   the proposed class and subclass.

6          Accordingly, the Court finds that Plaintiffs have met the typicality requirement of Rule

7   23(a).

8                  **d.      Adequacy**

9          Plaintiffs contend that they, and interim counsel Wolf Haldenstein, are adequate to represent

10  the class because Plaintiffs have the same interests as the class members and counsel are

11  experienced and motivated advocates for the class.  (Class Motion at 18-20, 34.)  Defendants do not

12  contest adequacy.

13         Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

14  interests of the class."  Two questions are considered when determining the adequacy of

15  representation: "(1) do the named plaintiffs and their counsel have any conflicts of interest with

16  other class members and (2) will the named plaintiffs and their counsel prosecute the action

17  vigorously on behalf of the class?"  Hanlon, 150 F.3d at 1020.

18         Here, the Court finds that there is no evidence that Plaintiffs or their counsel have any

19  conflicts of interest with other class members.  Further, upon review of the law firm resume of Wolf

20  Haldenstein, the Court finds that counsel has sufficient experience in antitrust and class actions such

21  that they are capable of adequately and vigorously prosecuting this litigation.[30]  Thus, the Court

---

[29]  (Rickert Suppl. Decl., Exs. C at 25:6-27:17, D at 28:12-30:9, 83:13-86:5; Apple's Macasaddu Depo. Excerpts at 101:10-102:19.)

[30]  (See Declaration of Rachelle R. Rickert in Support of Plaintiffs' Motion for Class Certification, hereafter, "Rickert Decl.," Ex. R, Docket Item No. 241, filed under seal.)  Indeed, the Court previously found Wolf Haldenstein qualified to prosecute this action when it appointed the firm as interim counsel.  (See Order Appointing Interim Lead Counsel, Docket Item No. 100.) Accordingly, the Court GRANTS Plaintiffs' Motion to appoint Wolf Haldenstein as class counsel. See Fed. R. Civ. P. 23(g) (requiring that "a court that certifies a class must appoint class counsel").

United States District Court

For the Northern District of California

1  finds that Plaintiffs have sufficiently shown that they, and Wolf Haldenstein, are adequate to

2  represent the class.

3      Accordingly, the Court finds that Plaintiffs have met the adequacy requirement of Rule

4  23(a). In sum, the Court finds that Plaintiffs have met the requirements of Rule 23(a).

5      **2.      Rule 23(b) Certification**

6      In addition to meeting the requirements of Rule 23(a), Plaintiffs must establish that one or

7  more of the grounds for maintaining the suit as a class action are met under Rule 23(b).

8          **a.      Rule 23(b)(2) Certification**

9      Plaintiffs seek class certification under Rule 23(b)(2) to obtain injunctive relief—an end to

10  the challenged practices of Defendants. (Class Motion at 20-21.) In particular, Plaintiffs seek an

11  injunction prohibiting Defendants from monopolizing the aftermarkets for iPhone voice and data

12  services and applications, from selling "locked" iPhones, compelling Defendants to provide

13  "unlock" codes to iPhone customers, and prohibiting Defendants from damaging "unlocked"

14  iPhones or otherwise retaliating against iPhone consumers who seek to use their iPhones on other

15  cellular networks or install third party applications. (Id. at 21; Amended Complaint at 35-36.)

16  Defendants contend that a 23(b)(2) class is not proper because the large amount of potential

17  damages at issue predominates and is not merely incidental to injunctive relief, and that the

18  requested relief is moot in any event because "everyone knows about [Defendants'] policies."

19  (Apple Opp'n at 35; ATTM Opp'n at 34-35.)

20      Certification under Rule 23(b)(2), is appropriate where the defendant "has acted or refused to

21  act on grounds that apply generally to the class, so that final injunctive relief or corresponding

22  declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In

23  evaluating whether to certify a Rule 23(b)(2) class, a court must satisfy itself that: "(1) even in the

24  ───────────────────────

25      For the reasons articulated in the Court's Order Appointing Interim Lead Counsel, the Court DENIES Folkenflik & McGerity and Hoffman & Lazear's Motion for appointment as co-lead

26  counsel of the non-antitrust claims. The Court does not credit the unsubstantiated contentions in Folkenflik's Motion that Wolf Haldenstein has not adequately handled the causes of action relating

27  to the 1.1.1 Software and the deceptive trade practices claim dismissed by the Court's October 1, 2008 Order. (See Folkenflik Motion at 13-15.)

