IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Apple & AT&TM Antitrust Litigation | NO. C 07-05152 JW |
| | **ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND GRANTING MOTIONS TO DECERTIFY CLASS** |

## I. INTRODUCTION

In this case, Plaintiffs are purchasers of Apple iPhones and subscribers to cellular service from AT&T Mobility ("ATTM"). Plaintiffs allege that Apple, Inc. ("Apple") and ATTM entered into an undisclosed agreement under which the two companies agreed that for a period of time, all iPhones sold by Apple would be configured so that purchasers in the United States would be required to sign a cellular service agreement with ATTM. Plaintiffs allege that although they were of the expectation that they would be under contract with ATTM for two years, they were unaware that Apple and ATTM had agreed, without Plaintiffs' knowledge or consent, to make ATTM the exclusive provider of voice and data services for the iPhone for five years.[1] Further, Plaintiffs allege that this agreement between Apple and ATTM was contrary to Plaintiffs' reasonable expectations that they would be under contract with ATTM for only two years, and could switch at any time to another carrier after paying an early termination fee. (Id.) Finally, Plaintiffs allege that because the arrangement was undisclosed and extended beyond the initial disclosed terms, the arrangement violates the Sherman Act. (Id.)

---

[1] (See Revised Consolidated Amended Class Action Complaint ¶¶ 134-150, Docket Item No. 109.)

The service contract that each purchaser signed with ATTM contains an agreement that any dispute between the purchaser and ATTM must be resolved by arbitration. ATTM now moves the Court to compel Plaintiffs to arbitrate the claims that are being made against it in this lawsuit and to decertify the class.[2] There is no arbitration agreement in the sales contract between iPhone purchasers and Apple. Nor is the ATTM service contract incorporated into the Apple sales transaction by reference. However, on equitable grounds, Apple also moves the Court to compel Plaintiffs to arbitrate the claims being made by Plaintiffs against it in this lawsuit and, consequently, to decertify the class.[3]

The Court conducted a hearing on October 3, 2011. Based on the papers submitted to date and oral argument, the Court GRANTS Defendant ATTM's Motion to Compel Arbitration, GRANTS Defendant Apple's Motion to Compel Arbitration and GRANTS Defendant ATTM and Apple's Motions to Decertify Class.

## II. BACKGROUND

A detailed outline of the background and procedural history of this case may be found in the Court's October 1, 2008 Order.[4] The Court reviews the relevant procedural history as it relates to the present Motions.

On October 1, 2008, the Court denied Defendant ATTM's motions to compel arbitration and to dismiss, on the ground that Defendant ATTM's arbitration agreement with Plaintiffs was

---

[2] (Defendant AT&T Mobility LLC's Notice of Motion and Motion to Compel Arbitration and to Stay Case, hereafter, "ATTM Motion," Docket Item No. 504; Defendant AT&T Mobility LLC's Notice of Motion and Motion to Decertify Class, hereafter, "Decertify Motion," Docket Item No. 511.)

[3] (Defendant Apple's Notice of Motion and Motion to Compel Arbitration and for Decertification, hereafter, "Apple Motion," Docket Item No. 514.)

[4] (See Order Denying Defendant AT&TM's Motion to Compel Arbitration and to Dismiss; Denying Defendant AT&TM's Motion to Stay Discovery; Granting in part and Denying in part Defendant Apple's Motion to Dismiss, hereafter, "October 1 Order," Docket Item No. 144.)

unconscionable under state law.[5] (See October 1 Order at 7-10.) The Court also denied Defendant ATTM's motion to dismiss, on the ground that the state laws in question were not preempted by the Federal Arbitration Act ("FAA"). (See id. at 11.) Finally, the Court granted in part and denied in part Defendant Apple's motion to dismiss. (See id. at 12-30.) In particular, the Court denied Defendant Apple's motion to dismiss Plaintiffs' antitrust claims under Section 2 of the Sherman Act, on the ground that Plaintiffs had adequately alleged that Defendant Apple had sufficient market power in certain aftermarkets.[6] (See id. at 12-18.) On July 8, 2010, the Court granted Plaintiffs' motion for class certification.[7]