28                                    22

United States District Court

For the Northern District of California

1    absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the

2    injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be

3    both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." <u>Dukes</u>, 509

4    F. 3d at 1186 (quoting <u>Robinson v. Metro-North Commuter R.R.</u>, 267 F.3d 147, 164 (2d Cir. 2001));

5    <u>Molski v. Gleich</u>, 318 F.3d 937, 950 n.15 (9th Cir. 2003).

6         Here, Plaintiffs admittedly seek a very substantial damages award (as part of their 23(b)(3)

7    class, discussed below) alongside equitable relief.  (<u>See</u> Class Reply at 30.)  However, as the Ninth

8    Circuit, sitting *en banc*, recently explained in <u>Dukes v. Wal-Mart Stores, Inc.</u>, even claims that "may

9    amount to billions of dollars" do not necessarily preclude a 23(b)(2) class.  <u>See</u> 2010 WL 1644259,

10   at *35.  In <u>Wal-Mart</u>, the defendant (Wal-Mart) contended that the sheer size of the potential

11   damages award—billions of dollars—precluded certification of an injunctive relief class.  <u>Id.</u> at *36.

12   The Court rejected this proposition, stating the touchstone of the analysis was that "[t]o be certified

13   under Rule 23(b)(2), . . . a class must seek only monetary damages that are not 'superior [in]

14   strength, influence, or authority' to injunctive and declaratory relief."  <u>Id.</u> at 35.  <u>Wal-Mart</u> teaches

15   that a court should focus on the importance of monetary versus injunctive relief to each class

16   member, rather than focusing on the potentially large overall damages award.

17        Here, Plaintiffs contend that ending the challenged practices is important relief for the class

18   because it would provide freedom to use their iPhone with the applications of their choice and

19   without unwittingly agreeing to a five year service commitment with ATTM.  The Court finds that

20   Defendants have not shown that the size of the potential award undermines Plaintiffs' claim that

21   injunctive and declaratory relief predominate.  The injunctive relief from the challenged conduct

22   would be reasonably necessary and appropriate if Plaintiffs succeed on the merits.  The Court rejects

23   Defendants' contention that injunctive relief is moot because "everyone" knows about Defendants'

24   policies and the five year agreement may expire before the litigation is resolved.  Defendants have

25   not shown that all class members know about Defendants' policies.  In any event, the Court can

26   resolve any mootness issues at the time any injunctive relief is entered.  Thus, the Court finds that

27   Plaintiffs have satisfied the requirements of 23(b)(2).

28                                    23

United States District Court

For the Northern District of California

1    Accordingly, the Court GRANTS Plaintiffs' Motion to Certify a Rule 23(b)(2) class.

2        **b.    Rule 23(b)(3) Certification**

3    Plaintiffs seek certification of a class under Rule 23(b)(3) because common questions of law

4   or fact predominate and a class action is superior to other available methods for adjudication of

5   Plaintiffs' claims.  (Class Motion at 22-33.)  Defendants do not challenge Rule 23(b)(3) certification

6   beyond their contentions already addressed under the elements of Rule 23(a) above.

7    Under Rule 23(b)(3), a plaintiff seeking certification bears the burden of proving two

8   conditions: (1) that the questions of law or fact common to the members of the class predominate

9   over any questions affecting only individual members; and (2) that a class action is superior to other

10   available methods for the fair and efficient adjudication of the controversy.  Zinser, 253 F.3d at

11   1188-89 (citing Hanon, 976 F.2d at 508).