On September 15, 2010, the Court stayed proceedings in this case, on the grounds, *inter alia*, that Defendants had raised "significant legal questions as to the proper interpretation of Newcal Indus., Inc. v. IKON Office Solution," and because "Newcal's implications for the type of class action claim at issue" in this matter "may be a case of first impression."[8] On December 9, 2010, the Court continued the stay in this case on different grounds, namely, the fact that the Supreme Court's then-pending decision in AT&T Mobility LLC v. Concepcion "could likely simplify the legal

---

[5] In particular, the Court found that it was "undisputed that Plaintiffs signed an Arbitration Agreement" with Defendant ATTM which included a waiver specifying that "class arbitrations and class actions are not permitted" under the Agreement. (October 1 Order at 6.) However, the Court found that this class action waiver was unconscionable and thus unenforceable, on the ground that it violated the "Discover Bank standard" articulated by the California Supreme Court. (See id. at 7-10 (citing Discover Bank v. Superior Court, 36 Cal. 4th 148 (2005)).)

[6] In finding that Plaintiffs had adequately alleged their antitrust claims against Defendant Apple, the Court relied upon a Ninth Circuit opinion which held that there "can be a legally cognizable aftermarket in a single brand's products, even if that market is created by a contractual relationship." (Id. at 14 (citing Newcal Indus., Inc. v. IKON Office Solution, 513 F.3d 1038, 1048-50 (9th Cir. 2008)).) Thus, the Court found that even though the "alleged aftermarket [was] predicated on an initial contractual relationship between Defendants and iPhone purchasers," Plaintiffs' Complaint was still adequate under Newcal. (Id. at 14-15.)

[7] (See Order Granting Defendant Apple's Motion for Summary Judgment; Granting in part Plaintiffs' Motion for Class Certification; Denying Folkenflik & McGerity's Motion for Appointment as Co-Lead Counsel, hereafter, "July 8 Order," Docket Item No. 466.)

[8] (See Order Granting Defendants' Motion to Stay Proceedings at 5-6, Docket Item No. 493.)

3

1 questions [in this case] and conserve judicial resources."[9] On April 27, 2011, the Supreme Court

2 issued its decision in Concepcion,[10] which prompted the present Motions.

### III. STANDARDS

It is fundamental that "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Samson v. NAMA Holdings, LLC, 637 F.3d 915, 923 (9th Cir. 2010) (citations omitted). An agreement to arbitrate is a waiver of valuable rights that are both personal to the parties and important to the open character of our state and federal judicial systems. Id.

However, it is well established that "[a]rbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1011 (9th Cir. 2004) (citation omitted). Congress created the Federal Arbitration Act ("FAA") to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate . . . and place such agreements on the same footing as other contracts." Id. (citation omitted). "A party to a valid arbitration agreement may 'petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement.'" Id. at 1012 (quoting 9 U.S.C. § 4). The district court's "role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." See id.; see also Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). A court interpreting the scope of an arbitration provision should apply ordinary state law principles of contract construction. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). Thus, arbitration should only be denied where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Tech., Inc. v. Commc'n

---

[9] (Order Vacating Case Management Conference and Staying Proceedings Pending the Supreme Court's Decision in AT&T Mobility v. Conception [sic] at 1, Docket Item No. 499.)

[10] 131 S. Ct. 1740 (2011).

United States District Court
For the Northern District of California

1  Workers, 475 U.S. 643, 650 (1986) (quoting United Steelworkers v. Warrior Gulf Navigation Corp.,
2  363 U.S. 574, 582-83 (1960)).

### IV. DISCUSSION

**A.    ATTM's Motion to Compel Arbitration**

Defendant ATTM moves the Court to (1) compel Plaintiffs to arbitrate their claims on an individual basis; and (2) stay this litigation, on the ground that the Supreme Court's recent decision in Concepcion compels the conclusion that the FAA requires Plaintiffs to pursue their disputes with Defendant on an individual basis. (ATTM Motion at 2-7.) Plaintiffs respond that: (1) Defendant ATTM has waived its right to seek arbitration of Plaintiffs' claims; and (2) the arbitration clause in Defendant ATTM's contracts with Plaintiffs cannot be enforced, because enforcing it would prevent Plaintiffs from vindicating their statutory rights under the Sherman Act.[11] The Court considers each contention in turn.