12    Here, the Court has recognized many of these questions as common to the class, and has

13   rejected Defendants' contentions to the contrary.  Beyond mere commonality, the Court finds that

14   these questions predominate over individual issues as the core questions relevant to resolving the

15   claims on the merits.  Apart from the possibility of some variation in damages amongst class

16   members, none of these questions depend upon individual circumstances.  Thus, the Court finds that

17   Plaintiffs have shown that common questions of law and fact predominate over individual issues.

18    Further, the Court finds that the factors of Rule 23(b)(3) favor adjudication in a class setting

19   as superior to individual actions.  The potential number of class members is indisputably in the

20   thousands, if not greater.  Moreover, it is unlikely that the majority of class members suffered losses

21   of a magnitude that would justify individual actions for antitrust violations against large corporate

22   defendants.  In light of the core set of common legal and factual questions, a class action appears

23   manageable.  Thus, the Court finds that class treatment is superior to individual actions.

24    Accordingly, the Court GRANTS Plaintiffs' Motion to Certify a Rule 23(b)(3) class.

25        **V.  CONCLUSION**

26    The Court GRANTS Defendant Apple's Motion for Summary Judgment as to Plaintiffs'

27   Seventh, Eight, Ninth, and Tenth Causes of Action.  The Court GRANTS in part Plaintiffs' Motion

28                            24

1   for Class Certification as to the remaining claims.  The Court appoints Plaintiffs Kliegerman,

2   Holman, Rivello, Smith, Lee, Macasaddu, Morikawa, Scotti, and Sesso as representatives of the

3   class.  The Court appoints Wolf Haldenstein as class counsel.  The Court DENIES Folkenflik &

4   McGerity and Hoffman & Lazear's Motion for Appointment as Co-Lead Counsel.  The Court

5   certifies a class as follows:

6   
7   > All persons who purchased or acquired an iPhone in the United States and entered into a two-year agreement with Defendant AT&T Mobility, LLC for iPhone voice and data service any time from June 29, 2007, to the present.

8   > On or before **July 26, 2010**, the parties shall file a proposed form of class notice and a joint

9   proposal for dissemination of notice.

10

11  Dated:  July 8, 2010

12                                                  JAMES WARE
                                                    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          25

1    **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2    Adrian Frank Davis adrian.davis@lw.com
     Alexander H. Schmidt schmidt@whafh.com
3    Alfred Carroll Pfeiffer Al.Pfeiffer@lw.com
     Archis Ashok Parasharami aparasharami@mayerbrown.com
4    Arthur William Lazear awl@hoffmanandlazear.com
     Christopher E Ondeck condeck@crowell.com
5    Christopher S. Yates chris.yates@lw.com
     Damian Rene Fernandez damianfernandez@gmail.com
6    Daniel Allen Sasse dsasse@crowell.com
     Daniel Murray Wall dan.wall@lw.com
7    David Eldon Crowe dcrowe@crowell.com
     Donald M. Falk dfalk@mayerbrown.com
8    Francis M. Gregorek gregorek@whafh.com
     H. Tim Hoffman hth@hoffmanandlazear.com
9    Jason C. Murray jmurray@crowell.com
     Jeffrey H. Howard jhoward@crowell.com
10   Lola Abbas Kingo lola.kingo@lw.com
     M. Van Smith mvsmith@sbcglobal.net
11   Marisa C. Livesay livesay@whafh.com
     Mark Carl Rifkin rifkin@whafh.com
12   Max Folkenflik max@fmlaw.net
     Morgan Matthew Mack mmm@hoffmanandlazear.com
13   Rachele R. Rickert rickert@whafh.com
     Randall Scott Newman rsn@randallnewman.net
14   Sadik Harry Huseny sadik.huseny@lw.com
     Satyanand Satyanarayana satyanand.satyanarayana@lw.com
15   Shari Ross Lahlou slahlou@crowell.com
     Stephen DeNittis sdenittis@shabeldenittis.com
16   Wm. Randolph Smith wrsmith@crowell.com
     Zachary W. Biesanz biesanz@whafh.com

17

18   **Dated:  July 8, 2010**                              **Richard W. Wieking, Clerk**

19

20                                                 **By:      /s/ JW Chambers**
                                                        **Elizabeth Garcia**
21                                                      **Courtroom Deputy**

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California