**1.    Waiver**

At issue is whether Defendant ATTM has waived its right to seek arbitration of Plaintiffs' claims.

"Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" Fisher v. A.G. Becker Paribas, Inc., 791 F.2d 691, 694 (9th Cir. 1986) (citation omitted). "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Id. Where there was "no existing right to arbitration" because the "then-prevailing law of [the] circuit" would have rendered such a motion "futile," there can be no waiver of the right to arbitration. See Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1187 (9th Cir. 1986).

Here, Plaintiffs contend that by failing to "take an immediate appeal of this Court's October 2008 Order denying its motion to compel arbitration," Defendant ATTM has "abandoned any right it

---

[11] (Plaintiffs' Opposition to Defendant AT&T Mobility LLC's Motion to Compel Arbitration and to Stay Case at 3-25, hereafter, "ATTM Opp'n," Docket Item No. 516.)

5

1 may have had to arbitrate Plaintiffs' claims." (ATTM Opp'n at 4-7.) Upon review, however, the
2 Court finds that this contention misstates Ninth Circuit law. As of October 2008, when the Court
3 denied Defendant ATTM's motion to compel arbitration, the prevailing law of the Ninth Circuit held
4 that arbitration agreements of the type at issue in this case were unconscionable, on the basis of
5 California's Discover Bank rule. See, e.g., Shroyer v. New Cingular Wireless Services, Inc., 498
6 F.3d 976, 981-84 (9th Cir. 2007) (applying the Discover Bank rule to determine that a class
7 arbitration waiver was unconscionable and thus unenforceable). Thus, in October 2008 it would
8 have been futile for Defendant ATTM to appeal the Court's denial of its motion to compel
9 arbitration to the Ninth Circuit. Waiver should not be found on the basis of a party's failure to
10 undertake a futile act. Therefore, the Court finds that Defendant ATTM did not waive its right to
11 arbitration by failing to appeal.[12] Letizia, 802 F.2d at 1187.

12 Further, the Court rejects Plaintiffs' contention that Defendant ATTM no longer has the right
13 to demand arbitration, because Plaintiffs "have been greatly prejudiced by [Defendant ATTM's]
14 choice to litigate rather than appeal [the Court's October 1 Order]." (ATTM Opp'n at 9-10.)
15 Specifically, Plaintiffs contend that: (1) they have incurred significant expenditures in fees and costs
16 in litigating this case; and (2) Defendant ATTM has engaged in discovery procedures that would not
17 have been available to it in arbitration. (Id.) However, under Ninth Circuit law, such conduct does
18 not constitute "prejudice" sufficient to deprive a defendant of its right to compel arbitration, once
19 that right has become available due to a change in the prevailing law. As the Ninth Circuit has
20 explained, when a party to an agreement that makes "arbitration of disputes mandatory" chooses to
21 "violate[] that agreement" by opting to litigate claims in court, any "extra expense" incurred by that

---

[12] On April 27, 2011, the Supreme Court held that "California's Discover Bank rule" is "preempted by the FAA," and thus overturned Ninth Circuit caselaw which relied on the Discover Bank rule to find that class action waivers in arbitration agreements are unconscionable. See Concepcion, 131 S. Ct. at 1753. On May 11, 2011, the parties filed a Joint Status Report in which Defendants expressed their intention to file renewed motions to compel arbitration, post-Concepcion, and requested the Court to set a briefing schedule for their anticipated motions to compel arbitration. (See Joint Status Report Regarding U.S. Supreme Court's Recent Decision in AT&T Mobility LLC v. Concepcion at 1-2, Docket Item No. 500.) On June 15, 2011, the Court lifted the stay in the case and set a briefing schedule for Defendants' Motions to Compel Arbitration. (See Docket Item No. 502 at 2.)

6

1  party as a result of its "deliberate choice of an improper forum, in contravention of [its] contract"
2  cannot be charged to the other party. <u>Fisher</u>, 791 F.2d at 698. Similarly, the fact that parties
3  "engaged in discovery" under such circumstances "does not constitute sufficient prejudice to
4  establish waiver [of the right to compel arbitration]." <u>Id.</u> at 697.

5      Accordingly, the Court finds that Defendant ATTM has not waived its right to compel
6  arbitration.

### 2. Plaintiffs' Statutory Rights Under the Sherman Act

8      Plaintiffs contend that the arbitration clauses in their respective contracts with Defendant
9  ATTM are unenforceable under federal law because enforcing them would prevent Plaintiffs from
10 vindicating their statutory rights under the Sherman Act.

11     In general, federal statutory rights are subject to arbitration, and in particular, "antitrust
12 claims can be arbitrated." <u>See</u> <u>Nghiem v. NEC Electronic, Inc.</u>, 25 F.3d 1437, 1441-42 (9th Cir.
13 1994). The fact that arbitration procedures "do not provide for broad equitable relief" does not mean
14 that "individual attempts at conciliation" by way of arbitration are barred, simply because a federal
15 statute may make such equitable relief available. <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S.
16 20, 32 (1991).

17     Here, Plaintiffs contend that in the "context of [an] antitrust case" such as this one, the class
18 action waiver in Defendant ATTM's arbitration agreement provides Defendant ATTM with "*de
19 facto* immunity from liability for federal statutory violations" and is thus "unenforceable under
20 federal law." (<u>Id.</u> at 10-11.) However, the Court finds that this contention is misguided for several
21 reasons. First, it is well established in the Ninth Circuit that claims involving federal statutory
22 rights, and in particular federal antitrust claims, are subject to arbitration. <u>See</u> <u>Nghiem</u>, 25 F.3d at
23 1441-42. Second, the Supreme Court has specifically considered the very arbitration agreement at
24 issue in this case, and has determined that it is enforceable, on the grounds that the agreement

7

"essentially guarantee[d]" that "aggrieved customers who filed claims" would "be made whole."[13] Concepcion, 131 S. Ct. at 1753.

Plaintiffs' contention that the arbitration agreement "forecloses Plaintiffs' public injunction remedy," and is therefore void, is also misguided. (ATTM Opp'n at 23-25.) The Supreme Court has clearly stated that the fact that arbitration procedures "do not provide for broad equitable relief" does not render those procedures void. Gilmer, 500 U.S. at 32.

Accordingly, the Court GRANTS Defendant ATTM's Motion to Compel Arbitration.[14]

## B. Defendant Apple's Motion to Compel Arbitration

Defendant Apple moves that the Court (1) order Plaintiffs to arbitrate their claims against Defendant Apple, on the ground that Plaintiffs are equitably estopped from refusing to arbitrate their claims against Defendant Apple; and (2) decertify the class. (Apple Motion at 5-18.) Plaintiffs respond that Defendant Apple may not compel Plaintiffs to arbitrate their claims against Defendant Apple, because: (1) Defendant Apple is a non-signatory defendant, and such parties may not use equitable estoppel to compel arbitration; and (2) even if the doctrine of equitable estoppel were available here, Defendant Apple fails to meet the Ninth Circuit's test for whether equitable estoppel may be applied against Plaintiffs in these circumstances.[15] The Court considers each of these contentions in turn.

---

[13] In the wake of Concepcion, the same conclusion has been reached by a number of other courts. See, e.g., Cruz v. Cingular Wireless LCC, 648 F.3d 1205, 1215 (11th Cir. 2011) (stating that the argument that "an arbitration agreement may be invalidated on public policy grounds where it effectively prevents the claimant from vindicating her statutory cause of action" is "foreclosed" in relation to the particular arbitration agreement at issue in both Cruz and in this case, because the Supreme Court "examined *this very arbitration agreement* and concluded that it did not produce such a result") (emphasis in original).

[14] After Concepcion, a number of district courts, including several in this District, have granted similar motions brought by Defendant ATTM to compel arbitration and decertify classes that had been certified pre-Concepcion. See, e.g., In re Apple and AT&T iPad Unlimited Data Plan Litig., No. C 10-02553 RMW, 2011 WL 2886407 (N.D. Cal. July 19, 2011); Nelson v. AT&T Mobility LLC, No. C 10-4802 TEH, 2011 WL 3651153 (N.D. Cal. Aug. 18, 2011); Kaltwasser v. AT&T Mobility LLC, No. C 07-00411 JF, 2011 WL 4381748 (N.D. Cal. Sept. 20, 2011).

[15] (Plaintiffs' Opposition to Defendant Apple's Motion to Compel Arbitration and to Stay Case at 4-24, hereafter, "Apple Opp'n," Docket Item No. 515.)

8

**1. Whether Non-Signatory Defendants May Assert Equitable Estoppel**

At issue is whether the fact that Defendant Apple is a non-signatory to the arbitration agreement precludes it from compelling Plaintiffs to arbitrate their claims.

"The right to compel arbitration stems from a contractual right," which generally "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." Britton v. Co-op Banking Group, 4 F.3d 742, 744 (9th Cir. 1993) (citation omitted). However, the Ninth Circuit has recognized that under principles of equitable estoppel a non-signatory may compel a signatory to an arbitrate. See Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1045-46 (9th Cir. 2009). Under the doctrine of equitable estoppel, a party may be precluded "from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." See id. (citation omitted). Courts, including this one, have identified two strands of the equitable estoppel doctrine that support a non-signatory's right to compel a signatory to arbitrate a claim being made against the non-signatory.[16] First, equitable estoppel applies "where the 'signatory to a written agreement containing an arbitration clause *must rely* on the terms of the written agreement in asserting its claims against the [non-signatory].'"[17] Second, equitable estoppel is appropriate where "the issues the [non-signatory] is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."[18]

Here, Plaintiffs contend that Defendant Apple is not entitled to assert the doctrine of equitable estoppel to compel arbitration, on the ground that the Ninth Circuit, in Mundi, "held that a non-signatory defendant may not compel arbitration of claims brought against it by the signatory plaintiff." (Apple Opp'n at 7-8.) Upon review, however, the Court finds that Plaintiffs misstate the holding in Mundi. The court in Mundi considered whether "a nonsignatory [defendant] to [an]

---

[16] (See Order Denying Deutsche Bank's Motion to Compel Arbitration at 3-4, Docket Item No. 329 in Jones v. Deutsche Bank AG, et al., No. C 04-05357-JW.)

[17] (Id. at 3 (citing Hawkins v. KPMG LLP, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006)) (emphasis in original).)

[18] (Id. at 3-4 (citing JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d Cir. 2004)).)

9

1 arbitration agreement . . . can require [a signatory plaintiff] to arbitrate her claims against [the
2 defendant]." Mundi, 555 F.3d at 1044. Given the facts before it, the court found that the defendant
3 could not compel the plaintiff to arbitrate her claims. Id. at 1046. However, the court did not
4 articulate, as a general principle, the proposition that non-signatory defendants may not compel
5 arbitration of claims brought by a signatory plaintiff. Rather, the court acknowledged that prior
6 Ninth Circuit cases had failed to "address[] the precise situation" presented in the case, and looked
7 to other circuits for guidance. Id. In particular, it observed that the "Second Circuit addressed a
8 [similar] situation" in a case in which "the defendants, who were nonsignatories to an arbitration
9 agreement, sought to compel a signatory to arbitrate its claims against the defendants on estoppel
10 grounds."[19] The court observed that the Second Circuit had determined that a non-signatory may
11 "compel a signatory to arbitrate based on estoppel," so long as two requirements were met: (1) "the
12 subject matter of the dispute [must be] intertwined with the contract providing for arbitration"; and
13 (2) there must be a "relationship among the parties of a nature that justifies a conclusion that the
14 party which agreed to arbitrate with another entity should be estopped from denying an obligation to
15 arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." Id.
16 (citing Sokol Holdings, 542 F.3d at 359-62). The court went on to find that, in the case before it, the
17 plaintiff's claim was not "intertwined with the contract providing for arbitration," and concluded
18 that the defendant was not entitled to compel the plaintiff to arbitrate her claims. Id.

19 Thus, far from holding that non-signatory defendants may not compel arbitration of claims
20 by a signatory plaintiff, the Ninth Circuit in Mundi indicated that a non-signatory defendant may
21 "compel a signatory to arbitrate based on estoppel," so long as the two requirements outlined
22 above–namely, that the subject matter of the dispute is "intertwined" with the contract, and that there
23 is a sufficient "relationship" between the parties–are met.[20] Mundi, 555 F.3d at 1046. Therefore, the

---

[19] Id. (citing Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354 (2d Cir. 2008)).

[20] A similar conclusion regarding the ability of a non-signatory defendant to compel a signatory plaintiff to arbitrate its claims under the doctrine of equitable estoppel has been reached, post-Mundi, by other district courts in the Ninth Circuit. See, e.g., ValueSelling Assocs., LLC v.

10

Court concludes as a matter of law that the mere fact that it is a non-signatory does not preclude Defendant Apple from invoking the doctrine of equitable estoppel to compel Plaintiffs to arbitrate. Having made this finding, the issue becomes whether the principles of equitable estoppel apply to the claims being asserted by Plaintiffs against Defendant Apple in this case.

### 2. Whether Equitable Estoppel May Be Applied Here

At issue is whether Defendant Apple satisfies the requirements to invoke the doctrine of equitable estoppel against Plaintiffs to compel arbitration.

The Court recognizes that the Mundi court stated that it saw "no basis for extending the concept of equitable estoppel of third parties in an arbitration context beyond the very narrow confines delineated" in the Ninth Circuit's previous cases in this area. Mundi, 555 F.3d at 1046. However, one of the cases the Ninth Circuit explicitly acknowledged as recognizing a basis for asserting equitable estoppel against a third party in an arbitration context involved "the issue of a nonsignatory [to an arbitration agreement] seeking to enforce an arbitration agreement against a signatory." Id. Because the case in which that issue was presented involved a non-signatory bringing claims against a signatory, rather than a signatory bringing claims against a non-signatory, the Mundi court looked to caselaw from other circuits–including the Second Circuit's opinion in Sokol Holdings–for guidance in how to address the "precise situation" in which the non-signatory to the agreement is the defendant rather than the plaintiff. Id. In particular, after describing the Second Circuit's reasoning in Sokol Holdings and setting forth the two "requirements" for the assertion of equitable estoppel under such circumstances that were established in that opinion, the Mundi court proceeded to apply that reasoning to the case before it. Thus, the Court understands the Mundi court to have relied upon Sokol Holdings to clarify that in order for equitable estoppel to be applied in situations of this type–namely, situations in which a non-signatory defendant is seeking to enforce

---

Temple, 2009 WL 3736264, at *6-7 (S.D. Cal. Nov. 5, 2009).

11

an arbitration agreement against a signatory plaintiff–the two requirements of "intertwining claims" and a "relationship" must be satisfied.[21]

Upon review, the Court finds that both of the requirements for equitable estoppel are met in this case. First, as to the "intertwining" of the claims, Plaintiffs themselves have contended throughout this litigation that their antitrust and related claims against Defendant ATTM and Defendant Apple arise from their respective ATTM service contracts.[22] At Plaintiffs' request, the Court certified a single unified class as follows: "All persons who purchased or acquired an iPhone in the United States and entered into a two-year agreement with [Defendant ATTM] for iPhone voice and data service [at] any time from June 29, 2007, to the present." (July 8 Order at 25.) Thus, Plaintiffs are now estopped from contending otherwise.

Second, as to the relationship between Defendants ATTM and Apple, Plaintiffs themselves have alleged that there is a "relationship" between ATTM and Apple, inasmuch as Plaintiffs' claim against Defendant Apple centers on their allegations that Defendants ATTM and Apple entered into an agreement prior to the commercial release of the iPhone whereby purchasers of the iPhone would "be locked into using ATTM after the expiration of their initial two-year service contracts."[23] (See October 1 Order at 3-5.) Having agreed to arbitrate any claim growing out of their respective contractual relationships with ATTM, and having made a claim arising from that contractual

---

[21] Other courts in the Ninth Circuit, following Mundi, have arrived at a similar conclusion. See, e.g., NS Holdings LLC v. Am. Intern. Grp. Inc., No. SACV 10-1123 DOC, 2010 WL 4718895, at *4 (C.D. Cal. Nov. 15, 2010) (allowing defendants who were non-signatories to an insurance policy to "compel compliance with the policy's arbitration provision," because plaintiffs' claims were "intertwined" with the policy agreement).

[22] (See, e.g., Plaintiffs' Reply Memorandum of Points and Authorities in Further Support of their Motion for Class Certification at 10, Docket Item No. 422 (contending that class certification would be appropriate in this case, because "Plaintiffs and all other Class members signed the *same integrated two-year service contracts*," which means that "whether they *contractually agreed* to give monopoly power to Apple and ATTM in the iPhone voice and data aftermarket . . . can and should be answered the same way for everyone") (emphasis in original).)

[23] In determining whether there is a "relationship" between defendants for purposes of equitable estoppel, courts have looked to the allegations set forth in a plaintiff's complaint to assess whether the plaintiff "understood" the defendants to have a relationship. See, e.g., Ragone v. Atlantic Video at Manhattan Center, 595 F.3d 115, 127 (2d Cir. 2010).

1  relationship against both ATTM and Apple in which they allege that both Defendants jointly
2  subverted rights under the contract, Plaintiffs are now estopped from refusing to arbitrate against
3  Defendants ATTM and Apple, jointly. Mundi, 555 F.3d at 1046.

4        Plaintiffs' contention that there is no "close relationship between the entities involved,"
5  because Defendant Apple is "neither the parent nor a subsidiary" of Defendant ATTM, is misguided.
6  (Apple Opp'n at 9.) In discussing the "requirement" that there be a "relationship" between the
7  parties in order for equitable estoppel to be applicable, the Ninth Circuit did not state that the
8  relationship must involve a *corporate* relationship between the defendants. Instead, the Ninth
9  Circuit looked to Sokol Holdings, in which the Second Circuit described the "relationship"
10 requirement in the abstract. See Sokol Holdings, 542 F.3d at 361-62. Rather than stating that the
11 relationship in question must always involve a corporate relationship among the defendants, the
12 Second Circuit explained that estoppel, in these circumstances, "flow[s] . . . from the conclusion that
13 the relationships among the parties developed in a manner that made it unfair for [the party that
14 refuses to arbitrate with a non-signatory] to claim that its agreement to arbitrate ran only to [the
15 signatory] and not to [the non-signatory]." Id. at 361. As subsequent Second Circuit cases
16 following Sokol Holdings make clear, the non-signatory need not be a parent or subsidiary company
17 of the signatory for the requisite "relationship" to be found.[24]

---

[24] See, e.g., Ragone, 595 F.3d at 118, 126-28 (holding that the doctrine of equitable estoppel applied to compel a plaintiff to arbitrate with a non-signatory defendant, where the signatory defendant was AVI, a "digital broadcast and film production and post production company," and the non-signatory defendant was ESPN, "the well-known cable television sports news service," which is neither the parent nor the subsidiary of AVI); see also Republic of Iraq v. ABB AG, 769 F. Supp. 2d 605, 611-12 (S.D.N.Y. 2011) (explaining that the "relationship" required for a court to apply estoppel in this context may be found if the "non-signatory's dispute with the signatory is 'bound up' with a dispute already in arbitration between the two signatories to the arbitration agreement") (citing Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co., 271 F.3d 403, 407 (2d Cir. 2001)).

13

1    Thus, the Court finds that Defendant Apple satisfies the requirements for applying the
2 doctrine of equitable estoppel against Plaintiffs.[25] Accordingly, the Court GRANTS Defendant
3 Apple's Motion to Compel Arbitration.[26]
4    In light of the Court's disposition of Defendants' Motions to Compel Arbitration, the Court
5 also GRANTS Defendants' Motions to Decertify Class.

## V.  CONCLUSION

The Court GRANTS Defendants ATTM and Apple's Motions to Compel Arbitration and to Decertify Class.

In light of this Order, the Court VACATES that portion of its July 8, 2010 Order certifying a class.  The case is STAYED while Plaintiffs pursue their claims in arbitration.

The Clerk shall administratively close this file.  Upon completion of the arbitration, any party may move to have this case reopened.

Dated:  December 1, 2011

JAMES WARE
United States District Chief Judge

---

[25] On November 22, 2011, Plaintiffs brought a recently decided case to the Court's attention on the ground that it "pertains to Apple's motion to compel arbitration." (See Docket Item No. 551 at 1 (citing Lenox Maclaren Surgical Corp. v. Medtronic, Inc., No. 11-1251, 2011 U.S. App. LEXIS 22961 (10th Cir. Nov. 15, 2011)).) Upon review, however, the Court finds that Medtronic is inapposite.  First, Medtronic is an unpublished Tenth Circuit opinion which is expressly designated not to be binding precedent. See Medtronic, 2011 U.S. App. LEXIS at *1. Second, the court in Medtronic applied Eleventh Circuit caselaw, rather than Ninth Circuit or Second Circuit caselaw, in determining whether, in the case before it, equitable estoppel permitted a non-signatory to a contract to compel a signatory to arbitrate. Id. at *12-13. Finally, the court merely found that, given the specific circumstances of the case before it, the district court had not erred in denying the non-signatory defendant's motion to compel arbitration. Id. at *17-21.

[26] Plaintiffs also contend that Defendant Apple has waived its right to compel arbitration. (See Apple Opp'n at 13-22.) However, for the same reasons discussed above in relation to Defendant ATTM, the Court finds that Defendant Apple has not waived that right.

14

**United States District Court**
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Adrian Frank Davis adrian.davis@lw.com
Alexander H. Schmidt schmidt@whafh.com
Alfred Carroll Pfeiffer Al.Pfeiffer@lw.com
Archis Ashok Parasharami aparasharami@mayerbrown.com
Arthur William Lazear awl@hoffmanandlazear.com
Christopher E Ondeck condeck@crowell.com
Christopher S. Yates chris.yates@lw.com
Damian Rene Fernandez damianfernandez@gmail.com
Daniel Allen Sasse dsasse@crowell.com
Daniel Murray Wall dan.wall@lw.com
David Eldon Crowe dcrowe@crowell.com
Donald M. Falk dfalk@mayerbrown.com
Francis M. Gregorek gregorek@whafh.com
H. Tim Hoffman hth@hoffmanandlazear.com
Jason C. Murray jmurray@crowell.com
Jeffrey H. Howard jhoward@crowell.com
Lola Abbas Kingo lola.kingo@lw.com
M. Van Smith mvsmith@sbcglobal.net
M. Van Smith mvsmith@sbcglobal.net
Marisa C. Livesay livesay@whafh.com
Mark Carl Rifkin rifkin@whafh.com
Max Folkenflik max@fmlaw.net
Michael Milton Liskow liskow@whafh.com
Morgan Matthew Mack mmm@hoffmanandlazear.com
Rachele R. Rickert rickert@whafh.com
Randall Scott Newman rsn@randallnewman.net
Sadik Harry Huseny sadik.huseny@lw.com
Satyanand Satyanarayana satyanand.satyanarayana@lw.com
Shari Ross Lahlou slahlou@crowell.com
Stephen DeNittis sdenittis@shabeldenittis.com
Wm. Randolph Smith wrsmith@crowell.com
Zachary W. Biesanz biesanz@whafh.com

Dated: December 1, 2011                            Richard W. Wieking, Clerk

                                                   By:   /s/ JW Chambers
                                                         **Susan Imbriani**
                                                         **Courtroom Deputy**